1 | DAVID B. GOLUBCHIK (State Bar No. 185520)
2 | TODD M. ARNOLD (State Bar No. 221868)
  | LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3 | 2818 La Cienega Avenue
  | Los Angeles, California 90034
4 | Telephone: (310) 229-1234
  | Facsimile: (310) 229-1244
5 | Email: dbg@lnbyg.com; tma@lnbyg.com
6 |
  | Attorneys for Debtor and Debtor in Possession
7 |

8 |              **UNITED STATES BANKRUPTCY COURT**

9 |              **CENTRAL DISTRICT OF CALIFORNIA**

10 |                  **LOS ANGELES DIVISION**

11 |

12 | In re:                                  Case No.: 2:21-bk-18205-DS

13 | CRESTLLOYD, LLC,                        Chapter 11 Case

14 |          Debtor and Debtor in Possession.

15 |                                         **DEBTOR'S NOTICE OF EMERGENCY
                                            MOTION AND EMERGENCY MOTION
16 |                                         FOR ENTRY OF AN ORDER SETTING
                                            THE AMOUNT OF, AND AUTHORIZING
17 |                                         DEBTOR TO PROVIDE, ADEQUATE
                                            ASSURANCE OF FUTURE PAYMENT TO
18 |                                         UTILITY COMPANY PURSUANT TO 11
                                            U.S.C. § 366; MEMORANDUM OF POINTS
19 |                                         AND AUTHORITIES AND
                                            DECLARATION IN SUPPORT THEREOF**
20 |

21 |

22 |                                         Hearing:
                                            Date:    November 23, 2021
23 |                                         Time:    11:30 a.m.
                                            Place:   Courtroom 1639
24 |                                                  255 E. Temple St.
                                                     Los Angeles, CA 90012
25 |                                                  **VIA ZOOM ONLY**

26 |

27 |

28 |

**PLEASE TAKE NOTICE** that, pursuant to Local Bankruptcy Rule 2081-1(a)(3) and 9075-1, and Sections 105(a), 363, and 366 of Title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy Code"),[1] Crestlloyd, LLC, the debtor and debtor in possession herein (the "Debtor"), hereby brings this motion (the "Motion") for the entry of an order setting the amount of, and authorizing the Debtor to provide, adequate assurance of future payment to a utility company, the Los Angeles Department of Water & Power (the "LADWP").

**PLEASE TAKE FURTHER NOTICE** that, on October 26, 2021 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.  As further discussed in the annexed Memorandum of Points and Authorities and Declaration in support thereof (collectively, the "Memorandum"), the Debtor's primary asset is a piece of residential real property that it developed, which is located at 944 Airole Way, Los Angeles, CA 90077 (the "Property"), which is approximately 105,000 square feet and has 20 bedrooms, 30 bathrooms, a spa, a 4-lane bowling alley, and numerous pools and other water features.  The Debtor is the account holder for utility services provided by the LADWP at the Property.  The Debtor needs to maintain services provided by the LADWP so that it can continue to maintain the Property, including all of the water features.  If the water features lie dormant for even a short period, they become murky and unattractive.  It is also important that there is no interruption in services provided by the LADWP, because the Debtor, which is in the process of employing a new broker group, is showing the Property to prospective buyers and the Property shows much better when lit up with fountains and other water features clean and operational.  Based on the foregoing, it is crucial that the means of setting and providing "adequate assurance of payment" to the LADWP be determined immediately so that there is no interruption in the services provided.

Prior to the commencement of the Debtor's bankruptcy case, the LADWP provided utility services to the Debtor.  The Debtor intends to provide "adequate assurance of payment" by providing the LADWP with a cash deposit, as authorized by Section 366(c)(1)(A)(i), in the amount set forth in **Exhibit "1."**  The proposed LADWP deposit in the amount of $8,845.59 was determined based on an average of the last three (3) bills received by the Debtor from the LADWP.  LADWP

---

[1] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

1    bills are billed every two months. The foregoing deposit amount constitutes the last three (3)

2    bimonthly bills with the average divided by two so that it reflects an average on a monthly basis.

3        The source of funds to be used to pay the cash deposit to the LADWP will be from the

4    Debtor's cash, which is currently held by a receiver (the "Receiver")[2] that Hankey Capital, LLC

5    ("Hankey") caused to be appointed pre-petition in connection with a state court foreclosure action.

6    The Debtor understands that funds held by the Receiver are derived from certain property rental and

7    filming revenue and, arguably, not cash collateral. Hankey is the senior secured creditor with an

8    interest in the cash collateral.  While the funds are likely not cash collateral for the reason discussed

9    above, in an overabundance of caution, the Debtor understands that Hankey consents to its use to

10   pay the foregoing deposit and that the Receiver also consents to the payment of the deposit from the

11   cash he is holding.  As further discussed in the Memorandum, the Debtor is informed and believes

12   that three other entities allege an interest in the Debtor's cash collateral, to the extent applicable.

