DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyg.com; tma@lnbyg.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CRESTLLOYD, LLC,<br><br>      Debtor and Debtor in Possession. | Case No.: 2:21-bk-18205-DS<br><br>Chapter 11 Case<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION TO:**<br>**(1) APPROVE AUCTION AND BID PROCEDURES REGARDING THE SALE OF REAL PROPERTY AND**<br>**(2) SET SCHEDULING FOR A MOTION TO APPROVE THE SALE OF REAL PROPERTY;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF**<br><br>Hearing:<br>  Date:     January 6, 2022<br>  Time:    11:30 a.m.<br>  Place:   Courtroom 1639<br>          255 E. Temple St.<br>          Los Angeles, CA 90012<br>          **VIA ZOOMGOV ONLY** |

**PLEASE TAKE NOTICE** that, Crestlloyd, LLC, the Chapter 11 debtor and debtor in possession herein (the "Debtor"), hereby moves (the "Bid Procedures Motion"), pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 2002 and 6004 and Local Bankruptcy Rule ("LBR") 6004-1(b) and 9075-1, for the entry of an order,

(1)    approving the bid procedures regarding the auction (the "Auction") and sale of the Debtor's real property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property") set forth in the *Bidder Terms And Conditions 944 Airole Way, Los Angeles, California* (the "Bid Procedures" or "Terms and Conditions") attached hereto as **Exhibit "1,"** which were agreed to by the Debtor and Concierge Auctions, LLC ("Auctioneer" or "Concierge")[1] and are summarized as follows:[2]

a.    **Auction Date:** Commence February 7, 2022 and conclude February 10, 2022 (the "Auction End Date").

b.    **Reserve Price:** None.

c.    **Conduct of the Auction:** The Auction will be conducted online through the Auctioneer's website, and information regarding the conduct of the Auction, including the Bid Procedures, will be maintained on a web page for the Property maintained by the Auctioneer.

d.    **Bidder Qualification:** In order to qualify as a bidder (a "Bidder") for the Auction, each prospective Bidder must: (1) sign the Terms and Conditions and return them to the Auctioneer so that they are actually received by the Auctioneer before any bids are made by Bidder, (2) wire a deposit in the amount of US $250,000 (the "Bidder's Deposit") into the Escrow Agent's account per the instructions set forth on the Property web page so that it is actually received by the Escrow Agent before any bids are made by Bidder, and (3) show proof of funds and/or readily

---

[1] The Debtor's application to employ (1) The Beverly Hills Estates ("TBHE"), with Branden Williams and Rayni Williams as lead agents, and Compass ("Compass") and, with TBHE the "Brokers"), with Aaron Kirman as lead agent, as real estate brokers and (2) Concierge Auctions, LLC as Auctioneer is pending with the Court.

[2] This is a summary only. The Debtor is seeking approval of all of the Bid Procedures set forth in Exhibit "1" and, if approved by the Court, all of the Bid Procedures set forth in Exhibit "1" shall apply to the proposed Auction and sale of the Property. To the extent there is any discrepancy between this summary and the actual terms of the Bid Procedures set forth in Exhibit "1," the actual terms of the Bid Procedures set forth in Exhibit "1" shall govern in all respects.

liquidated assets sufficient to purchase the Property so that such proof of funds and/or readily liquidated assets are actually received by the Auctioneer before any bids are made by Bidder.  The "Escrow Agent" shall be set forth on the Property web page.  If Bidder is the Buyer (as defined below) or the Back-Up Buyer (as defined below), the Bidder's Deposit shall be handled in accordance with the Terms and Conditions (as further described below) and any Purchase and Sale Contract (as defined and discussed below) executed by Bidder.  If Bidder is not the Buyer or the Back-Up Buyer, then the Bidder's Deposit shall be refunded by 5:00 p.m. EST on the second business day following the Auction.

e.    **Buyer and Back-Up Buyer:** Subject to Court approval, the Bidder who submits the highest bid (the "High Bid") (meaning the highest bid acknowledged by the Auctioneer) will be the buyer (the "Buyer") of the Property, and the Bidder who submits the second highest bid (the "Second High Bid") (meaning the second highest bid acknowledged by the Auctioneer) will be the back-up buyer (the "Back-Up Buyer") of the Property.

In the event of any dispute among Bidders, or in the event of doubt on the part of the Auctioneer as to the validity of any bid, the Auctioneer will have the final discretion to determine the High Bid, the Buyer, the Second High Bid, and the Back-Up Buyer.  If any dispute arises after the Auction, the Auctioneer's Auction record shall determine conclusively all bidding issues, including but not limited to the High Bid, the Buyer, the Second High Bid, and the Back-Up Buyer.

f.    **Buyer's Premium:** The Buyer (and the Back-Up Buyer if the Buyer defaults) will be required to pay a fee to the Auctioneer in the amount of twelve percent (12%) of the purchase price (the "Purchase Price") to be paid by the Buyer (or the Back-Up Buyer if the Buyer defaults) (the "Buyer's Premium").  The Buyer's Premium to be paid to the Auctioneer in connection with the Auction is separate from the Purchase Price for the Property to be paid to the Debtor and is an obligation of the Buyer to the Auctioneer.  The Escrow Agent shall hold any Bidder

Deposits and the Buyer's Premium.  Buyer acknowledges and agrees that the Buyer's Premium is deemed earned upon conclusion of the Auction and that the Buyer's Premium shall be disbursed to the Auctioneer by the Escrow Agent, provided that the conditions to payment of the Buyer's Premium to the Auctioneer established by the Court have been satisfied.  The Buyer's Premium is not a real estate commission; it is the fee that the Auctioneer charges to bidders for bringing the Property to auction. Any applicable real estate commissions will be as set forth in the California Association of Realtors' standard Residential Purchase Agreement and Joint Escrow Instructions (C.A.R. Form RPA, Revised 12/21), Contingency Removal (C.A.R. Form CR, Revised 12/21), and related agreements (the "Purchase and Sale Contract") to be signed by the Buyer and any Back-Up Buyer and will be paid by the Debtor. The Auctioneer is merely an auctioneer – it is not acting as a real estate agent in any capacity for any party and it is not involved in any way in connection with the closing of any real property transaction and all such real estate brokerage, closing and escrow functions will be handled exclusively by third party real estate brokers or other professionals.

g.    **Bid Acceptance; Completion; Auction Methods:** Once bidding is completed and the Buyer and any Back-Up Buyer are declared, the Buyer and any Back-Up Buyer (conditioned upon Buyer's default) will be required to immediately execute the Purchase and Sale Contract in substantially the form attached to the Terms and Conditions as **Exhibit "A"** and other documents required by the Escrow Agent or otherwise in connection with the purchase of the Property, with the only material revisions being the name of the Buyer and the Purchase Price.  The executed Purchase and Sale Contract and other documents reasonably required by the Escrow Agent must be received by the Escrow Agent from (1) the Buyer by no later than 5:00 p.m. Pacific Time on the first business day following the Auction End Date and (2) any Back-Up Buyer by no later than 5:00 p.m. Pacific Time on second business day following written notice from the Auctioneer, the Escrow Agent, or the Debtor (or any of their attorneys) that the Buyer

defaulted and that the Back-Up Buyer's Second High Bid is accepted.  The Back-Up Buyer's Second High Bid amount shall be irrevocable and the Back-Up Buyer is required to keep its bid and offer to purchase the Property open, and to allow the Escrow Agent or any other Escrow Company or Title Company holding the Back-Up Buyer's Bidder's Deposit, to maintain any Bidder's Deposit paid by the Back-Up Buyer in connection with the sale of the Property (or any other amounts collected from the Back-Up Buyer) (collectively the "Back-Up Deposit") (subject to applicable laws) for a period of 45 days after the Auction End Date.

The Buyer shall initiate a wire transfer to the Escrow Agent to increase its Bidder's Deposit up to twelve percent (12%) of the Purchase Price (the "Deposit"). The Deposit must be received by the Escrow Agent no later than 5:00 p.m. Pacific Time on the second business day following the Auction End Date.

If the Buyer: (1) defaults under the Terms and Conditions, and/or the applicable Purchase and Sale Contract, or (2) the Court does not approve the sale of the Property to the Buyer, the Auctioneer shall have the right to declare the Back-Up Buyer to be the Buyer of the Property within forty-five (45) days after the Auction End Date.  If the Back-Up Buyer is declared the Buyer, the Back-Up Buyer shall initiate a wire transfer to the Escrow Agent to increase its Back-Up Deposit up to twelve percent (12%) of the Purchase Price. The Back-Up Buyer's Deposit must be received by the Escrow Agent no later than 5:00 p.m. Pacific Time on the second business day following written notice from the Auctioneer, the Escrow Agent, or the Debtor (or any of their attorneys) that the Buyer defaulted and that the Back-Up Buyer's Second High Bid is accepted

Other than in regard to the Default Provisions in the Terms and Conditions, including in regard to the retention of any Bidder's Deposit, Deposit, or Back-Up Deposit by the Auctioneer and/or the Debtor, as between Buyer and the Debtor, the Purchase and Sale Contract supersedes any and all other documents or information (including without limitation the Terms and Conditions) and serves as the definitive document for the purchase and sale of the Property.

5

h.  **Closing:** The closing date shall be February 28, 2022, unless extended by agreement between the Debtor and the Buyer.

i.  **Bidder Default:** A Bidder's failure to comply with the Terms and Conditions will result in a default and, upon default, without any required notice to the Bidder, the Bidder's Deposit, Deposit, Back-Up Deposit and any Buyer's Premium shall be retained by the Debtor and/or the Auctioneer in addition to other equitable and legal remedies under applicable law, all of which are reserved.

j.  **Other Conditions of Sale:** (1) the Bidder shall, at the Bidder's sole expense and prior to the commencement of the Auction, obtain any and all inspections and repairs that it deems appropriate, (2) if for any reason, or no reason whatsoever, the Debtor is unable to deliver good and marketable title to the Property to the Bidder, the Bidder's sole remedy shall be the return of any money that it has deposited toward the purchase of the Property, (3) the Debtor is selling the Property in its "AS IS, WITH ALL FAULTS" condition or basis by warranty deed without any representations or warranties whatsoever, including, without limitation, representations or warranties as to oil and mineral rights, city or government agency notifications regarding work to be done, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property, provided, however, that the Debtor shall be required to deliver good and marketable title to the Buyer or any Back-Up Buyer, (4) THE BUYER'S PURCHASE OF THE PROPERTY IS A CASH TRANSACTION WITH NO CONTINGENCIES OR CONDITIONS OF ANY KIND, including, without limitation, a contingency for financing, due diligence or inspections, except that the Debtor is required to (y) obtain Court approval and the entry of an order of the Court approving the sale of the Property to the Buyer that is not subject to a stay pending appeal and (z) deliver good and marketable title to the Property to the Buyer, (5) the sale of the Property is subject to Court approval after notice to the United States Trustee, all creditors, and all parties in

interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules, which approval will be obtained by the Debtor as soon as reasonably practicable after the completion of the Auction, and (6) the Property is being sold subject to standard allocations and any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property; title, however, is to be transferred free and clear of all liens, claims and encumbrances except those non-monetary liens and encumbrances set forth on that certain preliminary title report prepared by Chicago Title Company and dated as of November 16, 2021, a copy of which will be available on the Property web page.

(2)    setting the following scheduling for a motion to approve the sale of the Property (the "Sale Motion Scheduling"):

| February 15, 2022 | Deadline for the Debtor to file and serve motion to approve the sale of the Property (the "Sale Motion"). |
|---|---|
| February 22, 2022 | Deadline for any parties in interest to file and serve any oppositions to the Sale Motion. |
| February 24, 2022, at 2:00 p.m. (Pacific) | Deadline for any parties in interest to file and serve any replies to any oppositions to the Sale Motion. |
| February 25, 2022, at 10:00 a.m. (Pacific) | Hearing on the Sale Motion |

**PLEASE FURTHER TAKE NOTICE** that as required by LBR 6004-1(b)(2), the Debtor provides the following information regarding the marketing efforts undertaken and the anticipated additional marketing efforts to be undertaken for the Property, as follows:

The Brokers have done/intend to do the following:[3]

a.    **Photography and Video**

Daytime and twilight shoot with an architectural photo/videographers complete and top selects professionally edited

---

[3] Additional information regarding intended marketing by the Brokers and samples of certain marketing materials is attached hereto as **Exhibits "2" and "3."**

b.    **Before Launch**

Previews for qualified clients and sharing with the Brokers' personal network of high-end brokers.

c.    **Description**

One of the Brokers' in-house Copywriter will draft an impactful description to highlight the top features.

d.    **Branded Property Website**

Branded custom site created with agents contact info.

e.    **Official Launch**

Exclusive interview with The Wall Street Journal then officially live on the MLS after The Wall Street Journal publishes.

f.    **Syndication**

The MLS will feed to miscellaneous online sites, including: Zillow, RedFin, Realtor.com, Trulia, etc.

g.    **International**

Property info will be translated and uploaded to Caimeiju and Juwai, massive real estate portals that connect China's affluent real estate buyers with properties in prime luxury markets like Los Angeles.

As Compass' President of International Estates, Aaron Kirman will tap into his foreign database for this purchase. With plans to travel to the ultra-high end markets in Hong Kong, London, etc., this will be the focal point of any conversations with clients.

h.    **Postcard**

Direct mail postcard sent to local neighborhoods through wealth mapping.

i.    **Press Coverage**

The Wall Street Journal article should pick-up traction with other press outlets and one of the Brokers' public relations team will continue to pitch stories about the Property to various outlets such as Forbes, Architectural Digest, Robb Report, LA Times Mansion Global, NBC Open House, and more.

Mr. Kirman partners with Wicked Public Relations who will be sourcing various press outlets for the Property.

j.     **Eblasts**

JUST LISTED and OPEN TUES e-blasts sent to TBHE's contacts, including the Billionaire's List.

k.     **Print Ads**

The Brokers will place a large two-page spread in the MLS Magazine for agent eyes and a full-page spread in The Los Angeles Times.

The Property will also be featured weekly in our the Brokers' inventory ads.

Other potential target publications include Hamptons Magazine, The Beverly Hills Courier, LUXE Magazine, The New York Times, Montecito Journal, The Los Angeles Business Journal, and more.

l.     **Social Media**

Information regarding the Property will be seen by Mr. Kirman's 330K+ followers on Instagram & Facebook, including JUST LISTED & OPEN TUES stories and multi-picture posts followed by regular posts.

The foregoing will be followed by targeted social ads to increase web traffic and click through rates to the Property website. Personal tour with Rayni Williams and/or Branden Williams of TBHE on their weekly IGTV show, REAL TALK.

m.     **Print Collateral**

Tri-fold brochure and coffee table-style mood book with photos and copy showcased.

n.     **Open Houses (Daytime 11am-2pm And Twilight)**

The first Tuesday after official launch with the Brokers' team on-site to tour agents and buyers.o.  **AKG (Aaron Kirman Group) Technology**

Estate Dynamics is a tech stack that focuses on artificial intelligence based on AKG's cloud based data sets which concentrate on behavioral targeting during the home buying process. AKG built its technology to match the curated home to the right buyer, as

9

well as represent the best characteristics of a seller's home to the global luxury marketplace.  This technology will be used to market the Property.

The Auctioneer, Concierge, has done/intends to do the following:

a. **Public Relations**: Media inquiries will be handled by Concierge in cooperation with Concierge's public relations agency and in-house team. Prior media coverage has included the Wall Street Journal, Fox News, New York Times and Bloomberg, among many others.

b. **Digital Advertising**: A customized strategy through multiple channels of social media, display, and retargeting campaigns will be deployed—including Google retargeting and Facebook lead generation ad campaigns, targeted to reach potential buyers in the primary and feeder markets, as well as prior visitors to the property pages on ConciergeAuctions.com. Reaching over 2 million sites, the entire Google Display Network reaches over 90% of Internet users worldwide.

c. **Database & Private Client Group**: The Concierge database includes over 750,000 global contacts, including their Private Client Group. Targeted direct outreach will be made throughout the exposure period to luxury agents and potential buyers, as well as to Concierge's Private Client Group clientele, including documented billionaires, and prior registered bidders and agents who have participated in like-kind auctions.

d. **Digital Marketplace**: The Property will be "live" on Concierge's global luxury property and digital bidding marketplace, ConciergeAuctions.com, with a current auction feature and full listing with descriptive copy, photography, map, documents, and more.

e. **Cutting-Edge Technology**: Concierge uses cutting-edge technology to completely change the luxury real estate industry. A benefit because their technology tools monitor the activity of visitors to our site; they then use this information for marketing and sales outreach efforts.

f.     **Collateral & Direct Mailing**: Collateral will be printed for on-site distribution as well as direct mailed to targeted lists of potential buyers in a radius around the Property or to key feeder markets with a home valuation overlay. The Property will also be included in the catalogue—a high-quality, perfect-bound book, printed and made available for on-site distribution in markets of same-issue properties with concurrent exposure cycles, direct mailed monthly to selected members of the Concierge Private Client Group, Preferred Agents, $20M+ U.S. homeowners, and billionaires. The issue is additionally digitally distributed to Concierge subscribers.

g.     **Directional Signage**: Directional signage will be available to lead prospects to the Property.

h.     **Photography/Videography**: During the preparation period, the Concierge marketing team will review previous photography and videography taken for the Property and determine if a new or supplemental shoot is required.

i.     **Local MLS**: Consistency is another key component of the marketing strategy. Concierge will provide the listing Brokers with new language and (if required and necessary) photography consistent with the Property's custom marketing campaign for use in the Multiple Listing Service (MLS). Concierge will also request that the Brokers update this information in Zillow.com, Trulia.com, and Realtor.com, if applicable.

j.     **Listing Sites**: The Property will receive a listing on LuxuryRealEstate.com and Juwai.com.

k.     **Email Marketing**: In addition to receiving inclusion in Concierge's Auction Alert® email during the exposure period, the Property will also receive a drip email campaign, inclusive of preview event invite and/or Property email and auction reminder email to members of the Debtor's or Brokers' prospect list.

l.     **Transparent Reporting**: The Debtor will receive access to Concierge's Client Portal, which measures the success of their marketing and sales efforts for the Property, providing real-time access to key analytics and the Property's entire exposure

1    campaign.

2         Additional information regarding Concierge's typical marketing efforts can be obtained

3    here: Marketing Platform Report

4         **PLEASE FURTHER TAKE NOTICE THAT (1) THE HEARING ON THE BID**

5    **PROCEDURES MOTION WILL TAKE PLACE AT THE ABOVE-REFERENCED DATE,**

6    **TIME, AND LOCATION (VIA ZOOMGOV ONLY) AND (2) PURSUANT TO LBR 6004-**

7    **1(b)(4), ANY OPPOSITIONS TO THE BID PROCEDURES MOTION MUST BE FILED**

8    **AND SERVED BY NO LATER THAN ONE (1) DAY PRIOR TO THE HEARING**

9    **THEREON.**

10        **WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

11        (1)    granting the Bid Procedures Motion;

12        (2)    approving the Bid Procedures;

13        (3)    approving the Sale Motion Scheduling; and

14        (4)    granting such further relief as the Court deems just and proper.

15    Dated: December 29, 2021                    CRESTLLOYD, LLC

16
                                           /s/ Todd M. Arnold
17                                         DAVID B. GOLUBCHIK
                                           TODD M. ARNOLD
18                                         LEVENE, NEALE, BENDER, YOO
                                             & GOLUBCHIK L.L.P.
19                                         Attorneys for Debtor and Debtor in Possession

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES[4]

### I.

### STATEMENT OF FACTS

**A.**          **GENERAL BACKGROUND.**

On October 26, 2021 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

**B.**          **THE DEBTOR'S REAL PROPERTY.**

The Debtor's primary asset is the residential Property that it developed, which is located at 944 Airole Way, Los Angeles, CA 90077.[5]   The Property is one of the finest pieces of real property in America.  The Property is situated on a four-acre Bel Air promontory, featuring the best views of Los Angeles. A moat that encompasses the Property gives the impression that it's floating on water.  The approximately 105,000-square-foot glass and marble compound holds 20 bedrooms, each with sweeping views of Los Angeles and the ocean, and 30 bathrooms, as well as every amenity in the world.  It features a 30-car garage, four swimming pools, a two-story waterfall, and numerous other water features, as well as two restaurant-grade kitchens, an indoor/outdoor entertainment center with its own VIP room, a movie theater, charitable organization rooms, a four-lane bowling alley, a library with floor-to-ceiling windows, a full beauty salon, a spa with a steam room and jacuzzi, a cigar lounge, and a gym.  Three smaller villas also sit on the property, spread across the four acres.  The 5,000-square-foot master suite is an oasis within the mansion.  Designed with its own separate office and walk-in closet, the suite also has its own pool and kitchen.  To guarantee privacy, it's isolated from the rest of the house.  The mansion includes five elevators and LED ceilings that display images of moving clouds. The Property features state-of-the-art technology, with a full security center.  The design encompasses secondary corridors for staff to use.

---

[4] Unless otherwise stated, capitalized terms in this Memorandum have the same meanings ascribed to them in the preceding Bid Procedures Motion.
[5] Additional information about the Property can be obtained at https://www.societygrouppr.com/real-estate/the-one/ and https://www.dirt.com/more-dirt/real-estate-listings/nile-niami-the-one-house-bel-air-1203360444/.

1
2
3
4
5

The Property requires some work to be fully completed, which the Debtor believes will cost approximately $5-$10 million.  However, even in its current state of near-completion, the Property can be and has been marketed for sale.  The Debtor believes that the Property has a current fair market value of approximately $325 million in its "as-is" nearly complete condition, but understands that the market will ultimately dictate the price.

6

**C.**     **ALLEGED CLAIMS PURPORTEDLY SECURED BY THE PROPERTY AND OTHER CLAIMS.**

7
8
9
10
11
12

There are a number of claims allegedly secured by liens on Debtor's Property.  Based on the most recent preliminary title report for the Property, information received from certain alleged secured creditors, and other information available to the Debtor, the Debtor is informed and believe that, as of the Petition Date, the claims allegedly secured by liens on Debtor's Property totaled approximately $179.2 million, including a claim in the alleged amount of approximately $123 million held by Hankey, the Debtor's primary secured lender.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

In addition, after the Petition Date, the Debtor filed a motion (the "DIP Motion") [Dkt. 66] seeking Court approval to obtain $12 million in debtor in possession financing (the "DIP Loan") from Hankey secured by a first position lien on the Property and, with limited exceptions, all of the Debtor's personal property pursuant to the loan documents for the DIP Loan (the "DIP Loan Documents").  One of the purposes of the DIP Loan was to allow the Debtor to make certain repairs to the Property and to market and sell the Property on an expedited basis with a sale to close on February 28, 2022, which is why the DIP Loan has a maturity date of February 28, 2022.  Subject to the Debtor's right to extend the DIP Loan maturity date to April 30, 2022 in exchange for a $120,000 fee, if the Debtor does not pay the DIP Loan off by February 28, 2022, the Debtor will be in default leading to an additional 5% in default interest on the DIP Loan.  On December 10, 2021, the Court entered its interim order granting the DIP Motion. [Dkt. 70]  Thereafter, the Debtor drew down the entire DIP Loan, less fees and expenses payable to Hankey as the lender.  Therefore at present, the Debtor has approximately $191.2 million in claims allegedly secured by liens on Debtor's Property.

28

14

Based on the foregoing and other information available to the Debtor regarding alleged unsecured claims, the Debtor believes that the overall prepetition claims asserted against the Debtor, plus the claim for the postpetition DIP Loan, total approximately $194.6 million, with approximately $191.2 million of such claims allegedly secured by the Property and approximately $3.4 million in unsecured claims.  Thus, the Debtor has approximately $133.8 million of equity in the Property. Even if the Property sold for substantially less than $325 million, for example $250 million, the Debtor would still have $58.8 million of equity in the Property and more than substantial funds to pay all allowed claims in full.

D.    **THE REASON FOR FILING BANKRUPTCY, EXIT STRATEGY, AND EFFORTS IN FURTHERANCE THEREOF.**

Unfortunately, before the Property could be fully completed and sold (either as a fully completed or nearly completed project), the Debtor's primary secured lender, Hankey, as well as a number of other junior secured lenders and mechanic's lien holders initiated a multitude of state court actions against the Debtor seeking, among other things, to recover amounts allegedly owed and to foreclose on the Property.  In connection with its action, Hankey sought and obtained the appointment of a receiver for the Property (the "Receiver").  In addition, Hankey had a foreclosure sale of the Property set for October 27, 2021.

In order to protect its substantial equity in the Property and address myriad litigation and other claims against it, the Debtor filed its bankruptcy case on the Petition Date of October 26, 2021, which stayed the foreclosure sale.  It was imperative for the Debtor regain possession and control over the Property from the Receiver, and to obtain the breathing spell afforded by the automatic stay, not only to stop the foreclosure and protect equity in the Property, but also to provide time and a means for the Debtor to sell the Property.

As a precursor to selling the Property, the Debtor had to regain possession and control of the Property from the Receiver.  To that end, immediately after the Petition Date, pursuant to Section 543, the Debtor's counsel demanded that the Receiver, among other things, (1) turnover the Property and other property of the estate and (2) to cease exercising control over such estate property.  As can be seen from the docket, soon after the Petition Date, the Debtor, with the assistance of its counsel

15

and manager, quickly negotiated an interim stipulation with Hankey and the Receiver regarding access to the Property to facilitate efforts to employ brokers and market and sell the Property. Recently, based on the efforts of the Debtor's counsel and manager, the Receiver voluntarily turned over the Property and all other estate property to the Debtor as of December 1, 2021.

The Debtor is now in position to sell the Property.  Subject to Court approval, the Debtor intends to sell the Property as soon as practicable for the highest price possible under the circumstances.  In fact, on December 14, 2021, the Debtor filed an application to employ the Brokers and the Auctioneer to market and sell the Property (the "Employment Application").  [Dkt. 74].  The Debtor's agreement with the Auctioneer (the "Auction Agreement") requires that the Debtor seek Court approval of the Bid Procedures (aka the Bidder Terms and Conditions) attached to the Auction Agreement, which are summarized in the preceding Bid Procedures Motion and attached hereto as **Exhibit "1."**   Based on the filing of the Employment Application, the Debtor, with the assistants of the Brokers and the Auctioneer, is pursuing a sale of the Property to close by on or about February 28, 2028, or as soon as practicable thereafter.  Importantly, the Debtor is informed and believes that Hankey and other large stakeholders support such a sale of the Property in the context of the Debtor's bankruptcy case.

Based on discussions with the Brokers, the Debtor believes that a near-term sale of the Property will generate sufficient funds to pay all allowed claims in full, which will allow the Debtor to exit bankruptcy, either pursuant to a plan or an alternative exit strategy, with a surplus for the Debtor's owner.  While the Debtor believes that the structured dismissal option is more favorable because it offers substantial cost and time savings, which will benefit all parties in interest, in the event dismissal is not possible, the Debtor will propose a simple reorganization plan with terms similar to the expected conditions for dismissal – *i.e.*, paying all allowed claims in full on the effective date of the plan.

