Jennifer L. Kneeland (admitted *pro hac vice*)
Marguerite Lee DeVoll (admitted *pro hac vice*)
Jane Kearl, Bar No. 156560
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
4 Park Plaza, Suite 1000
Irvine, CA 92614
Telephone: 949-852-6700
jkneeland@watttieder.com
mdevoll@watttieder.com
jkearl@watttieder.com

Attorneys for Creditor
J & E Texture, Inc.

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CRESTLLOYD, LLC,<br><br>        Debtor and Debtor-in-Possession. | Case No.: 2:21-bk-18205-DS<br>Chapter 11 Case<br><br>**OBJECTION TO MOTION FOR ORDER: (1) APPROVING THE SALE OF THE DEBTOR'S REAL PROEPRTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, WITH THE EXCEPTION OF ENUMERATED EXCLUSIONS; (2) FINDING THAT THE BUYER IS A GOOD FAITH PURCHASER; (3) AUTHORIZING AND APPROVING THE PAYMENT OF CERTAIM CLAIMS FROM SALE PROCEEDS; (4) WAIVING THE FOURTEEN-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h); AND (5) PROVIDING RELATED RELIEF**<br><br>Date:      March 18, 2022<br>Time:     11:00 A.M. PST<br>Place:    Courtroom 1639<br>            255 E. Temple St.<br>            Los Angeles, CA 90012<br>            **VIA ZOOMGOV ONLY** |

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF THE FACTS ........................................................................... 3

III.   ARGUMENT ......................................................................................................... 5

    A.   Mechanics' Lien Priority Under California State Law. ............................. 5

    B.   The Debtor Cannot Satisfy Section 363 for Approval of the Motion. ...... 7

        (1)   Section 363(f)(2) Requires Affirmative, Informed Consent. ........ 7

        (2)   Ignoring the Superior Priority of Mechanics' Liens Does Not
             Equate to a Bona Fide Dispute Under Section 363(f)(4). ............ 9

        (3)   Debtor Cannot Satisfy Section 363(f)(5) Under Controlling Ninth
             Circuit Case Law. ........................................................................ 11

IV.   CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Greenblatt v. Utley*, 240 F.2d 243, 246 (9th Cir. 1956) ............................................................ 5, 6

*In re Arch Hosp., Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015) .......................................... 7, 9

*In re Clark*, 266 B.R. 163, 171-72 (9th Cir. BAP 2001) ........................................................... 10, 11

*In re DeCelis*, 349 B.R. 465, 467-69 (Bankr. E.D.Va. 2006) .................................................... 7, 9

*In re East Airport Dev., LLC*, 443 B.R. 823, 831 (9th Cir. BAP 2011) ..................................... 7, 9

*In re Hassen Imports P'ship*, 502 B.R. 851, 858-59 (C.D. Cal. 2013) ..................................... 11, 12

*In re KDR Bldg. Specialties, Inc.*, 76 B.R. 778 (Bankr. S.D. Cal. 1987) .................................... 6

*In re Kellogg-Taxe*, No. 2:12-bk-51208-RN, 2014 WL 1016045, at *6 (Bankr. C.D.Cal. Mar. 17, 2014) .................................................................................................................... 10, 11

*In re Lobolee*, 241 B.R. 655 (9th Cir. BAP 1999) ..................................................................... 3, 7

*In re Mitchell*, 525 B.R. 38, 41 (Bankr. M.D.N.C. 2014) ........................................................... 10

*In re PW, LLC*, 391 B.R. 25, 41-47 (9th BAP 2008) .................................................................. 11, 12

*In re Roberts*, 249 B.R. 152, 155 (Bankr. W.D.Mich. 2000) ..................................................... 7, 9

*In re Smith*, No. BR 13-61627, 2014 WL 738784, at *2 (Bankr. D. Or. Feb. 26, 2014) ............ 11, 12

*In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996) ............................................................... 10

*In re Terrace Chalet Apts., Ltd.*, 159 B.R. 821, 828-29 (Bankr. N.D. Ill.1993) ......................... 10

*Matter of Stroud Wholesale, Inc.*, 47 B.R. 999, 1002 (Bankr. M.D.N.C. 1985) ......................... 10

*Sec. & Exch. Comm'n v. Capital Cove Bancorp LLC*, No. SACV-15-980-JLS (JCx), 2015 WL 9701154, at *5 (C.D. Cal. Oct. 13, 2015) ........................................................................ 10, 11

**California Cases**

*MTC Fin., Inc. v. Nationstar Mortg., LLC*, 19 Cal.App.5th 811, 8117 (1st Dist. 2018) ............... 14

