Samuel A. Newman (SBN 217042)
sam.newman@sidley.com
Genevieve G. Weiner (SBN 254272)
gweiner@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: 213.896.6000
Facsimile: 213.896.6600

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars
17th Floor
Los Angeles, CA 90067
Telephone: 310.595.9500
Facsimile: 310.595.9501

Attorneys for Party in Interest
Richard Saghian, an Individual

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:21-bk-18205-DS |
| CRESTLLOYD, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | Assigned to: The Hon. Deborah J. Saltzman |
| | **RICHARD SAGHIAN'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S SALE MOTION** |
| | Hearing:<br>　Date: March 18, 2022<br>　Time: 11:00 a.m.<br>　Place: Courtroom 1639<br>　　　255 E. Temple St.<br>　　　Los Angeles, CA 90012<br>　**VIA ZOOMGOV ONLY** |

**Table of Contents**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

 A. Mr. Saghian is a Good Faith Purchaser Entitled to the Protections of Section 363(m). ..........................................................................................................................2

 B. The Property Can be Sold Free and Clear of the Junior Liens Pursuant to Section 363(f) of the Bankruptcy Code. ......................................................................5

 1. The Property can be sold free and clear of all of the Junior Liens pursuant to section 363(f)(5). ..............................................................................5

 2. Many of the Secured Creditors consented to the sale, in satisfaction of section 363(f)(2). ...................................................................................................7

 3. Many of the Secured Claims are subject to a bona fide dispute pursuant to section 363(f)(4). ...............................................................................8

 C. The Sale of the Property to Mr. Saghian is in the Best Interests of the Estate. .............8

 D. The Results of the Auction Must be Honored in Order to Preserve the Integrity of the Judicial Sale Process. .........................................................................9

III. CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Maui v. Estate Analysis, Inc.*,
904 F.2d 470 (9th Cir. 1990) ...........................................................................................6

*Boh Park Highlands NV, L.P. v. Wilmington Trust (In re November 2005 Land Investors, LLC)*,
2:13-CV-00639-PMP-CWH (D. Nev. Jan. 20, 2014) .....................................................5

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*,
391 B.R. 25 (B.A.P. 9th Cir. 2008) ...............................................................................5, 6

*Corporate Assets, Inc. v. Paloian*,
368 F.3d 761 (7th Cir. 2004) .........................................................................................10

*Futuresource LLC v. Reuters Ltd.*,
312 F.3d 281 (7th Cir. 2002) ...........................................................................................7

*In re Gil-Bern Industries*,
526 F.2d 627 ..................................................................................................................10

*In re Grand Slam USA, Inc.*,
178 B.R. 460 (E.D. Mich. 1995) .....................................................................................6

*In re Gulf States Steel*,
285 B.R. 497 (Bankr. N.D. Ala. 2002) ............................................................................6

*In re Healthco*,
174 B.R. 175 (Bank. R. Mass. 1994) ..............................................................................6

*J.J. Sugarman Co. v. Davis*,
203 F.2d 931 (10th Cir. 1953) .......................................................................................10

*In re Jolan, Inc.*,
403 B.R. 866 (Bankr. W.D. Wash. 2009) ........................................................................6

*In re Kellogg-Taxe*,
Case No.: 2:12-bk-51208-RN (Bankr. C.D. Cal. Mar. 17, 2014) .................................7, 8

*In re Keystone Mine Mgmt. II*,
No. BAPEC151202KUMAJU, 2016 WL 7189824 (B.A.P. 9th Cir. Dec. 2, 2016),
*aff'd sub nom. In re Keystone Mine Mgmt., II*, 739 F. App'x 418 (9th Cir. 2018) ....................2

*In re Octagon Roofing*,
123 B.R. 583 (Bankr. N.D. Ill. 1991) ..............................................................................8

*In re Onouli-Kona Land Co.*,
  846 F.2d 1170 (9th Cir. 1988) ..................................................................................3

*In re Pac. Cargo Servs., LLC*,
  2014 WL 2041821 (D. Or. May 9, 2014) ...............................................................3, 7

