DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
JONATHAN D. GOTTLIEB (State Bar No. 339650)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyg.com; tma@lnbyg.com; jdg@lnbyg.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>               Debtor. | Case No. 2:21-bk-18205-DS<br><br>Chapter 11<br><br>**MOTION FOR AUTHORITY TO DISBURSE FUNDS TO HANKEY CAPITAL, LLC, A SENIOR SECURED CREDITOR; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LAWRENCE R. PERKINS IN SUPPORT THEREOF**<br><br>Date:   TBD[1]<br>Time:   TBD<br>Place:  Courtroom 1639<br>         255 E. Temple Street<br>         Los Angeles, CA 90012<br>         **VIA ZOOMGOV ONLY** |

---

[1] An Application for an Order for hearing on shortened time was filed concurrently herewith.  Notice of the hearing and related dates and deadlines will be provided as directed by the Court.

Crestlloyd LLC, the debtor and debtor in possession in the above captioned chapter 11 bankruptcy case (the "Debtor"), hereby moves, pursuant to this motion (the "Motion"), for the entry of an order authorizing the Debtor to disburse $103,837,545.86 to Hankey Capital, LLC, ("Hankey") for principal, interest, and foreclosure fees owed to Hankey on the Principal Hankey Loan (as defined below).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Debtor was the owner of that certain real property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property").  Hankey asserted various claims secured by a first priority security interest in the Property, including (1) a claim in the principal amount of $12 million for a debtor in possession loan approved by the Court (the "DIP Loan"), (2) a claim in the amount of $848,511 for a loan provided to the receivership estate for the Property prior to the petition date (the "Receiver Loan"), and (3) a claim in the amount of $122,638,623 for various pre-petition loans, including an initial loan in the amount of $82.5 million (the "Principal Hankey Loan").[2]  In connection with the Debtor's motion to sell the Property (the "Sale Motion"), Inferno Investment, Inc. ("Inferno"), a contractually subordinated secured creditor, objected to any payment to Hankey on account of its secured claims.  As a result of the foregoing and other considerations, pursuant to the order granting the Sale Motion (the "Sale Order"), the Debtor paid secured tax claims, the DIP Loan, the Receiver Loan, and commissions and closing costs associated with the sale, and the balance of the proceeds were deposited into a segregated account with all remaining liens, claims,

---

[2] There were also various claims secured by mechanic's liens against the Property.  The Debtor's unopposed motion to pay such claims is pending before the Court and set for hearing on May 26, 2022.

1

and interests attaching to such proceeds with the same validity, extent, and priority that they were entitled to immediately prior to the sale.  Pursuant to contract terms, the Principal Hankey Loan obligation accrues interest at approximately $36,666 **_per day_**.

After the hearing on the Sale Motion, the Debtor and certain secured creditors engaged in informal discussions and discovery.  Recently, Inferno and Yogi Securities Holdings, LLC ("Yogi") advised the Debtor that they consent to the payment of $82.5 million principal only on the Principal Hankey Loan.  Based on the Debtor's review of the documents and discussions with the parties, the Debtor believes that Hankey is entitled to interest and certain fees on the $82.5 million, which includes the following:

| | | |
|---|---|---|
| Principal | - | $82,500,000.00 |
| Interest | - | $21,156,666.66 |
| Foreclosure Fees | - | $    180,879.20 |
| **TOTAL** | | **$103,837,545.86**[3] |

Pursuant to this Motion, the Debtor seeks authority to pay the foregoing to Hankey (the "Proposed Payment").  At this time, the Debtor does not consent to payment of attorneys' fees and alleged protective advances, which must still be reviewed and verified.

## II.

## BACKGROUND FACTS

On October 26, 2021 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

---

[3] *See* accounting attached hereto as **Exhibit "2"**.

2

## A.    SALE OF THE PROPERTY

On March 3, 2022, this Court approved a sale of the Property as evidenced by this Court's Sale Order.  A true and correct copy of the Sale Order is attached hereto as **Exhibit "3"**.  Pursuant to the Sale Order and the sale of the Property, the estate received $137.97 million of which $126 million includes the purchase price and the remaining $11.970 million consists of an Auctioneer Rebate (as defined in the Sale Motion and Sale Order). (Exhibit 3, at ¶ 4).

## B.    ALLEGED CLAIMS SECURED BY THE PROPERTY

### 1.    Inferno Investments Inc.

Pursuant to a Proof of Claim (the "Inferno POC") filed by Inferno, Inferno asserts a claim in the amount of $20,902,106.12, which Inferno asserts is secured by a Deed of Trust (the "Inferno DOT") that was recorded on March 13, 2013. A true and correct copy of the Inferno POC, designated as Claim No. 11, is attached hereto as **Exhibit "4".**

On January 1, 2016, the Debtor and Inferno entered into an agreement (the "Subordination Agreement") whereby the parties agreed that proceeds from the sale of the Property would be distributed in the following manner: "First to repay the loan(s) obtained from a bank or third-party parties (excluding [the Debtor] and Inferno) and all other unpaid costs of construction of the [Property]. Second, to [the Debtor] and Inferno, pro rata, in repayment of any loans owing them, together with simple interest thereon at the rate of eight percent (8%) per annum…." A true and correct copy of the Subordination Agreement is attached hereto as **Exhibit "5"**; *see* ¶ 3.

### 2.    The Mechanic's Lien Creditors.

After the initial financing from Inferno, the Debtor commenced construction of its Property. In that respect, numerous parties provided goods and/or services in order to improve the Property (the "Mechanic's Lien Creditors").

At this time, there is a pending motion to pay the claims of the Mechanic's Lien Creditors in full (the "Motion to Pay Certain Senior Secured Creditors") [Dkt. 308], which is set for hearing on May 26, 2022.  To the Debtor's knowledge, no party has objected to the Motion to Pay Certain Senior Secured Creditors.

### 3.    Hankey Capital, LLC

Pursuant to Claim No. 20 filed by Hankey ("Hankey POC"), Hankey asserts a claim in the amount of $122,638,623.41, which Hankey asserts is secured by two separate Deeds of Trust dated November 6, 2018 (the "Principal Hankey DOT") and December 10, 2019 (the "Modified Hankey DOT"), respectively.  A true and correct copy of the Hanky POC is attached hereto as **Exhibit "1"**.  The Principal Hankey DOT stems from a loan Hankey provided to the Debtor in the initial amount of $82,500,000.00 on or around October 31, 2018 (the "Principal Hankey Loan"). (Exhibit 1, at Ex. A).  The Principal Hankey Loan is evidenced by a promissory note (the "Principal Hankey Note"). (*Id.*).

In consideration for the Principal Hankey Loan, the Principal Hankey Note provided that the Debtor agreed to repay to Hankey the sum of $82,500,000.00 (the "Principal") plus interest accruing at a rate of 4.75% above the "prime rate" as published from time to time by *The Wall Street Journal*, but never at a rate less than 11.0% in total (the "Interest").  The Principal Hankey Note also provided that, in the event of default, both the Principal and Interest would become immediately due and payable and thereafter bear interest, until paid in full, at the increased rate of 5.0% over non-default Interest.

As of the date of this Motion, there remains $105,882,478.91 outstanding on the Principal Hankey Loan including: (1) $82,500,000.00 (the "Outstanding Principal"); (2) $21,156,666.66 attributable to accrued Interest (the "Outstanding Accrued Interest"); (3) $661,712.47 in accrued attorney's fees (the "Outstanding Accrued Attorney's Fees"); (4) $180,897.20 in foreclosure fees

(the "Outstanding Foreclosure Fees"); (5) $837,461.34 in protective insurance advances (the "Outstanding Protective Insurance Advances"); and (6) $545,759.14 in protective property tax advances (the "Outstanding Protective Property Tax Advances" together with the Outstanding Protective Insurance Advances, the "Outstanding Protective Advances").[4] The Proposed Payment includes only the Outstanding Principal, Outstanding Accrued Interest, and Outstanding Foreclosure Fees. The Outstanding Protective Advances and Outstanding Accrued Attorney's Fees are thereby excluded from the Proposed Payment at this time.

### 4.    Yogi Securities Holdings, LLC

Pursuant to a Proof of Claim ("Yogi POC") filed by Yogi, Yogi asserts a claim in the amount of $24,385,366.77, which Yogi asserts is secured by a Deed of Trust (the "Yogi DOT") dated August 30, 2019. A true and correct copy of the Yogi POC, designated as Claim No. 27 (amending Claim No. 15), is attached hereto as **Exhibit "6"**.

### 5.    Hilldun Corporation

Pursuant to a Proof of Claim ("Hilldun POC") filed by Hilldun Corporation ("Hilldun"), Hilldun asserts a claim in the amount of $5,000,000, which Hilldun asserts is secured by a Deed of Trust (the "Hilldun DOT") dated September 4, 2020. A true and correct copy of the Hilldun POC, designated as Claim No. 9, is attached hereto as **Exhibit "7"**.

### C.    CONSENT/INSTRUCTIONS TO SEEK PAYMENT OF OUTSTANDING PRINCIPAL

At the sale hearing, Inferno objected to any payment to Hankey on account of its loans. However, per the Sale Order, the Debtor paid secured tax claims, the DIP Loan, the Receiver Loan, and commissions and closing costs associated with the sale, and the balance of the proceeds were

---

[4] *See* **Exhibit "2"** hereto for accounting.

deposited into a segregated account with all remaining liens, claims, and interests attaching to such proceeds with the same validity, extent, and priority that they were entitled to immediately prior to the sale.  (Exhibit 3, at ¶ 11).  Pursuant to contract terms, the $82.5 million Outstanding Principal obligation accrues interest at approximately $36,666 ***per day***.

Recently, Inferno advised the Debtor that it consents to the payment of the $82.5 million Outstanding Principal at this time.  Yogi confirmed its agreement to the same.  Both of these secured creditors asserted that they object to the payment of Outstanding Accrued Interest or any other amounts at this time.  The Debtor also believes that Hilldun will consent to the request to pay Hankey as requested herein.

Based on the Debtor's review of the loan documents and the facts in this case, the Debtor believes that the payment of Outstanding Principal, Outstanding Accrued Interest, and Outstanding Foreclosure Fees is appropriate and will save the estate the continued accrual of substantial additional interest.  Therefore, the Debtor seeks authority to pay the Proposed Payment of $103,837,545.86 for the foregoing amounts pursuant to this Motion.  The Debtor believes that there is no dispute as to the priority of the Outstanding Principal, and related costs, as being senior to the obligations due and owing to Yogi, Inferno, and Hilldun, and, as noted above, the Mechanic's Lien Creditor's claims are already being addressed pursuant to the pending Motion to Pay Certain Senior Secured Creditors [Dkt. 308].

## III.

## DISCUSSION

Section 363(b)(1) allows a debtor in possession, after a motion and hearing, to use estate property outside of the ordinary course of business. 11 U.S.C. § 363(b).  More notably, the provision codifies the principles of bankruptcy law by granting representatives of the estate flexible and broad authority to maximize the value of the estate. *In re Claar Cellars, LLC*, No. 20-00044-

WLH11, 2020 WL 1238924 at *3 (Bankr. E.D. Wash. 2020). However, 363(b)(1) is not a tool to obviate prohibitions found elsewhere in the Bankruptcy Code. *Id.* at *4; *See also Czyzewski v. Jevic Holding Corporation*, 137 S. Ct. 973, 978 (2017) (denying debtor's structured dismissal where debtor sought to deviate from the basic priority rules that apply under the Bankruptcy Code without the consent of the affected parties). Instead, bankruptcy courts review actions taken pursuant to Section 363(b)(1) under the business judgment standard. *Id.* Under this deferential standard, bankruptcy courts will generally approve actions by the debtor in possession provided that the debtor in possession's decisions to take such action is reasonable as it pertains to the specific needs of the case. *Id.* at *5.

Sections 503, 506, and 507 of the Bankruptcy Code set forth a basic system of priority, which ordinarily determines the order in which assets of the estate will be distributed: secured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secured their claims up to payment in full with interest, fees, and expenses, administrative creditors come next, then priority unsecured creditors, such as those who hold certain claims for taxes or wages, then come general unsecured creditors, and finally equity holders. 11 U.S.C. §§ 503, 506, and 507; *see also Czyzewski*, 137 S. Ct. at 979 (citing 11 U.S.C. §§ 507, 725, 726). However, "Bankruptcy Courts look to state law to determine lien priority" where competing liens on the same property exist. *Quoting In re McIntyre*, No. 02:08-12110-BR, 2010 WL 11530873, at *4 (C.D. Cal. Apr. 27, 2010), *aff'd*, 470 F. App'x 694 (9th Cir. 2012) (citing *In re Van De Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) (bankruptcy court must refer to state law to determine priority of competing liens)).

1   Here, the Mechanic's Lien Creditors, Inferno, Hankey, Yogi, and Hilldun are all alleged

2   secured creditors whose claims are purportedly secured by the Property.[5] Accordingly, the priority

3   of these parties will be determined by California law.

4   **A.    INFERNO SUBORDINATED ITS LIEN TO THAT OF HANKEY.**

5   Under California law, different liens on the same property have priority according to the time

6   of their creation. *Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 122 (9th Cir. 1995).

7   Specifically, this "first in time, first in right" system of lien priorities provides that a conveyance

8   recorded first generally has priority over any later-recorded conveyances, regardless of the time of

9   transfer. *Id.*

10   Despite California's priority scheme, a prior lienholder can, by agreement, subordinate the

11   lien holder's lien to that of others. *Aviel v. Ng*, 161 Cal. App. 4th 809, 816 (1st Dist. 2008); *Collins*

12   *v. Home Savings & Loan Ass'n*, 205 Cal. App. 2d 86 (2d Dist. 1962) (although different liens on

13   the same property have priority according to the time of their creation, a party may agree to waive

14   or subordinate the priority thus accomplished). Often, this takes the form of a "subordination

15   agreement" whereby a senior lien holder agrees to lower its priority in relation to that of another

16   party holding an interest in the same property. *Ng*, 161 Cal. App. 4th at 816. The rights of priority

17   under such an agreement extend to and are limited strictly by the express terms and conditions of

18   the agreement. *Resolution Trust Corp. v. BVS Development, Inc.*, 42 F.3d 1206, 1214 (9th Cir.

19   1994).

---

[5] As discussed above, the priority of the Mechanic's Lien Creditors is not in dispute and there is an unopposed motion to pay such creditors pending with the Court.

Pursuant to the Subordination Agreement, Inferno agreed to subordinate its interest in the Property to that of Hankey's Outstanding Principal and related fees and costs.   As a result, although Inferno's lien is first in time, Hankey is entitled to priority over Inferno based on the contractual agreement of the parties.

## B.    THE HANKEY DOT MAINTAINS PRIORITY OVER THE YOGI DOT TO THE EXTENT OF THE PROPOSED PAYMENT.

The Hankey DOT securing the Hankey POC maintains priority over the Yogi DOT securing Yogi POC to the extent of the Proposed Payment, because the Proposed Payment stems from the Principal Hankey DOT, which, due to the Subordination Agreement with Inferno, was effectively recorded as of March 13, 2013 (the date of the recordation of the Inferno DOT), whereas the Yogi DOT was recorded on August 30, 2019.   As such, partial satisfaction of the Hankey POC in the amount of the Proposed Payment is consistent with both the Bankruptcy Code's priority scheme and California's priority scheme because, due to the Subordination Agreement, the Hankey DOT was recorded prior to the Yogi DOT.

## C.    PAYMENT TO HANKEY ALLOWS THE DEBTOR TO MAXIMIZE THE VALUE OF THE ESTATE FOR THE BENEFIT OF OTHER CREDITORS

By allowing the Debtor to pay Hankey the Proposed Payment, the Debtor will be able to maximize the value of its bankruptcy estate. Specifically, once Hankey is paid the Proposed Payment, interest on the Principal Hankey Loan will cease to accrue and the Debtor will be able to use the money that would have otherwise been paid to Hankey to satisfy the claims of other creditors. As it stands, interest on the Principal Hankey Loan is accruing at a rate of approximately $36,666.67 ***per day***.

/ / /

/ / /

/ / /

# IV.

## **CONCLUSION**

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)     granting the Motion;

(2)     authorizing the Debtor to pay $103,837,563.86 to Hankey; and

(3)     affording such further and other relief as is warranted under the circumstances

Dated:  May 24, 2022                    LEVENE, NEALE, BENDER, YOO
                                        & GOLUBCHIK L.L.P.

                                        By:____/s/ David B. Golubchik_____
                                            DAVID B. GOLUBCHIK
                                            TODD M. ARNOLD
                                            JONATHAN D. GOTTLIEB
                                        Attorneys for Debtor and Debtor in Possession

## <u>DECLARATION OF LAWRENCE R. PERKINS</u>

I LAWRENCE R. PERKINS, hereby declare as follows:

1.     I am over 18 years of age. Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.     I make this declaration in support of the Motion to which this declaration is attached. Unless otherwise stated, capitalized terms herein have the same meanings ascribed to them in the Motion.

3.     I am the Founder and Chief Executive Officer of SierraConstellation Partners LLC ("<u>SCP</u>") and have nearly 20 years of management consulting and advisory experience with companies undergoing transition. I have enhanced business performance for numerous companies on projects ranging from interim management, profit improvement and working capital management to strategic planning and transaction execution.

4.     I have served in a variety of senior level positions including Financial Advisor, Strategic Consultant, Investment Banker, Financial Executive, and Crisis Manager to numerous middle market companies and believe that I am particularly skilled at assisting clients through challenging situations.

5.     Prior to founding SCP, I was a Senior Managing Director and Regional Leader of a national consulting firm where he was responsible for business development, marketing, staffing, and general management of the firm's western region. I joined the firm in 2010 when it acquired El Molino Advisors, a company I founded in January 2007 and led as the CEO.

6.     I began my career in the strategic consulting group of Arthur Andersen after graduating from the University of Southern California Marshall School of Business. I am currently

on the board of several non-profits, and two corporate boards, and am a member of the Young Presidents Organization.

7.      SCP became the Non-Member Manager of the Debtor in October 2021 and is the current Non-Member Manager of the Debtor. I have access to the Debtor's books and records.

8.      On October 26, 2021 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor is operating its estate and managing its financial affairs as a debtor in possession pursuant to Sections 1107 and 1108.

9.      On March 3, 2022, this Court approved a sale of the Property as evidenced by this Court's Sale Order. A true and correct copy of the Sale Order is attached hereto as **Exhibit "3"**. Pursuant to the Sale Order and the sale of the Property, the estate received $137.97 million of which $126 million includes the purchase price and the remaining $11.970 million consists of an Auctioneer Rebate (as defined in the Sale Motion and Sale Order). (Exhibit 3, at ¶4).

10.     Pursuant to a Proof of Claim (the "Inferno POC") filed by Inferno Investment Inc. ("Inferno"), Inferno asserts a claim in the amount of $20,902,106.12, which Inferno asserts is secured by a Deed of Trust (the "Inferno Deed of Trust") that was recorded on March 13, 2013. A true and correct copy of the Inferno POC, designated as Claim No. 11, is attached as **Exhibit "4"**.

11.     Based on my review of the records, I understand that, on or about January 1, 2016, the Debtor and Inferno entered into an agreement (the "Subordination Agreement") whereby the parties agreed that proceeds from the sale of the Property would be distributed in the following manner: "First to repay the loan(s) obtained from a bank or third-party parties (excluding [the Debtor] and Inferno) and all other unpaid costs of construction of the [Property]. Second, to [the Debtor] and Inferno, pro rate, in repayment of any loans owing them, together with the simple

interest thereon at the rate of eight percent (8%) per annum…" A true and correct copy of the Subordination Agreement is attached hereto as **Exhibit "5"**; *see* ¶ 3.

12.     After the initial financing from Inferno, the Debtor commenced construction of its Property.  In that respect, numerous parties provided goods and/or services in order to improve the Property (the "Mechanic's Lien Creditors").

13.     At this time, there is a pending motion to pay the claims of the Mechanic's Liens Creditors in full (the "Motion to Pay Certain Secured Creditors") [Dkt. 308].  I am informed and believe that no party has objected to the Motion to Pay Certain Senior Secured Creditors.

14.     Based on my review of the records, I understand that, pursuant to one of numerous Proofs of Claims (the "Hankey POC") filed by Hankey Capital, LLC ("Hankey"), Hankey asserts a claim in the amount of $122,638,623.41, which Hankey asserts is secured by two separate Deeds of Trust dated November 6, 2018 (the "Principal Hankey DOT") and December 10, 2019 (the "Modified Hankey DOT"), respectively. A true and correct copy of the Hankey POC as designated as Claim No. 20 is attached hereto as **Exhibit "1"**

15.     The Principal Hankey DOT stems from a loan Hankey provided to the Debtor in the amount of $82,500,000.00 on or around October 31, 2018 (the "Principal Hankey Loan"). (Exhibit 1, at Ex. A).  The Principal Hankey Loan is evidenced by a promissory note (the "Principal Hankey Note").  (*Id.*).

16.     In consideration for the Principal Hankey Loan, the Principal Hankey Note provided that the Debtor agreed to repay Hankey $82,500,000.00 (the "Principal") plus interest accruing at a rate of 4.75% above the "prime rate" as published from time to time by *The Wall Street Journal*, but never at a rate less than 11.0% in total (the "Interest").  The Principal Hankey Note also provided that, in the event of default, both the Principal and Interest would become immediately

13

due and payable and thereafter bear interest, until paid in full, at the increased rate of 5.0% over non-default Interest.

17.    Pursuant to a Proof of Claim ("Yogi POC") filed by Yogi, Yogi asserts a claim in the amount of $24,385,366.77, which Yogi asserts is secured by a Deed of Trust (the "Yogi DOT") dated August 30, 2019. A true and correct copy of the Yogi POC, designated as Claim No. 27 (amending Claim No. 15), is attached hereto as **Exhibit "6"**.

18.    Pursuant to a Proof of Claim ("Hilldun POC") filed by Hilldun Corporation ("Hilldun"), Hilldun asserts a claim in the amount of $5,000,,000, which Hilldun asserts is secured by a Deed of Trust (the "Hilldun DOT") dated September 4, 2020. A true and correct copy of the Hilldun POC, designated as Claim No. 9, is attached hereto as **Exhibit "7"**.

19.    At the sale hearing, Inferno objected to any payment to Hankey on account of its loans.  However, per the Sale Order, the Debtor paid secured tax claims, the DIP Loan, the Receiver Loan, and commissions and closing costs associated with the sale, and the balance of the proceeds were deposited into a segregated account with all remaining liens, claims, and interests attaching to such proceeds with the same validity, extent, and priority that they were entitled to immediately prior to the sale.  (Exhibit 3, at ¶ 11).  Pursuant to contract terms, the $82.5 million Outstanding Principal obligation accrues interest at approximately $36,666 ***per day***.

20.    I am informed that Inferno advised the Debtor that it consents to the payment of the $82.5 million Outstanding Principal at this time and that Yogi confirmed its agreement to the same.

21.    In my business judgement, by allowing the Debtor to pay Hankey the Proposed Payment, the Debtor will be able to maximize the value of the estate. Specifically, once Hankey is paid the Proposed Payment, interest on the Principal Hankey Loan will cease to accrue and the Debtor will be able to use the money that would have otherwise been paid to Hankey to satisfy said

14

interest to satisfy other creditors.  As it stands, interest on the Principal Hankey Loan is accruing at a rate of $36,666.67 per *day*.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 23rd day of May 2022, at Los Angeles, California.

LAWRENCE R. PERKINS

# EXHIBIT "1"

**Fill in this information to identify the case:**

Debtor 1    Crestlloyd, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   2:21-bk-18205 DS

---

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | Hankey Capital, LLC |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes.  From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Thomas M. Geher c/o JMBM | |
| | Name | Name |
| | 1900 Avenue of the Stars, 7th Floor | |
| | Number     Street | Number     Street |
| | Los Angeles          CA          90067 | |
| | City          State          ZIP Code | City          State          ZIP Code |
| | Contact phone  (310) 712-6820 | Contact phone _____ |
| | Contact email  tgeher@jmbm.com | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |

| 4. Does this claim amend one already filed? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____  MM  / DD  / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| --- | --- |
| | ☐ Yes.  Who made the earlier filing? _____ |

---

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7. How much is the claim?**   $_____122,638,623.41_____   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned to Crestlloyd, LLC

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**   Deed of Trust; All loan documents were produced to Debtor

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ 325,000,000.00

**Amount of the claim that is secured:**   $ 122,638,623.41

**Amount of the claim that is unsecured:**   $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 122,638,623.41

**Annual Interest Rate** (when case was filed) 16.00 %

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $ _____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/13/2021
                  MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Thomas M. Geher | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorneys for Hankey Capital, LLC | | |
| Company | Jeffer Mangels Butler & Mitchell LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1900 Avenue of the Stars, 7th Floor | | |
| | Number        Street | | |
| | Los Angeles | CA | 90067 |
| | City | State | ZIP Code |
| Contact phone | (310) 712-6820 | Email | tgeher@jmbm.com |

# ATTACHMENT TO PROOF OF CLAIM

On or about October 25, 2018, Hankey Capital, LLC ("Hankey") loaned Crestlloyd, LLC ("Crestlloyd") the principal sum of $82,500,000.00 (the "Hankey Loan") for construction on and the improvement of the real property located at 944 Airole Way, Los Angeles, California (the "Property"). To memorialize the Hankey Loan, on or about October 25, 2018, Hankey and Crestlloyd entered into a written Construction Loan Agreement (the "Construction Loan Agreement"). At the same time, Crestlloyd executed and delivered to Hankey a written Promissory Note (the "October 2018 Note") for the principal sum of $82,500,000.00. Additionally, Hankey and Crestlloyd entered into a written Security Agreement ("Security Agreement"), and Crestlloyd executed and delivered to Hankey a Construction Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents, recorded on November 6, 2018, in the Los Angeles County Recorder's Office as Doc. No. 20181122917 encumbering the Property and securing, among other things, Crestlloyd's obligations under the October 2018 Note (the "Hankey Deed of Trust"). The Hankey Deed of Trust is attached hereto as Exhibit "A."

On or about December 10, 2019, Hankey and Crestlloyd agreed to increase the principal amount of the Hankey Loan to $91,000,000 for, among other things, the purpose of continuing the construction of the Property's improvements and funding an interest reserve. On or about August 20, 2020, Hankey and Crestlloyd again increased the principal amount of the Hankey Loan to $106,000,000 for, among other things, the construction of the Property's improvements and funding an interest reserve. To memorialize such loan increases, Amended and Restated Promissory Notes, along with a modification of the construction loan agreement, were executed. Additionally, a Modification of Deed of Trust, modifying the Hankey Deed of Trust, was executed, delivered and recorded in the Los Angeles County Recorder's Office as Doc. No. 20201030024 against and with respect to the Property. As a result of the foregoing modifications, the maturity date of the Hankey Loan, as modified, was extended to October 31, 2020 ("Maturity Date"). The Modification of Deed of Trust is attached hereto as Exhibit "B."

On March 5, 2021, as a result of Crestlloyd's defaults under the Hankey Loan documents, including the failure to pay, in full, the Hankey Loan, as modified, on the Maturity Date, Hankey recorded, in the Los Angeles County Recorder's Office as Doc. No. 20210367447, a Notice of Default and Election to Sell Under Deed of Trust commencing a non-judicial foreclosure proceeding with respect to the Property. On June 14, 2021, Hankey recorded, in the Los Angeles County Recorder's Office as Doc. No. 20210934061, a Notice of Trustee's Sale scheduling a non-judicial foreclosure auction sale of the Property for July 12, 2021, which was subsequently postponed to October 27, 2021.

On or about June 24, 2021, and as a result of certain defaults under the Hankey Loan documents, including Crestlloyd's failure to pay, in full, the Hankey Loan, as modified, at the Maturity Date, Hankey commenced a civil action against Crestlloyd in the Superior Court of California for the County of Los Angeles (the "Superior Court"), designated as Case No. 21SMCV01113 (the "Hankey Action"). On or about July 2, 2021, the Superior Court, in the Hankey Action, entered an Order appointing Theodore Lanes (the "Receiver") as Receiver for and over the Property. The Receiver's appointment as receiver for the Property was further confirmed by an Order of the Superior Court entered on or about July 23, 2021.

4

On October 26, 2021 (the "Petition Date"), Crestlloyd filed its Voluntary Petition commencing its chapter 11 case. After the Petition Date, Crestlloyd's chapter 11 counsel requested a copy of all of the loan documents and agreements with respect to the Hankey Loan, as modified. On November 10, 2021, Hankey delivered to Crestlloyd's chapter 11 counsel all of the numerous and voluminous Hankey Loan documents. Due to the voluminous nature of the Hankey Loan documents, they are all not attached hereto but are available upon request by those entitled thereto.