13   There is also a tax lien and various mechanics' lien creditors.  The Debtor believes all secured

14   creditors, all of which will receive the moving papers and notice of the hearing by overnight mail or

15   NEF, will either not object to the use of cash collateral to pay the LADWP deposit or will

16   affirmatively consent to the payment of the deposit, should such consent be necessary.  As also

17   discussed in the Memorandum, the Debtor submits that all secured creditors are secured by an

18   adequate equity cushion in excess of 20%.  Even in the absence of such an equity cushion, and the

19   Debtor submits that the Court need not determine that issue in connection with the payment of a

20   relatively nominal security deposit, any secured creditors will be adequately protected by the

21   maintenance of the Property and the value thereof, as well as the Debtor's ability to continue to

22   market the Property for sale for the highest price possible.   Finally, given relatively small amount of

23   the deposit, the Debtor submits that the payment thereof will not render the Debtor administratively

24   insolvent.

25
26
27
28

[2] It is the Debtor's position that the filing of the case required the Receiver to turn over all property of the estate.  To avoid disruption and litigation fees and costs, the Debtor, Receiver and Hankey have been working cooperatively to maintain operations and the Property as they discuss going forward issues.

3

**PLEASE FURTHER TAKE NOTICE** that, in order to provide maximum notice of the Motion, concurrently with the filing of the Motion with the Court, the Debtor served, via overnight mail or NEF where available, a copy of the Motion and all supportive papers upon the Office of the United States Trustee, any purported secured creditors and their counsel (if known), the 20 largest unsecured creditors of the Debtor, parties requesting special notice, and the LADWP.

**PLEASE FURTHER TAKE NOTICE that (1) the hearing on the Motion will take place at the above-referenced date, time, and location (via Zoom only) and (2) any oppositions to the Motion may be made up to or at the time of the hearing on the Motion.**

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

(1)     affirming the adequacy of the notice given;

(2)     granting the Motion in its entirety;

(3)     authorizing the Debtor to provide adequate "assurance of payment" to the LADWP via a cash deposit in the amount of $8,845.59 as set forth and calculated in **Exhibit "1"** hereto and directing the Receiver to immediately pay such deposit;

(4)  deeming the cash deposit paid by the Debtor to the LADWP in the amount of $8,845.59 as set forth and calculated in **Exhibit "1"** hereto to constitute adequate "assurance of payment" pursuant to 11 U.S.C. § 366(c);

(5)  requiring the LADWP to return the deposit provided for herein within ten (10) business days if, and when, the LADWP's services are terminated by the Debtor; and

(6)  granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: November 18, 2021

CRESTLLOYD, LLC

/s/ David B. Golubchik
DAVID B. GOLUBCHIK
TODD M. ARNOLD
LEVENE, NEALE, BENDER, YOO
    & GOLUBCHIK L.L.P.
Attorneys for Debtor and
Debtor in Possession

4

1

### MEMORANDUM OF POINTS AND AUTHORITIES[3]

2

**A.**　　　　　**GENERAL BACKGROUND.**

3

On October 26, 2021 (the "Petition Date"), the Debtor its bankruptcy case by filing a

4

voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is operating its estate and

5

managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

6

**B.**　　　　　**THE DEBTOR'S REAL PROPERTY, ALLEGED CLAIMS, THE REASONS FOR**

7

**FILING BANKRUPTCY, AND EXIT STRATEGY.**

8

The Debtor's primary asset is the residential real Property that it developed, which is

9

located at 944 Airole Way, Los Angeles, CA 90077.[4]  The Property is one of the finest pieces of real

10

property in America.  The Property is situated on a four-acre Bel Air promontory, featuring the best

11

views of Los Angeles. A moat that encompasses the Property gives the impression that it's floating

12

on water.  The approximately 105,000-square-foot glass and marble compound holds 20 bedrooms,

13

each with sweeping views of Los Angeles and the ocean, and 30 bathrooms, as well as every

14

amenity in the world.  It features a 30-car garage, four swimming pools, a two-story waterfall, and

15

numerous other water features, as well as two restaurant-grade kitchens, an indoor/outdoor

16

entertainment center with its own VIP room, a movie theater, charitable organization rooms, a four-

17

lane bowling alley, a library with floor-to-ceiling windows, a full beauty salon, a spa with a steam

18

room and jacuzzi, a cigar lounge, and a gym.  Three smaller villas also sit on the property, spread

19

across the four acres.  The 5,000-square-foot master suite is an oasis within the mansion.  Designed

20

with its own separate office and walk-in closet, the suite also has its own pool and kitchen.  To

21

guarantee privacy, it's isolated from the rest of the house.  The mansion includes five elevators and

22

LED ceilings that display images of moving clouds. The Property features state-of-the-art

23

technology, with a full security center.  The design encompasses secondary corridors for staff to use.

24

The Property requires some work to be fully completed, which the Debtor believes will

25

cost approximately $5-$10 million.  However, even in its current state of near-completion, the

26

Property can be and has been marketed for sale.  In fact, the Debtor is in the process of retaining a

27

[3] Unless otherwise stated, capitalized terms in this Memorandum have the same meanings ascribed to them in the
preceding Notice of Motion and Motion.