**E.** **THE DEBTOR'S NEED FOR APPROVAL OF THE BID PROCEDURES AND SALE MOTION SCHEDULING.**

Given the that the Debtor is seeking to conduct the Auction for the Property between February 7-10, 2022, and to close a sale of the Property by February 28, 2022, it is important that the Debtor obtain approval of the Bid Procedures as soon as possible so that they can be provided to potential buyers, including by posting them on the Property websites maintained by the Auctioneer and the Brokers.  For the same reasons, it is important to set the Sale Motion Scheduling so that the Debtor can attempt to obtain the entry of an order approving a sale of the Property by Friday, February 25, 2022 so that a sale can close on Monday, February 28, 2022.

## II.

## LEGAL ARGUMENT

**A.** **THE BID PROCEDURES SHOULD BE APPROVED.**

FRBP 2002 and 6004 govern the scope of the notice to be provided in the event a debtor in possession elects to sell property of the estate under Section 363.  However, with respect to the procedures to be adopted in conducting a sale outside the ordinary course, FRBP 6004 provides only that such sale may be by private sale or public auction, and requires only that the trustee provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. P. 6004(f).

Neither the Bankruptcy Code nor the FRBP contain specific provisions with respect to the procedures to be employed by a trustee in conducting a public or private sale.  Nonetheless, as one Court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."  *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).  Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate.  Therefore, the objective is 'to maximize bidding, not restrict it.'"  *Id.*

17

The Debtor believes that the proposed Bid Procedures detailed in the preceding Bid Procedures Motion will maximize the price ultimately obtained for the Property while still protecting the estate from parties who may wish to bid on the Property but who are ultimately unable to consummate a purchase of the Property.  The Bid Procedures serve numerous legitimate purposes. Among other things, the Bid Procedures will (1) foster competitive bidding among any serious potential purchasers, (2) eliminate from consideration purchasers who would waste the estate's time because they would not have the financial ability to consummate a purchase of the Property, and (3) ensure that the highest possible price is obtained for the Property.

In addition to the foregoing, the Bid Procedures detailed in the preceding Bid Procedures Motion meet all of the requirements for the approval of the Bid Procedures pursuant to LBR 6004-1(b).  That is (1) the Notice of the Motion describes the Bid Procedures, a copy of which is attached hereto as **Exhibit "1,"** (2) a copy of the form Purchase and Sale Contract in substantially the form to be used by bidders is attached to the Bid Procedures (Exhibit "1" hereto) as **Exhibit "A,"** and (3) the Notice of the Motion, as well as **Exhibits "2" and "3"** hereto,  describe marketing efforts that have already been undertaken by the Brokers and Auctioneer the anticipated additional marketing efforts to be made by the Brokers and Auctioneer.  Based on the foregoing, the Debtor submits that the proposed Bid Procedures are reasonable and in the best interests of the estate and, therefore, should be approved.

**B.**       **THE SALE MOTION SCHEDULING SHOULD BE APPROVED.**

As noted above, given the that the Debtor is seeking to conduct the Auction for the Property between February 7-10, 2022, and to close a sale of the Property by February 28, 2022, it is important to set the Sale Motion Scheduling so that the Debtor can attempt to obtain the entry of an order approving a sale of the Property by Friday, February 25, 2022 so that a sale can close on Monday, February 28, 2022.

/ / /

/ / /

/ / /

1

# III.

2

## <u>CONCLUSION</u>

3

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

4

    (1)     granting the Bid Procedures Motion;

5

    (2)     approving the Bid Procedures;

6

    (3)     approving the Sale Motion Scheduling; and

7

    (4)     granting such further relief as the Court deems just and proper.

8

Dated: December 29, 2021                 CRESTLLOYD, LLC

9

10

*/s/ Todd M. Arnold*
DAVID B. GOLUBCHIK
TODD M. ARNOLD

11

LEVENE, NEALE, BENDER, YOO
    & GOLUBCHIK L.L.P.

12

Attorneys for Debtor and Debtor in Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

## DECLARATION OF LAWRENCE R. PERKINS

I, LAWRENCE R. PERKINS, hereby declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Founder and Chief Executive Officer of SierraConstellation Partners LLC ("SCP") and have nearly 20 years of management consulting and advisory experience with companies undergoing transition. I have enhanced business performance for numerous companies on projects ranging from interim management, profit improvement and working capital management to strategic planning and transaction execution.

3.      I have served in a variety of senior level positions including Financial Advisor, Strategic Consultant, Investment Banker, Financial Executive, and Crisis Manager to numerous middle market companies and believe that I am particularly skilled at assisting clients through challenging situations.

4.      Prior to founding SCP, I was a Senior Managing Director and Regional Leader of a national consulting firm where he was responsible for business development, marketing, staffing, and general management of the firm's western region. I joined the firm in 2010 when it acquired El Molino Advisors, a company I founded in January 2007 and led as the CEO.

5.      I began my career in the strategic consulting group of Arthur Andersen after graduating from the University of Southern California Marshall School of Business. I am currently on the board of several non-profits, and two corporate boards, and am a member of the Young Presidents Organization.

6.      SCP is the current Non-Member Manager of the Debtor.

7.      I make this Declaration in support of the Bid Procedures Motion to which this Declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meaning as in the Bid Procedures Motion.

8.      On October 26, 2021 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor is operating

its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

9.     The Debtor's primary asset is the residential Property that it developed, which is located at 944 Airole Way, Los Angeles, CA 90077.  I believe that the Property is one of the finest pieces of real property in America.  The Property is situated on an approximately four-acre Bel Air promontory, featuring the best views of Los Angeles. A moat that encompasses the Property gives the impression that it's floating on water.  The approximately 105,000-square-foot glass and marble compound holds 20 bedrooms, each with sweeping views of Los Angeles and the ocean, and 30 bathrooms, as well as every amenity in the world.  It features a 30-car garage, four swimming pools, a two-story waterfall, and numerous other water features, as well as two restaurant-grade kitchens, an indoor/outdoor entertainment center with its own VIP room, a movie theater, charitable organization rooms, a four-lane bowling alley, a library with floor-to-ceiling windows, a full beauty salon, a spa with a steam room and jacuzzi, a cigar lounge, and a gym.  Three smaller villas also sit on the property, spread across the four acres.  The approximately 5,000-square-foot master suite is an oasis within the mansion.  Designed with its own separate office and walk-in closet, the suite also has its own pool and kitchen.  To guarantee privacy, it's isolated from the rest of the house.  The mansion includes five elevators and LED ceilings that display images of moving clouds. The Property features state-of-the-art technology, with a full security center.  The design encompasses secondary corridors for staff to use.

10.     The Property requires some work to be fully completed, which the Debtor believes will cost approximately $5-$10 million.  However, even in its current state of near-completion, the Property can be and has been marketed for sale.  I believe that the Property has a current fair market value of approximately $325 million in its "as-is" nearly complete condition, but understand that the market will ultimately dictate the price.

11.     There are a number of claims allegedly secured by liens on Debtor's Property.  Based on the most recent preliminary title report for the Property, information received from certain alleged secured creditors, and other information available to the Debtor, I am informed and believe that, as of the Petition Date, the claims allegedly secured by liens on Debtor's Property totaled

approximately $179.2 million, including a claim in the alleged amount of approximately $123 million held by Hankey, the Debtor's primary secured lender.

12.     In addition, after the Petition Date, the Debtor filed a motion (the "DIP Motion") [Dkt. 66] seeking Court approval to obtain $12 million in debtor in possession financing (the "DIP Loan") from Hankey secured by a first position lien on the Property and, with limited exceptions, all of the Debtor's personal property pursuant to the loan documents for the DIP Loan (the "DIP Loan Documents").  One of the purposes of the DIP Loan was to allow the Debtor to make certain repairs to the Property and to market and sell the Property on an expedited basis with a sale to close on February 28, 2022, which is why the DIP Loan has a maturity date of February 28, 2022.  Subject to the Debtor's right to extend the DIP Loan maturity date to April 30, 2022 in exchange for a $120,000 fee, if the Debtor does not pay the DIP Loan off by February 28, 2022, the Debtor will be in default leading to an additional 5% in default interest on the DIP Loan.  On December 10, 2021, the Court entered its interim order granting the DIP Motion. [Dkt. 70]  Thereafter, the Debtor drew down the entire DIP Loan, less fees and expenses payable to Hankey as the lender.  Therefore at present, the Debtor has approximately $191.2 million in claims allegedly secured by liens on Debtor's Property.

13.     Based on the foregoing and other information available to the Debtor regarding alleged unsecured claims, I am informed and believe that the overall prepetition claims asserted against the Debtor, plus the claim for the postpetition DIP Loan, total approximately $194.6 million, with approximately $191.2 million of such claims allegedly secured by the Property and approximately $3.4 million in unsecured claims.  Thus, the Debtor has approximately $133.8 million of equity in the Property.  Even if the Property sold for substantially less than $325 million, for example $250 million, the Debtor would still have $58.8 million of equity in the Property and more than substantial funds to pay all allowed claims in full.

14.     Unfortunately, before the Property could be fully completed and sold (either as a fully completed or nearly completed project), the Debtor's primary secured lender, Hankey, as well as a number of other junior secured lenders and mechanic's lien holders initiated a multitude of state court actions against the Debtor seeking, among other things, to recover amounts allegedly owed and to foreclose on the Property.  In connection with its action, Hankey sought and obtained the

appointment of a receiver for the Property (the "Receiver").  In addition, Hankey had a foreclosure sale of the Property set for October 27, 2021.

15.    In order to protect its substantial equity in the Property and address myriad litigation and other claims against it, the Debtor filed its bankruptcy case on the Petition Date of October 26, 2021, which stayed the foreclosure sale.  It was imperative for the Debtor regain possession and control over the Property from the Receiver, and to obtain the breathing spell afforded by the automatic stay, not only to stop the foreclosure and protect equity in the Property, but also to provide time and a means for the Debtor to sell the Property.

16.    As a precursor to selling the Property, the Debtor had to regain possession and control of the Property from the Receiver.  To that end, immediately after the Petition Date, pursuant to Section 543, the Debtor's counsel demanded that the Receiver, among other things, (1) turnover the Property and other property of the estate and (2) to cease exercising control over such estate property.  As can be seen from the docket, soon after the Petition Date, the Debtor, with the assistance of its counsel and manager, quickly negotiated an interim stipulation with Hankey and the Receiver regarding access to the Property to facilitate efforts to employ brokers and market and sell the Property.  Recently, based on the efforts of the Debtor's counsel and manager, the Receiver voluntarily turned over the Property and all other estate property to the Debtor as of December 1, 2021.

17.    The Debtor is now in position to sell the Property.  Subject to Court approval, the Debtor intends to sell the Property as soon as practicable for the highest price possible under the circumstances.  In fact, on December 14, 2021, the Debtor filed an application to employ the Brokers and the Auctioneer to market and sell the Property (the "Employment Application").  [Dkt. 74].  The Debtor's agreement with the Auctioneer (the "Auction Agreement") requires that the Debtor seek Court approval of the Bid Procedures (aka the Bidder Terms and Conditions) attached to the Auction Agreement, which are summarized in the preceding Bid Procedures Motion and attached hereto as **Exhibit "1."**   Based on the filing of the Employment Application, the Debtor, with the assistants of the Brokers and the Auctioneer, is pursuing a sale of the Property to close by on or about February 28, 2028, or as soon as practicable thereafter.  I am informed and believe that the Brokers and the

Auctioneer have or will market the Property pursuant to the means set forth in the preceding Bid Procedures Motion.  Importantly, I am informed and believe that Hankey and other large stakeholders support such a sale of the Property in the context of the Debtor's bankruptcy case.

18.    Given the that the Debtor is seeking to conduct the Auction for the Property between February 7-10, 2022, and to close a sale of the Property by February 28, 2022, it is important that the Debtor obtain approval of the Bid Procedures as soon as possible so that they can be provided to potential buyers, including by posting them on the Property websites maintained by the Auctioneer the Brokers.  For the same reasons, it is important to set the Sale Motion Scheduling so that the Debtor can attempt to obtain the entry of an order approving a sale of the Property by Friday, February 25, 2022 so that a sale can close on Monday, February 28, 2022.

19.    Based on my business judgment, I believe that the proposed Bid Procedures detailed in the preceding Bid Procedures Motion will maximize the price ultimately obtained for the Property while still protecting the estate from parties who may wish to bid on the Property but who are ultimately unable to consummate a purchase of the Property.  The Bid Procedures serve numerous legitimate purposes.  Among other things, the Bid Procedures will (1) foster competitive bidding among any serious potential purchasers, (2) eliminate from consideration purchasers who would waste the estate's time because they would not have the financial ability to consummate a purchase of the Property, and (3) ensure that the highest possible price is obtained for the Property.  Based on the foregoing and other information in the Bid Procedures Motion, I submit that the proposed Bid Procedures are reasonable and in the best interests of the estate and, therefore, should be approved.

/ / /

/ / /

/ / /

/ / /

/ / /

20.    Given the that the Debtor is seeking to conduct the Auction for the Property between February 7-10, 2022, and to close a sale of the Property by February 28, 2022, it is important to set the Sale Motion Scheduling so that the Debtor can attempt to obtain the entry of an order approving a sale of the Property by Friday, February 25, 2022 so that a sale can close on Monday, February 28, 2022.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 29th day of December 2021, at Los Angeles, California.


_____

LAWRENCE R. PERKINS

# EXHIBIT "1"

**CONCIERGE AUCTIONS, LLC**
**BIDDER TERMS AND CONDITIONS**
**944 AIROLE WAY, LOS ANGELES,**
**CALIFORNIA (the "*Property*")**

Bidder Name: _____ ("**Bidder**")

Cell Phone: _____  Work Phone: _____

Email Address: _____  Fax Number: _____

Mailing Address: _____

The real property auction services offered by Concierge Auctions, LLC and/or its affiliates or subsidiaries (collectively, "***Concierge,***" "***we,***" "***us***" or the "***Company***") through the www.conciergeauctions.com website and its Mobile Bidding Application (collectively, the "***Website***") or any services provided in connection with the Website (the "***Services***") and the use of the Website including any content, functionality and services offered on or through the Website, whether as a guest or a registered user, are governed by these Terms and Conditions (together with all separate documents/pages linked to these terms and incorporated by reference, the "***Terms and Conditions***" or "***Agreement***"). By accessing or using the Website, you ("***Bidder***" or "***you***") agree that (1) you have read and familiarized yourself with these Terms and Conditions, (2) you understand the Terms and Conditions, and (3) you are bound by the Terms and Conditions in your use of the Website and the Services. IF YOU DO NOT AGREE TO THESE TERMS AND CONDITIONS, DO NOT USE THE WEBSITE OR THE SERVICES AND DO NOT PARTICIPATE IN THE AUCTION. YOUR USE OF THE WEBSITE AND/OR YOUR PARTICIPATION IN THE AUCTION, CONSTITUTES YOUR ACCEPTANCE OF AND AGREEMENT TO COMPLY WITH THESE TERMS AND CONDITIONS. These Terms and Conditions constitute a binding contract and the entire agreement between you and Concierge regarding their subject matter and supersede and replace any and all prior or contemporaneous agreements between the parties regarding such subject matter.

You acknowledge that the owner of the Property, Crestlloyd, LLC ("***Seller***"), filed for bankruptcy protection on October 26, 2021 under chapter 11 of title 11 of the United States Code §§ 101, et seq. (the "***Bankruptcy Code***") and is a Chapter 11 debtor in possession of the Property in its bankruptcy case pending in the United States Bankruptcy Court for the Central District of California (the "***Court***") (Case No. 2:21-bk-18205-DS).  On December _____, 2021, the Court entered its order approving these Terms and Conditions.  You acknowledge that any sale of the Property at the Auction is subject to the approval of the Court and requires the entry of an order of the Court approving the sale which will be obtained by Seller as soon as reasonably practicable after the Auction.

**Registration and Eligibility**. The Website and the Services are only available to persons with the legal capacity to enter into this Agreement and to purchase real property. Generally, the Website is intended for use  only by persons over 18 years of age.  Concierge may, at its sole and absolute discretion, refuse to accept your registration, and may, at any time after accepting registration, refuse to permit a Bidder's continuing use of the Website or the Services for any reason or no reason at all. Tampering with the Website, misrepresenting the identity of a Bidder or conducting fraudulent activities on the Website are prohibited.

**Accessing the Website and Account Security**. We will not be liable if for any reason all or any part of the Website is unavailable at any time or for any period. From time to time, we may restrict access to some parts of the Website, or the entire Website, to users, including registered users. You are responsible for:

☐   Making all arrangements necessary for you to access the Website.
☐   Ensuring that all persons who access the Website through your internet connection are aware of these Terms and Conditions and comply with them.

To access the Website or some of the resources it offers, you will be asked to provide certain registration details or other information. It is a condition of your use of the Website that all the information you provide on the Website is correct, current and complete. You agree that all information you provide to register with this Website or otherwise, including through the use of any interactive features on the Website, is governed by our Privacy Policy, and you consent to all actions

we take with respect to your information consistent with our Privacy Policy. The Privacy Policy is expressly incorporated into these Terms and Conditions by this reference.

If you choose, or are provided with, a user name, password or any other piece of information as part of our security procedures, you must treat such information as confidential, and you must not disclose it to any other person or entity. You also acknowledge that your account is personal to you and agree not to provide any other person with access to this Website or portions of it using your username, password or other security information. You may be held liable for any losses incurred by Concierge, its affiliates, officers, directors, employees, consultants, agents, and representatives due to someone else's use of your account or password. You agree to notify us immediately of any unauthorized access to or use of your username or password or any other breach of security. You also agree to ensure that you exit from your account at the end of each session. You should use particular caution when accessing your account from a public or shared computer so that others are not able to view or record your password or other personal information. You may not use the account, username, or password of someone else at any time.

We have the right to disable any user name, password or other identifier, whether chosen by you or provided by us, at any time in our sole discretion for any or no reason, including if, in our opinion, you have violated any provision of these Terms and Conditions.

**Electronic Communications.** When you visit the Website or send e-mails to us, you are communicating with us electronically and you consent to receive electronic communications from us. We will communicate with you by e-mail or by posting notices on this Website. You agree that all agreements, notices, disclosures and other communications that we provide to you electronically satisfy any legal requirement that such communications be in writing.

**Property Auction Details**. Concierge will present the Property for sale by auction (the "*Auction*") on behalf of the Seller of the Property. By participating in the Auction, you acknowledge and agree that you are bound by any additional terms that may be imposed by Concierge and the Seller and announced prior to or at the Auction either on the Property web page or otherwise.

Please note that the Property has not been fully constructed and has no Certificate of Occupancy.  Please refer to the Property-specific web page on the Website for the following Auction-specific details, among others:

> Cooperating Broker Commission Percentage
> Due diligence materials and other Property information
> HOA and other Property Ownership restrictions
> The form of Purchase and Sale Agreement that you would be
> required to sign

The information on the Property web page may be updated regularly so please check back to that page on a regular basis to be sure you are reviewing the most recent information regarding the Property Auction.

**Bidding**. Bidding shall commence on February 7, 2022 (the "*Auction Start Date*") at approximately 4:00 p.m. (Pacific Time) and shall continue for three (3) business days and conclude on February 10, 2022 at approximately 4:00 p.m. (Pacific Time) (the "*Auction End Date*").

All Auction bidding is open to the public without regard to race, color, sex, religion, familial status, disability or national origin, as well as to any Secured Creditors Entitled to Credit Bid.  There is no reserve price. Subject to Court approval, the Bidder who submits the highest bid (the "*High Bid*") (meaning the highest bid acknowledged by Concierge) will be the buyer (the "*Buyer*") of the Property, and the Bidder who submits the second highest bid (the "*Second High Bid*") (meaning the second highest bid acknowledged by Concierge) will be the back-up buyer (the "*Back-Up Buyer*") of the Property.

By participating in the Auction, you represent, warrant and covenant that any bid you make constitutes an irrevocable offer to purchase the Property for the full amount of the High Bid (or the Second High Bid for a Back-Up Buyer) and that once a High Bid (or the Second High Bid for a Back-Up Buyer) is accepted, you are obligated to purchase the Property for the amount of the High Bid (or the Second High Bid for a Back-Up Buyer).

In the event of any dispute among Bidders, or in the event of doubt on the part of Concierge as to the validity of any bid, Concierge will have the final discretion to determine the High Bid, the Buyer, the Second High Bid, and the Back-Up Buyer. If any dispute arises after the Auction, Concierge's Auction record shall determine conclusively all bidding issues, including but not limited to the High Bid, the Buyer, the Second High Bid, and the Back-Up Buyer.

Bidder Initials

YOU MAY WISH TO CONSULT WITH A LICENSED REAL ESTATE BROKER, ADVISER, ATTORNEY, CONTRACTOR OR OTHER EXPERT PRIOR TO YOUR PARTICIPATION IN THE AUCTION.

Concierge may allow telephonic, electronic, absentee or proxy bids as a convenience to Bidders who are not present at the Auction and/or are not able to use the Website. Concierge is not responsible for any errors or omissions in connection with such bids, including, without limitation, poor connections, Internet outages, poor reception, dropped calls, recording failures, busy signals and missed calls. Furthermore, Concierge does not represent or warrant that the functions, features or content contained in any telephonic bidding, electronic bidding, internet bidding website or any third-party software, products, or other materials used in connection with internet or electronic bidding, will be timely, secure, uninterrupted or error-free, and Concierge does not represent or warrant that defects will be corrected.

Subject to Section 363(k) of the Bankruptcy Code, Hankey Capital, LLC, which allegedly has a claim against Seller secured by the Property, and any other creditor that allegedly has a claim against Seller secured by the Property (collectively, the "*Secured Creditors*"), may be entitled to "credit bid" ("*Credit Bid*") to purchase the Property up to the full allowed amount of their secured claims as determined by the Court.

**Bidder Requirements**. To be qualified to bid at the Auction and before any bidding at the auction, you must (1) sign these Terms and Conditions and return them to Concierge so that they are actually received by Concierge before any bids are made by Bidder, (2) wire a deposit in the amount of US $250,000 (the "*Bidder's Deposit*") into the Escrow Agent's account per the instructions set forth on the Property web page so that it is actually received by the Escrow Agent before any bids are made by Bidder, provided that any Secured Creditor that is entitled to Credit Bid shall not be required to pay a Bidder's Deposit, (3) show proof of funds and/or readily liquidated assets sufficient to purchase the Property so that such proof of funds and/or readily liquidated assets are actually received by Concierge before any bids are made by Bidder, provided that any Secured Creditor that is entitled to Credit Bid shall not be required to provide proof of funds and/or readily liquidated assets, except to the extent its bid will exceed the amount the Secured Creditor is entitled to Credit Bid. The "*Escrow Agent*" shall be set forth on the Property web page. If Bidder is the Buyer or the Back-Up Buyer, the Bidder's Deposit shall be handled in accordance with these Terms and Conditions and any the Purchase and Sale Contract executed by Bidder. If Bidder is not the Buyer or the Back-Up Buyer, then the Bidder's Deposit shall be refunded by 5:00 p.m. EST on the second business day following the Auction

**Buyer's Premium**. The Buyer (and the Back-Up Buyer if the Buyer defaults) will be required to pay a fee to Concierge in the amount of twelve percent (12.00%) of the Purchase Price to be paid by the Buyer (or the Back-Up Buyer if the Buyer defaults) (the "*Buyer's Premium*"). The Buyer's Premium to be paid to Concierge in connection with the Auction is separate from the Purchase Price for the Property to be paid to Seller and is an obligation of the Buyer to Concierge. The Escrow Agent shall hold any Bidder Deposits and the Buyer's Premium. Buyer acknowledges and agrees that the Buyer's Premium is deemed earned upon conclusion of the Auction and that the Buyer's Premium shall be disbursed to Concierge by the Escrow Agent, provided that the conditions to payment of the Buyer's Premium to Concierge established by the Court have been satisfied. The Buyer's Premium is not a real estate commission; it is the fee that Concierge charges to bidders for bringing the Property to auction. Any applicable real estate commissions will be as set forth in the California Association of Realtors' standard Residential Purchase Agreement and Joint Escrow Instructions (C.A.R. Form RPA, Revised 12/18), Contingency Removal (C.A.R. Form CR, Revised 12/20), and related agreements (the "*Purchase and Sale Contract*") to be signed by the Buyer and any Back-Up Buyer and will be paid by Seller. Concierge is merely an auctioneer – it is not acting as a real estate agent in any capacity for any party and it is not involved in any way in connection with the closing of any real property transaction and all such real estate brokerage, closing and escrow functions will be handled exclusively by third party real estate brokers or other professionals.

**Furnishings**. The Property is being sold unfurnished.

**Bid Acceptance; Completion; Auction Methods**.

Once bidding is completed and the Buyer and any Back-Up Buyer are declared, the Buyer and any Back-Up Buyer (conditioned upon Buyer's default) will be required to immediately execute the Purchase and Sale Contract in the form attached hereto as **Exhibit "A"** and other documents required by the Escrow Agent or otherwise in connection with the purchase of the Property. The executed Purchase and Sale Contract and other documents reasonably required by the Escrow Agent must be received by the Escrow Agent from (1) the Buyer by no later than 5:00 p.m. Pacific Time on the first business day following the Auction End Date and (2) any Back-Up Buyer by no later than 5:00 p.m. Pacific Time on second business day following written notice from Concierge, the Escrow Agent, or Seller (or any of their attorneys) that the Buyer defaulted and that the Back-Up Buyer's Second High Bid is accepted. The Back-Up Buyer's Second High Bid amount shall be

irrevocable and the Back-Up Buyer is required to keep its bid and offer to purchase the Property open, and to allow the Escrow Agent or any other Escrow Company or Title Company holding the Back-Up Buyer's Bidder's Deposit, to maintain any Bidder's Deposit paid by the Back-Up Buyer in connection with the sale of the Property (or any other amounts collected from the Back-Up Buyer) (collectively the "**Back-Up Deposit**") (subject to applicable laws) for a period of 45 days after the Auction End Date.

The Buyer shall initiate a wire transfer to the Escrow Agent to increase its Bidder's Deposit up to twelve percent (12.00%) of the Purchase Price (the "**Deposit**"). The Deposit must be received by the Escrow Agent no later than 5:00 p.m. Pacific Time on the second business day following the Auction End Date.

If the Buyer: (1) defaults under these Terms and Conditions, and/or the applicable Purchase and Sale Contract, or (2) the Court does not approve the sale of the Property to the Buyer, Concierge shall have the right to declare the Back-Up Buyer to be the Buyer of the Property within forty-five (45) days after the Auction End Date.  If the Back-Up Buyer is declared the Buyer, the Back-Up Buyer shall initiate a wire transfer to the Escrow Agent to increase its Back-Up Deposit up to twelve percent (12.00%) of the Purchase Price. The Back-Up Buyer's Deposit must be received by the Escrow Agent no later than 5:00 p.m. Pacific Time on the second business day following written notice from Concierge, the Escrow Agent, or Seller (or any of their attorneys) that the Buyer defaulted and that the Back-Up Buyer's Second High Bid is accepted.

Other than in regard to the Default Provisions in the Terms and Conditions, including in regard to the retention of any Bidder's Deposit, Deposit, or Back-Up Deposit by Concierge and/or Seller, as between Buyer and Seller, the Purchase and Sale Contract supersedes any and all other documents or information (including without limitation these Terms and Conditions) and serves as the definitive document for the purchase and sale of the Property. Concierge is not a party to the Purchase and Sale Contract. Concierge does not guarantee that the sale of the Property will be consummated.  In addition, the sale of the Property will require post-Auction Court approval. If you are the Buyer or Back-Up Buyer for the Property, your bid remains irrevocable while the Seller seeks approval of your High Bid (or the Second High Bid) and the sale of the Property to you.