*Parson Brinckerhoff Quade & Douglas, Inc. v. Kern Cty. Emps.' Ret. Ass'n*, 5 Cal.App.4th 1264, 1268-69 (5th Dist. 1992) ............................................................................................... 6, 7

*Santa Cruz Lumber Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 160 Cal.App.3d 858 (1st Dist. 1984) (unpublished) ....................................................................................................... 7

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW
IRVINE

*Sax v. Clark*, 180 Cal. 287, 288-91, 180 P. 821 (1919) .................................................................. 5, 7

*Schrader Iron Works, Inc. v. Lee*, 26 Cal.App.3d 621, 631-32 (3d Dist. 1972) .......................... 6, 7

*Simons Brick Co. v. Hetzel*, 236 P. 357, 360 (Cal. Ct. App. 2d Dist. 1925) ................................ 6, 7

**Federal Statutes**

11 U.S.C. § 1129(b)(2)(A) ............................................................................................................ 12

11 U.S.C. § 363(f) ........................................................................................................................... 7

11 U.S.C. § 363(f)(2) ............................................................................................................. 3, 7, 8, 9

11 U.S.C. § 363(f)(4) .............................................................................................................. passim

11 U.S.C. § 363(f)(5) ........................................................................................................ 3, 7, 11, 12

**California Constitutional Provisions and Statutes**

Cal. Civ. Code § 2924k .................................................................................................................. 12

Cal. Civ. Code § 8450(a) .......................................................................................................... passim

Cal. Const. Art. XIV, § 3 ................................................................................................................. 5

**Rules**

Fed. R. Bankr. P. 7001 .................................................................................................................... 9

**Other Authorities**

3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[3], 363-51 (16th ed. 2010) ............................................................................................................................................ 7

*Jack Collier East Co. v. E.C. Barton & Co.*, 228 Ark. 300, 307 S.W.2d 863,865-66 (1957) ......... 6

Miller & Starr, *California Real Estate* 4th ed., §§ 32:6, 10:130 (2021) ..................................... 5, 6

TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY JUDGE:

J & E Texture, Inc. ("J&E"), the holder of a senior priority pre-petition mechanics' lien against the improvement and real property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property" or "The One") submits this *Objection* (the "Objection") to the *Motion for an Order: (1) Approving the Sale of the Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, with the Exception of Enumerated Exclusions; (2) Finding that the Buyer is a Good Faith Purchaser; (3) Authorizing and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief* [Dkt. No. 142] (the "Motion").

I. **INTRODUCTION**

"The One," a Bel-Air mansion, sits on 4-acres of land and boasts of, among other luxuries, 21 bedrooms, 42 full and 7 half bathrooms, a 30-car garage, five swimming pools, a two-story waterfall, two restaurant-grade kitchens, a movie theater, and a four-lane bowling alley. (Dkt. No. 142, Declaration of Lawrence R. Perkins). There is no question that construction of "The One" was a massive undertaking that required the skills and hard work of numerous of trades, suppliers, contractors, and materialmen, like J&E. It is, however, these very trades, suppliers, contractors, and materialmen that built "The One" that the Debtor ignores in the Motion. For responding party, J&E, it installed over 6,000 sheets of drywall, the equivalent of drywalling a hotel property, and was not paid for its work or materials. On June 30, 2020, J&E recorded its verified Claim of Lien, Instrument No. 20200712043 (the "Mechanics' Lien"), in the Los Angeles County Recorder's Office (the "Recorder's Office") against "The One." (Declaration of Francisco Javier Gonzalez ("Gonzalez Decl."), ¶ 10, Ex. C). The J&E Mechanics' Lien, as explained below, is a priority, secured claim pursuant to Cal. Civ. Code § 8450(a).

Construction of "The One" began as early as March 2, 2014. (Declaration of Reece Hamilton ("Hamilton Decl."), ¶ 5). By May/June 2016, the project site was a hub of activity with all sorts of trades and contractors working to bring Nile Niami's dream to life, by demolishing the pre-existing structure on the property, site grading, laying foundation, putting-up framing, and

installing a roof. (Gonzalez Decl., ¶ 6). At this time, the Debtor and Mr. Niami began meeting with J&E to arrange for the purchase and installation of exterior and interior drywall for the project. (*Id.*, ¶ 5). In May/June 2016, J&E went to the project site and walked the Property to measure for what ultimately resulted in over 6,000 sheets of drywall being hung, an amount akin to "doing a hotel." (*Id.*, ¶ 6).