*In re Smith*,
  Bankruptcy No. 13-61627-tmr7 (Bankr. D. Or. Feb. 26, 2014) ...............................6

*In re Suchy*,
  786 F.2d 900 (9th Cir. 1985) ....................................................................................2

*In re Terrace Chalet Apts.*,
  159 B.R. 821 (N.D. Ill. 1993) ...................................................................................6

**Statutes**

11 U.S.C. § 363(f)(2) .........................................................................................................7

11 U.S.C. §363(f)(4) ..........................................................................................................8

11 U.S.C. §363(f)(5) ..........................................................................................................5

Bankruptcy Code Section 363(f) .......................................................................................5

Bankruptcy Code section 363(m) ....................................................................................11

**TO THE HONORABLE DEBORAH J. SALTZMAN, THE CLERK OF THE COURT, AND ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

Richard Saghian, the Bidder who submitted the highest bid and the Buyer ("Mr. Saghian" or "Buyer"), in accordance with the Court-approved auction and bidding procedures (the "Bid Procedures") pertaining to the Auction of the real property of Crestlloyd, LLC (the "Debtor") located at 944 Airole Way, Los Angeles, CA 90077 (the "Property"), by and through his attorneys of record, hereby submits this Omnibus Reply (the "Reply") to (1) the opposition filed by American Truck & Tool Rental on March 15, 2022 [Dkt. 191] (the "American Truck Opposition"); (2) the objection filed by J & E Texture, Inc. on March 15, 2022 [Dk. 192] (the "J & E Objection"); (3) the objection filed by Yogi Securities Holdings, LLC on March 15, 2022 [Dkt. 193] (the "Yogi Objection"); (4) the objection filed by Nile Niami on March 15, 2022 [Dkt. 196] (the "Niami Objection"); (5) the opposition filed by Inferno Investment, Inc. on March 15, 2022 [Dkt. 198] (the "Inferno Opposition"); and (6) the opposition filed by Italian Luxury Group, LLC [Dkt. 201] (the "Italian Luxury Opposition")[1] (collectively, the "Objections") to the Debtor's *Motion for an Order Approving the Sale of the Debtor's Real Property* (the "Sale Motion") [Dkt. 142], which motion was filed on March 8, 2022 and is scheduled to be heard on March 18, 2022.[2] In support of this Reply,[3] Buyer states as follows:

### I. INTRODUCTION

Mr. Saghian, in reliance on the Bid Procedures approved by this Court—and in contravention of his normally private persona—participated in and won the well-publicized Auction. After submitting the High Bid at the Auction, Mr. Saghian has fulfilled all of his obligations under the Bid

---

[1] The Italian Luxury Opposition did not appear on the Court's electronic docketing system until March 16, 2022. While the document bears a file stamp of March 15, 2022, the *time* of filing is not indicated. To the extent that the Italian Luxury Opposition was not timely filed by the deadline of 12:00 p.m. Pacific Time on March 15, 2022, it should be struck from the record and not considered by the Court in ruling on the Sale Motion.

[2] Capitalized terms used but not defined herein shall have the meaning provided in the Sale Motion, *Debtor's Notice of Motion to (1) Approve Auction and Bid Procedures Regarding the Sale of the Real Property and (2) Set Scheduling for a Motion to Approve the Sale of Real Property; Memorandum of Points and Authorities and Declaration in Support Thereof* [Dkt. 88] (the "Bid Procedures Motion"), and/or the Bid Procedures attached thereto as Exhibit "1" (the "Bid Procedures").

[3] Buyer reserves the right to supplement this Reply in response to any later-filed pleadings.

Procedure Orders, including executing an agreed-upon form of purchase agreement and funding the nearly $15,000,000 earnest money deposit.

While the Objections assert that the Sale should not be approved, certain of the Objections also argue that even if the Sale is approved—which it should be—the Court should not find that Mr. Saghian is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code. However, the undisputed facts and evidence provided to the Court support a finding that Mr. Saghian is a good faither purchaser within the meaning of section 363(m).