As a result of the Hankey Loan, as modified, Crestlloyd owes Hankey, with respect to only the Hankey Loan, as modified, the following sums, as of the Petition Date:

Outstanding Principal Amount:   **$105,402,020.45**

Accrued Nondefault Interest (11%) through October 26, 2021:   **$10,719,696.45**

Accrued Default Interest (16%) through October 26, 2021:  **$5,992,640.69**

Attorney's fees and costs as of October 26, 2021:   **$524,265.82** ($356,663.82 in attorney's fees and $167,602.00 in costs)

Daily default interest (16%) amount: **$46,845.34**

**TOTAL AS OF OCTOBER 26, 2021:**   **$122,638,623.41** plus all interest, including default interest, attorney's fees, costs, expenses and all other sums accruing/incurred pursuant to the Hankey Loan documents, as modified, after the Petition Date.

The claim set forth herein includes only prepetition claims with respect to the Hankey Loan, as modified, presently known to Hankey against Crestlloyd. In addition to such claim, Hankey may have, and may file, other additional and substantial pre-petition claims and postpetition claims against Crestlloyd, which claims are not included herein but which claims are otherwise specifically reserved by Hankey.

Hankey reserves the right to amend this claim as necessary or appropriate to amend, revise, increase or correct the amount and/or details of the claim(s) set forth herein and/or to include any and all other claims that Hankey may now have or may have in the future against Crestlloyd. Nothing contained herein shall be deemed a waiver of any rights that Hankey has or may have, including, but not limited to, rights to claim and recover interest, attorney's fees, costs and other sums arising or accruing after the Petition Date.

Hankey also expressly reserves all other rights, including, without limitation (i) the right of recoupment, (ii) any other defenses to any cause of action, and (iii) to the extent that this claim is used defensively as a right of setoff, Hankey asserts that such claim(s) are secured claims.

The filing of this claim is not and shall not be deemed or construed as: (a) a waiver or release of Hankey's rights against any person, entity or property; (b) a waiver of the right to withdraw this claim and to have the withdrawal treated as if no claim was filed; (c) an admission of any kind; (d) an election of remedies; or (e) submission to the jurisdiction of this Court.

# EXHIBIT A

 

**This page is part of your document - DO NOT DISCARD**



## 20181122917

**Pages:**
**0020**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/06/18 AT 08:00AM**

| | |
|---|---:|
| FEES: | 121.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 346.00 |

 

**L E A D S H E E T**



201811060250001

00015919183

009447827

**SEQ:**
**17**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

Exhibit A - 7

2

11/06/2018

*20181122917*

**RECORDING REQUESTED BY**

**AND WHEN RECORDED MAIL TO:**

HANKEY CAPITAL, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attention: Eugene Leydiker

## CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS
### [944 Airole Way]

    This CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS (hereinafter the "Deed of Trust") made this 25th day of October, 2018, by CRESTLLOYD, LLC, a California limited liability company (hereinafter referred to as "Trustor"), whose address is c/o Skyline Development, 8981 W. Sunset Blvd., Suite 303, West Hollywood, California 90069 to CHICAGO TITLE COMPANY, hereinafter called "Trustee", for the benefit of HANKEY CAPITAL, LLC, a California limited liability company, hereinafter called "Beneficiary", whose address is 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010.

    This Deed of Trust is given for purpose of securing the following:

    (1)    Performance of all obligations of Trustor under any agreements of Trustor incorporated by reference or contained herein.

    (2)    Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.

    (3)    Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.

1

94109

Exhibit A - 8 17 E

(4)     Payment of all sums advanced or paid out by the Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

This Deed of Trust, and any other instruments given to evidence or further secure the payment and performance of any obligation secured hereby may hereinafter be referred to as the "Trust Documents". The payment obligations of Trustor described in Paragraphs 2, 3, and 4 above are hereinafter referred to as the "Indebtedness".

Trustor, in consideration of the premises and the aforesaid Indebtedness, and in order to secure its obligations under the Note, according to their terms, has granted, bargained, sold, conveyed, confirmed, transferred and assigned and by these presents does grant, bargain, sell, convey, confirm, transfer and assign unto Trustee, his successors and assigns, with power of sale and right of entry and possession, Trustor's interest in and to that certain property described as follows:

(A)     The land described in Exhibit A attached hereto, made a part hereof.

(B)     All buildings and improvements now or hereafter located on said land.

(C)     All easements, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits of the aforesaid property and all the estate, title and interest, homestead or other claim or demand, as well in law as in equity, which Trustor now has or hereafter may acquire, of, in or to said property, or any part thereof, with the appurtenances thereto.

(D)     All of Trustor's right, title and interest in, to or under the property described in Exhibit B attached hereto, made a part hereof and comprising one page.

Trustor's interest in and to the land, buildings, improvements and the rights and property described in paragraphs (A) through (D) above are hereinafter referred to collectively as the "Property".

TO HAVE AND TO HOLD the same unto Trustee, Trustee's successors and assigns, Trustor hereby covenants and agrees as follows:

## ARTICLE I
## COVENANTS AND AGREEMENTS OF TRUSTOR

Trustor hereby covenants and agrees:

1.00     Payment of Indebtedness.  Trustor will pay the Indebtedness hereby secured promptly when and as said Indebtedness becomes due and payable.

1.01     Liens.  Trustor, absent the written consent of Beneficiary, will not suffer any lien to

2

4

be created hereafter upon the Property, or any part thereof, prior to the lien of this Deed of Trust, and will not do or suffer any act or omission whereby the value of the Property, or lien hereof or of any estate or title covered hereby, may be diminished or impaired in any way.

1.02 <u>Maintenance, Repair and Alterations.</u> Trustor will keep any buildings and improvements constructed on the Property in good condition and repair, will not remove or demolish any buildings or improvements thereon, and commit or permit no waste thereon. Should said building or buildings, or any part thereof, require inspection, repair or protection other than that given it by Trustor, then, and in that event, Beneficiary may enter or cause entry to be made upon the Property and into said building or buildings for inspection, repair or protection thereof and such repair may be made by Beneficiary and be made or done in such manner as fully to protect the interest of Beneficiary in the opinion of Beneficiary, and any and all sums expended by Beneficiary in doing or causing to be done any of the things above authorized are secured by this Deed of Trust and shall be paid by Trustor on demand. Trustor shall comply with all laws, ordinances, governmental regulations, covenants, conditions and restrictions affecting the Property or requiring any alteration or improvement thereof, and permit no violation, as to the Property, of any such law, ordinance, governmental regulation, covenant, condition or restriction affecting the Property.

1.03 <u>Title to Property.</u> Trustor covenants that Trustor is lawfully seized of each and every part and parcel of the Property as described in the granting clauses hereof and has good and indefeasible title to the same; that there are no liens or encumbrances on said property except for such liens and encumbrances that are approved by Beneficiary; and Trustor forever will warrant and defend the title in the same to the Trustee against the claims and demands of all persons. If during the existence of this Deed of Trust there be commenced or pending any suit or action affecting said property, or any part thereof, or the title thereto, or if any adverse claim for or against said property, or any part thereof, be made or asserted, Trustee or Beneficiary may appear in said suit or action and retain counsel therein and defend the same or otherwise take such action therein as Trustee or Beneficiary may deem advisable, and may settle or compromise the same or the said adverse claim, and in that behalf and for any of the said purposes, may pay and expend such sums of money as Trustee or Beneficiary may deem to be necessary.

1.04 <u>Taxes and Assessments.</u> Trustor shall pay, satisfy and discharge at maturity all taxes and assessments and all other charges and encumbrances which now are or hereafter shall be or appear to be a lien upon the Property, or any part thereof, or upon the debt secured hereby; and in default thereof, Beneficiary, without demand or notice, may pay, satisfy or discharge said taxes, assessments, charges or encumbrances, and pay and expend such sums of money as Beneficiary may deem to be necessary therefor, and shall be the sole judge of the legality or the validity of such taxes, assessments, charges or encumbrances, and the amount necessary to be paid in the satisfaction or discharge thereof.

1.05 <u>Evidence of Payment of Taxes and Assessments.</u> Trustor further agrees to deposit with Beneficiary within thirty (30) days of Beneficiary's request, all receipts or other satisfactory evidence of the payment of taxes, assessments, charges, claims and liens of every nature (hereinafter collectively referred to as "taxes" or "tax") affecting or which may affect the Property or any part thereof. Upon the request of Beneficiary, following Trustor's failure to

3

Exhibit A - 10

provide such evidence of payment, Trustor thereafter shall deposit with and pay to Beneficiary, on the first day of each calendar month, a sum equivalent to one-twelfth (1/12) of the estimated annual taxes assessed or levied against the Property and all annual premiums for insurance required by this Deed of Trust to be furnished by Trustor, and upon the date when any such tax or insurance premiums shall become due shall pay to Beneficiary an amount which, taken together with tax and insurance deposits theretofore made and not expended for taxes and insurance, shall be sufficient to pay and discharge such tax and insurance premiums. Beneficiary shall not be liable for interest on any such tax and insurance deposits and may mingle the same with its general funds, and such deposits shall create a debtor-creditor relationship and not that of a trust. Trustor shall procure and deliver to Beneficiary, in advance, statements for such charges. Payments from said account for such purposes may be made by Beneficiary at Beneficiary's discretion, even though subsequent owners of the property described herein may benefit thereby. In the event of any default under the terms of this Deed of Trust, any part or all of the balance of said account may be applied to any part of the indebtedness hereby secured, and, in refunding any part of said account, Beneficiary may deal with whomever is represented to be the owner of said property at that time. The enforceability of the covenants relating to taxes and insurance premiums provided for herein shall not be affected, except to the extent that said obligations have been actually met by compliance with this paragraph.

    1.06   <u>Insurance.</u>  Trustor at all times shall keep the buildings and improvements which are now or hereafter erected upon said property insured against loss or damage by vandalism, malicious mischief and fire with extended coverage (and by other hazards as reasonably may be required by Beneficiary) and shall procure and maintain in force such other insurance as may be required by Beneficiary, all in amounts approved by Beneficiary and by an insurance company or companies or governmental agency or instrumentality approved by Beneficiary, and the policies for such insurance shall be made payable, in case of loss, to Beneficiary pursuant to standard mortgagee's loss payable endorsement, and shall be delivered to and held by Beneficiary as further security for payment under the Note and other moneys herein mentioned, said policies shall provide for fifteen days' notice to Beneficiary prior to cancellation or nonrenewal for any reason, including nonpayment of premium; and in default thereof, Beneficiary may procure such insurance to be effected upon Beneficiary's interest as Beneficiary or upon the interest of Trustee or upon the interest of the owners of the Property and in their names; loss, if any, being made payable to Beneficiary, and Beneficiary may pay and expend for premiums for such insurance such moneys as Beneficiary may deem to be necessary. The form of said policies shall be approved by Beneficiary. If Trustor is a co-insurer under any policies of fire and extended coverage insurance, then Trustor covenants and agrees that, upon request of Beneficiary at any time, it will furnish the Beneficiary satisfactory evidence of insurable value of the improvements situated on said Property. In addition, Trustor shall procure and maintain liability insurance insuring Trustor and, if requested, Beneficiary against liability because of personal injury or property damage in amounts and by companies approved by Beneficiary.

    1.07   <u>Insurance and Condemnation Proceeds.</u>  Should a loss occur under any policy of insurance required by Paragraph 1.06 hereof, or should all or any portion of the Property be taken or damaged by reason of any public improvement or condemnation proceeding, Beneficiary shall be entitled to all insurance proceeds, compensation, awards, and other payments or relief therefor (all hereinafter referred to as "proceeds"), and, whether or not the

4

Exhibit A - 11

security for the Note secured by this Deed of Trust has been impaired, Beneficiary shall be entitled to apply the proceeds collected, after first deducting therefrom all its expenses, including attorneys' fees, in collecting said proceeds, to any and all indebtedness secured hereby and thereafter shall pay the balance remaining, if any, to Trustor. At its option, in its own name, Beneficiary shall be entitled to commence, appear in and prosecute any action or proceedings or to make any compromise or settlement, in connection with such loss, taking or damage. All such proceeds and rights of action hereby are assigned to Beneficiary. Notwithstanding the foregoing, absent an "Event of Default" as set for in Paragraph 4.00 below, in the event of such insurance loss or that only a portion of the Property is taken or damaged by reason of any public improvement or condemnation proceeding, and restoration is necessary, Beneficiary, after deducting from said proceeds received all its expenses, including attorneys' fees, may release to Trustor as restoration progresses, so much of said amount as equals the costs of restoration effected by Trustor, subject to reasonable conditions, including the right of Beneficiary to withhold up to ten percent (10%) of said amount until completion and the expiration of the period within which mechanics' or materialmen's liens may be filed and until receipt of satisfactory evidence that no liens exist. Any amount required to complete such restoration in excess of such proceeds shall be paid to Trustor before such proceeds are used. Trustor agrees to execute such further assignments of any such proceeds and rights of action as Beneficiary or Trustee may require.

1.08   Performance of Other Obligations. Trustor promises and agrees to perform all of the obligations in and under the Note, and any other documents given now or hereafter as security for the Indebtedness secured by this Deed of Trust.

1.09   Restrictions on Transfer or Further Encumbrance. Absent the prior written consent of Beneficiary, Trustor shall not (a) execute or deliver any pledge, security agreement, mortgage, deed of trust or other instrument of hypothecation, covering all or any portion of the Property or any interest therein; (b) sell, convey, alienate, transfer or otherwise dispose of all or any portion of the Property or any interest therein, whether voluntarily or involuntarily, by operation of law or otherwise; (c) in the event Trustor is a corporation or trust or similar entity, sell, convey, transfer or encumber, whether voluntarily, involuntarily or otherwise, more than ten percent (10%) of the issued and outstanding capital stock of Trustor or of the beneficial interest of such trust or similar entity; or (d) in the event Trustor is a limited or general partnership, or a joint venture, change any constituent general partner or any joint venturer whether voluntarily, involuntarily or otherwise, or sell, convey, transfer, change or encumber any such general partner or joint venturer interests.

1.10   Environmental Compliance. Trustor shall keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of any federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions on, under or about the Property including, but not limited to, soil and ground water conditions. Trustor shall not use, generate, manufacture, store or dispose of on, under or about the Property or transport to or from the Property any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under any applicable federal or

5

Exhibit A - 12

state laws or regulations (collectively referred to hereinafter as "Hazardous Materials"), except only those materials and substances which are usually and customarily used in the operation of a residential construction project so long as the amount of such materials and substances which are used or stored upon the Property shall not exceed the amount reasonably required for the operation of such business in its normal and ordinary course.

Trustor shall immediately advise Beneficiary in writing of (i) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials affecting the Property ("Hazardous Materials Laws"); (ii) all claims made or threatened by any third party against Trustor or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (i) and (ii) above are hereinafter referred to as "Hazardous Materials Claims"); and (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

Beneficiary shall have the right to join and participate in, as a party, if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims and to have its reasonable attorneys' fees in connection therewith paid by Trustor. Trustor shall be solely responsible for, and shall indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any loss, damage, cost, expense or liability directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or presence of Hazardous Materials on, under or about the Property, including, without limitation: (a) all foreseeable consequential damages; (b) the costs of any required or necessary repair, cleanup or detoxification of the Property, and the preparation and implementation of any closure, remedial or other required plans; and (c) all reasonable costs and expenses incurred by Beneficiary in connection with clauses (a) and (b) including, but not limited to, reasonable attorneys' fees.

Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Materials on, under, or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any Hazardous Material Claims, which remedial action, settlement, consent or compromise might, in Beneficiary's reasonable judgment, impair the value of the Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Materials on, under, or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action, provided that in such event Trustor shall notify Beneficiary as soon as practicable of any action so taken. Beneficiary agrees not to withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the

6

reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

1.11     Indemnification.     Trustor hereby agrees to indemnify Beneficiary and hold Beneficiary harmless from and against any and all claims, losses, damages, liabilities, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including, but not limited to, reasonable attorneys' fees and expenses) arising directly or indirectly, in whole or in part, out of (i) the presence on or under the Property of any Hazardous Materials (as defined in Paragraph 1.10), or any releases or discharges of any Hazardous Materials on, under or from the Property, or (ii) any activity carried on or undertaken on or off the Property, whether prior to or during the period during which any indebtedness under the Note is outstanding and whether by Trustor or any predecessor in title or any employees, agents, contractors or subcontractors of Trustor or any predecessor in title, or any third persons at any time occupying or present on the Property, in connection with the handling, treatment, removal, storage, decontamination, clean-up, transport or disposal of any Hazardous Materials (as defined in Paragraph 1.10) at any time located or present on or under the Property. The foregoing indemnity shall further apply to any residual contamination on or under the Property, or affecting any natural resources, and to any contamination of any property or natural resources arising in connection with the generation, use, handling, storage, transport or disposal of any such Hazardous Materials, and irrespective of whether any of such activities were or will be undertaken in accordance with applicable laws, regulations, codes and ordinances.

1.12     Environmental Provisions.     Trustor hereby acknowledges and agrees that the provisions of Paragraphs 1.10 and 1.11 hereof are intended to be "environmental provisions" (as defined in Section 736 of the California Code of Civil Procedure), and that Beneficiary is intended to have all of the rights of a secured lender under Section 736 of the California Code of Civil Procedure in respect of such "environmental provisions." Trustor further acknowledges and agrees that the rights afforded to Beneficiary under Section 736 of the California Code of Civil Procedure are in addition to all rights, powers and remedies otherwise available to Beneficiary under any of the Trust Documents or at law or in equity.

1.13     Financial Statements.     Trustor shall deliver to Beneficiary a copy of Trustor's federal and state tax returns, prepared by a certified public accountant, concurrently with Trustor's filing of said returns.

1.14     Covenant to Assign Future Leases.     Until all of the Indebtedness secured by the Deed of Trust shall have been paid in full, Trustor covenants and agrees that it will immediately transfer and assign to Beneficiary any and all other and future leases on all or any portion of the Property. Assignor further covenants and agrees to make, execute and deliver to Assignee on demand, and at any time or times, any and all written assignments and other instruments sufficient for this purpose or that Beneficiary may deem advisable for carrying out the true intent of this covenant.

**ARTICLE II**
**ASSIGNMENT OF RENTS, ISSUES AND PROFITS**

7

Exhibit A - 14

**2.00**    <u>Assignments of Rents.</u>  Trustor hereby assigns to Beneficiary the rents, issues, profits, royalties, and payment payable under any lease of the Property, or portion thereof including any oil, gas or mineral lease, or any installments of money payable pursuant to any agreement or any sale of said property or any part thereof, reserving unto Trustor the rights prior to default by Trustor in payment of the Indebtedness secured hereby or in the performance of any agreement hereunder, to collect and retain such rents, issues, profits, royalties, payments and installments of money as they may become due and payable. Upon any such default, Beneficiary, without regard to the adequacy of any security for the Indebtedness hereby secured, shall be entitled to (1) collect such rents, issues, profits, royalties, payments and installments of money and apply the same as more particularly set forth in this Paragraph, all without taking possession of the Property, or (2) enter and take possession of the Property or any part thereof, in person, by agent, or by a receiver to be appointed by the court and to sue for or otherwise collect such rents, issues, profits, royalties, payments and installments of money. Beneficiary may apply any such rents, issues, profits, royalties, payments and installments of money so collected, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, in such order as Beneficiary may determine, and, if such costs and expenses and attorneys' fees shall exceed the amount collected, the excess shall be immediately due and payable. The collection of such rents, issues, profits, royalties, payments and installments of money and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any  act done pursuant to such notice, except to the extent any such default fully is cured. Failure or discontinuance of Beneficiary at any time, or from time to time, to collect any such moneys shall not impair in any manner the subsequent enforcement by Beneficiary of the right, power and authority herein conferred on Beneficiary. Nothing contained herein, including the exercise of any right, power or authority herein granted to Beneficiary, shall be, or be construed to be, an affirmation by Beneficiary of any tenancy, lease or option, or an assumption of liability under, or the subordination of the lien or charge of this Deed of Trust to any such tenancy, lease or option. Trustor hereby agrees that, in the event Beneficiary exercises its rights as in this Paragraph provided, Trustor waives any right to compensation for the use of Trustor's furniture, furnishings or equipment in the Property for the period such assignment of rents or receivership is in effect, it being understood that the rents, issues, profits, royalties, payments and installments of money derived from the use of any such items shall be applied to Trustor's obligation hereunder as above provided. In the event that Trustor concurrently herewith or hereafter executes any separate assignment of rents or of leases to Beneficiary, then to the extent of any inconsistency between the provisions hereof and any such assignment, the provisions of such assignment shall control.

**2.01**    <u>Performance of Leases.</u>  Trustor promises and agrees to keep, perform and observe all of the lessor's covenants, agreements and obligations, under the terms of all leases now or hereafter executed relating to all or any portion of the Property, to require that lessees under said leases keep, perform, and observe all of the covenants, agreements and obligations thereunder on their part to be kept, performed and observed; not to alter, amend or modify such leases or any of them without the prior written consent of Beneficiary.

**ARTICLE III**
**SECURITY AGREEMENT AND FIXTURE FILING**

8

**10**

3.00 <u>Creation of Security Interest.</u> This Deed of Trust is deemed a Security Agreement as defined in the California Commercial Code, the Trustor being the Debtor and the Beneficiary being the Secured Party, and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be as prescribed (i) herein, or (ii) by general law, or (iii) as to such part of the security which is also reflected in the financing statement which will be filed to perfect the security interest created herein, by the specific statutory consequences now, or hereafter enacted and specified in the California Commercial Code, all at Beneficiary's sole election. Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and the hereby-stated intention of the parties hereto that everything used in connection with the operation or occupancy of the Property is and, at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property, irrespective of whether (1) any such item is physically attached to the buildings and improvements, (2) serial numbers are used for the better identification of certain equipment items capable of being filed by the Beneficiary, or (3) any such item is referred to or reflected in any such financing statement so filed at any time. Such mention in the financing statement is declared to be for the protection of the Beneficiary in the event any court or judge shall at any time hold that notice of Beneficiary's priority of interest must be filed in the California Commercial Code records to be effective against a particular class of persons, including, but not limited to, the federal government and any subdivision or entity of the federal government. Trustor covenants and agrees to reimburse Beneficiary for any costs incurred in filing such financing statement and any continuation statements.

3.01 <u>Fixture Filing.</u> Portions of the Property are goods which are or are to become fixtures relating to the land, buildings and improvements, and Trustor covenants and agrees that the recording of this Deed of Trust in the real estate records of the County where the land is located shall also operate from the time of recording as a Fixture Filing in accordance with Section 9313 of the California Uniform Commercial Code.

**ARTICLE IV**
**DEFAULTS AND REMEDIES**

4.00 <u>Events of Default.</u> Any of the following events shall be deemed an Event of Default hereunder, upon the expiration of any applicable grace period:

(a) Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, whether at maturity or by acceleration or as part of any prepayment or otherwise; or

(b) If the Trustor shall become insolvent or admit in writing its inability to pay its debts as they mature; or make any assignment for the benefit of creditors; or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business; or

(c) If any order, judgment or decree shall be entered against Trustor decreeing its dissolution or diversion; or

9

(d)     If bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for relief under any bankruptcy law or any law for the relief of debtors shall be instituted against Trustor; or

(e)     A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein; or

(f)     There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in the Note or the Note, or any loan application or other agreement related thereto or any other now or hereafter existing agreement between Trustor or any affiliate of Trustor and Beneficiary.

4.01    Acceleration upon Default, Additional Remedies. In the event of any such Event of Default, Beneficiary may declare, by notice given to Trustor, all Indebtedness secured hereby to be due and payable without any further presentment, demand, protest or notice of any kind. Thereafter Beneficiary may:

(a)     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of any security for the Indebtedness and obligations hereby secured, enter upon and take possession of the Property hereby granted, or any part thereof, in its own name or in the name of the Trustee, and do any acts which it deems necessary or desirable to preserve the rentability or increase the income of such property or protect the security hereof and with or without taking possession of the Property sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the rents, issues and profits collected, less costs and expenses of operation and collection including reasonable attorneys' fees and accountants' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice; and notwithstanding Beneficiary's or Trustee's continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in this instrument or by law upon the occurrence of any default including the right to exercise the power of sale;

(b)     Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof;

(c)     Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

10

Non-Order Search
Doc: CALOSA:2018 01122917

**12**

4.02   <u>Foreclosure by Power of Sale.</u> Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note, the Note and such receipts with evidence of expenditures made and secured hereby as Trustee may require. Trustee shall then have the following duties and powers:

(a)   Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Election to Sell as then required by law and by this Deed of Trust and after lapse of such time as may then be required by law and after recordation of such notice of default, Trustee, without demand on Trustor, shall, after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels or items and in such order as Trustee may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary, may purchase at such sale.

(b)   After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums due under the Note, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(c)   Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place first fixed for sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give new notice of sale.

4.03   <u>Appointment of Receiver.</u> If any Event of Default described in Paragraph 4.00 of this Deed of Trust shall have occurred and be continuing, Beneficiary, as a matter of right but with notice as provided herein to Trustor, but without notice to anyone claiming under Trustor and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property.   Any such receiver or receivers shall have all the usual powers and duties of Beneficiary in case of entry as provided in Paragraph 4.01(a) and shall continue as such and exercise such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

4.04   <u>Remedies Not Exclusive.</u> No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, in the Trust Documents, or by law provided or permitted, but each shall be distinct and cumulative and shall be in addition to every other remedy given hereunder, under the Trust Documents, or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this Deed of Trust or by the Trust Documents to Trustee or Beneficiary or to which either of them may be otherwise entitled,

11

may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

4.05    Partial or Late Payment.    The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums secured hereby or to declare a default as herein provided and in either event to assess a late charge or penalty. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon the condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this Deed of Trust or the other Trust Documents confirmed upon them or either of them upon the occurrence of a default.

4.06    Failure or Indulgence Not Waiver.    No failure or delay on the part of Beneficiary in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.

## ARTICLE V
## MISCELLANEOUS

5.00    Governing Law.    This Deed of Trust shall be governed by the laws of the State of California. In the event that any provision or clause of this Deed of Trust conflicts with applicable laws, such conflicts shall not affect other provisions of this Deed of Trust which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust are declared to be severable. This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.01    Statements by Trustor.    Trustor, upon fifteen (15) days' written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust and stating either that there are no known offsets or defenses existing against the debt, or if such known offsets or defenses are alleged to exist, the nature thereof.

5.02    Repayment.    In the event that Trustor fully satisfies its obligations under the Note, in lawful money of the United States of America, and pays all moneys herein agreed to be paid by Trustor, and the interest thereon, and also the reasonable expenses of this trust, as herein specified, then Trustee at the request and expense of Trustor, shall reconvey to Trustor, Trustor's successors or assigns, all the estate in the Property granted to Trustee by this instrument.

5.03    Change in Taxation Method.    In the event of the passage after the date of this Deed of Trust of any law of the State of California, deducting from the value of land, for the purpose

12

14

of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust for state or local purposes or the manner of the collection of such taxes so as to cause the assessment of a tax on Beneficiary or a lien or charge on this Deed of Trust, the entire amount due under said Note, at the option of said Beneficiary, without demand or notice, forthwith shall become due and payable; provided, however, that such option shall be ineffective if Trustor is permitted by law to pay the whole of such tax, in addition to all other payments required hereunder and, if prior to such specified date, Trustor does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall constitute a modification of this Deed of Trust.

5.04    Substitution of Trustee. Beneficiary, from time to time, may substitute another Trustee in place of the Trustee named herein, to execute the trusts hereby created; and upon such appointment, and without conveyance to the successor trustee, the successor trustee shall be vested with all the title, interest, powers, duties and trusts in the Property hereby vested in or conferred upon Trustee herein named. Each such appointment and substitution shall be made by written instrument executed by the Beneficiary containing reference to this Deed of Trust sufficient to identify it, which, when recorded in the office of the County Recorder of the county or counties in which the Property is situated, shall be conclusive proof of proper appointment of the successor trustee. The recital or statements in any instrument executed by Trustee, in pursuance of any of said trusts of the due authorization of any agent of the Trustee executing the same, shall for all purposes be conclusive proof of such authorization.

5.05    Legal Proceedings by Trustee. Trustee at any time, at Trustee's option, may commence and maintain suit in any court of competent jurisdiction and obtain the aid and direction of said court in the execution by it of the trusts or any of them, herein expressed or contained, and, in such suit, may obtain the orders or decrees, interlocutory or final of said court directing the execution of said trusts, and confirming and approving Trustee's acts, or any of them, or any sales or conveyance made by Trustee, and adjudging the validity thereof, and directing that the purchasers of the Property sold and conveyed be let into immediate possession thereof, and providing for orders of court or other process requiring the Sheriffs of the counties in which the Property is situated to place and maintain said purchasers in quiet and peaceable possession of the Property so purchased by them, and the whole thereof.