28

[4] Additional information about the Property can be obtained at https://www.societygrouppr.com/real-estate/the-one/ and
https://www.dirt.com/more-dirt/real-estate-listings/nile-niami-the-one-house-bel-air-1203360444/.

new broker group and seeking Court approval thereof. The Debtor believes that the Property has a current fair market value of approximately $325 million in its "as-is" nearly complete condition.

The Debtor believes that the overall pre-petition claims asserted against the Debtor total approximately $180 million, with approximately $176 million of such claims allegedly secured by the Property.[5]  Thus, the Debtor has approximately $145 million of equity in the Property.  Even if the Property sold for substantially less than $325 million, for example $250 million, the Debtor would still have $70 million of equity in the Property and more than substantial funds to pay all allowed claims in full.

In regard to claims secured by the Property and potentially the Debtor's cash collateral, Hankey is the senior secured creditor with a lien on the Property and an interest in cash collateral.  In addition to Hankey, the Debtor is informed and believes that three other entities - YOGI Securities Holdings, LLC, Inferno Investment Inc., and Hilldun Corporation allege claims secured by the Property and potentially the Debtor's cash collateral.  There is also a tax lien and various mechanics' lien creditors.

Unfortunately, before the Property could be fully completed and sold (either as a fully completed or nearly completed project), Hankey, as well as a number of other junior secured lenders and mechanic's lien holders initiated a multitude of state court actions against the Debtor seeking, among other things, to recover amounts allegedly owed and to foreclose on the Property.   In connection with its action, Hankey sought and obtained the appointment of the Receiver for the Property.  In addition, Hankey had a foreclosure sale of the Property set for October 27, 2021.

In order to protect its substantial equity in the Property and to address the myriad of litigation and claims against it, the Debtor filed its bankruptcy case on the Petition Date of October 26, 2021, which stayed the foreclosure sale.  Immediately after the Debtor's bankruptcy petition was filed, pursuant to Section 543, the Debtor's counsel demanded that the Receiver, among other things, (1) turnover the Property and other property of the estate that was in the possession of the Receiver on the Petition Date, including cash held in an account controlled by the Receiver, which is currently

---

[5] In connection with preparing the Debtor's Schedules of Assets and Liabilities, which are currently due on November 23, 2021, the Debtor's professionals are continuing to review documents and information regarding claims against the Debtor, some of which were only recently received from the Receiver.

all the cash the Debtor has, and (2) to cease exercising control over such estate property. The Debtor, Hankey, and the Receiver are working to resolve issues related to access to the Property and turnover of estate property to the Debtor.

It is imperative for the Debtor regain possession and control over the Property and to obtain the breathing spell afforded by the automatic stay not only to stop the foreclosure and protect equity in the Property, but also to provide time and a means for the Debtor to sell the Property. The Debtor also has brokers who have been showing the Property and the Debtor will soon file an application to employ its brokers to market and sell the Property in furtherance of its efforts to sell the Property as soon as practicable for the highest price possible under the circumstances. As discussed above, the Debtor believes that such sale will generate sufficient funds to pay all allowed claims in full, which will allow the Debtor to exit bankruptcy, either pursuant to a plan or an alternative exit strategy, with a surplus for the Debtor's owner. While the Debtor believes that the structured dismissal option is more favorable because it offers substantial cost and time savings, which will benefit all parties in interest, in the event dismissal is not possible, the Debtor will propose a simple reorganization plan with terms similar to the expected conditions for dismissal – *i.e.*, paying all allowed claims in full on the effective date of the plan.

**C.**    **THE NEED TO MAINTAIN UTILITY SERVICES AND PROPOSED AMOUNT AND MEANS OF PAYING ADEQUATE ASSURANCE OF FUTURE PAYMENT TO THE LADWP PURSUANT TO 11 U.S.C. § 366.**

The Debtor is the account holder for utility services provided by the LADWP at the Property. The Debtor needs to maintain services provided by the LADWP so that it can continue to maintain the Property, including pools and numerous other water features. If the pools and water features lie dormant for even a short period, they become murky. It is also important that there is no interruption in services provided by the LADWP, because, as discussed above, the Debtor is showing the Property to prospective buyers and the Property shows much better when lit up with fountains and other water features clean and operational. Based on the foregoing, it is crucial that the means of setting and providing "adequate assurance of payment" to the LADWP be determined immediately so that there is no interruption in the services provided.

1    Prior to the commencement of the Debtor's bankruptcy case, the LADWP provided

2    utility services to the Debtor.  The Debtor intends to provide "adequate assurance of payment" by

3    providing the LADWP with a cash deposit, as authorized by Section 366(c)(1)(A)(i), in the amount

4    set forth in **Exhibit "1."**  The proposed LADWP deposit in the amount of $8,845.59 was determined

5    based on an average of the last three (3) bills received by the Debtor from the LADWP.

6    The source of funds to be used to pay the cash deposit to the LADWP will be from the

7    Debtor's cash, which is currently held by the Receiver.  Given relatively small amount of the

8    deposit, the Debtor submits that the payment thereof will not render the Debtor administratively

9    insolvent.