The term "**Purchase Price**" shall mean the High Bid, excluding other amounts payable by the Buyer in connection with closing, such as customary closing costs, escrow/closing fees, property taxes, insurance, transfer fees/taxes in accordance with the Purchase and  Sale Contract. Therefore, Buyer's total obligation toward the purchase of the Property is equal to the Purchase Price, the Buyer's Premium and those customary closing costs. To that end, all Bidders are strongly encouraged to review the Purchase and Sale Contract prior to bidding and to consult with an attorney or other professional.

**Closing / Escrow Agent**. Closing will take place in accordance with the Purchase and Sale Contract and any related documents. Unless otherwise stated on the Property web page, escrow services shall be provided exclusively by the Escrow Agent set forth in the Purchase and Sale Contract.

**Closing Date**. The date of closing or completion of the purchase of the Property between Buyer and Seller shall be the "**Closing Date**" set forth in the Purchase and Sale Contract. In certain cases, Seller may extend the Closing Date pursuant to the Purchase and Sale  Contract or as otherwise negotiated between Seller and Buyer.

**Default**. Your failure to comply with the Terms and Conditions will result in a default and, upon default, without any required notice to you, the Bidder's Deposit, Deposit, Back-Up Deposit and any Buyer's Premium shall be retained by Seller and/or Concierge in addition to other equitable and legal remedies under applicable law, all of which are reserved.

**Auction Procedures**. Subject to these Terms and Conditions (1) Concierge's verbal or written announcements made at the Auction will take precedence over all printed material or other previously made statements, (2) Concierge reserves the right to waive or modify any previously announced requirements, (3) Concierge reserves the right in its sole discretion to accept or reject any bids made before the Auction begins, and (4) the method of Auction, order of Auction, and bidding increments shall be determined by Concierge in its sole discretion, including, without limitation, Concierge's right to pause and resume bidding during the Auction. Concierge reserves the right to reject any bid that is only a minimal increase over the preceding bid, or that Concierge believes was made illegally or in bad faith. All decisions of Concierge are final as to bidding issues, cancellation or any other matters that may arise before, during or after the Auction. If Concierge perceives attempted collusion, Concierge will cancel the Auction or refuse to accept a bid. Collusion between bidders is prohibited by various applicable laws. Concierge reserves the right to deny any person admittance to the Auction or expel anyone who Concierge believes may disrupt, cause any nuisance or interfere with the Auction in any way or for any other reason in Concierge's discretion. The Auction does not begin until Concierge accepts the first bid on the Auction Start Day.

**Property Inspection/Due Diligence/Disclaimer**. Prior to the commencement of the Auction, it is the Bidder's sole responsibility to perform any inspections and due diligence Bidder deems pertinent to the purchase of the Property, to be satisfied as to the condition of the Property prior to bidding and to review all due diligence materials provided with respect to the Property. EACH BIDDER ASSUMES ANY AND ALL RISKS ASSOCIATED WITH ANY SUCH INSPECTION AND ITS DUE DILIGENCE ACTIVITIES. **The Property, both real and personal (if any), is being sold in its existing "AS IS, WHERE IS, WITH ALL FAULTS" condition, with no expressed or implied guarantees, representations or warranties whatsoever, unless required by law.** Personal on-site inspection of the Property is strongly recommended, and you are advised to independently verify all information you deem important. Bidder acknowledges that he/she has reviewed the diligence materials and disclosures provided on the applicable Property web page; however, Concierge assumes no liability for errors or omissions in these disclosures or any other property listings or advertising, promotional or publicity statements and materials which is why it is important to verify independently all such information. Although information has been obtained from resources deemed reliable, Concierge does not make any guarantee as to the accuracy of any such information.

The Property will be shown upon request made to Owner's brokers whose contact information is posted on the Property's web page. Any open houses or showings are hosted solely by third party real estate agents acting on behalf of Seller, and Concierge has no responsibility for such open houses, including but not limited to cancellations or changes in times, all of which are the sole responsibility of the third-party real estate agents.

In connection with any due diligence, inspection, visit and/or investigation of the Property by you and or any person/entity/representative acting on your behalf (the "***Inspectors***"), you and the Inspectors shall (a) ensure that the Property is kept free and clear of liens, (b) ensure that any and all damage arising from such inspection is repaired, and (c) indemnify, defend and hold Seller and Concierge harmless from all liability, claims, demands, damages and/or costs directly or indirectly arising therefrom. Inspectors shall carry, or require anyone acting on Inspector's behalf to carry, policies of liability insurance, workers' compensation and other applicable insurance with adequate limits, defending and protecting Seller and Concierge from liability for any injuries to persons or property damage occurring during any inspection of the Property.

By registering as a Bidder and bidding at the Auction, you shall be deemed to represent, warrant and agree with respect to each Property you bid on that: (a) you have reviewed all due diligence materials related to the Property, you have inspected the Property, you are familiar and satisfied with the condition of the Property and you have conducted such investigation of the Property as you deemed appropriate, (b) neither Concierge nor Seller, nor any affiliate, agent, officer, employee or representative of either of them, has made any verbal or written representation, warranty, promise or guarantee whatsoever to you, expressed or implied, and in particular, that no such representations, warranties, guarantees, or promises have been made with respect to the condition, operation, or any other matter or thing affecting or related to the Property and/or the offering or sale of the Property, (c) you have not relied upon any representation, warranty, guarantee or promise or upon any statement made or any information provided concerning the Property, including but not limited to information made available on-line at the Website, in Auction Advertising, in the Auction brochure, or provided or made available by Concierge or by Seller, or their respective affiliates, agents, officers, employees or representatives, (d) you have made your bid after having relied solely on your own independent investigation, inspection, due diligence, analysis, appraisal and evaluation of the Property and the facts and circumstances related thereto, (e) you have actual authority to enter a bid and to enter into the Purchase and Sale Contract, (f) you have the capacity to close the transaction pursuant to the Purchase and Sale Contract, (g) any information provided or to be provided by or on behalf of the Seller with respect to the Properties including, without limitation, all information contained on the Website, in Auction advertising, or any other printed or online materials being made available to you by Seller and Concierge, was obtained from Seller and/or Seller's agents, and Concierge has not made any independent investigation or verification of such information, and makes no representations as to the accuracy or completeness of such information, (h) without limiting the generality of the foregoing, Concierge shall not have any obligation to disclose to any Bidder, and shall have no liability for its failure to disclose to any Bidder, any information known to them relating to any Property except as may be required by law, and (j) Concierge is not liable or bound in any manner by any oral or written statements, representations or information pertaining to the Property, or the operation thereof, made or furnished by any real estate broker, agent, employee, or other person.

WITHOUT LIMITING ANY OTHER PROVISION OF THESE TERMS AND CONDITIONS OR THE PURCHASE AND SALE CONTRACT, ALL BIDDERS ACKNOWLEDGE AND AGREE THAT THEY ARE BIDDING FOR AND, WHEN THE HIGH BIDDER IS CONFIRMED BY CONCIERGE, WILL ACQUIRE THE PROPERTY, INCLUDING THE IMPROVEMENTS CONSTRUCTED ON THE PROPERTY AND ANY APPLIANCES AND BUILDING SYSTEMS, IN ITS "AS IS" CONDITION AS OF AUCTION DAY, WITH ALL DEFECTS, BOTH PATENT AND LATENT, AND WITH ALL FAULTS, WHETHER KNOWN OR UNKNOWN, PRESENTLY EXISTING OR THAT

MAY HEREAFTER ARISE (TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW). ALL PROSPECTIVE BIDDERS ACKNOWLEDGE AND AGREE THAT CONCIERGE HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATION, WARRANTY, PROMISE, COVENANT, AGREEMENT OR GUARANTY OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY, INCLUDING WITHOUT LIMITATION: (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY; (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, IF ANY; (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL PURPOSES, ACTIVITIES AND USES WHICH BIDDER MAY CONDUCT THEREON; (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY; (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY; (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY; (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY; (H) THE EXISTENCE OF ANY VIEW FROM THE PROPERTY OR THAT ANY EXISTING VIEW WILL NOT BE OBSTRUCTED IN THE FUTURE; (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, (J) THE STRUCTURAL INTEGRITY OF ANY IMPROVEMENTS ON THE PROPERTY, (K) THE CONFORMITY OF THE IMPROVEMENTS TO ANY PLANS OR SPECIFICATIONS FOR THE PROPERTY THAT MAY BE PROVIDED TO BIDDER, (L) THE CONFORMITY OF THE PROPERTY TO APPLICABLE ZONING OR BUILDING CODE REQUIREMENTS, (M) THE EXISTENCE OF SOIL INSTABILITY, PAST SOIL REPAIRS, SUSCEPTIBILITY TO LANDSLIDES, SUBSIDENCE, SUFFICIENCY OF UNDER-SHORING, SUFFICIENCY OF DRAINAGE, OR ANY OTHER MATTER AFFECTING THE STABILITY OR INTEGRITY OF THE LAND OR ANY BUILDINGS OR IMPROVEMENTS SITUATED THEREON, (N) WHETHER THE PROPERTY IS LOCATED IN A SPECIAL STUDIES ZONE UNDER THE PUBLIC RESOURCES CODE OR A SEISMIC HAZARDS ZONE OR A STATE FIRE RESPONSIBILITY AREA, OR A SPECIAL FLOOD HAZARD ZONE OR (O) THE PRESENCE OF TERMITES OR OTHER PESTS AND ANY DAMAGE TO THE PROPERTY AND/OR ITS IMPROVEMENTS THAT MAY HAVE OCCURRED AS A RESULT. BIDDER ACKNOWLEDGES THAT THE PROPERTY AND ITS IMPROVEMENTS MAY NOT BE  IN COMPLIANCE WITH APPLICABLE ZONING, BUILDING, HEALTH OR OTHER LAWS OR CODES, AND NEITHER SELLER, CONCIERGE NOR ANY OF ITS REPRESENTATIVES OR AGENTS HAVE OCCUPIED THE PROPERTY AND THE PROPERTY MAY NOT BE IN HABITABLE CONDITION. ALL PROSPECTIVE BIDDERS FURTHER ACKNOWLEDGE AND AGREE THAT, WITHOUT LIMITATION, SELLER AND CONCIERGE HAVE NOT MADE, DO NOT MAKE, AND SPECIFICALLY DISCLAIM ANY REPRESENTATIONS REGARDING COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT OR WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, AS DEFINED BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS OR THE DISPOSAL OR EXISTENCE, IN OR ON THE PROPERTIES, OF ANY HAZARDOUS SUBSTANCE, AS DEFINED BY APPLICABLE LAW, INCLUDING THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER. EACH PROSPECTIVE BIDDER AND ANYONE CLAIMING BY, THROUGH OR UNDER THE SAME HEREBY FULLY AND IRREVOCABLY RELEASE SELLER AND CONCIERGE, AND THEIR RESPECTIVE AFFILIATES, EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS AND AGENTS, FROM ANY AND ALL CLAIMS THAT HE/SHE/IT OR THEY MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST SELLERS AND/OR CONCIERGE, AND/OR THEIR RESPECTIVE AFFILIATES, EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS AND AGENTS, FOR ANY COST, LOSS, LIABILITY, DAMAGE, EXPENSE, DEMAND, ACTION OR CAUSE OF ACTION ARISING FROM OR RELATING TO THE CONDUCT OF THE AUCTION AND/OR THE CONDITION OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY CONSTRUCTION DEFECTS, ERRORS, OMISSIONS OR OTHER CONDITIONS, INCLUDING BUT NOT LIMITED TO ENVIRONMENTAL MATTERS, AFFECTING THE PROPERTY, OR ANY PORTION THEREOF. THIS RELEASE INCLUDES CLAIMS OF WHICH PROSPECTIVE BIDDER IS PRESENTLY UNAWARE OR DOES NOT PRESENTLY SUSPECT TO EXIST IN HIS/HER/ITS FAVOR WHICH, IF KNOWN BY PROSPECTIVE BIDDER, WOULD MATERIALLY AFFECT PROSPECTIVE BIDDER'S RELEASE OF SELLERS AND CONCIERGE. EACH PROSPECTIVE BIDDER  SHOULD CONSIDER THESE MATTERS WHEN REGISTERING AS A BIDDER AND BEFORE PARTICIPATING IN ANY AUCTION AND PLACING BIDS.

YOU ACKNOWLEDGE AND AGREE THAT THIS RELEASE AND DISCLAIMER IS INTENDED TO BE VERY BROAD AND YOU HEREBY WAIVE AND RELINQUISH ANY RIGHTS OR BENEFITS YOU MAY HAVE UNDER ANY STATE OR FEDERAL LAW OR LEGAL PRINCIPLE DESIGNED TO INVALIDATE RELEASES OF UNKNOWN OR UNSUSPECTED CLAIMS TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW.

Bidder Initials

Concierge is not acting in any capacity as a real estate agent or broker for any Bidder or for the Seller. **Please note the amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between the client and broker.**

**Conditions of Sale**. Bidder agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

        a.      The Bidder shall, at the Bidder's sole expense and prior to the commencement of the Auction, obtain any and all inspections and repairs that it deems appropriate.

        b.      If for any reason, or no reason whatsoever, the Seller is unable to deliver good and marketable title to the Property to the Bidder, the Bidder's sole remedy shall be the return of any money that it has deposited toward the purchase of the Property.

        c.      The Seller is selling the Property in its "AS IS, WITH ALL FAULTS" condition or basis by warranty deed without any representations or warranties whatsoever, including, without limitation, representations or warranties as to oil and mineral rights, city or government agency notifications regarding work to be done, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property, provided, however, that the Seller shall be required to deliver good and marketable title to the Buyer or any Back-Up Buyer.

        d.      THE BUYER'S PURCHASE OF THE PROPERTY IS A CASH TRANSACTION WITH NO CONTINGENCIES OR CONDITIONS OF ANY KIND, including, without limitation, a contingency for financing, due diligence or inspections, except that the Seller is required to (y) obtain Court approval and the entry of an order of the Court approving the sale of the Property to the Buyer that is not subject to a stay pending appeal and (z) deliver good and marketable title to the Property to the Buyer.

        e.      The sale of the Property is subject to Court approval after notice to the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules, which approval will be obtained by Owner as soon as reasonably practicable after the completion of the Auction.

        f.      The Property is being sold subject to standard allocations and any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property. Title, however, is to be transferred free and clear of all liens, claims and encumbrances except those non-monetary liens and encumbrances set forth on that certain preliminary title report prepared by Chicago Title Company and dated as of November 16, 2021, a copy of which is available on the Property web page.

        g. Escrow for the sale of the Property to the Buyer or any Back-Up Buyer shall be scheduled to close on February 28, 2022.

**Dispute and Withdrawal.** Concierge may, in the event of any dispute between bidders, determine the successful bidder or re-offer the subject Property for auction. Should there be any dispute after the Auction, Concierge's record of the High Bid, the Buyer, the Second High Bid, the Back-Up Buyer, and the Purchase Price shall be conclusive to resolve the dispute. Concierge and Seller reserve the right to withdraw the Property before or at the Auction in its sole discretion and shall have no liability whatsoever for such withdrawal.

**Cancellation/Postponement**. SUBJECT TO APPROVAL BY THE COURT AND ANY REQUIRED CONSENT FROM HANKEY CAPITAL, LLC, CONCIERGE SHALL HAVE THE RIGHT TO CANCEL, POSTPONE OR RESCHEDULE THE AUCTION.

**Applicable Laws**. The respective rights and obligations of the parties with respect to these Terms and Conditions and the conduct of the Auction shall be governed, enforced and interpreted by the laws of the state of New York, without regard for conflicts of law principles, provided that any rights and obligations as between Owner and Buyer shall be construed and enforced in accordance with the laws of the State of California, without regard to conflicts of law principles.

Bidder Initials

**PRESS RELEASES/PROMOTION.** Each attendee of the Auction shall be deemed to have consented to the issuance of press releases and other public communications by Seller, Concierge and/or their agents regarding the Auction and the Property offered or sold at the Auction. By executing these Terms and Conditions each attendee of the Auction authorizes and consents to the recording of such attendee's participation and appearance on video tape, audio tape, film, photograph or any other medium and the exhibition or distribution of such recording without restrictions or limitation for any promotional purpose which Concierge and those acting pursuant to its authority, deem appropriate. Bidder hereby releases and discharges Concierge, its members, officers, employees, representatives and agents, from any and all claims and demands arising out of or in connection with the use of such photographs, film or tape, including but not limited to any claims for defamation or invasion of privacy or rights to publicity.

**NO WARRANTIES**. *COMPANY HEREBY DISCLAIMS ALL WARRANTIES.* COMPANY IS MAKING THE WEBSITE AVAILABLE "AS IS" WITHOUT WARRANTY OF ANY KIND. YOU ASSUME THE RISK OF ANY AND ALL DAMAGE OR LOSS FROM USE OF, OR INABILITY TO USE, THE WEBSITE OR THE SERVICES. TO THE MAXIMUM EXTENT PERMITTED BY LAW, COMPANY EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE WEBSITE, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NONINFRINGEMENT. COMPANY DOES NOT WARRANT THAT THE WEBSITE OR THE SERVICES WILL MEET YOUR REQUIREMENTS OR THAT THE OPERATION OF THE WEBSITE OR THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

**INDEMNIFICATION**. Bidder shall indemnify, defend (by counsel satisfactory to Concierge) and hold harmless Concierge and its officers, employees, agents and representatives (collectively, the "*Indemnitees*"), against any claim, demand, cause of action, loss, liability, deficiency, fine, penalty, damage or expense (including reasonable attorney's fees and costs and including interest and penalties) (a "*Loss*") which any Indemnitee may suffer, incur, sustain or become subject to, as a result of or in connection with: (i) any breach by Bidder of any representation, warranty, obligation or covenant set forth in these Terms and Conditions; (ii) any breach by Bidder of any Purchase and Sale Contract; and (iii) any damage to person or property caused by Bidder in connection with the Property or the Auction.

**LIMITATION OF LIABILITY**. You agree that Concierge shall not be liable for any damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by any Bidder or any other person or entity in connection with the Auction and/or the sale of any Property and/or the failure of any party to complete the sale of any Property. Without limiting the foregoing, in no event shall Concierge's liability to any Bidder for any act or omission occurring in connection with the Auction exceed the amount that such you have actually paid to Concierge as a deposit or as payment for a particular Property. Offers made at the Auction are void where prohibited by law. IN NO EVENT WILL CONCIERGE BE LIABLE FOR ANY DAMAGES INCLUDING, WITHOUT LIMITATION, ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES, LOSSES RELATED TO BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION OR LOST PROFITS ARISING OUT OF OR IN CONNECTION WITH THE SALE OF THE PROPERTY OR THE AUCTION, OR OUT OF ANY BREACH OF WARRANTY, EVEN IF CONCIERGE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. This limitation shall apply regardless of whether the damages arise out of breach of contract, tort, or any other legal theory or form of action.

**Limitation on Time to File Claims**. ANY CAUSE OF ACTION OR CLAIM YOU MAY HAVE ARISING OUT OF OR RELATING TO THESE TERMS AND CONDITIONS, THE WEBWEBSITE OR AN AUCTION MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES, OTHERWISE, SUCH CAUSE OF ACTION OR CLAIM IS PERMANENTLY BARRED.

**NOT AN OFFER TO SELL; SOLICITATION ONLY**. Any information on any website, in any brochure, e-mail or postcard and any and all information available regarding the Properties shall not constitute an offer to sell or a solicitation of any offer to buy any Property.  In addition, and without limiting the foregoing, any website, advertisement or brochure shall not constitute an offer to sell  or a solicitation of any offer to buy nor shall there be any Auction of any Property in any state in which such offer, solicitation, or Auction would be unlawful. Offers made at the Auction are void where prohibited by law.

**LICENSING**. For information about Concierge's licensing and bonding, please contact Concierge.

**THIRD PARTIES**. Concierge and/or Seller may provide and/or designate certain third parties to provide ancillary services in connection with a Property Auction and/or links to the websites or products or services of others ("**Third-Party Services**"). Concierge and Seller have no control over, and no liability for any such Third-Party Services. Any such designations do not constitute an endorsement by Concierge or Seller of such third-party service providers, or the products, or services of such third parties. These third parties operate independently of Concierge and Seller and have established their own terms and conditions and policies. Bidder acknowledges and agrees that Concierge and Seller are not responsible for any damages or losses caused or alleged to have been caused by the use of any Third-Party Services.

**SEVERABILITY; WAIVER**. If any provision of these Terms and Conditions is held by a court of competent jurisdiction to be invalid or unenforceable, then such provision shall be enforced to the maximum extent permissible to affect the intent of these Terms and Conditions, and the remainder of these Terms and Conditions shall continue in full force and effect. No waiver of any breach of any provision of these Terms and Conditions shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

**ENTIRE AGREEMENT**. These Terms and Conditions, together with any additional terms and conditions specific to a particular auction (which are incorporated herein by reference and can be found through one or more links on the detail page for the auction in question), constitute the entire agreement between Concierge and Bidder regarding its subject matter and supersede and replace any and all prior or contemporaneous agreements between the parties regarding such subject matter.

**ARBITRATION; VENUE; PREVAILING PARTY**. The parties agree to submit all controversies, disputes, claims and matters of difference arising out of or relating to these Terms and Conditions, including but not limited to its enforcement, scope and/or interpretation, exclusively to arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association from time to time in effect (the "**Arbitration Rules**"). The parties may agree on a retired judge as sole arbitrator. In the absence of such agreement, there will be three arbitrators, selected in accordance with the Arbitration Rules. If there are three arbitrators, a decision reached by at least two of the three arbitrators will be the decision of the arbitration panel. The parties agree to abide by all decisions reached and awards rendered in such arbitration proceedings, and all such decisions and awards will be final and binding on both parties. Judgment upon the award may be entered in any court of competent jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of enforcement. By bidding at an auction, whether present in person, or by agent, by proxy, by written bid, telephone bid, internet bid, or other means, the Bidder shall be deemed to consent to the jurisdiction of the state and federal courts located in the County of New York, State of New York (and of the appropriate appellate courts therefrom) in any such action or proceeding (including an action to compel arbitration) and waives any objection to venue. Process in any action or proceeding may be served personally or by registered mail anywhere in the world. In the event of any such arbitration or any permitted court action, the prevailing party shall be entitled to reimbursement from the non- prevailing party of all reasonable attorney's fees and costs/expenses of the prevailing party and any award of the arbitrator(s) or court will include costs and reasonable attorneys' fees to the prevailing party. If any Party files a court action arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, to compel or stay arbitration, or to confirm, vacate or modify an arbitration award (except for a non-contested application to confirm), or to seek payment of any attorneys' fees and/or costs awarded by the arbitrator(s) but not paid by the non-prevailing party in the arbitration, or in the event any Party seeks enforcement of any arbitration award or judgment arising out of an arbitration award, reasonable attorney's fees and other costs incurred by the prevailing Party in such court action or  in connection with such judgment enforcement shall be reimbursed by the non-prevailing Party. THE PARTIES UNDERSTAND THAT, ABSENT THIS AGREEMENT, THEY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, AND THE RIGHT TO A JURY TRIAL, BUT THEY GIVE UP THOSE RIGHTS VOLUNTARILY AND AGREE TO RESOLVE ANY AND ALL GRIEVANCES BY ARBITRATION.  Notwithstanding the foregoing, in the event there is a controversy, dispute, claim or matter of difference arising between (1) Owner and Concierge, or (2) Owner and any Bidder, Buyer, or Back-up Buyer relating to the Terms and Conditions, the conduct of the auction, and the sale of the Property pursuant to the Purchase and Sale Contract, the parties agree (1) to submit all such controversies, disputes, claims and matters of difference arising as a core proceeding exclusively in the Court and agree to submit to personal jurisdiction in the Court, sitting without a jury, which is expressly waived and (2) in the event of any such Court action, the prevailing party shall be entitled to reimbursement from the non-prevailing party of all reasonable attorney's fees and costs/expenses of the prevailing party and any award of the Court will include costs and reasonable attorneys' fees to the prevailing party.

Bidder Initials

**Intellectual Property Rights**. The Website and its entire contents, features and functionality (including all information, software, text, displays, images, video and audio, and the design, selection and arrangement thereof), are owned by the Company, its licensors or other providers of such material and are protected by United States and international copyright, trademark, patent, trade secret and other intellectual property or proprietary rights laws.

These Terms and Conditions permit you to use the Website for your personal, noncommercial use only. You must not reproduce, distribute, modify, create derivative works of, publicly display, publicly perform, republish, download, store or transmit any of the material on our Website, except as follows:

☐      Your computer may temporarily store copies of such materials in RAM incidental to your accessing and viewing those materials.

☐      You may store files that are automatically cached by your Web browser for display enhancement purposes.

☐      You may print or download one copy of a reasonable number of pages of the Website for your own personal, noncommercial use and not for further reproduction, publication or distribution.

☐      If we provide desktop, mobile or other applications for download, you may download a single copy to your computer or mobile device solely for your own personal, noncommercial use, provided you agree to be bound by our end user license agreement for such applications.

☐      If we provide social media features with certain content, you may take such actions as are enabled by such features.

You must not:

☐      Modify copies of any materials from this site.

☐      Use any illustrations, photographs, video or audio sequences or any graphics separately from the accompanying text.

☐      Delete or alter any copyright, trademark or other proprietary rights notices from copies of materials from this site.

☐      Access or use for any commercial purposes any part of the Website or any services or materials available through the Website.

If you print, copy, modify, download or otherwise use or provide any other person with access to any part of the Website in breach of the Terms and Conditions, your right to use the Website will cease immediately and you must, at our option, return or destroy any copies of the materials you have made. No right, title or interest in or to the Website or any content on the Website is transferred to you, and all rights not expressly granted are reserved by the Company. Any use of the Website not expressly permitted by these Terms and Conditions is a breach of these Terms and Conditions and may violate copyright, trademark and other laws.

**Trademarks**. The Company name and its logos and all related names, logos, product and service names, designs and slogans are trademarks of the Company or its affiliates or licensors. You must not use such marks without the prior written permission of the Company. All other names, logos, product and service names, designs and slogans on this Website are the trademarks of their respective owners. Copyright Policy.

**Prohibited Uses**. You may use the Website only for lawful purposes and in accordance with these Terms and Conditions. You agree not to use the Website:

☐      In any way that violates any applicable federal, state, local or international law or regulation (including any laws regarding the export of data or software to and from the US or other countries).

☐      For the purpose of exploiting, harming or attempting to exploit or harm minors in any way by exposing them to inappropriate content, asking for personally identifiable information or otherwise.

☐      To transmit, or procure the sending of, any advertising or promotional material, including any "junk mail," "chain letter" or "spam" or any other similar solicitation.

☐      To impersonate or attempt to impersonate the Company, a Company employee, another user or any other person or entity (including by using email addresses or screen names associated with any of the foregoing).

☐      To engage in any other conduct that restricts or inhibits anyone's use or enjoyment of the

Bidder Initials _____

Website, or which, as determined by us, may harm the Company or users of the Website or expose them to liability.