After negotiating a price, on July 1, 2016, the Debtor and J&E entered into a contract for $925,000, plus change orders, for J&E to install the exterior and interior drywall for "The One." (*Id.*, ¶ 7, Ex. A). J&E joined the fervor of activity at the project site and started work on July 7, 2016. (*Id.*, ¶ 8, Ex. B). Over the next several years, J&E performed under the massive contract and hung over 6,000 sheets of drywall. (*Id.*, ¶ 9). The Debtor, however, failed to pay several of J&E's invoices. (*Id.*, ¶ 10). As a result, on June 30, 2020, J&E was forced to protect its rights. It timely recorded its Mechanics' Lien against "The One", which holds a priority, secured position pursuant to Cal. Civ. Code § 8450(a). (*Id.*, ¶ 10, Ex. C; *see also* J&E's POC No. 13). When the Debtor failed to satisfy the Mechanics' Lien, on September 4, 2020, J&E timely initiated case number 20SMCV01229 (the "Foreclosure Suit"), in the Los Angeles County, California Superior Court (the "State Court") to foreclose its Mechanics' Lien. (*Id.*, ¶ 11). J&E was preparing to obtain a default judgment in the Foreclosure Suit against the Debtor when the Debtor filed the instant bankruptcy case. (*Id.*, ¶ 12).

To date, J&E, and at least 7 other trades and contractors who were similarly forced to protect their rights, have recorded verified mechanics' liens in the Recorders' Office. None of the mechanics' liens, including the J&E Mechanics' Lien, however, are satisfied. All of the mechanics liens enjoy priority secured status pursuant to Cal. Civ. Code § 8450(a). Yet, in the Motion, the Debtor ignores the hardworking people who built "The One" and their mechanics' lien rights and seeks approval of the sale of "The One" for $126 million (the "Sale Price") free and clear of all liens and interests, including these senior priority mechanics' liens. The Debtor also seeks an order that steamrolls past J&E and the other mechanics' lien claimants and allows for the Sale proceeds to be distributed to junior priority, pre-petition creditors, namely, Hankey Capital, LLC ("Hankey").

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 2 -

Case 2:21-bk-18205-DS    Doc 192    Filed 03/15/22    Entered 03/15/22 10:25:43    Desc
Main Document    Page 7 of 19

1    Hankey's pre-petition security interest, however, was not recorded until November 6, 2018. (*See* Motion, Ex. 1, Title Report).  Under California law, mechanics' liens have "off record" priority such that mechanics' liens relate back to the date that work (by any party) commenced at the project. *See* Cal. Civ. Code § 8450(a).  The Debtor knows this and even acknowledges that this is the law in its Motion. (*See* Motion, p. 31).  The Debtor, however, in a flawed interpretation of §§ 363(f)(2), (4), and (5), argues that it can skip the senior priorities of the mechanics' lien claimants to pay Hankey.  The Debtor's position is wholly without legal or factual merit.

Perhaps most alarming is that the Motion and the Notice of Motion (Dkt. 150) ("Notice") hide-the-ball and do not make clear to mechanics' lien claimants that their rights are about to be eviscerated.  There is no dispute that the Debtor's primary asset is "The One", and the sale proceeds are needed to pay creditors.  As the Debtor has acknowledged to the Court, the Sale Price is not sufficient to satisfy all the secured creditors.  Thus, if the Motion is approved, as proposed, the practical effect is that the Court will be determining priority rights of secured creditors without proper notice or due process, *i.e.*, an adversary proceeding, and in a manner that violates the priority scheme.  *See, e.g.*, *In re Lobolee*, 241 B.R. 655 (9th Cir. BAP 1999).  As such, the Motion cannot be approved as currently presented to the Court.

## II.  STATEMENT OF THE FACTS

1. Construction of "The One" began as early as March 2, 2014 when United Excavation demolished the existing house and began site grading. (Hamilton Decl., ¶ 5).

2. Indeed, on April 23, 2014, the City of Los Angeles conducted the first inspection for grading. (*Id.*, ¶ 6).

3. By May/June 2016, the project site was a hub of activity with all sorts of trades and contractors working to bring Mr. Niami's dream to life, by demolishing the pre-existing structure on the Property, site grading, laying foundation, putting-up framing, and installing the roof. (Gonzalez Decl., ¶ 6, Ex. B).

4. Numerous trades, suppliers, contractors, including electrical and plumbing, were at the project site working to bring Nile Niami's dream to life. (*Id.*, ¶ 6).

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 3 -

Main Document    Page 8 of 19

5.      Around this time, the Debtor and Mr. Niami began meeting with J&E, a drywaller, to arrange for the purchase and installation of exterior and interior drywall for the project. (*Id.*, ¶¶ 4, 5).

6.      In May/June 2016, J&E went to the project site and walked the Property to measure for the drywall and provide a pricing proposal to the Debtor. (*Id.*, ¶ 6).

7.      After negotiating a price, on July 1, 2016, the Debtor and J&E entered into a contract for $925,000, plus change orders, for J&E to install the exterior and interior drywall for "The One." (*Id.*, ¶ 7, Ex. A).