In sum, the sale to Mr. Saghian should be approved, the Property should be sold free and clear of all liens, and Mr. Saghian should be determined to be a good faith purchaser under section 363(m). Such a result is demanded by the facts, the law, and the integrity of the bankruptcy sale process. A "do over" was not contemplated by the Bid Procedures and should not be permitted.

## II.    ARGUMENT

### A.    Mr. Saghian is a Good Faith Purchaser Entitled to the Protections of Section 363(m).

The Bankruptcy Code does not define the term "good faith" for purposes of section 363(m), but the Ninth Circuit "repeatedly has stated that, in this context, a lack of good faith typically is shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Keystone Mine Mgmt. II,* No. BAPEC151202KUMAJU, 2016 WL 7189824, at *7 (B.A.P. 9th Cir. Dec. 2, 2016), *aff'd sub nom. In re Keystone Mine Mgmt., II*, 739 F. App'x 418 (9th Cir. 2018) (citations removed); *see also In re Suchy,* 786 F.2d 900, 902 (9th Cir. 1985) ("good faith purchaser" is not defined but "lack of good faith, however, is determined by fraudulent conduct during the sale proceedings.").

The Auction was conducted in conformance with Bid Procedures that were approved by the Court after consideration of the Bid Procedures Motion, all papers filed in opposition thereto, and extensive testimony and arguments presented at the January 6, 2022 hearing on the Bid Procedures Motion (the "Bid Procedures Hearing"). The objecting Secured Creditors have made *no allegations* that Mr. Saghian engaged in collusion or fraud, nor could they. Instead, the objecting Secured Creditors have suggested that Mr. Saghian is not a good faith purchaser because Mr. Saghian's High

Bid was not high enough. The law in the Ninth Circuit does not support such a finding. *See, e.g.*, *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1174 (9th Cir. 1988); *see also In re Pac. Cargo Servs., LLC*, 2014 WL 2041821, at *6 (D. Or. May 9, 2014).

In *Onouli-Kona*, the Ninth Circuit considered a Debtor's argument that the buyer after an auction did not buy the property in good faith and "for value" because the auction procedures, *inter alia*, allowed insufficient time to advertise a sale of a large piece of real estate. *In re Onouli-Kona Land Co.*, 846 F.2d at 1173. The Ninth Circuit noted the absence of fraud or collusion and that "[t]he terms of the auction came from the bankruptcy court, not from Purchaser. . . . Purchaser did nothing wrong with respect to any of the auction's terms." *Id.* at 1173-74. Moreover, the Court emphasized that "Ninth Circuit authority . . . does not make good faith depend on 'value.'" *Id.* at 1174.

Further, in *Pac. Cargo Servs*, the District Court for the District of Oregon considered an appellant creditor's arguments that the purchaser of the property after an auction was not a "good faith purchaser" because the sale price would create "an unconscionable windfall" for the purchaser. *In re Pac. Cargo Servs., LLC,* 2014 WL 2041821 at *6. The court disagreed with the creditor's argument, finding that "a public auction, conducted in accordance with court-approved procedures and without fraud or collusion, is compelling evidence of value." *Id.* The court noted that in this case there was "no collusion, fraud, or other impropriety at issue," and "[r]egardless, the record is replete with evidence that a competitive auction occurred." *Id.* at *5. This evidence included that the bid procedures were approved by the court after a hearing, the auction was advertised, and creditors had an opportunity to object to the bid procedures. All of these same considerations apply here: Mr. Saghian complied with court-approved Bid Procedures designed to foster a competitive auction, and in so doing he did not engage in any fraud, collusion, or impropriety of any sort. As set forth in the *Declaration of Richard Saghian in Support of Buyer's Omnibus Reply* (the "Saghian Declaration") filed contemporaneously herewith, Mr. Saghian participated in the Auction in good faith, without collusion, in reliance on the Bid Procedures and with the goal of purchasing the Property. Saghian Decl. at ¶¶ 2-6. As such he is the quintessential good faith purchaser and is entitled to the protections of section 363(m).