5.06    Reconveyance by Trustee. Trustee, at any time, upon request of Beneficiary, may reconvey to Trustor or Trustor's successors or assigns, any portion of the Property without affecting the personal liability of any person for the payment of any of the Indebtedness, or the lien of this Deed of Trust upon the remainder of the Property not reconveyed.

5.07    No Estoppel. Any failure of Trustee or Beneficiary to exercise any right or option by this Deed of Trust given or preserved to Trustee or Beneficiary shall not stop Trustee or Beneficiary from exercising any such right or option upon any subsequent default of Trustor.

5.08    Further Assurances. Trustor, forthwith upon request, at any and all times hereafter, at the expense of Trustor, will cause to be made, executed, acknowledged and delivered to Trustee, any and every deed or assurance in law which Trustee or counsel of Trustee shall advise

13

Exhibit A - 20

or require for the more sure, effectual and satisfactory granting and confirming of the Property unto Trustee.

5.9    Non-Liability of Trustee.  Trustee shall not be liable or responsible with respect to its acts or omissions hereunder, except for Trustee's own gross negligence or willful default, or be liable or responsible for any acts or omissions of any agent, attorneys or employee by it employed hereunder, if selected with reasonable care.

5.10    Release and Exchange of Security.  In the event that any change or changes occur in the title to all or any part of the Property, Beneficiary, from time to time, without notice to or consent of Trustor and without prejudice to any rights which Beneficiary may have against Trustor, may (a) take, exchange, or release any security for any of the obligations now or hereafter secured hereby; or (b) extend the time for payment of the said obligations.

5.11    Successors and Assigns.   This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their successors and assigns.

5.12    Construction.  This Deed of Trust shall be construed so that, wherever applicable and with reference to any of the parties hereto, the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, the use of one gender shall include the neuter, masculine and feminine gender.

5.13    Notices.  Trustor requests that a copy of any notice of default and of any notice of sale hereunder shall be mailed to Trustor at the address set forth above which is Trustor's address.

14

Non-Order Search
Doc: CALOSA:2018 01122917

Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

Exhibit A - 21

16

IN WITNESS WHEREOF, Trustor has executed this instrument the day and year first above written.

CRESTLLOYD, LLC
a California limited liability company

By: _____
    Nile Niami, Manager

15

Non-Order Search
Doc: CALOSA:2018 01122917

Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

Exhibit A - 22

17

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _OCTOBER 30, 2018_ before me, _Nigel Gibbs_ a Notary Public, personally appeared _Nile Niami_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

16

Exhibit A - 23

18

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07' 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

17

Exhibit A - 24

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

Initials

18

## EXHIBIT B

    (1)    All machinery, equipment, materials (including building materials), appliances, and fixtures now or hereafter installed or placed on or in said land or buildings and improvements for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration or for ventilating or air conditioning purposes or for sanitary or drainage purposes or for the exclusion of vermin or insects or the removal of dust, refuse or garbage, and all elevators, awnings, window shades, drapery rods and brackets, screens, floor coverings, incinerators, carpeting and all furniture, fixtures, and other property used in the operation or occupancy of said land or buildings and improvements, together with all additions to, substitutions for, changes in or replacements of the whole or any part of any or all of said articles of property, and together with all property of the same character that Trustor may hereafter acquire at any time until the termination of this Deed of Trust and all proceeds received upon the sale, exchange, collection or other disposition of the foregoing.

    (2)    All intangible property and rights relating to that land or the operation thereof, or used in connection therewith, including but not limited to all governmental permits relating to construction on said land.

    (3)    All reserves, deferred payments, deposits, refunds, cost savings and payments of any kind relating to the construction of any improvements on said land.

    (4)    All water stock relating to said property.

    (5)    All causes of action, claims, compensation and recoveries for any damage, condemnation or taking of said property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or injury to said property, or for any loss or diminution in value of said property.

    (6)    All plans and specifications prepared for construction of buildings and improvements on said land and all studies, data and drawings related thereto; and also all contracts and agreements of the Trustor relating to the aforesaid plans and specifications or to the aforesaid studies, data and drawings or to the construction of buildings and improvements on said land.

    (7)    All monies on deposit for the payment of real estate taxes or special assessments against said property or for the payment of premiums on policies of fire and other hazard insurance covering the property described herein or said land.

_____
Initials

Exhibit A - 26

# EXHIBIT B

 

**This page is part of your document - DO NOT DISCARD**



## 20201030024



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/31/20 AT 02:49PM**

**Pages:
0008**

| | |
|---|---|
| FEES: | 38.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 113.00 |



**L E A D S H E E T**



202008311190076

00018779213



011100474

**SEQ:
01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

*E497026*

437_5474171_4

Exhibit B - 28

Prepared by and upon recordation
please return to:

HANKEY CAPITAL, LLC
Attention: Eugene Leydiker
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST (this "**Modification**"), is made as of the 20th day of August, 2020 by CRESTLLOYD, LLC, a California limited liability company (the "**Trustor**") in favor of HANKEY CAPITAL, LLC, a California limited liability company ("**Lender**"), with reference to that certain Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents made as of October 25, 2018 by Trustor in favor of the Lender as Beneficiary securing Trustor's obligations as described therein, recorded November 6, 2018 in the Official Records of the County Recorder of Los Angeles County, California as Instrument Number 20181122917 (the "**Deed of Trust**"). Said Deed of Trust encumbers, among other things, all of those certain lots, pieces or parcels of land described in **Exhibit A** annexed hereto and made a part hereof, together with the buildings and improvements erected thereon.

WHEREAS, by this Modification, Trustor and Lender are modifying the terms of the Deed of Trust. Capitalized terms used but not defined herein have the meanings given to them in the Deed of Trust.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Trustor agree as follows:

1. The Deed of Trust is granted by Trustor for the purpose of securing, in such order of priority as Beneficiary may elect, (1) payment of an indebtedness in the sum of One Hundred Six Million and 00/100 Dollars ($106,000,000.00), evidenced by that certain Amended and Restated Promissory Note of even date herewith executed by Trustor to the order of Beneficiary and any and all modifications, extensions or renewals thereof (the "**Promissory Note**"), whether hereafter evidenced by said Promissory Note or otherwise; (2) payment of interest on said indebtedness according to the terms of said Promissory Note; (3) payment of all other sums, with interest as herein provided, becoming due or payable under the provisions hereof to Trustee or Beneficiary; (4) due, prompt and complete observance, performance and discharge of each and every condition, obligation, covenant and agreement contained herein, or in said note, or in any loan agreement relative to any indebtedness evidenced by said Promissory Note or in any document or instrument evidencing, securing or pertaining to the indebtedness evidenced by said Promissory Note, and all modifications, renewals or extensions of any of the foregoing; and (5)

Non-Order Search
Doc: CALOSA:2020 01030024

Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

payment of such additional sums with interest thereon as may be hereafter borrowed from Beneficiary, its successors or assigns by Trustor or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes or guaranty instrument(s), which are by the terms thereof secured by this Deed of Trust.

2.      The Deed of Trust is hereby further modified with the addition of a new paragraph 4.00(g) as follows:

> (g)      If, without Lender's prior written consent, which may be withheld by Lender in its sole and absolute discretion, (i) any lien is recorded in the County of Los Angeles, State of California, affecting the Property, or (ii) any existing lien affecting the Property is modified so as to evidence an increase in the Trustor's obligation to such lienholder.

3.      This Modification may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

4.      Except as expressly amended by this Modification, the terms and provisions of the Deed of Trust are unchanged and hereby ratified and affirmed.

        IN WITNESS WHEREOF, Trustor has caused this Modification to be duly executed as of the day and year above first written.

TRUSTOR:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _August 20, 2020_ before me, _Nigel Gibbs_ a Notary Public, personally appeared _Nile Niami_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

IN WITNESS WHEREOF, Lender has caused this Modification to be duly executed as of the day and year above first written.

HANKEY CAPITAL, LLC,
a California limited liability company

By: _____

W. Scott Dobbins, President

Non-Order Search
Doc: CALOSA:2020 01030024

Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _August 25, 2020_ before me, _T. Douglas_ a Notary Public, personally appeared _W. Scott Dobbins_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

Exhibit B - 33

EXHIBIT A
Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30
FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST
2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING
SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF
361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY
LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE
BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING
A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID
CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22"
WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY
AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET
ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH
11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE
EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE
NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF
STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS

OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

Non-Order Search
Doc: CALOSA:2020 01030024
Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:01 PM

# EXHIBIT "2"

| | |
|---|---:|
| Principal Balance | $82,500,000.00 |
| Accrued Nonpaid Interest since 11/1/20 to 5/31/22 | $21,156,666.66 |
| **Total thru 5/31/22** | **$103,656,666.66** |
| *Per Diem starting 6/1/22* | *$36,666.67* |
| | |
| Legal and Foreclosure Expenses (as of 5/17/22) | $842,591.77 |
| Protective Advance - Insurance | $837,461.34 |
| Protective Advance - Property Taxes | $545,759.14 |
| **Total** | **$2,225,812.25** |
| | |
| **Total** | **$105,882,478.91** |

| Borrower: | CRESTLLOYD, LLC | | Loan Principal: | $ 46,917,500.00 |
|---|---|---|---|---|
| Loan Type: | Interest Only | | | |
| Rate: | 16.00% | | | |

| From | To | Days | Change to Prin | Principal | Rate | Interest | Payment Received | Payment Due | Due Date |
|---|---|---|---|---|---|---|---|---|---|
| 11/05/18 | 11/30/18 | 26 | $ 13,069,445.22 | $ 59,986,945.22 | 11.00% | $ 444,329.13 | 444,329.13 | $ 0.00 | 12/01/18 |
| 12/01/18 | 12/31/18 | 31 | $ 987,958.63 | $ 60,974,903.85 | 11.00% | $ 576,903.40 | 576,903.41 | $ (0.01) | 01/01/19 |
| 01/01/19 | 01/31/19 | 31 | $ 3,292,469.25 | $ 64,267,373.10 | 11.00% | $ 590,753.12 | 590,753.13 | $ (0.02) | 02/01/19 |
| 02/01/19 | 02/28/19 | 28 | $ 775,033.13 | $ 65,042,406.23 | 11.00% | $ 555,883.87 | 555,883.87 | $ (0.02) | 03/01/19 |
| 03/01/19 | 03/31/19 | 31 | $ 1,969,191.58 | $ 67,011,597.81 | 11.00% | $ 624,088.46 | 624,088.46 | $ (0.03) | 04/01/19 |
| 04/01/19 | 04/30/19 | 30 | $ 2,981,904.63 | $ 69,993,502.44 | 11.00% | $ 632,229.27 | 632,229.27 | $ (0.03) | 05/01/19 |
| 05/01/19 | 05/31/19 | 31 | $ 632,229.27 | $ 70,625,731.71 | 11.00% | $ 668,982.63 | 668,982.63 | $ (0.03) | 06/01/19 |
| 06/01/19 | 06/30/19 | 30 | $ 742,584.44 | $ 71,368,316.15 | 11.00% | $ 654,051.71 | 654,051.72 | $ (0.04) | 07/01/19 |
| 07/01/19 | 07/31/19 | 31 | $ 2,011,282.13 | $ 73,379,598.28 | 11.00% | $ 695,044.29 | 695,044.29 | $ (0.04) | 08/01/19 |
| 08/01/19 | 08/31/19 | 31 | $ 1,148,037.07 | $ 74,527,635.35 | 11.00% | $ 703,993.75 | 703,993.75 | $ (0.04) | 09/01/19 |
| 09/01/19 | 09/30/19 | 30 | $ 703,993.75 | $ 75,231,629.10 | 11.00% | $ 689,623.27 | 689,623.27 | $ (0.04) | 10/01/19 |
| 10/01/19 | 10/31/19 | 31 | $ 4,042,844.91 | $ 79,274,474.00 | 11.00% | $ 736,956.10 | 736,956.10 | $ (0.04) | 11/01/19 |
| 11/01/19 | 11/30/19 | 30 | $ 1,047,550.06 | $ 80,322,024.07 | 11.00% | $ 734,421.79 | 734,421.79 | $ (0.04) | 12/01/19 |
| 12/01/19 | 12/31/19 | 31 | $ 1,616,829.92 | $ 81,938,853.99 | 11.00% | $ 769,703.13 | 769,703.13 | $ (0.04) | 01/01/20 |
| 01/01/20 | 01/31/20 | 31 | $ 561,146.01 | $ 82,500,000.00 | 11.00% | $ 781,458.33 | 781,458.30 | $ (0.00) | 02/01/20 |
| 02/01/20 | 02/29/20 | 29 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 03/01/20 |
| 03/01/20 | 03/31/20 | 31 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 04/01/20 |
| 04/01/20 | 04/30/20 | 30 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 05/01/20 |
| 05/01/20 | 05/31/20 | 31 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 06/01/20 |
| 06/01/20 | 06/30/20 | 30 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 07/01/20 |
| 07/01/20 | 07/31/20 | 31 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 08/01/20 |
| 08/01/20 | 08/31/20 | 31 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 09/01/20 |
| 09/01/20 | 09/30/20 | 30 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 10/01/20 |
| 10/01/20 | 10/31/20 | 31 | | $ 82,500,000.00 | | $ - | | $ (0.00) | 11/01/20 |
| 11/01/20 | 11/30/20 | 30 | | $ 82,500,000.00 | 16.00% | $ 1,100,000.00 | | $ 1,100,000.00 | 12/01/20 |
| 12/01/20 | 12/31/20 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 2,236,666.66 | 01/01/21 |
| 01/01/21 | 01/31/21 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 3,373,333.33 | 02/01/21 |
| 02/01/21 | 02/28/21 | 28 | | $ 82,500,000.00 | 16.00% | $ 1,026,666.67 | | $ 4,400,000.00 | 03/01/21 |
| 03/01/21 | 03/31/21 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 5,536,666.66 | 04/01/21 |
| 04/01/21 | 04/30/21 | 30 | | $ 82,500,000.00 | 16.00% | $ 1,100,000.00 | | $ 6,636,666.66 | 05/01/21 |
| 05/01/21 | 05/31/21 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 7,773,333.33 | 06/01/21 |
| 06/01/21 | 06/30/21 | 30 | | $ 82,500,000.00 | 16.00% | $ 1,100,000.00 | | $ 8,873,333.33 | 07/01/21 |
| 07/01/21 | 07/31/21 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 10,010,000.00 | 08/01/21 |
| 08/01/21 | 08/31/21 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 11,146,666.66 | 09/01/21 |
| 09/01/21 | 09/30/21 | 30 | | $ 82,500,000.00 | 16.00% | $ 1,100,000.00 | | $ 12,246,666.66 | 10/01/21 |
| 10/01/21 | 10/31/21 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 13,383,333.33 | 11/01/21 |
| 11/01/21 | 11/30/21 | 30 | | $ 82,500,000.00 | 16.00% | $ 1,100,000.00 | | $ 14,483,333.33 | 12/01/21 |
| 12/01/21 | 12/31/21 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 15,620,000.00 | 01/01/22 |

| Borrower: | CRESTLLOYD, LLC | | Loan Principal: | $ 46,917,500.00 | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Loan Type: | Interest Only | | | | | | | | |
| Rate: | 16.00% | | | | | | | | |

| From | To | Days | Change to Prin | Principal | Rate | Interest | Payment Received | Payment Due | Due Date |
|---|---|---|---|---|---|---|---|---|---|
| 01/01/22 | 01/31/22 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 16,756,666.66 | 02/01/22 |
| 02/01/22 | 02/28/22 | 28 | | $ 82,500,000.00 | 16.00% | $ 1,026,666.67 | | $ 17,783,333.33 | 03/01/22 |
| 03/01/22 | 03/31/22 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 18,920,000.00 | 04/01/22 |
| 04/01/22 | 04/30/22 | 30 | | $ 82,500,000.00 | 16.00% | $ 1,100,000.00 | | $ 20,020,000.00 | 05/01/22 |
| 05/01/22 | 05/31/22 | 31 | | $ 82,500,000.00 | 16.00% | $ 1,136,666.67 | | $ 21,156,666.66 | 01/00/00 |
| | Per Diem Calc | 1 | | $ 82,500,000.00 | 16.00% | $ 36,666.67 | | | |

total accrued unpaid interest $ 21,156,666.66

# EXHIBIT "3"

1  DAVID B. GOLUBCHIK (State Bar No. 185520)
   TODD M. ARNOLD (State Bar No. 221868)
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
3  Los Angeles, California 90034
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
   Email: dbg@lnbyg.com; tma@lnbyg.com
5
6  Attorneys for Debtor and Debtor in Possession

**FILED & ENTERED**

**MAR 28 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis      DEPUTY CLERK

**CHANGES MADE BY COURT**

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11  In re:                                    Case No. 2:21-bk-18205-DS

12  CRESTLLOYD, LLC,                          Chapter 11

13        Debtor and Debtor in Possession.    **ORDER GRANTING DEBTOR'S MOTION
                                              FOR AN ORDER:**
14                                            **(1)    APPROVING THE SALE OF THE
                                              DEBTOR'S REAL PROPERTY FREE AND
15                                            CLEAR OF ALL LIENS, CLAIMS,
                                              ENCUMBRANCES, AND INTERESTS, WITH
16                                            THE EXCEPTION OF ENUMERATED
                                              EXCLUSIONS;**
17                                            **(2)    FINDING THAT THE BUYER IS A
                                              GOOD FAITH PURCHASER;**
18                                            **(3)    AUTHORIZING AND APPROVING
                                              THE PAYMENT OF CERTAIN CLAIMS
19                                            FROM SALE PROCEEDS;**
                                              **(4)    WAIVING THE FOURTEEN-DAY
20                                            STAY PERIOD SET FORTH IN
                                              BANKRUPTCY RULE 6004(h); AND**
21                                            **(5)    PROVIDING RELATED RELIEF**

22                                            Hearing:
                                               Date:    March 21, 2022
23                                             Time:    11:30 a.m.
                                               Place:   Courtroom 1639
24                                                      255 East Temple Street
                                                        Los Angeles, California 90012
25                                                      (via Zoom for Government only)

26

27

28

1       A hearing was held on March 18, 2022, at 11:00 a.m., and a continued hearing was held on

2   March 21, 2022, at 11:30 a.m., on the "Debtor's Motion for an Order: (1) Approving the Sale of the

3   Debtor's Real Property Free and Clear of All Liens, Claims, Encumbrances, and Interests, with the

4   Exception of Enumerated Exclusions; (2) Finding That the Buyer Is a Good Faith Purchaser; (3)

5   Authorizing and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the

6   Fourteen-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief"

7   (the "Sale Motion," Docket No. 142) filed by debtor and debtor in possession Crestlloyd, LLC (the

8   "Debtor").  Appearances were noted on the record on each day of the hearing.

9       The court has considered the Sale Motion, all papers filed in support thereof and in opposition

10  thereto, the record in this case, the testimony of witnesses at the hearing, and the arguments of the

11  parties at the hearing.  Based on this record, and for the reasons stated on the record at the hearing,

12      IT IS HEREBY ORDERED that:

13      1.    The Sale Motion is granted.

14      2.    All evidentiary objections filed with respect to the Sale Motion and the oppositions

15  thereto are overruled.

16      3.    Pursuant to § 363(b)[1], the sale of the real property located at 944 Airole Way, Los

17  Angeles, CA 90077 (APN 4369-026-021) (the "Property") to the Buyer for the Purchase Price of

18  $126 million pursuant to the Purchase Agreement[2] is approved.

19      4.    The offer of the Buyer, on the terms and conditions set forth in the Purchase Agreement,

20  including the consideration to be realized by the Debtor pursuant to the Purchase Agreement totaling

21  $126 million, plus the $11.970 million Rebate from the Auctioneer, for a total of $137.97 million in

22  consideration: (1) is fair and reasonable; (2) represents optimal value for the Property under the

23  circumstances; (3) is in the best interests of the Debtor, its bankruptcy estate, and the creditors

24  thereof; and (4) constitutes full and adequate consideration and reasonably equivalent value for the

25  Property under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent

26  / / /

27

28
_____
[1] Unless otherwise stated, section references are to the Bankruptcy Code, title 11 of the United States Code.
[2] Capitalized terms not defined herein are used as defined in the Sale Motion.

Conveyance Act and any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.

5.    The sale of the Property to the Buyer pursuant to the Purchase Agreement will be free and clear of any and all interests pursuant to § 363(f), with the exception of Items A1, C, D, E, F, 1-6, 8-12 and 17 (the "Excepted Items") set forth in the preliminary title report attached hereto as Exhibit 1, with such interests to attach to the Sale Proceeds with the same validity, extent, and priority as before the closing of the sale.

6.    The Debtor and the Buyer, and any escrow and title companies, are authorized to take any and all actions reasonably necessary to consummate the sale of the Property pursuant to the Purchase Agreement and this order.  Lawrence Perkins, on behalf of the Manager of the Debtor, is authorized to execute any and all documents on behalf of the Debtor to effectuate the transactions contemplated by this order.

7.    The Buyer is deemed to be a "good faith" purchaser within the meaning of § 363(m).

8.    Upon the closing of the sale transaction approved by this order, and according to instructions to be provided by the Debtor, escrow must transfer the net proceeds from the Purchase Price, and either escrow or the Auctioneer must transfer the $11,970,000 Rebate to the Debtor.

9.    The 14-day stay of FRBP 6004(h) is waived to enable the sale of the Property to close as quickly as possible.  This order is effective immediately upon entry.  In the absence of any stay pending appeal, the Debtor and the Buyer, and any cooperating brokers, escrow company, and title company, are free to close under the Purchase Agreement at any time, subject to the terms of this order and the Purchase Agreement.

10.    A certified copy of this order may be filed with the appropriate clerk and/or recorded with the county recorder to cancel any encumbrances of record, other than the Excepted Items.

11.    On the Closing Date, the Debtor and the escrow company are authorized and directed to pay from the Sale Proceeds: (a) the outstanding balance of Hankey's DIP Loan in the principal amount of $12 million, plus all accrued interest, fees and costs (payoff amount: $12,065,166.67, as of March 23, 2022, with per diem interest of $2,833.33 thereafter); (b) Hankey's senior receivership certificate loans in the principal amount of $827,745, plus all accrued interest, fees and costs (payoff

amount: $882,540.56, as of March 23, 2022, with per diem interest of $229.93 thereafter); (c) the

claims of any taxing authorities or governmental units as defined in § 101(27) apportioned to the

Debtor prior to the close of the sale that are secured by liens not included in the Excepted Items

(payoff amount: approximately $2,649,078.30); (d) commission equal to 2% of the Purchase Price to

be paid to and split equally between the Debtor's Brokers and the Buyer's Brokers, with any split

between the Debtor's Brokers and the Buyer's Brokers to be determined by them (payoff amount:

$2,520,000); and (e) any other customary escrow closing fees and charges allocated to the Debtor

(payoff amount: approximately $318,052.50).

12.    The Buyer has not assumed and/or is otherwise not obligated for any of the Debtor's

liabilities.  Consequently, upon entry of this Sale Order, all persons, governmental units (as defined in

§§ 101(27) and 101(41)), and all holders of interests based upon or arising out of liabilities retained

by the Debtor are hereby enjoined from taking any action against the Buyer or the Property, including

asserting any setoff, right of subrogation or recoupment of any kind, or to recover any interest or

enforce any claims or causes of action or on account of any liabilities of the Debtor.

13.    This order is binding upon and governs the acts of all persons and entities with respect to

the sale approved by this order, including, without limitation: the Debtor's bankruptcy estate, the

Debtor and its successors and assigns, including, without limitation, any chapter 11 trustee or

examiner hereinafter appointed or any chapter 7 trustee appointed; all creditors of the Debtor

(whether known or unknown); the Buyer and his successors and assigns; the Property; filing agents;

filing officers; title agents; recording agencies; secretaries of state; and all other persons and entities

who may be required to report or insure any title in or to the Property or who may be required by

operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or

release any documents or instruments that reflect that the Buyer is the owner of the Property free and

clear of any and all liens, claims, encumbrances, and interests other than the Excepted Items, except

as otherwise provided in the Purchase Agreement and this order, and each of the foregoing persons

and entities is hereby directed to accept for filing any and all of the documents and instruments

necessary and appropriate to consummate the transactions contemplated by this order and the

Purchase Agreement.

14.  To the extent that there is any conflict between this order and the Purchase Agreement, this order controls.

15.  The court retains exclusive jurisdiction to interpret, implement and enforce the terms and provisions of this order and the Purchase Agreement, and to decide any disputes concerning this order and the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this order.

# # #

Date: March 28, 2022

Deborah J. Saltzman
United States Bankruptcy Judge

# Exhibit 1

# Chicago Title Company

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone: (213) 488-4300 ● Fax: (213) 488-4377

Issuing Policies of Chicago Title Insurance Company

ORDER NO.: **00166345-994-LT2-1TW**

Chicago Title Company / Los Angeles
725  S. Figueroa St., Suite 200
Los Angeles, CA 90017
ATTN:  Mike Slinger
Email:  mike.slinger@ctt.com
REF:

Main Office Line:  **(213) 488-4300**

Title Officer:  Ted Tan/Jennifer Wright (LA/Comm)
Title Officer Phone:  (213) 488-4394
Title Officer Fax:  (213) 488-4360
Title Officer Email:  TeamX77@ctt.com

PROPERTY:    **944 ARIOLE WAY, LOS ANGELES, CA**

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Florida corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Chicago Title Company

By: _____
    Authorized Signature

By: _____
    Michael J. Nolan
    President

ATTEST: _____
    Marjorie Nemzura
    Secretary

CORPORATE SEAL

**Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone: (213) 488-4300 ● Fax: (213) 488-4377

## PRELIMINARY REPORT

**EFFECTIVE DATE:**          February 4, 2022 at 7:30 a.m.

**ORDER NO.: 00166345-994-LT2-1TW**

The form of policy or policies of title insurance contemplated by this report is:

Preliminary Report Only

1.    THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

A Fee

2.    TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

CRESTLLOYD, LLC, a California limited liability company, in receivership by Order of the Superior Court of California, County of Los Angeles, West District, Case No. 21SMCV01113, a certified copy thereof being recorded July 20, 2021 as Instrument No. 2021-1113331 of Official Records, wherein Theodore Lanes was duly appointed as receiver, subject to the terms, provisions and restrictions set out in said Order, and subject to proceedings pending in the bankruptcy court where a petition for relief was filed October 26, 2021 on behalf of Crestlloyd, LLC in U.S. District, Court Central District of California, Case No. B18205.

3.    THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

See Exhibit A attached hereto and made a part hereof.

# EXHIBIT "A"

# LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN:  **4369-026-021**

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2022-2023.

A.    Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

| | |
|---|---|
| Tax Identification No.: | 4369-026-021 |
| Fiscal Year: | 2021-2022 |
| 1st Installment: | $701,465.73, Paid (payment late and penalty applies) |
| **Penalty:** | **$70,146.57** |
| 2nd Installment: | $701,465.71, Unpaid |
| Penalty: | $70,156.57 |

B.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2020

APN No.:                4369-026-021

Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

Amount:                $1,832,407.68 by February 28, 2022

C.    An assessment by the improvement district shown below:

| | |
|---|---|
| Series: | AD #1 |
| District: | County of Los Angeles |
| For: | MRCA-Brush Fire Clear'g Dist #1 |
| Bond issued: | August 6, 2003 |

Said assessment is collected with the county/city property taxes.

Said assessment is also disclosed by a Notice of Amended Assessment, recorded January 26, 2015 as Instrument No. 2015-089995 of Official Records.

D.    The herein described property lies within the boundaries of a Community Facilities District (CFD) as follows:

| | |
|---|---|
| CFD No: | 2016-1 |
| For: | Fire Prevention, Wildlife Corridor and Open Space Protection and other associated purposes |
| Disclosed by: | Notice of Special Tax Lien |
| Recording Date: | January 13, 2017 |
| Recording No.: | 20170055098, Official Records |

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the County of Los Angeles.

# EXCEPTIONS
## (Continued)

E.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

F.  The herein described property lies within the boundaries of a Community Facilities District (CFD) as follows:

| | |
|---|---|
| CFD No: | 2020-1 |
| For: | Local Fire Prevention, Water Quality and Open Space Measure and other associated purposes |
| Disclosed by: | Notice of Special Tax Lien |
| Recording Date: | February 10, 2021 |
| Recording No.: | 2021-0235371, Official Records |

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the County of Los Angeles.