10    **II.**

11    **DISCUSSION**

12    A.    **THE COURT SHOULD SET THE AMOUNT OF, AND AUTHORIZE THE**
13    **DEBTOR TO PROVIDE, ADEQUATE ASSURANCE OF FUTURE PAYMENT TO**
**THE LADWP PURSUANT TO 11 U.S.C. § 366 AS REQUESTED HEREIN.**

14    Section 366, as amended by The Bankruptcy Abuse Prevention and Consumer Protection

15    Act of 2005 ("<u>BAPCPA</u>") and applicable herein, provides, in pertinent part, as follows:

16

17    (a) Except as provided in subsections (b) and (c) of this section, a
utility may not alter, refuse, or discontinue service to, or
18    discriminate against, . . . the debtor solely on the basis of the
commencement of a case under this title or that a debt owed by the
19    debtor to such utility for services rendered before the order for
relief was not paid when due.
20    . . .

21
(c)(2) Subject to paragraphs (3) and (4), with respect to a case filed
22    under chapter 11, a utility referred to in subsection (a) may alter,
refuse, or discontinue utility service, if during the 30-day period
23    beginning on the date of the filing of the petition, the utility does
not receive from the debtor . . . adequate assurance of payment for
24    the utility service that is satisfactory to the utility.

25
(3)(A) On request of a party in interest and after notice and a
26    hearing, the court may order the modification of the amount of an
assurance of payment under paragraph (2)."
27

28    11 U.S.C. § 366.

8

Whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case. *See Massachusetts Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (1st Cir. B.A.P. 1981). Prior to the enactment of BAPCPA, where a debtor has, with few exceptions, timely paid its utility bills prior to the commencement of its chapter 11 case, the administrative expense priority provided in sections 503(b) and 507(a)(1) often constituted adequate assurance of payment, and no deposit or other security was required. *See Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 651 (2d Cir. 1997); *see also Demp v. Philadelphia Elec. Co. (In re Demp)*, 22 B.R. 331, 332 (Bankr. E.D. Pa. 1982).

Now, pursuant to BAPCPA, the administrative expense priority provided by Sections 503(b) and 507(a)(1) specifically is not a means of providing "assurance of payment" under Section 366(c)(2). 11 U.S.C. § 366(c)(1)(B). Instead, a Chapter 11 debtor must provide "assurance of payment" pursuant to Section 366(c)(1)(A) of the Bankruptcy Code, which states that "assurance of payment" means: a cash deposit, a letter of credit, a certificate of deposit, a surety bond, a prepayment of utility consumption, or another form of security that is mutually agreed on between the utility and the debtor. 11 U.S.C. § 366(c)(1)(A).

Based on the foregoing, during the first 30 days following the commencement of a voluntary Chapter 11 bankruptcy case, a utility may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of the case or the failure of the debtor to pay a pre-petition debt for utility services provided. Following the foregoing 30-day period, however, utility companies may alter, refuse or discontinue service if the debtor does not furnish adequate "assurance of payment" of post-petition utility service obligations that is satisfactory to the relevant utility.

Under Section 366(c), this Court has exclusive responsibility for determining what constitutes adequate assurance of payment of post-petition utility charges and is not bound by local or state regulations. *See e.g., Begley v. Philadelphia Elec. Co. (In re Begley)*, 41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984), aff'd, 760 F.2d 46 (3d Cir. 1985) (pre-BAPCPA); *Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 195 (Bankr. D. Ohio 1983) (pre-BAPCPA case

finding that determinations of adequate assurance under section 366 are fully within the Court's discretion).

In the case herein, the Debtor intends to provide "adequate assurance of payment" by providing the LADWP with a cash deposit, as authorized by Section 366(c)(1)(A)(i), in the amount set forth in **Exhibit "1."** The proposed LADWP deposit in the amount of $8,845.59 was determined based on an average of the last three (3) bills received by the Debtor from the LADWP.  LADWP bills are billed every two months. The foregoing deposit amount constitutes the last three (3) bimonthly bills with the average divided by two so that it reflects an average on a monthly basis.

B.      THE COURT SHOULD AUTHORIZE THE DEBTOR (AND THE RECEIVER) TO USE CASH COLLATERAL (TO THE EXTENT APPLICABLE) TO PAY THE LADWP ADEQUATE ASSURANCE DEPOSIT.

The source of funds to be used to pay the cash deposit to the LADWP will be from the Debtor's cash, which is currently held by the Receiver and which the Debtor is informed and believer was generated from renting the Property for location and video shoots and, the Debtor believes, may not constitute cash collateral  To the extent that an entity has a valid security interest in such revenues generated by the Property, those revenues constitute "cash collateral" under Section 363(a).  Pursuant to Section 363(c)(2), the Court may authorize a debtor to use a secured creditor's cash collateral if the secured creditor consents or is adequately protected.  11 U.S.C. § 363(c)(2); *see In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984);  *see also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. l988).