Additionally, you agree not to:

☐ Use the Website in any manner that could disable, overburden, damage or impair the site or interfere with any other party's use of the Website, including their ability to engage in real time activities through the Website.

☐ Use any robot, spider or other automatic device, process or means to access the Website for any purpose, including monitoring or copying any of the material on the Website.

☐ Use any manual process to monitor or copy any of the material on the Website or for any other unauthorized purpose without our prior written consent.

☐ Use any device, software or routine that interferes with the proper working of the Website.

☐ Introduce any viruses, trojan horses, worms, logic bombs or other material that is malicious or technologically harmful.

☐ Attempt to gain unauthorized access to, interfere with, damage or disrupt any parts of the Website, the server on which the Website is stored, or any server, computer or database connected to the Website.

☐ Attack the Website via a denial-of-service attack or a distributed denial-of-service attack.

☐ Otherwise attempt to interfere with the proper working of the Website.

Concierge reserves the right to terminate your use of the Services and/or the Website. To ensure that Concierge provides a high quality experience for you and for other users of the Website and the Services, you agree that Concierge or its representatives may access your account and records on a case-by-case basis to investigate complaints or allegations of abuse, infringement of third party rights, or other unauthorized uses of the Website or the Services. Concierge does not intend to disclose the existence or occurrence of such an investigation unless required by law, but Concierge reserves the right to terminate your account or your access to the Website immediately, with or without notice to you, and without liability to you, if Concierge believes that you have violated any of the Terms of Use, furnished Concierge with false or misleading information, or interfered with use of the Website or the Services by others.

**Reliance on Information Posted**. The information presented on or through the Website is made available solely for general information purposes. We do not warrant the accuracy, completeness or usefulness of this information. Any reliance you place on such information is strictly at your own risk. We disclaim all liability and responsibility arising from any reliance placed on or use of such materials by you or any other visitor to the Website, or by anyone who may be informed of any of its contents.

This Website may include content provided by third parties, including materials provided by other users, bloggers and third-party licensors, syndicators, aggregators and/or reporting services. All statements and/or opinions expressed in these materials, and all articles and responses to questions and other content, other than the content provided by the Company, are solely the opinions and the responsibility of the person or entity providing those materials. These materials do not necessarily reflect the opinion of the Company. We are not responsible, or liable to you or any third party, for the content or accuracy of any materials provided by any third parties.

**Changes to the Website**. We may update the content on this Website from time to time, but its content is not necessarily complete or up to date. Any of the material on the Website may be out of date at any given time, and we are under no obligation to update such material.

**Information About You and Your Visits to the Website**. All information we collect on this Website is subject to our Privacy Policy. By using the Website, you consent to all actions taken by us with respect to your information in compliance with the Privacy Policy.

**Force Majeure**. We will not be liable or responsible to you, nor be deemed to have defaulted or breached these Terms and Conditions, for any failure or delay in our performance under these Terms and Conditions when and to the extent such failure or delay is caused by or results from acts or circumstances beyond our reasonable control, including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot or other civil unrest, national emergency, revolution, insurrection, epidemic, pandemic, lockouts, strikes or other labor disputes (whether or not relating to our workforce), or restraints or delays affecting carriers or inability or delay in obtaining supplies of adequate or suitable materials, materials or telecommunication breakdown or power outage.

**Linking to the Website and Social Media Features**. You may link to our homepage, provided you do so in a way that is

fair and legal and does not damage our reputation or take advantage of it, but you must not establish a link in such a way as to suggest any form of association, approval or endorsement on our part.

This Website may provide certain social media features that enable you to:

☐    Link from your own or certain third-party websites to certain content on this Website.

☐    Send emails or other communications with certain content, or links to certain content, on this Website.

☐    Cause limited portions of content on this Website to be displayed or appear to be displayed on your own or certain third-party websites.

You may use these features solely as they are provided by us solely with respect to the content they are displayed with and otherwise in accordance with any additional terms and conditions we provide with respect to such features. Subject to the foregoing, you must not:

☐    Establish a link from any website that is not owned by you.

☐    Cause the Website or portions of it to be displayed, or appear to be displayed by, for example, framing, deep linking or in- line linking, on any other site.

☐    Link to any part of the Website other than the homepage.

☐    Otherwise take any action with respect to the materials on this Website that is inconsistent with any other provision of these Terms and Conditions.

The website from which you are linking, or on which you make certain content accessible, must comply in all respects with these Terms and Conditions. You agree to cooperate with us in causing any unauthorized framing or linking immediately to cease. We reserve the right to withdraw linking permission without notice. We may disable all or any social media features and any links at any time without notice in our discretion.

**Links from the Website**
If the Website contains links to other sites and resources provided by third parties, these links are provided for your convenience only. This includes links contained in advertisements, including banner advertisements and sponsored links. We have no control over the contents of those sites or resources, and accept no responsibility for them or for any loss or damage that may arise from your use of them. If you decide to access any of the third-party websites linked to this Website, you do so entirely at your own risk and subject to the terms and conditions of use for such websites.

_____        _____
Bidder Signature                                                                                          Date

Bidder Initials

**EXHIBIT A**
**[FORM PURCHASE AND SALE AGREEMENT]**



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____ DRE Lic. # _____
                   Real Estate Broker (Firm)

By _____ DRE Lic. # _____ Date _____
        (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:

**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

**CONFIRMATION: (c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm __DO NOT COMPLETE. SAMPLE ONLY__ License Number _____

Is the broker of (check one) ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent __DO NOT COMPLETE. SAMPLE ONLY__ License Number _____

Is (check one) ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm __DO NOT COMPLETE. SAMPLE ONLY__ License Number _____

Is the broker of (check one) ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent __DO NOT COMPLETE. SAMPLE ONLY__ License Number _____

Is (check one) ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23 (a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**AD REVISED 12/21 (PAGE 2 OF 2)**



# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

**FAIR HOUSING & DISCRIMINATION ADVISORY**
(C.A.R. Form FHDA, 10/20)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|------|-------|----------|-----------------|----------|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR §2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.

**FHDA 10/20 (PAGE 1 OF 2)**



**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**



**E.** Inquiring about protected characteristics, such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

**F.** Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

**G.** Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

**H.** Denying a home loan or homeowner's insurance;

**I.** Offering inferior terms, conditions, privileges, facilities or services;

**J.** Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

**K.** Harassing a person;

**L.** Taking an adverse action based on protected characteristics;

**M.** Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

**N.** Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

    **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,

    **(ii)** Charging that person higher rent or increased security deposit, or

    **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

**O.** Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

**A.** Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

**B.** Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

**C.** Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

**D.** Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

**E.** Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

**A.** Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

**B.** State: **https://www.dfeh.ca.gov/housing/**

**C.** Local: local Fair Housing Council office (non-profit, free service)

**D.** DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

**E.** Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**

**F.** Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

**A.** Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

**B.** An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

**C.** An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

**D.** An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

**E.** Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC,* 666 F.3d 1216 (2019).

**F.** Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

Buyer/Tenant _____ Date _____

Buyer/Tenant _____ Date _____

Seller/Landlord _____ *Crestlloyd, LLC, Debtor in Possession, by Sierraconstellation Partners, LLC, its Manager* _____ Date _____

Seller/Landlord _____ Date _____

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**FHDA 10/20 (PAGE 2 OF 2)**

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ *Crestlloyd, LLC, Debtor in Possession, by Sierraconstellation Partners, LLC, its Manager* _____ Date _____

Seller _____ Date _____

Buyer _____ Date _____

Buyer _____ Date _____

Buyer's Brokerage Firm _____ DRE Lic # _____ Date _____

By _____ DRE Lic # _____ Date _____

Seller's Brokerage Firm *The Beverly Hills Estates / Compass*    DRE Lic # _02126121_ Date _____

By _____ DRE Lic # _01774287_ Date _____

*Rayni Williams & Branden Williams & Aaron Kirman*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS REVISED 12/21 (PAGE 1 OF 1)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**



# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
### (C.A.R. Form WFA, Revised 12/21)

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602* _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts.  Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant _____ Date _____

Buyer/Tenant _____ Date _____

Seller/Landlord _____*Crestlloyd, LLC, Debtor in Possession, by Sierraconstellation Partners, LLC, its Manager*_ Date _____

Seller/Landlord _____ Date _____

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S, Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/21 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, 12/21)

**Date Prepared:** *February 10, 2022*

**1. OFFER:**

**A.** THIS IS AN OFFER FROM _____ ("Buyer").

**B.** THE PROPERTY to be acquired is _____ *944 Airole Way* _____ , situated
in *Los Angeles* (City), *Los Angeles* (County), California, *90077-2602* (Zip Code),
Assessor's Parcel No(s). *4369-026-021* ("Property").
**(Postal/Mailing address may be different from city jurisdiction.  Buyer is advised to investigate.)**

**C.** THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.

**D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**

**A.** **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.

**B.** **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
**Seller's Brokerage Firm** *The Beverly Hills Estates / Compass* License Number *02126121*
Is the broker of (check one): ☒ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
Seller's Agent *Rayni Williams & Branden Williams & Aaron Kirman* License Number *01774287*
Is (check one): ☒ the Seller's Agent. (Salesperson or broker associate) ☐ both the Buyer's and Seller's Agent (Dual Agent).
**Buyer's Brokerage Firm** _____ License Number _____
Is the broker of (check one): ☐ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
Buyer's Agent _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (Salesperson or broker associate) ☐ both the Buyer's and Seller's Agent (Dual Agent).

**C.** ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).

**D.** **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | **Purchase Price** | $ _____ | ☒ All Cash |
| **B** | | **Close of Escrow (COE)** | ☐ Days after Acceptance OR on ☒ _2/28/22_ (date) | |
| ~~C~~ | ~~32A~~ | ~~Expiration of Offer~~ | ~~3 calendar days after all Buyer Signature(s)~~ ~~or _____ (date),~~ ~~at 5PM or _____ ☐ AM/ ☐ PM~~ | |
| **D(1)** | 5A(1) | **Initial Deposit Amount** *(Money placed into escrow prior to placing a bid)* | $ _250,000.00_ ( _____ % of purchase price) ~~(% number above is for calculation purposes and is not a contractual term)~~ | ~~within 3 (or _____) business days after Acceptance by wire transfer~~ OR ☒ _has been deposited_ |
| **D(2)** | 5A(2) | ☒ **Increased Deposit** **(Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.)** | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) *See Supplemental Addendum* | Upon removal of all contingencies OR ☐ _____ (date) OR ☒ _within two (2) business days_ |
| ~~E(1)~~ | ~~5C(1)~~ | ~~Loan Amount(s):~~ ~~First~~ ~~Interest Rate~~ ~~Points~~ ~~If FHA or VA checked, Deliver list of lender-required repairs~~ | ~~$ _____ ( _____ % of purchase price)~~ ~~Fixed rate or ☐ Initial adjustable rate not to exceed _____ %~~ ~~Buyer to pay zero points or up to _____ % of the loan amount~~ ~~17 (or _____) Days after Acceptance~~ | ~~Conventional or, if checked,~~ ~~☐ FHA ☐ VA~~ ~~(CAR Forms FVAC, HID attached)~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| ~~E(2)~~ | ~~5C(2)~~ | ~~Additional Financed Amount~~ ~~Interest Rate~~ ~~Points~~ | ~~$ _____ ( _____ % of purchase price)~~ ~~Fixed rate or ☐ Initial adjustable rate not to exceed _____ %~~ ~~Buyer to pay zero points or up to _____ % of the loan amount~~ | ~~Conventional or, if checked,~~ ~~☐ Seller Financing~~ ~~☐ Other:~~ |
| **E(3)** | 7A | **Occupancy Type** | Primary, or if checked, ☐ Secondary ☐ Investment | |
| **F** | 5D | **Balance of Down Payment** | $ _____ | |
| | | **PURCHASE PRICE TOTAL** | $ _____ | |

© 2021, California Association of REALTORS®, Inc.

**RPA 12/21 (PAGE 1 OF 16)**  Buyer's Initials _____ / _____  Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

Property Address: *944 Airole Way, Los Angeles, CA 90077-2622*    Date: *February 14, 2022*

| | Paragraph # | Paragraph Title or Contract Term | | Additional Terms |
|---|---|---|---|---|
| ~~G(1)~~ | ~~5E~~ | ~~Seller Credit, if any, to Buyer~~ | ☐ $_____ (_____% of purchase price) (% number above is for calculation purposes and is not a contractual term) | ~~Seller credit to be applied to closing costs OR~~ ☐ ~~Other:_____~~ |
| G(2) | | ADDITIONAL FINANCE TERMS: *none* | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | ~~Attached to the offer or~~ ☒ 3 (or __2__ ) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | ~~Attached to the offer or~~ ☒ 3 (or __2__ ) Days after Acceptance | |
| ~~H(3)~~ | ~~6B~~ | ~~Verification of Loan Application~~ | ~~Attached to the offer or ☐ 3 (or ___ ) Days after Acceptance~~ | ☐ ~~Prequalification~~ ☐ ~~Preapproval~~ ☐ ~~Fully-underwritten preapproval~~ |
| I | | **Intentionally Left Blank** | | |
| J | 16 | Final Verification of Condition | 5 (or ___ ) Days prior to COE | |
| ~~K~~ | ~~23~~ | ~~Assignment Request~~ | ~~17 (or ___ ) Days after Acceptance~~ | |
| L | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or ___ ) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $_____ | 17 (or ___ ) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or ___ ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See **paragraph 8H**. ☒ CR attached |
| | | **Informational Access to Property** Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or ___ ) Days after Acceptance | |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or ___ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(5) | 8E, 13A | Preliminary ("Title") Report *has already been delivered* | 17 (or ___ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(6) | 8F, 11F(1) | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or ___ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or ___ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(8) | 8J | Sale of Buyer's Property Sale of Buyer's property is not a contingency, ~~UNLESS checked here:~~ ☐ ~~C.A.R. Form COP attached~~ | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☒ 6 PM or _____ ☐ AM/☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| ~~M(2)~~ | ~~7C~~ | ~~Seller Occupied or Vacant units~~ | ~~COE date or, if checked here, _____ days after COE (29 or fewer days) _____ days after COE (30 or more days)~~ | ~~C.A.R. Form SIP attached if 29 or fewer days, C.A.R. Form RLAS attached if 30 or more days.~~ |
| ~~M(3)~~ | | ~~Tenant Occupied units~~ | ~~See Tenant Occupied Property Addendum (C.A.R. form TOPA)~~ | ~~If tenant occupied ☐ TOPA or ☐ Other, attached~~ |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | ~~7 (or ___ ) Days after Acceptance~~ *Delivered* | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or ___ ) Days after receipt | |
| N(3) | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or ___ ) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or ___ ) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | **Intentionally Left Blank** | | |

**RPA 12/21 (PAGE 2 OF 16)**    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Property Address: 944 Airole Way, Los Angeles, CA 90077-2620                    Date: January 7, 2022

| P | Items Included and Excluded | | |
|---|---|---|---|
| P(1) | 9 | **Items Included – All items specified in Paragraph 9B are included and the following, if checked:** | |

<table>
<tr>
<td>

[X] Stove(s), oven(s), stove/oven<br>    combo(s);<br>
[X] Refrigerator(s);<br>
[X] Wine Refrigerator(s);<br>
[X] Washer(s);<br>
[X] Dryer(s);<br>
[X] Dishwasher(s);<br>
[X] Microwave(s);
</td>
<td>

[X] Video doorbell(s);<br>
[X] Security camera equipment;<br>
[X] Security system(s)/alarm(s), other than<br>    separate video doorbell and camera<br>    equipment;<br>
[X] Smart home control devices;<br>
[X] Wall mounted brackets for video or audio<br>    equipment;
</td>
<td>

[ ] Above-ground pool(s) / [ ] spa(s);<br>
[X] Bathroom mirrors, unless<br>    excluded below;<br>
[X] Electric car charging systems<br>    and stations;<br>
[X] Potted trees/shrubs; (real/natural)
</td>
</tr>
</table>

**Additional Items included:** _____  _____  _____

| P(2) | 9 | **Excluded Items:**  *The Property is being sold unfurnished* | X  **"Unity" sculpture in entryway** |
|---|---|---|---|
| | | [X] *fake/artificial* **potted plants** ; [X]  **Artwork** ; | [X]  **Angel glass sculpture** |

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Paragraph #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [X] Buyer [ ] Seller [ ] Both _____ _____ [ ] Provided by: _____ | [ ] Environmental [ ] Other _____ |
| Q(2) | | _____ Report | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(3) | | _____ Report | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(5) | 10A 10B(2)(A) | Government Required Point of Sale **inspections, reports** | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(6) | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(7) | 19B | Escrow Fees | [ ] Buyer [ ] Seller [X] Both _____ [ ] Each to pay their own fees | Escrow Holder: _____ |
| Q(8) | 13 | Owner's title insurance policy | [ ] Buyer [X] Seller [ ] Both _____ | Title Company (If different from Escrow Holder): _____ |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(11) | | City transfer tax, fees | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(12) | 11K(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | [X] Buyer [ ] Seller [ ] Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee.  Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, [X] Buyer [ ] Both | |
| Q(16) | | _____ fees or costs | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(17) | | _____ fees or costs | [X] Buyer [ ] Seller [ ] Both _____ | |
| Q(18) | 10C | Home warranty plan: _____ | [ ] Buyer [ ] Seller [ ] Both [X] Buyer waives home warranty plan Issued by: _____ | ~~Cost not to exceed $~~ _____ |

| R | OTHER TERMS:  *See Supplemental Addendum* _____ |
|---|---|
| | _____ |
| | _____ |

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          944 Airole Way

**4. PROPERTY ADDENDA AND ADVISORIES:** (Check if applicable)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenant Occupied Property Purchase Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Other

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Addendum # _____ (C.A.R. Form ADM)   ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)   ☒ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☒ Other *Contingency Removal (C.A.R. Form CC)*   ☒ Other *Supplemental Addendum*

**C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
- ☒ Buyer's Inspection Advisory (C.A.R. Form BIA)   ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)   ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
  (Parties may also receive a privacy disclosure from their own Agent.)
- ☒ Wildfire Disaster Advisory (C.A.R. Form WDFA)   ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA)   ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
- ☐ REO Advisory (C.A.R. Form REO)   ☐ Probate Advisory (C.A.R. Form PA)
- ☐ Other   ☐ Other

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
(1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

(2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.

(3) **RETENTION OF DEPOSIT: Paragraph 29,** if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

~~**C. LOAN(S):**~~
~~(1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.~~
~~(2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.~~
~~(3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.~~
~~(4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) (i) of any lender requirements that Buyer requests Seller to pay for or otherwise correct or (ii) that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.~~

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

~~**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.~~

**6. ADDITIONAL FINANCING TERMS:**

**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

~~**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.~~

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   944 Airole Way

Property Address: 944 Airole Way, Los Angeles, CA 90077-2615    Date: February 11, 2022

~~C.  **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.~~

7.  **CLOSING AND POSSESSION:**
   A.  **OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.
   B.  **CONDITION OF PROPERTY ON CLOSING:**
      (1)  Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.
      (2)  **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**
   ~~C.  **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed, **(i)** the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; **(ii)** Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan; and **(iii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.~~
   D.  **At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.
   E.  Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

8.  **CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**
   ~~A.  **LOAN(S):**
      (1)  This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form,** contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
      (2)  Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.
      (3)  Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.
      (4)  If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
      (5)  NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.~~
   ~~B.  **APPRAISAL:**
      (1)  This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form,** contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
      (2)  NO APPRAISAL CONTINGENCY: If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.~~
   ~~C.  **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.~~
   ~~D.  **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review of Seller's documents required in **paragraph 14A**.~~

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

E. **TITLE:**
   (1) This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
   (2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

F. ~~**CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in paragraph 3L(6), contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under paragraph 11K ("CI Disclosures").~~

G. ~~**BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to paragraph 9B(6), is, as specified in paragraph 3L(7), a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in paragraph 3L(7), refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.~~

H. ~~**REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER:** Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency. If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.~~

I. ~~**REMOVAL OF CONTINGENCY OR CANCELLATION:**~~
   (1) ~~For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.~~
   (2) ~~For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in paragraph 3L or 5 Days after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.~~
   (3) ~~If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.~~

J. **SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

9. **ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
   A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.
   B. **ITEMS INCLUDED IN SALE:**
      (1) All EXISTING fixtures and fittings that are attached to the Property;
      (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P**, if currently existing at the time of Acceptance. **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.
      (3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
      (4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
      (5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.
      (6) LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.
      (7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**RPA 12/21 (PAGE 6 OF 16)**    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    **944 Airole Way**

Property Address: 944 Airole Way, Los Angeles, CA 90077-2604    Date: February 1, 2022

**C.  ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A.  INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs **3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report.** Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).

**B.  GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

    (1)  **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

    (2)  **POINT OF SALE REQUIREMENTS:**

        **(A)** Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

        **(B)** Buyer shall be provided, within the time specified in **paragraph 3N(1),** unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

    (3)  **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

    (4)  **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C.  HOME WARRANTY:**

    (1)  Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

    (2)  **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A.  TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

    (1)  Seller shall, within the time specified in **paragraph 3N(1),** Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

    (2)  The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

    (3)  Seller shall, within the time specified in **paragraph 3N(1),** provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

    (4)  In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

RPA 12/21 (PAGE 7 OF 16)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    944 Airole Way

**B. LEAD DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
    (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A**, **B**, **C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

~~**G. TERMINATION RIGHTS:**~~
    ~~(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.~~
    ~~(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.~~

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    **(1)** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
    **(2)** If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

---

**RPA 12/21 (PAGE 8 OF 16)**        Buyer's Initials  _____ / _____    Seller's Initials  _____ / _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   **944 Airole Way**

**M.   KNOWN MATERIAL FACTS:** Seller, within the time specified in paragraph 3N(1), DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12.  BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.**  Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

   **B.**  Buyer Investigations include, but are not limited to:
   (1)  Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
        (A)  A general home inspection.
        (B)  An inspection for lead-based paint and other lead-based paint hazards.
        (C)  An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
        (D)  Any other specific inspections of the physical condition of the land and improvements.
   (2)  All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Inspection Advisory (C.A.R. Form BIA) for more.
   (3)  A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to **paragraphs 3**, **10**, **11**, and **14A.**

   **C.**  Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling though stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   **D.**  Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer, Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

   **E.**  **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction.  Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13.  TITLE AND VESTING:**

   **A.**  Buyer shall, within the time specified in **paragraph 3N(1),** be *has* provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

   **B.**  Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

   **C.**  Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

   **D.**  Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   **E.**  If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

   **F.**  Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Property Address: 944 Airole Way, Los Angeles, CA 90077-2622     Date: February 18, 2022

G. Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 13A, and 13D.**

~~B.~~ ~~BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION~~

~~(1)~~ ~~Buyer has the time specified in paragraph 3 to: (i) perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 9B(6), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with paragraph 11.~~

~~(2)~~ ~~Buyer may, within the time specified in paragraph 3L(3), request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.~~

~~(3)~~ ~~Buyer shall, by the end of the times specified in paragraph 3L (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in paragraph 11A or 11B, is not Delivered within the time specified in paragraph 3N(1), then Buyer has 5 Days after Delivery of any such items, or the times specified in paragraph 3L, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under paragraph 11G.~~

~~(4)~~ ~~**Continuation of Contingency:** Even after the end of the time specified in paragraph 3L and before Seller cancels, if at all, pursuant to paragraph 14C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14C(1).~~

~~C.~~ ~~SELLER RIGHT TO CANCEL:~~

~~(1)~~ ~~**SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.~~

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; ~~(ii) Deliver updated contact information for Buyer's lender(s) as required by paragraph 5C(3); (iii) Deliver a notice of FHA or VA costs or terms, if any, as specified by paragraph 5C(4) (C.A.R. Form RR); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 5B or 6A; (v) Deliver a letter as required by paragraph 6B; (vi) In writing assume or accept leases or liens specified in paragraph 8G; (vii) Return Statutory and Other Disclosures as required by paragraph 11F; (viii) Cooperate with the title company's effort to comply with the GTO as required by paragraph 13E; (ix) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 5A(2) and 29; (x) Provide evidence of authority to Sign in a representative capacity as specified in paragraph 28; or (xi) Perform any additional Buyer contractual obligation(s) included in this Agreement.~~ In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

~~(3)~~ ~~**SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.~~

~~D.~~ ~~BUYER RIGHT TO CANCEL:~~

~~(1)~~ ~~**BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.~~

~~(2)~~ ~~**BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in paragraph 3N(1) or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.~~

~~(3)~~ ~~**BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed in writing.~~

Buyer's Initials _____ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     **944 Airole Way**

Property Address: ~~944 Airole Way, Los Angeles, CA 90077-2602~~    Date: ~~January Dec 2022~~

~~**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.~~

**F. EFFECT OF REMOVAL OF CONTINGENCIES:**
(1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
(2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G. DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.

~~**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.~~

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** ~~Repairs have been completed as agreed;~~ and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS AND AGENTS:**
**A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA 12/21 (PAGE 11 OF 16)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions **of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any applicable related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A or paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

    **B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

    **C.** A Copy of this Agreement ~~including any counter offer(s)~~ and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

    **D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

    **E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

    **F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

    **G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

    **A. "Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

Buyer's Initials _____ / _____     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   944 Airole Way

Property Address: 944 Airole Way, Los Angeles, CA 90077-2601                                          Date: *February 2022

B. **"Agent"** means the Broker, salesperson, associate or Legally Authorized estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

G. **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.

I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

K. **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

L. **"Electronic Copy"** or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33**.

O. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

P. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

Q. **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. ~~If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.~~ Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

27. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

28. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

RPA 12/21 (PAGE 13 OF 16)                    Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

Property Address: 944 Airole Way, Los Angeles CA 90077-2632    Date: February 06, 2022

---

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):

~~If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).~~    *See Supplemental Addendum*

~~Buyer's Initials~~ _____ / _____    ~~Seller's Initials~~ _____ / _____

---

**30. MEDIATION:**

A. ~~The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.~~

B. ~~ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.~~

---

**31. ARBITRATION OF DISPUTES:**

A. ~~The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR~~ ☐ _____ ~~_____. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.~~

B. ~~EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.~~

C. ~~PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.~~

D. ~~AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.~~

E. ~~"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."~~

~~"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."~~

**Buyer's Initials** _____ / _____    **Seller's Initials** _____ / _____

---

**RPA 12/21 (PAGE 14 OF 16)**    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

**32. BUYER'S OFFER**

    **A.** ~~**EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**~~

    **B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

        (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

        (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

        (3) The name(s) of the Legally Authorized Signer(s) is/are: _____ , _____ .

        (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

        _____ .

    **C.** The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

    **D. BUYER SIGNATURE(S):**

    (Signature) By, _____ Date: _____

        Printed name of BUYER: _____

        ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

    (Signature) By, _____ Date: _____

        Printed name of BUYER: _____

        ☐ Printed name of Legally Authorized Signer: _____ Title, if applicable, _____

    ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

    **A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

    ~~Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below. Seller shall return and include the entire agreement with any response.~~

    ☐ ~~Seller Counter Offer (C.A.R. Form SCO or SMCO)~~

    ☐ ~~Back-Up Offer Addendum (C.A.R. Form BUO)~~

    **B.** ☒ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

        (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

        (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

        (3) The name(s) of the Legally Authorized Signer(s) is/are: _Lawrence R. Perkins_ , _____ .