8.      J&E joined the fervor of activity at the project site and started work on July 7, 2016. (*Id.*, ¶ 8, Ex. B).

9.      Over the next several years, J&E performed under its contract and hung over 6,000 sheets of drywall, an amount akin to "doing a hotel." (*Id.*, ¶¶ 6, 9).

10.      J&E was not the only contractor working on the project during this time. (*Id.*, ¶ 9). There was always someone working at the Property, and sometimes 50-60 different people representing different trades at the Property. (*Id.*).

11.      The Debtor, however, failed to pay several of J&E's invoices. (*Id.*, ¶ 10). As a result, on June 30, 2020, J&E protected its rights and timely filed its Mechanics' Lien against "The One" in the Recorder's Office. (*Id.*, Ex. C; *see also* J&E's POC No. 13).

12.      When the Debtor failed to satisfy J&E's Mechanics' Lien, J&E timely initiated the Foreclosure Suit on September 4, 2020 in the State Court. (*Id.*, ¶ 11).

13.      J&E was preparing to obtain a default judgment against the Debtor in the Foreclosure Suit when the Debtor filed its instant bankruptcy case. (*Id.*, ¶ 12).

14.      To date, J&E remains unpaid for its drywall work at "The One." (*Id.*, ¶ 14).

15.      Its secured claim when it filed its proof of claim no. 13 on January 7, 2022 totaled $284,086.99, inclusive of interest. Interest, however, continues to accrue at a rate of $58.67/day. (*See* J&E's POC No. 13).

16.      Hankey recorded its Construction Deed of Trust (the "Hankey DOT") on November 6, 2018. (*See* Motion, Ex. 1, Title Report.)

HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 4 -

17. That same day, Hankey and Inferno Investment Inc. ("Inferno") recorded a subordination agreement whereby Inferno agreed to be subordinated to the Hankey debt. (*See id.*).

18. Inferno had also previously entered into a Memorandum of Agreement dated January 1, 2016 with the Debtor whereby Inferno agreed that "[a]ll proceeds receive from a sale, condemnation, financing or refinancing of the [Property] shall be distributed in the following manner: First, to repay the loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property]." (*See* Motion, Ex. 6).

19. On March 7th and March 8th, 2022, J&E, by counsel, sent letters (the "J&E Letters") to the Debtor asking the Debtor to engage in discussions with J&E so that J&E could be informed of the Debtor's intentions in light of the scant, Sale Price derived from the auction sale. (Gonzalez Decl., ¶¶ 15, 16, Exs. D and E).

## III. ARGUMENT

### A. Mechanics' Lien Priority Under California State Law.

A California constitutional right, a mechanic's lien is entitled to "off-record priority", such that the priority of the mechanic's lien relates back to the commencement of work and not the date of recordation of the lien. *See* Cal. Const. Art. XIV, § 3; Cal. Civ. Code § 8450(a); *Sax v. Clark*, 180 Cal. 287, 288-91, 180 P. 821 (1919); *Greenblatt v. Utley*, 240 F.2d 243, 246 (9th Cir. 1956) ("[t]he lien dates from the time of the commencement of the work"); Miller & Starr, *California Real Estate* 4th ed., §§ 32:6, 10:130 (2021) ("Miller & Starr"). Specifically, Cal. Civ. Code § 8450(a) provides that a mechanic's lien –

> … has priority over a lien, mortgage, deed of trust, or other encumbrance on the work of improvement or the real property on which the work of improvement is situated, that (1) attaches ***after*** commencement of the work of improvement or (2) was unrecorded at the commencement of the work of improvement and of which the claimant had no notice.

Cal. Civ. Code § 8450(a) (emphasis added).

Further, the lien attaches and relates back to when any work is commenced on the project, not when the lien claimant itself actually performed its work. *See Simons Brick Co. v. Hetzel*, 236 P. 357, 360 (Cal. Ct. App. 2d Dist. 1925); *Schrader Iron Works, Inc. v. Lee*, 26 Cal.App.3d 621,

631-32 (3d Dist. 1972); *Parson Brinckerhoff Quade & Douglas, Inc. v. Kern Cty. Emps.' Ret. Ass'n*, 5 Cal.App.4th 1264, 1268-69 (5th Dist. 1992); *In re KDR Bldg. Specialties, Inc.*, 76 B.R. 778 (Bankr. S.D. Cal. 1987); *Miller & Starr*, §§ 32:6, 10:130 ("[t]he priority of a mechanic's lien relates back to the date work commenced for *all* claimants, no matter when the claimant's work actually began"). Consequently, **all** mechanic's liens relate back to the date of commencement of work at a project, regardless of when any individual claimant may have commenced work at the project. Notably, the Debtor does not dispute the well-established law regarding a mechanic's lien's priority over subsequent deeds of trust, liens, and other encumbrances. (*See* Motion, p. 31).