The creditors' unsupported allegations of a "soft gavel" approach and other claimed deficiencies with the Auction are also unpersuasive. In a declaration replete with hearsay and speculation, the "trustee of the management" of Yogi states that "I was informed by parties in interest (Yvonne Niami and representatives of Inferno) who were in contact with Concierge that a 'soft gavel' approach could be employed to extend the auction for a few more days in effect. What this meant is that bidders were hearing whispers that the end of the Auction might not be the last time to bid for the property." [Dkt. 193 at 3]. Notably missing from any of the Objections, however, is any testimony from an actual bidder stating that he or she declined to submit their best bid in reliance on these supposed "whispers." Indeed, the Auction has now been closed for nearly two weeks and there is *no evidence* adduced by any party that any bidder has been dissuaded from bidding based on these "whispers."[4] This despite the fact that, as acknowledged by Debtor's counsel at the Bid Procedures Hearing, the Property "really is on the news almost every day." Transcript of January 13, 2022 Hearing at 6:8-9 (comments of David Goubchik). Any bidder that has not come forward to date is clearly either not interested or is engaged in the most egregious form of sandbagging in knowing violation of this Court's Bid Procedures Orders.

Finally, any suggestion that Buyer is not entitled to 363(m) protection because he has refused to execute the addendum is false and misleading and, ultimately, a red herring. Mr. Saghian did in fact execute the addendum as approved by Debtor's counsel. Saghian Decl. at ¶ 7. The only allegedly substantive difference between the two addenda has to do with Mr. Saghian's remedies in the event of a breach by the Debtor. As such, the issue will be moot once this Court approves the Sale Motion.

---

[4] Nothing in the *Declaration of Anthony Aquino*, attached to and submitted in support of the Inferno Opposition, changes this fact. All Mr. Aquino states is that he was copied on certain emails between the seller's broker, Rayni Williams, and a broker, Sam Collins, for a potential buyer. While Mr. Aquino attaches an un-authenticated purchase agreement (with the signatory's name removed), if one reviews the full email chain they will see that the alleged potential buyer never provided proof of funds. As Ms. Williams indicated to Mr. Collins, "we have given multiple opportunities for a legible proof of funds and of course we are open and wanting to work with your buyer and all viable buyers." The email also confirms that the alleged potential buyer knowingly declined to participate in the Auction.

**B.  The Property Can be Sold Free and Clear of the Junior Liens Pursuant to Section 363(f) of the Bankruptcy Code.**

Section 363(f) authorizes debtors to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following requirements is met: "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. §363(f); *see also Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 37 (B.A.P. 9th Cir. 2008).  As the Debtor has described in the Sale Motion, at least one of the 363(f) requirements is satisfied for each alleged Secured Claim. [Dkt. 142 at 34]. Therefore, the Debtor is authorized to sell the Property to Mr. Saghian free and clear of all liens.

      1.  *The Property can be sold free and clear of all of the Junior Liens pursuant to section 363(f)(5).*

Section 363(f)(5) permits a sale free and clear of a third party's interest if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. §363(f)(5). The Bankruptcy Appellate Panel in *Clear Channel* parsed the requirements of this provision into three elements: "(1) a proceeding exists or could be brought, in which (2) the nondebtor could be compelled to accept a money satisfaction of (3) its interest." *Clear Channel*, 391 B.R. at 41. Starting with the latter element, it is clear that each of the Junior Liens is an "interest." *See id.* at 42 ("a lien is but one type of interest" for purposes of Section 363(f)(5)). Regarding the first and second elements, to satisfy section 363(f)(5) there must be a possible "legal and equitable proceeding in which the nondebtor could be compelled to take less than the value of the claim secured by the interest." *Id.* at 42. The phrase "'could be compelled' has been interpreted to mean that, on a hypothetical basis, a creditor could be required to accept money in satisfaction of its interest, not that the condition must actually have occurred." *Boh Park Highlands NV, L.P. v. Wilmington Trust (In re November 2005 Land Investors, LLC)*, 2:13-CV-00639-PMP-CWH, at *9-10 (D. Nev. Jan. 20, 2014).