1.  Water rights, claims or title to water, whether or not disclosed by the public records.

2.  Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said Tract No. 22727;

| | |
|---|---|
| Purpose: | Drainage |
| Affects: | That portion of said land as shown on said map |

3.  Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

| | |
|---|---|
| Recording Date: | November 13, 1947 |
| Recording No: | 1860, Official Records |

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

Modification(s) of said covenants, conditions and restrictions

| | |
|---|---|
| Recording Date: | February 7, 1949 |
| Recording No: | 2309, Official Records |

Modification(s) of said covenants, conditions and restrictions

| | |
|---|---|
| Recording Date: | April 15, 1949 |
| Recording No: | 2654, Official Records |

# EXCEPTIONS
## (Continued)

4.      Covenant and agreement wherein the owners agree to hold said Land as one parcel and not to sell any portion thereof separately. Said covenant is expressed to run with the Land and be binding upon future owners.

Recording Date:          June 22, 1981
Recording No.:           81-620826, Official Records

Reference is hereby made to said document for full particulars.

5.      An instrument entitled Master Covenant and Agreement

Executed by:             Michael t. Walkup and Edith A. Press
In favor of:             City of Los Angeles
Recording Date:          December 22, 1994
Recording No:            94-2260589, Official Records

Reference is hereby made to said document for full particulars.

6.      Matters contained in that certain document

Entitled:                Certificate of Compliance
Dated:                   L.A. No. 94-062
Executed by:             City of Los Angeles Department of City Planning
Recording Date:          December 22, 1994
Recording No:            94-2260586, Official Records

Reference is hereby made to said document for full particulars.

7.      A deed of trust to secure an indebtedness in the amount shown below,

Amount:                  $14,040,000.00
Dated:                   March 13, 2013
Trustor/Grantor          Crestlloyd LLC, a California limited liability company
Trustee:                 First American Title Insurance Company, a California corporation
Beneficiary:             Inferno Realty, L.P., as to an undivided $7,040,000.00 and Maybach Corporation Holdings, Inc., as to an undivided $7,000,000.00 interest, as tenants in common
Recording Date:          March 13, 2013
Recording No:            20130384037, Official Records

By various assignments, the beneficial interest thereunder is now held of record in:

Assignee:                Inferno Investment Inc.
Recording Date:          November 10, 2015
Recording No:            20151375607, Official Records

An agreement to modify the terms and provisions of said deed of trust as therein provided

Executed by:             Crestlloyd, LLC, a California Limited Liability Company and Inferno Investment Inc.
Recording Date:          November 10, 2015
Recording No:            20151375608, Official Records

# EXCEPTIONS
## (Continued)

An agreement recorded November 6, 2018 as Instrument No. 20181122920, Official Records which states that this instrument was subordinated to the document or interest described in the instrument

| | |
|---|---|
| Recording Date: | November 6, 2018 |
| Recording No.: | 20181122917, Official Records |

8. Covenant and agreement wherein the owners agree to hold said Land as one parcel and not to sell any portion thereof separately. Said covenant is expressed to run with the Land and be binding upon future owners.

| | |
|---|---|
| Recording Date: | September 5, 2013 |
| Recording No.: | 20131298666, Official Records |

Reference is hereby made to said document for full particulars.

9. An instrument entitled Master Covenant and Agreement Regarding On-Site BMP Maintenance

| | |
|---|---|
| Executed by: | Nile Niami |
| In favor of: | City of Los Angeles |
| Recording Date: | September 24, 2013 |
| Recording No: | 20131385742, Official Records |

Reference is hereby made to said document for full particulars.

10. An instrument entitled Master Covenant and Agreement Regarding On-Site BMP Maintenance

| | |
|---|---|
| Executed by: | Nile Niami |
| In favor of: | City of Los Angeles |
| Recording Date: | February 7, 2014 |
| Recording No: | 20140139714, Official Records |

Reference is hereby made to said document for full particulars.

11. An irrevocable offer to dedicate an easement over a portion of said Land for

| | |
|---|---|
| Purpose(s): | Public street |
| Recording Date: | June 4, 2014 |
| Recording No: | 20140578201, Official Records |

Said offer was accepted by resolution, a certified copy of which was recorded April 10, 2015 as Instrument No. 20150395929, of Official Records..

12. An instrument entitled Covenant and Agreement Regarding Maintenance of Building

| | |
|---|---|
| Executed by: | Nile Niami |
| In favor of: | City of Los Angeles |
| Recording Date: | February 17, 2016 |
| Recording No: | 20160172858, Official Records |

Reference is hereby made to said document for full particulars.

# EXCEPTIONS
## (Continued)

13.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $82,500,000.00 |
| Dated: | October 25, 2018 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company |
| Trustee: | Chicago Title Company |
| Beneficiary: | Hankey Capital, LLC, a California limited liability company |
| Recording Date: | November 6, 2018 |
| Recording No: | 20181122917, Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Recording Date: | August 31, 2020 |
| Recording No: | 20201030024 of Official Records |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Chicago Title Company |
| Recording Date: | March 5, 2021 |
| Recording No: | 2021-0367447 of Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Chicago Title Company, trustee |
| Date, Time and Place of Sale: | July 12, 2021 at 11:00 am by the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 |
| Recording Date: | June 14, 2021 |
| Recording No: | 2021-0934061 of Official Records |

14.   Matters contained in that certain document

| | |
|---|---|
| Entitled: | Memorandum of Agreement |
| Executed by: | Hankey Capital, LLC, a California limited liability company and Crestlloyd, LLC, a California limited liability company |
| Recording Date: | November 6, 2018 |
| Recording No: | 20181122919, Official Records |

| | |
|---|---|
| Recording Dare: | August 31, 2020 |
| Recording No.: | 20201030294 of Official Records |

Reference is hereby made to said document for full particulars.

15.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $30,188,235.00 |
| Dated: | October 16, 2018 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company |
| Trustee: | Chicago Title Company |
| Beneficiary: | YOGI Securities Holdings, LLC, a Nevada limited liability company |
| Recording Date: | November 7, 2018 |
| Recording No: | 20181126580, Official Records |

Chicago Title Company
ORDER NO.:  00166345-994-LT2-1TW

## EXCEPTIONS
### (Continued)

16.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:              $6,196,810.64
Dated:               September 18, 2019
Trustor/Grantor      Crestlloyd, LLC, a California limited liability company
Trustee:             Chicago Title Company
Beneficiary:         YOGI Securities Holdings, LLC, a Nevada limited liability company
Recording Date:      September 23, 2019
Recording No:        20190989746, Official Records

The effect of a Substitution of Trustee and Full Reconveyance, recorded January 14, 2021 as Instrument No. 2021-076458 of Official Records.

(Note: We will require evidence of the full payment or satisfaction of said deed of trust as there does not appear to be an off-setting transaction of record.)

17.    An instrument entitled Covenant and Agreement Regarding Maintenance of Building

Executed by:         Crestlloyd, LLC
In favor of:         City of Los Angeles
Recording Date:      December 2, 2019
Recording No:        20191317943, Official Records

Reference is hereby made to said document for full particulars.

18.    Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

19.    Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

20.    A claim of mechanic's lien or materialman's lien

Claimant:            American Truck & Tool Rentals Inc./American Rentals
Amount:              $97,050.34
Recording Date:      June 29, 2020
Recording No:        20200709010 of Official Records

A Notice of Pending Action to foreclose said lien

County:              Los Angeles
Court:               Superior
Case No.:            20SMCV01229 (consolidated with 20SMCV01264)
Recording Date:      May 5, 2021
Recording No:        2021-0717597 of Official Records

# EXCEPTIONS
## (Continued)

21.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | J&E Texture, Inc. |
| Amount: | $214,147.50 |
| Recording Date: | June 30, 2020 |
| Recording No: | 20200712043 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 |
| Recording Date: | December 14, 2020 |
| Recording No: | 2020-01647158 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 20SMCV01229 (consolidated with 20SMCV01264) |
| Recording Date: | May 5, 2021 |
| Recording No: | 2021-0717597 of Official Records |

22.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $5,000,000.00 |
| Dated: | February 11, 2020 |
| Trustor/Grantor | CRESTLLOYD, LLC, a California limited liability company |
| Trustee: | Pacific Coast Title Company |
| Beneficiary: | Hilldun Corporation, a New York corporation |
| Recording Date: | September 4, 2020 |
| Recording No: | 20201058770 of Official Records |

23.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | JMS Air Conditioning and Appliance Services, Inc. |
| Amount: | $51,290.00 |
| Recording Date: | May 6, 2021 |
| Recording No: | 2021-0722265 of Official Records |

24.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Calgrove Rentals Inc. |
| Amount: | $12,338.95 |
| Recording Date: | June 1, 2021 |
| Recording No: | 2021-0868958 of Official Records |

## EXCEPTIONS
### (Continued)

25.     A claim of mechanic's lien or materialman's lien

   Claimant:           BMC West LLC
   Amount:             $2,398.60
   Recording Date:     July 16, 2021
   Recording No:       2021-1102584 of Official Records

26.     A Receiver's Certificate #1

   In favor of:        Hankey Capital, LLC and Theodore Lanes, in his capacity as Receiver
   Amount:             $577,745.00
   Case No.:           21SMCV01113 Superior Court Los Angeles County
   Recording Date:     July 23, 2021
   Recording No:       2021-1136088 of Official Records

27.     A Notice of Pending Lien

   Executed by:        City of Los Angeles
   Recording Date:     January 31, 2020
   Recording No:       2020-0124042 of Official Records

28.     A claim of mechanic's lien or materialman's lien

   Claimant:           Parquet By Dian
   Amount:             $40,846.00
   Recording Date:     September 8, 2021
   Recording No:       2021-1373746 of Official Records

29.     A claim of mechanic's lien or materialman's lien

   Claimant:           Powertek Electric, Inc.
   Amount:             $40,480.00
   Recording Date:     September 23, 2021
   Recording No:       2021-1455960 of Official Records

30.     A claim of mechanic's lien or materialman's lien

   Claimant:           Kennco Plumbing, Inc.
   Amount:             $85,560.17
   Recording Date:     October 5, 2021
   Recording No:       2021-1508207 of Official Records

   A Notice of Pending Action to foreclose said lien

   County:             Los Angeles
   Court:              Superior
   Case No.:           21SMCV01656
   Recording Date:     October 21, 2021
   Recording No:       20211585116 of Official Records

# EXCEPTIONS
## (Continued)

31.     A Chapter 11 Petition

|  |  |
|---|---|
| Debtor's Name: | Crestlloyd, LLC |
| Recording Date: | November 8, 2021 |
| Recording No: | 20211666304 of Official Records |

**32.     ANY LIEN OR RIGHT TO A LIEN FOR SERVICES, LABOR OR MATERIAL NOT SHOWN BY THE PUBLIC RECORDS.**

33.     A deed of trust to secure an indebtedness in the amount shown below,

|  |  |
|---|---|
| Amount: | $12,000,000.00 and $120,000.00 |
| Dated: | December 13, 2021 |
| Trustor/Grantor | Crestlloyd, LLC, a California limited liability company, debtor and debtor in possession in a pending Chapter 11 bankruptcy case commenced on October 26, 2021 |
| Trustee: | Chicago Title Company |
| Beneficiary: | Hankey Capital, LLC, a California limited liability company |
| Recording Date: | January 26, 2022 |
| Recording No: | 20220103108, Official Records |

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

# REQUIREMENTS SECTION

1.      Unrecorded matters which may be disclosed by an Owner's Affidavit or Declaration. A form of the Owner's Affidavit/Declaration is attached to this Preliminary Report/Commitment. This Affidavit/Declaration is to be completed by the record owner of the land and submitted for review prior to the closing of this transaction. Your prompt attention to this requirement will help avoid delays in the closing of this transaction. Thank you.

The Company reserves the right to add additional items or make further requirements after review of the requested Affidavit/Declaration.

2.      The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

Limited Liability Company:            Crestlloyd, LLC, a California limited liability company

a)      A copy of its operating agreement, if any, and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

b)      If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

c)      If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

d)      A current dated certificate of good standing from the proper governmental authority of the state in which the entity is currently domiciled.

e)      If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

f)      If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

g)      Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

3.      In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s):                 All Individual Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE: The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

---

## END OF REQUIREMENTS

---

**REQUIREMENTS**
**(Continued)**

# INFORMATIONAL NOTES SECTION

1.   The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Single Family Residential property, known as 944 Ariole Way, located within the city of Los Angeles, California, , to an Extended Coverage Loan Policy.

2.   Note:  The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

3.   Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

---

## END OF INFORMATIONAL NOTES

Ted Tan/Jennifer Wright (LA/Comm)/tt6

WIRE SAFE™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

**Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300  ●  Fax:  (213) 488-4377

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.   As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

**FNF Underwritten Title Company**

CTC – Chicago Title company
CLTC – Commonwealth Land Title Company
FNTC – Fidelity National Title Company of California
FNTCCA - Fidelity National Title Company of California
TICOR – Ticor Title Company of California
LTC – Lawyer's Title Company
SLTC – ServiceLink Title Company

**Underwritten by FNF Underwriters**

CTIC – Chicago Title Insurance Company
CLTIC - Commonwealth Land Title Insurance Company
FNTIC – Fidelity National Title Insurance Company
FNTIC - Fidelity National Title Insurance Company
CTIC – Chicago Title Insurance Company
CLTIC – Commonwealth Land Title Insurance Company
CTIC – Chicago Title Insurance Company

## Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective August 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved
Order No. 00166345-994-LT2-1TW

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

### Security of Your Information
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

### Choices With Your Information
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.
For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

### Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

### International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

### FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent To This Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 714-2710 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

# ATTACHMENT ONE (Revised 05-06-16)

## CALIFORNIA LAND TITLE ASSOCIATION
## STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

   a. building;

   b. zoning;

   c. land use;

   d. improvements on the Land;

   e. land division; and

   f. environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:

   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

    c.   that result in no loss to You; or
    d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.   in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
* For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)   the occupancy, use, or enjoyment of the Land;
        (ii)   the character, dimensions, or location of any improvement erected on the Land;
        (iii)   the subdivision of land; or
        (iv)   environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
    (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)   resulting in no loss or damage to the Insured Claimant;
    (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
    (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)   a fraudulent conveyance or fraudulent transfer, or
    (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

## {PART I

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.}

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7. {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)    the occupancy, use, or enjoyment of the Land;
    (ii)   the character, dimensions, or location of any improvement erected on the Land;
    (iii)  the subdivision of land; or
    (iv)   environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

**© California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

Insert Map Here

# EXHIBIT "4"

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>Crestlloyd, LLC</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Central District of California</td></tr>
<tr><td>Case number</td><td>2:21-bk-18205-DS</td></tr>
</table>

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Inferno Investment, Inc.<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☐ No<br>☑ Yes. From whom? Inferno Realty, L.P. and Maybach Corporation Holdings, Inc. as original lenders |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>c/o Smiley Wang-Ekvall, LLP<br>Name<br>3200 Park Center Dr., Suite 250<br>Number          Street<br>Costa Mesa, CA                92626<br>City                    State              ZIP Code<br><br>Contact phone 714-445-1000<br><br>Contact email kandrassy@swelawfirm.com | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br>Number          Street<br>City                    State              ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ |
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____    Filed on ____ / ____ / _____<br>                                                                                MM  /  DD  /  YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**   $_____20,902,106.12  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Secured loans to debtor; Amount above is as of October 25, 2021

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**   Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ 200,000,000.00 ++

**Amount of the claim that is secured:**   $ 20,902,106.12

**Amount of the claim that is unsecured:**   $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 20,902,106.12

**Annual Interest Rate** (when case was filed)_____%   See attached

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/04/2022
                  MM / DD / YYYY

/s/ Kyra E. Andrassy
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Kyra Elizabeth Andrassy | | |
| | First name | Middle name | Last name |
| Title | Counsel for Inferno Investment, Inc. | | |
| Company | Smiley Wang-Ekvall, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 3200 Park Center Drive, Suite 250 | | |
| | Number          Street | | |
| | Costa Mesa | CA | 92626 |
| | City | State | ZIP Code |
| Contact phone | 714-445-1000 | Email | kandrassy@swelawfirm.com |

# Investissement Inferno

date:                    2021-10-25

## AIROLE FUNDS FROM INFERNO COMPANIES - SECURED AMOUNTS

| ref # | Secured Amount | From | to | # of months | interest rate | TYPE | Secured Interest |
|-------|---------------|------|-----|-------------|---------------|------|------------------|
| Deed 1 | **3,925,545.00** $ | 2013-03-13 | 2021-03-05 | 96 | 8% | compound | 3,340,365 |
|  | 7,265,909.83 $ | 2021-03-06 | 2021-10-25 | 7 | 9% | compound | 374,596 |
|  |  |  |  |  |  |  |  |
| Deed 2 | 14,040,000.00 $ | 2013-03-13 | 2015-10-19 | 31 | 8% | simple | 2,901,600 |
| Deed 2 - modified | 7,000,000.00 $ | 2015-10-20 | 2021-03-05 | 65 | 8% | simple | 3,033,333 |
|  | **7,000,000.00** $ | 2021-03-06 | 2021-10-25 | 7 | 8% | simple | 326,667 |
|  |  |  |  | Total secured Interest to oct 25, 2021 |  |  | 9,976,561 |

Note: Combined value of Deeds 1 and 2 = $ 10 925 545   ($3 925 545 + $7 000 000)

## Summary of Loans - secured

|  | Secured Amount |
|--|---------------|
|  | 10,925,545.00 |
| Interest | 9,976,561.12 |
| **TOTAL** | **20,902,106.12** |

PromissoryNote-3.9M

## PROMISSORY NOTE
## SECURED BY DEED OF TRUST

$3,925,545.00          LOS ANGELES, CALIFORNIA          March 13, 2013

FOR VALUE RECEIVED, the undersigned, ("Borrower") promises to pay to INFERNO INVESTMENT INC., ("Lender") at 85 St. Paul Street West, Suite 500, Montreal, Quebec, CANADA H2Y3V4, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Three Million Nine Hundred Twenty-Five Thousand Five Hundred Forty-Five and no/100th Dollars ($3,925,545.00), together with interest on the outstanding principal balance until paid in full in accordance with the terms, conditions and provisions set forth in this Promissory Note (the "Note").

INTEREST RATE. Interest on the outstanding principal balance of this Note shall be compounded annually and shall accrue at the per annum rate (the "Note Rate") of eight percent (8%) from the date of each disbursement of funds.

ADDITIONAL CONSIDERATION. Due to the fact that the security for this Note is a deed of trust third in priority to a first and second deed of trust on the Property, thereby making this loan a "high risk loan", Borrower agrees to pay Lender additional consideration and not as additional interest as follows: Fifty percent (50%) of the net profits derived from the sale of each of the residences located at 271 S. Mapleton Drive, Los Angeles, CA and 1175 Hillcrest, Beverly Hills, CA and Fifteen percent (15%) of the net profits derived from the sale of the residence at 944 Airole, Los Angeles, CA

The additional consideration shall be due and payable, without interest, on the Maturity Date.

PRINCIPAL AND INTEREST PAYMENTS. Principal and interest shall be payable on the Maturity Date.

All payments due hereunder, including payments of principal and/or interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds.

MATURITY DATE. The entire unpaid principal balance, all unpaid accrued interest thereon, and all other amounts due hereunder shall be due and payable without demand and/or notice on the date of the sale of the property located at 944 Airole, Los Angeles, California (the "Property"), which is the security for the amount due under this Note.

PREPAYMENT. The principal amount of this Note may be prepaid in whole or in part, without any premium and/or penalty, at any time.

LATE CHARGES. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment of principal and interest

Y:\Remillard\InfernoInvestment\PromissoryNote-3.9M.wpd                    10/14/15

required under this Note is not received by Lender within seven (7) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by Lender by reason of such administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that one percent (1%) of the amount of the delinquent payment per month, or portion of a month during which the breach is not cured, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefore.

     INSURANCE.  Insurance against loss or damage to the Property by fire, windstorm, lightning, tornado and hail and against loss and damage by such other, additional risks as may be now or hereafter embraced by an "all-risk" or "special form" insurance policy shall be maintained by Borrower until amounts due hereunder have been paid in full. The amount of such insurance shall be one hundred percent (100%) of the full replacement cost (insurable value) of the improvements, without reduction for depreciation. The determination of the replacement cost amount shall be adjusted annually to comply with the requirements of the insurer issuing such coverage. Absent such annual adjustment, each policy shall contain inflation guard coverage. Full replacement costs, as used herein, means, with respect to the improvements, the cost of replacing the improvements without regard to deduction for depreciation, exclusive of the cost of excavations, foundations and footings. Each policy shall contain a replacement cost endorsement and either an agreed amount endorsement (to avoid the operation of any co-insurance provisions) or a waiver of co-insurance provisions, all subject to Lender's approval. The maximum deductible shall be Twenty-Five Thousand Dollars ($25,000.00).

     All such insurance shall (i) be with insurers fully licensed and authorized to do business in California and which have and maintain a claims paying ability rating of "B+" or better by Standard & Poor's (or equivalent rating agency) or an "B+ VIII" or better from A.M. Best, (ii) contain the complete addresses of the Property (or a complete legal description), (iii) be for terms of at least one year, with premium prepaid, and (iv) include a standard, non-contributory, beneficiary clause naming the payees of this Note, its successor and assigns, as the first beneficiary.

     Borrower shall, as of the date hereof, deliver to Lender evidence that said insurance policy has been prepaid as required above with an original certificate signed by an authorized agent of the  insurance company evidencing such insurance satisfactory to beneficiary. Borrower shall renew all such insurance and deliver to Lender a certificate evidencing such renewal at least thirty (30) days before any such insurance shall expire. Borrower further agrees that each such insurance policy: (i) shall provide for at least thirty (30) days notice to Lender prior to any policy reduction or cancellation due to non-payment of premium; (ii) shall contain an endorsement or agreement by the insurer that any loss shall be payable to Lender in accordance with the terms of such policy notwithstanding any act or negligence of Borrower or any other person which might otherwise result in forfeiture of such insurance; and (iii) in the event that the Property or the improvements constitutes a legal non-conforming use under applicable building, zoning or land use laws or ordinances, shall include an ordinance and law coverage endorsement which will contain Coverage A:  "Loss Due to Operation of Law" (with a minimum liability limit equal to

Replacement Cost With Agreed Value Endorsement), Coverage B: "Demolition Cost" and Coverage C: "Increased Cost of Construction" coverages. In the event Borrower fails to provide, maintain, keep in force or deliver and furnish to Lender the policy of insurance required by this Note or evidence of its replacement or renewal as required herein, Lender may, but shall not be obligated to, procure such insurance and Borrower shall pay all amounts advanced by Lender therefor, together with interest thereon at the Note Rate from and after the date advanced by Lender until actually repaid by Borrower, promptly upon demand by Lender.

WAIVERS. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law. No delay, omission and/or failure on the part of the Lender in exercising any right and/or remedy hereunder shall operate as a waiver of such right and/or remedy or any other right and/or remedy of Lender.

AUTHORITY. Borrower hereby represents and warrants to Lender that, by her execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower.

ACCELERATION, In the event that all or any part of the Property which is security for this Note shall be sold, assigned, mortgaged, hypothecated, or otherwise transferred, the holder of this Note, shall have the right to declare the entire unpaid balance of principal and interest to be immediately due and payable.

ATTORNEY'S FEES. If legal action be instituted to enforce collection of amounts due hereunder, Borrower agrees to pay reasonable attorney's fees and costs incurred by the holder of this Note.

IN WITNESS WHEREOF, Borrower has executed this Note on the day and year first above written.

BORROWER:

CRESTLLOYD, LLC, a California
Limited Liability Company

By _____
       Nile Niami, Manager

THIS NOTE IS SECURED BY A DEED OF TRUST IN FAVOR OF CHICAGO TITLE COMPANY.

PromNote-InfernoMaybach14M

MODIFIED
**PROMISSORY NOTE**
**SECURED BY DEED OF TRUST**

$14,040,000.00          LOS ANGELES, CALIFORNIA          March 13, 2013


FOR VALUE RECEIVED, the undersigned, ("Borrower") promises to pay to INFERNO REALTY, LP as to an undivided Seven Million Forty Thousand Dollars ($7,040,000.00) and MAYBACH HOLDINGS CORPORATION, INC., as to an undivided Seven Million Dollars ($7,000,000.00) interest (collectively, "Lender") at 85 St. Paul Street West, Suite 500, Montreal, Quebec, CANADA H2Y3V4, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Fourteen Million Forty Thousand Dollars ($14,040,000.00), together with interest on the outstanding principal balance until paid in full in accordance with the terms, conditions and provisions set forth in this Promissory Note (the "Note").

INTEREST RATE. Simple interest shall accrue on the outstanding principal balance of this Note at the rate of eight percent (8%) per annum.

PRINCIPAL AND INTEREST PAYMENTS. Principal and interest shall be payable on the Maturity Date.

All payments due hereunder, including payments of principal and/or interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds.

MATURITY DATE. The entire unpaid principal balance, all unpaid accrued interest thereon, and all other amounts due hereunder shall be due and payable without demand and/or notice on the date of the close of escrow for the sale of the single family residence being constructed by Borrower on the real property located at 944 Airole Way, Los Angeles, California (the "Property").

PREPAYMENT. The principal amount of this Note may be prepaid in whole or in part, without any premium and/or penalty, at any time.

INSURANCE. Insurance against loss or damage to the Property by fire, windstorm, lightning, tornado and hail and against loss and damage by such other, additional risks as may be now or hereafter embraced by an "all-risk" or "special form" insurance policy shall be maintained by Borrower until amounts due hereunder have been paid in full. The amount of such insurance shall be one hundred percent (100%) of the full replacement cost (insurable value) of the improvements, without reduction for depreciation. The determination of the replacement cost amount shall be adjusted annually to comply with the requirements of the insurer issuing such coverage. Absent such annual adjustment, each policy shall contain inflation guard coverage. Full replacement costs, as used herein, means, with respect to the improvements, the cost of replacing the improvements without regard to deduction for depreciation, exclusive of the cost of excavations, foundations and

footings. Each policy shall contain a replacement cost endorsement and either an agreed amount endorsement (to avoid the operation of any co-insurance provisions) or a waiver of co-insurance provisions, all subject to Lender's approval. The maximum deductible shall be Ten Thousand Dollars ($10,000.00).

All such insurance shall (i) be with insurers fully licensed and authorized to do business in California and which have and maintain a claims paying ability rating of "B+" or better by Standard & Poor's (or equivalent rating agency) or an "B+ VIII" or better from A.M. Best, (ii) contain the complete addresses of the Property (or a complete legal description), (iii) be for terms of at least one year, with premium prepaid, and (iv) include a standard, non-contributory, beneficiary clause naming the payees of this Note, its successor and assigns, as the first beneficiary.

Borrower shall, as of the date hereof, deliver to Lender evidence that said insurance policy has been prepaid as required above with an original certificate signed by an authorized agent of the insurance company evidencing such insurance satisfactory to beneficiary. Borrower shall renew all such insurance and deliver to Lender a certificate evidencing such renewal at least thirty (30) days before any such insurance shall expire. Borrower further agrees that each such insurance policy: (i) shall provide for at least thirty (30) days notice to Lender prior to any policy reduction or cancellation due to non-payment of premium; (ii) shall contain an endorsement or agreement by the insurer that any loss shall be payable to Lender in accordance with the terms of such policy notwithstanding any act or negligence of Borrower or any other person which might otherwise result in forfeiture of such insurance; and (iii) in the event that the Property or the improvements constitutes a legal non-conforming use under applicable building, zoning or land use laws or ordinances, shall include an ordinance and law coverage endorsement which will contain Coverage A: "Loss Due to Operation of Law" (with a minimum liability limit equal to Replacement Cost With Agreed Value Endorsement), Coverage B: "Demolition Cost" and Coverage C: "Increased Cost of Construction" coverages. In the event Borrower fails to provide, maintain, keep in force or deliver and furnish to Lender the policy of insurance required by this Note or evidence of its replacement or renewal as required herein, Lender may, but shall not be obligated to, procure such insurance and Borrower shall pay all amounts advanced by Lender therefor, together with interest thereon at the Note Rate from and after the date advanced by Lender until actually repaid by Borrower, promptly upon demand by Lender.

WAIVERS. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law. No delay, omission and/or failure on the part of the Lender in exercising any right and/or remedy hereunder shall operate as a waiver of such right and/or remedy or any other right and/or remedy of Lender.

AUTHORITY. Borrower hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower.