The Court has broad discretion to determine whether adequate protection is furnished. *See e.g., In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).  In considering adequate protection under Section 361, the Ninth Circuit has made clear that, in the case of an oversecured creditor, an equity cushion of 20% is considered *de facto* adequate protection of a secured creditor's interest.  *In re Mellor*, 734 F.2d 1396, 1401 (9th Cir. 1984) (court considered adequate protection under Section 361 in connection with reviewing a relief from stay motion under Section 362 and held that a 20% equity cushion constituted adequate protection); *see also In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding a 10% cushion is sufficient to be

adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (court decided that an equity cushion of approximately 15% to 20% was sufficient adequate protection to the creditor, even though the debtors had no equity in the property.)

The law is also clear that the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988); *see also In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982). In *Stein*, the court found that, as a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral, and allowed the debtor therein to use cash collateral even though the secured party had no equity cushion for protection. The *Stein* court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. *See also In re McCombs, supra*, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

Additionally, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor, supra*, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

808 F.2d at 1937.

Here, the Debtor understands that Hankey consents to the use of cash collateral to pay the proposed $8,845.59 LADWP deposit and that the Receiver also consents to the payment of the deposit from the cash he is holding.  The Debtor believes all secured creditors with an interest in cash collateral, all of which will receive the moving papers and notice of the hearing by overnight mail or NEF, will either not object to the use of cash collateral to pay the LADWP deposit or will affirmatively consent to the payment of the deposit.

To the extent there is not consent, the Debtor submits that all secured creditors are secured by an adequate equity cushion in excess of 20%, whether the Property is valued at the Debtor's estimated value of $325 million or a substantially lower value of $250 million – e.g.:

| Value of Property | $   325,000,000.00 | $   250,000,000.00 |
|---|---|---|
| Secured Claims | $ (176,000,000.00) | $ (176,000,000.00) |
| Overall Equity Cushion ($) | $   149,000,000.00 | $   74,000,000.00 |
| Overall Equity Cushion (%) | 85% | 42% |
|  |  |  |
| Equity Cushions Greater for Higher Priority Lien Holders |  |  |

Even in the absence of such an equity cushion, and the Debtor submits that the Court need not determine that issue in connection with the payment of a relatively nominal security deposit, any secured creditors will be adequately protected by the maintenance of the Property and the value thereof, as well as the Debtor's ability to continue to market the Property for sale for the highest price possible.

### III.

### CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

(1)    affirming the adequacy of the notice given;

(2)    granting the Motion in its entirety;

1      (3)      authorizing the Debtor to provide adequate "assurance of payment" to the

2  LADWP via a cash deposit in the amount of $8,845.59 as set forth and calculated in **Exhibit "1"**

3  hereto and directing the Receiver to immediately pay such deposit;

4      (4)      deeming the cash deposit paid by the Debtor to the LADWP in the amount of

5  $8,845.59 as set forth and calculated in **Exhibit "1"** hereto to constitute adequate "assurance of

6  payment" pursuant to 11 U.S.C. § 366(c);

7      (5)      requiring the LADWP to return the deposit provided for herein within ten (10)

8  business days if, and when, the LADWP's services are terminated by the Debtor; and

9      (6)      granting such other and further relief as the Court deems just and proper under

10  the circumstances.

11  Dated: November 18, 2021                        CRESTLLOYD, LLC

12
                                                 */s/ David B. Golubchik*
13                                               DAVID B. GOLUBCHIK
                                                 TODD M. ARNOLD
14                                               LEVENE, NEALE, BENDER, YOO
                                                     & GOLUBCHIK L.L.P.
15                                               Attorneys for Debtor and
                                                 Debtor in Possession
16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF LAWRENCE R. PERKINS

I, LAWRENCE R. PERKINS, hereby declare as follows:

1.     I am over 18 years of age.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.     I am the Founder and Chief Executive Officer of SierraConstellation Partners LLC ("SCP") and have nearly 20 years of management consulting and advisory experience with companies undergoing transition. I have enhanced business performance for numerous companies on projects ranging from interim management, profit improvement and working capital management to strategic planning and transaction execution.

3.     I have served in a variety of senior level positions including Financial Advisor, Strategic Consultant, Investment Banker, Financial Executive, and Crisis Manager to numerous middle market companies and believe that I am particularly skilled at assisting clients through challenging situations.

4.     Prior to founding SCP, I was a Senior Managing Director and Regional Leader of a national consulting firm where he was responsible for business development, marketing, staffing, and general management of the firm's western region. I joined the firm in 2010 when it acquired El Molino Advisors, a company I founded in January 2007 and led as the CEO.

5.     I began my career in the strategic consulting group of Arthur Andersen after graduating from the University of Southern California Marshall School of Business. I am currently on the board of several non-profits, and two corporate boards, and am a member of the Young Presidents Organization.