        (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

        _____ .

    **C.** The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

    **D. SELLER SIGNATURE(S):**

    (Signature) By, _____ Date: _____

        Printed name of SELLER: _Crestlloyd, LLC, Debtor in Possession, by Sierraconstellation Partners, LLC,its Manager_

        ☒ Printed Name of Legally Authorized Signer: _Lawrence R. Perkins_ Title, if applicable, _Manager_

    (Signature) By, _____ Date: _____

        Printed name of SELLER: _____

        ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

    ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

~~**OFFER NOT ACCEPTED:** _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date)~~
        Seller's Initials

**RPA 12/21 (PAGE 15 OF 16)**      Buyer's Initials _____ / _____      Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    **944 Airole Way**

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602*    Date: *January 16, 2022*

## REAL ESTATE BROKERS SECTION:

1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm _____ Lic. # _____
      By _____ Lic. # _____ Date _____
      By _____ Lic. # _____ Date _____
      ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es):**
         Email *rayni@thewilliamsestates.com* _____ Text # _____
         Alternate: _____
         ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address *8878 Sunset Blvd* _____ City *West Hollywood* _____ State *CA* _____ Zip *90069*

   B. Seller's Brokerage Firm *The Beverly Hills Estates / Compass* _____ Lic. # *02126121*
      By _____ *Rayni Williams & Branden Williams* _____ Lic. # *01774287* _____ Date _____
      By _____ Lic. # _____ Date _____
      ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es)** (To be filled out by Seller's Agent):
         Email _____ Text # _____
         Alternate: _____
         ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address _____ City _____ State _____ Zip _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____

Escrow Holder _____ Escrow # _____

By _____ Date _____

Address _____

Phone/Fax/E-mail _____

Escrow Holder has the following license number # _____

☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
                              Agent or Seller Initials

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**RPA 12/21 (PAGE 16 OF 16)**     Buyer's Initials _____ / _____     Seller's Initials _____ / _____

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)



**BUYER'S INVESTIGATION ADVISORY**
(C.A.R. Form BIA, Revised 12/21)

**Property Address** *944 Airole Way, Los Angeles, CA  90077-2602*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.
   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.
   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.
   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.
   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).
   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.
   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.
   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.
   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.
   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____  Date _____

Buyer _____  Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**BIA REVISED 12/21 (PAGE 2 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
**(C.A.R. Form CCPA, Revised 12/21)**

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, "opt out" or stop the transfer of your PI to others, and the right to request that the business delete your PI entirely. You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Also, even businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _____ Date _____

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA REVISED 12/21 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

**CONTINGENCY REMOVAL No. _____**
(C.A.R. Form CR, Revised 12/21)

In accordance with the terms and conditions of the Purchase Agreement, ~~OR~~ ☐ ~~Request For Repair (C.A.R. Form RR),~~ ☐ ~~Response And Reply To Request For Repair (C.A.R. Form RRRR),~~ ☐ ~~Other~~ _____

dated _February 10, 2022_ ,("Agreement"),
on property known as _____ _944 Airole Way, Los Angeles, CA  90077-2602_ _____ ("Property"),
between _____ ("Buyer")
and _____ _Crestlloyd, LLC, Debtor in Possession, by Sierraconstellation Partners, LLC, its Manager_ _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. **Buyer removes ONLY the following individually checked Buyer contingencies:**
   **A.** ☐ Loan (Paragraph 3L(1) and 8A)
   **B.** ☐ Appraisal (Paragraph 3L(2) and 8B)
   **C.** Investigation of Property (Paragraph 3L(3), 8C, and 12)
      (1) ☐ Entire Buyer's Investigation Contingency (Paragraph 12)
   OR (2) ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property (Paragraph 12B(1))
   OR (3) ☐ All Buyer Investigations other than the physical attributes (Paragraph 12B(2) and (3))
   OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT _____
   **D.** Review of Seller Documents:
      (1) ☐ Review of All Seller Documents (Paragraph 3L(4), 8D, 9B(6), 10A, and 11)
      (2) ☐ Review of All Seller Documents, EXCEPT ☐ Government Reports (Paragraph 10A); ☐ Statutory and other Disclosures (Paragraph 11); ☐ Other _____
   **E.** ☐ Preliminary ("Title") Report (Paragraph 3L(5), 8E, and 13)
   **F.** ☐ Common Interest (HOA or OA) Disclosures (Paragraph 3L(6), 8F and 11K(1))
   **G.** ☐ Review of leased or liened items (Paragraph 3L(7) and 8G)
   **H.** ☐ Sale of Buyer's Property (Paragraph 3L(8) and 8J)
   **I.** ☐ Other: _____
   **J.** ☐ Other: _____

3. ☐ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3L(1) and 8A); ☐ Appraisal Contingency (Paragraph 3L(2) and 8B); ☐ Contingency for the Sale of Buyer's Property (Paragraph 3L(8) and 8G); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 3L(6), 8F and 11(1)); ☐ Other _____

4. ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

5. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

**NOTE:** If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document. (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)

Buyer _____  Date _____
Buyer _____  Date _____

6. **SELLER REMOVAL OF SELLER CONTINGENCIES:**
   **NOTE:** This section is solely for the purpose of removing Seller contingencies and should only be signed by Seller if they are removing Seller contingencies.
   Seller hereby removes the following Seller contingencies:
   ☐ Finding of replacement property (C.A.R. Form SPRP); ☐ Closing on replacement property (C.A.R. Form SPRP)
   ☐ Other _____

Seller _____  Date _____
Seller _____  Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CR REVISED 12/21 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**



**STATEWIDE BUYER AND SELLER ADVISORY**
**(This Form Does Not Replace Local Condition Disclosures.**
**Additional Advisories or Disclosures May Be Attached)**
(C.A.R. Form SBSA, Revised 6/21)

**BUYER RIGHTS AND DUTIES:**

- The physical condition of the land and improvements being purchased are not guaranteed by Seller or Brokers.
- You should conduct thorough investigations of the Property both personally and with appropriate professionals.
- If professionals recommend further inspections, you should contact qualified experts to conduct such inspections.
- You should retain your own professional even if Seller or Broker has provided you with existing reports.
- You should read all written reports given to you and discuss those reports with the persons who prepared them. It is possible that different reports provided to you contain conflicting information. If there are discrepancies between reports, disclosures or other information, you are responsible for contacting appropriate professionals to confirm the accuracy of correctness of the reports, disclosures or information.
- You have the right to request that the Seller make repairs or corrections or take other actions based on inspections or disclosures, but the Seller is not obligated to respond to you or make any such repairs, corrections or other requested actions.
- If the Seller is unwilling or unable to satisfy your requests, and you act within certain time periods, you may have the right to cancel the Agreement (the Purchase Agreement and any Counter Offer and Addenda together are the "Agreement"). If you cancel outside of these periods, you may be in breach of the Agreement and your deposit might be at risk.
- You are advised to seek legal, tax, and other assistance from appropriate professionals in order to fully understand the implications of any documents or actions during the transaction.  If you are doing a 1031 exchange, you are advised to contact an exchange accommodator to discuss the proper method and timing of the exchange.
- The terms of the Agreement and any counter offers and addenda establish your rights and responsibilities.

**YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**SELLER RIGHTS AND DUTIES:**

- You have a duty to disclose material facts known to you that affect the value or desirability of the Property.
- You are obligated to make the Property available to the Buyer and have utilities on for inspections as allowed by the Agreement.
- This form is not a substitute for completing a Real Estate Transfer Disclosure Statement, if required, and any other property-specific questionnaires or disclosures.
- The terms of the Agreement establish your rights and responsibilities.
- You are advised to seek legal, tax, and other assistance from appropriate professionals in order to fully understand the implications of any documents or actions during the transaction.  If you are doing a 1031 exchange, you are advised to contact an exchange accommodator to discuss the proper method and timing of the exchange.

**BROKER RIGHTS AND DUTIES:**

- Brokers do not have expertise in all areas and matters affecting the Property or your evaluation of it.
- For most sales of residential properties with no more than four units, Brokers have a duty to make a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose to you material facts or defects that the inspection reveals.
- Many defects and conditions may not be discoverable by a Broker's visual inspection.
- If Brokers give a referral to another professional, Brokers do not guarantee that person's performance. You may  select any professional of your own choosing.
- If a Broker gives you reports or other documents, unless otherwise specified, it is possible that different reports provided to you contain conflicting information. Broker has not and will not verify or otherwise investigate the information contained therein.
- Any written agreement between a Broker and either Buyer or Seller or both establishes the rights and responsibilities of  those parties.

©2021, California Association of REALTORS®, Inc.

**SBSA REVISED 6/21 (PAGE 1 OF 14)**

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 1 OF 14)**

# TABLE OF CONTENTS

| | | | | | | |
|---|---|---|---|---|---|---|
| **SBSA CATEGORIES AND ALPHABETICAL INDEX** | | | | | | |
| **A** | **B** | **C** | **D** | **E** | **F** | **G** |
| Investigation of Physical Condition | Property Use and Ownership | Off-Site and Neighborhood Conditions | Legal Requirements (Federal, State and Local) | Contract Related Issues and Terms | Other Factors Affecting Property | Local Disclosures and Advisories |
| **Pages 2-5** | **Pages 5-8** | **Pages 8-10** | **Pages 10-11** | **Pages 11-12** | **Pages 12-14** | **Page 14** |

**Page**

1. Accessory Dwelling Units ................................. 5
2. Arbitration ............................................ 11
3. Building Permits, Zoning and Code Compliance................. 5
4. Buyer Intended Future Use ............................... 5
5. California Fair Plan ...................................... 6
6. Community Enhancement and Private Transfer Fees ....... 12
7. Death on the Property ................................. 10
8. Earthquake Fault Zones and Seismic Hazard Zones ........ 10
9. Easements, Access and Encroachments ................... 2
10. Electronic Signatures ................................. 11
11. Environmental Hazards .................................. 2
12. EPA's Lead-Based Paint Renovation, Repair and Painting Rule ......................................... 10
13. Escrow Funds ......................................... 11
14. Fire Hardening, Defensible Space, and Wildfire Disasters ..5
15. Fire Hazards ......................................... 10
16. FIRPTA/California Withholding .......................... 10
17. Flood Hazards ........................................ 10
18. Formaldehyde .......................................... 3
19. Future Repairs, Replacements and Remodels .............. 6
20. General Recall/Defective Product/Class Action Information ........................................... 12
21. Geologic Hazards ....................................... 3
22. Golf Course Disclosures ................................ 8
23. Heating Ventilating and Air Conditioning Systems .............. 6
24. Historical Designation, Coastal Commission, Architectural, Landscape, Agricultural or Open Space and other Restrictions on Buildings or Improvement ................. 6
25. Homeowner Associations and Covenants, Conditions and Restrictions ("CC&Rs"); Charging Stations; FHA/VA Approval ....................................... 13
26. Home Warranty ......................................... 11
27. Identification of Natural Persons Behind Shell Companies in All-Cash Transactions ................... 12
28. Inspections ............................................ 3
29. Insurance, Title Insurance and Title Insurance After Foreclosure .......................................... 6
30. Land Lease ............................................ 7
31. Legal Action .......................................... 13
32. Liquidated Damages .................................... 12

**Page**

33. Marijuana and Methamphetamine Labs ............................. 7
34. Marketing; Internet Advertising; Internet Blogs; Social Media ........................................... 13
35. Mediation ........................................... 12
36. Megan's Law Database Disclosure ...................... 10
37. Mold ................................................ 3
38. Neighborhood, Area, Personal Factors, Buyer Intended Use, High Speed Rails, and Smoking Restrictions ............. 9
39. Neighborhood Noise Sources ........................... 9
40. 1915 Improvement Bond Mello-Roos Community District, and Other Assessment Districts ....................... 8
41. Non-Confidentiality of Offers .......................... 12
42. Notice of Your Supplemental Property Tax Bill ................ 11
43. Online or Wire Funds Transfers ........................ 12
44. Owner's Title Insurance ............................... 7
45. PACE Loans and Liens ................................ 13
46. Pets and Animals ...................................... 4
47. Property Tax Bill Supplemental Notice; Accurate Sales Price Reporting ...................................... 10
48. Recording Devices .................................... 14
49. Re-Keying ........................................... 14
50. Rent and Eviction Control Laws and Ordinances ................ 7
51. Retrofit, Building Requirements, and Point of Sale Requirements ........................................ 7
52. Schools .............................................. 9
53. Sea Level Rise ........................................ 9
54. Septic Systems ....................................... 4
55. Short Term Rentals and Restrictions ................... 8
56. Soil and Geologic Conditions .......................... 4
57. Solar Panel Leases ................................... 14
58. Square Footage, Lot Size, Boundaries and Surveys ....... 4
59. Swimming Pool, Security and Safety .................... 8
60. Underground Pipelines and Utilities ................... 9
61. Views ................................................ 8
62. Water Intrusion ....................................... 4
63. Water Shortages and Conservation ..................... 8
64. Well and Water System(s) ............................. 4
65. Wildlife .............................................. 9
66. Wood Destroying Pests ................................ 5
67. Zone Maps May Change ............................... 11

# A. Investigation of Physical Conditions

1. **EASEMENTS, ACCESS AND ENCROACHMENTS:** Buyer and Seller are advised that confirming the exact location of easements, shared or private driveways or roadways, and encroachments on or to the Property may be possible only by conducting a survey. There may be unrecorded easements, access rights, encroachments and other agreements affecting the Property that may not be disclosed by a survey. Representations regarding these items that are made in a Multiple Listing Service or advertisements, or plotted by a title company are often approximations, or based upon inaccurate or incomplete records. Unless otherwise specified by Broker in writing, Brokers have not verified any such matters or any representations made by Seller(s) or others. If Buyer wants further information, Buyer is advised and Broker(s) recommend that Buyer hire a licensed surveyor during Buyer's inspection contingency period. Brokers do not have expertise in this area.

2. **ENVIRONMENTAL HAZARDS:** Buyer and Seller are advised that the presence of certain kinds of organisms, toxins and contaminants, including, but not limited to, mold (airborne, toxic or otherwise), fungi, mildew, lead-based paint and other lead contamination, asbestos, formaldehyde, radon, pcb's, methane, other gases, fuel oil or chemical storage



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 2 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

**944 Airole Way**

tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, urea formaldehyde, or other materials may adversely affect the Property and the health of individuals who live on or work at the property as well as pets. Some municipalities may impose additional requirements regarding underground storage tanks, which may be more common in certain areas and cities throughout the State, especially where there are larger, older homes built before 1935. It is possible that these tanks, either now or in the future, may require inspections or abatement. If Buyer wants further information, Buyer is advised, and Broker(s) recommends, that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Buyer is also advised to consult with appropriate experts regarding this topic during Buyer's inspection contingency period. Broker recommends that Buyer and Seller read the booklets titled, "Residential Environmental Hazards: A Guide for Homeowners, Homebuyers, Landlords and Tenants," and "Protect Your Family From Lead In Your Home." Brokers do not have expertise in this area.

3.  **FORMALDEHYDE:** Formaldehyde is a substance known to the State of California to cause cancer. Exposure to formaldehyde may be caused by materials used in the construction of homes. The United States Environmental Protection Agency, the California Air Resources Board, and other agencies have measured the presence of formaldehyde in the indoor air of select homes in California. Levels of formaldehyde that present a significant cancer risk have been measured in most homes that were tested. Formaldehyde is present in the air because it is emitted by a variety of building materials and home products used in construction. The materials include carpeting, pressed wood products, insulation, plastics, and glues. Most homes that have been tested elsewhere do contain formaldehyde, although the concentrations vary from home to home with no obvious explanation for the differences. One of the problems is that many suppliers of building materials and home products do not provide information on chemical ingredients to builders. Buyers may have further questions about these issues. Buyer is advised to consult with appropriate experts regarding this topic during Buyer's inspection contingency period. Broker(s) recommend that Buyer and Seller read the booklet titled "Residential Environmental Hazards: A Guide for Homeowners, Homebuyers, Landlords and Tenants." Brokers do not have expertise in this area.

4.  **GEOLOGIC HAZARDS:** Buyer and Seller are advised that California has experienced earthquakes in the past, and there is always a potential of future earthquakes. Damage caused by an earthquake may not be discoverable by a visual inspection of Buyer(s) or Broker(s). Inspection by a licensed, qualified professional is strongly recommended to determine the structural integrity and safety of all structures and improvements on the Property. If the Property is a condominium, or located in a planned unit development or in a common interest subdivision, Buyer is advised to contact the homeowners association about earthquake repairs and retrofit work and the possibility of an increased or special assessment to defray the costs of earthquake repairs or retrofit work. Buyer is encouraged to obtain and read the booklet entitled, "The Homeowner's Guide to Earthquake Safety." In most cases a questionnaire within the booklet must be completed by Seller and the entire booklet given to the Buyer if the Property was built prior to 1960. If the Property was built before 1975, and contains structures constructed of masonry or precast (tilt up) concrete walls, with wood frame floors or roof, or if the building has unreinforced masonry walls, then Seller must provide Buyer a pamphlet entitled "The Commercial Property Owner's Guide to Earthquake Safety." Many areas have a wide range of geologic problems and numerous studies have been made of these conditions. Some of this information is available for public review at city and county planning departments. Buyer is encouraged to review the public maps and reports and/or obtain a geologist's inspection report. Buyer may be able to obtain earthquake insurance to protect their interest in the Property. Sellers who agree to provide financing should also consider requiring Buyers to obtain such insurance naming Seller(s) as insured lien holder(s). Brokers do not have expertise in this area.

5.  **INSPECTIONS:** Buyer and Seller are advised that Buyer has the right to obtain various inspections of the Property under most residential purchase agreements. Buyer is advised to have the Property inspected by a professional property inspection service within Buyer's inspection contingency period. A licensed building contractor or other professional may perform these services. The inspector generally does not look behind walls or under carpets, or take equipment apart. Certain items on the Property, such as chimneys and spark arresters, plumbing, heating, air conditioning, electrical wiring, pool and spa, septic system, well, roof, foundation and structural items may need to be inspected by another professional, such as a chimney sweep, plumber, electrician, pool and spa service, septic or well company or roofer. A general physical inspection typically will not test for mold, wood destroying pests, lead-based paint, radon, asbestos and other environmental hazards, geologic conditions, age, remaining useful life or water-tightness of roof, cracks, leaks or operational problems associated with a pool or spa or connection of the Property to a sewer system. If Buyer wants further information on any aspect of the Property, Broker recommends that Buyer have a discussion with the professional property inspector and that Buyer hire an appropriate professional for the area of concern to Buyer. Brokers do not verify the results of any such inspection or guarantee the performance of any such inspector or service. Any election by Buyer to waive the right to a physical inspection of the Property or to rely on somebody other than an appropriate professional is against the advice of Brokers. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Brokers do not have expertise in these area.

6.  **MOLD:** Buyer and Seller are advised that the presence of certain kinds of mold, fungi, mildew and other organisms, sometimes referred to as "toxic mold" (collectively "Mold"), may adversely affect the Property and the health of individuals who live on or work at the Property as well as pets. Mold does not affect all people the same way, and may not affect some people at all. Mold may be caused by water leaks or other sources of moisture such as, but not limited to, flooding, and leaks in windows, pipes and roof. Seller is advised to disclose the existence of any such conditions of which he or she is aware. Buyer should carefully review all of Seller's disclosures for any indication that any of these conditions exist. It is, however, possible that Mold may be hidden and that Seller is completely unaware of its

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 3 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com          944 Airole Way

existence. In addition, Mold is often undetectable from a visual inspection, a professional general property inspection and even a structural pest control inspection. Brokers do not have expertise in this area. If Buyer wants further information, Broker recommends that Buyer have the Property tested for Mold by an environmental hygienist or other appropriate professional during Buyer's inspection contingency period. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Brokers do not have expertise in this area.

7.  **PETS AND ANIMALS:** Buyer and Seller are advised that the current or previous owner(s) may have had domesticated or other pets and animals at the Property. Odors from animal urine or other contamination may be dormant for long periods of time and then become active because of heat, humidity or other factors and might not be eliminated by cleaning or replacing carpets or other cleaning methods. Pet urine and feces can also damage hardwood floors and other floor coverings. Additionally, an animal may have had fleas, ticks and other pests that remain on the Property after the animal has been removed. If Buyer wants further information, Broker(s) recommend that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

8.  **SEPTIC SYSTEMS:** Buyer and Seller are advised that a property may be served by one or more septic systems even though adjoining properties are connected to a sewer line. Buyer and Seller are also advised that some septic tanks and systems may have been abandoned or have leaked into ground water sources. Buyer is advised to contact the appropriate government agency to verify that the Property is connected to a sewer or served by a septic system. If the Property is served by a septic system, it may consist of a septic tank, cesspool, pits, leach lines or a combination of such mechanisms ("collectively, System"). No representation or warranty is made by Seller or Broker concerning the condition, operability, size, capacity or future expansion of a System, nor whether a System is adequate for use by the intended occupants of the Property. A change in the number of occupants or the quantity, composition or methods of depositing waste may affect the efficiency of the System. In addition, the amount of rainfall and ground water table may also affect the efficiency of the System. Many factors including, but not limited to, natural forces, age, deterioration of materials and the load imposed on a System can cause the System to fail at any time. Broker recommends that Buyer obtain an independent evaluation of any System by a qualified sanitation professional during Buyer's inspection contingency period. Buyer should consult with their sanitation professional to determine if their report includes the tank only, or other additional components of the System such as pits and leach fields. Not all inspectors are licensed and licenses are not available for all types of inspection activities. In some cases, Buyer's lender as well as local government agencies may require System inspection. System-related maintenance costs may include, but not be limited to, locating, pumping or providing outlets to ground level. Brokers are unable to advise Buyer or Seller regarding System-related issues or associated costs, which may be significant. If Buyer and Seller agree to obtain a System inspection, Buyer and Seller are cautioned that the inspection cost may include, but not be limited to, the costs of locating, pumping or providing outlets to ground level. Brokers do not have expertise in this area.

9.  **SOIL AND GEOLOGIC CONDITIONS:** Buyer and Seller are advised that real estate in California is subject to settling, slippage, contraction, expansion erosion, subsidence, earthquakes and other land movement. The Property may be constructed on fill or improperly compacted soil and may have inadequate drainage capability. Any of these matters can cause structural problems to improvements on the Property. Civil or geo-technical engineers are best suited to evaluate soil stability, grading, drainage and other soil conditions. Additionally, the Property may contain known or unknown mines, mills, caves or wells. If Buyer wants further information, Broker recommends that Buyer hire an appropriate professional. Not all inspectors are licensed and licenses are not available for all types of inspections. Brokers do not have expertise in this area.

10. **SQUARE FOOTAGE, LOT SIZE, BOUNDARIES AND SURVEYS:** Buyer and Seller are advised that only an appraiser or land surveyor, as applicable, can reliably confirm square footage, lot size, Property corners and exact boundaries of the Property. Representations regarding these items that are made in a Multiple Listing Service, advertisements, and from property tax assessor records are often approximations, or based upon inaccurate or incomplete records. Fences, hedges, walls or other barriers may not represent actual boundary lines. Unless otherwise specified by Broker in writing, Brokers have not verified any such boundary lines or any representations made by Seller or others concerning square footage, lot size, Property corners or exact boundaries. Standard title insurance does not insure the boundaries of the Property. If the exact square footage or lot size or location of Property corners or boundaries is an important consideration in Buyer's decision to purchase the Property and/or how much Buyer is willing to pay for the Property, then Buyer must independently conduct Buyer's own investigation through appropriate professionals, appraisers, or licensed surveyors and rely solely on their data, recognizing that all measurements may not be consistent and that different sources may have different size assessments. Brokers do not have expertise in this area.

11. **WATER INTRUSION:** Buyer and Seller are advised that many homes suffer from water intrusion or leakage. The causes of water intrusion are varied, and can include defective construction, faulty grading, deterioration of building materials and absence of waterproof barriers. Water intrusion can cause serious damage to the Property. This damage can consist of wood rot, mold, mildew and even damage to the structural integrity of the Property. The cost of repairing and remediating water intrusion damage and its causes can be very significant. The existence and cause of water intrusion is often difficult to detect. Because you, your Broker or a general home inspector cannot visually observe any effects of water intrusion, Buyer and Seller should not assume that such intrusion does not exist. Broker recommends that Buyer have the Property inspected for water intrusion by an appropriate professional. Brokers do not have expertise in this area.

12. **WELL AND WATER SYSTEM(S):** Buyer and Seller are advised that the Property may be served by one or more water wells, springs, or private community or public water systems. Any of these private or public water systems may contain

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 4 OF 14)**



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       944 Airole Way

bacteria, chemicals, minerals and metals, such as chromium 6, or may have been abandoned on the Property. Buyer is advised to have both the quality and the quantity of water evaluated, and to obtain an analysis of the quality of any domestic and agricultural water in use, or to be used at the Property, from whatever source. Water quality tests can include not only tests for bacteria, such as coliform, but also tests for organic and inorganic chemicals, metals, mineral content and gross alpha testing for radioactivity. Broker recommends that Buyer consult with a licensed, qualified well and pump company and local government agency to determine whether any well/spring or water system will adequately serve Buyer's intended use and that Buyer have a well consultant perform an extended well output test for this purpose. Water well or spring capacity, quantity output and quality may change at any time. There are no guarantees as to the future water quality, quantity or duration of any well or spring. If Buyer wants further information, Broker(s) recommend that Buyer obtain an inspection of the condition, age, adequacy and performance of all components of the well/spring and any water system during Buyer's inspection contingency period. Brokers do not have expertise in this area.

13. **WOOD DESTROYING PESTS:** Buyer and Seller are advised that the presence of, or conditions likely to lead to the presence of infestation or infection of wood destroying pests and organisms may adversely affect the Property. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. If Buyer wants further information, Buyer is advised and Broker recommends that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation, by a registered structural pest control company during Buyer's inspection contingency period. Brokers do not have expertise in this area.

14. **FIRE HARDENING, DEFENSIBLE SPACE, AND WILDFIRE DISASTERS:** California is subject to wildfires which have resulted in damage and destruction of many properties located in the state. Several recent state laws have mandated disclosures by sellers when selling properties in certain identified zones, such as "high" or "very high" fire severity zones. Additionally, state law mandates that sellers provide buyers with statements of compliance with local mandates if adopted by local agencies. The Property may be located in a high or very high fire severity zone. This may impact the availability of insurance and the ability to build or rebuild structures on the Property. Additionally, there may be requirements that certain fire prevention steps may be mandated. Information on fire hardening, including current building standards and information on minimum annual vegetation management standards to protect homes from wildfires, can be obtained on the internet website http://www.readyforwildfire.org.
Cal Fire has made available a "Fire Hazard Severity Zone Viewer" where you can input the Property address to determine which fire hazard zone, if any, that the Property is located in. The viewer is available at https://egis.fire.ca.gov?FHSZ/. Below is a partial list of potential resources provided as a starting point for Buyer/Lessee investigations and not as an endorsement or guarantee that any federal, state, county, city or other resource will provide complete advice.