Work started on "The One" as early as March 2, 2014. (Hamilton Decl., ¶ 5). When J&E entered into its contract with the Debtor on July 1, 2016 and started work on July 7, 2016, the project site was already a hub of activity. (Gonzalez Decl., ¶¶ 6-8, Exs. A, B). Indeed, when J&E started its work on "The One", the previous structure had been demolished, site grading had been completed, the foundation was already laid, the framing was up, and the roof had been installed. (*Id.*, ¶¶ 6-8, Ex. B; *see also* Hamilton Decl., ¶¶ 5,6). In contrast, the Hankey DOT was not recorded until November 6, 2018 – nearly 4 ½ years **after** work started on "The One" and 2 ½ years **after** J&E commenced work on "The One". (*See* Motion, Ex. 1, Title Report, Item No. 13).[1] As a result, although J&E's Mechanics' Lien was not filed until June 30, 2020 (*id.*, ¶ 10, Ex. C), the priority of J&E's Mechanics' Lien – as well as the priority of all other mechanics' liens – relates back to at least March 2, 2014 and is senior in priority to the Hankey DOT. *See* Cal. Civ. Code § 8450(a); *Sax*, 180 Cal. at 288-91; *Greenblatt*, 240 F.2d at 246; *Simons Brick Co.*, 236 P. at 360; *Schrader Iron Works, Inc.*, 26 Cal.App.3d at 631-32; *Parson*, 5 Cal.App.4th at 1268-69; *Miller & Starr*, §§ 32:6, 10:130.

---

[1] In pre-Motion correspondence, the Debtor side-stepped J&E's inquiries as to the payment of its mechanics' lien claim by asking about Inferno's priority interests. Inferno, however, agreed not to be paid until "all other unpaid costs of construction of the Residence" are paid. (*See* Motion, Ex. 6). Inferno also separately agreed to be subordinated to Hankey. (*See* Motion, Ex. 1, Title Report, Item No. 7). Thus, Inferno's junior and subordinated interests are a red herring. *See Miller & Starr*, § 10:202, n. 9 (citing *Jack Collier East Co. v. E.C. Barton & Co.*, 228 Ark. 300, 307 S.W.2d 863,865-66 (1957)); *see also Santa Cruz Lumber Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 160 Cal.App.3d 858 (1st Dist. 1984) (unpublished) (holding mechanic's lien claimant who had priority over lienholder that agreed to be subordinated to a lienholder that was junior to the mechanic's lien claimant).

**B. The Debtor Cannot Satisfy Section 363 for Approval of the Motion.**

A chapter 11 debtor may sell property "free and clear of any interest" only if the debtor satisfies one or more of the five requirements set forth under § 363(f). *See* 11 U.S.C. § 363(f)(1)-(5). Here, the Debtor only seeks approval of the Sale pursuant to §§ 363(f)(2) (consent), (4) (bona fide dispute), and (5) (money satisfaction). The Debtor, however, cannot satisfy any part of section 363(f), and, therefore, the Motion, as presented, cannot be approved.

**(1) Section 363(f)(2) Requires Affirmative, Informed Consent.**

Under § 363(f)(2), unless a different subsection is satisfied, a sale can only be approved "free and clear" of an interest with the impacted entity's consent. 11 U.S.C. § 363(f)(2); *In re East Airport Dev., LLC*, 443 B.R. 823, 831 (9th Cir. BAP 2011); *In re Arch Hosp., Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015). As evidenced by this Objection, J&E does not consent to the Sale of "The One" free and clear of its Mechanics' Lien.

Beyond the issue of J&E's specific consent, the Debtor suggests that other interested parties, in particular, the other mechanic's lien claimants "may also consent … or not oppose the Motion." (*See* Motion, p. 30). Silence or the failure to oppose the Motion, however, does not constitute consent under § 363(f)(2). To constitute "consent", § 363(f)(2) requires an unequivocal manifestation of a lienholder's affirmation to the sale free and clear. *In re East Airport Dev., LLC*, 443 B.R. at 831 (citing *In re Roberts*, 249 B.R. 152, 155 (Bankr. W.D.Mich. 2000)). In that vein, consent and a failure to object or oppose a motion "are not synonymous." *In re Arch Hosp., Inc.*, 530 B.R. at 591 (citing *In re Roberts*, 249 B.R. at 155) (holding that failing to object is not the same as consent); *see also In re DeCelis*, 349 B.R. 465, 467-69 (Bankr. E.D.Va. 2006) (holding that non-opposition is not consent).