Here, there exist two bases upon which 363(f)(5) could be satisfied. First, Hankey Capital, LLC ("Hankey") has a senior lien on the property securing its debtor in possession ("DIP") loan and

5

could therefore conduct a judicial or non-judicial foreclosure that extinguishes the liens of all alleged Secured Creditors junior to Hankey's first priority lien (the "Junior Liens"). [Dkt. 142 at 38:19-20]. Judicial and non-judicial foreclosures have been recognized by bankruptcy courts in the Ninth Circuit as available "legal or equitable proceedings" that satisfy section 363(f)(5) post-*Clear Channel*. *See, e.g.*, *In re Jolan, Inc.*, 403 B.R. 866, 870 (Bankr. W.D. Wash. 2009) (noting that "were the trustee proposing to sell real property, judicial and nonjudicial foreclosures in Washington operate to clear junior lienholders' interests, and their liens attach to proceeds in excess of the costs of sale and the obligation or judgment foreclosed"); *see also In re Smith,* Bankruptcy No. 13-61627-tmr7, at *5 (Bankr. D. Or. Feb. 26, 2014) (finding that a foreclosure sale under Oregon law could be "just such a proceeding," although a foreclosure by a junior lienholder would not extinguish a senior secured interest and as such would not satisfy section 363(f)(5)). Moreover, courts outside of the Ninth Circuit have found that cramdown under Bankruptcy Code section 1129(b)(2) is a qualifying legal or equitable proceeding—a proposition that the Ninth Circuit itself has not yet ruled on.[5] *See, e.g., In re Gulf States Steel*, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002); *In re Grand Slam USA, Inc.*, 178 B.R. 460, 462 (E.D. Mich. 1995); *In re Healthco*, 174 B.R. 175, 176 (Bank. R. Mass. 1994); *In re Terrace Chalet Apts.,* 159 B.R. 821, 829 (N.D. Ill. 1993). Section 1129(b)(2)(A) of the Bankruptcy Code allows cramdown of the Secured Creditors, and, as the Debtor described in the Sale Motion, all of the requirements for cramdown are met in this case. [Dkt. 142 at 40:10].

Thus, both a foreclosure sale and a cramdown are available "legal and equitable proceedings" in which the Secured Creditors "could be compelled to take less than the value of the claim secured by the interest." *Id.* at 42. Section 363(f)(5) is therefore satisfied as to all of the Junior Liens.

---

[5] *Clear Channel* was decided by the Bankruptcy Appellate Panel of the Ninth Circuit. While Bankruptcy Appellate Panel opinions are persuasive authority, they are not binding on article III courts. *See, e.g.*, *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) ("it must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction.")

2. *Many of the Secured Creditors consented to the sale, in satisfaction of section 363(f)(2).*

Section 363(f)(2) permits a sale free and clear of an interest if that interest holder consents. 11 U.S.C. § 363(f)(2); *In re Kellogg-Taxe*, Case No.: 2:12-bk-51208-RN, at *14 (Bankr. C.D. Cal. Mar. 17, 2014). Consent for purposes of section 363(f)(2) "may be express or may be implied from circumstances surrounding the sale." 3 Collier on Bankruptcy ¶ 363.06 (16th ed. 2021); *see also Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) ("it is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent"); *In re Pac. Cargo Servs., LLC*, 2014 WL 2041821, at *22 (D. Or. May 9, 2014) (interest holders "who have been properly noticed and who did not object to the sale motion are deemed to have consented to the sale."). As described in the Sale Motion, the Debtor has complied with all applicable notice requirements, thereby ensuring that all Secured Creditors had adequate notice of the Sale. [Dkt. 142 at 29-30]. All of the Secured Creditors other than those secured creditors who have objected, namely American Truck & Tool, Inferno Investments, Inc. ("Inferno"), Yogi Securities Holdings, LLC ("Yogi"), and J & E Texture, have therefore consented to the sale by choosing not to oppose the Sale Motion after receiving adequate notice.[6] In addition, Inferno and Yogi—two of the objecting Secured Creditors—*chose not to raise section 363(f)* as part of their objections. *See* Inferno Opposition at 8 (suggesting that if the sale is approved, a further hearing be set on the legitimacy and priority of liens); *see also* Yogi Objection at 7 ("If the Court decides that it should approve the sale to Bidder, the Court should require the Debtor to escrow the sale proceeds pending the resolution of whether or not Hankey's and Inferno's claims are legitimate."). As such, Yogi and Inferno should be deemed to have consented to the sale of the Property free and clear of their liens, with such liens to attach to the sale proceeds.