ACCELERATION,  In the event that all or any part of the Property which is security for this Note shall be sold, assigned, mortgaged, hypothecated, or otherwise transferred, the holder of this Note, shall have the right to declare the entire unpaid balance of principal and interest to be immediately due and payable.

ATTORNEY'S FEES.  If legal action be instituted to enforce collection of amounts due hereunder, Borrower agrees to pay reasonable attorney's fees and costs incurred by the holder of this Note.

IN WITNESS WHEREOF, Borrower has executed this Note on the day and year first above written.

BORROWER:

Crestlloyd, LLC, a California Limited
Liability Company

By _____
    Nile Niami, Manager

THIS NOTE IS SECURED BY A DEED OF TRUST IN FAVOR OF STEWART TITLE OF CALIFORNIA, INC. AS TRUSTEE.

MODIFICATION

THE ABOVE PROMISSORY NOTE IS AMENDED TO PROVIDE THAT THE FACE AMOUNT OF THE NOTE IS $7,000,000.00 WHICH IS THE PRINCIPAL BALANCE DUE AND OWING AS OF THIS DATE.

DATED: OCTOBER ____, 2015

INFERNO INVESTMENTS INC, a Canadian
corporation

By: _____
    Julien Remillard, Director

Y:\NIAMI\944Airole\PromNote-InfernoMaybach14M.wpd          3                              3/13/13



This page is part of your document - DO NOT DISCARD

## 20151375606

 

**Pages:
0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/10/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |



LEADSHEET



201511100300029

00011358907

007215269

SEQ:
01

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

E217689                                    T72

WHEN RECORDED, RETURN TO:

11/10/2015

*20151375606*

| NAME | INFERNO REALTY LP |
|---|---|
| MAILING | 4-95 KANDAHAR<br>MONT TREMBLANT<br>QUEBEC J8E1E2<br>CANADA |

4369-26-20

## TITLE(S)

### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

2892 X59

1A



WHEN RECORDED, RETURN TO:

NAME     INFERNO REALTY LP

MAILING    4-95 KANDAHAR
             MONT TREMBLANT
             QUEBEC J8E1E2
             CANADA

### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

The undersigned, MAYBACH CORPORATION, a Canadian Corporation (erroneously named in the Deed of Trust hereafter referred to as "Maybach Holdings Corporation, Inc.") ("Assignor"),for value received, hereby grants, conveys, assigns and transfers to INFERNO REALTY, LP, a California Limited Liability Company ("Assignee") all of its beneficial interest under the Deed of Trust with Assignment of Rents dated the 13th day of March, 2013 between CRESTLLOYD LLC, a California Limited Liability Company, as Trustor; FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, as Trustee; and Assignor and INFERNO REALTY LP as Beneficiaries, recorded on March 13, 2013, under Document No. 20130384037, records of Los Angeles County, State of California, together with the promissory note therein described (the "Note"), the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Assignee is not assuming any obligations or liabilities to the maker under the Note or Deed of Trust described herein and shall not be deemed to have assumed any such obligations or liabilities except that Assignee agrees that, at such time as the maker has duly paid and performed all obligations set forth in the Note and Deed of Trust described herein, Assignee will deliver to the maker a full reconveyance under the Deed of Trust.

Dated:   June 2, 2014

                           MAYBACH CORPORATION, a Canadian
                           Corporation,

By _____

Y:\Remillard\InfernoRealty\AssignNoteMaybachtoRealty-DT.wpd

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

ACKNOWLEDGMENT (WB)

STATE OF  _New York_

COUNTY OF _Clinton_                                            )

On _October 21_, 2015, before me, _Weena L. Boyle_____, a notary public, personally appeared _Julien Remillard._____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_Weena L. Boyle._____ (SEAL)

Weena L. Boyle
Notary Public-New York
Commission #01BO6011026
My Comm. Exp. July 27, 20 _18_


Y:\Remillard\InfernoRealty\AssignNoteMaybachtoRealty-DT.wpd



This page is part of your document - DO NOT DISCARD





## 20151375607



Pages:
0004

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/10/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |



**L E A D S H E E T**



201511100300029

00011358908



007215269

**SEQ:
02**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E 212009

T72



RECORDING REQUESTED BY AND
WHEN RECORDED, RETURN TO:

11/10/2015

*20151375607*

NAME      INFERNO INVESTMENT INC.

MAILING   4-95 Kandahar
          Mont Tremblant
          Quebec J8E1E2
          CANADA

## TITLE(S)

### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE



WHEN RECORDED, RETURN TO:

NAME     INFERNO INVESTMENT INC.

MAILING    4-95 Kandahar
             Mont Tremblant
             Quebec J8E1E2
             Canada

## ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

The undersigned, INFERNO REALTY, LP, a California Limited Partnership ("Assignor"),for value received, hereby grants, conveys, assigns and transfers to INFERNO INVESTMENT INC., ("Assignee") all of its beneficial interest under the Deed of Trust with Assignment of Rents dated the 13th day of March, 2013, between CRESTLLOYD LLC, a California Limited Liability Company, as Trustor; CHICAGO TITLE COMPANY, as Trustee; and Maybach Corporation (erroneously named in the deed of trust as Maybach Holdings Corporation) and INFERNO REALTY LP as Beneficiary recorded on March 13, 2013 under Document No. 20130384037, records of Los Angeles County, State of California, together with the promissory not therein described (the "Note"), the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Assignee is not assuming any obligations or liabilities to the maker under the Note or Deed of Trust described herein and shall not be deemed to have assumed any such obligations or liabilities except that Assignee agrees that, at such time as the maker has duly paid and performed all obligations set forth in the Note and Deed of Trust described herein, Assignee will deliver to the maker a full reconveyance under the Deed of Trust.

Dated: _10/21/_,2015

                             INFERNO REALTY, LP, a California
                             Limited Partnership
                             By:    8393095 Canada, Inc., a Canadian
                                    Corporation, General Partner

By _Julien Remillard, Director_
                    Julien Remillard, Director

Y:\Remillard\InfernoRealty\AssignNote DTt$14M-Realty to Inv.#2wpd

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

ACKNOWLEDGMENT _we_

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21_, 2015, before me, _Weena L. Boyle_, a notary public, personally appeared _Julien Remillard_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Weena L. Boyle_ (SEAL)

Weena L. Boyle
Notary Public-New York
Commission #01BO6011026
My Comm. Exp. July 27, 20_18_

Y:\Remillard\InfernoRealty\AssignNote DTI$14M-Realty to Inv.#2wpd




**This page is part of your document - DO NOT DISCARD**



## 20151375608



**Pages:**
**0007**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/10/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



**L E A D S H E E T**



201511100300029

00011358909

007215269

**SEQ:**
**03**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E212089

T72



RECORDING REQUESTED BY
AND MAIL TAX STATEMENT TO:



11/10/2015

*20151375608*

NFERNO INVESTMENT INC.
4-95 Kandahar
Mont Tremblant
Quebec J8E1E2
Canada

FOR RECORDER'S USE ONLY

TITLE

**MODIFICATION AND SUPPLEMENT TO DEED OF TRUST**

3Λ



RECORDING REQUESTED BY

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

| | |
|---|---|
| NAME | INFERNO INVESTMENT INC. |
| ADDRESS | 4-95 Kandahar |
| CITY | Mont Tremblant |
| STATE & ZIP | Quebec J8E1E2, Canada |

## MODIFICATION AND SUPPLEMENT TO DEED OF TRUST

THIS AGREEMENT, made this ___2-1st___ day of October, 2015, by and between CRESTLLOYD, LLC., a California Limited Liability Company, hereinafter called Trustor, FIRST AMERICAN TITLE INSURANCE COMPANY, hereinafter called Trustee, and INFERNO INVESTMENT INC., hereinafter called Beneficiary,

WHEREAS, on the 13th day of March, 2013, Trustor did make, execute and deliver to Trustee that certain Deed of Trust recorded on March 13, 2013 as Instrument No. 20130384037 in the office of the County Recorder of Los Angeles County, State of California, securing a promissory note dated March 13, 2013 in favor of INFERNO REALTY, L.P. ("INFERNO"), and MAYBACH CORPORATION erroneously named as MAYBACH CORPORATION HOLDINGS, INC. ("MAYBACH") , as Beneficiary and covering the property described in Exhibit "A" attached hereto, and

WHEREAS, INFERNO INVESTMENT INC. acquired the interest of MAYBACH and INFERNO in the promissory note and deed of trust, and

WHEREAS, the parties desire to modify and supplement said deed of trust in certain particulars

NOW, THEREFORE, for value received the parties hereto do hereby modify and supplement said deed of trust as follows:

This Deed of Trust secures two (2) promissory notes each dated March 13, 2013 one in the face amount of $14,040,000,00 modified to $7,000,000.00 and one in the face amount of $3,925,545.00. The total amount secured by this Deed of Trust is $10,925,545.00.

Trustor does hereby grant and convey the subject real property to Trustee under said deed of trust, together with power of sale and subject to each and all of the terms and conditions of said deed of trust, including this modification and supplement thereto.

IT IS FURTHER AGREED, by and between the parties hereto that in all other respects not inconsistent herewith the terms of said deed of trust which is incorporated herein by reference thereto shall remain in full force and effect and be binding hereon. Said deed of trust modified and supplemented shall constitute one deed of trust.

Beneficiary agrees that this Deed of Trust shall automatically be subordinated to a loan or loans to be made to Trustor by First Republic Bank in an amount not to exceed Thirty Million Dollars ($30,000,000.00) which shall unconditionally be, and remain at all times, a lien or

Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

charge on the property herein described, prior and superior to the lien or charge of this deed of trust. Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                           BENEFICIARY

CRESTLLOYD LLC, a California Limited              INFERNO INVESTMENT INC.
Liability Company


By  EXECUTED IN COUNTERPART                        By  _Julien Remillard, Director_
    Nile Niami, Manager                                Julien Remillard, Director


Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not
the truthfulness, accuracy, or validity of that document.

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21, 2015_ , before me, _Weena L. Boyle_
(Insert Name of Notary Public and Title)

_Notary public_ , personally appeared _Julien Remillard._ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

_WL. M_
_New York_

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Weena L. Boyle_                        (Seal)

Weena L. Boyle
Notary Public-New York
Commission #01BO6011026
My Comm. Exp. July 27, 20 18

Y:\Remillard\Inferno Investment\ModiSuppDeedofTrust.14Mwpd



charge on the property herein described, prior and superior to the lien or charge of this deed of trust. Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                          BENEFICIARY

CRESTLLOYD LLC, a California Limited             INFERNO INVESTMENT INC.
Liability Company


By _____               By _____
     Nile Niami, Manager                         Julien Remillard, Director


EXECUTED IN COUNTERPART

Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

7

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of LOS ANGELES )

On OCTOBER 31, 2015 before me, NIGEL GIBBS, NOTARY PUBLIC,
    *Date*            *Here Insert Name and Title of the Officer*

personally appeared ___Nile Niami___
                        *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
           *Signature of Notary Public*

> NIGEL GIBBS
> Commission # 1990441
> Notary Public - California
> Los Angeles County
> My Comm. Expires Oct 4, 2016

*Place Notary Seal Above*

───────────── **OPTIONAL** ─────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: MODIFICATION & SUPPLEMENT DEED of TRUST

Document Date: 10-21-15        Number of Pages: 3

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____     Signer's Name: _____
☐ Corporate Officer — Title(s): _____     ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General     ☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact     ☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator     ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____     ☐ Other: _____
Signer Is Representing: _____     Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)  Item #5907

RECORDING REQUESTED BY
AND MAIL TAX STATEMENT TO:


INFERNO INVESTMENT INC.
4-95 Kandahar
Mont Tremblant
Quebec J8E1E2
Canada

---

FOR RECORDER'S USE ONLY

TITLE                    APN NO.

---

**MODIFICATION AND SUPPLEMENT TO DEED OF TRUST**

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

NAME          INFERNO INVESTMENT INC.
ADDRESS       4-95 Kandahar
CITY          Mont Tremblant
STATE & ZIP   Quebec J8E1E2, Canada

## MODIFICATION AND SUPPLEMENT TO DEED OF TRUST

THIS AGREEMENT, made this _2 1ˢᵗ_ day of October, 2015, by and between CRESTLLOYD, LLC, a California Limited Liability Company, hereinafter called Trustor, FIRST AMERICAN TITLE INSURANCE COMPANY, hereinafter called Trustee, and INFERNO INVESTMENT INC., hereinafter called Beneficiary,

WHEREAS, on the 13ᵗʰ day of March, 2013, Trustor did make, execute and deliver to Trustee that certain Deed of Trust recorded on March 13, 2013 as Instrument No. 20130384037 in the office of the County Recorder of Los Angeles County, State of California, securing a promissory note dated March 13, 2013 in favor of INFERNO REALTY, L.P. ("INFERNO"), and MAYBACH CORPORATION erroneously named as MAYBACH CORPORATION HOLDINGS, INC. ("MAYBACH") , as Beneficiary and covering the property described in Exhibit "A" attached hereto, and

WHEREAS, INFERNO INVESTMENT INC. acquired the interest of MAYBACH and INFERNO in the promissory note and deed of trust, and

WHEREAS, the parties desire to modify and supplement said deed of trust in certain particulars

NOW, THEREFORE, for value received the parties hereto do hereby modify and supplement said deed of trust as follows:

This Deed of Trust secures two (2) promissory notes each dated March 13, 2013 one in the face amount of $14,040,000,00 modified to $7,000,000.00 and one in the face amount of $3,925,545.00. The total amount secured by this Deed of Trust is $10,925,545.00.

Trustor does hereby grant and convey the subject real property to Trustee under said deed of trust, together with power of sale and subject to each and all of the terms and conditions of said deed of trust, including this modification and supplement thereto.

IT IS FURTHER AGREED, by and between the parties hereto that in all other respects not inconsistent herewith the terms of said deed of trust which is incorporated herein by reference thereto shall remain in full force and effect and be binding hereon. Said deed of trust modified and supplemented shall constitute one deed of trust.

Beneficiary agrees that this Deed of Trust shall automatically be subordinated to a loan or loans to be made to Trustor by First Republic Bank in an amount not to exceed Thirty Million Dollars ($30,000,000.00) which shall unconditionally be, and remain at all times, a lien or

Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

charge on the property herein described, prior and superior to the lien or charge of this deed of trust. Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                BENEFICIARY

CRESTLLOYD LLC, a California Limited    INFERNO INVESTMENT INC.
Liability Company

By _____                 By _____
   Nile Niami, Manager                    Julien Remillard, Director

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not
the truthfulness, accuracy, or validity of that document.

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21, 2015_, before me, _Weena L. Boyle_

(Insert Name of Notary Public and Title)

_Notary public_, personally appeared _Julien Remillard._,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Weena L. Boyle_                (Seal)

Weena L. Boyle
Notary Public-New York
Commission # 01BO6011026
My Comm. Exp. July 27, 2018

Y:\Remillard\Inferno\Investment\ModiSuppDeedofTrust.14M.wpd

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California

County of _LOS ANGELES_ )

On _OCTOBER 31, 2015_ before me, _NIGEL GIBBS, NoTary Public_
    *Date*                       *Here Insert Name and Title of the Officer*

personally appeared _Nile Niami_
                                 *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

| | I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. |
| --- | --- |

> NIGEL GIBBS
> Commission # 1990441
> Notary Public - California
> Los Angeles County
> My Comm. Expires Oct 4, 2016

WITNESS my hand and official seal.

Signature _____
                *Signature of Notary Public*

      *Place Notary Seal Above*

───────────────── **OPTIONAL** ─────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Modification & Supplement DEED of Trust_
Document Date: _10-21-15_           Number of Pages: _3_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
| --- | --- |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual    ☐ Attorney in Fact | ☐ Individual    ☐ Attorney in Fact |
| ☐ Trustee    ☐ Guardian or Conservator | ☐ Trustee    ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

# EXHIBIT "5"

**WHEN RECORDED, RETURN TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Ste 110
Los Angeles, CA 90010
Attn: Eugene M. Leydiker

APN No. 4369-026-021

## SUBORDINATION
## AGREEMENT

### (Deed of Trust to Deed of Trust)

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

      THIS SUBORDINATION AGREEMENT ("Agreement") is entered into as of October 30, 2018, by and between CRESTLLOYD, LLC, a California limited liability company ("Owner"); and INFERNO INVESTMENT INC. ("Subordinate Lender"); and Hankey Capital, LLC ("Lender").

### RECITALS

      **A.**    Subject to the terms and provisions of that certain Deed of Trust With Assignment of Rents dated March 13, 2013, executed by Owner, as Trustor, in favor of INFERNO REALTY, L.P. and MAYBACH CORPORATION HOLDINGS, INC., Subordinate Lender's predecessors-in-interest, recorded on March 13, 2013, as Document Number 20130384037 in the official records of the County of Los Angeles, State of California ("Official Records") ("Subordinate Lender's Deed of Trust"), Owner granted to Subordinate Lender's predecessors-in-interest a security interest in and to the property described in Exhibit "A" attached hereto and incorporated herein located at 944 Airole Way, Los Angeles, California (which property, together with all improvements now or hereafter located on the property, is hereinafter collectively referred to as the "Property") to secure Owner's obligations to Subordinate Lender's predecessors-in-interest (the "Subordinate Debt").

      **B.**    MAYBACH CORPORATION HOLDINGS, INC. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to INFERNO REALTY, L.P. by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated June 2, 2014 and recorded on November 10, 2015 in the Official Records as Document Number 20151375606.

      **C.**    INFERNO REALTY, L.P. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to Subordinate Lender by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated October 21, 2015 and recorded on November 10, 2015 in the Official Records as Document Number 20151375607.

      **D.**    Owner has executed or will execute a Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents ("Lender's Deed of Trust") securing, among other things, Owner's obligations to Lender as set forth in that certain Promissory Note dated October 25, 2018, in favor of Lender, in the principal amount of Eighty Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00) (the "Note"). Lender's Deed of Trust is being recorded in the Official

1

Records concurrently herewith. The Note and the Lender's Deed of Trust are collectively referred to herein as the "Loan Agreement".

      **E.**    As a condition to Lender making a Loan (the "Loan"), to be secured by, among other things, the Lender's Deed of Trust (the "Senior Debt"), Lender requires that Lender's Deed of Trust be unconditionally and at all times remain a lien or charge upon the Property, prior and superior to all the rights of Subordinate Lender under its deed of trust and that Subordinate Lender specifically and unconditionally subordinates its deed of trust to the lien or charge of Lender's Deed of Trust.

      **F.**    Subordinate Lender and Owner agree to the subordination in favor of Lender.

      **NOW THEREFORE**, for good and valuable consideration and the receipt and adequacy of which is hereby acknowledged, and to induce Lender to make the Loan, Owner and Subordinate Lender hereby agree for the benefit of Lender as follows:

      **Section 1.**    **Subordination.** Lender's Deed of Trust securing the Note in favor of Lender, shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to Subordinate Lender's Deed of Trust.

      **Section 2.**    **Entire Agreement.** This Agreement shall be the whole agreement with regard to the subordination of Subordinate Lender's Deed of Trust to the lien or charge of Lender's Deed of Trust, and shall supersede and cancel, but only insofar as would affect the priority of Lender's Deed of Trust, any prior agreements as to such subordination, including, without limitation, those provisions, if any, contained in Subordinate Lender's deed of trust which provide for the subordination of the deed of trust to a deed or deeds of trust or to a mortgage or mortgages.

      **Section 3. Lien Subordination.** Subordinate Lender intentionally and unconditionally waives, relinquishes and subordinates all of Subordinate Lender's right, title and interest in and to the Property to the lien or charge of Lender's Deed of Trust, upon the Property and understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination, specific loans and advances are being and will be made by Lender and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination.

      **Section 4. Rights Upon Insolvency.** In the event of (1) any insolvency, bankruptcy, receivership, liquidation, reorganization, arrangement, assignment for the benefit of creditors, or other similar proceeding relative to the Owner or its property (as defined in the Loan Agreement), or (2) any proceeding for the voluntary or involuntary liquidation, dissolution or other winding up of the Owner whether or not involving insolvency or bankruptcy proceedings, then and in any such event:

      (a) the principal amount of, and all interest on, and all other amounts in respect of, the Senior Debt (including interest thereon accruing after the commencement of any such proceeding, whether or not such interest shall be allowed in such proceeding) shall be paid in full before any payment or distribution of any character, whether in cash, securities or other property, shall be made in respect of the Subordinated Debt; and

      (b) any payment or distribution of any character, whether in cash, securities or other property, which would otherwise (but for the terms hereof) be payable or deliverable in respect of Subordinated Debt (including any payment or distribution in respect of the Subordinated Debt by reason of any other indebtedness of the Owner being subordinated to the Subordinated Debt), shall be paid or delivered directly to the Lender, or its representatives, until the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt shall have been paid in full and the Subordinate Lender or any other holder of the Subordinated Debt

2

irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, conservators and others having authority in the premises to effect all such payments and deliveries.

**Section 5.  Owner Obligations.** Owner agrees that, in the event that any note or other obligation of the Owner not evidencing Senior Debt, or any portion thereof, shall become due and payable before its expressed maturity for any reason, Owner will give prompt notice, in writing, of such occurrence to the Lender.

**Section 6.    Rights of Lender.**

(a)    Subordinate Lender further declares, agrees and acknowledges for the benefit of the Lender, that Lender, in making disbursement pursuant to the Loan Agreement (whether obligatory or optional), is under no obligation or duty to, nor has Lender represented that it will, see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds, an any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part.

(b)    Except as otherwise provided herein, so long as any of the Senior Debt shall remain unpaid, Lender may at all times exercise any and all powers and rights which it now has or may hereafter acquire with respect to the Loan Agreement, any other security instrument, including, but not limited to deed of trust or mortgage, Collateral Security Agreement, or Membership Interest Pledge Agreement (collectively, "Security Document"), or any of the collateral subject to the Loan Agreement or any other Security Document without having to obtain any consent or approval of the Subordinate Lender and without any accountability to the Subordinate Lender, nor shall it have any liability to the Subordinate Lender for any action taken or failure to act with respect to this Agreement, the Loan Agreement, any other Security Document or the aforesaid collateral.

**Section 7.  Constructive Trust.** If, notwithstanding the provisions of this Agreement, any payment or distribution of any character (whether in cash, securities or other property) shall be received by the Subordinate Lender in contravention of the terms of this Agreement, such payment or distribution shall not be commingled with any asset of the Subordinate Lender, but shall be held in trust for the benefit of, and shall be paid over or delivered and transferred to, the Lender, or its representatives or agents, for application to the payment of all Senior Debt remaining unpaid, until the principal amount of, and all interest and premium (including interest thereon accruing after the commencement of any proceedings described herein) on, and all other amounts in respect of, the Senior Debt shall have been paid in full.

**Section 8.    Successors and Assigns.** This Agreement, without further reference, shall pass to and may be relied on and enforced by any transferee or subsequent holder of the Senior Debt and the Subordinated Debt.

**Section 9. Modification.** The terms of this Agreement, the subordination effectuated hereby, and the rights of the Lender and the obligations of the Subordinate Lender arising hereunder, shall  not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Loan Agreement, any other Security Document or any other instrument or document executed or delivered pursuant thereto.

**Section 10. Notices.** All notice, consents, approvals, requests, demands, instruments or other communications to be made, given or furnished pursuant to, under or by virtue of their Agreement (each, a "Notice") shall be in writing and shall be deemed given or furnished if addressed to the party intended to receive the same at the address or such party as set forth below (i) upon receipt when personally delivered at such address, or (ii) one (1) business day after the date of delivery of such notice to a nationwide, reputable commercial courier service:

3

Lender:                 HANKEY CAPITAL, LLC
                        4751 Wilshire Blvd., Suite 110
                        Los Angeles, CA 90010
                        Attention: Eugene M. Leydiker

Subordinate Lender:     INFERNO INVESTMENT INC.
                        95-4 Chemin de Kandahar
                        Mont-Tremblant, Quebec J8E 1E2


Owner:                  CRESTLLOYD, LLC
                        c/o Skyline Development
                        8981 W. Sunset Blvd., Suite 303
                        West Hollywood, CA 90069
                        Attn: Nile Niami

Any party may change the address to which any notice is to be delivered to any other address within the United States of America by furnishing written notice of such change at least fifteen (15) days prior to the effective date of such change to the other parties in the manner set forth above, but no such notice of change shall be effective unless and until received by such other parties. Notices may be given on behalf of any party by its attorneys.

      **Section 11.** **Miscellaneous.** This Agreement may not be amended or modified orally but may be amended or modified only in writing, signed by all parties hereto. No waiver of any term or provision of this Agreement shall be effective unless it is in writing, making specific reference to this Agreement and signed by the party against whom such waiver is sought to be enforced. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. This Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

      **Section 12.** **Definitions.** Terms used in this Agreement and not defined herein shall have the respective meanings ascribed to them in the Loan Agreement. The recitals hereto shall be a part of this Agreement.

      **Section 13. Termination.** This Agreement shall terminate upon the final and indefeasible payment in full of the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt.

      **Section 14. Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS AGREEMENT, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT HERETO.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof.

NOTE:  THIS AGREEMENT MAY BE EXECUTED IN COUNTERPARTS.

[SIGNATURES COMMENCE ON THE FOLLOWING PAGE.]

**OWNER:**

CRESTLLOYD, LLC,
 a California limited liability company

By: _____

    Nile Niami, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California     )

County of LOS ANGELES )

On OCTOBER 30, 2018 before me, Nigel G. Gibbs, Notary Public
    *Date*             *Here Insert Name and Title of the Officer*
Personally Appeared     Nile Niami
                               *Name(s) of Signer(s)*

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

                                I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

                                WITNESS my hand and official seal.

                                Signature _____

                                    *Signature of Notary Public*

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

6

**SUBORDINATE LENDER**:

**INFERNO INVESTMENT INC.**

By: _____

Name:   Julien Remillard

Title:    Director

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California              )

County of_____)

On_____before me, _____
         *Date*                           *Here Insert Name and Title of the Officer*

Personally Appeared _____
                                  *Name(s) of Signer(s)*

_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

                                      I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

                                      Signature _____
                                             *Signature of Notary Public*

7

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of _LOS ANGELES_ }

On _OCTOBER 30 2018_ before me, _Nigel Gibbs Notary Public_,
    *Date*                                 *Here Insert Name and Title of the Officer*

personally appeared _Julien LeMilland_
                                    *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

---

**OPTIONAL**

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Subordination Agreement_
Document Date: _10/25/18_ _____ Number of Pages: _10_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer – Title(s): _____   ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General          ☐ Partner – ☐ Limited ☐ General
☐ Individual        ☐ Attorney in Fact    ☐ Individual        ☐ Attorney in Fact
☐ Trustee           ☐ Guardian or Conservator   ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____                  ☐ Other: _____
Signer is Representing: _____   Signer is Representing: _____

---

©2018 National Notary Association

**LENDER:**

**HANKEY CAPITAL, LLC**

By: _____
      W. Scott Dobbins, President

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                  )

County of_____)

On_____before me, _____
         *Date*                              *Here Insert Name and Title of the Officer*
Personally Appeared _____
                              *Name(s) of Signer(s)*

_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

                                     I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

                                     Signature _____
                                                *Signature of Notary Public*

## Exhibit "A"

## Property Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

10

# EXHIBIT "6"

Fill in this information to identify the case:

Debtor 1        Crestlloyd, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number    2:21-bk-18205-DS

---

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

---

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Yogi Securities Holdings, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Milbank LLP, Attn: Mark Shinderman
Name

2029 Century Park East, 33rd Floor
Number     Street

Los Angeles            CA          90067
City                   State        ZIP Code

Contact phone   424-386-4000

Contact email   mshinderman@milbank.com

**Where should payments to the creditor be sent?** (if different)

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
Name     Attn: Mark J. Rosenbaum

11400 W. Olympic Blvd., 9th Floor
Number     Street

Los Angeles            CA          90064
City                   State        ZIP Code

Contact phone   310-478-4100

Contact email   mrosenbaum@wrslawyers.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes.  Claim number on court claims registry (if known)  15-1

Filed on   01/13/2022
          MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing?