6.     SCP is the current Non-Member Manager of the Debtor.

7.     I make this Declaration in support of the Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the Motion.

8.     On October 26, 2021 (the "Petition Date"), the Debtor its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

14

9.     The Debtor's primary asset is the residential real Property that it developed, which is located at 944 Airole Way, Los Angeles, CA 90077.  I am informed and believe that the Property is one of the finest pieces of real property in America.  The Property is situated on a four-acre Bel Air promontory, featuring the best views of Los Angeles.  A moat that encompasses the Property gives the impression that it's floating on water.  I am informed and believe that the approximately 105,000-square-foot glass and marble compound holds 20 bedrooms, each with sweeping views of Los Angeles and the ocean, and 30 bathrooms, as well as every amenity in the world.  I am informed and believe that it features a 30-car garage, four swimming pools, a two-story waterfall, and numerous other water features, as well as two restaurant-grade kitchens, an indoor/outdoor entertainment center with its own VIP room, a movie theater, charitable organization rooms, a four-lane bowling alley, a library with floor-to-ceiling windows, a full beauty salon, a spa with a steam room and jacuzzi, a cigar lounge, and a gym.  I am informed and believe that three smaller villas also sit on the property, spread across the four acres.  I am informed and believe that the 5,000-square-foot master suite is an oasis within the mansion.  Designed with its own separate office and walk-in closet, the suite also has its own pool and kitchen.  To guarantee privacy, it's isolated from the rest of the house.  The mansion includes five elevators and LED ceilings that display images of moving clouds. The Property features state-of-the-art technology, with a full security center.  The design encompasses secondary corridors for staff to use.

10.     The Property requires some work to be fully completed, which I am informed and believe will cost approximately $5-$10 million.  However, even in its current state of near-completion, the Property can be and has been marketed for sale.  In fact, the Debtor is in the process of retaining a new broker group and seeking Court approval thereof. I am informed and believe that the Property has a current fair market value of approximately $325 million in its "as-is" nearly complete condition.

11.     I am informed and believe that that the overall pre-petition claims asserted against the Debtor total approximately $180 million, with approximately $176 million of such claims allegedly secured by the Property.  In connection with preparing the Debtor's Schedules of Assets and Liabilities, which are currently due on November 23, 2021, the Debtor's professionals are

continuing to review documents and information regarding claims against the Debtor, some of which were only recently received from the Receiver.

12.    In regard to claims secured by the Property and potentially the Debtor's cash collateral, I am informed and believe that Hankey is the senior secured creditor with a lien on the Property and an interest in cash collateral.  In addition to Hankey, I am informed and believe that three other entities - YOGI Securities Holdings, LLC, Inferno Investment Inc., and Hilldun Corporation allege claims secured by the Property and potentially the Debtor's cash collateral.  There is also a tax lien and various mechanics' lien creditors.

13.    Unfortunately, before the Property could be fully completed and sold (either as a fully completed or nearly completed project), Hankey, as well as a number of other junior secured lenders and mechanic's lien holders initiated a multitude of state court actions against the Debtor seeking, among other things, to recover amounts allegedly owed and to foreclose on the Property.  In connection with its action, Hankey sought and obtained the appointment of the Receiver for the Property.  In addition, Hankey had a foreclosure sale of the Property set for October 27, 2021.

14.    In order to protect its substantial equity in the Property and to address the myriad of litigation and claims against it, the Debtor filed its bankruptcy case on the Petition Date of October 26, 2021, which stayed the foreclosure sale.  Immediately after the Debtor's bankruptcy petition was filed, pursuant to Section 543, the Debtor's counsel demanded that the Receiver, among other things, (1) turnover the Property and other property of the estate that was in the possession of the Receiver on the Petition Date, including cash held in an account controlled by the Receiver, which is currently all the cash the Debtor has, and (2) to cease exercising control over such estate property.  The Debtor, Hankey, and the Receiver are working to resolve issues related to access to the Property and turnover of estate property to the Debtor.

15.    It is imperative for the Debtor regain possession and control over the Property and to obtain the breathing spell afforded by the automatic stay not only to stop the foreclosure and protect equity in the Property, but also to provide time and a means for the Debtor to sell the Property.  The Debtor also has brokers who have been showing the Property and the Debtor will soon

1    file an application to employ its brokers to market and sell the Property in furtherance of its efforts to

2    sell the Property as soon as practicable for the highest price possible under the circumstances.

3         16.    I am informed and believe that the Debtor is the account holder for utility services

4    provided by the LADWP at the Property.  The Debtor needs to maintain services provided by the

5    LADWP so that it can continue to maintain the Property, including pools and numerous other water

6    features.  I am informed and believe that, if the pools and water features lie dormant for even a short

7    period, they become murky.  It is also important that there is no interruption in services provided by

8    the LADWP, because, as discussed above, the Debtor is showing the Property to prospective buyers

9    and the Property shows much better when lit up with fountains and other water features clean and

10    operational.  Based on the foregoing, it is crucial that the means of setting and providing "adequate

11    assurance of payment" to the LADWP be determined immediately so that there is no interruption in

12    the services provided.

13         17.    Prior to the commencement of the Debtor's bankruptcy case, the LADWP

14    provided utility services to the Debtor.  The Debtor intends to provide "adequate assurance of

15    payment" by providing the LADWP with a cash deposit, as authorized by Section 366(c)(1)(A)(i), in

16    the amount set forth in **Exhibit "1."**  The proposed LADWP deposit in the amount of $8,845.59 was

17    determined based on an average of the last three (3) bills received by the Debtor from the LADWP.