   **A.** California Department of Insurance "Wildfire Resource" http://insurance.ca.gov/01-consumers/140-catastrophes/WildfireResources.cfm; 1-800-927-4357
   **B.** Governor's Office of Emergency Services "Cal OES" California Wildfires Statewide Recovery Resources http://wildfirerecovery.org/
   **C.** California Department of Forestry and Fire "Cal Fire" http://fire.ca.gov/ and https://www.readyforwildfire.org/
   **D.** California Department of Transportation https://calsta.ca.gov/
   **E.** California Attorney General https://oag.ca.gov/consumers/pricegougingduringdisasters#8C1
   **Brokers do not have expertise in this area.**

# B. Property Use and Ownership

1. **ACCESSORY DWELLING UNITS:** Accessory Dwelling Units (ADUs) are known by many names: granny flats, in-law units, backyard cottages, secondary units and more. California has passed laws to promote the development of ADUs. Additional information about ADUs can be found at http://hcd.ca.gov/policy-research/AccessoryDwellingUnits.shtml. Buyer is advised to check with appropriate government agencies or third party professionals to verify permits and legal requirements and the effect of such requirements on current and future use and rentability of the Property, its development and size. Brokers do not have expertise in this area.

2. **BUILDING PERMITS, ZONING AND CODE COMPLIANCE:** Buyer and Seller are advised that any structure on the Property, including the original structure and any addition, modification, remodel or improvement may have been built without permits, not according to building codes, or in violation of zoning laws. Further, even if such structure was built according to the then-existing code or zoning requirement, it may not be in compliance with current building standards or local zoning. It is also possible that local law may not permit structures that now exist to be rebuilt in the event of damage or destruction. Certain governmental agencies may require periodic inspections to occur in the future. If Buyer wants further information, Broker(s) recommend that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

3. **BUYER INTENDED FUTURE USE OF, AND MODIFICATIONS TO, THE PROPERTY:** Buyer and Seller are advised that Seller's existing use of the property may not be consistent with Buyer's intended use or any future use that Buyer makes of the property, whether or not Buyer has any current plans to change the use. Buyer is advised to check with appropriate government agencies or third party professionals to verify what legal requirements are needed to accommodate any change in use. In addition, neither Seller nor Broker make any representations as to what modifications Buyer can make to the Property after close of escrow as well as any cost factors associated with any such modifications. Buyer is advised to check with his own licensed contractor and other such professionals as well as with the appropriate government agencies to determine what modifications Buyer will be allowed to make after close of escrow. Brokers do not have expertise in this area.

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    944 Airole Way

4. **CALIFORNIA FAIR PLAN:** Buyer and Seller are advised that insurance for certain hillside, oceanfront and brush properties may be available only from the California Fair Plan. This may increase the cost of insurance for such properties and coverage may be limited. Broker(s) recommend that Buyer consult with Buyer's own insurance agent during Buyer's inspection contingency period regarding the availability of coverage under the California Fair Plan and the length of time it may take for processing of a California Fair Plan application. Brokers do not have expertise in this area.

5. **FUTURE REPAIRS, REPLACEMENTS AND REMODELS:** Buyer and Seller are advised that replacement or repairs of certain systems or rebuilding or remodeling of all or a portion of the Property may trigger requirements that homeowners comply with laws and regulations that either come into effect after Close of Escrow or are not required to be complied with until the replacement, repair, rebuild or remodel has occurred. Permit or code requirements or building standards may change after Close of Escrow, resulting in increasing costs to repair existing features. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

6. **HEATING VENTILATING AND AIR CONDITIONING SYSTEMS:** Changes to state and federal energy efficiency regulations impact the installation, replacement and some repairs of heating and air conditioning units (HVAC): **(i)** Federal regulations now require manufacturers of HVAC units to produce only units meeting a new higher Seasonal Energy Efficiency Rating (SEER). This will likely impact repairs and replacements of existing HVAC units. State regulations now require that when installing or replacing HVAC units, with some exceptions, duct work must be tested for leaks. Duct work leaking more than 15 percent must be repaired to reduce leaks. The average existing duct work typically leaks 30 percent. More information is available at the California Energy Commission's website http://www.energy.ca.gov/title24/changeout. Home warranty policies may not cover such inspections or repairs, **(ii)** the phase out of the use of HCFC-22 (R-22 Freon) will have an impact on repairs and replacement of existing air conditioning units and heat pumps. The production and import of HCFC-22 ended January 1, 2020. Existing systems may continue to be used and HCFC-22 recovered and reclaimed or that was produced prior to 2020 can help meet the needs of existing systems, however, costs may rise. More information is available from the Environmental Protection Agency at https://www.epa.gov/sites/production/files/2018-08/documents/residential_air_conditioning_and_the_phaseout_of_hcfc-22_what_you_need_to_know.pdf and http://www.epa.gov/ozone/title6/phaseout/22phaseout.html, and **(iii)** New efficiency standards are also in place for water heaters. As a consequence, replacement water heaters will generally be larger than existing units and may not fit in the existing space. Additional venting and other modifications may be required as well. More information is available from the U.S. Department of Energy at http://www.eere.energy.gov/buildings/appliance_standards/product.aspx/productid/27. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

7. **HISTORICAL DESIGNATION, COASTAL COMMISSION, ARCHITECTURAL, LANDSCAPE, AGRICULTURAL OR OPEN SPACE AND OTHER RESTRICTIONS ON BUILDINGS OR IMPROVEMENTS:** Buyer and Seller are advised that the Property may be: **(i)** designated as a historical landmark, **(ii)** protected by a historical conservancy, **(iii)** subject to an architectural or landscaping review process, **(iv)** within the jurisdiction of the California Coastal Commission or other government agency, or **(v)** subject to a contract preserving use of all or part of the Property for agriculture or open space. If the Property is so designated or within the jurisdiction of any such, or similar, government agency, then there may be restrictions or requirements regarding Buyer's ability to develop, remove or trim trees or other landscaping, remodel, make improvements to and build on or rebuild the Property. Broker(s) recommend that Buyer satisfy him/herself during Buyer's inspection contingency period if any of these issues are of concern to Buyer. Brokers do not have expertise in this area.

8. **INSURANCE, TITLE INSURANCE AND TITLE INSURANCE AFTER FORECLOSURE:** Buyer and Seller are advised that Buyer may have difficulty obtaining insurance regarding the Property if there has been a prior insurance claim affecting the Property or made by Buyer but unrelated to the Property. Seller is required by C.A.R. Form RPA to disclose known insurance claims made during the past five years (C.A.R. Form SPQ or ESD). Sellers may not be aware of claims prior to their ownership. If Buyer wants further information, Broker(s) recommend that, during Buyer's inspection contingency period, Buyer conduct his or her own investigation for past claims. Buyer may need to obtain Seller's consent in order to have access to certain investigation reports. If the Property is a condominium, or is located in a planned unit development or other common interest subdivision, Buyer and Seller are advised to determine if the individual unit is covered by the Homeowner's Association Insurance and the type of insurance coverage that Buyer may purchase. Broker(s) recommend that Buyer consult Buyer's insurance agents during Buyer's inspection contingency period to determine the need, availability and possibility of securing any and all forms of other insurance or coverage or any conditions imposed by insurer as a requirement of issuing insurance. If Buyer does any repairs to the property during the escrow period or Buyer takes possession prior to Close of Escrow or Seller remains in possession after Close of Escrow, whether for a limited or extended period of time, Broker(s) recommend that Buyer and Seller each consult with their own insurance agent regarding insurance or coverage that could protect them in the transaction (including but not limited to: personal property, flood, earthquake, umbrella and renter's). Buyer and Seller are advised that traditional title insurance generally protects Buyer's title acquired through the sale of the property. While all title insurance policies, as do all insurance policies, contain some exclusions, some title insurance policies contain exclusions for any liability arising from a previous foreclosure. This can occur when a short sale has occurred and the lender mistakenly has also proceeded with a foreclosure. Buyer is strongly advised to consult with a title insurer to satisfy themselves that the policy to be provided adequately protects their title to the property against other possible claimants. Brokers do not have expertise in this area.

9. **LAND LEASE:** Buyer and Seller are advised that certain developments are built on leased land. This means that: **(i)**

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 6 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    944 Airole Way

Buyer does not own the land, (ii) the right to occupy the land will terminate at some point in time, (iii) the cost to lease the land may increase at some point in the future, and (iv) Buyer may not be able to obtain title insurance or may have to obtain a different type of title insurance. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an attorney or other appropriate professional. Brokers do not have expertise in this area.

10. **MARIJUANA, CANNABIS, AND METHAMPHETAMINE LABS:** Buyer and Seller are advised that California law permits individual patients to cultivate, possess and use marijuana for medical purposes. Furthermore, California law permits primary caregivers, lawfully organized cooperatives, and collectives to cultivate, distribute and possess marijuana for medicinal purposes. California law also allows recreational use of marijuana for adults, as well as limited rights for individuals to grow and cultivate marijuana, and rights of others, subject to a licensing process, to grow, cultivate and distribute marijuana for recreational use. California's medical and recreational marijuana laws are in direct conflict with federal law which recognizes no lawful use for marijuana and has no exemptions for medical use. Federal criminal penalties, some of which mandate prison time, remain in effect for the possession, cultivation and distribution of marijuana. Buyer and Seller are strongly advised to seek legal counsel as to the legal risks and issues surrounding owning or purchasing a property where medical or any other marijuana activity is taking place. Marijuana storage, cultivation and processing carry the risk of causing mold, fungus or moisture damage to a property, additionally, some properties where marijuana has been cultivated have had alterations to the structure or the electrical system which may not have been done to code or with permits and may affect the safety of the structure or the safe operation of the electrical system. Buyer is strongly advised to retain an environmental hygienist contractor and other appropriate professionals to inspect a property where medical or any other marijuana activity has taken place. Broker recommends that Buyer and Seller involved with a property where there is medical marijuana activity or where it may take place review the California Attorney General's Guidelines for the "Security and Non-Diversion of Marijuana Grown for Medical Use" https://oag.ca.gov/system/files/attachments/press-docs/MEDICINAL%20CANNABIS%20Guidelines.pdf and the U.S. Department of Justice memo regarding marijuana prosecutions at https://www.justice.gov/opa/press-release/file/1022196/download. Brokers do not have expertise in this area. While no state law permits the private production of methamphetamine, some properties have been the site of an illegal methamphetamine laboratory. State law imposes an obligation to notify occupants, a ban on occupying the property and clean up requirements when authorities identify a property as being contaminated by methamphetamine. Buyer is advised that a property where methamphetamine has been produced may pose a very serious health risk to occupants. Buyer is strongly advised to retain an environmental hygienist contractor or other appropriate professionals to inspect the property if methamphetamine production is suspected to have taken place. Brokers do not have expertise in this area.

11. **OWNER'S TITLE INSURANCE:** The Truth in Lending/RESPA integrated disclosure (TRID) established by the Consumer Financial Protection Bureau (CFPB) requires that lenders must tell borrowers that title insurance is "optional." While obtaining an owner's policy of title insurance may be "optional", it may be a contractual requirement as between Buyer and Seller. Furthermore, California Civil Code § 1057.6 requires that Buyers be provided with the following notice: "IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING."

Additionally, even the CFPB on its "ask CFPB" "What is owner's title insurance?" page advises "You may want to buy an owner's title insurance policy, which can help protect your financial interest in the home." Moreover, not obtaining an owner's policy may increase the cost of the lender's policy (required by most lenders), possibly require the separate purchase of a preliminary title report, and may have an impact on the sale of the Property in the future.

Buyers who decide to opt out of obtaining an owner's title insurance policy are acting against the advice of Brokers as well as the advice provided in the California Civil Code § 1057.6 and by the CFPB. Brokers do not have expertise in this area.

12. **RENT AND EVICTION CONTROL LAWS AND ORDINANCES:** Buyer and Seller are advised that California and some cities and counties impose or may impose restrictions that limit the rent that can be charged to a tenant, the maximum number of tenants who can occupy the property, the right of a landlord to terminate a tenancy and the costs to do so. If Buyer wants further information, Broker(s) recommend that Buyer investigate the issue with an appropriate government authority or HOA during Buyer's inspection contingency period. Brokers do not have expertise in this area.

13. **RETROFIT, BUILDING REQUIREMENTS, AND POINT OF SALE REQUIREMENTS:** Buyer and Seller are advised that state and local Law may require (i) the installation of operable smoke detectors, (ii) bracing or strapping of water heaters, and (iii) upon sale completion of a corresponding written statement of compliance that is delivered to Buyer. Although not a point of sale or retrofit obligation, state law may require the property to have operable carbon monoxide detection devices. Additionally, some city and county governments may impose additional retrofit standards at time of sale including, but not limited to, installing or retrofitting low-flow toilets and showerheads, gas shut-off valves, fireplaces, and tempered glass. Further, there may be potential health impacts from air pollution caused from burning wood. Exposure to particulate matter from the smoke may cause short-term and long-term health effects. Buyers should consult with licensed professional to inspect, properly maintain, and operate a wood burning stove or fireplace. Broker(s) recommend that Buyer and Seller consult with the appropriate government agencies, inspectors, and other professionals to determine the retrofit standards for the Property, the extent to which the Property complies with such standards, and the costs, if any, of compliance. Brokers do not have expertise in this area.

14. **SHORT TERM RENTALS AND RESTRICTIONS:** Buyer and Seller are advised that some cities, counties and Homeowner Associations (HOAs) do impose or may impose restrictions that limit or prohibit the right of the owner or occupant to rent-

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 7 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        **944 Airole Way**



out the Property for short periods of time (usually 30 Days or less). In short term rentals, as well as all rentals, Buyer and Seller are advised to seek assistance to ensure compliance with all fair housing laws and regulations. If Buyer wants further information, Broker(s) recommend that Buyer investigate the issue with an appropriate government authority or HOA during Buyer's inspection contingency period. Brokers do not have expertise in this area.

15. **VIEWS:** Buyer and Seller are advised that present views from the Property may be affected by future development or growth of trees and vegetation on adjacent properties and any other property within the line of sight of the Property. Brokers make no representation regarding the preservation of existing views. If Buyer wants further information, Broker(s) recommend that Buyer review covenants, conditions and restrictions, if any, and contact neighboring property owners, government agencies and homeowner associations, if any, during Buyer's inspection contingency period. Brokers do not have expertise in this area.

16. **SWIMMING POOL, SECURITY AND SAFETY:** Buyer and Seller are advised that state and local Law may require the installation of barriers, anti-entrapment grates, access alarms, self-latching mechanisms, pool covers, exit alarms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. If Buyer wants further information, Broker(s) recommend that Buyer contact local government agencies about these restrictions and other requirements. State law requires that new pools and spas be equipped with at least two of seven specified drowning prevention safety features. Home inspectors have a statutory obligation to perform a non-invasive physical examination of the pool area to identify which safety features are present. Brokers do not have expertise in this area.

17. **WATER SHORTAGES AND CONSERVATION:** Buyer and Seller are advised that the Property may be located in an area that could experience water shortages. The policies of local water districts and the city or county in which the Property is located can result in the occurrence of any or all of the following: **(i)** limitations on the amount of water available to the Property, **(ii)** restrictions on the use of water, and **(iii)** an increasingly graduated cost per unit of water use, including, but not limited to, penalties for excess usage. For further information, Broker recommends that Buyer contact the supplier of water to the Property regarding the supplier's current or anticipated policies on water usage and to determine the extent to which those policies may affect Buyer's intended use of the Property. If the Property is serviced by a private well, Buyer is advised that drought conditions and/or a low water table may make it necessary to arrange, through a private supplier, for delivery of water to the Property. Buyers should contact water truck companies for the costs involved. Brokers do not have expertise in this area.

18. **1915 IMPROVEMENT BOND MELLO-ROOS COMMUNITY DISTRICT, AND OTHER ASSESSMENT DISTRICTS:** Buyer and Seller are advised that the Property may be subject to a improvement bond assessment under the Improvement Bond Act of 1915, a levy of a special tax pursuant to a Mello-Roos Community Facilities district, and/or a contractual assessment as provided in § 5898.24 of the Streets And Highways Code or other assessment districts. Seller is generally required to make a good faith effort to obtain a disclosure notice from any local agency collecting such taxes and deliver such notice to Buyers. If there is a question as to whether an existing bond or assessment will be prorated as of the close of escrow, or whether Seller will pay off the bond or assessment at close of escrow, Buyers are advised to discuss the matter with the appropriate entity and address the responsibility for payment in negotiations for the purchase agreement or amendment prior to removing contingencies. Some cities and other localities have begun, or have the intention to begin, the process of requiring the replacement of utility poles by requiring that utility lines be buried underground. These projects can result in special tax assessments and set-up costs that are imposed on individual property owners. Brokers do not have expertise in this area.

# C. Off-Site and Neighborhood Conditions

1. **GOLF COURSE DISCLOSURES:** Buyer and Seller are advised that if the Property is located adjacent to or near a golf course the following may apply: **(i)** Stray golf balls − Any residence near a golf course may be affected by errant golf balls, resulting in personal injury or destruction to property. Golfers may attempt to trespass on adjacent property to retrieve golf balls even though the project restrictions may expressly prohibit such retrieval. **(ii)** Noise and lighting − The noise of lawn mowers irrigation systems and utility vehicles may create disturbances to homeowners. Maintenance operations may occur in the early morning hours. Residents living near the clubhouse may be affected by extra lighting, noise, and traffic. **(iii)** Pesticides and fertilizer use − A golf course may be heavily fertilized, as well as subjected to other chemicals during certain periods of the year. **(iv)** Irrigation system − Golf course sprinkler systems may cause water overspray upon adjacent property and structures. Also the irrigation system of a golf course may use reclaimed and retreated wastewater. **(v)** Golf carts − Certain lots may be affected more than others by the use of golf carts. Lots adjacent to a tee or putting green may be subject to noise disturbances and loss of privacy. **(vi)** Access to golf course from residences − It is likely that most residences will not have direct access from their lots to the golf course. The project restrictions may disclaim any right of access or other easements from a resident's lot onto the golf course. **(vii)** View obstruction − Residents living near a golf course may have their views over the golf course impacted by maturing trees and landscaping or by changes to the course's configuration. **(viii)** Water restrictions − As some municipalities face water shortages, the continued availability of water to the golf course may be restricted or otherwise reduced by the local water agency. If Buyer wants further information, Broker(s) recommend that Buyer contact the local water agency regarding this matter. Brokers do not have expertise in this area.

2. **NEIGHBORHOOD, AREA, PERSONAL FACTORS, BUYER INTENDED USE, HIGH SPEED RAILS, AND SMOKING RESTRICTIONS:** Buyer and Seller are advised that the following may affect the Property or Buyer's intended use of it:



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 8 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com                944 Airole Way

neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to medical marijuana growing or distribution locations, cell phone towers, manufacturing, commercial, industrial, airport or agricultural activities or military ordnance locations, existing and proposed transportation, construction, and development, any other source that may affect noise, view, traffic, or odor, wild and domestic animals, susceptibility to tsunami and adequacy of tsunami warnings, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally-protected sites or improvements, cemeteries, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer and FAA requirements for recreational and non-recreational use of Unmanned Aircraft Systems (UAS) (drones) (see UAS frequently asked questions http://www.faa.gov/uas/faqs/). California is potentially moving toward high speed rail service between Northern and Southern California. This rail line could have an impact on the Property if it is located nearby. More information on the timing of the project and routes is available from the California High-Speed Rail Authority at www.cahighspeedrail.ca.gov/. The State of California has long-standing no smoking laws in place restricting smoking in most business and some public spaces. Local jurisdictions may enact laws that are more restrictive than state law. Many California cities have enacted restrictions on smoking in parks, public sidewalks, beaches and shopping areas. Some jurisdictions have restrictions entirely banning smoking inside privately owned apartments and condominiums as well as in the common areas of such structures, or limiting smoking to certain designated areas. If Buyer wants further information, Broker(s) recommend that Buyer contact local government agencies about these restrictions. Brokers do not have expertise in this area.

3. **NEIGHBORHOOD NOISE SOURCES:** Buyer and Seller are advised that even if the Property is not in an identified airport noise influence area, the Property may still be subject to noise and air disturbances resulting from airplanes and other aircraft, commercial or military or both, flying overhead. Other common sources of noise include nearby commercial districts, schools, traffic on streets, highways and freeways, trains and general neighborhood noise from people, dogs and other animals. Noise levels and types of noise that bother one person may be acceptable to others. Buyer is advised to satisfy him/herself with regard to any sources of and amounts of noise at different times of day and night. Brokers do not have expertise in this area.

4. **SCHOOLS:** Buyer and Seller are advised that children living in the Property may not, for numerous reasons, be permitted to attend the school nearest the Property. Various factors including, but not limited to, open enrollment policies, busing, overcrowding and class size reductions may affect which public school serves the Property. School district boundaries are subject to change. Buyer is advised to verify whether the Property is now, and at the Close of Escrow will be, in the school district Buyer understands it to be in and whether residing in the Property entitles a person to attend any specific school in which that Buyer is interested. Broker(s) recommend that Buyer contact the local school or school district for additional information during Buyer's inspection contingency period. Brokers do not have expertise in this area.

5. **UNDERGROUND PIPELINES AND UTILITIES:** Throughout California underground pipelines transport natural gas, liquid fuel and other potentially hazardous materials. These pipelines may or may not provide utility services to the Property. Information about the location of some of the pipelines may be available from a company that also provides disclosures of natural and other hazards or from other sources of public maps or records. Proximity to underground pipelines, in and of itself, does not affirmatively establish the risk or safety of the property. If Buyer wants further information about these underground pipelines and utilities, Buyer is advised to consult with appropriate experts during Buyer's inspection contingency period. Brokers do not have expertise in this area.

6. **WILDLIFE:** California is the home to many species of wildlife. The location of homes in California continues to expand into areas that are the natural habitat of wildlife and the Property may be in such an area. Wildlife may become a nuisance especially if the availability of their natural sources of food or water is limited. Buyer should investigate the need to implement mitigation measures at the Property including but not limited to the use of animal-resistant garbage containers, and other appropriate measures depending on the species and habitat involved. Brokers do not have expertise in this area.

7. **SEA LEVEL RISE/COASTAL PROPERTIES:** Sea level rise has the potential to affect coastal residents, recreation, and development. Coastal communities may or may not have addressed the potential impact. The following is a non-exclusive list of issues that may be impacted by sea level rise: **(i)** Shoreline, beach and bluff erosion; and sand replacement requirements; **(ii)** The effectiveness of seawalls and bulkheads, whether built with or without permits; **(iii)** Seaward construction, development or improvement to existing structures; **(iv)** The enactment of geological hazard abatement districts and assessments; and **(v)** The determination of the "mean high tide line" which is used to figure out the property's boundary. Buyer is advised to consult with appropriate professionals, including having a geological inspection, to identify the effect of the listed conditions, if any, on the property. Brokers do not have expertise in this area.

Below is a non-exhaustive list of potential resources provided as a starting point for Buyer investigations into sea level rise, and not as an endorsement or guarantee that any federal, state, county, city or other resource will provide complete advice.

**A.** California Coastal Commission contact information: https://www.coastal.ca.gov/contact/#/
**B.** State Lands Commission contact information: https://www.slc.ca.gov/contact-us/
**C.** National Oceanic and Atmospheric Administration (sea level rise page): https://search.usa.gov/search?affiliate=csc_search_all&query=sea=level=rise&submit=submit
**D.** California Coastal Commission (sea level rise page): https://www.coastal.ca.gov/climate/slr/
**E.** Coastal Adaptation Planning Guidance: Residential Development (draft); California Coastal Commission: https://www.coastal.ca.gov/climate/slr/vulnerability-adaptation/residential/



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 9 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com        944 Airole Way

# D. Legal Requirements (Federal, State and Local)

1. **DEATH ON THE PROPERTY:** California Civil Code § 1710.2 protects a seller from: **(i)** failing to disclose a death on the property that occurred more than 3 years before a buyer has made an offer on a property; and **(ii)** failing to disclose if an occupant of a property was afflicted with HIV/AIDS, regardless of whether a death occurred or if so, when § 1710.2 does not protect a seller from making a misrepresentation in response to a direct inquiry. If the Buyer has any concerns about whether a death occurred on the Property or the manner, location, details or timing of a death, the buyer should direct any specific questions to the Seller in writing. Brokers do not have expertise in this area.

2. **EARTHQUAKE FAULT ZONES AND SEISMIC HAZARD ZONES:** Buyer and Seller are advised that California Public Resources Code §§ 2622 and 2696 require the delineation and mapping of "Earthquake Fault Zones" along known active faults and "Seismic Hazard Zones" in California. Affected cities and counties must regulate certain development projects within these zones. Construction or development on affected properties may be subject to the findings of a geological report prepared by a registered California geologist. Generally, Seller must disclose if the Property is in such a zone and can use a research company to aid in the process. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer make independent inquiries with such research companies or with appropriate government agencies concerning the use and improvement of the Property. Buyer is advised that there is a potential for earthquakes and seismic hazards even outside designated zones. Brokers do not have expertise in this area.

3. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees are trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at http://www.epa.gov/lead for more information. Buyer and Seller are advised to consult an appropriate professional. Brokers do not have expertise in this area.

4. **FIRE HAZARDS:** Buyer and Seller are advised that fires annually cause the destruction of thousands of homes. Due to varied climate and topography, certain areas have higher risks of fires than others. Certain types of materials used in home construction create a greater risk of fire than others. If the Property is located within a State Fire Responsibility Area or a Very High Fire Hazard Zone, generally Seller must disclose that fact to Buyer under California Public Resources Code § 4136 and California Government Code §§ 51178 and 51183.5, and may use a research company to aid in the process. Owners of property may be assessed a fire prevention fee on each structure on each parcel in such zones. The fee may be adjusted annually commencing July 1, 2013. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer contact the local fire department and Buyer's insurance agent regarding the risk of fire. Buyer is advised that there is a potential for fires even outside designated zones. Brokers do not have expertise in this area.

5. **FIRPTA/CALIFORNIA WITHHOLDING:** Buyer and Seller are advised that: **(i)** Internal Revenue Code § 1445, as of February 17, 2016, requires a Buyer to withhold and to remit to the Internal Revenue Service 15% of the purchase price of the property if the Seller is a non-resident alien, unless an express exemption applies. Only 10% needs to be withheld if the Buyer acquires the property as Buyer's residence and the price does not exceed $1,000,000. Seller may avoid withholding by providing Buyer a statement of non-foreign status. The statement must be signed by Seller under penalty of perjury and must include Seller's tax identification number. Buyer can also avoid having to withhold Federal taxes from Seller's Proceeds if the property price is $300,000 or less, and the Buyer signs an affidavit stating Buyer intends to occupy the property as a principal residence. **(ii)** California Revenue and Taxation Code § 18662 requires that a Buyer withhold and remit to the California Franchise Tax Board 3 1/3% of the purchase price of the property unless the Seller signs an affidavit that the property was the Seller's (or the decedent's, if a trust or probate sale) principal residence or that the sales price is $100,000 or less or another express exemption applies. Exemptions from withholding also apply to legal entities such as corporations, LLCs, and partnerships. Brokers cannot give tax or legal advice. Broker recommends that Buyer and Seller seek advice from a CPA, attorney or taxing authority. Brokers do not have expertise in this area.