Affirmative consent, and not mere silence or non-opposition, is necessary to protect the due process rights of the affected lienholders and to ensure that they are consenting "to a sale free of liens or interest, [and] not merely … to the sale of assets." *In re East Airport Dev., LLC*, 443 B.R. at 831 (quoting 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[3], 363-51 (16th ed. 2010)); *see also In re Lobolee*, 241 B.R. 655 (9th Cir. BAP 1999).

- 7 -

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

For example, in *Lobolee*, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") addressed the need to protect lienholders' due process rights in the context of a § 363 sale. 241 B.R. at 661. The trustee sought to sell real property for less than the total amount of the liens against the property. *Id.* at 657. The sale price exceeded the lien of a secured lender appearing on the title report as holding a first priority position. *Id.* at 658. The lien priorities, however, were disputed by certain of the lienholders. *Id.* Instead of filing an adversary proceeding under Fed. R. Bankr. P. 7001 to determine the lien priorities, the trustee pushed through a sale motion that effectively determined one of the lien claimant's priorities so that they could receive the proceeds from the sale. *Id.* at 658-59.

The Ninth Circuit BAP reversed the lower court's rulings and explained that "notice is to be taken particularly seriously when liens are being affected in bankruptcy … [h]olders of liens that may be adversely affected are entitled ***to unambiguous notice and an adequate opportunity to reflect and to respond***." *Id.* at 662 (emphasis added). Unambiguous notice "is required in order to satisfy the due process clause of the Fifth Amendment," and such notice "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objection." *Id.* at 660-61. The Ninth Circuit BAP further noted that "it was not irrational for [the lienholder] to assume that the priorities were what they were under nonbankruptcy law and would continue to be honored" through the course of the sale, particularly when the sale price exceeded the lienholder's claim. *Id.* at 661.

The Ninth Circuit BAP's due process reasoning is echoed in the Bankruptcy Court's decision in *Arch Hospitality* holding that non-opposition is not consent under § 363(f)(2). In *Arch Hospitality*, the Bankruptcy Court explained that the need for affirmative consent is imperative when considering the sale of a property free and clear of a perfected interest –

> Both creditors took the necessary steps to perfect their liens. Having perfected their liens, both could understandably expect that their interest would survive any subsequent transfer of title. Under these circumstances, the more reasonable inference is that silence would here imply the absence of consent.

*In re Arch Hosp., Inc.*, 530 B.R. at 591. In other words, to ensure that a party is consenting to having their lien rights determined, and not just to the sale of an asset, affirmative consent, and not mere silence or non-opposition, is needed. *Id.*; *see also In re East Airport Dev., LLC*, 443 B.R. at 831 (citing *In re Roberts*, 249 B.R. at 155); *In re DeCelis*, 349 B.R. at 467-69.

Here, the Court is presented with facts similar to *Lobolee* and *Arch Hospitality*. The Notice and Motion presented by the Debtor seeking approval of the Sale are, at best, ambiguous, if not misleading, as to how approval will impact mechanics' lien claimants' rights. The Notice lists the Sale Price, which exceeds the mechanics' liens filed against "The One" but fails to address the impact of disbursing the sale proceeds on mechanics' lien claimants. Specifically, the Notice, and the Motion, fail to explain that the Debtor essentially seeks an order fixing lien priorities in a manner inconsistent with California law in that it seeks to disburse the Sale proceeds to Hankey's junior, pre-petition security interest without paying the mechanics' lien claimants.

As in *Lobolee*, such ambiguous and misleading information in the Notice is not sufficient "notice" to effectuate a result that effectively strip mechanic's lien claimants of their rights without proper due process under the Fifth Amendment or the Bankruptcy Rules, *i.e.*, an adversary proceeding pursuant to Fed. R. Bankr. P. 7001. Without effective "notice," there cannot be informed consent, particularly informed consent in the form of silence. As such, the Debtor fails to satisfy § 363(f)(2).

**(2)    Ignoring the Superior Priority of Mechanics' Liens Does Not Equate to a Bona Fide Dispute Under Section 363(f)(4).**

The Debtor asks the Court to approve the sale of "The One" free and clear of all liens, including J&E's Mechanics' Lien under § 363(f)(4), asserting that J&E's Mechanics' Lien is in "bona fide dispute." The Debtor's request is nonsensical. The Debtor, in one breath, acknowledges that under California law, mechanics' liens have superior priority to subsequently recorded deeds of trust because mechanics' liens relate back to the first date work commenced on the project. (*See* Motion, p. 31). In the next breath, the Debtor conclusively says that because J&E be so bold as to write a letter and inquire as to how proceeds from the auction sale would be distributed creates a "bona fide dispute." (*Id.*). This is not the standard for determining whether

Case 2:21-bk-18205-DS    Doc 192    Filed 03/15/22    Entered 03/15/22 10:25:43    Desc
Main Document    Page 14 of 19

a "bona fide dispute" exists under § 363(f)(4). If it was, then every time any lienholder wrote a letter to opposing counsel to inquire into a debtor's plans for handling sale proiceeds or otherwise asserted its rights in the context of a § 363 sale, such actions would equate to a "bona fide dispute."