---

[6] Based on Stipulations filed by and between the Debtor and each of American Truck & Tool and J&E Texture [Dkt. Nos. 203 and 204], it appears that such creditors' Objections have been resolved. While Italian Luxury Group, LLC raises 363(f) arguments in its Objection, it is an *unsecured* creditor and has no standing to object on the basis of 363(f). *See* Proof of Claim No. 21. The same is true for the Niami Objection. As such, no party with standing has properly raised the 363(f) arguments and the Court should not consider same in ruling on the Sale Motion.

       3.    *Many of the Secured Claims are subject to a bona fide dispute pursuant to section 363(f)(4).*

A debtor "may sell estate property free and clear of a nondebtor's interest that is in 'bona fide dispute.'" *In re Kellogg-Taxe*, Case No.: 2:12-bk-51208-RN, at *14 (Bankr. C.D. Cal. Mar. 17, 2014) (quoting 11 U.S.C. §363(f)(4)). In determining the existence of a bona fide dispute for purposes of section 363(f)(4), "a court need not determine the probable outcome of the dispute, but merely whether one exists." *Id.* (quoting *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991)). The parties must simply provide "some factual grounds to show some objective basis for the dispute." *Id.*

Here, the Debtor has provided sufficient factual grounds to show a basis for a dispute as to the validity of the liens allegedly held by Hankey (aside from the senior lien on its DIP loan), Inferno, Yogi, and Kazemi & Associates Contractors. The grounds for dispute are described in detail in the Debtor's "Secured Claims Summary Chart." [Dkt. 142 at 13-23]. Further, the Debtor and Hilldun Corporation have stipulated that Hilldun's claim is subject to a bona fide dispute. [Dkt. 141].

The Debtor's failure to dispute these claims in advance of the Auction is of no consequence: the disputed lien "need not be the subject of an immediate or concurrent adversary proceeding," *In re Kellogg-Taxe*, Case No.: 2:12-bk-51208-RN, at *14, and, as Debtor's counsel explained in an email communication to counsel for Inferno, the Debtor chose not to use the resources of the estate to dispute the claims associated with these liens prior to the Auction for the simple reason that the Debtor expected to sell the property via a "consensual sale." [Dkt. 142 at Ex. "5," 161].

### C.    The Sale of the Property to Mr. Saghian is in the Best Interests of the Estate.

Mr. Saghian's High Bid, while not as high as the Secured Creditors had hoped for, reflects the market price of the Property. The Debtor's brokers sought purchasers for the property in the period of time between the January 6, 2022 Bid Procedures Hearing and the Auction with the intention that "if [the brokers] get someone who comes in tomorrow with a great bid, we can cancel the auction." Transcript of Bid Procedures Hearing at 41:25-42:2 (comments of David Goubchik). In the nearly two months before the close of the Auction on March 3, 2022, no such bids presented themselves. The Property was extensively marketed, with exposure recorded in 171 countries and 197,602 web page views on the Auctioneer's website. [Dkt. 142 at 57]. There were five Bidders at the Auction, which

8

was right on the Auctioneer's target. *See* Transcript of Bid Procedures Hearing at 36:12-17 (testimony of Chad Roffers) (noting that the "objective" in the leadup to the Auction "is to generate 1,000 inquiries from around the world. . . . to distill that down into probably 20 serious parties . . . and . . . target having three to five qualified bidders"). The Auction concluded with a record-setting sale price and the emergence of Mr. Saghian, a buyer willing to purchase an unfinished property lacking a certificate of occupancy with an all-cash offer containing no contingencies other than the approval of the sale by this Court.