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**   $_____24,385,366.77_. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Secured loan to the debtor; Amount above is as of the petition date

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**   Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ 325,000,000.00

**Amount of the claim that is secured:**   $ 24,385,366.77

**Amount of the claim that is unsecured:**  $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 24,385,366.77

**Annual Interest Rate** (when case was filed)_____% See attached.

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    04/29/2022
                    MM / DD / YYYY

/s/ Mark Shinderman
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Mark Shinderman | | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Attorney for Yogi Securities Holdings, LLC |
|---|---|

| Company | Milbank LLP |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 2029 Century Park East, 33rd Floor |
|---|---|
| | Number    Street |

| | Los Angeles | CA | 90067 |
|---|---|---|---|
| | City | State | ZIP Code |

| Contact phone | 424-386-4000 | Email | mshinderman@milbank.com |
|---|---|---|---|

| | | | Yogi Securities Holdings, LLC Attachment to Amended Proof of Claim | | |
|---|---|---|---|---|---|

| DATE | Secured Principal Note Balance | Interest Dates | Interest Amount | Secured Amount Adjustment | Total Due | Comments |
|---|---|---|---|---|---|---|
| October 16, 2018 | $30,188,235.00 | 10/16/18 - 6/17/19 | $800,000.00 | | | Interest rate 3.975%, prepaid $800,000 with note maturity date of June 18, 2019 |
| June 17, 2018 | | | | | $30,188,235.00 | |
| June 18, 2019 | $30,588,235.00 | 6/18/19 -8/17/19 | $201,128.12 | $400,000.00 | | First amendment Note with additional $400,000 principal funding and new interest rate of 4.0% with maturity date Aug 17, 2019 |
| August 17, 2019 | | | | | $30,789,363.12 | |
| August 17, 2019 | $31,528,363.12 | 8/18/19 - 10/16/19 | $207,309.60 | $739,000.00 | | Second Amendment Note with additional $739,000 principal funding with maturity date Oct 16, 2019 |
| October 16, 2019 | | | | | $31,735,672.72 | Notice of Default with Default Interest Rate 14% |
| | | | | | | |
| February 7, 2020 | | 10/16/19 -2/7/20 | $1,443,908.15 | | $33,179,580.86 | 115 days of interest at 14% on $31,735,672.72 |
| February 7, 2020 | | | | -$2,917,289.03 | | 1175 N Hillcrest Rd Sold with partial pay down of Note |
| February 7, 2020 | | | | | $30,262,291.83 | |
| | | | | | | |
| April 9, 2021 | | 2/8/20 - 4/9/21 | $4,967,990.74 | | $35,230,282.57 | 428 days at 14% on $30,262,291.83 |
| April 9, 2021 | | | | -$2,500,000.00 | | 10701 Bellagio Road Sold with partial pay down of Note |
| April 9, 2021 | | | | | $32,730,282.57 | |
| | | | | | | |
| April 16, 2021 | | 4/10/21 - 4/16/21 | $81,252.18 | | $32,811,534.75 | 7 days at 14% on $30,262,291.83 |
| April 16, 2021 | | | | -$4,310,057.58 | | 627 N. Carcassonne Road Sold with partial pay down of Note |
| April 16, 2021 | | | | | $28,501,477.17 | |
| | | | | | | |
| July 9, 2021 | | 4/17/21 - 7/9/21 | $918,294.17 | | $29,419,771.34 | 84 days at 14% on $28,501,477.17 |
| July 9, 2021 | | | | -$6,013,000.00 | | 1369 Londonderry Place Sold with partial pay down of Note |
| July 9, 2021 | | | | | $23,406,771.34 | |
| | | | | | | |
| 10/26/2021 | | 7/10/21 - 10/26/21 | $978,595.43 | | $24,385,366.77 | 109 days at 14% on $23,406,771.34 |
| 10/26/2021 | | | | $178,585.00 | | Fees incurred (legal etc) to collect/enforce the Note up until filing of BK |
| 10/26/2021 | | | | | $24,385,366.77 | |

## SECURED PROMISSORY NOTE

$30,188,235.00                                                    Los Angeles, California
                                                                 October 16, 2018

FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("**Borrower**"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), the principal sum of up to $30,188,235.00 (the "**Loan Amount**"), plus interest on the unpaid principal balance thereof as detailed below.

**1.    Interest Rate; Maturity Date; Repayment.**

a.    The outstanding principal amount of the loan evidenced by this Note (the "**Loan**") shall accrue interest at the rate of 3.975% per annum (the "**Note Rate**"). Notwithstanding the previous sentence, the Note Rate shall be calculated on the entire Loan Amount, regardless of whether any portion of the Loan Amount has not been advanced pursuant to Section 2 below.

b.    The outstanding principal balance owing under this Note as well as interest thereon shall be due and payable in full on the earlier of (i) the sale of either the Hillcrest Property or the Airole Property (as each such term is defined in Section 3 below) such that the entire Loan Amount shall be repaid from proceeds of such sale, or (ii) June 18, 2019 (the "**Maturity Date**"). Additionally: (i) upon the sale of the Londonderry Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (ii) upon the sale of the Bellagio Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (iii) upon the sale of the Carcassonne Property (as defined in Section 3 below) $15,000,000.00 shall be due and payable and (iv) upon the sale of the Stone Ridge Property (as such defined in Section 3 below) $5,000,000.00 shall be due and payable.

c.    This Note may be prepaid in whole or in part; however the $800,000.00 of prepaid interest is guaranteed and no portion shall be refunded upon any principal payments made prior to the Maturity Date whether obligatory under the terms of this Note or made at Borrower's option.

**2.    Advances under the Note.**

2.1    Timing.  Advances of Loan proceeds under this Note will be disbursed as follows:

a.    Lender shall retain $800,000.00 as prepaid interest, calculated at the Note Rate on the entire Loan Amount.

b.    Lender has already advanced $17,499,900.00 under a Promissory Note dated May 22, 2018 and $2,188,235.00 under a Promissory Note dated August 9, 2017 as amended previously executed by Borrower in favor of Lender (together, the "**Prior Notes**").

c.    Lender shall advance an amount equal to $4,500,100.00 of the Loan Amount, to be disbursed in connection with the closing of the Loan contemplated under this Note upon receipt of confirmation of recording of the Deeds of Trust.

d.    So long as there is no uncured breach by Borrower of any of the covenants or obligations of Borrower under any of the documents executed by Borrower in connection with the Loan (collectively, "**Loan Documents**"), Lender shall advance up to the remaining available Loan Amount, in the amount of $5,200,000.00, to Borrower within five (5) business days after Lender's receipt of a written request from Borrower.

2.2.    <u>Title Endorsements</u>.  As a condition to each advance, at Lender's sole and absolute discretion Lender may require Borrower to obtain, in connection with any or all requested disbursements, at Borrower's sole cost and expense, title endorsements satisfactory to Lender to protect Lender against mechanic's liens, to be attached to and be a part of Lender's title policies.

2.3.    <u>Insurance</u>.  Borrower shall furnish to Lender evidence of builders risk insurance for the Property (as defined below) in amounts and with an insurance company satisfactory to Lender and with a standard mortgagee's endorsement naming Lender as first mortgagee.

2.4.    <u>Inspection</u>.  Lender and its agents shall, at all times until the Note is fully repaid, have the right of entry and free access to the Property and the right to inspect all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property.  It is expressly understood and agreed that Lender is not under any duty to supervise or to inspect the work or construction or examine any books and records, and that any such inspection or examination is for the sole purpose of protecting the security of Lender and preserving Lender's rights hereunder.  Failure to inspect the work or any part thereof shall not constitute a waiver of any rights of Lender; and inspection not followed by notice of default shall not constitute a waiver of any default then existing.  In no event shall any inspection by Lender constitute a representation that there has been or will be compliance with the plans and specifications or that the construction is free from defective materials or workmanship.

2.5.    <u>Exculpatory Provisions</u>.  Borrower acknowledges, understands and agrees as follows:

2.5.1    Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of the quality, adequacy or suitability of the following: (a) the plans and specifications or amendments, alterations and additions thereto; (b) architects, contractors, subcontractors, and materialmen employed or utilized in the construction, or workmanship of or the materials used by any of them; or (c) the progress or course of construction and its conformance or nonconformance with the plans and specifications or amendments, alterations and changes thereto.

2.5.2    Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction.

2.5.3    The consent or approval by Lender to or of any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act.

2.5.4  By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Lender pursuant hereto or pursuant to the loan documents, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

2.5.5  Lender shall in no way be liable for any acts or omissions of the Borrower, agent, contractor or any person furnishing labor and/or materials used in relation to the Property.

2.6.  <u>Protection Against Liens</u>.  Borrower agrees to fully pay and discharge all claims for labor done, material and services furnished in connection with the Property, to diligently file or procure the filing of a valid notice of completion upon completion of construction, to diligently file or procure the filing of a notice of cessation upon the event of a cessation of labor on the work of improvement for a continuous period of thirty (30) days or more, and to take all other reasonable steps to forestall the assertion of claims of lien against the Property or any part thereof and/or claims against Lender.  Borrower irrevocably appoints, designates and authorizes Lender as its agent (said agency being coupled with an interest) with the authority, but without any obligation, to file for record any notice of completion, cessation of labor, or any other notice that Lender deems necessary or desirable to protect its interests under the Note or the Loan Documents.  Nothing herein contained shall require Borrower to pay any claims for labor, materials, or services which Borrower in good faith disputes and which Borrower, at its own expense, is currently and diligently contesting; provided that Borrower shall, within ten (10) days after filing of any claim of lien, record in the Office of the County Recorder where the Property is located, obtain a surety bond sufficient to release said claim of lien or post such other security or make such other arrangements as Lender may approve in writing.

2.7.  <u>Books, Records and Plans</u>.  Borrower shall maintain full and complete books of account and other records concerning the Property, and shall furnish to Lender, at any time and from time to time, such financial data, plans and specifications as Lender shall reasonably request relating to the Property.  Borrower shall maintain at all times a full and current set of working drawings on the site of the Property and available for inspection by Lender or its representatives.

2.8.  <u>Relationship</u>.  Nothing contained herein shall be deemed or construed by the parties hereto or any third person to create a partnership or joint venture or any association between the parties other than the relationship of lender and borrower.

**3.**  **Security.**  This Note is secured by: (i) a Deed of Trust dated of even date herewith (the "***Hillcrest Deed of Trust***"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "***Hillcrest Property***"), (ii) a Deed of Trust dated of even date herewith (the "***Airole Deed of Trust***"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 944 Airole Way, Los Angeles, California 90077 (the "***Airole Property***"), (iii) a Deed of Trust dated of even date

herewith (the "***Bellagio Deed of Trust***"), executed by 10701 Bellagio Road, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 10701 Bellagio Road, Los Angeles, California (the "***Bellagio Property***"); (iv) a Deed of Trust dated of even date herewith (the "***Carcassonne Deed of Trust***"), executed by Carcassonne Fine Homes, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 627 North Carcassonne Road, Los Angeles, California (the "***Carcassonne Property***"), (v) a Deed of Trust dated of even date herewith (the "***Stone Ridge Deed of Trust***"), executed by Marbella Construction, Inc., as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 3381 Stone Ridge Lane, Los Angeles, California (the "***Stone Ridge Property***") and (vi) a Deed of Trust dated of even date herewith (the "***Londonderry Deed of Trust***"), executed by 1369 Londonderry Estate, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1369 Londonderry Place, Los Angeles, California (the "***Londonderry Property***"). The Hillcrest Deed of Trust, the Airole Deed of Trust, the Bellagio Deed of Trust, the Carcassonne Deed of Trust, the Stone Ridge Deed of Trust and the Londonderry Deed of Trust are collectively referred to herein as the "***Deeds of Trust***". The Hillcrest Property, the Airole Property, Bellagio Property, the Carcassonne Property, the Stone Ridge Property and the Londonderry Property are collectively referred to herein as the "***Property***".

    **4.**    **Application of Payments**. All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

    **5.**    **Address for Payments**. All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

    **6.**    **No Offset; Holder in Due Course**. Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

    **7.**    **Waivers**. Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

                                                    **- 4 -**

**8.    Default Interest; Acceleration**.  The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder.  Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10.00% above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.  The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event.  The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

**9.    Lawful Money; Costs of Collection**.  All amounts payable hereunder are payable in lawful money of the United States.  Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

**10.    Due on Sale and Encumbrance**.  Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable.  If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the

Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

11.  **Usury Protection**. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "*Maximum Rate*"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

12.  **Governing Law; Venue; Joint and Several Liability**. This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

13.  **Fees and Expenses**. Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other Loan Documents and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

14.  **Commercial Purpose**. Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly the development of the Property. Borrower does not occupy, and does not intend to occupy, the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property and no principal or owner of Borrower (including but not limited to Nile Niami) occupies or intends to occupy the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property.

15.     **Severability**.  If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note.  If any provision or part thereof of this Note is stricken in accordance with the provisions of this Section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

16.     **Limits on Senior Loan Balances**.  Borrower agree that at no time while any portion of the Note remains unpaid shall senior indebteness: (i) encumbering the Hillcrest Property exceed $28,700,000.00, (ii) encumbering the Airole Property exceed $115,000,000.00, (iii) encumbering the Londonderry Property exceed $29,000,000.00, (iv) encumbering the Bellagio Property exceed $34,000,000.00, (v) encumbering the Carcassonne Property exceed $34,000,000.00, or (vi) encumbering the Stone Ridge Property exceed $17,100,000.00.

17.     **Prior Notes**.  The Prior Notes are hereby cancelled and superseded by this Note.

Crestlloyd, LLC,
a California limited liability company

By: _____
      Nile Niami, Manager

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

This document filed for recording
by Chicago Title Insurance and about
us an accommodation only. It has not
been examined us to its execution or
as its effect upon the title.

112434

This is to certify that this is a full, true and correct
copy of the original recorded in the office of the
County Recorder of _LOS ANGELES_

8-30-19

as Document No. _2019 088904 6_
CHICAGO TITLE

By_____ *Kal Only*_____
TITLE OFFICER

Recording Requested By       )
and When Recorded Mail To:   )
                             )
                             )
WOLF, RIFKIN, SHAPIRO,       )
SCHULMAN & RABKIN, LLP       )
11400 West Olympic Blvd., 9th Floor )
Los Angeles, California 90064-1582 )
Attention: Steven H. Zidell, Esq.  )

Space Above This Line For Recorder's Use

## AMENDMENT OF NOTE AND DEEDS OF TRUST

This Amendment of Note and Deeds of Trust (the "**Amendment**") is entered into as of June 18, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A.    Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.    Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.    10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.    Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of Lender, as

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.     Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.     1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.     The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.     Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

I.     Borrower and Lender wish to execute and record this Amendment to extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by this Amendment. The Original Note, as amended by this Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     <u>Definitions</u>. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.     <u>Maturity Date Extension</u>. The maturity date of the Note is hereby extended to August 17, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable. By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.    Interest Rate; Total Payoff Amount.  The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Note, and as of the prior maturity date of June 18, 2019, the current balance of unpaid principal due and owing is Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00).  Additionally, the parties acknowledge and agree that the interest rate of the Note is being increased by this Amendment to 4.0% per annum, to begin accruing on the unpaid principal balance on June 18, 2019, until the Maturity Date.  Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $400,000.00 to Borrower, which shall be added as principal to the current principal balance of $30,188,235.00, such that the total unpaid balance of principal shall be Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00) ("New Principal"), which shall be considered the New Principal as of June 18, 2019.  The parties further agree that, pursuant to the interest rate established by this Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), including the New Principal, and Two Hundred One Thousand One Hundred Twenty Eight and 12/100 Dollars ($201,128.12) in interest accrued at 4.0% per annum on the New Principal between June 18, 2019 and the Maturity Date.  Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.

4.    Releases, Covenants Not to Litigate, Assignments and Indemnification.  As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

A.    Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term **"Released Parties"** shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys) of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "Released Claims");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.    _Continuing Security_.  The Deed of Trust, as modified by this Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by this Amendment, and all other indebtedness and obligations secured by the Deed of Trust.  Except as expressly modified by this Amendment, the Deed of Trust shall remain in full force and effect, and this Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.    The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

B.    The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

C.    The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

D.    The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

E.    The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

F.    The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.    <u>No Other Modifications</u>.  Except as modified expressly or by necessary implication hereby and by this Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect.  To the extent the provisions of this Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.    <u>Successors and Assigns</u>.  All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:

LENDER:

CRESTLLOYD, LLC,
a California limited liability company

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: _____
    Nile Niami, Manager

By: YOGI Management Trust, its manager

By: _____
    Joseph Englanoff, Trustee

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
    Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

3705229.1

-6-

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:                                    LENDER:

CRESTLLOYD, LLC,                             YOGI SECURITIES HOLDINGS, LLC,
a California limited liability company        a Nevada limited liability company

                                             By: YOGI Management Trust, its manager

By:_____          By: _____
    Nile Niami, Manager                          Joseph Englanoff, Trustee

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By:_____
    Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager

3705229.1                                    -6-

**CALIFORNIA ACKNOWLEDGMENT**                                      CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of LOS ANGELES

On JUNE 26, 2019 before me, Nigel Gibbs, Notary Public
_____Date_____          ___Here Insert Name and Title of the Officer___

personally appeared _____ Nile Niami _____
                                 ___Name(s) of Signer(s)___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> NIGEL GIBBS
> Notary Public - California
> Los Angeles County
> Commission # 2164239
> My Comm Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
              ___Signature of Notary Public___

*Place Notary Seal and/or Stamp Above*

---------------------------- **OPTIONAL** ----------------------------
*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: Amendment of Note & Deeds of Trust

Document Date: 6/26/19 _____ Number of Pages: 6

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer – Title(s): _____     ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General            ☐ Partner – ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact       ☐ Individual       ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator ☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____                 ☐ Other: _____
Signer is Representing: _____       Signer is Representing: _____

©2018 National Notary Association

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On 7|10|2019 , before me, Yolanda Chavez - , a Notary Public in and for said State, personally appeared Joseph Balanoff , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

YOLANDA CHAVEZ
Notary Public – California
Los Angeles County
Commission # 2204195
My Comm. Expires Aug 3, 2021

RECORDER MEMO: This COPY has not been QUALITY ASSURED.



**This page is part of your document - DO NOT DISCARD**



# 20190907091



**Pages:**
**0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/05/19 AT 08:00AM**

| | |
|---|---:|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |





**L E A D S H E E T**



201909050150015

**00017107247**



010099932

**SEQ:**
**16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E175M2

T72



RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

112434-994-LT2

Recording Requested By )
and When Recorded Mail To: )
)
WOLF, RIFKIN, SHAPIRO, )
SCHULMAN & RABKIN, LLP )
11400 West Olympic Blvd., 9th Floor )
Los Angeles, California 90064-1582 )
Attention: Steven H. Zidell, Esq. )



09/05/2019

*20190907091*

_____
Space Above This Line For Recorder's Use

## SECOND AMENDMENT OF NOTE AND DEEDS OF TRUST

This Second Amendment of Note and Deeds of Trust (the "**Second Amendment**") is entered into as of August 17, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A.     Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.     Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.     10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.     Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of Lender, as

3781470 1                                    -1-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.    Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.    1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.    The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.    Borrower and Lender executed an Amendment of Note and Deed of Trust dated June 18, 2019 (the "**First Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00).

I.    Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

J.    Borrower and Lender wish to execute and record this Second Amendment to further extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by the First Amendment and this Second Amendment. The Original Note, as amended by the First Amendment and this Second Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    <u>Definitions</u>. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Second Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

3781470.1                                    -2-

2.      <u>Maturity Date Extension</u>.  The maturity date of the Note is hereby extended to October 16, 2019 (the **"Maturity Date"**), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable.  By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.      <u>Interest Rate; Total Payoff Amount</u>.  The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Original Note.  The parties acknowledge and agree that pursuant to the terms of the First Amendment, Lender funded an additional $400,000.00 to Borrower, adding such amount to the unpaid principal balance, and increased the interest rate of the Original Note to 4.0% per annum.  The parties acknowledge and agree that as of the prior maturity date of August 17, 2019, the current balance of unpaid principal and interest due and owing is Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), which includes (i) the principal amount established by the First Amendment of $30,588,235.00 ("**First Amendment Principal**"), and (ii) interest of $201,128.12 accrued at a rate of 4.0% per annum between June 18, 2019, and August 17, 2019.  The parties further acknowledge and agree that on August 17, 2019, the unpaid interest of $201,128.12 shall be added as principal to the First Amendment Principal balance of $30,588,235.00.  Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $739,000.00 to Borrower, which shall also be added as principal to the First Amendment Principal balance of $30,588,235.00.  Accordingly, the total updated unpaid principal balance shall include (i) the First Amendment Principal balance of $30,588,235.00, (ii) the unpaid interest of $201,128.12, and (iii) Lender's additional funding of $739,000.00 to Borrower, for a total updated principal balance of Thirty One Million Five Hundred Twenty Eight Thousand Three Hundred Sixty Three and 12/100 Dollars ($31,528,363.12) ("**New Principal Balance**"), which shall be considered the New Principal Balance as of August 17, 2019.  The parties further acknowledge and agree that pursuant to the interest rate established by the First Amendment and maintained in this Second Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty One Million Seven Hundred Thirty Five Thousand Six Hundred Seventy Two and 72/100 Dollars ($31,735,672.72), including the New Principal Balance, and Two Hundred Seven Thousand Three Hundred Nine and 60/100 Dollars ($207,309.60) in interest accrued at 4.0% per annum on the New Principal Balance between August 17, 2019 and the Maturity Date.  Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Second Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.  Lender may, at its sole option, pay for such attorneys' fees and costs, title company charges and recording fees out of the proceeds of the additional funding of $739,000.00.

4.      <u>Releases, Covenants Not to Litigate, Assignments and Indemnification</u>.  As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

A.      Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term **"Released Parties"** shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys)

3781470.1                                    -3-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Second Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "**Released Claims**");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.   Continuing Security.  The Deed of Trust, as modified by the First Amendment and this Second Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by the First Amendment and this Second Amendment, and all other indebtedness and obligations secured by the Deed of Trust.  Except as expressly modified by the First Amendment and this Second Amendment, the Deed of Trust shall remain in full force and effect, and this Second Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.   The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

3781470 1                                    -4-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

B.      The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

C.      The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

D.      The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

E.      The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

F.      The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.      <u>No Other Modifications</u>.  Except as modified expressly or by necessary implication hereby and by this Second Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect.  To the extent the provisions of this Second Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Second Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.      <u>Successors and Assigns</u>.  All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

3781470.1

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

LENDER:

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

    By: _____
        Joseph Englanoff, Trustee

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
    Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

3781470.1                                           -6-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF LOS ANGELES        )

On September 3, 2019, before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Joseph Englanoff, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_ (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

3781470.1                    -7-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.
Case 2:20-bk-80055-PS Claim 325 Filed 05/24/22 Entered 05/24/22 07:42: Page 29 of
Main Document 43 Page 161 of 220

9

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On _September 3, 2019_ before me, _Nigel Gibbs_____, a Notary Public in and for said State, personally appeared _Nile Niami_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> NIGEL GIBBS
> Notary Public - California
> Los Angeles County
> Commission # 2164239
> My Comm. Expires Oct 4, 2020

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

3781470.1                                    -8-



**This page is part of your document - DO NOT DISCARD**



## 20181126580



**Pages:**
**0014**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/07/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 83.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 233.00 |



**L E A D S H E E T**



**201811070180001**

**00015924543**



**009450611**

**SEQ:**
**12**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

2

11/07/2018

*20181126580*

**RECORDING REQUESTED BY:**

CHICAGO

**AND WHEN RECORDED MAIL TO:**

WOLF, RIFKIN, SHAPIRO, SCHULMAN
& RABKIN LLP
11400 V OLYMPIC BLVD  9TH FL
L.A. CA 90064

SPACE ABOVE FOR RECORDER'S USE ONLY

DEED OF TRUST
**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

**TITLE ORDER NO. 00094109-997-BS5-KD3**          **APN NO. 4369-026-021**

   **This Deed of Trust,** made as of October 16, 2018, between Crestlloyd, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

   Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

   **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

   **For the Purpose of Securing:**

   1.     Performance of each agreement of Trustor incorporated by reference or contained herein;

   2.     Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00 executed by Trustor in favor of Beneficiary or order;

   3.     Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

   4.     Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3281725.2

2

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3281725.2              3

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)     That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)     That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

### SEE RIDER TO DEED OF TRUST ATTACHED HERETO.

3281725.2                                              4

7

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Crestlloyd, LLC,
a California limited liability company

By:
Nile Niami, Manager



## RIDER TO DEED OF TRUST

1.    <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.    <u>Insurance</u>.

a.    <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

an encumbrance (the "***Property***") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

   b. <u>Property Insurance</u>. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

   c. <u>Insurance Policies</u>. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3. <u>Remedies</u>. Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

R-2

4.      Appointment of Receiver.

        a.      Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

        b.      Reimbursement of Advances.

                (i)      Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

                (ii)      In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

        c.      Possession and Operation of Properties. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.      Reserved.

R-3

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

Crestlloyd, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

R-4

12

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not truthfulness,
accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On ⎯October 16⎯, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

13

## REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

     The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____          MAIL RECONVEYANCE TO:

By: _____          _____
Name: _____          _____
Title: _____          _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

14

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

(Property commonly known as: 944 Airole Way, Los Angeles, CA)

# EXHIBIT "7"

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | CRESTLLOYD, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California, LA Div. |
| Case number | 2:21-bk-18205-DS |

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | HILLDUN CORPORATION | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>c/o Brutzkus Gubner, Attn:  Jerrold L. Bregman<br>Name<br><br>5445 DTC Parkway, Suite 825<br>Number     Street<br><br>Denver          CO          80111<br>City               State          ZIP Code<br><br>Contact phone  (646) 251-9699<br><br>Contact email  jbregman@bg.law | **Where should payments to the creditor be sent?** (if different)<br><br>Hilldun Corporation, Attn: Joshua W. Kapelman<br>Name<br><br>225 West 35th Street<br>Number     Street<br><br>New York          NY          10001<br>City               State          ZIP Code<br><br>Contact phone  (212) 244-2600<br><br>Contact email  josh@hilldun.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____<br>MM  / DD  / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _Not less than_ 5,000,000.00 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Guaranty of factoring agreement.  See Addendum attached.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** See accompanying DOT recorded 09/04/20

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ unknown

**Amount of the claim that is secured:** $ unknown

**Amount of the claim that is unsecured:** $ unknown (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ TBD

**Annual Interest Rate** (when case was filed) TBD %

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12/22/2021
                  MM / DD / YYYY

_____
Si

**Print the name of the person who is completing and signing this claim:**

| Name | Joshua W. Kapelman | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Executive Vice President, Managing Director | | |
| Company | HILLDUN CORPORATION | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 225 West 35th Street | | |
| | Number         Street | | |
| | New York | NY | 10001 |
| | City | State | ZIP Code |
| Contact phone | (212) 244-2600 | Email | josh@hilldun.com |

<u>**ADDENDUM TO PROOF OF CLAIM**</u>

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

```
-------------------------------------------------------------x
                                            :
In re:                                      :        Chapter 11
                                            :
CRESTLLOYD, LLC.,                           :        Case No. 2:21-bk-18205-DS
                                            :
                      Debtor.               :
                                            :
-------------------------------------------------------------x
```

**ADDENDUM TO PROOF OF CLAIM OF HILLDUN CORPORATION**

Hilldun Corporation (the "Hilldun"), through its counsel Brutzkus Gubner, asserts the proof of claim (the "<u>Proof of Claim</u>") to which this Addendum is annexed and is a material part, against Crestlloyd, LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "<u>Debtor</u>"), and states as follows:

**I.       <u>Background</u>.**

1.       <u>Necessity of Addendum</u>.  This Addendum is annexed to and incorporated by Hilldun's Proof of Claim and summarizes Hilldun's claims (collectively, the "<u>Claim</u>") against the Debtor.

2.       <u>Supporting Documentation</u>.  The documentation supporting the Claim is voluminous and, on information and belief, most of the documents are in the possession of the Debtor.  Without limiting the foregoing, attached hereto is a true and correct copy of the each of the following documents:  (1) that certain *Rider to Guaranty and Factoring Documents*, dated February 11, 2020, signed by the Debtor (the "Guaranty"); and (2) that certain *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing*, recorded in the Official Records of the Recorder's Office, Los Angeles County, California, September 4, 2020.  The Claim is

DocuSign Envelope ID: 6S998E1F-6925-485A-BBCB-FE5EA25CC791

supported by the foregoing documents together with other documents not attached hereto but which reflect the terms, conditions, promises and other terms relating thereto.

## II.    The Claim.

3.     Hilldun's Claim against the Debtor is stated in the amount of not less than five million US dollars ($5,000,000.00) and includes the following elements: All amounts subject to the Guaranty arising from and relating to that certain *Discount Factoring Agreement*, dated as of April 13, 2017.

4.     <u>No Judgment</u>.  No judgment has been rendered in respect of the Claim.

5.     <u>No Counterclaims or Setoffs</u>.  Upon information and belief, no portion of the Claim is subject to any setoff, defense or counterclaims by the Debtor.

6.     <u>No Assignment</u>.  As of the date hereof, Hilldun has not assigned or otherwise transferred or hypothecated any portion of the Claim.