18         18.    The source of funds to be used to pay the cash deposit to the LADWP will be from

19    the Debtor's cash, which is currently held by the Receiver.  Given relatively small amount of the

20    deposit, I that the payment thereof will not render the Debtor administratively insolvent.

21         19.

22         I declare and verify under penalty of perjury that the foregoing is true and correct to the

23    best of my knowledge.

24         Executed on this 18th day of November 2021, at Los Angeles, California.

25

26

27    _____

28    LAWRENCE R. PERKINS

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "1"**

| VendorName | Type/Acct | Address | City | ST | ZipCode | Apr-21 | Jun-21 | Sep-21 | Average | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| LA DWP | Electric/Solid Waste/Water<br>Acct: 742-331-2228<br>Acct: 039-675-3615 | PO Box 30808 | Los Angeles | CA | 90030 | $15,376.52 | $16,103.22 | $21,593.80 | $8,845.59 | LA DWP bills are billed every two months. The foregoing figures constitute the last three bi monthly bills with the average divided by two so that it reflects average on a monthly basis. |
| **TOTAL** | | | | | | | | | **$8,845.59** | |
| | | | | | | | | | | |
| | | | | | | | | | | |

EXHIBIT "1"

1

# PROOF OF SERVICE OF DOCUMENT

2

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

4

5

A true and correct copy of the foregoing document entitled **DEBTOR'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR ENTRY OF AN ORDER SETTING THE AMOUNT OF, AND AUTHORIZING DEBTOR TO PROVIDE, ADEQUATE ASSURANCE OF FUTURE PAYMENT TO UTILITY COMPANY PURSUANT TO 11 U.S.C. § 366; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

6

7

8

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 19, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

9

10

- **Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com**
- **Todd M Arnold    tma@lnbyg.com**
- **Marguerite Lee DeVoll    mdevoll@watttieder.com**
- **Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com**
- **David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com**
- **James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com**
- **Robert B Kaplan    rbk@jmbm.com**
- **Jane G Kearl    jkearl@watttieder.com**
- **Jennifer Larkin Kneeland    jkneeland@watttieder.com**
- **Michael S Kogan    mkogan@koganlawfirm.com**
- **Noreen A Madoyan    Noreen.Madoyan@usdoj.gov**
- **Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com**
- **David Seror    dseror@bg.law, ecf@bg.law**
- **Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Jessica Wellington    jwellington@bg.law, ecf@bg.law**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**2.  SERVED BY UNITED STATES MAIL**: On **November 19, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

25

26

None.

27

☐ *Service information continued on attached page*

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 19, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ *Service List served by Overnight Mail on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 19, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                               **F 9013-3.1.PROOF.SERVICE**

In re Crestlloyd, LLC
Secured Creditors
File No. 9562

County of Los Angeles
(MRCA-Brush Fire Clear'g Dist #1)
200 North Main Street, 16th Fl
Los Angeles, CA 90012

County of Los Angeles
(Wildlife Corridor and Open Space
Protection)
c/o SCI Consulting Group
4745 Mangels Blvd.
Fairfield, CA 94534

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054

Counsel to Hankey Capital
Jeffer Mangels Butler & Mitchell LLP
Neil C. Erickson
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Inferno Investment Inc.
Attn: Julien Remillard, President
4-95 Kandahar, Mont Tremblant
Quebec J8E 1E2, Canada

County of Los Angeles
(Local Fire Prevention, Water Quality
and Open Space Measure )
c/o SCI Consulting Group
4745 Mangels Blvd.
Fairfield, CA 94534

Rolls Scaffold, Inc.
Michael Rolls, CEO
11351 County Dr. Ste B
Ventura, CA 93004

American Truck & Tool Rentals
Inc./American Rentals
c/o Caprenos Inc., Cindee Wood,
Authorized Agent
4345 Murphy Canyon Road #200
San Diego, CA 92123

YOGI Securities Holdings, LLC
Steve Oshins, Authorized Agent
1645 Village Center Circle, Ste. 170
Las Vegas, NV 89131

Calgrove Rentals Inc.
Guadalupe Gomez, President
456 Glenoaks Blvd.
San Fernando, CA 91340

Hilldun Corporation
Jeffrey D. Kapelman, CEO
225 West 35th St.
New York, NY 10001

J&E Texture, Inc.
Francisco Gonzalez, CEO
181 Exter Way
Corona, CA 92882

City of Los Angeles
Mike Feuer, City Attorney
City Hall East, Suite 800
Los Angeles, CA 90012

BMC West LLC
David Filtman, CEO
4800 Falls of Neuse Rd., Ste. 400
Raleigh, NC 27609

JMS Air Conditioning and Appliance
Services, Inc.
Yosi Hesica, CEO
7640 Burnet Ave.
Van Nuys, CA 91405

Kennco Plumbing, Inc.
Robert L. Kennedy, Jr., CEO
21366 Placerita Canyon Rd.
Newhall, CA 91321