6. **FLOOD HAZARDS:** Buyer and Seller are advised that if the Property is located within a Special Flood Hazard Area, as designated by the Federal Emergency Management Agency (FEMA), or an area of Potential Flooding pursuant to California Government Code § 8589.3, generally Seller must disclose this fact to Buyer and may use a research company to aid in the process. The National Flood Insurance Program was established to identify all flood plain areas and establish flood-risk zones within those areas. The program mandates flood insurance for properties within high-risk zones if loans are obtained from a federally-regulated financial institution or are insured by any agency of the United States Government. The extent of coverage and costs may vary. If Buyer wants further information, Broker(s) recommend that Buyer consult his or her lender and/or insurance agent during Buyer's inspection contingency period. Buyer is advised that there is a potential for flooding even outside designated zones. Brokers do not have expertise in this area.

7. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specific registered sex offenders is made available to the public via an internet Web site maintained by the Department of Justice at http://www.meganslaw.ca.gov/. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers, in any, are required to check this website. If Buyer wants further information, Buyer should obtain information directly from this website.) Brokers do not have expertise in this area.

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 10 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    **944 Airole Way**

8. **NOTICE OF YOUR SUPPLEMENTAL PROPERTY TAX BILL; ACCURATE SALES PRICE REPORTING:** Buyer and Seller are advised that pursuant to Civil Code § 1102.6(c), Seller, or his or her agent, is required to provide the following notice to the Buyer:

"California property tax law requires the Assessor to revalue real property at the time the ownership of property changes. Because of this law, you may receive one or two supplemental tax bills, depending on when your loan closes.

The supplemental tax bills are not mailed to your lender. Even if you have arranged for your property tax payments to be paid through an impound account, the supplemental tax bills will not be paid by your lender. It is your responsibility to pay these supplemental bills directly to the Tax Collector. If you have any questions concerning this matter, please call your Tax Collector's Office."

Although the notice refers to loan closing as a trigger, it is actually the change of ownership which triggers this reassessment of property taxes. Therefore, the Property can be reassessed even if there is no loan involved in the purchase of the Property. The Purchase Agreement may allocate supplemental tax bills received after the Close of Escrow to the Buyer. A change (preliminary change) of ownership form is generally required to be filed by the Buyer with the local taxing agency. The form identifies the sales price of the Property. An assessor may value the Property at its fair market value regardless of the sales price declared by the Buyer. If Buyer wants further information concerning these matters, Broker(s) recommend that Buyer discuss the issue with the County Assessor or Tax Collector or their own tax or legal advisor. Brokers do not have expertise in this area.

9. **ZONE MAPS MAY CHANGE:** Maps that designate, among other things, Earthquake Fault Zones, Seismic Hazard Zones, State Fire Responsibility Areas, Very High Fire Hazard Zones, Special Flood Hazard Areas, and Potential Flooding Areas are occasionally redrawn by the applicable Government Agency. Properties that are currently designated in a specified zone or area could be removed and properties that are not now designated in a specified zone or area could be placed in one or more such zones or areas in the future. A property owner may dispute a FEMA flood hazard location by submitting an application to FEMA. Brokers do not have expertise in this area.

# E. Contract Related Issues and Terms

1. **ARBITRATION:** Buyer and Seller are advised that arbitration is a process by which the disputing parties hire a neutral person to render a binding decision. Generally, arbitration is faster and less expensive than resolving disputes by litigating in court. The rules are usually less formal than in court, and it is a private process not a matter of public record. By agreeing to arbitration, the parties give up the right to a jury trial and to appeal the arbitrator's decision. Arbitration decisions have been upheld even when arbitrators have made a mistake as to the law or the facts. If the parties agree to arbitration, then after first attempting to settle the dispute through mediation, any dispute arising out of their agreement (with a few limited exceptions) must be submitted to binding arbitration. Buyer and Seller must weigh the benefits of a potentially quicker and less expensive arbitration against giving up the right to a jury trial and the right to appeal. Brokers cannot give legal advice regarding these matters. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to arbitration. Brokers do not have expertise in this area.

2. **ELECTRONIC SIGNATURES:** The ability to use electronic signatures to sign legal documents is a great convenience, facilitating the ability to send and receive documents and reach agreement in a real estate transaction. However, Buyers and Sellers are cautioned to carefully read each provision. Arrows indicating "sign here" are merely there for the convenience of finding the next signature line. Only sign if you have taken the time necessary to read each document thoroughly, have full knowledge, and consent to the terms provided in the document. Brokers strongly advise Buyers and Sellers to read the entire document before signing even if they have reviewed an earlier draft. Do not just scroll through or skip to the next signature line. You are signing a legally binding agreement. Read it carefully. Ask your Broker, Agent or legal advisor if you have questions or do not understand a provision, and sign only if you agree to be bound by the terms. Brokers do not have expertise in this area.

3. **ESCROW FUNDS:** Buyer and Seller are advised that California Insurance Code § 12413.1 provides that escrow companies cannot disburse funds unless there are sufficient "good funds" to cover the disbursement. "Good funds" are defined as cash, wire transfers and cashiers' or certified checks drawn on California depositories. Escrow companies vary in their own definitions of "good funds." Broker(s) recommend that Buyer and Seller ask the escrow company regarding its treatment of "good funds." All samples and out-of-state checks are subject to waiting periods and do not constitute "good funds" until the money is physically transferred to and received by the escrow holder. Brokers do not have expertise in this area.

4. **HOME WARRANTY:** Buyer and Seller are advised that Buyer and Seller can purchase home warranty plans covering certain standard systems of the Property both before and after Close of Escrow. Seller can obtain coverage for the Property during the listing period. For an additional premium, an upgraded policy providing additional coverage for air conditioning, pool and spa and other features can be purchased. Home warranties do not cover every aspect of the Property and may not cover inspections or upgrades for repairs required by state or federal laws or pre-existing conditions. Broker(s) recommend that Buyer review the policy for details. Brokers do not have expertise in this area.

5. **IDENTIFICATION OF NATURAL PERSONS BEHIND SHELL COMPANIES IN ALL-CASH TRANSACTIONS:** The U.S. Treasury Department's Financial Crimes Enforcement Network (FinCEN) has issued Geographic Targeting Orders (GTOs) targeting alleged money laundering risk in the real estate sector. The GTOs will temporarily require

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 11 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    944 Airole Way



U.S. title insurance companies to identify the natural persons behind shell companies used to pay "all cash" for high- end residential real estate in certain major metropolitan areas. FinCEN explained that it remains concerned that all- cash purchases (i.e., those without bank financing) may be conducted by individuals attempting to hide their assets and identity by purchasing residential properties through limited liability companies or other similar structures. Since the original issuance, the GTOs have been renewed and may continue to be renewed. The GTOs cover the following areas in California: Los Angeles, San Francisco, San Mateo, Santa Clara and San Diego Counties. The monetary thresholds for each county is $300,000. GTOs have helped law enforcement identify possible illicit activity. FinCEN reported that a significant portion of covered transactions have dictated possible criminal activity associated with the individuals reported to be the beneficial owners behind shell company purchasers. Brokers do not have expertise in this area.

6. **LIQUIDATED DAMAGES:** Buyer and Seller are advised that a liquidated damages clause is a provision Buyer and Seller can use to agree in advance to the amount of damages that a seller will receive if a buyer breaches the Agreement. The clause usually provides that a seller will retain a buyer's initial deposit paid if a buyer breaches the agreement, and generally must be separately initialed by both parties and meet other statutory requirements to be enforceable. For any additional deposits to be covered by the liquidated damages clause, there generally must be another separately signed or initialed agreement (see C.A.R. Form RID). However, if the Property contains from 1 to 4 units, one of which a buyer intends to occupy, California Civil Code § 1675 limits the amount of the deposit subject to liquidated damages to 3% of the purchase price. Even though both parties have agreed to a liquidated damages clause, an escrow company will usually require either a judge's or arbitrator's decision or instructions signed by both parties in order to release a buyer's deposit to a seller. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to a liquidated damages clause. Brokers do not have expertise in this area.

7. **MEDIATION:** Buyer and Seller are advised that mediation is a process by which the parties hire a neutral person to facilitate discussion and negotiation between the parties with the goal of helping them reach a settlement of their dispute. The parties generally share in the cost of this confidential, non-binding negotiation. If no agreement is reached, either party can pursue further legal action. Under C.A.R. Form RPA-CA: **(i)** the parties must mediate any dispute arising out of their agreement (with a few limited exceptions, such as matters within the jurisdiction of a small claims court) before they resort to arbitration or court, and **(ii)** if a party proceeds to arbitration or court without having first attempted to mediate the dispute, that party risks losing the right to recover attorney fees and costs even if he or she prevails. Brokers do not have expertise in this area.

8. **NON CONFIDENTIALITY OF OFFERS:** Buyer is advised that Seller or Listing Agent may disclose the existence, terms, or conditions of Buyer's offer, unless all parties and their agent have signed a written confidentiality agreement (such as C.A.R. Form CND). Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the Listing Agent's marketing strategy and the instructions of the Seller. Brokers do not have expertise in this area.

9. **ONLINE OR WIRE FUNDS TRANSFERS:** Instructions for the online or wire transfer of escrow deposits have been known to be intercepted by hackers who alter them so that Buyer's funds are actually wired to accounts controlled by criminals rather than the escrow company. Buyers should exercise extreme caution in making electronic funds transfers, verifying that the organization they are transferring funds to is, in fact, the escrow company and that their own bank account information is not being exposed. See C.A.R. Form WFA for further information. Brokers do not have expertise in this area.

# F. Other Factors Affecting Property

1. **COMMUNITY ENHANCEMENT AND PRIVATE TRANSFER FEES:** Buyer and Seller are advised that some areas or communities may have enhancement fees or user-type fees, or private transfer taxes and fees, over and above any stated fees. The Federal Housing Finance Agency has issued a rule that prohibits Fannie Mae and Freddie Mac from purchasing loans made on properties with private transfer fees if those fees were established on or after February 8, 2011. See title 12 Code of Federal Regulations § 1228 for more information and exceptions. Private transfer fees: **(i)** may last for a fixed period of time or in perpetuity, **(ii)** are typically calculated as a percentage of the sales price, and **(iii)** may have private parties, charitable organizations or interest-based groups as their recipients who may use the funds for social issues unrelated to the property. Brokers do not have expertise in this area.

2. **GENERAL RECALL/DEFECTIVE PRODUCT/CLASS ACTION INFORMATION:** Buyer and Seller are advised that government entities and manufacturers may at any time issue recall notices and/or warnings about products that may be present in the Property, and that these notices or warnings can change. The following nonexclusive, non-exhaustive list contains examples of recalled/defective products/class action information: horizontal furnaces, Whirlpool Microwave Hood Combination; RE-ConBuilding products roof tiles; Central Sprinkler Company Fire Sprinklers; Robert Shaw Water Heater Gas Control Valves; Trex Decking; water heaters; aluminum wiring; galvanized, abs, polybutylene PEX, KITEC® and copper pipe; and dry wall manufactured in China. There is no single, all-inclusive source of information on product recalls, defective products or class actions; however, the U.S. Consumer Product Safety Commission (CPSC) maintains a website that contains useful information. If Buyer wants further information regarding the items listed above, Broker(s) recommend that Buyer review the CPSC website at http://www.cpsc.gov/ during Buyer's inspection contingency period. Another source affiliated with the CPSC is http:// saferproducts.gov/ which allows a Buyer to search by product type or product name. Buyer may also search using the various search engines on the Internet for the specified product or products in question. Brokers recommend that Buyer satisfy themselves regarding recalled or defective products. Brokers will not determine if any aspect of the Property is subject to a recall or is affected by a class action lawsuit. Brokers do not have expertise in this area.

**SBSA REVISED 6/21 (PAGE 12 OF 14)**



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com         **944 Airole Way**

3. **HOMEOWNER ASSOCIATIONS AND COVENANTS, CONDITIONS AND RESTRICTIONS ("CC&Rs"); CHARGING STATIONS; FHA/VA APPROVAL:** Buyer and Seller are advised that if the Property is a condominium, or located in a planned unit development, or in a common interest subdivision, there are typically restrictions on use of the Property and rules that must be followed. Restrictions and rules are commonly found in Declarations and other governing documents. Further there is likely to be a homeowner association (HOA) that has the authority to affect the Property and its use. Whether or not there is a HOA, the Property may still be subject to CC&Rs restricting use of the Property. The HOA typically has the authority to enforce the rules of the association, assess monetary payments (both regular monthly dues and special assessments) to provide for the upkeep and maintenance of the common areas, and enforce the rules and assessment obligations. If you fail to abide by the rules or pay monies owed to the HOA, the HOA may put a lien against your Property. Additionally, if an electric vehicle charging station is installed in a common area or an exclusive use common area, each Seller whose parking space is on or near that charging station must disclose its existence and that the Buyer will have the responsibilities set forth in California Civil Code § 4745. The law requires the Seller to provide the Buyer with the CC&Rs and other governing documents, as well as a copy of the HOA's current financial statement and operating budget, among other documents. Effective July 1, 2016, a Common Interest Development (CID) will be required to include in its annual budget report a separate statement describing the status of the CID as a Federal Housing Administration or Department of Veterans Affairs approved Development. While the purchase agreement and the law require that the annual budget be provided by Seller to Buyer, Brokers will not and cannot verify the accuracy of information provided by the CID. Buyer is advised to carefully review all HOA documents provided by Seller and the CC&Rs, if any, and satisfy him/herself regarding the use and restrictions of the Property, the amount of monthly dues and/or assessments, the adequacy of reserves, current and past insurance coverage and claims, and the possibility of any legal action that may be taken by or against the HOA. The HOA may not have insurance or may not cover personal property belonging to the owner of the unit in the condominium, common interest or planned unit development. For more information Buyer may request from Broker the C.A.R. Legal Q&A titled: "Homeowners' Associations: A Guide for REALTORS®". Brokers do not have expertise in this area.

4. **LEGAL ACTION:** Buyer and Seller are advised that if Seller or a previous owner was involved in a legal action (litigation or arbitration) affecting the Property, Buyer should obtain and review public and other available records regarding the legal action to determine: **(i)** whether the legal action or any resolution of it affects Buyer and the Property, **(ii)** if any rights against any parties involved in the legal action survive the legal action or have been terminated or waived as a result of the legal action, whether or not involving the same issue as in the legal action, and **(iii)** if any recommendations or requirements resulting from the legal action have been fulfilled and, if so, that Buyer is satisfied with any such action. Buyer should seek legal advice regarding these matters. Brokers do not have expertise in this area.

5. **MARKETING; INTERNET ADVERTISING; INTERNET BLOGS; SOCIAL MEDIA:** Buyer and Seller are advised that Broker may employ a "staging" company to assist in the presentation of the Property. The furnishings and decorations in the staging are generally not included in the sale unless specifically noted in the Agreement. Statements and inclusion in the MLS entry, flyers, and other marketing materials are NOT part of the Agreement. In addition, Broker may employ a service to provide a "virtual tour" or "virtual staging" or Internet marketing of the Property, permitting potential buyers to view the Property over the Internet. While they are supposed to be an accurate representation of the property, the photos may be enhanced and not fully representative of the actual condition of the property. Further, neither the service provider nor Broker have total control over who will obtain access to materials placed on the internet or what action such persons might take. Additionally, some Internet sites and other social media provide formats for comments or opinions of value of properties that are for sale. Information on the Property, or its owner, neighborhood, or any homeowner association having governance over the Property may be found on the internet on individual or commercial web sites, blogs, Facebook pages, or other social media. Any such information may be accurate, speculative, truthful or lies, and it may or may not reflect the opinions or representations by the Broker. Broker will not investigate any such sites, blogs, social media or other internet sites or the representations contained therein. Buyer is advised to make an independent search of electronic media and online sources prior to removing any investigation contingency. Buyer and Seller are advised that Broker has no control over how long the information or photos concerning the Property will be available on the Internet or through social media, and Broker will not be responsible for removing any such content from the internet or MLS. Brokers do not have expertise in this area.

6. **PACE LOANS AND LIENS:** The acronym PACE stands for Property Assessed Clean Energy. PACE programs allow property owners to finance energy and water conservation improvements and pay for them through an assessment on the owner's property. PACE programs are available in most areas for both residential one to four unit properties and commercial properties. PACE programs may be referred to by different names such as HERO or SCEIP, among others. If a PACE project is approved, an assessment lien is placed on a property for the amount owed plus interest. A property owner repays the entity for the improvements as a special tax assessment on the property tax bill over a period of years. A PACE lien is similar to a property tax lien in that it has "super priority." Sellers are obligated to disclose, pursuant to the C.A.R. Residential Purchase Agreement (C.A.R. Form RPA), whether any improvement is subject to a lien such as a PACE lien. Properties that are subject to PACE liens made on or after July 6, 2010 may not be eligible for financing. For more information, Buyer may request from Broker the C.A.R. Legal Q&A titled: "PACE Programs and Solar Leases". Brokers do not have expertise in this area.



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 13 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

944 Airole Way

7. **RE-KEYING:** All locks should be re-keyed immediately upon close of escrow so as to ensure the Buyer's safety and security of their persons as well as their personal belongings. Alarms, if any, should be serviced by professionals and codes should be changed. Garage door openers and remotes should be re-coded. In the event of a lease back to Seller after the close of escrow, Seller is advised that the Buyer is entitled to the keys as the Owner of the Property even though the Seller stays in possession of the Property as provided in the RPA.

8. **SOLAR PANEL LEASES:** Solar panel or power systems may be owned or leased. Although leased systems are probably personal property, they are included in the sale by the C.A.R. purchase agreement which also obligates the Seller to make a disclosure to the Buyer and provide the Buyer with documentation concerning the lease and system. Leasing companies generally secure payments by filing a UCC-1 (a Uniform Commercial Code form giving notice of a creditor's security interest) against the property. Buyers are given a contingency right to investigate the solar related system and documentation and assume any lease. Assumption of the lease may require Buyer to provide financial information to the leasing company who may require a credit report be obtained on the Buyer. Should a solar panel or power system be on the Property, Buyers should determine if the system is leased or owned. Buyers willingness to assume any such lease is a contingency in favor of Seller. For more information, Buyer may request from Broker the C.A.R. Legal Q&A titled: "PACE Programs and Solar Leases". Brokers do not have expertise in this area.

9. **RECORDING DEVICES:** Audio or video recording devices or both may be present on the Property, whether or not notice of any such devices has been posted. Seller may or may not even be aware of the capability of such devices.

# G. Local Disclosures and Advisories

1. **LOCAL ADVISORIES OR DISCLOSURES (IF CHECKED):**
   The following disclosures or advisories are attached:

   A. ☐ _____

   B. ☐ _____

   C. ☐ _____

   D. ☐ _____

**Buyer and Seller are encouraged to read all 14 pages of this Advisory carefully. By signing below, Buyer and Seller acknowledge that each has read, understands and received a copy of all 14 pages of this Advisory.**

BUYER _____ Date _____

BUYER _____ Date _____

SELLER     *Crestlloyd, LLC, Debtor in Possession, by Sierraconstellation Partners, LLC, its Manager*  Date _____

SELLER _____ Date _____

Real Estate Broker (Selling Firm) *The Beverly Hills Estates / Compass*                 DRE Lic. # *02126121*

Address _____ City _____ State ____ Zip ____

By _____ Tel. _____ E-mail _____ DRE Lic.# *01774287* ____ Date ____
   *Rayni Williams & Branden*

By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date ____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA)

Real Estate Broker (Buyer's Firm) _____ DRE Lic. # _____

Address *8878 Sunset Blvd* _____ City *West Hollywood* ____ State *CA* ____ Zip *90069*

By _____ Tel. *(310)925-9281* E-mail *rayni@thewilliamsestates.co* DRE Lic.# ____ Date ____

By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date ____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**SBSA REVISED 6/21 (PAGE 14 OF 14)**

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 14 OF 14)**

# WILDFIRE DISASTER ADVISORY
**(For use with properties in or around areas affected by a wildfire)**
(C.A.R. Form WFDA, Revised 12/21)

1. **WILDFIRE DISASTERS:** Buyer/Lessee is aware that as a result of recent wildfire disasters there are current and unresolved health and safety concerns related to the aftermath and clean up of the wildfire disaster areas, as well as unknown and possible future concerns related to the rebuilding of infrastructure in the affected areas of the wildfires. Unfortunately, the impact of wildfires has not been limited to the fire areas themselves. Many areas have had air quality impacted by smoke and air particulates from distant fires. Additionally, fires continue to occur in previously unaffected areas, and fires may be an issue throughout the state of California.

2. **WILDFIRE DISASTER CONCERNS AND ISSUES:** The following non-exhaustive list represents concerns and issues that may impact Buyer/Lessee decisions about purchasing or leasing property impacted by a wildfire disaster, both currently and in the future. It is not intended to nor can it be a check list for all issues that might arise when purchasing or leasing property impacted by a wildfire disaster; **concerns and issues include, but are not limited to:**
   A. Insurance related issues such as availability, claims and possible liens attached to properties and the importance of identifying both the insurability and the cost of insurance as early in the process as possible.
   B. Lot clearing costs and requirements; toxic materials analysis, debris removal requirements.
   C. Whether the home has been fire hardened, and if so to what extent, to help reduce the risk of the structure catching fire.
   D. Local, state and federal requirements for cleanup and building approvals.
   E. Air quality, soil quality, and any other environmental or personal health concerns, even after the wildfire event has ended.
   F. Timelines, costs and requirements when obtaining required permits for building and utilities installation.
   G. The ability to procure insurance.
   H. Availability of and access to electricity, gas, sewer and other public or private utility services.
   I. Water delivery/potability; septic and/or sewer design; requirements and construction costs.
   J. Potential redesign of streets and infrastructure including possible eminent domain, land condemnation and/or acquisition.
   K. Inconvenience and delays due to road construction and unavailability of various goods, systems, or services.
   L. Impact that federal, state or local disaster declarations may have on materials prices, costs and rents.

3. **BUYER/LESSEE ADVISORIES: Buyer/Lessee is advised:**
   A. To check early in your transaction to determine if you are able to obtain insurance on the property.
   B. To investigate to their own satisfaction any and all concerns of Buyer/Lessee about the intended use of the property.
   C. That the area of the wildfire disaster will likely be under construction for a protracted period of time after a fire, and Buyer/Lessee may be inconvenienced by delays, traffic congestion, noise, dust, intermittent utilities availability.
   D. That due to the extraordinary catastrophe of a wildfire, there may be changes and variations in local, state or federal laws, codes, or requirements throughout the ongoing process of planning and rebuilding in the wildfire disaster area.
   E. That some insurers have reduced or cancelled offerings for fire insurance or increased costs that impact a Buyer/Lessees ability to afford or qualify for loans or meet income ratios for rentals.
   F. That if you are not able to obtain fire insurance and have removed property investigation or loan contingencies you may be in breach of the purchase or rental agreement.

4. **RESOURCES:** Below is a non-exhaustive list of potential resources provided as a starting point for Buyer/Lessee investigations and not as an endorsement or guarantee that any federal, state, county, city or other resource will provide complete advice.
   A. California Department of Insurance "WildfireResource" http://insurance.ca.gov/01-consumers/140-catastrophes/WildfireResources,cfm; 1-800-927-4357
   B. Governor's Office of Emergency Services "Cal OES" California Wildfires Statewide Recovery Resources https://wildfirerecovery.caloes.ca.gov/
   C. California Department of Forestry and Fire "Cal Fire" https://fire.ca.gov/ and https://www.readyforwildfire.org/
   D. California Department of Transportation https://calsta.ca.gov/
   E. California Attorney General https://oag.ca.gov/consumers/pricegougingduringdisasters#8C1
   F. The American Institute of Architects "Wildfire Recovery Resources" https://aia.org/pages/165776-wildfire-recovery-resources
   G. Buyer/Lessee is advised to check all local municipalities (County, City, and/or Town where the property is located) for additional resources.

5. **BUYER/LESSEE ACKNOWLEDGEMENT:** Buyer/Lessee understands that Real Estate Agents and Real Estate Brokers have no authority or expertise for providing guidance through the process of investigating the concerns described herein. Buyer/Lessee has an affirmative duty to exercise reasonable care in protecting themselves.

**Buyer/Lessee has read and understands this Advisory. By signing below, Buyer/Lessee acknowledges receipt of a copy of this Advisory.**

Buyer/Lessee _____ Date _____

Buyer/Lessee _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**WFDA REVISED 12/21 (PAGE 1 OF 1)**

## WILDFIRE DISASTER ADVISORY (WFDA PAGE 1 OF 1)

The Beverly Hills Estates, 8878 Sunset Blvd West Hollywood CA 90069      Phone: (310)925-9281       Fax: (310) 388-4638       944 Airole Way
Rayni Romito Williams                       Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

## COURT CONFIRMATION ADDENDUM
### (C.A.R. Form CCA, Revised 12/21)

This is an addendum to the Purchase Agreement, OR ☐ Counter Offer No. _____ , ☐ Other _____
_____ ("Agreement"),  dated  *the earlier of the close of escrow or 3/18/22* ,  on

property known as _____ *944 Airole Way, Los Angeles, CA  90077-2602* _____ ("Property"),

between _____ ("Buyer"),

and _____ *Crestlloyd, LLC, Debtor in Possession, by Sierraconstellation Partners, LLC, its Manager* _____ ("Seller").

Buyer and Seller are referred to as the "Parties."

The Agreement is contingent upon court confirmation on or before _____ (date). If court confirmation is not obtained by that date, Buyer may cancel the Agreement in writing. Court confirmation may be required in probate, conservatorship, guardianship, receivership, bankruptcy, divorce or other proceedings. The court may allow open, competitive bidding, resulting in the Property being sold to the highest bidder. Broker recommends that Buyer appear at the court confirmation hearing. Buyer understands that **(i)** Broker and others may continue to market the Property; and **(ii)** Broker may represent other competitive bidders prior to and at the court confirmation.

By signing below Buyer and Seller acknowledge that each has read, understands, has received a copy of and agrees to the terms of this Court Confirmation Addendum.

Date _____          Date _____

Buyer _____          Seller _____

*Crestlloyd, LLC, Debtor in Possession,*
*by Sierraconstellation Partners, LLC, its Manager*

Buyer _____          Seller _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**CCA Revised 12/21 (PAGE 1 OF 1)**

**COURT CONFIRMATION ADDENDUM (CCA PAGE 1 OF 1)**

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

**SUPPLEMENTAL ADDENDUM TO CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND
JOINT ESCROW INSTRUCTIONS DATED AS OF FEBRUARY 10, 2022
BETWEEN CRESTLLOYD, LLC, DEBTOR IN POSSESSION, THROUGH ITS MANAGER,
SIERRACONSTELLATION PARTNERS, LLC, AS SELLER,
AND _____, AS BUYER**

1. <u>Supplemental Addendum Provisions Prevail</u>.  This Supplemental Addendum (the "***Addendum***") modifies the Residential Purchase Agreement and Joint Escrow Instructions (C.A.R. Form RPA, Revised 12/21) (the "***Agreement***").  In the event of any conflict between any of the provisions of the Agreement and/or this Addendum, this Addendum shall be deemed to be paramount and shall prevail.

2. <u>Definitions</u>. All capitalized terms used in this Addendum which are not defined in this Addendum shall have the meanings ascribed to them in the Agreement.