Indeed, the J&E Letters themselves merely ask for the Debtor for information and to engage in discussions with J&E so that J&E could be informed of the Debtor's intentions in light of the scant, Sale Price derived from the paltry auction sale. (*See* Gonzalez Decl., ¶¶ 15, 16, Exs. D and E). A request for information to the Debtor does not create a "bona fide dispute" within the meaning of § 363(f)(4). It should be noted that the Debtor never provided a meaningful response and instead replied with glib one-sentence emails, evidencing its cavalier approach and lack of care or diligence in addressing the rights of bona fide priority lienholders.

Indeed, under § 363(f)(4), the dispute must concern "the validity of the lien," and "evidence must be provided [by the debtor] to show factual grounds that there is an 'objective basis' for the dispute." *See In re Clark*, 266 B.R. 163, 171-72 (9th Cir. BAP 2001); *In re Kellogg-Taxe*, No. 2:12-bk-51208-RN, 2014 WL 1016045, at *6 (Bankr. C.D.Cal. Mar. 17, 2014); *In re Mitchell*, 525 B.R. 38, 41 (Bankr. M.D.N.C. 2014); *In re Terrace Chalet Apts., Ltd.*, 159 B.R. 821, 828-29 (Bankr. N.D. Ill.1993); *Matter of Stroud Wholesale, Inc.*, 47 B.R. 999, 1002 (Bankr. M.D.N.C. 1985). In other words, § 363(f)(4) requires "at a minimum that the [debtor] believe a dispute exists [because otherwise i]t would be nonsensical for a court to allow the [debtor] to sell property pursuant to section 363(f)(4) when the [debtor] believes the secured party's interest to be valid." *In re Terrace Chalet Apts., Ltd.*, 159 B.R. at 828.

The Debtor presents no evidence to dispute the validity of J&E's Mechanics' Lien. Rather, the "dispute" is that the Debtor completely ignores the rights of mechanics' lien claimants – the very people responsible for constructing "The One" – in order to pay-off Hankey. This is not a dispute. *See Sec. & Exch. Comm'n v. Capital Cove Bancorp LLC*, No. SACV-15-980-JLS (JCx), 2015 WL 9701154, at *5 (C.D. Cal. Oct. 13, 2015) (quoting *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996)) (§ 363(f)(4) "clearly entails some sort of meritorious, existing conflict").

The lack of any merit to the Debtor's contention that there is a "bona fide dispute" with J&E is evidenced by the Debtor's own proposal to disburse the proceeds from the Sale. It is well-

established that if there were a "bona fide dispute", then the appropriate course of action would be for the proceeds of the sale to be escrowed pending resolution of any alleged dispute. *See In re Kellogg-Taxe*, 2014 WL 1016045, at *6 (holding that sale proceeds should be escrowed pending resolution of bona fide dispute); *Capital Cove Bancorp LLC*, 2015 WL 9701154, at *8; *In re Clark*, 266 B.R. at 171 ("proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute"). The Debtor, however, does not propose to escrow the Sale proceeds. Thus, the Debtor fails to satisfy § 363(f)(4).

### (3) Debtor Cannot Satisfy Section 363(f)(5) Under Controlling Ninth Circuit Case Law.

Under § 363(f)(5), a sale of property may be made free and clear of an interest if the entity holding such interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5); *In re PW, LLC*, 391 B.R. 25, 41-47 (9th BAP 2008); *In re Hassen Imports P'ship*, 502 B.R. 851, 858-59 (C.D. Cal. 2013); *In re Smith*, No. BR 13-61627, 2014 WL 738784, at *2 (Bankr. D. Or. Feb. 26, 2014). In *In re PW*, the leading Ninth Circuit case interpreting § 363(f)(5), the Ninth Circuit BAP established three prongs a debtor needs to satisfy to utilize § 363(f)(5): "that (1) a proceeding exists or could be brought, in which (2) the nondebtor could be compelled to accept a money satisfaction of (3) its interest." *Id.* at 41.

As to the first prong, the Ninth Circuit explained that it is not simply that some hypothetical proceeding exists by which a hypothetical interest in property may be compelled to accept money to release its lien, rather "[t]he question is [] whether there is an available type of legal or equitable proceeding in which a court could compel [that specific entity] to release its lien for payment of an amount that was less than full value of [that entity's] claim." *In re PW, LLC*, 391 B.R. at 45-46; *see also In re Smith*, 2014 WL 738784, at *2.