The failure to obtain a bid at a price that pays in full all of the secured claims is not equivalent to a failure to obtain the appropriate market price. *See* Transcript of Bid Procedures Hearing at 36-37 (testimony of Chad Roffers) ("[T]he liabilities on the property really have nothing to do with what it's worth. And, you know, it might bring 250 million dollars at the auction; it might bring 100 million dollars at the auction. We don't know . . . the purest way to maximize the value for this property is just make it clear that this property is selling"). While it is unfortunate that not all of the Secured Creditors can be paid in full with the sale price obtained at the Auction, the price obtained at the Auction is the best price put forward in a legitimate, closing-ready offer. Finalizing the sale to Mr. Saghian and focusing the estate's resources on maximizing payment to the estate's creditors is the path of action in the best interests of the estate.

### D. The Results of the Auction Must be Honored in Order to Preserve the Integrity of the Judicial Sale Process.

The Bid Procedures provide that the bidder who submits the highest bid acknowledged by Concierge will be the "Buyer" of the Property. [Dkt. 88 at 28]. The conclusive nature of the Bid Procedures is by design: by emphasizing the finality of the results of the Auction, the Bid Procedures encouraged a competitive, value-maximizing auction. As the Debtor's counsel represented at the Bid Procedures Hearing "the world is going to know that there is no do over after this [February 28th to March 3rd] auction process." Transcript of Bid Procedures Hearing at 42:6-7 (comments of David Golubchik).

If late bids were anticipated by the Bid Procedures, it is likely that fewer bidders would have participated in the Auction and the bidders who did choose to participate would have reserved their

best offers for the post-Auction period. In contrast, the Bid Procedures created certainty that the High Bid would be submitted to the Court for approval, which in turn incentivized prospective bidders to put their highest offers on the table rather than waiting to jump in as late bidders after the Auction. The finality of the Auction therefore increased competition.

This strategy for maximizing the value recovered for the estate was sanctioned by the Court's orders approving the Bid Procedures [Dkts. 105 and 115] (the "Bid Procedures Orders"). To the extent that creditors believe a different strategy would have maximized recovery for the creditors, they had a full opportunity to brief and argue such position to the Court. After hearing live testimony from the Debtor's professionals, this Court overruled objections to the Bid Procedures and entered the Bid Procedures Orders. These Orders should not be revisited now. Mr. Saghian relied on the Bid Procedures in choosing to bid on the Property and in further undertaking to comply with all requirements set forth in the Bid Procedures, including depositing nearly $15,000,000 as earnest money. *See* Saghian Decl., ¶¶ 2, 7-9.

Finally, refusing to honor the result of auctions conducted in accordance with court-approved auction procedures will destroy trust in the judicial sale process, thereby limiting the recovery of bankrupt estates.[7] As such, public policy weighs in favor of approving the sale to Buyer. Respecting the results of the Auction in this case is therefore not only in the best interest of the estate, but also in the best interest of creditors in general.

---

[7] It is a common refrain among courts considering whether to reopen an auction or accept a late topping bid that such actions undermine the ability of creditors to collect in future bankruptcy cases. *See, e.g.*, *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 768 (7th Cir. 2004) ("[U]psetting the expectations of those who thought the bidding was at an end . . . may in the long term undermine confidence in judicial sales and discourage prospective purchasers from making their best offers in a timely manner"); *In re Gil-Bern Industries*, 526 F.2d 627, 629) (1st. Cir. 1975) ("It might not only be thought improper for a bankruptcy court to proceed in an irregular fashion merely to gain a few extra dollars in one case, but in the long run such a practice would be penny wise and pound foolish. Creditors in general would suffer if unpredictability discouraged bidders altogether. At the least such practices might encourage low formal bids.") (citations omitted); *J.J. Sugarman Co. v. Davis*, 203 F.2d 931, 932 (10th Cir. 1953) ("It has been said time without number that refusing to confirm a sale to a high bidder merely because an intervening higher bid has been received is the surest way to destroy confidence in judicial sales and defeat the purpose sought to be accomplished thereby to realize the greatest amount from such sales to those entitled to receive the proceeds thereof").

### III.   CONCLUSION

For the foregoing reasons, Mr. Saghian respectfully requests that the Court overrule the Objections and enter an order (i) approving the sale of the Property to Mr. Saghian, free and clear of all liens, and (ii) finding that Mr. Saghian is a good faith purchaser entitled to the protections of 11 U.S.C. §363(m).

Dated: March 16, 2022

Respectfully submitted,

SIDLEY AUSTIN LLP

By: /s/ *Genevieve G. Weiner*
   Samuel A. Newman
   Amy P. Lally
   Genevieve G. Weiner

Attorneys for Richard Saghian, an Interested Party

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Sidley Austin LLP, 555 West Fifth Street, Los Angeles, California 90013

A true and correct copy of the foregoing document entitled (*specify*): **RICHARD SAGHIAN'S OMNIBUS REPLY IN SUPPORT OF DEBTOR'S SALE MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 16, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On March 16, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 16, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/16/22 | Pamela Santos | /s/Pamela Santos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                       F 9013-3.1.PROOF.SERVICE

## SERVICE LIST
### (Via NEF)

- Kyra E Andrassy kandrassy@swelawfirm.com; lgarrett@swelawfirm.com; gcruz@swelawfirm.com; jchung@swelawfirm.com
- Todd M Arnold tma@lnbyg.com
- Jerrold L Bregman jbregman@bg.law, ecf@bg.law
- Marguerite Lee DeVoll mdevoll@watttieder.com, zabrams@watttieder.com
- Danielle R Gabai dgabai@danninggill.com; dgabai@ecf.courtdrive.com
- Thomas M Geher tmg@jmbm.com; bt@jmbm.com; fc3@jmbm.com; tmg@ecf.inforuptcy.com
- David B Golubchik dbg@lnbyg.com; stephanie@lnbyb.com
- James Andrew Hinds jhinds@hindslawgroup.com; mduran@hindslawgroup.com; mduran@hindslawgroup.com
- Robert B Kaplan rbk@jmbm.com
- Jane G Kearl jkearl@watttieder.com
- Jennifer Larkin Kneeland jkneeland@watttieder.com, zabrams@watttieder.com
- Michael S Kogan mkogan@koganlawfirm.com
- Noreen A Madoyan Noreen.Madoyan@usdoj.gov
- Ryan D O'Dea rodea@shulmanbastian.com; lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch sokubisch@swelawfirm.com; gcruz@swelawfirm.com; lgarrett@swelawfirm.com; jchung@swelawfirm.com
- Hamid R Rafatjoo hrafatjoo@raineslaw.com; bclark@raineslaw.com
- Ronald N Richards ron@ronaldrichards.com; 7206828420@filings.docketbird.com
- Victor A Sahn vsahn@sulmeyerlaw.com; pdillamar@sulmeyerlaw.com; pdillamar@ecf.inforuptcy.com; vsahn@ecf.inforuptcy.com; cblair@sulmeyerlaw.com; cblair@ecf.inforuptcy.com
- William Schumacher wschumac@milbank.com, autodocketecf@milbank.com
- David Seror dseror@bg.law, ecf@bg.law
- Zev Shechtman zshechtman@DanningGill.com; danninggill@gmail.com; zshechtman@ecf.inforuptcy.com
- Mark Shinderman mshinderman@milbank.com; dmuhrez@milbank.com; dlbatie@milbank.com
- Lindsey L Smith lls@lnbyb.com; lls@ecf.inforuptcy.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Jessica Wellington jwellington@bg.law; ecf@bg.law

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**