## III.    Reservation of Rights

7.     <u>Right to Amend</u>.  Hilldun expressly reserves the right to amend or supplement its Proof of Claim to correct, clarify, explain, expand, supplement or add to any portion of the Claim asserted herein, or otherwise to increase the dollar amount of such Claim and/or provide additional information and documentation in connection with the Claim, including as it may be amended, and including in response to any objection.  Moreover, Hilldun specifically reserves the right to conduct discovery with respect to this matter in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

8.     <u>No Admission</u>.  Nothing contained in this Proof of Claim shall be deemed an admission by Hilldun.  Hilldun expressly reserves the right to withdraw this Proof of Claim in his sole discretion with the effect to be as if this Proof of Claim had never been filed.

2748761

9.      <u>Additional Proofs of Claim</u>.  Hilldun expressly reserves its right to file any

separate or additional proofs of claim with respect to the Claim, or any portion thereof, set forth

herein or otherwise (which proofs of claim, if so filed, shall not be deemed to supersede this

Proof of Claim unless expressly so stated therein), or to file additional proofs of claim in respect

of any other claim against or liability of the Debtor, or for any other reason.  Hilldun also

reserves the right to claim that all or any portion of the costs and expenses incurred by it after the

Petition Date in connection with its claims are administrative expenses entitled to first priority

under Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

10.     <u>Additional Reservations</u>.  In addition, the filing of this Proof of Claim is

not intended, and shall not be deemed or construed as: (a) consent by Hilldun to the jurisdiction

of the Bankruptcy Court or any other court for any purpose other than with respect to issues

directly related to the Claim asserted in this Proof of Claim; (b) consent by Hilldun to a trial in

this Bankruptcy Court or in any other court or any proceedings as to any and all matters so

triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. §

157 or otherwise; (c) a waiver or release of the right of Hilldun to have any and all final orders in

any and all non-core matters or proceedings entered only after *de novo* review by the United

States District Court; (d) a waiver or release of any right which Hilldun may have to a jury trial;

(e) a waiver of the right to move to withdraw the reference in respect of the subject matter of this

Proof of Claim, any objection thereto or other proceeding which may be commenced in the

Debtor's bankruptcy case against or otherwise involving Hilldun; or (f) an election of remedies.

11.     <u>Identification of Counsel Not Consent to Service</u>.  Identification of Jerrold

L. Bregman and Brutzkus Gubner ("<u>Brutzkus</u>") to receive all notices and correspondence related

to the Claim, shall not be construed as an appointment of Jerrold L. Bregman or Brutzkus as

authorized agents of Hilldun, either expressly or impliedly, for purposes of receiving service of

process pursuant to Rule 4 of the Federal Rules of Civil Procedure or other applicable law.

To the best of the undersigned's knowledge, information and belief, the above

statements are true and accurate based upon the information currently available to the

undersigned.

Dated:  December 22, 2021

HILLDUN CORPORATION

_____

Joshua ...............

Its Executive Vice President, Managing Director

2748761

# EXHIBIT 1

## RIDER TO GUARANTY AND FACTORING DOCUMENTS

This RIDER TO GUARANTY AND FACTORING DOCUMENTS (this "Rider"), dated as of February **11**, 2020, is executed by N:Philanthropy LLC ("Client") and Crestlloyd, LLC ("Guarantor") in favor of and delivered to Hilldun Corporation ("Hilldun").

WHEREAS, Client and Hilldun have entered that certain Discount Factoring Agreement dated April 13, 2017 (as amended from time to time, the "Factoring Agreement" and, together with various instruments, documents and agreements now or hereafter entered into between Hilldun and Client, all as amended from time to time, the "Factoring Documents"); and

WHEREAS, Guarantor is executing that certain Guaranty dated February **11**, 2020 for the benefit of Hilldun (the "Guaranty") with respect to the obligations and indebtedness at any time owing by Client to Hilldun under the Factoring Documents; and

WHEREAS, Client, Guarantor and Hilldun have agreed that the Factoring Documents and the Guaranty be governed by and construed in accordance with the laws of the State of New York and that jurisdiction be in the Supreme Court of the State of New York, County of New York, or the jurisdiction of the United States District Court for the Southern District of New York; and

WHEREAS, in the event, contrary to the clear intent of Client, Guarantor and Hilldun, the Guaranty and the Factoring Documents are deemed governed by and construed in accordance with the laws of the State of California and that jurisdiction is deemed to be in any local, state or federal court located within the County of Los Angeles, State of California, Guarantor, Client and Hilldun have agreed to execute and deliver this Rider, which Rider shall be a rider to the Guaranty and the Factoring Documents.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor, Client and Hilldun (each a "Party" and, collectively, the "Parties") agree as follows:

## AGREEMENT

I.    WAIVERS BY GUARANTOR UNDER CALIFORNIA LAW.

Guarantor hereby unconditionally, absolutely and irrevocably waives:

(a)    (1) notice of any loans, advances or other financial accommodations made or extended to Client under the Factoring Documents or the existence of any

-1-

Obligations (as defined in the Factoring Agreement); (2) notice of the amount of the Obligations; (3) notice of presentment for payment, demand, protest, and notice thereof as to any instruments among the Factoring Documents; (4) notice of any breach by Client under the Factoring Documents; and (5) all other notices (except if such notice is specifically required to be given to Guarantor under the Guaranty or under any Factoring Document) and demands to which Guarantor might otherwise be entitled.

(b)    any right, including but not limited to under Section 2845 or 2850 of the California Civil Code (the "CCC"), to require Hilldun to institute suit against, or to exhaust any rights and remedies which Hilldun has or may have against, Client or any third party or against any collateral for the Obligations. Guarantor acknowledges that the Guaranty is a guaranty of performance and not of collectability. In this regard, Guarantor agrees that it is bound to the payment of all Obligations, whether now existing or hereafter arising, as fully as if such Obligations were directly owing to Hilldun by Guarantor. Guarantor further waives any defense arising by reason of any disability or other defense (other than the defense that the Obligations shall have been fully and finally performed and indefeasibly paid) of Client or by reason of the cessation from any cause whatsoever of the liability of Client in respect thereof.

(c)    (1) any right to assert against Hilldun any defense (legal or equitable), set-off, counterclaim or claim which Guarantor may now or at any time hereafter have against Client or any other party liable to Hilldun; (2) any defense, set-off, counterclaim or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Obligations or any security therefor; (3) any defense Guarantor has to performance under the Guaranty, and any right Guarantor has to be exonerated, under Section 2819, 2822, or 2825 of the CCC, or otherwise, arising by reason of: the impairment or suspension of Hilldun's rights or remedies against Client; the alteration or modification by Hilldun of any of the Obligations of Client; any discharge or release of any of Client's Obligations to Hilldun by operation of law as a result of Hilldun's intervention or omission; or the acceptance by Hilldun of anything in partial satisfaction of any of the Obligations of Client; (4) the benefit of any statute of limitations affecting Guarantor's liability under the Guaranty or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the Obligations of Client shall similarly operate to defer or delay the operation of such statute of limitations applicable to Guarantor's liability under the Guaranty.

(d)    any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by Hilldun, including but not limited to any defense based upon an election of remedies by Hilldun under Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure (the "CCP") or any similar law of California, New York or any other jurisdiction; or (ii) any election by Hilldun under Bankruptcy Code Section

-2-

1111(b) to limit the amount of, or any collateral securing, its claim against the Client.

II.    SECTION 2856 WAVIERS BY GUARANTOR.

Pursuant to Section 2856 of the CCC:

(a)    Guarantor waives any right of subrogation, reimbursement, indemnification or contribution and any other rights and defenses that are or may become available to Guarantor by reason of Sections 2787 to 2855, inclusive, of the CCC.

(b)    Guarantor waives any rights and defenses arising out of an election of remedies by Hilldun, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Client by the operation of Section 580d of the CCP or otherwise.

(c)    Guarantor waives any rights and defenses that Guarantor may have because the Guaranty or any of the Obligations of Client are secured by real property or an estate for years.  These rights and defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d or 726 of the CCP to the Guaranty or any of the Obligations of Client.  This means, among other things:

(1)    Hilldun may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Guarantor or Client.

(2)    If Hilldun forecloses on any real property collateral pledged by Client or Guarantor:

(A)    The amount of the indebtedness of Guarantor under the Guaranty or the Obligations of Client may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(B)    Hilldun may collect from Guarantor even if Hilldun, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Client.

This is an unconditional and irrevocable waiver of any rights and defenses Guarantor

-3-

may have because the indebtedness of Guarantor under the Guaranty or Client's Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the CCP.

### III.    FORECLOSURE ON REAL PROPERTY SECURITY OF GUARANTOR.

If the Guaranty or any of the Obligations of Client at any time are secured by a mortgage or deed of trust upon real property or an estate for years, Hilldun may elect, in its sole discretion, upon a default or breach under the Guaranty, the Factoring Documents or any of the Obligations (and as provided in the Factoring Documents), to foreclose such mortgage, deed of trust or estate judicially or nonjudicially in any manner permitted by law, before or after enforcing the Guaranty, without diminishing or affecting the liability of Guarantor under the Guaranty except to the extent the Obligations of Client and the indebtedness of Guarantor under the Guaranty are repaid with the proceeds of such foreclosure. Guarantor understands that (a) by virtue of the operation of California's antideficiency law applicable to nonjudicial foreclosures, an election by Hilldun nonjudicially to foreclose such a mortgage, deed of trust or estate probably would have the effect of impairing or destroying any rights of subrogation, reimbursement, contribution or indemnity of Guarantor (to the extent Guarantor would otherwise have any such rights) against Client or other guarantors or sureties, and (b) absent the waivers given by Guarantor herein, such an election would prevent Hilldun from enforcing the Guaranty against Guarantor. Guarantor hereby represents that Guarantor understands the foregoing and that pursuant to the Guaranty Guarantor is relinquishing defenses to the enforceability of the Guaranty. With knowledge thereof, Guarantor hereby waives any right to assert against Hilldun any defense to the enforcement of the Guaranty, whether denominated "estoppel" or otherwise, based on or arising from an election by Hilldun nonjudicially to foreclose any such mortgage, deed of trust or estate for years. Guarantor understands that the effect of the foregoing waiver may be that Guarantor may have liability under the Guaranty for amounts with respect to which Guarantor may be left without rights of subrogation, reimbursement, contribution or indemnity against Client or other guarantors or sureties. Guarantor also agrees that the "fair market value" provisions of Section 580a of the CCP shall have no applicability with respect to the determination of Guarantor's liability under the Guaranty.

### IV.    GENERAL WAIVER OF DEFENSES UNDER CALIFORNIA LAW BY GUARANTOR.

**WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THE GUARANTY, GUARANTOR HEREBY UNCONDITIONALLY, ABSOLUTELY AND**

**IRREVOCABLY WAIVES AND AGREES NOT TO ASSERT ANY RIGHTS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, 2850, 2899 AND 3433 OF THE CCC, SECTIONS 580a, 580b, 580c, 580d AND 726 OF THE CCP, CHAPTER 2 OF TITLE 14 OF THE CCC AND SECTIONS 3116, 3118, 3119, 3419 AND 3605 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND ANY SIMILAR LAW OF ANY OTHER JURISDICTION.**

V.    JUDICIAL REFERENCE.

The Parties to the Guaranty and the Factoring Documents prefer that any dispute between or among them be resolved in litigation subject to the jury trial waiver set forth in the Guaranty and the Factoring Documents. If, and only if, a pre-dispute jury trial waiver of the type provided for herein is unenforceable in litigation to resolve any dispute, claim, cause of action or controversy under the Guaranty or any Factoring Documents (each, a "Claim") in the venue where the Claim is being brought pursuant to the terms of the Guaranty and the Factoring Documents, then, upon the written request of any Party, such Claim, including any and all questions of law or fact relating thereto, shall be determined exclusively by a judicial reference proceeding. Except as otherwise provided herein, venue for any such reference proceeding shall be in the state or federal court in the County or District where venue is appropriate under applicable law (the "Court"). The Parties shall select a single neutral referee, who shall be a retired state or federal judge. If the Parties cannot agree upon a referee within thirty (30) days, the Court shall appoint the referee. The referee shall report a statement of decision to the Court. Notwithstanding the foregoing, nothing in this paragraph shall limit the right of any party at any time to exercise self-help remedies, foreclose against collateral or obtain provisional remedies (including without limitation, requests for temporary restraining orders, preliminary· injunctions, writs of possession, writs of attachment, appointment of a receiver, or any orders that a court may issue to preserve the status quo, to prevent irreparable injury or to allow a Party to enforce its liens and security interests). The Parties shall bear the fees and expenses of the referee equally unless the referee orders otherwise. The referee also shall determine all issues relating to the applicability, interpretation, and enforceability of this section. The Parties acknowledge that any Claim determined by reference pursuant to this section shall not be adjudicated by a jury.

VI.   MISCELLANEOUS PROVISIONS.

(a)    Guarantor hereby represents and warrants to Hilldun that (1) Guarantor has read, understood and voluntarily executed and delivered the Guaranty and this Rider after having had the opportunity to consult with legal counsel of his and her choice regarding the Guaranty and this Rider; (2) Guarantor has the authority and capacity to enter into the

Guaranty and this Rider without the consent of any third party, and (3) there are no conditions precedent to the effectiveness of the Guaranty and this Rider that have not been satisfied or waived.

       (b)     Guarantor acknowledges that loans and advances to Client under the Factoring Documents are not intended for use in connection with the purchase of residential real property by Client or Guarantor.

       (c)     Client hereby represents and warrants to Hilldun that (1) Client has read, understood and voluntarily executed and delivered the Factoring Documents and this Rider after having had the opportunity to consult with legal counsel of his and her choice regarding the Factoring Documents and this Rider; (2) Client has the authority and capacity to enter into the Factoring Documents and this Rider without the consent of any third party, and (3) there are no conditions precedent to the effectiveness of the Factoring Documents and this Rider that have not been satisfied or waived.

**N:PHILANTHROPY, LLC**

By: _____
Name: Yvonne Niami
Title: Sole Manager & Member

**CRESTLLOYD, LLC**

By: _____
Name: Nile Niami
Title: Manager & Member

By: _____
Name: Yvonne Niami
Title: Manager & Member

Accepted and Agreed:

**HILLDUN CORPORATION**

By: _____
Name: Joshua Kapelman
Title: Executive Vice President

-6-

**CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC**

STATE OF CALIFORNIA          }
                             }
COUNTY OF _Los Angeles_      }

    On _April 15, 2020_ before me, _Nigel Gibbs, Notary Public_ personally appeared _Yvonne Niami_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WHEREAS my hand and official seal.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

Signature of Notary Public

**CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC**

STATE OF CALIFORNIA          }
                             }
COUNTY OF _Los Angeles_      }

    On _April 15, 2020_ before me, _Nigel Gibbs, Notary Public_ personally appeared _Nina Niami_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WHEREAS my hand and official seal.

Signature of Notary Public

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

-7-

# EXHIBIT 2

**FOR REFERENCE ONLY: 20201058770**

RECORDING REQUESTED BY:

Pacific Coast Title Company

AND WHEN RECORDED MAIL TO:

Racey Cohn, Esq.
Brutzkus Gubner Rozansky
Seror Weber LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Assignment of Rents,
Security Agreement And Fixture Filing

**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**



This page is part of your document - DO NOT DISCARD

## 20201058770





Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/04/20 AT 08:00AM**

Pages:
0024

| | |
|---|---|
| FEES: | 133.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 358.00 |



LEADSHEET



202009041030027

00018844913



011145133

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

E08_200903_7001067

E534011

RECORDING REQUESTED BY:

Pacific Coast Title Company

AND WHEN RECORDED MAIL TO:

Racey Cohn, Esq.
Brutzkus Gubner Rozansky
Seror Weber LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed Of Trust, Assignment Of Rents,
Security Agreement And Fixture Filing

**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Racey Cohn, Esq.
Brutzkus Gubner Rozansky Seror Weber LLP
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367

APN# 4369-026-021

10141330

Space above this line for Recorder's use

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this ("**Deed of Trust**") is made as of February ___11___, 2020, by CRESTLLOYD, LLC, a California limited liability company with offices at 8981 W. Sunset Blvd, Suite 303, West Hollywood, California 90069, as trustor ("**Trustor**"), to PACIFIC COAST TITLE COMPANY, as trustee ("**Trustee**"), for the benefit of HILLDUN CORPORATION, a New York corporation with offices at 225 West 35th St, New York, New York 10001, as beneficiary ("**Beneficiary**").

## 1. GRANT IN TRUST.

1.1   The Property.   For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Trustor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Trustee, in trust for the benefit of Beneficiary, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty, as hereinafter defined, being hereinafter collectively referred to as the "**Property**"):

(a)   The real property located in the County of Los Angeles, State of California, as described in **Exhibit A** hereto, with a street address of 944 Airole Way, Los Angeles, California 90077 (the "**Real Property**");

(b)   All buildings, structures, improvements, fixtures and appurtenances now or hereafter located at or placed on, in or under or comprising a part of the Real Property, including but not limited to any houses, docks, wharves, ramps or moorings, and all apparatus and equipment now or hereafter attached in any manner to the Real Property or any building on comprising a part of the Real Property, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "**Improvements**");

(c)   All easements and rights of way appurtenant to the Real Property; all crops growing or to be grown on the Real Property (including all such crops following severance from the Real Property); all standing timber upon the Real Property (including all such timber following severance from the Real Property); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Real Property) and shares of stock pertaining to such water or water rights, ownership of which affect the Real Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Real Property;

1

     (d)   All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Real Property or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

     (e)   All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Real Property, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Real Property, Improvements, or the other property described above or any part of them; and

     (f)   All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

    1.2   <u>Fixture Filing</u>.  This Deed of Trust is intended to be and constitutes a financing statement filed as a fixture filing under Section 9502(c) of the California Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Real Property or any building located thereon.

## 2.  <u>THE SECURED OBLIGATIONS</u>.

    2.1   <u>Purpose of Securing</u>.  Trustor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligations (the "**Secured Obligations**") in any order of priority that Beneficiary may choose:

     (a)   Payment of all obligations of Trustor to Beneficiary now or hereafter arising under that certain Guaranty executed by Trustor for the benefit of Beneficiary dated February _____11_____, 2020 which is limited to Five Million Dollars ($5,000,000) plus the costs and expenses referenced in Section 5.8 of this Deed of Trust (as amended, supplemented, or modified from time to time, the "**Guaranty**") with respect to the payment and performance of all debts, liabilities, obligations and duties of  N:PHILANTHROPY LLC, a California limited liability company ("**Obligor**"), to Beneficiary under that certain Discount Factoring Agreement entered into between Obligor and Beneficiary dated April 13, 2017 (as supplemented and/or amended from time to time, the  "**Factoring Agreement**") and/or under any other  related instruments, documents and agreements between Beneficiary and Obligor (together with the Factoring Agreement, all as amended from time to time, collectively, the "**Factoring Documents**"), whether such debts, liabilities, obligations and duties of Obligor are by acceleration or otherwise, are now or hereafter owing, are direct or indirect, fixed or contingent, are now due or hereafter arising, or are matured and not yet matured, (the "**Obligor Liabilities**").  This Deed of Trust also secures all obligations of Trustor under any amendments to the Guaranty or any successor agreement or instrument which restates or supersedes the Guaranty in its entirety;

     (b)   Payment and performance of all obligations of Trustor under this Deed of Trust; and

     (c)   Payment and performance of all future advances and other obligations that Trustor

2

(or any successor in interest to Trustor) may agree to pay and/or perform (whether as principal, surety or guarantor) to or for the benefit of Beneficiary.

2.2 <u>Terms of Secured Obligations</u>. All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Guaranty described in Paragraph 2.1(a) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations.

## 3. <u>ASSIGNMENT OF RENTS</u>.

3.1 <u>Assignment</u>. Trustor hereby irrevocably, absolutely, presently and unconditionally assigns to Beneficiary all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "**Rents**"), and confers upon Beneficiary the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Trustor as bonus or royalty payments, and any damages or other compensation payable to Trustor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph. THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.

3.2 <u>Grant of License</u>. Notwithstanding the provisions of Paragraph 3.1, Beneficiary hereby confers upon Trustor a license ("**License**") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing. If an Event of Default has occurred and is continuing, Beneficiary shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Trustor, and without regard to the adequacy of the security for the Secured Obligations.

## 4. <u>GRANT OF SECURITY INTEREST</u>.

4.1 <u>Grant of Security Interest</u>. Trustor grants to Beneficiary a security interest in, and pledges and assigns to Beneficiary, all of Trustor's right, title and interest now or hereafter acquired in and to all of the following described personal property (collectively, the "**Personalty**"):

(a) All tangible personal property of every kind and description, whether stored on the Property or elsewhere, including, without limitation, all goods, materials, supplies, tools, books, records, chattels, furniture, fixtures, equipment, and machinery, and which in all cases is (i) used or useful or acquired in connection with any construction undertaken on the Property or the maintenance of the Property and the Improvements, or (ii) affixed or installed, or to be affixed or installed, in any manner on the Real Property or the Improvements;

(b) All crops growing or to be grown on the Property (including all such crops following severance from the Property); all standing timber upon the Property (including all such timber following severance from the Property); all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Property) and shares of stock pertaining to such water or water rights, ownership of which affect the Property; and all architectural and engineering plans, specifications and drawings, and as-built drawings which arise from or relate to the Real Property or the Improvements;

(c) All general intangibles and rights relating to the Property, including, without limitation, all permits, licenses and claims to or demands for the voluntary or involuntary

3

conversion of any of the Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Property or any part of it;

(d)    All deposit accounts from which Trustor may from time to time authorize Beneficiary to debit payments due on the Secured Obligations;

(e)    All substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

## 5.  RIGHTS AND DUTIES OF THE PARTIES.

5.1    Representations, Warranties, Acknowledgments and Covenants.  Trustor represents and warrants that Trustor lawfully possesses and holds fee simple title to the Property.  Trustor further represents that no third party has any rights to own, occupy, acquire or use the Property. Trustor acknowledges that the following covenants: Nos. 1, 2, 3, 4, 5, 6, 7, 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust.

5.2    Taxes, Assessments, Liens and Encumbrances.  Trustor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it.  Trustor shall immediately discharge any lien on the Property which Beneficiary has not consented to in writing or which was not a lien of public record prior to the date hereof, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Deed of Trust.

5.3    Damages and Insurance and Condemnation Proceeds.

(a)    Trustor hereby absolutely and irrevocably assigns to Beneficiary, and authorizes the payor to pay to Beneficiary, the following claims, causes of action, awards, payments and rights to payment (collectively, the "**Claims**"):

(i)    all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii)    all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by

4

Beneficiary; and

       (iv) all interest which may accrue on any of the foregoing.

(b) Trustor shall immediately notify Beneficiary in writing if:

       (i) any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

       (ii) any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Beneficiary chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Beneficiary, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Trustor in adjusting any loss covered by insurance.

       (c) All proceeds of the Claims assigned to Beneficiary under this Paragraph shall be paid to Beneficiary. In each instance, Beneficiary shall apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds, including attorneys' fees. Trustor further authorizes Beneficiary, at Beneficiary's option and in Beneficiary's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Beneficiary may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Trustor. If any proceeds are released to Trustor, neither Beneficiary nor Trustee shall be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Beneficiary to be used to reimburse Trustor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing. Beneficiary may, at Beneficiary's option, condition disbursement of the proceeds on Beneficiary's approval of such plans and specifications prepared by an architect satisfactory to Beneficiary, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Beneficiary may reasonably require.

       5.4 <u>Insurance</u>. Trustor shall provide and maintain in force at all times all risk property damage insurance (including without limitation flood coverage, windstorm coverage and hurricane coverage as applicable) on the Property and such other type of insurance on the Property as may be required by Beneficiary in its reasonable judgment. At Beneficiary's request, Trustor shall provide Beneficiary with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Beneficiary, and shall be written only by companies approved by Beneficiary. In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Beneficiary.

       5.5 <u>Maintenance and Preservation of Property</u>.

(a) Trustor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Trustor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow any change in any zoning or other Real Property use classification which affects the Property or any part of it, except with Beneficiary's express prior written consent in each instance.

(b) If all or part of the Property becomes damaged or destroyed, Trustor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Beneficiary agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c) Trustor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Trustor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Trustor on the Property or any part of it under this Deed of Trust.

(d) If Trustor's interest in the Property is a leasehold interest, Trustor shall observe and perform all obligations of Trustor under any lease or leases and shall refrain from taking any actions prohibited by any lease or leases. Trustor shall preserve and protect the leasehold estate and its value.

(e) If the Property is a condominium, Trustor shall observe and perform all obligations of Trustor under the recorded covenants, conditions, and restrictions applicable to the Property, and under the bylaws of the condominium association and any rules or regulations thereunder. As appropriate, the requirements under this Deed of Trust relating to maintenance of insurance and the preservation and maintenance of the Property may be performed by the condominium association on behalf of Trustor.

(f) If the Property is agricultural, Trustor shall farm the Property in a good and husbandlike manner. Trustor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees or vines with new ones. Trustor shall prepare for harvest, harvest, remove and sell any crops growing on the Property. Trustor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(g) Trustor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6 Releases, Extensions, Modifications and Additional Security. Without affecting the personal liability of any person, including Trustor, for the payment of the Secured Obligations or the lien of this Deed of Trust on the remainder of the Property for the unpaid amount of the Secured Obligations, Beneficiary and Trustee are respectively empowered as follows:

(a) Beneficiary may from time to time and without notice:

(i) release any person liable for payment of any Secured Obligations;

6

        (ii) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligations;

        (iii) accept additional real or personal property of any kind as security for any Secured Obligations, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security; or

        (iv) alter, substitute or release any property securing the Secured Obligations.

        (b)   Trustee may perform any of the following acts when requested to do so by Beneficiary in writing:

        (i) consent to the making of any plat or map of the Property or any part of it;

        (ii) join in granting any easement or creating any restriction affecting the Property;

        (iii) join in any subordination or other agreement affecting this Deed of Trust or the lien of it; or

        (iv) reconvey the Property or any part of it without any warranty.

5.7  <u>Reconveyance</u>.  Upon full and final payment and performance of all Obligor Liabilities to Beneficiary where any applicable preference or similar period has passed and termination of the Guaranty in accordance with its terms, Trustee shall reconvey the Property, or so much of it as is then held under this Deed of Trust, without warranty to the person or persons legally entitled to it. In the reconveyance, the grantee may be described as "the person or persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness. Neither Beneficiary nor Trustee shall have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.

5.8  <u>Compensation and Reimbursement of Costs and Expenses</u>.

        (a)   Trustor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary and Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement of the Secured Obligations or Trustee's rendering of services in connection with a reconveyance. Trustor shall also pay or reimburse all of Beneficiary's and Trustee's costs and expenses which may be incurred in rendering any such services.

        (b)   Trustor further agrees to pay or reimburse Beneficiary for all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee to protect or preserve the Property or to enforce any terms of this Deed of Trust, including the exercise of any rights or remedies afforded to Beneficiary or Trustee or both of them under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

        (c)   Trustor shall pay all obligations arising under this Paragraph immediately upon demand by Trustee or Beneficiary. Each such obligation shall be added to, and considered to be

part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations. If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9  Exculpation and Indemnification.

(a)  Beneficiary and its affiliates, shareholders, directors, officers, employees, attorneys and agents (collectively, the "Beneficiary Parties") shall not be directly or indirectly liable to Trustor or any other person as a consequence of any of the following by any of the Beneficiary Parties:

(i)  exercise of or failure to exercise any rights, remedies or powers granted to any of the Beneficiary Parties in this Deed of Trust;

(ii)  failure or refusal to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust;

(iii)  failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv)  any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v)  any loss sustained by Trustor or any third party resulting from any act or omission of any of the Beneficiary Parties in operating or managing the Property upon exercise of the rights or remedies afforded under Paragraph 6.3, unless the loss is caused by the gross negligence or willful misconduct and bad faith of any of the Beneficiary Parties.

Trustor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon any of the Beneficiary Parties. Trustor hereto expressly waives any rights or benefits available under Section 1542 of the Civil Code of the State of California which provides as follows:
"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(b)  Trustor agrees to indemnify Trustee and the Beneficiary Parties against and hold them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which any of them may suffer or incur in performing any act required or permitted by this Deed of Trust or by law or because of any failure of Trustor to perform any of its obligations or because the execution of this Deed of Trust by Trustor for the benefit of Beneficiary causes or creates a breach, default, event of default or acceleration of Trustor's obligations under any other deed of trust, note, security instrument or agreement, or financing or loan agreement. This agreement by Trustor to indemnify Trustee and the Beneficiary Parties shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release and/or reconveyance of this Deed of Trust.

5.10  Defense and Notice of Claims and Actions.  At Trustor's sole expense, Trustor shall protect,

8

preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Trustor shall give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11  <u>Substitution of Trustee</u>. From time to time, Beneficiary may substitute a successor to any Trustee named in or acting under this Deed of Trust in any manner now or later to be provided at law, or by a written instrument executed and acknowledged by Beneficiary and recorded in the office of the recorder of the county where the Property is situated. Any such instrument shall be conclusive proof of the proper substitution of the successor Trustee, who shall automatically upon recordation of the instrument succeed to all estate, title, rights, powers and duties of the predecessor Trustee, without conveyance from it.

5.12  <u>Representation and Warranty Regarding Hazardous Substances</u>. Before signing this Deed of Trust, Trustor researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Trustor represents and warrants that to the best of its knowledge, no Hazardous Substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Trustor has disclosed to Beneficiary in writing, including, without limitation, petroleum and natural gas in compliance with all applicable laws. Trustor further represents and warrants that Trustor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or Hazardous Substances ("**Environmental Laws**"). Trustor shall promptly, at Trustor's sole cost and expense, take all reasonable actions with respect to any Hazardous Substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property. Trustor acknowledges that Hazardous Substances may permanently and materially impair the value and use of the Property. "**Hazardous Substance**" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.13  <u>Site Visits, Observation and Testing</u>. Beneficiary and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Trustor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property. Trustor shall reimburse Beneficiary on demand for the costs of any such environmental investigation and testing. Beneficiary will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Trustor's use of the Property. Beneficiary is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Beneficiary will be solely for the purposes of protecting Beneficiary's security and preserving Beneficiary's rights under this Deed of Trust. No site visit, observation or testing or any report or findings made as a result thereof ("**Environmental Report**") (i) will result in a waiver of any default of Trustor; (ii) impose any liability on Beneficiary; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event Beneficiary has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Trustor or any other party, Trustor authorizes Beneficiary to make such a disclosure. Beneficiary may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Beneficiary's judgment.

Trustor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Trustor by Beneficiary or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Trustor) by Trustor without advice or assistance from Beneficiary.

## 6. ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

6.1 Accelerating Transfers.

(a) "**Accelerating Transfer**" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Trustor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Trustor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than fifty percent (50%) of the voting power. If Trustor is a partnership, "Accelerating Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the partnership interests. If Trustor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the voting power or in the aggregate more than fifty percent of the ownership of the economic interest in the Trustor. If Trustor is a joint tenancy, "Accelerating Transfer" also means the death of either joint tenant or a sale, pledge, encumbrance, conveyance or transfer (voluntary or involuntary) of either joint tenancy interest or any interest therein or portion thereof.

(b) Trustor agrees that Trustor shall not make any Accelerating Transfer, unless the transfer is preceded by Beneficiary's express written consent to the particular transaction and transferee. Beneficiary may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Beneficiary in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Beneficiary and Trustee may invoke any rights and remedies provided by Paragraph 6.3 of this Deed of Trust.

6.2 Events of Default. The occurrence of any one or more of the following events, at the option of Beneficiary, shall constitute an event of default ("**Event of Default**") under this Deed of Trust:

(a) Trustor fails to make any payment, when due, under the Guaranty (after giving effect to any applicable grace period) or any other default occurs under the Guaranty or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

(b) Any default or event of default occurs with respect to the Obligor Liabilities;

(c) Trustor fails to make any payment or perform any obligation which arises under this Deed of Trust;

(d) Trustor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(e) Any representation or warranty made in connection with this Deed of Trust or the Secured Obligations proves to have been false or misleading in any material respect when made;

10

Trustor further understands and agrees that any environmental Report or other information regarding a site visit, observation or taking that is disclosed to Trustor by Beneficiary or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Trustor) by Trustor without advice or assistance from Beneficiary.

## 6. ACCELERATION, TRANSFERS, DEFAULT AND REMEDIES

### 6.1 Acceleration Transfers.

(a) "Acceleration Liability" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any right, interest and including any transfer of execute or the right to drill for or to extent any water (other than for Trustee's own use), oil, gas or other by the other substances or any mineral of any kind on or under the surface of the Property. If Trustor is a corporation, "Acceleration Transfer" also means any transfer of transfer of shares assessing in the aggregate more than fifty percent (50%) of the voting power. If Trustor is a partnership, "Acceleration Transfer" also means substantial or removal of any general partner dissolution of the partnership and a applicable law, or any transfer or transfers of, in the aggregate more than fifty percent (50%) of the partnership interests. If Trustor is a limited liability company, "Acceleration Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of in the aggregate, more than fifty percent (50%) of the voting power or in the aggregate more than fifty percent of the ownership of the economic interest in the Trustor. If Trustor is a joint tenancy, "Acceleration Transfer" also means the death of either joint tenant or a sale, pledge, encumbrance, conveyance, or transfer (voluntary or involuntary) of either joint tenant's interest or any interest therein or portion thereof.

(b) Trustor agrees that Trustor shall not make any Acceleration Transfer, unless the transfer is preceded by Beneficiary's express written consent to the particular transaction and transferee. Beneficiary may withhold such consent in its sole discretion. If any Acceleration Transfer occurs, Beneficiary in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Beneficiary and Trustee may invoke any rights and remedies provided by Paragraph 6.3 of this Deed of Trust.

### 6.2 Events of Default. The occurrence of any one or more of the following events at the option of Beneficiary shall constitute an event of default ("Event of Default") under this Deed of Trust:

(a) Trustor fails to make any payment, when due, under the Guaranty following any effect to any applicable grace period) or any other default occurs under the Guaranty, or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period.

(b) Any default or event of default occurs with respect to the Obligor Liabilities.

(c) Trustor fails to make any payment or perform any obligation which arises under this Deed of Trust.

(d) Trustor waives or permits the occurrence of an Acceleration Transfer in violation of Paragraph 6.1.

(e) Any representation or warranty made in connection with this Deed of Trust or the Secured Obligations proves to have been false or misleading in any material respect when made.

or

      (f)  Any default occurs under any other deed of trust on all or any part of the Property, or under any obligation secured by such deed of trust, whether such deed of trust is prior to or subordinate to this Deed of Trust.

6.3  <u>Remedies</u>.  At any time after the occurrence of an Event of Default, Beneficiary and Trustee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law.  All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

      (a)  Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

      (b)  Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

      (c)  Beneficiary, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Trustor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Beneficiary may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust. Such other things may include:  entering into, enforcing, modifying, or canceling leases on such terms and conditions as Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property.  Trustor hereby irrevocably constitutes and appoints Beneficiary as its attorney-in-fact to perform such acts and execute such documents as Beneficiary in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Trustor's name on any instruments.  Trustor agrees to deliver to Beneficiary all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Beneficiary in order to enable Beneficiary to exercise its rights under this Paragraph.

      (d)  Either Beneficiary or Trustee may cure any breach or default of Trustor, and if it chooses to do so in connection with any such cure, Beneficiary or Trustee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust.  Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Beneficiary or Trustee under, this Deed of Trust; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Beneficiary's or Trustee's sole judgment is or may be senior in priority to this Deed of Trust, such judgment of Beneficiary or Trustee to be conclusive as among the parties to this Deed of Trust; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Deed of Trust; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Beneficiary or Trustee. Beneficiary and Trustee may take any of the actions permitted hereunder either with or without giving notice to any person.

11

(e)  Beneficiary may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Deed of Trust.

(f)  Beneficiary may cause the Property which consists solely of real property to be sold by Trustee as permitted by applicable law.  Before any such trustee's sale, Beneficiary or Trustee shall give such notice of default and election to sell as may then be required by law.  When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee shall sell the Property, either as a whole or in separate parcels, and in such order as Trustee may determine, at a public auction to be held at the time and place specified in the notice of sale.  Neither Trustee nor Beneficiary shall have any obligation to make demand on Trustor before any trustee's sale.  From time to time in accordance with then applicable law, Trustee may, and in any event at Beneficiary's request shall, postpone any trustee's sale by public announcement at the time and place noticed for that sale.  At any trustee's sale, Trustee shall sell to the highest bidder at public auction for cash in lawful money of the United States.  Any person, including Trustor, Trustee or Beneficiary, may purchase at the trustee's sale. Trustee shall execute and deliver to the purchaser(s) a deed or deeds conveying the property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed of any matters or facts, including any facts bearing upon the regularity or validity of any trustee's sale, shall be conclusive proof of their truthfulness. Any such deed shall be conclusive against all persons as to the facts recited in it.

(g)  Beneficiary may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code.  When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Trustee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties.  Alternatively, Beneficiary may choose to dispose of some or all of the Property, in any combination consisting of both personal property and real property, in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Trustor agrees that such a sale of personal property together with real property constitutes a commercially reasonable sale of the personal property.

6.4  <u>Application of Sale Proceeds and Rents.</u>

(a)  Beneficiary and Trustee shall apply the proceeds of any sale of the Property in the following manner:  first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose.  The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b)  Beneficiary shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Beneficiary may receive or collect under Paragraph 6.3, in the following manner:  first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Trustee, Beneficiary or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose.  The remainder, if any, shall be remitted to the person or persons entitled thereto.  Beneficiary shall have no liability for any

funds which it does not actually receive.

## 7. MISCELLANEOUS PROVISIONS

### 7.1 No Waiver or Cure.

(a)  Each waiver by Beneficiary or Trustee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Beneficiary or Trustee to take action on account of any default of Trustor. Consent by Beneficiary or Trustee to any act or omission by Trustor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Beneficiary's or Trustee's consent to be obtained in any future or other instance.

(b)  If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Deed of Trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Deed of Trust; or prejudice Beneficiary, Trustee or any receiver in the exercise of any right or remedy afforded any of them under this Deed of Trust; or be construed as an affirmation by Beneficiary of any tenancy, lease or option, or a subordination of the lien of this Deed of Trust:

(i)  Beneficiary, its agent or a receiver takes possession of all or any part of the Property;

(ii)  Beneficiary collects and applies Rents, either with or without taking possession of all or any part of the Property;

(iii)  Beneficiary receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Beneficiary under this Deed of Trust;

(iv)  Beneficiary makes a site visit, observes the Property and/or conducts tests thereon;

(v)  Beneficiary receives any sums under this Deed of Trust or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

(vi)  Beneficiary, Trustee or any receiver performs any act which it is empowered or authorized to perform under this Deed of Trust or invokes any right or remedy provided under this Deed of Trust.

### 7.2 Powers of Beneficiary and Trustee.

(a)  Trustee shall have no obligation to perform any act which Trustee is empowered to perform under this Deed of Trust unless Trustee is requested to do so in writing and is reasonably indemnified against loss, cost, liability and expense.

(b)  Beneficiary may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or

13

all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Deed of Trust.

(c)   From time to time, Beneficiary or Trustee may apply to any court of competent jurisdiction for aid and direction in executing and enforcing the rights and remedies created under this Deed of Trust.   Beneficiary or Trustee may from time to time obtain orders or decrees directing, confirming or approving acts in executing this trust and enforcing these rights and remedies.

7.3   <u>Modification to Obligor Liabilities</u>.

(a)   Trustor authorizes Beneficiary to perform any of the following acts at any time, all without notice to Trustor and without affecting Beneficiary's rights or Trustor's obligations under this Deed of Trust:

(i)   Beneficiary may alter any terms of the Obligor Liabilities or any part of them, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Obligor Liabilities or any part of them;

(ii)   Beneficiary may take and hold security for the Obligor Liabilities, accept additional or substituted security for the Obligor Liabilities, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

(iii)   Beneficiary may apply any security now or later held for the Obligor Liabilities in any order that Beneficiary in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of such security and bid at any such sale;

(iv)   Beneficiary may release Obligor of its liability under the Obligor Liabilities or any part of them;

(v)   Beneficiary may substitute, add or release any one or more guarantors or endorsers of the Obligor Liabilities; and

(vi)   Beneficiary may extend other credit to Obligor, and may take and hold security for the credit so extended.

(b)   Trustor waives:

(i)   Any right Trustor may have to require Beneficiary to proceed against Obligor, proceed against or exhaust any security held from Obligor, or pursue any other remedy in Beneficiary's power to pursue;

(ii)   Any defense based on any legal disability of Obligor, any discharge or limitation of the liability of Obligor to Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Trustor's obligations exceed or are more burdensome than those of Obligor;

14

(iii)  All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Obligor, and demands and notices of every kind;

(iv)  Any defense based on or arising out of any defense that Obligor may have to the payment or performance of the Obligor Liabilities or any part of them; and

(v)  Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Beneficiary may have against Obligor, and all rights to participate in any security now or later to be held by Beneficiary for the Secured Obligations.

(c)  Trustor waives any rights or defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.

(d)  Trustor waives all rights and defenses that Trustor may have because the Obligor Liabilities may be secured by real property other than the Property hereby encumbered.  This means, among other things:  (i)  Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) without first foreclosing on any real or personal property collateral securing the Obligor Liabilities; and (ii) if Beneficiary forecloses on any real property collateral securing the Obligor Liabilities:  (A) the amount due under the Obligor Liabilities and the Guaranty may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) even if Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Obligor.  This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Obligor Liabilities may be secured by real property other than the Property hereby encumbered.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580c, 580d, 580e and/or 726 of the California Code of Civil Procedure.

(e)  Trustor waives any right or defense Trustor may have at law or equity, including California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Property hereby encumbered.

(f)  Trustor assumes full responsibility for keeping informed of financial condition of Obligor and business operations and all other circumstances affecting the ability of Obligor to pay and perform its obligations to Beneficiary, and agrees that Beneficiary shall have no duty to disclose to Trustor any information which Beneficiary may receive about the financial condition or business operations of Obligor, or any other circumstances bearing on the ability of Obligor to perform.

(g)  No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust.

(h)  For purposes of this Paragraph 7.3, all references to the Obligor Liabilities or the Guaranty shall also include any instrument or agreement executed by Obligor or Trustor

15

subsequent to the date of this Deed of Trust which is secured by this Deed of Trust in accordance with the provisions of Paragraphs 2.1(b) and 2.1(c).

7.4  Merger. No merger shall occur as a result of Beneficiary's acquiring any other estate in or any other lien on the Property unless Beneficiary consents to a merger in writing.

7.5  Joint and Several Liability. If Trustor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Trustor's obligations under this Deed of Trust, and each representation or warranty made by Trustor hereunder shall be deemed to have been made jointly and severally by each such person.

7.6  Applicable Law. This Deed of Trust shall be governed by California law.

7.7  Successors in Interest. The terms, covenants and conditions of this Deed of Trust shall be binding upon and inure to the benefit of the heirs, legal representatives, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

7.8  Waiver of Jury Trial.  **TRUSTOR AGREES AND DOES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT AGAINST TRUSTOR ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS DEED OF TRUST, AND TRUSTOR HEREBY CONSENTS TO THE JURISDICTION OF THE STATE COURTS LOCATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, FOR A DETERMINATION OF ANY DISPUTE AS TO ANY SUCH MATTERS AND AUTHORIZES THE SERVICE OF PROCESS ON THE TRUSTOR BY REGISTERED MAIL SENT TO TRUSTOR AT THE ADDRESS OF THE TRUSTOR SET FORTH IN PARAGRAPH 7.12 BELOW.**

(a)  **TRUSTOR AND BENEFICIARY (COLLECTIVELY, "THE PARTIES") PREFER THAT ANY DISPUTE BETWEEN THEM BE RESOLVED IN LITIGATION SUBJECT TO A JURY TRIAL WAIVER AS SET FORTH IN WITH THIS DEED OF TRUST, BUT THE CALIFORNIA SUPREME COURT HAS HELD THAT PRE-DISPUTE JURY TRIAL WAIVERS NOT AUTHORIZED BY STATUTE ARE UNENFORCEABLE. THIS REFERENCE PROVISION WILL BE APPLICABLE UNTIL: (I) THE CALIFORNIA SUPREME COURT HOLDS THAT A PRE-DISPUTE JURY TRIAL WAIVER PROVISION SIMILAR TO THAT CONTAINED IN THIS DEED OF TRUST IS VALID OR ENFORCEABLE; OR (II) THE CALIFORNIA LEGISLATURE ENACTS A STATUTE WHICH BECOMES LAW, AUTHORIZING PRE-DISPUTE JURY TRIAL WAIVERS OF THE TYPE IN THIS DEED OF TRUST AND, AS A RESULT, SUCH WAIVERS BECOME ENFORCEABLE. IN ADDITION, THIS REFERENCE PROVISION, IF NOT ALREADY APPLICABLE AS OTHERWISE PROVIDED HEREIN, WILL BECOME APPLICABLE, IF A COURT, CONTRARY TO A CHOICE OF LAW PROVISION CONTAINED IN THIS DEED OF TRUST, HOLDS THAT THE LAWS OF THE STATE OF CALIFORNIA APPLY TO THIS DEED OF TRUST.**

(b)  **OTHER THAN (i) NONJUDICIAL FORECLOSURE OF SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (ii) THE APPOINTMENT OF A RECEIVER OR (iii) THE EXERCISE OF OTHER PROVISIONAL REMEDIES (ANY OF WHICH MAY BE INITIATED PURSUANT TO APPLICABLE LAW), ANY CONTROVERSY, DISPUTE OR CLAIM (EACH, A "CLAIM") BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS DEED OF TRUST, WILL BE RESOLVED BY A REFERENCE PROCEEDING IN CALIFORNIA IN ACCORDANCE WITH THE PROVISIONS OF SECTION 638 ET SEQ. OF THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), OR THEIR**

SUCCESSOR SECTIONS, WHICH SHALL CONSTITUTE THE EXCLUSIVE REMEDY FOR THE RESOLUTION OF ANY CLAIM, INCLUDING WHETHER THE CLAIM IS SUBJECT TO THE REFERENCE PROCEEDING.  EXCEPT AS OTHERWISE PROVIDED IN THIS DEED OF TRUST, VENUE FOR THE REFERENCE PROCEEDING WILL BE IN THE SUPERIOR COURT OR FEDERAL DISTRICT COURT IN THE COUNTY OR DISTRICT WHERE THE REAL PROPERTY, IF ANY, IS LOCATED OR IN A COUNTY OR DISTRICT WHERE VENUE IS OTHERWISE APPROPRIATE UNDER APPLICABLE LAW (THE "COURT").

(c)    THE REFEREE SHALL BE A RETIRED JUDGE OR JUSTICE SELECTED BY MUTUAL WRITTEN AGREEMENT OF THE PARTIES.  IF THE PARTIES DO NOT AGREE, THE REFEREE SHALL BE SELECTED BY THE PRESIDING JUDGE OF THE COURT (OR HIS OR HER REPRESENTATIVE).  A REQUEST FOR APPOINTMENT OF A REFEREE MAY BE HEARD ON AN EX PARTE OR EXPEDITED BASIS, AND THE PARTIES AGREE THAT IRREPARABLE HARM WOULD RESULT IF EX PARTE RELIEF IS NOT GRANTED.  THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT HAS POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(d)    THE PARTIES AGREE THAT TIME IS OF THE ESSENCE IN CONDUCTING THE REFERENCE PROCEEDINGS.  ACCORDINGLY, THE REFEREE SHALL BE REQUESTED, SUBJECT TO CHANGE IN THE TIME PERIODS SPECIFIED HEREIN FOR GOOD CAUSE SHOWN, TO (A) SET THE MATTER FOR A STATUS AND TRIAL-SETTING CONFERENCE WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF SELECTION OF THE REFEREE, (B) IF PRACTICABLE, TRY ALL ISSUES OF LAW OR FACT WITHIN NINETY (90) DAYS AFTER THE DATE OF THE CONFERENCE AND (C) REPORT A STATEMENT OF DECISION WITHIN TWENTY (20) DAYS AFTER THE MATTER HAS BEEN SUBMITTED FOR DECISION.

(e)    THE REFEREE WILL HAVE POWER TO EXPAND OR LIMIT THE AMOUNT AND DURATION OF DISCOVERY.  THE REFEREE MAY SET OR EXTEND DISCOVERY DEADLINES OR CUTOFFS FOR GOOD CAUSE, INCLUDING TRUSTOR'S OR BENEFICIARY'S FAILURE TO PROVIDE REQUESTED DISCOVERY FOR ANY REASON WHATSOEVER.  UNLESS OTHERWISE ORDERED BASED UPON GOOD CAUSE SHOWN, NEITHER TRUSTOR NOR BENEFICIARY SHALL BE ENTITLED TO "PRIORITY" IN CONDUCTING DISCOVERY, DEPOSITIONS MAY BE TAKEN BY EITHER TRUSTOR OR BENEFICIARY UPON SEVEN (7) DAYS WRITTEN NOTICE, AND ALL OTHER DISCOVERY SHALL BE RESPONDED TO WITHIN FIFTEEN (15) DAYS AFTER SERVICE. ALL DISPUTES RELATING TO DISCOVERY WHICH CANNOT BE RESOLVED BY THE PARTIES SHALL BE SUBMITTED TO THE REFEREE WHOSE DECISION SHALL BE FINAL AND BINDING.

(f)    EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING.  ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT THAT WHEN EITHER TRUSTOR OR  BENEFICIARY SO REQUESTS, A COURT REPORTER WILL BE USED AT ANY HEARING CONDUCTED BEFORE THE REFEREE, AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING

17

SUCH A REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COURT REPORTER. SUBJECT TO THE REFEREE'S POWER TO AWARD COSTS TO THE PREVAILING PARTY, THE PARTIES WILL EQUALLY SHARE THE COST OF THE REFEREE AND THE COURT REPORTER AT TRIAL.

(g)     THE REFEREE SHALL BE REQUIRED TO DETERMINE ALL ISSUES IN ACCORDANCE WITH EXISTING CASE LAW AND THE STATUTORY LAWS OF THE STATE OF CALIFORNIA. THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA WILL BE APPLICABLE TO THE REFERENCE PROCEEDING. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF, PROVIDE ALL TEMPORARY OR PROVISIONAL REMEDIES, ENTER EQUITABLE ORDERS THAT WILL BE BINDING ON THE PARTIES AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING WITHOUT LIMITATION MOTIONS FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CCP §644 THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT OR AN ORDER IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER OR FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS PROVIDED BY LAW. THE PARTIES RESERVE THE RIGHT TO FINDINGS OF FACT, CONCLUSIONS OF LAWS, A WRITTEN STATEMENT OF DECISION, AND THE RIGHT TO MOVE FOR A NEW TRIAL OR A DIFFERENT JUDGMENT, WHICH NEW TRIAL, IF GRANTED, IS ALSO TO BE A REFERENCE PROCEEDING UNDER THIS PROVISION.

(h)     IF THE ENABLING LEGISLATION WHICH PROVIDES FOR APPOINTMENT OF A REFEREE IS REPEALED (AND NO SUCCESSOR STATUTE IS ENACTED), ANY DISPUTE BETWEEN THE PARTIES THAT WOULD OTHERWISE BE DETERMINED BY REFERENCE PROCEDURE WILL BE RESOLVED AND DETERMINED BY ARBITRATION. THE ARBITRATION WILL BE CONDUCTED BY A RETIRED JUDGE OR JUSTICE, IN ACCORDANCE WITH THE CALIFORNIA ARBITRATION ACT §1280 THROUGH §1294.2 OF THE CCP AS AMENDED FROM TIME TO TIME.   THE LIMITATIONS WITH RESPECT TO DISCOVERY SET FORTH ABOVE SHALL APPLY TO ANY SUCH ARBITRATION PROCEEDING.

(i)     THE PARTIES RECOGNIZE AND AGREE THAT ALL DISPUTES RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH OF THE PARTIES KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY DISPUTE BETWEEN THEM WHICH ARISES OUT OF OR IS RELATED TO THIS DEED OF TRUST.

7.9   Interpretation.  Whenever the context requires, the word "it" shall include the word "they" or "them", the word "its" shall include the word "their", all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Deed of Trust are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or

satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Deed of Trust. The Exhibit(s) to this Deed of Trust are hereby incorporated in this Deed of Trust.

7.10 Counsel Fees. Whenever Trustor is obligated to pay or reimburse Beneficiary or Trustee for any attorneys' fees, those fees shall include the allocated costs for services of counsel.

7.11 Waiver of Marshaling. Trustor waives all rights, legal and equitable, Trustor may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Deed of Trust, including any rights provided by California Civil Code Sections 2899 and 3433, as such Sections may be amended from time to time. Each successor and assign of Trustor, including any holder of a lien subordinate to this Deed of Trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.12 Notices. Trustor hereby requests that a copy of notice of default and notice of sale be mailed to Trustor at the address set forth below. That address is also the mailing address of Trustor as debtor under the Uniform Commercial Code. Beneficiary's address given below is the address for Beneficiary as secured party under the Uniform Commercial Code. Any such notice shall be deemed received two (2) business days after the date of deposit if deposited in the United States mail, first class, certified or registered, with postage prepaid, and addressed to such party's mailing address as set forth above, or as may be changed in a written notice sent in such manner.

| Addresses for Notices to Trustor: | CRESTLLOYD, LLC<br>8981 W. Sunset Blvd, Suite 303<br>West Hollywood, California 90069<br>Attn: Nile Niami and Yvonne Niami |
|---|---|
| Address for Notices to Beneficiary: | HILLDUN CORPORATION<br>225 West 35th St.<br>New York, New York 10001<br>Attn: Joshua W. Kapelman |

7.13 Severability. If any provision of this Deed of Trust should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Deed of Trust except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare all Secured Obligations immediately due and payable.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

CRESTLLOYD, LLC

By: _____
Name: Nile Niami
Title: Manager

By: _____
Name: Yvonne Niami
Title: Manager

19

## ACKNOWLEDGMENT

A notary public or other officer
completing this certificate verifies only
the identity of the individual who signed
*the document to which this certificate is*
attached, and not the truthfulness,
accuracy, or validity of that document.

State of California
County of LOS ANGELES )

On April 15, 2020 before me, Nigel Gibbs, Notary Public (insert
name and title of the officer)

personally appeared Nile Niami , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

Signature _____ **(Seal)**

20

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed *the document to which this certificate is* attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES )

On April 15, 2020 before me, Nigel Gibbs, Notary Public (insert
name and title of the officer)

personally appeared Yvonne Niami , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGES 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76 DEGREES 06 MINUTES 07 MINUTES WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET, AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03 DEGREES 35 MINUTES 48 SECONDS TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39 DEGREES 06 MINUTES 52 SECONDS; THENCE NORTH 56 DEGREES 36 MINUTES 22 SECONDS WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44 DEGREES 55 MINUTES 04 SECONDS; THENCE NORTH 11 DEGREES 41 MINUTES 18 SECONDS WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56 DEGREES 32 MINUTES 34 SECONDS; THENCE NORTH 44 DEGREES 51 MINUTES 16 SECONDS EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13 DEGREES 13 MINUTES 20 SECONDS EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13 DEGREES 13 MINUTES 20 SECONDS WEST 106.35 FEET; THENCE NORTH 89 DEGREES 27 MINUTES 20 SECONDS WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **MOTION FOR AUTHORITY TO DISBURSE FUNDS TO HANKEY CAPITAL, LLC, A SENIOR SECURED CREDITOR; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LAWRENCE R. PERKINS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 24, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Todd M Arnold**    tma@lnbyg.com
- **Jerrold L Bregman**    jbregman@bg.law, ecf@bg.law
- **Marguerite Lee DeVoll**    mdevoll@watttieder.com, zabrams@watttieder.com
- **Karol K Denniston**    karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Danielle R Gabai**    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- **Thomas M Geher**    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- **David B Golubchik**    dbg@lnbyg.com, stephanie@lnbyb.com
- **James Andrew Hinds**    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- **Robert B Kaplan**    rbk@jmbm.com
- **Jane G Kearl**    jkearl@watttieder.com
- **Jennifer Larkin Kneeland**    jkneeland@watttieder.com, zabrams@watttieder.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **John A Moe**    john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- **Samuel A Newman**    sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com;laefilingnotice@sidley.com
- **Ryan D O'Dea**    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Sharon Oh-Kubisch**    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Victor A Sahn**    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com
- **William Schumacher**    wschumac@milbank.com, autodocketecf@milbank.com
- **David Seror**    dseror@bg.law, ecf@bg.law
- **Zev Shechtman**    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Mark Shinderman**    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**

- **Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com**
- **Jessica Wellington    jwellington@bg.law, ecf@bg.law**

**2.  SERVED BY UNITED STATES MAIL**: On **May 24, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*None.*

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 24, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY OVERNIGHT MAIL,**
Amy P. Lally, Esq.
Sidley Austin LLP **RSN**
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 24, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**