Parquet By Dian
Dima Efros, CEO
16601 S. Main St.
Gardena, CA 90248

Powertek Electric, Inc.
Mike Moshrefi, CEO
28364 S, Western Ave. #414
Rancho Palos Verdes, CA 90275

County of Los Angeles (Wildlife Corridor
and Open Space Protection)/Clerk of the
Governing Board, Mountains Recreation
& Conservation Authority
5750 Ramirez Canyon Road
Malibu, CA 90265

County of Los Angeles
(Local Fire Prevention, Water Quality
and Open Space Measure )
Conejo Recreation and Park District
403 W Hillcrest Drive
Thousand Oaks, CA 91360

YOGI Securities Holdings, LLC
c/o Daniel Wiesel, Esq.
Wolf, Rifkin, Shapiro, Schulman &
Rabkin, LLP
11400 W. Olympic Blvd., 9th Fl.
Los Angeles, CA 90064-1582

American Truck & Tool Rentals
Inc./American Rental
Tom Murray, CEO and President
88 W. Victoria St.
Long Beach, CA 90805

Buchalter, APC
Jeffrey S. Wruble
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017

Calgrove Rentals Inc.
21627 Roscoe Bl.
Canoga Park, CA 91304

BMC West LLC
3250 N. San Fernando Rd.
Los Angeles, CA 90065

Kennco Plumbing, Inc.
Robert L. Kennedy, Jr., CEO
26575 Ruether Ave.
Santa Clarita, CA 91350

Los Angeles County Tax Collector
PO Box 54018
Los Angeles, CA 90054

Los Angeles County Tax Collector
225 N. Hill Street # 1
Los Angeles, CA 90012

SHULMAN BASTIAN FRIEDMAN &
BUI LLP
Ryan D. O'Dea
100 Spectrum Center Drive, Ste. 600
Irvine, CA 92618

In re Crestlloyd, LLC
D UST Receiver RSN + 20 Largest
File No.: 9562

**Debtor**
Crestlloyd, LLC
c/o SierraConstellation Partners LLC
355 S. Grand Avenue Suite 1450
Los Angeles, CA 90071

Noreen A Madoyan
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Counsel For Receiver
Brutzkus Gubner Rozansky Seror
Weber LLP
David Seror/Jessica Wellington
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Biabani & Associates, Inc.
Attn: Alex Biabani
1600 Sawtelle Bl #104
Los Angeles, CA 90025

Bradford Sheet Metal
4164 Sopp Road
Mojave, CA 93501

Branden Williams
257 N. Cannon Dr., 2nd Fl.
Beverly Hills, CA 90210

C.G.S. Custom Glass Specialists
Attn: Tom Yang
4536 Ish Drive
Simi Valley, CA 93063

CAD Stone Works Inc.
Attn: Cesar Hernandez
4533 Van Nuys Bl. #201
Sherman Oaks, CA 91403

Centurion Air, LLC
Attn: Michael T. Pyle
13932 Arrow Creek Road
Draper, UT 84020

Davidson Accountancy Corp.
William N. Davidson, CPA
14011 Ventura Blvd., Ste. 302
Sherman Oaks, CA 91423

Creative Art Partners
6542 Hayes Dr.
Los Angeles, CA 90048

Crest Real Estate
Attn: Jason Somers
11150 Olympic Bl. #700
Los Angeles, CA 90064

Draken Security
Attn: Jamie Salanga
8225 Encino Ave
Northridge, CA 91325

Dennis Palma
146 Beach Way
Monterey, CA 93940

Italian Luxury Design
4 NE 39 St.
Miami, FL 33137

Jabs Pools and Spas, LLC
Attn: Georgina Rendon
8055 Matilija Ave.
Panorama City, CA 91402

Vesta (aka Showroom Interiors, LLC)
Attn: Julian Buckner
8905 Rex Road
Pico Rivera, CA 90660

KN Coating
201 E. Tamarack Ave
Inglewood, CA 90301

LA DWP
P.O. Box. 30808
Los Angeles, CA 90030

West Valley Green Landscaping, Inc.
14761 Tupper St.
Panorama City, CA 91402

Made by TSI, Inc.
888 Biscayne Blvd #209
Miami, FL 33132

Midland Contractors, Inc.
Attn: Bruce Partovi
Po Box 8312
Van Nuys, CA 91409

West Coast Gates
339 Isis Ave.
Inglewood, CA 90301

In re Crestlloyd, LLC
Utility Service List
File No. 9562

LA DWP
Acct: 742-331-2228
Acct: 039-675-3615
PO Box 30808
Los Angeles, CA 90030

LA DWP
Acct: 742-331-2228
Acct: 039-675-3615
PO Box 515407
Los Angeles, CA 90051-6707

City of Los Angeles Department of
Water and Power
111 N. Hope St.
Los Angeles CA 90012

City of Los Angeles Department of
Water and Power – West LA
1394 S. Sepulveda
Los Angeles CA 90025

L.A. DWP – Bankruptcy Unit
PO Box 51111
Los Angeles, CA 90051