3. <u>Bankruptcy Court Approval</u>. The parties acknowledge that Seller filed for bankruptcy protection on October 26, 2021 under chapter 11 of title 11 of the United States Code §§ 101, et seq. (the "***Bankruptcy Code***") and is a Chapter 11 debtor in possession of the Property in its bankruptcy case pending in the United States Bankruptcy Court for the Central District of California (the "***Court***") (Case No. 2:21-bk-18205-DS).  The parties acknowledge that any sale of the Property is subject to the approval of the Court and requires the entry of an order of the Court approving the sale which will be obtained by Seller as soon as reasonably practicable after the Auction.

4. <u>Buyer's Premium</u>. In addition to the accepted high bid for the Property acknowledged by the auctioneer Concierge Auctions, LLC ("***Concierge***") at auction (the "***High Bid***") and approved by the Court, Buyer shall pay a fee at Closing to Concierge in an amount equal to twelve percent (12%) of the High Bid (the "***Buyer's Premium***").  Upon Closing, Buyer irrevocably directs Escrow Holder to hold such funds and to pay Concierge the Buyer's Premium, less any amounts owed to Seller.

5. <u>Earnest Money</u>.  Buyer shall deliver, as its initial earnest money deposit, an amount equal to twelve percent (12%) of the total purchase price for the Property, less the bidder's deposit of TWO HUNDRED AND FIFTY THOUSAND ($250,000.00) U.S. DOLLARS submitted prior to the auction (the "***Deposit***").  The Deposit shall be wired to _____ for receipt no later than 5:00 p.m. ET on the second business day after the conclusion of the Auction.  Except as provided herein, Buyer acknowledges and agrees that upon execution of the Agreement, the Deposit becomes Non-Refundable.

6. <u>Title Insurance/Certain Closing Costs</u>.  _____ shall act as the title insurance issuer and closing agent for this transaction (the "***Title Company***" or "***Escrow Holder***").  The Seller shall pay for the title search and a standard owner's CLTA title insurance policy. The Buyer shall pay the conveyance tax on the deed.  Except as expressly provided otherwise in the Agreement, all other closing costs shall be allocated in accordance with the norms in the county and state where the Property is located.  In the event Buyer chooses to order title through a title company other than the company designated by Seller or to order broader ALTA coverage, Buyer shall be solely responsible for the costs of such title search and title insurance and/or for the incremental costs for broader ALTA coverage.

7. <u>Acceptance of Property</u>.  To the fullest extent permitted by applicable law, Buyer accepts the Property in its "AS IS, WITH ALL FAULTS" condition at the time of Closing.  Buyer acknowledges that it has had the opportunity to conduct all due diligence and investigation of the Property (including but not limited to title, survey, and physical condition) that it desires prior to signing this Agreement. Buyer waives all

right to rescind or cancel the Agreement to the fullest extent allowed under applicable law. Buyer has no right to rescind or cancel and waives all such rights including, but not limited to, rights under Cal. Civil Code Section 1102.3.

The Seller will convey the Property by warranty deed without any representations or warranties whatsoever, including, without limitation, representations or warranties as to oil and mineral rights, city or government agency notifications regarding work to be done, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property, provided, however, that the Seller shall be required to deliver good and marketable title to the Buyer or any Back-Up Buyer.

8. <u>Additional Conditions of Sale</u>:

    a.  THE BUYER'S PURCHASE OF THE PROPERTY IS A CASH TRANSACTION WITH NO CONTINGENCIES OR CONDITIONS OF ANY KIND, including, without limitation, a contingency for financing, due diligence or inspections, except that the Seller is required to (y) obtain Court approval and the entry of an order of the Court approving the sale of the Property to the Buyer that is not subject to a stay pending appeal and (z) deliver good and marketable title to the Property to the Buyer.

    b.  The sale of the Property is subject to Court approval after notice to the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules, which approval will be obtained by Owner as soon as reasonably practicable after the completion of the Auction.

    c.  The Property will be conveyed subject to standard allocations and any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property. Title, however, is to be transferred free and clear of all liens, claims and encumbrances except those non-monetary liens and encumbrances set forth on that certain preliminary title report prepared by Chicago Title Company and dated as of November 16, 2021, a copy of which has been delivered to Buyer.

    d.  If for any reason, or no reason whatsoever, the Seller is unable to deliver good and marketable title to the Property to the Bidder, the Bidder's sole remedy shall be the return of any money that it has deposited toward the purchase of the Property.

9. <u>Disclosures</u>. To the extent that Seller is obligated to deliver disclosures or other documents to Buyer by law or under the Agreement, Buyer acknowledges having received all such disclosures and documents prior to the Auction of the Property and/or waives the right to such disclosures, to the fullest extent allowed under applicable law. Buyer waives all rights to rescind the Agreement or to pursue remedies or penalties against Seller (including repairs) under applicable law.

10. **<u>Default</u>. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE AGREEMENT, IF BUYER IS IN DEFAULT, THE DEPOSIT SHALL BE RETAINED BY SELLER AND BY CONCIERGE PER THE TERMS OF THE AUCTION AGREEMENT BETWEEN SELLER AND CONCIERGE AND THE BIDDER TERMS AND CONDITIONS BETWEEN BUYER AND**

**CONCIERGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. BUYER SHALL BE RESPONSIBLE FOR THE PAYMENT OF ANY REMAINING BUYER'S PREMIUM TO CONCIERGE, AND SELLER MAY RECOVER SUCH DAMAGES AS MAY BE PROPER; OR SELLER MAY ELECT TO TREAT THIS AGREEMENT AS BEING IN FULL FORCE AND EFFECT AND SELLER SHALL HAVE THE RIGHT TO SPECIFIC PERFORMANCE OR DAMAGES OR BOTH.**

11. <u>Disputes; Venue.</u> The parties agree to submit all controversies, disputes, claims and matters of difference arising out of or relating to the Agreement and/or this Addendum, including but not limited to its enforcement, scope and/or interpretation, as a core proceeding exclusively in the Court and agree to submit to personal jurisdiction in the Court, sitting without a jury, which is expressly waived.  In the event of any such Court action, the prevailing party shall be entitled to reimbursement from the non-prevailing party of all reasonable attorney's fees and costs/expenses of the prevailing party and any award of the Court will include costs and reasonable attorneys' fees to the prevailing party.

12. <u>Third-Party Beneficiary.</u> Seller and Buyer designate Concierge as a third-party beneficiary of this Agreement, having the right to enforce any of the provisions that pertain to Concierge.

13. <u>Severability.</u>  Whenever possible, each provision of the Agreement and this Addendum shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of the Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have signed this Addendum as of the day and year first above written.

**SELLER:**                                                                  **BUYER:**
CRESTLLOYD, LLC, DEBTOR IN POSSESSION


BY: SIERRACONSTELLATION PARTNERS, LLC,
     ITS MANAGER


_____          _____
By: Lawrence R. Perkins
Its: Authorized Signatory

EXHIBIT "2"













































# THE ONE

## 944 AIROLE WAY

AARON KIRMAN

AARON KIRMAN
PRESIDENT, LUXURY ESTATES DIVISION
424.249.7162
AARON@AARONKIRMAN.COM
DRE 01296524

BRANDEN WILLIAMS
WILLIAMS & WILLIAMS ESTATES GROUP
310.804.4248
BRANDEN@THEWILLIAMSESTATES.COM
DRE 01774287

RAYNI WILLIAMS
WILLIAMS & WILLIAMS ESTATES GROUP
310.804.4248
RAYNI@THEWILLIAMSESTATES.COM
DRE 01774287

THE BEVERLY HILLS ESTATES
A GLOBAL BRAND

CONCIERGE AUCTIONS



# THE ONE

## 944 AIROLE WAY

AARON KIRMAN

AARON KIRMAN
PRESIDENT, LUXURY ESTATES DIVISION
424.249.7162
AARON@AARONKIRMAN.COM
DRE 01296524

BRANDEN WILLIAMS
WILLIAMS & WILLIAMS ESTATES GROUP
310.804.4248
BRANDEN@THEWILLIAMSESTATES.COM
DRE 01774287

RAYNI WILLIAMS
WILLIAMS & WILLIAMS ESTATES GROUP
310.804.4248
RAYNI@THEWILLIAMSESTATES.COM
DRE 01774287

THE BEVERLY HILLS ESTATES
A GLOBAL BRAND

CONCIERGE AUCTIONS





## 944 AIROLE WAY

## 7 WONDERS OF THE ONE







# EXHIBIT "3"



WILLIAMS&WILLIAMS

BRANDEN & RAYNI WILLIAMS

310.626.4248 | THEWILLIAMSESTATES.COM
@ @WILLIAMSANDWILLIAMS @THEBEVERLYHILLSESTATES

OUR COMMITMENT TO "THE ONE"



STAGING BY

V E S T A

PROPERTY
MAINTENANCE

ART CURATED BY

C A
P
Creative
Art Partners

OUTREACH TO THE
"BILLIONAIRES' LIST"

Private compilation of 4,500+ billionaires
and hundreds of millionaires across the
globe, including their names, e-mails, mailing
addresses and phone numbers.

LIVE PLANTS,
ORCHIDS & FLORAL
ARRANGEMENTS

CONTINUOUS
PRESS COVERAGE

Using professional photography by
Douglas Friedman and video by Dualuna Films

# VESTA

## ELEVATED DESIGN BY VESTA

The One is a triumph of balance between nature and space. Driving into the estate, one immediately feels intricately connected to the beauty and inspiration of the surrounding environment. The home is built to a scale that very few designers get the opportunity to work on. The design focuses on cool, & comfortable style, and served as the ultimate showcase for the Vesta's expertise obtained over thousands of projects throughout the United States.

The One combines luxury and intimacy, sleek spacious, and elegant modern to express possibility, expanse, and inspiration. Their focus was to bring the outside in and use details to create a warm and inviting home through textures and quiet plays of color and tone. Vesta honors the vision that the architect set forth, but incorporates the modern minimalism design that makes Vesta famous. Custom furniture pieces created for The One are luxurious and elegant with contemporary elements, pops of color, and soft touches to make each living space regal yet modern.















# MARKETING PLAN OVERVIEW

DYNAMIC ADVERTISING STRATEGIES

## PHOTOGRAPHY

SHOT BY THE PROS

PROFESSIONALLY EDITED

## VIDEOGRAPHY

CUSTOM VIDEO

ART DIRECTION

DRONES

MODELS

## CUSTOM WEBSITES

PROPERTY WEBSITE

FEATURED WEBSITES

GLOBAL SYNDICATION

## PRINT ADVERTISING

WILLIAMS & WILLIAMS

TARGETED PUBLICATIONS

OPEN HOUSES

## PRINT COLLATERAL

POSTCARDS

BROCHURES

BOOKS

## DIGITAL ADVERTISING

EMAIL BLASTS

MOBILE APP

PPC

REMARKETING

## SOCIAL MEDIA

ACTIVE FOLLOWERS

CURATED CONTENT

# PHOTOGRAPHY
P I C T U R E   P E R F E C T

### SHOT BY THE PROS

Your listing will be photographed by a top professional photographer to capture the property and its features in the best possible light.

### PROFESSIONALLY EDITED

Photos will be professionally edited and sent in high quality digital and print compatible formats.

# PHOTOGRAPHY
D Y N A M I C   A D V E R T I S I N G   S T R A T E G I E S








**1091 LAUREL WAY | BEVERLY HILLS**
Resembling the Peninsula Hotel in Paris, exquisite European architectural styles blend together to embody elegance, craftsmanship and attention to detail.

# VIDEOGRAPHY

## DYNAMIC ADVERTISING STRATEGIES





**VISIT OUR YOUTUBE CHANNEL FOR FULL VIDEOS**
YOUTUBE.COM/WILLIAMSWILLIAMSESTATESGROUP

# VIDEOGRAPHY
## SILVER SCREEN WORTHY

### CUSTOM VIDEO

Your property will be showcased with a property video highlighting all of the incredible amenities.

### ART DIRECTION

Hands-on art direction during the shoot to ensure high-quality final products that reflect the aesthetic and style of your property.

### DRONES

Using the latest drone technology, shots of the view and exterior bird's-eye-view shots will be captured for the video.

### MODELS

Professional models may be used to set the tone and create an atmosphere that is essential to selling the home and the lifestyle.

# CUSTOM WEBSITES

## DYNAMIC ADVERTISING STRATEGIES



CUSTOM PROPERTY WEBSITE

MOBILE-FRIENDLY WEBSITE



# CUSTOM WEBSITES

D I G I T A L  P R E S E N C E

## PROPERTY WEBSITE

A custom website will be designed for your property to showcase the listing's photography, video, description and contact information.

## FEATURED WEBSITES

Your property could also be syndicated and featured on websites and media outlets such as:

PROPERTY SITE

WILLIAMS & WILLIAMS

THE BEVERLY HILLS ESTATES

LUXURY PORTFOLIO

ZILLOW

TRULIA

REDFIN

REALTOR.COM

## GLOBAL SYNDICATION

Your property could also be syndicated and featured on websites and media outlets such as:

WALL STREET JOURNAL

NY TIMES & LA TIMES

HAUTE RESIDENCE

ARCHITECTURAL DIGEST

AND MORE

# GEOFENCING
TARGETED MARKETING

Location-tracking technology that enable advertisers to prospect effectively through discovering electronic devices via GPS and RFID signals.

# WEBSITE
THE BEVERLY HILLS ESTATES

**261,932**
TOTAL VIEWS

We have effective digital channels that has a global reach and allow us to provide targeted marketing.

## UNIQUE WEB VISITORS*
LAST THREE MONTHS



AUG 2021   SEPT 2021   OCT 2021

25K
2K
1.5K
1K
500
0

## USERS BY COUNTRY*



UNITED STATES
QATAR
UNITED KINGDOM
GERMANY
CANADA

0K   10K   20K   30K

## WEB ENGAGEMENT RATE BY COUNTRY

| COUNTRY | USERS | ENGAGEMENT SESSIONS | ENGAGEMENT RATE | ENGAGEMENT RATE PER USER |
|---|---|---|---|---|
| 1. United States | 30,834 | 29,963 | 21,868 | 59.06% |
| 2. Qatar | 2,317 | 2,302 | 1,363 | 36.67% |
| 3. United Kingdom | 649 | 641 | 514 | 61.85% |
| 4. Germany | 529 | 520 | 446 | 62.82% |
| 5. Canada | 506 | 500 | 339 | 52.23% |
| 6. Brazil | 431 | 492 | 371 | 65.43% |
| 7. India | 402 | 398 | 311 | 62.45% |
| 8. Australia | 325 | 319 | 232 | 60.89% |
| 9. France | 299 | 296 | 254 | 64.14% |
| 10. Netherlands | 258 | 253 | 214 | 60.28% |
| | 40,104 | 39,834 | 57.81% | 0.72 |

* THESE NUMBERS AND CHARTS ARE GENERATED BY GOOGLE ANALYTICS, A WEB ANALYSIS SERVICE PROVIDED BY GOOGLE INC. ("GOOGLE").









# SOCIAL MEDIA

DAILY UPDATES

## ACTIVE FOLLOWERS

Your property will be shared regularly to our active followers on Williams & Williams' rapidly growing social media network.

## CURATED CONTENT

Through our unique luxury lifestyle brand and voice, we'll post engaging updates to keep the real estate community and buyers in the know about your listing.

### 332,548+
TOTAL FOLLOWERS

AND GROWING MORE EVERYDAY

 INSTAGRAM | 164,825+ FOLLOWERS
@WILLIAMSANDWILLIAMS

 INSTAGRAM | 18,976+ FOLLOWERS
@THEBEVERLYHILLSESTATES

 FACEBOOK | 7,399+ LIKES
FACEBOOK.COM/WILLIAMSANDWILLIAMS

 YOUTUBE | 141,137+ SUBSCRIBERS
YOUTUBE.COM/THEBEVERLYHILLSESTATES

# INTERNATIONAL MARKETING

### DYNAMIC ADVERTISING STRATEGIES

CUSTOM PROPERTY WEBSITE

MOBILE-FRIENDLY WEBSITE



# INTERNATIONAL MARKETING

D Y N A M I C   A D V E R T I S I N G   S T R A T E G I E S

## 比佛利山豪宅经纪公司

AS A FULL-SERVICE, GLOBAL, REAL ESTATE AND LIFESTYLE BRAND, WE UNITE THE WORLD'S ELITES WITH LEGENDARY HOMES THROUGH TAILOR-MADE MARKETING CAMPAIGNS. WE PUT OUR CLIENTS' PROPERTIES ON THE MAP AND MAKE SURE THEY ARE SEEN BY POTENTIAL BUYERS AROUND THE WORLD:

### CAIMEIJU.COM

THE PREMIER DESTINATION CONNECTING CHINA'S AFFLUENT REAL ESTATE BUYERS WITH LUXURY PROPERTIES IN TOP MARKETS AROUND THE GLOBE.

### JUWAI.COM

THE LARGEST CHINESE INTERNATIONAL PROPERTY PORTAL AND THE MARKET LEADER IN CHINA WITH NETWORKS IN SOUTHEAST ASIA.

### GLOBAL REACH

| | |
|---|---|
| ASIA | MIDDLE EAST |
| EUROPE | RUSSIA |
| DUBAI | & MORE |

# PRINT ADVERTISING

E Y E - C A T C H I N G   D E S I G N S

## WILLIAMS & WILLIAMS

### MLS CARAVAN MAGAZINE

Full-page color ads or spread in the MLS Caravan magazine the first week it enters the market advertising the brokers open.

### LOS ANGELES TIMES

Monthly full-page color ad or spread.

## THE BEVERLY HILLS ESTATES

### MLS CARAVAN & LOS ANGELES TIMES

A featured property in The Beverly Hills Estates' corporate ads its first week on the market and it may also be a featured in subsequent weeks.

## TARGETED PUBLICATIONS

To reach the target demographic, additional print ad or spread may be taken out in a variety of local or international publications.

## OPEN HOUSES

### DAYTIME | TWILIGHT | WEEKENDS

A brokers open will be held the first Tuesday your property is on the market for agents from all brokerages to preview the listing.



MLS MAGAZINE | FULL PAGE AD | OPEN HOUSE



THERE'S ONE THING THAT NEVER GOES OUT OF STYLE...AND THAT'S PASSION



**OPEN TUESDAY**
DAYTIME & TWILIGHT
DEC 13TH | 11AM-2PM | 5PM-8PM

THE STANLEY HOUSE
1894 N STANLEY AVE | SUNSET STRIP



# 1010
## N HILLCREST RD | TROUSDALE
*JUST LISTED* | OFFERED AT $31,990,000

**OPEN TUESDAY 11-2**
RSVP TO MARKETING@THEWILLIAMSESTATES.COM  VALET PROVIDED

**BRANDEN & RAYNI WILLIAMS**
310.626.4248 | THEWILLIAMSESTATES.COM



TRI-FOLD BROCHURE | FRONT COVER



1175 N HILLCREST RD
TROUSDALE

TRI-FOLD BROCHURE | FRONT COVER



9272 ROBIN DRIVE
BIRD STREETS







POSTCARD | JUST LISTED | FRONT & BACK

## PRINT COLLATERAL

TANGIBLE ASSETS

### POSTCARDS

Vibrant custom postcards announcing your property will be mailed to our network and targeted neighborhoods.

### BROCHURES & BOOKS

Branded eye-catching custom multi-page brochure and/or books will be created to showcase your property.









HARDBACK BOOK | INTERIOR SPREADS | LEFT/RIGHT PAGES

# PRINT COLLATERAL

DYNAMIC ADVERTISING STRATEGIES







PRINT COLLATERAL

DYNAMIC ADVERTISING STRATEGIES

HARDBACK BOOK | TEXTURED FRONT COVERS | SILVER/GOLD FOILING

## DIGITAL ADVERTISING

T O P   A G E N T   N E T W O R K

### E-BLASTS

Branded e-blasts announcing your property's arrival on the market and brokers open will be emailed to our network of over 4,000+ top agents on the westside.

### MOBILE APP

Live MLS listings and data available 24-7 as a tool for agents and potential buyers.

### PAY-PER-CLICK (PPC)

We run pay-per-click campaigns to drive traffic to property sites and generate leads.

### REMARKETING

Google retargeting ads are placed on hundreds of top news sites and popular real estate sites and follow each unique visitor. Sites may include Forbes, CNN, NY Times, LA Times, etc.





E-BLAST | JUST LISTED



E-BLAST | RSVP OPEN HOUSE

# DIGITAL MARKETING

### DYNAMIC ADVERTISING STRATEGIES



WEB BANNER ADS | REMARKETING



WILLIAMS & WILLIAMS MOBILE APP

# FEATURED PRESS

DIVERSE NETWORK WITH HIGH EXPOSURE

WALL STREET JOURNAL



CONFIDENTIAL
LOS ANGELES

DREAMS
LOS ANGELES LUXURY LIFESTYLES

YAHOO!

LOS ANGELES
BUSINESS JOURNAL

realtor.com®


LUXURY
PORTFOLIO
INTERNATIONAL®

ACCESS/★

NBC

Robb Report

CBS

ELLE
DECOR

BUSINESS
INSIDER

MIAMI LIVING

Bloomberg
TELEVISION

TOP
AGENT
MAGAZINE



HAUTE LIVING

NEW YORK POST

Forbes

MODERN LUXURY
Angeleno

MANSION GLOBAL

FT
FINANCIAL
TIMES

# FEATURED PRESS

DIVERSE NETWORK WITH HIGH EXPOSURE

THE Hollywood REPORTER

People

DETAILS

THE REAL DEAL

SECRET LIVES OF THE
SUPER RICH
WITH ROBERT FRANK

inman

DIGS

Los Angeles Times














The New York Times

# TELEVISION & BROADCASTS
AS FEATURED IN

## ARCHITECTURAL DIGEST

As the leading international design authority, AD and our team explore the unique architectural features at Bel-Air's newest mega-mansion.



## ACCESS HOLLYWOOD, EXTRA & E! ENTERTAINMENT





Detailed property tours led by Branden & Rayni to highlight each property's luxurious offerings, location and amenities.







RANI WILLIAMS
Williams & Williams Estates Group







#ExtraTV25



pAGE 66

tELEVISION & BROADCASTS

aS FEATURED IN













# TELEVISION & BROADCASTS
AS FEATURED IN

CHECK OUT THIS
ROCKIN' MANSION
IN THE HOLLYWOOD HILLS
SUPER RICH

BRANDEN WILLIAMS
WILLIAMS & WILLIAMS
YOU'RE IN GOD MODE WHEN
YOU'RE IN THIS PROPERTY
SUPER RICH

TODAY
More
Search
SHOP
share link
ULTIMATE LUXURY LIVING
INSIDE THE "SECRET LIVES OF THE SUPER RICH"
1:32
3:03
CC

March 15th, 2018

Lenny Kravitz house: Homes of the super rich

Robert Frank, host of CNBC's "Secret Lives of the Super Rich" joins Kathie Lee and Hoda to share dazzling glimpses of amazing properties, including a Gucci heiress's 18-acre estate near Palm Springs and a house designed by rock musician Lenny Kravitz, including $450,000 speakers.

## FOX, ABC & NBC NETWORKS

Interviews & tours on numerous news outlets to give an inside look at some of the most magnificent estates in LA.

SECRET LIVES OF THE
SUPER RICH
WITH ROBERT FRANK

## SECRET LIVES OF THE SUPER RICH & THE TODAY SHOW

Segment with Branden touring The Stanley House that was aired on NBC's Secret Lives of the Super Rich and also featured on The Today Show.

"

WE LOVE WHAT WE DO AND
THAT PASSION IS ONE THING THAT
NEVER GOES OUT OF STYLE

BRANDEN WILLIAMS

"



THE BEVERLY HILLS ESTATES

A GLOBAL BRAND

310.626.4248 | THEWILLIAMSESTATES.COM | DRE 02126121

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **DEBTOR'S NOTICE OF MOTION AND MOTION TO: (1) APPROVE AUCTION AND BID PROCEDURES REGARDING THE SALE OF REAL PROPERTY AND (2) SET SCHEDULING FOR A MOTION TO APPROVE THE SALE OF REAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 29, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Todd M Arnold**    tma@lnbyg.com
- **Jerrold L Bregman**    jbregman@bg.law, ecf@bg.law
- **Marguerite Lee DeVoll**    mdevoll@watttieder.com
- **Thomas M Geher**    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- **David B Golubchik**    dbg@lnbyg.com, stephanie@lnbyb.com
- **James Andrew Hinds**    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- **Robert B Kaplan**    rbk@jmbm.com
- **Jane G Kearl**    jkearl@watttieder.com
- **Jennifer Larkin Kneeland**    jkneeland@watttieder.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **Ryan D O'Dea**    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Sharon Oh-Kubisch**    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Ronald N Richards**    ron@ronaldrichards.com, morani@ronaldrichards.com
- **Victor A Sahn**    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com
- **David Seror**    dseror@bg.law, ecf@bg.law
- **Zev Shechtman**    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

**2.  SERVED BY UNITED STATES MAIL**: On **December 29, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 29, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information **BY OVERNIGHT MAIL** continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 29, 2021 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

In re Crestlloyd, LLC
D UST Receiver RSN + Amended 20
Largest
File No.: 9562

Debtor
Crestlloyd, LLC
c/o SierraConstellation Partners LLC
355 S. Grand Avenue Suite 1450
Los Angeles, CA 90071

Noreen A Madoyan
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Counsel For Receiver
Brutzkus Gubner Rozansky Seror
Weber LLP
David Seror/Jessica Wellington
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Biabani & Associates, Inc.
Attn: Alex Biabani
1600 Sawtelle Bl #104
Los Angeles, CA 90025

Bradford Sheet Metal
4164 Sopp Road
Mojave, CA 93501

Branden Williams
257 N. Cannon Dr., 2nd Fl.
Beverly Hills, CA 90210

C.G.S. Custom Glass Specialists
Attn: Tom Yang
4536 Ish Drive
Simi Valley, CA 93063

CAD Stone Works Inc.
Attn: Cesar Hernandez
4533 Van Nuys Bl. #201
Sherman Oaks, CA 91403

Centurion Air, LLC
Attn: Michael T. Pyle
13932 Arrow Creek Road
Draper, UT 84020

Davidson Accountancy Corp.
William N. Davidson, CPA
14011 Ventura Blvd., Ste. 302
Sherman Oaks, CA 91423

Creative Art Partners
6542 Hayes Dr.
Los Angeles, CA 90048

Italian Luxury Design
4 NE 39 St.
Miami, FL 33137

Jabs Pools and Spas, LLC
Attn: Georgina Rendon
8055 Matilija Ave.
Panorama City, CA 91402

Dennis Palma
146 Beach Way
Monterey, CA 93940

KN Coating
201 E. Tamarack Ave
Inglewood, CA 90301

LA DWP
P.O. Box. 30808
Los Angeles, CA 90030

Vesta (aka Showroom Interiors, LLC)
Attn: Julian Buckner
8905 Rex Road
Pico Rivera, CA 90660

Made by TSI, Inc.
888 Biscayne Blvd #209
Miami, FL 33132

Midland Contractors, Inc.
Attn: Bruce Partovi
Po Box 8312
Van Nuys, CA 91409

West Valley Green Landscaping, Inc.
14761 Tupper St.
Panorama City, CA 91402

The Vertex Companies, Inc.
12100 Wilshire Blvd 8th floor
Los Angeles CA 90025-0000

West Coast Gates
339 Isis Ave.
Inglewood, CA 90301

Counsel For Secured Creditor YOGI
Mark Shinderman
Milbank
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067-3019