Here, in presenting this prong to the Court in the Motion, the Debtor asserts without addressing the priority of mechanics' liens, that such a hypothetical proceeding exists. (*See* Motion, pp. 31-33). Specifically, the Debtor argues that two such proceedings exist: (a) a foreclosure under state law; and (b) cramdown under 11 U.S.C. § 1129(b)(2)(A). (*See id.*). The Debtor's argument is flawed in several respects.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 11 -

First, the Debtor's argument ignores the question as to whether there exists a hypothetical proceeding in which a senior priority mechanics' lien claimant can be compelled to accept less than the full value of its senior priority mechanic's lien. *See, e.g.*, *In re PW, LLC*, 391 B.R. at 45-46; *In re Smith*, 2014 WL 738784, at *2. No such proceeding exists under state law. Either the senior mechanics' lien claimant is paid in full, or its lien survives the foreclosure. *See MTC Fin., Inc. v. Nationstar Mortg., LLC*, 19 Cal.App.5th 811, 8117 (1st Dist. 2018) (holding that when a junior lienholder forecloses on property the senior lienholder is not entitled to surplus funds because under Cal. Civ. Code § 2924k, the property is purchased subject to the senior lien); *see In re Hassen Imports P'ship*, 502 B.R. at 861-62; *In re Smith*, 2014 WL 738784, at *2.

Second, the Debtor ignores the holding of *PW*, which expressly rejects the Debtor's second argument – that cramdown under § 1129(b)(2)(A) qualifies as a proceeding by which an entity can be compelled to accept money for less than the full value of their lien. *In re PW, LLC*, 391 B.R. at 46-47. The Ninth Circuit BAP explained that –

> [U]se of the cramdown mechanism to allow a sale free and clear under § 363(f)(5) uses circular reasoning – it sanctions the effect of cramdown without requiring any of § 1129(b)'s substantive and procedural protections … [i]f the proceeding authorizing the satisfaction was found elsewhere in the Bankruptcy Code, then an estate would not need § 363(f)(5) at all; it could simply use the other Code provision.
>
> In addition, this reasoning undercuts the required showing of a separate proceeding. For example, it is correct that § 1129(b)(2) permits a cramdown of a lien to the value of the collateral, but it does so only in the context of plan confirmation. To isolate and separate the cramdown from the checks and balances inherent in the plan process undermines the entire confirmation process, and courts have been leery of using § 363(b) to gut plan confirmation or render it superfluous.

*Id.* at 46. Thus, the Debtor cannot rely on the existence of cramdown under § 1129(b)(2)(A) to satisfy § 363(f)(5) in order to sell "The One" free and clear of mechanics' lien claimants' interests.

## IV.   CONCLUSION

WHEREFORE, J & E Texture, Inc. hereby requests that the Court (i) either: (a) deny the Motion's request that the sale of the Property be free and clear of J&E's Mechanics' Lien; (b) require that J&E's Mechanics' Lien be paid from the proceeds of the sale of the Property prior to Hankey Capital, LLC's junior, pre-petition secured claim; or (c) require the Debtor to escrow the

sale proceeds until such time as the secured creditor priorities are determined; and (ii) grant such further relief the Court deems just and proper.

Dated: March 15, 2022                               Respectfully submitted,

/s/ *Marguerite Lee DeVoll*
Jennifer L. Kneeland (admitted *pro hac vice*)
Marguerite Lee DeVoll (admitted *pro hac vice*)
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia, 22102
Telephone: 703-749-1000
Fax: 703-893-8029
jkneeland@watttieder.com
mdevoll@watttieder.com

-and-

Jane Kearl, Bar No. 156560
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
4 Park Plaza, Suite 1000
Irvine, CA 92614
Telephone: 949-852-6700
jkearl@watttieder.com

Attorneys for Creditor
J & E Texture, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1765 Greensboro Station Place, Suite 1000, McLean, Virginia 22102. A true and correct copy of the foregoing document entitled: *Objection of J &E Texture, Inc. to Debtor's* the *Motion for an Order: (1) Approving the Sale of the Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, with the Exception of Enumerated Exclusions; (2) Finding that the Buyer is a Good Faith Purchaser; (3) Authorizing and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief* will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 15, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Jerrold L Bregman    jbregman@bg.law, ecf@bg.law
- Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Robert B Kaplan    rbk@jmbm.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com
- William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com
- David Seror    dseror@bg.law, ecf@bg.law
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On March 15, 2022, I served the following persons and/or

entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 15, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 15, 2022 | Marguerite Lee DeVoll | /s/ Marguerite Lee DeVoll |
|---|---|---|
| Date | Printed Name | Signature |

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW