1

**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959

2

*kandrassy@swelawfirm.com*
Sharon Oh-Kubisch, State Bar No. 197573

3

*sokubisch@swelawfirm.com*
3200 Park Center Drive, Suite 250

4

Costa Mesa, California 92626
Telephone:   714 445-1000

5

Facsimile:   714 445-1002

6

**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**

7

Martin Singer, State Bar No. 78166
Paul N. Sorrell, State Bar No. 126346

8

2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906

9

Telephone: (310) 556-3501
Facsimile: (310) 556-3615

10

Email: mdsinger@lavelysinger.com
         psorrell@lavelysinger.com

11

Attorneys for Inferno Investment, Inc.

12

13

**UNITED STATES BANKRUPTCY COURT**

14

**CENTRAL DISTRICT OF CALIFORNIA**

15

**LOS ANGELES DIVISION**

16

| | |
|---|---|
| In re | Case No. 2:21-bk-18205-DS |
| | Chapter 11 |
| CRESTLLOYD, LLC, | |
| | **EXHIBITS TO DECLARATIONS IN** |
| Debtor in Possession. | **SUPPORT OF OPPOSITION OF** |
| | **SECURED CREDITOR INFERNO** |
| | **INVESTMENT, INC. TO MOTION FOR** |
| | **AUTHORITY TO DISBURSE FUNDS TO** |
| | **HANKEY CAPITAL, LLC, A SENIOR** |
| | **SECURED CREDITOR** |
| | |
| | Date:     May 26, 2022 |
| | Time:     1:30 p.m. |
| | Crtrm.:   1639 |

17

18

19

20

21

22

23

24

25

26

27

28

*(vertical text, left margin)* SMILEY WANG-EKVALL, LLP  3200 Park Center Drive, Suite 250  Costa Mesa, California 92626  Tel 714 445-1000 • Fax 714 445-1002

1

## **EXHIBITS**

2

3

EXHIBIT A:   Complaint filed by Hankey Capital, LLC against Crestlloyd, LLC

4

EXHIBIT B:   Email from Kyra Andrassy to counsel

5

EXHIBIT C:  Email to Julien Remillard re Subordination Agreement

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# EXHIBIT "A"

Electronically FILED by Superior Court of California, County of Los Angeles on 06/24/2021 05:01 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Valles, Deputy Clerk
Case 2:21-bk-18205-DS    Doc 339    Filed 05/26/22    Entered 05/26/22 09:48:34    Desc
Main Document    Page 4 of 45
Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Mark Young

1 | BUCHALTER
A Professional Corporation
2 | JEFFREY S. WRUBLE (SBN:  94734)
WILLIAM S. BRODY (SBN:  136136)
3 | JACK R. SCHARRINGHAUSEN (SBN:  205483)
1000 Wilshire Boulevard, Suite 1500
4 | Los Angeles, CA  90017-1730
Telephone: 213.891.0700
5 | Fax: 213.896.0400
Email:  wbrody@buchalter.com
6 |
7 | Attorneys for Plaintiff,
HANKEY CAPITAL, LLC,
8 | a California limited liability company

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES, WEST DISTRICT

21SMCV01113

HANKEY CAPITAL, LLC, a California limited liability company,

        Plaintiff,

    v.

CRESTLLOYD, LLC, a California limited liability company; and DOES 1 through 100, inclusive,

        Defendants.

CASE NO.

Civil Unlimited – Claim Over $25,000

**VERIFIED COMPLAINT FOR:**

**1.  JUDICIAL FORECLOSURE OF DEED OF TRUST; AND**

**2.  SPECIFIC PERFORMANCE**

**INDEX OF EXHIBITS**

**VERIFIED COMPLAINT**

Plaintiff Hankey Capital, LLC, a California limited liability company ("Hankey" or "Plaintiff"), complains and alleges as follows:

## JURISDICTION AND VENUE

1.     The real property which is the subject matter of this action is located within the judicial boundaries of this Court in the City of Los Angeles, County of Los Angeles, State of California.  Pursuant to California Code of Civil Procedure, section 392(a)(2) *et seq.,* this Court is the proper court for trial in this action.

2.     The contracts which are the subject matter of this action expressly provide that the parties consent to the jurisdiction of the courts of Los Angeles County, State of California, and this Court is the proper Court for trial of this action.

3.     This action is not subject to the provisions of Sections 2981, *et seq.* (Rees-Levering Act) or Sections 1801 *et seq.* (Unruh Act) of the California Civil Code.

## THE PARTIES

4.     At all times herein mentioned, Hankey was and is a California limited liability company and qualified to do business in California. Additionally, at all times herein mentioned, Hankey held, and holds, a California Finance Lenders license, and was and is exempt from the usury provisions of Article XV, Section 1, of the California Constitution.

5.     Plaintiff is informed and believes, and thereupon alleges, that at all times herein mentioned Defendant Crestlloyd, LLC ("Borrower") was and is a limited liability company organized and existing under and by virtue of the laws of the State of California, qualified to do business in California.

6.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 100, inclusive, are unknown to Plaintiff, which therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings herein referred to, either contractually or tortiously, and caused the damage to Plaintiff as herein alleged.  Alternatively, the Doe defendants are parties claiming an interest in the subject real property that secures the debts that

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1

**VERIFIED COMPLAINT**

are the subject of this action.  When Plaintiff ascertains the true names and capacities of Does 1 through 100, inclusive, it will ask leave of this Court to amend its Complaint by setting forth the same.

7.    At all times herein mentioned, each of the Defendants named in the caption of the Complaint, which is incorporated herein by this reference, was and is the agent, servant and employee of each of the other Defendants, and all of the things alleged to have been done by said Defendants were done in the capacity of and as agent of the other Defendants.

## **FIRST CAUSE OF ACTION**

### **Judicial Foreclosure of Deed of Trust**

### **Against Borrower, and Does 1 through 100**

8.    Plaintiff repeats and realleges all of the allegations contained in Paragraphs 1 through 7, inclusive, and incorporates them as though set forth fully herein.

9.    On or about October 25, 2018, each of the following occurred:

(a)    Plaintiff, as lender, agreed to and did loan to Borrower, as borrower (the "Loan"), the initial original principal sum of $82,500,000.00;

(b)    Plaintiff and Borrower entered into a written Construction Loan Agreement (the "CLA").  A true and complete copy of the CLA is attached as **Exhibit 1** and incorporated into this Complaint by this reference as though set forth in full;

(c)    Borrower executed and delivered to Plaintiff a written Promissory Note (the "October 2018 Note") for the initial original principal sum of $82,500,000.00, for value received.  A true and complete copy of the October 2018 Note is attached as **Exhibit 2** and incorporated into this Complaint by this reference as though set forth in full;

(d)    Plaintiff and Borrower entered into a written Security Agreement ("Security Agreement"), a true and correct copy of which is attached as **Exhibit 3**, and is incorporated into this Complaint as though set forth in full;

(e)    Borrower executed a Construction Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents (the "TD") to and for the benefit of Plaintiff, to secure

repayment of the Loan.  A true and correct copy of the TD is attached as **Exhibit 4**, and is incorporated into this Complaint as though set forth in full.

10.     On or about November 6, 2018, the TD was recorded in the Los Angeles County Official Records as document number 20181122917.

11.     On December 10, 2019, each of the following occurred:

(a)     Borrower executed and delivered to Plaintiff a written Amended and Restated Promissory Note (the "December 2019 Note") for the principal sum of $91,000,000.00, for value received. The December 2019 Note amends and restates the October 2018 Note. A true and complete copy of the December 2019 Note is attached as **Exhibit 5** and incorporated into this Complaint by this reference as though set forth in full;

(b)     Plaintiff and Borrower entered into a written First Modification of Construction Loan Agreement (the "First Modification of CLA").  A true and complete copy of the First Modification of CLA is attached as **Exhibit 6** and incorporated into this Complaint by this reference as though set forth in full;

(c)     Borrower executed a Modification of Deed of Trust (the "Modification of TD") to and for the benefit of Plaintiff, to secure repayment of the Loan.  A true and correct copy of the Modification of TD is attached as **Exhibit 7**, and is incorporated into this Complaint as though set forth in full.

12.     On August 20, 2020, each of the following occurred:

(a)     Borrower executed and delivered to Plaintiff a written Amended and Restated Promissory Note (the "Note") for the principal sum of $106,000,000.00, for value received, which provides, among other things, that the maturity date of the Loan was amended to October 31, 2020 (the "Maturity Date"). The Note amends and restates the December 2019 Note. A true and complete copy of the August 2020 Note is attached as **Exhibit 8** and incorporated into this Complaint by this reference as though set forth in full;

(b)     Plaintiff and Borrower entered into a written Second Modification of Construction Loan Agreement (the "Second Modification of CLA").  A true and complete copy

of the Second Modification of CLA is attached as **Exhibit 9** and incorporated into this Complaint by this reference as though set forth in full;

        (c)    Borrower executed a Modification of Deed of Trust (the "<u>Second Modification of TD</u>," and, together with the First Modification of TD and the TD, the "<u>Deed of Trust</u>") to and for the benefit of Plaintiff, to secure repayment of the Loan.  A true and correct copy of the Second Modification of TD is attached as **Exhibit 10**, and is incorporated into this Complaint as though set forth in full.

13.    On or about August 31, 2020, the Second Modification of TD was recorded in the Los Angeles County Official Records as document number 20201030024.

14.    The Deed of Trust, as modified from time to time, created a lien upon the real property designated as Assessor's Parcel Number 4369-026-021, and more particularly described in the Deed of Trust, (collectively, the "<u>Property</u>").

15.    The CLA, October 2018 Note, Security Agreement, TD, October 2019 Note, First Modification of CLA, Modification of TD, Note, Second Modification of CLA, and Second Modification of TD, each as amended, modified or extended, and all other loan and security documents concerning the Loan are referred to collectively as the "<u>Loan Documents</u>."

16.    Pursuant to the terms of the Loan Documents, as amended, Borrower promised to repay Plaintiff the principal amount of $106,000,000, together with interest from the date of the initial disbursement computed on the principal balance thereof from time to time outstanding.  In addition, Borrower was to make monthly payments of interest-only in arrears on the disbursed and unpaid principal balance of the Note, as more fully set forth in the Note.  The Loan Documents further provide for a higher rate of interest in the event of a default, and further provide that if a payment is late by five or more days, Borrower is obligated to pay a late charge equal to 5% of the overdue amount.

17.    Plaintiff performed all of the conditions, covenants, and promises on their respective part to be performed pursuant to the Loan Documents, as amended.

18.    Events of Default under the terms of the Loan Documents, as amended, have occurred and are continuing by, among other things, Borrower's failure to:

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

4
**VERIFIED COMPLAINT**

1          (a)      pay the Loan on the Maturity Date;

2          (b)      pay taxes assessed to the Property;

3          (c)      provide financial information as required by the Loan Documents;

4          (d)      avoid the recording of one or more claims of mechanic's lien against the

5 Property; and

6          (e)      complete construction on the Property.

7 Plaintiff caused a Notice of Default and Election to Sell Under Deed of Trust to be recorded on

8 March 5, 2021 in the Official Records of the County of Los Angeles, as document number

9 20210367447, a true and complete copy of which is attached as **Exhibit 11**, and incorporated into

10 this Complaint as though set forth in full.

11       19.     As of June 17, 2021, there was and still is due, owing, and unpaid from Borrower

12 to Plaintiff on the Loan pursuant to the terms of the Loan Documents, as amended, the principal

13 sum of $105,445,254.94, accrued unpaid interest, late charges, plus foreclosure costs, receiver

14 fees, and other fees and charges pursuant to the Loan Documents, together with attorneys' fees

15 and costs of suit in amounts not yet determined.

16       20.     The Loan Documents provide that Borrower is to pay Plaintiff's expenses,

17 including, without limitation, attorneys' fees and expenses and court costs, incurred in connection

18 with the enforcement of the Loan Documents.  Plaintiff has retained the law firm Buchalter, A

19 Professional Corporation, and is entitled to an award of attorneys' fees and expenses incurred.

20       21.     Plaintiff seeks an order adjudging that the:

21          (a)      Deed of Trust be foreclosed;

22          (b)      Judgment be entered for the sale of the Property in accordance with

23 California law;

24          (c)      Proceeds of the sale be applied in payment of the amounts due Plaintiff;

25          (d)      Rents, income, and profits be applied in payment of the amounts due

26 Plaintiff; and

27          (e)      Borrower, Does 1 through 100, inclusive, and all persons claiming an

28 interest in the Property subsequent to the recordation of the Deed of Trust, whether as lien

claimants, judgment creditors, persons claiming rights under junior deeds of trust, purchasers,

encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, or equity

redemption in the Property and every part of said property when the time for redemption has

elapsed.

## SECOND CAUSE OF ACTION

### Specific Performance

### Against Borrower and Does 1 through 100

22.      Plaintiff repeats and realleges all of the allegations contained in Paragraphs 1

through 21, inclusive, and incorporates them as though set forth fully herein.

23.      By the terms of the TD (Exhibit 4), as modified from time to time, following a

default under the terms of the Loan Documents, Plaintiff may seek the appointment of a receiver:

> Art. IV, para. 4.01(a) Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of any security for the Indebtedness and obligations hereby secured, enter upon and take possession of the Property hereby granted, or any part thereof, in its own name or in the name of the Trustee, and do any acts which it deems necessary or desirable to preserve the rentability or increase the income of such property or protect the security hereof and with or without taking possession of the Property sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the rents, issues and profits collected, less costs and expenses of operation and collection including reasonable attorneys' fees and accountants' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice; and notwithstanding Beneficiary's or Trustee's continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in this instrument or by law upon the occurrence of any default including the right to exercise the power of sale. . .

24.      Plaintiff is entitled to specific performance by Borrower of the terms, conditions,

and provisions of the Loan Documents, and is entitled to the appointment of a receiver who has

the power and authority to take possession of the Property, to manage and operate the Property, to

sell the Property, if necessary, and to collect rents, issues, and profits therefrom.

## **PRAYER**

WHEREFORE Plaintiff prays for judgment against the Defendants, and each of them, as follows:

### **AS TO THE FIRST CAUSE OF ACTION:**

1.    For damages according to proof at time of trial or entry of judgment;

2.    For an order adjudging that:

(a)    The Deed of Trust be foreclosed;

(b)    Judgment be entered for the sale of the Property in accordance with California law;

(c)    The proceeds of the sale be applied in payment of the amounts due Plaintiff;

(d)    Any rents, income, and profits be applied in payment of the amounts due Plaintiff; and

(e)    Defendants, and all persons claiming an interest in the Property subsequent to the recordation of the Deed of Trust, whether as lien claimants, judgment creditors, persons claiming rights under junior deeds of trust, purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, or equity redemption in said Property and every part of said Property when the time for redemption has elapsed;

3.    For a judgment that the rights, claims, ownership, lien, titles, and demands of the Defendants are subsequent to and subject to the lien of the Deed of Trust;

4.    For an order permitting Plaintiff, or any parties to this action, to become purchasers at the sale of the Property;

5.    For a declaration that, when the time for redemption has elapsed, the levying officer shall execute a deed to the purchaser or purchasers of the Property at the sale, and the purchaser or purchasers shall be let into possession of the Property upon production of the levying officer's deed;

**AS TO THE SECOND CAUSE OF ACTION**:

6.      For an order decreeing that the Deed of Trust be specifically performed by Defendant;

**AS TO ALL CAUSES OF ACTION**:

7.      As appropriate, for attorneys' fees and costs of suit herein incurred; and

8.      For such other and further relief as this Court may deem just and proper.

DATED:  June 24, 2021                      BUCHALTER
                                           A Professional Corporation


                              By:  _____/s/ Jeffrey S. Wruble_____
                                           JEFFREY S. WRUBLE
                                           WILLIAM S. BRODY
                                           JACK R. SCHARRINGHAUSEN
                                           Attorneys for Plaintiff
                                           HANKEY CAPITAL, LLC,
                                           a California limited liability company

**VERIFIED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

## **VERIFICATION**

I, W. Scott Dobbins, declare:

I am President of Hankey Capital, LLC, a California limited liability company, Plaintiff in the above-entitled action, and I have been authorized to make this Verification on its behalf.

I have read the foregoing Verified Complaint on file herein and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Los Angeles, California, on June 24, 2021.

_____
W. SCOTT DOBBINS

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

# INDEX OF EXHIBITS

| | |
|---|---|
| Construction Loan Agreement | Exhibit 1 |
| Promissory Note | Exhibit 2 |
| Security Agreement | Exhibit 3 |
| Construction Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents | Exhibit 4 |
| Amended and Restated Promissory Note | Exhibit 5 |
| First Modification of Construction Loan Agreement | Exhibit 6 |
| Modification of Deed of Trust | Exhibit 7 |
| Amended and Restated Promissory Note | Exhibit 8 |
| Second Modification of Construction Loan Agreement | Exhibit 9 |
| Modification of Deed of Trust | Exhibit 10 |
| Notice of Default and Election to Sell Under Deed of Trust | Exhibit 11 |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

# EXHIBIT 1

CONSTRUCTION LOAN AGREEMENT

BETWEEN

CRESTLLOYD, LLC,
A CALIFORNIA LIMITED LIABILITY COMPANY,
AS BORROWER

AND

HANKEY CAPITAL, LLC,
A CALIFORNIA LIMITED LIABILITY COMPANY,
AS LENDER

EXECUTED AS OF OCTOBER 25, 2018

CONSTRUCTION LOAN AGREEMENT

THIS CONSTRUCTION LOAN AGREEMENT ("Agreement") is executed as of October 25, 2018 by and between CRESTLLOYD, LLC, a California limited liability company (the "Borrower"), and HANKEY CAPITAL, LLC, a California limited liability company ("Lender").

RECITALS

A. Borrower owns or will own certain real property described in EXHIBIT A hereto ("Property").

B. Borrower proposes to construct new improvements or renovate existing improvements on the Property consisting of: a single family residence, together with all appurtenances, fixtures, and tenant improvements now or hereafter located on the Property ("Improvements"). The Improvements shall be constructed in accordance with plans and specifications which Borrower has heretofore, or will hereafter deliver to Lender, as amended in order to comply with the terms and conditions of this Agreement ("Plans and Specifications"). Borrower has requested from Lender a loan for the purpose of such construction.

NOW, THEREFORE, Borrower and Lender agree as follows:

ARTICLE 1. DEFINITIONS

1.1. Defined Terms. The following capitalized terms generally used in this Agreement shall have the meanings defined or referenced below. Certain other capitalized terms used only in specific sections of this Agreement are defined in such sections.

1

"Account" - means an account with Bank, account number _____, in the name of Borrower or Borrower's designee into which Loan proceeds will be deposited.

"ADA" - means the Americans with Disabilities Act, 42 U.S.C. Section 12101, et seq. as now or hereafter amended or modified.

"Affiliate" - means, as to any person or entity, any person or entity which, directly or indirectly, controls, is controlled by or is under common control with, or which has the power to control the management or operations of, such person or entity.

"Bank" - means _____.

"Bankruptcy Code" - means the Bankruptcy Reform Act of 1978 (11 U.S.C. Section 101-1330) as now or hereafter amended or recodified.

"Bonded Work" - shall have the meaning ascribed to such term in Section 8.1.

"Border Zone Property" - means any property designated as "border zone property" under the provisions of California Health and Safety Code, Sections 25220 et seq., or any regulation adopted in accordance therewith.

"Borrower" - means CRESTLLOYD, LLC, a California limited liability company.

"Borrower's Funds" - means all funds of Borrower deposited with Lender into the Borrower's Funds Account maintained with Bank pursuant to the terms and conditions of this Agreement.

"Borrower's Funds Account" - means the account with Bank into which all funds deposited with Lender pursuant to this Agreement shall be placed.

"Business Day" - means a day of the week (but not a Saturday, Sunday or holiday) on which the offices of Bank are open to the public for carrying on substantially all of Bank's business functions. Unless specifically referenced in this Agreement as a Business Day, all references to "days" shall be to calendar days.

"Certificate of Approval" - means a certificate in the form of EXHIBIT F.

"Completion Date" - means the date upon which Borrower satisfies the last of the conditions for the release of the Retention, as provided in Paragraph C of EXHIBIT D, currently estimated to be _____, the date by which construction of the Improvements must be complete, subject to extension pursuant to change orders approved by Lender as provided herein or pursuant to the provisions of Section 4.3.

"Construction Agreements" - means those certain agreements to construct the Improvements by and between Borrower (in its capacity as the builder) and various contractors.

2

"Contractors" - means various contractors which have executed Construction Agreements for construction of the Improvements.

"Deed of Trust" - means that certain Deed of Trust and Fixture Filing with Assignment of Leases and Rents, of even date herewith executed by Borrower, as Trustor, to Chicago Title Company, as Trustee, for the benefit of Lender, as Beneficiary, as hereafter amended, supplemented, replaced or modified.

"Deemed Approval Matter" - means any matter requiring the consent of Lender under the Loan Documents including, without limitation, the following: (1) contracts for which Lender approval is required hereunder, as contemplated in Sections 4.4 and 4.5, (2) Plans and Specifications and changes thereto for which Lender approval is required hereunder, as contemplated in Section 4.6, (3) Borrower's contracting for any materials, furnishings, equipment, fixtures or other parts or components of the Improvements in which any third party will retain any interest for which Lender approval is required hereunder, as contemplated in Section 4.8, (4) the inclusion of the Property in any assessment district or community facilities district for which Lender approval is required hereunder, as contemplated in Section 4.11, (5) formation and authorization documents of Borrower, and modifications thereto, for which Lender approval is required hereunder, as contemplated in Sections 6.3 and 9.10, (6) the issuance of any Set Aside Letter for which Lender approval is required hereunder, as contemplated in Section 8.1; (7) leases and leasing parameters for which Lender approval is required hereunder, as contemplated in Section 9.4, (8) any Subdivision Map for which Lender approval is required hereunder, as contemplated in Section 9.6, (9) assignment of all or any portion of Borrower's interest under the Loan documents or any moneys due or to become due thereunder for which Lender approval is required hereunder, as contemplated in Section 9.8, and (10) agreements providing for the management, leasing or operation of the Property or Improvements for which Lender approval is required hereunder, as contemplated in Section 9.9.

"Default" - shall have the meaning ascribed to such term in Section 11.1.

"Disbursement Budget" - means the design and construction budget for the Improvements, as approved by Lender from time to time.

"Distribution" - means any transfer of cash or other property from Borrower to any constituent member or statutory manager thereof, whether characterized as a distribution, dividend, redemption, fee, repayment of a loan or otherwise, but excluding the payment of any fees, commissions or expenses pursuant to the Development and Management Agreements prior to the date that Lender requires Borrower to terminate the Development and Management Agreements under the provisions of Section 11.6 and following the date of any reinstatement of any terminated Development and Management Agreements under the provisions of Section 11.6.

3

"Effective Date" - means the date the Deed of Trust is recorded in the Office of the County Recorder of the county where the Property is located.

"Environmental Report" - means the reports actually received by Lender as contemplated in Section 3.1(d) of this Agreement.

"Hazardous Materials" - shall have the meaning ascribed to such term in Section 7.1(a).

"Hazardous Materials Claims" - shall have the meaning ascribed to such term in Section 7.1(c).

"Hazardous Materials Laws" - shall have the meaning ascribed to such term in Section 7.1(b).

"Improvements" - shall have the meaning ascribed to such term in Recital B.

"Lender" - means Hankey Capital, LLC, a California limited liability company.

"Lender Payment Turnaround Period" - means, provided that Borrower delivers the applicable application for payment to Lender under cover of a written notice stating in bold, all-capitalized letters what the outside date for such Lender Payment Turnaround Period is for that specific application for payment, ten (10) calendar days.

"Loan" - means the principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: EIGHTY TWO MILLION, FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($82,500,000.00).

"Loan Documents" - means those documents, as hereafter amended, supplemented, replaced or modified, properly executed and in recordable form, if necessary, listed in EXHIBIT B as Loan Documents.

"Maturity Date" – October 31, 2020.

"Note" - means that certain Promissory Note of even date herewith, in the original principal amount of the Loan, executed by Borrower and payable to the order of Lender, as hereafter amended, supplemented, replaced or modified.

"Obligee" - shall have the meaning ascribed to such term in Section 8.1.

"Other Borrower Loan Documents" - means those documents, as hereafter amended, supplemented, replaced or modified from time to time, properly executed and in recordable form, if necessary, listed in EXHIBIT B as "Other Borrower Loan Documents."

4

21SMCV01113

"Other Related Documents" - means those documents, as hereafter amended, supplemented, replaced or modified from time to time, properly executed and in recordable form, if necessary, listed in EXHIBIT B as Other Related Documents.

"Out of Balance Notice" - shall have the meaning ascribed to such term in Section 3.1(b).

"Plans and Specifications" - shall have the meaning ascribed to such term in Recital B.

"Principal Subs" - shall have the meaning ascribed to such term in Section 4.7.

"Project Entitlements" - means the Los Angeles Department of Building and Safety Permit Nos. _____.

"Property" - shall have the meaning ascribed to such term in Recital A.

"Secured Obligations" - shall have the meaning ascribed to such term in the Deed of Trust.

"Set Aside Letter" - shall have the meaning ascribed to such term in Section 8.1.

"Subdivision Map" - shall have the meaning ascribed to such term in Section 9.6.

"Surety" - shall have the meaning ascribed to such term in Section 8.1.

"Title Policy" - means the ALTA Lender's Policy of Title Insurance as issued by First American Title Company, together with such special endorsements as Lender may require thereto, including, without limitation, forms CLTA 100 (making particular reference to any easement or encroachment listed in the Title Policy), 116, 116.1 (survey), 102.7 (foundation), 103.7 (modified to insure access to a physically open public street sufficient to provide vehicular and pedestrian ingress and egress), 111.5 (variable interest rate), 129-06 (separate tax parcel), 122.4 (advances), 137.1-06, and such other special endorsements as Lender may require.

"Working Capital" - means all proceeds of the Loan disbursed by Lender into the Working Capital Reserve Account maintained with Bank pursuant to the terms and conditions of this Agreement.

"Working Capital Reserve Account" - means the account with Bank into which all funds disbursed as Working Capital by Lender pursuant to this Agreement shall be placed.

1.2. Exhibits Incorporated. EXHIBITS A, B, C, D, E, F and G, all attached hereto, are hereby incorporated into this Agreement.

5

## ARTICLE 2. LOAN

2.1. **Loan.** By and subject to the terms of this Agreement, Lender agrees to lend to Borrower and Borrower agrees to borrow from Lender the principal sum of EIGHTY-TWO MILLION, FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($82,500,000.00), said sum to be evidenced by the Note of even date herewith. The Note shall be secured, in part, by the Deed of Trust, of even date herewith, encumbering certain real property and improvements as legally defined therein. Amounts disbursed to or on behalf of Borrower pursuant to the Note shall be used to purchase and finance the construction of the Property and Improvements and for such other purposes and uses as may be permitted under this Agreement and the other Loan Documents.

2.2. **Loan Documents.** Borrower shall deliver to Lender concurrently with this Agreement each of the documents, properly executed and in recordable form, as applicable, described in EXHIBIT B as Loan Documents, together with those documents described in EXHIBIT B as Other Related Documents. Notwithstanding anything to the contrary contained elsewhere within this Agreement, the lien of the Deed of Trust shall not secure any obligation under any of the Loan Documents that are designated on EXHIBIT B as not being secured by liens upon real property.

2.3. **Effective Date.** The date of the Loan Documents is for reference purposes only. The Effective Date of delivery and transfer to Lender of the security under the Loan Documents and of Borrower's and Lender's obligations under the Loan Documents shall be the date the Deed of Trust is recorded in the Office of the County Recorder of the county where the Property is located.

2.4. **Maturity Date; Prepayment.** Upon the Maturity Date, all sums due and owing under this Agreement and the other Loan Documents shall be repaid in full.  All payments due to Lender under this Agreement, whether at the Maturity Date or otherwise, shall be paid in immediately available funds. Amounts owing under the Note may be prepaid by Borrower, in whole or in part, at any time, without premium or penalty.

2.5. **Credit for Principal Payments.** Any payment made upon the outstanding principal balance of the Loan shall be credited as of the Business Day received, provided such payment is received by Lender no later than 11:00 a.m. Pacific Time) and constitutes immediately available funds. Any principal payment received after said time or which does not constitute immediately available funds shall be credited upon such funds having become unconditionally and immediately available to Lender.

2.6. **Full Repayment and Reconveyance.** Upon receipt of all sums owing and outstanding under the Loan Documents, Lender shall issue a full reconveyance of the Property and Improvements from the lien of the Deed of Trust and otherwise release Lender's security interest in all other personal property collateral that secure the Loan; provided, however, that all of the following conditions shall be satisfied at the time of,

6

and with respect to, such reconveyance: (a) Lender shall have received all escrow, closing and recording costs, the costs of preparing and delivering such reconveyance and any sums then due and payable under the Loan Documents, and (b) Lender shall have received a written release satisfactory to Lender of any set aside letter, letter of credit or other form of undertaking which Lender has issued to any surety, governmental agency or any other party in connection with the Loan and/or the Property and Improvements. Lender's obligation to make further disbursements under the Loan shall terminate as to any portion of the Loan undisbursed as of the date of issuance of such full release or reconveyance, and any commitment of Lender to lend any undisbursed portion of the Loan shall be canceled.

2.7. **Lender Profit Participation.** If, at any time, during the term of the Loan or following repayment of the Loan, the Property is sold for a purchase price in excess of $200,000,000, Lender shall be entitled to a Lender Profit Participation Payment in the amount of $3,500,000. The Lender Profit Participation Payment shall be collected at the close of the sale of the Property. Contemporaneous with this Agreement, Borrower and Lender shall enter into a Profit Participation Agreement memorializing the parties' agreement with respect to the Lender Profit Participation Payment, and upon the closing of the Loan, Lender shall record a Memorandum of Agreement in the Official Records of the County Recorder of Los Angeles County, California, evidencing the existence of the Profit Participation Agreement.

### ARTICLE 3. DISBURSEMENT

3.1. **Conditions Precedent.** Lender's obligation to make any disbursements or take any other action under the Loan Documents shall be subject at all times to satisfaction of each of the following conditions precedent:

(a) There shall exist no Default, as defined in this Agreement, Default as defined in any of the other Loan Documents, event, omission or failure of condition which would constitute a Default after notice or lapse of time, or both, or default by Borrower (following any applicable notice and cure period) under any of the Other Related Documents, except to the extent that such event, omission or failure (i) is of a nature that it could ripen into a monetary Default, and that event, omission or failure will be cured by the requested disbursement or with funds that Borrower is then attempting to raise during the 60-day cure period set forth in the provisions of the final paragraph of Section 11.1, or (ii) is of a nature that it could ripen into a non-monetary Default, such event, omission or failure is curable, and Borrower is then diligently prosecuting such cure to completion within the applicable cure period; and

(b) Any undisbursed Loan funds together with all sums, if any, to be provided by Borrower, shall be at all times equal to or greater than the amount which Lender from time to time reasonably determines necessary to: (i) pay, through completion, all costs of renovation, development, construction, operation, marketing and sale or leasing of the Property and Improvements in accordance with the Loan Documents; (ii) pay all sums which may accrue under the Loan Documents prior to repayment of the Loan; and (iii)

7

enable Borrower to perform and satisfy all of the covenants of Borrower contained in the Loan Documents. If Lender reasonably determines at any time that the undisbursed Loan funds are insufficient for said purposes, Lender may deliver to Borrower written notice demanding that Borrower then deposit funds equal to such deficiency in the Borrower's Funds Account (an "Out of Balance Notice"), in which event Borrower shall deposit the amount of such deficiency in the Borrower's Funds Account within thirty (30) days after the date of delivery of the applicable Out of Balance Notice; and

(c) Lender shall have received all Loan Documents, other documents, instruments, policies, and forms of evidence or other materials requested by Lender under the terms of this Agreement or any of the other Loan Documents, including, without limitation, such forms of estoppel certificates and subordination, non-disturbance and attornment agreements as Lender may then require from existing tenants of the Property; and

(d) Lender acknowledges that it has received and approved in form and substance satisfactory to Lender: (i) a soils report for the Property and Improvements; (ii) an environmental questionnaire and environmental site assessment with respect to the presence, if any, of Hazardous Materials on the Property and Improvements; (iii) two sets of the Plans and Specifications (or if the Plans and Specifications for the entirety of the Improvements are not then complete or some portion of the Improvements are to be constructed using a design/build process, in either such case pursuant to partial Plans and Specifications approved by Lender under the provisions of Section 4.6 of this Agreement and for which a valid building permit has been issued, then such portion of the Plans and Specifications to the extent that payment for such portion of the Improvements is to be covered by a current disbursement request), together with evidence of all necessary or appropriate approvals of governmental agencies; (iv) copies of all agreements which are material to completion of the Improvements; (v) copies of all building permits and similar permits, licenses, approvals, development agreements and other authorizations of governmental agencies required in connection with the development of the Property and Improvements, or, if such approvals are to be issued on a staged basis, then for the current and all prior stages of development, provided that such staged development has been approved by Lender, as contemplated in Section 4.6; and (vi) copies of any initial study, negative declaration, mitigated negative declaration, environmental impact report, notice of determination or notice of exemption prepared, adopted, certified or filed by any governmental agency in connection with the Property; and

(e) Lender shall have received and approved the Disbursement Budget.

3.2. Account, Pledge and Assignment, and Disbursement Authorization. The proceeds of the Loan and Borrower's Funds, when qualified for disbursement, shall be deposited into an account to be designated by Borrower or otherwise disbursed to or for the benefit or account of Borrower under the terms of this Agreement. Disbursements hereunder may be made by Lender upon the written request of any person who has been authorized by

8

Borrower to request such disbursements until such time as written notice of Borrower's revocation of such authority is received by Lender at the address shown in EXHIBIT D.

3.3. Borrower's Funds Account, Pledge and Assignment. Except as otherwise provided in this Agreement, all of the Borrower's Funds which are deposited with Lender by Borrower as shown in EXHIBIT C, or any other provision of the Loan Documents, shall be placed in the Borrower's Funds Account for disbursement under this Agreement. As additional security for Borrower's performance under the Loan Documents, Borrower hereby irrevocably pledges and assigns to Lender the Borrower's Funds Account and all monies at any time deposited in the Borrower's Funds Account.

3.4. Loan Disbursements. Subject to the conditions set forth in Section 3.1(b), the proceeds of the Loan and Borrower's Funds shall be disbursed in accordance with the terms and conditions of EXHIBIT D. Disbursements made after the deposit of Borrower's Funds shall be made first from the Borrower's Funds Account until depleted. All disbursements shall be held by Borrower in trust and applied by Borrower solely for the purposes for which the funds have been disbursed. Lender has no obligation to monitor or determine Borrower's use or application of the disbursements. Partial disbursements shall be permitted under the terms and subject to the conditions set forth in EXHIBIT D.

3.5. Working Capital. From time to time, in Borrower's Applications for Payment, Borrower may request the disbursement of proceeds of the Loan and Borrower's Funds into the Working Capital Reserve Account to maintain the balance of the Working Capital Reserve Account at the amount specified in the Disbursement Budget, provided that amounts in the Working Capital Reserve Account may only be used to pay reasonable costs of the design or construction of the Improvements, and that Borrower shall have delivered the monthly reports with respect to the Working Capital Reserve Account that are required under the provisions of Section 10.1 of this Agreement for all prior months. As additional security for Borrower's performance under the Loan Documents, Borrower hereby irrevocably pledges and assigns to Lender the Working Capital Reserve Account and all monies at any time deposited in the Working Capital Reserve Account.

3.6. Interest Reserve. Interest charged on the Loan shall be applied monthly from an interest reserve account to be maintained by the Lender, in accordance with the budget approved by the Lender. Borrower shall make timely payments of monthly interest upon depletion of the interest reserve maintained by the Lender.

## ARTICLE 4. CONSTRUCTION

4.1. Commencement and Completion. Borrower shall commence construction of the Improvements without delay after recordation of the Deed of Trust and shall complete construction of the Improvements on or before the Completion Date.

4.2. Commencement and Completion of Offsite Improvements. Borrower shall commence construction of any offsite improvements required by any governmental

9

authority to be performed by Borrower under any Project Entitlements in connection with the construction of the Improvements without delay after recordation of the Deed of Trust and shall complete construction of any such offsite improvements on or before the date required under the applicable Project Entitlements.

4.3. Force Majeure. The time within which construction of the Improvements must be completed shall be extended for a period of time equal to the period of any delay directly affecting construction which is caused by fire, earthquake or other acts of God, unexpected inclement weather, utility shortages or interruptions, strike, lockout, acts of public enemy, riot, insurrection, or governmental regulation of the sale or transportation of materials, supplies or labor, the failure of any governmental authority to issue any Project Entitlement for reasons beyond Borrower's reasonable control, the failure of any condition of approval on any Project Entitlement for any reason beyond Borrower's reasonable control, or any moratorium enacted by any governmental authority over Borrower's good faith opposition that prohibits, impairs, delays or restricts development of the Improvements; provided, however, that Borrower shall furnish Lender with written notice satisfactory to Lender evidencing any such delay within ten (10) days after the occurrence of any such delay. In no event shall the time the anticipated date for completion of the Improvements be extended beyond the Maturity Date or more than one hundred twenty (120) days beyond the Completion Date as scheduled prior to such delay.

4.4. Construction Agreements. Borrower and Contractors have entered into various Construction Agreements pursuant to the terms and conditions of which Contractors are to construct the Improvements. Borrower shall require each Contractor to perform in accordance with the terms of the Construction Agreements and shall not amend, modify or alter the Construction Agreements without Lender's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Borrower shall execute, upon Lender's request, an assignment of Borrower's rights under the Construction Agreements to Lender as security for Borrower's obligations under this Agreement and the other Loan Documents and shall cause the Contractors to consent to any such assignment.

4.5. [Deleted].

4.6. Plans and Specifications.

(a) Changes; Lender Consent. If the Plans and Specifications contemplate staged design and construction, and if Lender has approved Plans and Specifications that contemplate that certain stages will be designed in the future, then any stages of such Plans and Specifications that have not been approved by Lender as of the date of this Agreement shall be subject to Lender's prior written approval, which consent shall not be unreasonably withheld, conditioned or delayed. Except as otherwise provided in this Agreement, Borrower shall not make any changes in the Plans and Specifications or the Improvements without Lender's prior written consent if such change, taken together with all other changes for which Lender's approval was not required hereunder, could materially affect the overall quality or efficiency of the Improvements or the

10

Improvements' exterior, lobbies or building systems. Without limiting the above, Lender agrees that Borrower may make minor changes in the Plans and Specifications and Improvements without Lender's prior written consent, provided that such changes do not violate any of the conditions specified herein.  Notwithstanding the foregoing, Lender shall not have any approval rights respecting any change in the Plans and Specifications or the Improvements if such change follows inevitably from previously approved Plans and Specifications or changes thereto. Borrower shall at all times maintain, for inspection by Lender, a set of working drawings of the Improvements, which, if there is staged design that has not yet occurred, if applicable, shall at least cover the portions of the Improvements completed and under construction or fully designed at such time.

(b) Changes; Submission Requirements. Borrower shall submit any proposed change in the Plans and Specifications requiring Lender's consent to Lender prior to the commencement of construction relating to such proposed change, at least ten (10) Business Days prior to the commencement of construction. Requests for any change which requires consent shall be accompanied by working drawings (or appropriate submittals) and a written description of the proposed change, submitted on a change order form acceptable to Lender, signed by Borrower and, if required by Lender, also by the Contractors. At its option, Lender may require Borrower to provide: (i) evidence satisfactory to Lender of the cost and time necessary to complete the proposed change; and (ii) a deposit in the amount of any increased costs into Borrower's Funds Account.

(c) Consent Process. Borrower acknowledges that Lender's review of any changes and required consent may result in delays in construction and hereby consents to any such delays. Nevertheless, Lender shall use commercially reasonable efforts to respond to requests for approval within the time periods provided in this Agreement.  Lender shall not declare a Default under the terms of the Loan in the event the Default has been caused by a delay in Lender's approval.

(d) Final Plans and Specifications. Upon completion of the Improvements, Borrower shall deliver to Lender within sixty (60) days a set of final, as-built Plans and Specifications.

4.7. Contractor/Construction Information. Borrower shall deliver to Lender in a form acceptable to Lender: (a) a list detailing the name, address and phone number of each contractor, subcontractor and material supplier to be employed or used for construction of the Improvements who is under contract or otherwise has been selected to supply goods or services or perform work for the Project costing in excess of $5,000 in the aggregate and any other person or entity who delivers a Preliminary Notice to Owner or Lender under Civil Code Sections 3097 or 3098 (collectively, "Principal Subs") together with the dollar amount, including changes, if any, reflected in each contract and subcontract for the Principal Subs, and the portion thereof, if any, paid through the date of such list of Principle Subs; (b) copies of each contract and subcontract identified in such list of Principal Subs, including any changes thereto; (c) a cost breakdown of the projected total cost of constructing the Improvements, and that portion, if any, of each cost item which has been incurred; and (d) a construction progress schedule detailing the progress of

11

construction and the projected sequencing and completion time for uncompleted work, all as of the date of such schedule.

Borrower agrees that Lender's approval of any contractor, subcontractor or material supplier if and to the extent permitted under the terms of this Agreement shall not constitute a warranty or representation of qualification by Lender. Lender may contact any contractor, subcontractor or material supplier to discuss the course of construction.

4.8. Prohibited Contracts. Without Lender's prior written consent, Borrower shall not contract for any materials, furnishings, equipment, fixtures or other parts or components of the Improvements, if any third party shall retain any ownership interest (other than lien rights created by operation of law) in such items after their delivery to the Property and Improvements. Borrower shall have twenty (20) days to effect the removal of any such retained interest not otherwise permitted above, or, provided that such interest or the holder's realization thereon will not jeopardize Borrower's title to or use of the Property, if such retained interest cannot be reasonably removed in such period, Borrower shall have commenced such removal within such time and shall diligently pursue its removal until completed.

4.9. Liens and Stop Notices. If a claim of lien is recorded which affects the Property or Improvements or a bonded stop notice is served upon Lender, within twenty (20) calendar days after such recording or service or within five (5) Business Days after Lender's demand, whichever occurs first, Borrower, at Borrower's election, shall do one of the following: (a) pay and discharge the claim of lien or bonded stop notice; (b) effect the release thereof by recording or delivering to Lender a surety bond in sufficient form and amount; or (c) provide Lender with other assurances which Lender deems, in its sole discretion, to be satisfactory for the payment of such claim of lien or bonded stop notice and for the full and continuous protection of Lender from the effect of such lien or bonded stop notice.

4.10. Construction Responsibilities. Borrower shall construct the Improvements in a workmanlike manner substantially in accordance with the Plans and Specifications and the recommendations of any soils or engineering report approved by Lender pursuant to Section 3.1(d) above. Borrower shall substantially comply with all applicable laws, ordinances, rules, regulations, building restrictions, recorded covenants and restrictions, and requirements of all regulatory authorities having jurisdiction over the Property or Improvements. Borrower shall be solely responsible for all aspects of Borrower's business and conduct in connection with the Property and Improvements, including, without limitation, for the quality and suitability of the Plans and Specifications and their compliance with all governmental requirements, the supervision of the work of construction, the qualifications, financial condition and performance of all architects, engineers, contractors, material suppliers, consultants and property managers, and the accuracy of all applications for payment and the proper application of all disbursements. Lender is not obligated to supervise, inspect or inform Borrower or any third party of any aspect of the construction of the Improvements or any other matter referred to above.

12

4.11. Assessments and Community Facilities Districts. Without Lender's prior written consent, Borrower shall not cause or suffer to become effective or otherwise consent to the formation of any assessment district or community facilities district which includes all or any part of the Property and Improvements pursuant to: (a) the Mello-Roos Community Facilities Act of 1982; (b) the Municipal Improvement Act of 1913; or (c) any other comparable or similar statute or regulation. Nor shall Borrower cause or otherwise consent to the levying of special taxes or assessments against the Property and Improvements by any such assessment district or community facilities district.

4.12. Delay. Borrower shall promptly notify Lender in writing of any event causing delay or interruption of construction, or the timely completion of construction. The notice shall specify the particular work delayed, and the cause and period of each delay.

4.13. Inspections. Lender shall have the right to enter upon the Property at all reasonable times to inspect the Improvements and the construction work to verify information disclosed or required pursuant to this Agreement. Any inspection or review of the Improvements by Lender is solely to determine whether Borrower is properly discharging its obligations to Lender and may not be relied upon by Borrower or by any third party as a representation or warranty of compliance with this Agreement or any other agreement. Lender owes no duty of care to Borrower or any third party to protect against, or to inform Borrower or any third party of, any negligent, faulty, inadequate or defective design or construction of the Improvements as determined by Lender.

4.14. Surveys. Upon Lender's written request, Borrower shall promptly deliver to Lender: (a) a current survey of the Property showing the location of the Improvements on the Property (as constructed as of the date of such survey), all easements, encroachments and applicable governmental set backs; and (b) upon completion of the Improvements, an as-built survey acceptable to a title insurer for purposes of issuing an ALTA policy of title insurance. All such surveys shall be performed and certified by a licensed engineer or surveyor acceptable to the title insurer.

## ARTICLE 5. INSURANCE

Borrower shall, while any obligation of Borrower under any Loan Document remains outstanding, maintain at Borrower's sole expense, with licensed insurers approved by Lender, the following policies of insurance in form and substance satisfactory to Lender:

5.1. Title Insurance. A Title Policy insuring Lender, in the principal amount of the Loan, of the validity and the priority of the lien of the Deed of Trust upon the Property and Improvements, subject only to matters approved by Lender in writing. During the term of the Loan, Borrower shall deliver to Lender, within five (5) Business Days after Lender's written request, such other endorsements to the Title Policy as Lender may reasonably require.

5.2. Property Insurance. A Builders Risk Completed Value Hazard Insurance policy, including, without limitation, such endorsements as Lender may require, insuring Lender

13

against damage to the Property and Improvements in an amount acceptable to Lender. Lender shall be named on the policy under a Lender's Loss Payable Endorsement (form #438BFU or equivalent).

5.3. Flood Hazard Insurance. A policy of flood insurance, as required by applicable governmental regulations, or as deemed necessary by Lender.

5.4. Liability Insurance. A policy of commercial general liability insurance with limits as required by Lender, insuring against liability for injury and/or death to any person and/or damage to any property occurring on the Property and/or in the Improvements from any cause whatsoever.

5.5. General. Borrower shall provide to Lender the originals of all required insurance policies, or other evidence of insurance acceptable to Lender. All insurance policies shall provide that the insurance shall not be cancelable or materially changed without ten (10) days prior written notice to Lender. Lender shall be named under a Lender's Loss Payable Endorsement (form #438BFU or equivalent) on all insurance policies which Borrower actually maintains with respect to the Property and Improvements. Borrower shall provide to Lender evidence of any other hazard insurance Lender may deem necessary at any time during the Loan.

## ARTICLE 6. REPRESENTATIONS AND WARRANTIES

As a material inducement to Lender's entry into this Agreement, Borrower represents and warrants to Lender as of the Effective Date and as of the date each Application for Payment is submitted to Lender pursuant to EXHIBIT D (provided, however, that to the extent circumstances have changed for reasons beyond the reasonable control of Borrower such that Borrower must qualify such representations and warranties as of the date of delivery of any such Application for Payment, such qualification, to the extent it renders the applicable representation materially untrue or breaches the applicable warranty, shall merely be a failure of condition to Lender's obligation to disburse funds under the provisions of EXHIBIT D, as opposed to constituting an Event of Default) that:

6.1. Authority/Enforceability. Borrower is in substantial compliance with all laws and regulations applicable to its organization, existence and transaction of business and has all necessary rights and powers to own, develop and operate the Property and Improvements as contemplated by the Loan Documents.

6.2. Binding Obligations. Borrower is authorized to execute, deliver and perform its obligations under the Loan Documents and such obligations are and shall continue to be valid and binding obligations of Borrower.

6.3. Intentionally Omitted.

6.4. No Violation. Borrower's execution, delivery, and performance under the Loan Documents do not: (a) require any consent or approval not heretofore obtained under any

14

partnership agreement, operating agreement, limited liability company agreement, articles of incorporation, bylaws or other document; (b) materially violate any governmental requirement applicable to the Property and Improvements or any other statute, law, regulation or ordinance or any order or ruling of any court or governmental entity; (c) materially conflict with, or constitute a material breach or default or permit the acceleration of obligations under any agreement, contract, lease, or other document by which the Borrower is or the Property and Improvements are bound or regulated; or (d) materially violate any statute, law, regulation or ordinance, or any order of any court or governmental entity.

6.5. Compliance with Laws. Borrower has, and at all applicable times shall have obtained, all permits, licenses, exemptions, and approvals necessary to construct, occupy, operate and market the Property and Improvements for the applicable stage of development and operation, and shall maintain substantial compliance with all governmental requirements applicable to the Property and Improvements and all other applicable statutes, laws, regulations and ordinances necessary for the transaction of its business.

6.6. Litigation. Except as disclosed to Lender in writing, there are no claims, actions, suits, or proceedings pending, or to Borrower's knowledge threatened, against Borrower or affecting the Property or Improvements that are of a material nature and that, if successfully prosecuted against Borrower would create a material adverse change in the financial condition of Borrower.

6.7. Financial Condition. All financial statements and information relating to the financial condition of Borrower, the Property, and the Improvements, which have been heretofore and hereafter are delivered to Lender by Borrower, fairly and accurately represent as of the date of such delivery the financial condition of the subject thereof and have been prepared (except as noted therein) in accordance with generally accepted accounting principles consistently applied. Borrower acknowledges and agrees that Lender may request and obtain additional information from third parties regarding any of the above, including, without limitation, credit reports.

6.8. [Deleted]

6.9. Loan Proceeds and Adequacy. The undisbursed Loan proceeds, together with Borrower's Funds and all other sums, if any, to be provided by Borrower as shown in EXHIBIT C, are sufficient to construct the Improvements in accordance with the terms and conditions of this Agreement.

6.10. Accuracy. All reports, documents, instruments, information and forms of evidence delivered to Lender concerning the Loan or security for the Loan or required by the Loan Documents are accurate, correct and sufficiently complete to give Lender true and accurate knowledge of their subject matter, and do not contain any material misrepresentation or omission.

15

6.11. Tax Liability. Borrower has filed all required federal, state, county and municipal tax returns and has paid all taxes and assessments owed and payable by Borrower or with respect to the Property, and Borrower has no knowledge of any basis for any additional payment with respect to any such taxes and assessments.

6.12. Utilities. Subject to the provisions of Section 4.3 of this Agreement, all utility services, including, without limitation, gas, water, sewage, electrical and telephone, necessary for the development and occupancy of the Property and Improvements are available at or within the boundaries of the Property, or Borrower has taken all steps reasonably necessary to date to assure that all such services will be available upon completion of the Improvements.

6.13. Compliance. Borrower is familiar with and in substantial compliance with all governmental requirements for the development of the Property and construction of the Improvements and, subject to the provisions of Section 4.3 of this Agreement, will substantially conform to and comply with all governmental requirements and the Plans and Specifications.

6.14. [Deleted].

6.15. Business Loan. The Loan is a business loan transaction in the stated amount solely for the purpose of carrying on the business of Borrower and none of the proceeds of the Loan will be used for the personal, family or agricultural purposes of the Borrower. Lender acknowledges that a portion of the Loan, up to Six Million and No/100 Dollars ($6,000,000.00), may be used by Borrower for distributions to members and other affiliates of the Borrower.

## ARTICLE 7. HAZARDOUS MATERIALS

7.1. Special Representations and Warranties. Without in any way limiting the other representations and warranties set forth in this Agreement, and after reasonable investigation and inquiry, and except as disclosed in the Environmental Report or otherwise disclosed in writing to Lender prior to the date of this Agreement, Borrower hereby specially represents and warrants to the best of Borrower's knowledge as of the date of this Agreement as follows:

(a) Hazardous Materials. The Property and Improvements are not and have not been a site for the use, generation, manufacture, storage, treatment, release, threatened release, discharge, disposal, transportation or presence of any oil, flammable explosives, asbestos, urea formaldehyde insulation, radioactive materials, hazardous wastes, toxic or contaminated substances or similar materials, including, without limitation, any substances which are "hazardous substances," "hazardous wastes," "hazardous materials," "toxic substances," "wastes," "regulated substances," "industrial solid wastes," or "pollutants" under the Hazardous Materials Laws, as described below, and/or other applicable environmental laws, ordinances or regulations (collectively, the "Hazardous Materials"). "Hazardous Materials" shall not include commercially reasonable amounts of

16

such materials used in the ordinary course of preparation of the Property for construction, construction of the Improvements and operation of the Property which are used and stored in accordance with all applicable environmental laws, ordinances and regulations.

(b) Hazardous Materials Laws. The Property and Improvements are in substantial compliance with all laws, ordinances and regulations relating to Hazardous Materials ("Hazardous Materials Laws"), including, without limitation: the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 et seq.; the Comprehensive Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651, the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, as amended, 42 U.S.C. Section 300f et seq.; and all comparable state and local laws, laws of other applicable jurisdictions or orders and regulations.

(c) Hazardous Materials Claims. To the actual knowledge of the Borrower, there are no claims or actions ("Hazardous Materials Claims") pending or threatened against Borrower, the Property or Improvements by any governmental entity or agency or by any other person or entity relating to Hazardous Materials or pursuant to the Hazardous Materials Laws.

(d) Border Zone Property. To the actual knowledge of the Borrower, the Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be designated as Border Zone Property.

7.2. Hazardous Materials Covenants. Borrower agrees as follows:

(a) No Hazardous Activities. Except for the implementation of remediation programs or plans required under agreements, orders or consent decrees referenced in the Environmental Report, Borrower shall not cause or permit the Property or Improvements to be used as a site for the use, generation, manufacture, storage, treatment, release, discharge, disposal, transportation or presence of any Hazardous Materials.

(b) Compliance. Except to the extent such compliance is to be the result of the implementation of remediation programs or plans required under agreements, orders or consent decrees referenced in the Environmental Report, Borrower shall comply and cause the Property and Improvements to comply with all Hazardous Materials Laws.

(c) Notices. Except for those matters set forth in the Environmental Report or otherwise disclosed in writing to Lender prior to the date of this Agreement, Borrower

17

shall immediately notify Lender in writing of: (i) the discovery of any Hazardous Materials on, under or about the Property and Improvements; (ii) any knowledge by Borrower that the Property and Improvements are not in material compliance with any Hazardous Materials Laws; (iii) any Hazardous Materials Claims; and (iv) the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be designated as Border Zone Property.

(d) Remedial Action. Except with respect to any Hazardous Materials, violations of Hazardous Materials Laws and Hazardous Materials Claims that are to be remedied by the implementation of remediation programs or plans required under agreements, orders or consent decrees referenced in the Environmental Report, in response to the presence of any Hazardous Materials on, under or about the Property or Improvements, Borrower shall immediately take, at Borrower's sole expense, all remedial action required by any Hazardous Materials Laws or any judgment, consent decree, settlement or compromise in respect to any Hazardous Materials Claims.

(e) Inspection By Lender. Upon reasonable prior notice to Borrower, Lender, its employees and agents, may from time to time (whether before or after the commencement of a nonjudicial or judicial foreclosure proceeding) enter and inspect the Property and Improvements for the purpose of determining the existence, location, nature and magnitude of any past or present release or threatened release of any Hazardous Materials into, onto, beneath or from the Property and Improvements.

(f) Hazardous Materials Indemnity. BORROWER HEREBY AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER, ITS DIRECTORS, OFFICERS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, ACTIONS, JUDGMENTS, COURT COSTS AND LEGAL OR OTHER EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND EXPENSES) WHICH LENDER MAY INCUR AS A DIRECT OR INDIRECT CONSEQUENCE OF THE USE, GENERATION, MANUFACTURE, STORAGE, DISPOSAL, THREATENED DISPOSAL, TRANSPORTATION OR PRESENCE OF HAZARDOUS MATERIALS IN, ON, UNDER OR ABOUT THE PROPERTY OR IMPROVEMENTS. BORROWER SHALL IMMEDIATELY PAY TO LENDER UPON DEMAND ANY AMOUNTS OWING UNDER THIS INDEMNITY, TOGETHER WITH INTEREST FROM THE DATE THE INDEBTEDNESS ARISES UNTIL PAID AT THE RATE OF INTEREST APPLICABLE TO THE PRINCIPAL BALANCE OF THE NOTE. BORROWER'S DUTY AND OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER SHALL SURVIVE THE CANCELLATION OF THE NOTE AND THE RELEASE, RECONVEYANCE OR PARTIAL RECONVEYANCE OF THE DEED OF TRUST.

(g) Legal Effect of Section. Borrower and Lender agree that: (a) this Article VII is intended as Lender's written request for information (and Borrower's response) concerning the environmental condition of the real property security as required by

18

California Code of Civil Procedure Section 726.5; and (b) each provision in this Article (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the real property security is intended by Lender and Borrower to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736, and as such it is expressly understood that Borrower's duty to indemnify Lender hereunder shall survive: (i) any judicial or non-judicial foreclosure under the Deed of Trust, or transfer of the Property in lieu thereof; (ii) the release and reconveyance or cancellation of the Deed of Trust; and (iii) the satisfaction of all of Borrower's obligations under the Loan Documents.

## ARTICLE 8. SET ASIDE LETTERS

8.1. Set Aside Letters. If, at Borrower's request, Lender issues any letter or letters ("Set Aside Letter") to any governmental agency ("Obligee") or bonding company ("Surety") whereby Lender agrees to allocate Loan proceeds for the construction of off-site, common area, or other improvements required by any governmental agency or for which bonds may be required ("Bonded Work") in connection with the development of the Property, Borrower represents, warrants, covenants and agrees as follows:

(a) The sum which Borrower requests Lender to allocate for the Bonded Work shall be sufficient to pay for the construction and completion cost of the Bonded Work in accordance with any agreement between Borrower and Obligee or as may be required under the Project Entitlements, and a copy of such agreement shall be furnished to Lender by Borrower prior to and as a condition precedent to the issuance by Lender of any Set Aside Letter;

(b) Lender is irrevocably and unconditionally authorized to disburse to the Obligee or Surety all or any portion of said allocated Loan proceeds upon a demand of such Surety or Obligee made in accordance with the terms and conditions of the Set Aside Letter;

(c) Any disbursements or payments which Lender makes or may be obligated to make under any Set Aside Letter, whether made directly to the Surety, Obligee, or to others for completion of all or part of the Bonded Work, shall be deemed a disbursement under this Agreement or for the benefit or account of Borrower;

(d) BORROWER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER FROM ANY CLAIM, DEMAND, CAUSE OF ACTION, DAMAGE, LOSS OR LIABILITY, INCLUDING, WITHOUT LIMITATION, ANY COURT COSTS AND ATTORNEYS' FEES AND EXPENSES, WHICH LENDER MAY SUFFER OR INCUR AS A DIRECT OR INDIRECT CONSEQUENCE OF ITS ISSUANCE OF OR COMPLIANCE WITH ANY REQUESTED SET ASIDE LETTER. BORROWER SHALL PAY ANY INDEBTEDNESS ARISING UNDER THIS INDEMNITY TO LENDER IMMEDIATELY UPON DEMAND OF LENDER. BORROWER'S DUTY TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER HEREUNDER SHALL SURVIVE THE RELEASE AND CANCELLATION OF THE NOTE AND

19

THE FULL OR PARTIAL RELEASE OR RECONVEYANCE OF THE DEED OF
TRUST OR OTHER LOAN DOCUMENTS;

(e) Lender shall have no obligation to release any collateral or security under the
Loan Documents unless and until Lender has received a full and final written release of
its obligations under each Set Aside Letter; and

(f) Lender is not obligated to issue any Set Aside Letter and may refuse to do so
in Lender's sole and absolute discretion, excepting only the following Set Aside Letters:
None.

## ARTICLE 9. COVENANTS OF BORROWER

9.1. Expenses. Borrower shall immediately pay Lender upon demand all Lender's
reasonable out-of-pocket costs and expenses actually incurred by Lender in connection
with: (a) the preparation of this Agreement, all other Loan Documents and Other Related
Documents contemplated hereby; (b) the administration of this Agreement, the other
Loan Documents and Other Related Documents for the term of the Loan; and (c) the
enforcement or satisfaction by Lender of any of Borrower's obligations under this
Agreement, the other Loan Documents or the Other Related Documents. For all purposes
of this Agreement, Lender's costs and expenses shall include, without limitation, all
appraisal fees, cost engineering and inspection fees, legal fees and expenses, accounting
fees, environmental consultant fees, auditor fees, and the cost to Lender of any title
insurance premiums, title surveys, reconveyance and notary fees. Borrower recognizes
and agrees that Lender may, at its option, require inspection of the Property and
Improvements by an independent supervising architect and/or cost engineering specialist:
(i) prior to each advance; (ii) at least once each month during the course of construction
even though no disbursement is to be made for that month; (iii) upon completion of the
Improvements; and (iv) at least semi-annually thereafter during the term of the Loan. To
the extent that any of the foregoing are performed or incurred by employees of Lender or
any Affiliate of Lender, no such costs, or any associated travel, lodging, subsistence or
other expenses for such goods and services shall be owed by Borrower.

9.2. ERISA Compliance. Borrower shall at all times comply with the provisions of
ERISA with respect to any retirement or other employee benefit plan to which it is a
party as employer, and as soon as possible after Borrower knows, or has reason to know,
that any Reportable Event (as defined in ERISA) with respect to any such plan of
Borrower has occurred, it shall furnish to Lender a written statement setting forth details
as to such Reportable Event and the action, if any, which Borrower proposes to take with
respect thereto, together with a copy of the notice of such Reportable Event furnished to
the Pension Benefit Guaranty Corporation.

9.3. [Deleted]

9.4. [Deleted]

9.5. Revenue to be Applied to Debt Service. Following the occurrence and during the continuation of any Default, no Distributions shall be made or distributed to any partner, venturer, member or equity investor of Borrower.

9.6. Subdivision Maps. Prior to recording any final map, plat, parcel map, lot line adjustment or other subdivision map of any kind covering any portion of the Property (collectively, "Subdivision Map"), Borrower shall submit such Subdivision Map to Lender for Lender's review and approval, which approval shall not be unreasonably withheld. Within ten (10) Business Days after Lender's receipt of such Subdivision Map, Lender shall provide Borrower written notice if Lender disapproves of said Subdivision Map. Lender shall be deemed to have approved the Subdivision Map if such notice is not so provided to Borrower. Within five (5) Business Days after Lender's request, Borrower shall execute, acknowledge and deliver to Lender such amendments to the Loan Documents as Lender may reasonably require to reflect the change in the legal description of the Property resulting from the recordation of any Subdivision Map. In connection with and promptly after the recordation of any amendment or other modification to the Deed of Trust recorded in connection with such amendments, Borrower shall deliver to Lender, at Borrower's sole expense, a title endorsement to the Title Policy in form and substance satisfactory to Lender insuring the continued first priority lien of the Deed of Trust. Subject to the execution and delivery by Borrower of any documents required under this Section, Lender shall, if required by applicable law, sign any Subdivision Map approved, or deemed to be approved, by Lender pursuant to this Section.

9.7. Further Assurances. Upon Lender's request and at Borrower's sole cost and expense, Borrower shall execute, acknowledge and deliver any other instruments and perform any other acts necessary, desirable or proper, as determined by Lender, to carry out the purposes of this Agreement and the other Loan Documents or to perfect and preserve any liens created by the Loan Documents.

9.8. Assignment. Without the prior written consent of Lender, Borrower shall not assign Borrower's interest under any of the Loan Documents, or in any monies due or to become due thereunder, and any assignment without such consent shall be void. In this regard, Borrower acknowledges that Lender would not make this Loan except in reliance on Borrower's expertise, reputation, prior experience in developing and constructing commercial real property, Lender's knowledge of Borrower, and Lender's understanding that this Agreement is more in the nature of an agreement involving personal services than a standard loan where Lender would rely on security which already exists.

9.9. [Deleted]

9.10. Governing Documents. Without the prior written consent of Lender, Borrower shall not modify or permit to be modified the formation or organizational documents of the Borrower, or any partners, joint venturers or members thereof.

9.11. [Deleted]

21

## ARTICLE 10. REPORTING COVENANTS

10.1. Financial Information. Borrower hereby consents to Lender's obtaining from other parties copies of any and all reports that Borrower delivers to any party. In addition, on or before the tenth (10th) day of each month, Borrower shall deliver to Lender a reconciliation showing the balance of the Working Capital Reserve Account as of the beginning of the first day of the preceding calendar month, the balance of the Working Capital Reserve as of the end of the last day of the preceding calendar month, and a line item listing of all expenditures, together with supporting documentation, of amounts expended from the Working Capital Reserve Account during such period.

To the extent not otherwise obtained as provided above, within thirty (30) days after Lender's request, Borrower shall also deliver to Lender such quarterly and other financial information regarding the Property or Borrower. If audited financial information is prepared, Borrower shall deliver to Lender copies of that information within fifteen (15) days after its final preparation. Except as otherwise agreed to by Lender, all such financial information shall be prepared in accordance with generally accepted accounting principles consistently applied. Upon written request of Lender, Borrower use good faith efforts to obtain and deliver to Lender any specific financial reports and information pertaining to the members, managers, partners and shareholders of Borrower.

10.2. Books and Records. Borrower shall maintain complete books of account and other records for the Property and Improvements and for disbursement and use of the proceeds of the Loan and Borrower's Funds, and the same shall be available for inspection and copying by Lender upon reasonable prior notice.

## ARTICLE 11. DEFAULTS AND REMEDIES

11.1. Default. The occurrence of any one or more of the following shall constitute an event of default (hereinafter, "Default") under this Agreement and the other Loan Documents:

(a) Monetary. Borrower's failure to pay within ten (10) Business Days following the date of delivery of written notice from Lender to Borrower that such amount was not received when due, any sums payable under the Note or any of the other Loan Documents or Borrower's failure to deposit any Borrower's Funds as and when required under this Agreement; provided, however, that if such written notice from Lender is an Out of Balance Notice, then, in lieu of such 10-Business Day period, Borrower shall have a thirty (30) day period following the date of delivery of such Out of Balance Notice before a Default shall occur in which to deposit funds equal to the amount of the applicable deficiency into the Borrower's Funds Account, as contemplated by the provisions of Section 3.1(b); further, provided, however, that no such notice or cure period shall apply at maturity or upon acceleration; or

22

(b) Performance of Obligations. Borrower's failure to perform any obligation in addition to those in Section 11.1(a) above under any of the Loan Documents within thirty (30) days following the date of delivery of written notice from Lender; provided, however, that if a longer or shorter cure period is expressly provided for the remedy of any such failure, Borrower's failure to perform will not constitute a Default until such longer or shorter date as the specified cure period expires; but provided further, however, if such Default is curable, but the nature of such failure is such that it cannot reasonably be cured within said thirty (30) days (or longer or shorter specified cure period), then if Borrower fails to commence a cure thereof within said time and thereafter fails to diligently pursue a cure thereof and fails to complete same within ninety (90) days after Lender's written demand; or a default by Borrower (following any applicable notice and cure period) under any of the Other Related Documents; or

(c) Construction; Use. (i) There is any material deviation in the work of construction from the Plans and Specifications or governmental requirements from that required under this Agreement or the appearance or use of defective workmanship or materials in constructing the Improvements, and Borrower fails to remedy the same to Lender's satisfaction within ten (10) Business Days after Lender's written demand to do so, or if the nature of such deviation or defect is curable but such that it cannot reasonably be cured within said ten (10) Business Days, then if Borrower fails to commence a cure thereof within said ten (10) Business Days and thereafter fails to diligently pursue a cure thereof and complete same within ninety (90) days after Lender's written demand; or (ii) subject to the provisions of Section 4.3, there is a cessation of construction of the Improvements prior to completion for a continuous period of more than fifteen (15) days; or (iii) the construction, renovation, sale or leasing of any of the Improvements in accordance with the Loan Documents is prohibited, enjoined or delayed for a continuous period of more than forty-five (45) days; or (iv) subject to the provisions of Section 4.3, utilities or other public services necessary for the full occupancy and utilization of the Property and Improvements are curtailed for a continuous period of more than thirty (30) days; or

(d) Liens, Attachment; Condemnation. (i) The recording of any claim of lien against the Property or Improvements or the service on Lender of any bonded stop notice relating to the Loan and the continuance of such claim of lien or bonded stop notice for twenty (20) days without discharge, satisfaction or provision for payment being made by Borrower in a manner satisfactory to Lender, subject to the provisions of Section 4.9 hereof and Section 5.5 of the Deed of Trust; or (ii) the condemnation, seizure or appropriation of, or occurrence of an uninsured casualty with respect to any material portion of the Property or Improvements that is not otherwise offset by Borrower's deposit of sufficient restoration funds (including any applicable deductible amount under any applicable policy of casualty insurance) into the Borrower's Funds Account within forty-five (45) days after the occurrence of such event; or (iii) the sequestration or attachment of, or any levy or execution upon any of the Property or Improvements, any other collateral provided by Borrower under any of the Loan Documents, any monies in the Account or in the Borrower's Funds Account, or any substantial portion of the other assets of Borrower, which sequestration, attachment, levy or execution is not released,

23

expunged or dismissed prior to the earlier of forty-five (45) days or the sale of the assets affected thereby; or

(e) Representations and Warranties. (i) The material failure of any representation or warranty of Borrower in any of the Loan Documents to be true, correct and complete as of the date made, and the continuation of such failure for more than ten (10) Business Days after written notice to Borrower from Lender requesting that Borrower cure such failure; or

(f) Voluntary Bankruptcy; Insolvency; Dissolution. (i) The filing of a petition by Borrower for relief under the Bankruptcy Code, or under any other present or future state or federal law regarding bankruptcy, reorganization or other debtor relief law; (ii) a general assignment by Borrower for the benefit of creditors; or (iii) Borrower applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Borrower or any of its property; or

(g) Involuntary Bankruptcy. (i) The filing of any pleading or an answer by Borrower in any involuntary proceeding under the Bankruptcy Code or other debtor relief law which admits the jurisdiction of the court or the petition's material allegations regarding Borrower's insolvency; or (ii) the failure of Borrower to effect a full dismissal of any involuntary petition under the Bankruptcy Code or under any other debtor relief law that is filed against Borrower or in any way restrains or limits Borrower or Lender regarding the Loan, the Property or the Improvements, prior to the earlier of the entry of any court order granting relief sought in such involuntary petition, or forty-five (45) days after the date of filing of such involuntary petition; or

(h) [Deleted]; or

(i) Change In Management or Control. The occurrence of any material management or organizational change in Borrower or in the partners, venturers or members of Borrower, including, without limitation, any dispute among the constituent members or partners of Borrower, and which Lender determines, in its sole and absolute discretion, shall have a material adverse effect on the Loan, on the Property and Improvements, or on the ability of Borrower or its partners, venturers or members to perform their obligations under the Loan Documents; or

(j) Loss of Priority. The failure at any time of the Deed of Trust to be a valid first lien upon the Property and Improvements or any portion thereof, other than as a result of any release or reconveyance of the Deed of Trust with respect to all or any portion of the Property and Improvements pursuant to the terms and conditions of this Agreement; or

(k) Hazardous Materials. The discovery of any significant Hazardous Materials in, on or about the Property or Improvements subsequent to the Effective Date (to the extent not disclosed in the Environmental Report or otherwise disclosed in writing to Lender prior to the date of this Agreement); provided, however, if such Default is curable, but the nature of such failure is such that it cannot reasonably be cured within thirty (30) days,

24

then if Borrower fails to commence a cure thereof within said time and thereafter fails to diligently pursue a cure thereof and fails to complete same within ninety (90) days after Lender's written demand. Any such Hazardous Materials shall be "significant" for this purpose if said Hazardous Materials, in Lender's sole discretion, have a materially adverse impact on the value of the Property and Improvements.


Notwithstanding any of the foregoing or anything to the contrary in this Agreement, to the extent that any Default can be cured by the payment of money directly to Lender, to Borrower's Funds Account or to any third party to reimburse same for materials or services already delivered or performed or for the purpose of delivering materials or performing services which if so done would cure said Default, the applicable cure period specified in this Agreement shall be extended by an additional sixty (60) days to allow Borrower to undertake any necessary capital calls or to seek or arrange the necessary partnership loans.

11.2. Acceleration Upon Default; Remedies. Upon the occurrence of any Default specified in this Article XI, Lender may, at its sole option, declare all sums owing to Lender under the Note, this Agreement and the other Loan Documents immediately due and payable. Upon such acceleration, Lender may, in addition to all other remedies permitted under this Agreement and the other Loan Documents and at law or equity, apply any sums in the Account and Borrower's Funds Account to the sums owing under the Loan Documents and any and all obligations of Lender to fund further disbursements under the Loan shall terminate.

11.3. Disbursements to Third Parties. Upon the occurrence of a Default occasioned by Borrower's failure to pay money to a third party as required by this Agreement, Lender may but shall not be obligated to make such payment from the Loan proceeds, Borrower's Funds, or other funds of Lender. If such payment is made from proceeds of the Loan or from Borrower's Funds, Borrower shall immediately deposit with Lender, upon written demand, an amount equal to such payment. If such payment is made from funds of Lender, Borrower shall immediately repay such funds upon written demand of Lender. In either case, the Default with respect to which any such payment has been made by Lender shall not be deemed cured until such deposit or repayment (as the case may be) has been made by Borrower to Lender.

11.4. Lender's Completion of Construction. Upon the occurrence of a Default, Lender may, upon five (5) Business Days prior written notice to Borrower, and with or without legal process, take possession of the Property and Improvements, remove Borrower and all agents, employees and contractors of Borrower from the Property and Improvements, complete the work of construction and market for lease and lease space within the Property and/or Improvements. For this purpose, Borrower irrevocably appoints Lender as its attorney-in-fact, which agency is coupled with an interest. As attorney-in-fact, Lender may, in Borrower's name, take or omit to take any action Lender may deem appropriate with respect to third parties, including, without limitation, exercising

25

Borrower's rights under all contracts concerning the Property and/or Improvements, but excluding the Loan Documents.

11.5. Lender's Cessation of Construction. If Lender determines at any time that the Improvements are not being constructed substantially in accordance with the requirements under this Agreement, then upon the occurrence of a Default therefor, Lender may, upon five (5) Business Days prior written notice to Borrower, immediately cause all construction to cease on any of the Improvements affected by the condition of nonconformance. Borrower shall thereafter not allow any construction work, other than corrective work, to be performed on any of the Improvements affected by the condition of nonconformance until such time as Lender notifies Borrower in writing that the nonconforming condition has been corrected.

11.6. Termination or Continuation of Development and Management Agreements. Upon the occurrence of a Default wherein Lender elects to accelerate the Loan and records a notice of default to foreclose the lien of the Deed of Trust, Lender may elect to require Borrower to terminate the Development and Management Agreements (and Borrower shall immediately do so), without any termination fee or penalty, provided that all fees and expenses previously accrued thereunder up to the effective date of such termination are paid in full; provided however, so long as the Development and Management Agreements are not terminated, the respective party or parties performing services thereunder shall be entitled to continue to receive all fees and expenses owed such party or parties under the applicable Development and Management Agreements. In the event that Borrower reinstates the Loan under California law prior to the foreclosure of the lien of the Deed of Trust, such Development and Management Agreements shall be deemed to have been reinstated as of the date of such reinstatement of the Loan.

11.7. Repayment of Funds Advanced. Any funds expended by Lender in the exercise of its rights or remedies under this Agreement and the other Loan Documents shall be payable to Lender upon demand, together with interest at the rate applicable to the principal balance of the Note from the date the funds were expended.

11.8. Rights Cumulative, No Waiver. All Lender's rights and remedies provided in this Agreement and the other Loan Documents, together with those granted by law or at equity, are cumulative and may be exercised by Lender at any time. Lender's exercise of any right or remedy shall not constitute a cure of any Default unless all sums then due and payable to Lender under the Loan Documents are repaid and Borrower has cured all other Defaults. No waiver shall be implied from any failure of Lender to take, or any delay by Lender in taking, action concerning any Default or failure of condition under the Loan Documents, or from any previous waiver of any similar or unrelated Default or failure of condition. Any waiver or approval under any of the Loan Documents must be in writing and shall be limited to its specific terms.

ARTICLE 12. MISCELLANEOUS PROVISIONS

26

12.1. Indemnity. BORROWER HEREBY AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER, ITS DIRECTORS, OFFICERS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, ACTIONS, JUDGMENTS, COURT COSTS AND LEGAL OR OTHER EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES) WHICH LENDER MAY INCUR AS A DIRECT OR INDIRECT CONSEQUENCE OF: (A) THE PURPOSE TO WHICH BORROWER APPLIES THE LOAN PROCEEDS; (B) THE FAILURE OF BORROWER TO PERFORM ANY OBLIGATIONS AS AND WHEN REQUIRED BY THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS; (C) ANY FAILURE AT ANY TIME OF ANY OF BORROWER'S REPRESENTATIONS OR WARRANTIES TO BE TRUE AND CORRECT; OR (D) ANY ACT OR OMISSION BY BORROWER, ANY CONSTITUENT PARTNER OR MEMBER OF BORROWER, ANY CONTRACTOR, SUBCONTRACTOR OR MATERIAL SUPPLIER, ENGINEER, ARCHITECT OR OTHER PERSON OR ENTITY WITH RESPECT TO ANY OF THE PROPERTY OR IMPROVEMENTS, EXCEPT TO THE EXTENT CAUSED OR CONTRIBUTED TO BY THE BAD FAITH, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LENDER. BORROWER SHALL IMMEDIATELY PAY TO LENDER UPON DEMAND ANY AMOUNTS OWING UNDER THIS INDEMNITY, TOGETHER WITH INTEREST FROM THE DATE THE INDEBTEDNESS ARISES UNTIL PAID AT THE RATE OF INTEREST APPLICABLE TO THE PRINCIPAL BALANCE OF THE NOTE.  BORROWER'S DUTY AND OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER SHALL SURVIVE CANCELLATION OF THE NOTE AND THE RELEASE, RECONVEYANCE OR PARTIAL RECONVEYANCE OF THE DEED OF TRUST.

12.2. Form of Documents. The form and substance of all documents, instruments, and forms of evidence to be delivered to Lender under the terms of this Agreement and any of the other Loan Documents shall be subject to Lender's approval and shall not be modified, superseded or terminated in any respect without Lender's prior written approval, except to the extent otherwise provided in this Agreement.

12.3. No Third Parties Benefited. No person other than Lender and Borrower and their permitted successors and assigns shall have any right of action under any of the Loan Documents.

12.4. Notices. All notices, demands, or other communications under this Agreement and the other Loan Documents shall be in writing and shall be delivered to the appropriate party at the address set forth on the signature page of this Agreement and as specified in EXHIBIT D (subject to change from time to time by written notice to all other parties to this Agreement). All communications shall be deemed served upon delivery of, or if mailed, upon receipt or rejection after the deposit in the United States Postal Service mail, certified postage prepaid-return receipt requested and addressed to the address of Borrower or Lender at the address specified; provided, however, that non-receipt of any communication as the result of any change of address of which the sending

27

party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

12.5. **Attorney-in-Fact.** Borrower hereby irrevocably appoints and authorizes Lender, as Borrower's attorney-in-fact, which agency is coupled with an interest, to execute and/or record in Lender's or Borrower's name any notices, instruments or documents that Lender deems appropriate to protect Lender's interest under any of the Loan Documents.

12.6. **Actions.** Borrower agrees that Lender, in exercising the rights, duties or liabilities of Lender or Borrower under the Loan Documents, may commence, appear in or defend any action or proceeding purporting to affect the Property, the Improvements, or the Loan Documents and Borrower shall immediately reimburse Lender upon demand for all such expenses so incurred or paid by Lender, including, without limitation, attorneys' fees and expenses and court costs.

12.7. **Right of Contest.** Borrower may contest in good faith any claim, demand, levy or assessment (other than liens and stop notices, subject to the provisions of Section 4.9 of this Agreement) by any person other than Lender which would constitute a Default if: (a) Borrower pursues the contest diligently, in a manner which Lender determines is not prejudicial to Lender, and does not impair the rights of Lender under any of the Loan Documents; and (b) Borrower deposits with Lender any funds or other forms of assurance which Lender in good faith determines from time to time appropriate to protect Lender from the consequences of the contest being unsuccessful. Borrower's compliance with this Section shall operate to prevent such claim, demand, levy or assessment from becoming a Default.

12.8. **Relationship of Parties.** The relationship of Borrower and Lender under the Loan Documents is, and shall at all times remain, solely that of borrower and lender, and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property or Improvements, except as expressly provided in this Agreement and the other Loan Documents.

12.9. **Delay Outside Lender's Control.** Lender shall not be liable in any way to Borrower or any third party for Lender's failure to perform or delay in performing under the Loan Documents if such failure to perform or delay in performing results directly or indirectly from, or is based upon, the action, inaction, or purported action, of any governmental or local authority, or because of war, rebellion, insurrection, strike, lock-out, boycott or blockade (whether presently in effect, announced or in the sole judgment of Lender deemed probable), or from any Act of God or other cause or event beyond Lender's control.

12.10. **Attorneys' Fees and Expenses; Enforcement.** If any attorney is engaged by Lender to enforce or defend any provision of this Agreement, any of the other Loan Documents or Other Related Documents, or as a consequence of any Default under the Loan Documents, with or without the filing of any legal action or proceeding, and including, without limitation, any fees and expenses incurred in any bankruptcy

28

proceeding of the Borrower, then Borrower shall immediately pay to Lender, upon demand, the amount of all reasonable attorneys' fees and expenses and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance of the Note as specified therein.

12.11. Immediately Available Funds. Unless otherwise expressly provided for in this Agreement, all amounts payable by Borrower to Lender shall be payable only in United States currency, immediately available funds.

12.12. Lender's Consent. Wherever in this Agreement there is a requirement for Lender's consent and/or a document to be provided or an action taken "to the satisfaction of Lender", it is understood by such phrase that Lender shall exercise its consent, right or judgment in a reasonable manner given the specific facts and circumstance applicable at the time.

12.13. Signs. Lender may place on the Property reasonable signs standard to construction loan transactions stating that construction financing is being provided by Lender and any other lenders or participants in the Loan, subject to the requirements of the Project Entitlements and applicable law.

12.14. Lender's Agents. Lender may designate an agent or independent contractor to exercise any of Lender's rights under this Agreement and any of the other Loan Documents. Any reference to Lender in any of the Loan Documents shall include Lender's agents, employees or independent contractors. Borrower shall pay the costs of such agent or independent contractor either directly to such person or to Lender in reimbursement of such costs, as applicable.

12.15. Tax Service. Lender is authorized to secure, at Borrower's expense, a tax service contract with a third party vendor which shall provide tax information on the Property and Improvements satisfactory to Lender.

12.16. WAIVER OF RIGHT TO TRIAL BY JURY. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM,

29

DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT
TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT
MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH
ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES
HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE
TO TRIAL BY JURY.

12.17. Severability. If any provision or obligation under this Agreement and the other
Loan Documents shall be determined by a court of competent jurisdiction to be invalid,
illegal or unenforceable, that provision shall be deemed severed from the Loan
Documents and the validity, legality and enforceability of the remaining provisions or
obligations shall remain in full force as though the invalid, illegal, or unenforceable
provision had never been a part of the Loan Documents, provided, however, that if the
rate of interest or any other amount payable under the Note or this Agreement or any
other Loan Document, or the right of collectability therefor, are declared to be or become
invalid, illegal or unenforceable, Lender's obligations to make advances under the Loan
Documents shall not be enforceable by Borrower.

12.18. Heirs, Successors and Assigns. Except as otherwise expressly provided under
the terms and conditions of this Agreement, the terms of the Loan Documents shall bind
and inure to the benefit of the heirs, successors and assigns of the parties.

12.19. Time. Time is of the essence of each and every term of this Agreement.

12.20. Headings. All article, section or other headings appearing in this Agreement
and any of the other Loan Documents are for convenience of reference only and shall be
disregarded in construing this Agreement and any of the other Loan Documents.

12.21. Governing Law. This Agreement shall be governed by, and construed and
enforced in accordance with the laws of the State of California, except to the extent
preempted by federal laws. Borrower and all persons and entities in any manner obligated
to Lender under the Loan Documents consent to the jurisdiction of any federal or state
court within the State of California having proper venue and also consent to service of
process by any means authorized by California or federal law.

12.22. Integration; Interpretation. The Loan Documents contain or expressly
incorporate by reference the entire agreement of the parties with respect to the matters
contemplated therein and supersede all prior negotiations or agreements, written or oral.
The Loan Documents shall not be modified except by written instrument executed by all
parties. Any reference in any of the Loan Documents to the Property or Improvements
shall include all or any part of the Property or Improvements. Any reference to the Loan
Documents includes any amendments, renewals or extensions now or hereafter approved
by Lender in writing.

30

12.23. Joint and Several Liability. The liability of all persons and entities obligated in any manner under this Agreement and any of the Loan Documents shall be joint and several.

12.24. Counterparts. This Agreement, any of the other Loan Documents (except for the Note), any Other Related Documents and any subsequent modifications, amendments, waivers, consents or supplements thereof, if any, may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original and all such counterparts together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date appearing on the first page of this Agreement.

[SIGNATURE PAGES TO FOLLOW]

31

"Lender"

Hankey Capital, LLC,
a California limited liability company


By:_____
      W. Scott Dobbins, President

Lender's Address:

4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

32

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager


Borrower's Address:

c/o Skyline Development
8981 W. Sunset Blvd., Suite 303
West Hollywood, CA 90069

**CALIFORNIA ACKNOWLEDGMENT**                                              CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of *LOS ANGELES*

On *OCTOBER 30, 2018* before me, *Nigel Gibbs, Notary Public*
_____Date_____                    _____Here Insert Name and Title of the Officer_____

personally appeared *Nile Niami*
_____Name(s) of Signer(s)_____

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> NIGEL GIBBS
> Notary Public - California
> Los Angeles County
> Commission # 2164239
> My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

*Place Notary Seal and/or Stamp Above*

---

―――――――――――――――― **OPTIONAL** ――――――――――――――――

*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document *Construction Loan Agreement*
Document Date: *10/25/18* _____ Number of Pages: *43*
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| □ Corporate Officer – Title(s): _____ | □ Corporate Officer – Title(s): _____ |
| □ Partner – □ Limited □ General | □ Partner – □ Limited □ General |
| □ Individual       □ Attorney in Fact | □ Individual       □ Attorney in Fact |
| □ Trustee          □ Guardian or Conservator | □ Trustee          □ Guardian or Conservator |
| □ Other: _____ | □ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2018 National Notary Association

EXHIBIT A

DESCRIPTION OF PROPERTY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND
IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY
OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE
WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH
76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER
THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE
WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH
THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A
RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID
CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF
A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A
RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG
SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH
56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE
NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE
NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL
ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE
BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF
35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH
A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37
FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40
FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF
LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER
MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE

OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

EXHIBIT B

DOCUMENTS

A. Loan Documents. The documents listed below, numbered 1 through 7, inclusive, and amendments, modifications and supplements thereto which have received the prior written consent of Lender, together with any documents executed in the future that are approved by Lender and that recite that they are "Loan Documents" for purposes of this Agreement are collectively referred to herein as the Loan Documents.

1. This Agreement;

2. Promissory Note of even date herewith in the original principal amount of the Loan made by Borrower payable to the order of Lender;

3. Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents of even date herewith executed by Borrower, as Trustor, to Chicago Title Company, as Trustee, for the benefit of Lender, as Beneficiary;

4. Hazardous Materials Indemnification Agreement of even date herewith executed by Borrower.

5. Assignment of Contracts

B. Other Related Documents (Which Are Not Loan Documents):

1. Manager's Consent;

2. Certificate Regarding Loan Purpose;

3. Truth-In-Lending Affidavit;

4. Summary of Loan Terms and Good Faith Estimate

5. Profit Participation Agreement

36

EXHIBIT C

FINANCIAL REQUIREMENT ANALYSIS

THIS SPACE INTENTIONALLY LEFT BLANK

EXHIBIT D

DISBURSEMENT PLAN

A. Timing of Disbursement. Unless another provision of this Agreement specifies otherwise, on or before the fifteenth (15th) day of each month, Borrower shall submit to:

> Hankey Capital, LLC
> c/o Scott Dobbins
> 4751 Wilshire Blvd., Suite 110
> Los Angeles, California 90010
> Phone :   (323) 692-4022
> Facsimile:  (323) 692-4122

with a copy to:

> [none]

a written itemized statement, signed by Borrower ("Application for Payment") setting forth:

1. A description of the work performed, material supplied and/or costs incurred or due for which disbursement is requested with respect to any line item ("Item") shown in the Disbursement Budget. Notwithstanding the amount of any line item shown in the Disbursement Budget, Borrower may reallocate amounts among the line items by allocating cost savings in any line item to Contingency, and amounts from the Contingency to any line item with a cost overrun; provided, however, that the aggregate amount of all disbursements under the Loan shall not exceed the Loan amount; and

2. The total amount incurred, expended and/or due for each requested Item less prior disbursements.

Each Application for Payment by Borrower shall constitute a representation and warranty by Borrower that Borrower is in compliance with all the conditions precedent to a disbursement specified in this Agreement. With respect to Borrower's remaking of the representations and warranties set forth in Article 6 of this Agreement on the date of submission of each Application for Payment, to the extent circumstances have changed for reasons beyond the reasonable control of Borrower such that Borrower must qualify such representations and warranties as of the date of delivery of any such Application for Payment, such qualification, to the extent it renders the applicable representation materially untrue or breaches the applicable warranty, shall merely be a failure of condition to Lender's obligation to disburse funds under the provisions of this EXHIBIT D, as opposed to constituting an Event of Default.

B. Lender's Right to Condition Disbursements. Lender shall have the right to condition any disbursement upon Lender's receipt in the appropriate form of the

38

following submissions and Lender's reasonable determination that such submissions comply with the requirements set forth below:

1. The Application for Payment and an itemized requisition for payment;

2. Bills, invoices, documents of title, vouchers, statements, receipts and any other documents evidencing the total amount expended, incurred or due for any requested Items;

3. Evidence of Borrower's use of a lien release, joint check and voucher system acceptable to Lender for payments or disbursements to any contractor, subcontractor, materialman, supplier or lien claimant;

4. Architect's, inspector's and/or engineer's periodic certifications of the percentage and/or stage of construction that has been completed and its conformance to the Plans and Specifications and governmental requirements based upon any such architect's, inspector's and/or engineer's periodic physical inspections of the Property and Improvements;

5. Waivers and releases of any mechanics' lien, stop notice claim, equitable lien claim or other lien claim rights (conditional for costs to be paid from the current Application for Payment, and unconditional for all prior costs which have been disbursed by Lender by the twenty-fifth (25th) day of the immediately preceding month or were to have been paid from Borrower's own funds under the Disbursement Budget);

6. Reasonable evidence of Borrower's compliance with the provisions of the Sections of this Agreement entitled CONSTRUCTION and AUTHORITY/ENFORCEABILITY. Where this Agreement calls for the delivery of a certificate as evidence of any action, such certificate, if factually accurate, shall constitute such reasonable evidence;

7. A written release executed by any surety to whom Lender has issued or will issue a set-aside letter and/or any public entity or agency which is a beneficiary under any instrument of credit, set-aside letter or standby letter of credit which Lender has issued or will issue with respect to the Loan;

8. For final payment only with respect all or any separate, independent portion of the Improvements, valid, recorded Notice(s) of Completion for the Improvements or any portions of the Improvements for which Notice(s) of Completion may be recorded under applicable law, and final payment lien release waivers (conditional with respect to costs to be paid from such final payment, and unconditional for all other costs);

9. Certificate of Substantial Completion from the Architect and Engineer, if any, prior to the final retention disbursement;

10. Any other document, requirement, evidence or information that Lender may have reasonably requested under any provision of the Loan Documents at least thirty (30) days prior to the Application for Payment in question; and

11. Except with respect to items covered under #12 and #13 below, evidence that any goods, materials, supplies, fixtures or other work in process for which disbursement is requested have been incorporated into the Improvements.

12. In the event any Application for Payment includes the cost of materials stored at a location other than the Property ("Offsite Materials"), each of the following: (a) evidence that the Offsite Materials have been purchased by Borrower, have been segregated from other materials in the facility and have been appropriately marked to indicate Borrower's ownership thereof and Lender's security interest therein; and (b) evidence that the Offsite Materials are insured as required by this Agreement.

13. In the event that any Application for Payment includes the cost of materials stored on the Property ("Onsite Materials"), each of the following: (a) evidence that the Onsite Materials have been purchased for or by Borrower; (b) evidence that the Onsite Materials are insured as required hereunder; and (c) evidence that the Onsite Materials are stored in an area on the Property for which adequate security is provided against theft and vandalism.

Borrower acknowledges that this approval process may result in disbursement delays and Borrower hereby consents to all such delays; provided, however, that Lender shall use commercially reasonable efforts to respond to all requests for approval within the time periods designated in this Agreement.

C. Periodic Disbursement of Construction Costs, Site Work Costs and Offsite Costs. As construction progresses, the amount of the retention as provided under any construction contract to which Borrower is a party (the "Retention") shall be disbursed into the Account or to or for the benefit or account of the Borrower, Property or Improvements upon Borrower's delivery to Lender of (1) the applicable lien releases specified above in Paragraph B.8 of this EXHIBIT D, (2) the applicable certificate specified above in Paragraph B.9 of this EXHIBIT D and (3) solely with respect to the Construction Contract, a duly issued temporary certificate of occupancy for the Improvements and completion of the Improvements in accordance with the Plans and Specifications.

D. Partial Disbursements. No disbursement shall be made for a particular Application for Payment unless all required supporting materials are included for Items totaling at least sixty-five percent (65%) of the total amount of funds requested thereunder. Subject to the foregoing, to the extent that an unconditional lien release and waiver for an Item that was included in a prior disbursement is not delivered to Lender prior to the date that Lender approves the subsequent disbursement, Lender may withhold from the then current approved disbursement an amount equal to one hundred fifty percent (150%) of the amount for the Item(s) which had been previously funded. Thereafter, such withheld

40

amount shall be disbursed as part of the next ensuing disbursement upon Lender's receipt of the missing unconditional lien release and waiver.

E. Timing of Disbursements. Lender shall exercise diligent and good faith efforts to disburse funds for all approved Items in any Application for Payment within the applicable Lender Payment Turnaround Period.

41

EXHIBIT E

LEASING PARAMETERS

THIS SPACE INTENTIONALLY LEFT BLANK

EXHIBIT F

CERTIFICATE OF APPROVAL

THIS SPACE INTENTIONALLY LEFT BLANK

# EXHIBIT G

## SCHEDULE OF PRE-CLOSING DISBURSEMENTS

THIS SPACE INTENTIONALLY LEFT BLANK

# EXHIBIT 2



# Hankey Capital
### *a California Finance Lender*
### *Department of Business Oversight License No. 6038812*

## PROMISSORY NOTE
## (VARIABLE RATE)

| BORROWER'S NAME | MATURITY DATE |
|---|---|
| CRESTLLOYD, LLC, a California limited liability company (the "Borrower") | October 31, 2020 |

| | | |
|---|---|---|
| $82,500,000.00 | Los Angeles, California | October 25, 2018 |

On or prior to October 31, 2020 (the "Maturity Date"), for value received, Borrower promises to pay to the order of HANKEY CAPITAL, LLC, a California limited liability company ("Lender"), at its office at 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010, or at such other place as the holder of this Note may from time to time designate in writing, the principal sum of Eighty-Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding, at the rate of four and three-quarters percent (4.75%) per annum above the Prime Rate.

Prime Rate: The rate of interest published from time to time by *The Wall Street Journal* as the "prime rate." **In no event shall the interest rate hereunder be less than 11.0%**.

The interest rate on this Note is subject to change from time to time based on changes in the Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notice to Borrower. Lender will disclose to Borrower the current Index rate upon Borrower's request. Borrower acknowledges that Lender may make loans based on other rates as well. The Index currently is 5.25% per annum. Borrower hereby waives the right to receive notice of any future change(s) in the Index rate. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) Increase Borrower's payments to ensure that the Loan will pay off by its original final maturity date, (b) Increase Borrower's payments to cover accruing interest, (c) Increase the number of payments, and (d) continue the payments and increase Borrower's final payment.

Commencing on the first full calendar month following the date of the initial disbursement, and continuing on the first day of each subsequent calendar month until the Maturity Date, Borrower shall make monthly payments of interest-only in arrears on the disbursed and

1

unpaid principal balance of this Note.  Interest shall be computed daily based upon a three hundred sixty (360) day year for the actual number of days elapsed.  Should interest not be paid when due, it shall become part of the principal and thereafter bear interest as herein provided.

Should default be made in the payment of principal or interest when due or in the performance or observance when due of any term, covenant or condition of any deed of trust, security agreement or other agreement (including amendments and extensions thereof) securing or pertaining to this Note, then, upon Lender's written notice to Borrower of such default (sent via certified mail), and upon Borrower's failure to cure such default within thirty (30) days from the date of receipt of said notice, at the option of the holder hereof, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable and thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein as it may vary from time to time.  Borrower acknowledges and agrees that during the time that any payment of principal, interest or other amounts due under this Note is delinquent, the holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on the holder's ability to avail itself of other opportunities.  Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such costs and expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that interest at the increased rate of five percent (5%) per annum over and above the interest rate contracted for in this Note represents a reasonable sum considering all the circumstances existing on the date of this Note and represents a fair and reasonable estimate of such costs and expenses.  No delay or omission on the part of the holder hereof in exercising any right hereunder, or under any such deed of trust, security agreement or other agreement shall operate as a waiver of such right or of any other right under this Note or under any such deed of trust, security agreement or other agreement.

Except with respect to the final monthly payment hereunder and following the Maturity Date, if any payment of principal or interest under this Note shall not be made within five (5) calendar days of the date due, a late charge of five percent (5%) of the overdue amount may be charged by the holder for the purpose of defraying the expenses incident to handling such delinquent payments.  Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such expenses and that proof of actual damages would be costly or inconvenient.  Borrower therefore agrees that such late charge represents a reasonable sum considering all of the circumstances existing on the date of this Note and represents a fair and reasonable estimate of the costs that will be sustained by the holder due to the failure of Borrower to make timely payments.  Such late charge shall be paid without prejudice to the right of the holder to collect any other amounts provided to be paid or to declare a default under this Note or under the Deed of Trust referred to in this Note or from exercising any of the other rights and remedies of the holder, including, without limitation, the right to declare the entire balance of the principal and accrued interest then remaining unpaid immediately due and payable.

In no event shall interest accrue or be payable hereon or under any such deed of trust, security agreement or other agreement in excess of the maximum amount of interest permitted on the date hereof by the laws of the State of California.

2

If this Note is not paid when due, whether at its specified or accelerated maturity date, Borrower promises to pay all costs of collection and enforcement of this Note, including, but not limited to, reasonable attorneys' fees and costs, incurred by the holder hereof on account of such collection or enforcement, whether or not suit is filed hereon.

Principal and interest shall be payable in lawful money of the United States without setoff, demand or counterclaim.  Borrower waives the defense of the statute of limitations in any action on this Note.  Presentment, notice of dishonor, and protest are waived by all makers, sureties, guarantors and endorsers of this Note.  Such parties expressly consent to any extension of the time of payment hereof or any installment hereof, to any renewal, and to the release of any or all of the security given for the payment of this Note or the release of any party liable for this obligation.

This Note shall be governed and construed in accordance with the laws of the State of California.

Borrower may prepay this Note in whole or in part, at any time.  In the event this Note is paid in its entirety on or prior to April 30, 2020, a prepayment penalty equal to one percent (1.0%) of the then-outstanding principal balance shall be payable hereunder.  No partial prepayment shall affect the obligation of Borrower to pay the next subsequent regular installment payable hereunder until the entire balance of principal and interest shall have been paid in full.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

3

This loan is made pursuant to California Finance Lender's Law,
Division 9 (commencing with Section 22000) of the Financial Code.
For information contact the Department of Business Oversight, State of California.

# EXHIBIT 3

## SECURITY AGREEMENT (PERSONAL PROPERTY)

THIS SECURITY AGREEMENT is made this 25th day of October, 2018 by and between

CRESTLLOYD, LLC, a California limited liability company (hereinafter referred to as

"Guarantor") and HANKEY CAPITAL, LLC, a California limited liability company

(hereinafter, "Secured Party").  Guarantor hereby grants to Secured Party a security

interest in all that certain personal property (hereinafter "Security"), as described herein

and the proceeds and products thereto:

### See Exhibit "A" attached hereto and incorporated herein by reference.

The above "Security" is collateral/security for the payment to Secured Party of

any and all sums under the terms of a certain Promissory Note, of even date herewith,

executed by Guarantor in favor of Secured Party, in the principal amount of Eighty-Two

Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00).

Guarantor shall keep the Security in a safe place, and shall not use it for any

unlawful purpose.  Guarantor hereby declares and warrants to Secured Party that

Guarantor is the absolute and sole owner, and is in possession of all of the Security,

and that the same is free and clear of all liens, encumbrances, adverse claims, and any

other security interests. Guarantor shall not sell or offer to sell or otherwise transfer the

Security or any interest therein without the prior written consent of Secured Party; nor

shall Guarantor sell, assign or create or permit to exist any lien on or security interest in

the Security in favor of anyone other than Secured Party, unless Secured Party

consents thereto in writing.  Guarantor shall, upon Secured Party's request, remove any

unauthorized lien or security interest on the Security, and defend any claim affecting the

Security; and Guarantor shall pay all charges against the Security, including but not

limited to taxes, assessments, encumbrances and insurance, and upon Guarantor's

failure to do so, Secured Party may pay any such charge as it deems necessary and add the amount paid to the indebtedness of Guarantor secured hereunder.

If Guarantor fails to fulfill any obligations under said Indemnification Agreement at the time and in the manner therein specified, or if any breach be made of any obligation, promise or warranty of Guarantor herein contained, then the whole unpaid sums due thereunder shall immediately become due and payable, without notice, at the option of Secured Party, and Secured Party, at its option, may: (a) sell or otherwise dispose of the Security at public or private sale, unless the Security is perishable and threatens to decline speedily in value or is a type customarily sold on a recognized market, Secured Party will give Guarantor at least ten (10) business days prior written notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition may be made; (b) retain the Security in satisfaction of the obligations secured hereby, with notice of such retention sent to Guarantor as required by law; (c) notify any parties obligated on any of the Security consisting of accounts, instruments, chattel paper, choses in action or the like to make payment to Secured Party and enforce collection of any of the Security herein; (d) require Guarantor to assemble and deliver any of the Security to Secured Party at a reasonably convenient place designated by Secured Party; (e) apply all sums received or collected from or on account of the Security, including the proceeds of any sales thereof, to the payment of the costs and expenses incurred in preserving and enforcing the rights of Secured Party, including, but not limited to, reasonable attorneys' fees, provided that in the event of a bona fide dispute reasonably attorneys' fees shall be due only to the party prevailing in such dispute, and the indebtedness secured hereby in such order and manner as Secured Party in its sole discretion determines; Secured Party shall

2

account to Guarantor for any surplus remaining thereafter and shall pay such surplus to the party entitled thereto, including any second secured party who has made a proper demand upon Secured Party and has furnished proof to Secured Party as requested in the manner provided by law; in like manner, Guarantor agrees to pay to Secured Party without demand any deficiency after any Security has been disposed of and proceeds applied as aforesaid Secured Party shall have all the rights and remedies of a secured party under the Uniform Commercial Code in California or any jurisdiction where enforcement is sought. Guarantor agrees to pay all costs incurred by Secured Party in enforcing its rights under this Security Agreement, including but not limited to reasonable attorneys' fees. All rights, powers and remedies of Secured Party hereunder shall be cumulative and not alternative. No delay on the part of Secured Party in the exercise of any right or remedy shall constitute a waiver thereof, and no exercise by Secured Party of any right or remedy shall preclude the exercise of any other right or remedy or further exercise of the same remedy.

It is further agreed, subject to applicable law, that upon any sale of the Security according to law, or under the power herein given, that Secured Party may bid at said sale, or purchase the Security, or any part thereof at said sale.

If more than one Guarantor executes this Security Agreement, the obligations hereunder are joint and several. All words used herein in the singular shall be deemed to have been used in the plural when the context and construction so require. Any married person who signs this Security Agreement expressly agrees that recourse may be had against his/her separate property for all of his/her obligations to Secured Party.

This Security Agreement shall inure to the benefit of and bind Secured Party, its successors and assigns and each of the Secured Party, their respective heirs,

3

executors, administrators and successors in interest.  Upon transfer by Secured Party

of any part of the obligations secured hereby, Secured Party shall be fully discharged

from all liability with respect to the Security transferred therewith.

Whenever possible each provision of this Security Agreement shall be

interpreted in such manner as to be effective and valid under applicable law, but, if any

provision of this Security Agreement shall be prohibited or invalid under applicable law,

such provisions shall be ineffective only to the extent of such prohibition or invalidity,

without invalidating the remainder of such provisions or the remaining provisions of this

Security Agreement.

IN  WITNESS  WHEREOF,  Secured  Party  and  Guarantor  have  executed  this

instrument, as of the date set forth above.

"Secured Party"

HANKEY CAPITAL, LLC
a California limited liability company


By: _____
   W. Scott Dobbins, President



"Guarantor"

CRESTLLOYD, LLC,
a California limited liability company

By:_____
   Nile Niami, Manager

4

**EXHIBIT A**

## PROFIT PARTICIPATION AGREEMENT

This Profit Participation Agreement (this "Agreement") is made as of October 25, 2018, between CRESTLLOYD, LLC, a California limited liability company (the "Borrower") and HANKEY CAPITAL, LLC, a California limited liability company (the "Lender") for the purpose of memorializing the parties' agreement with respect to that certain real property commonly known as, and located at, 944 Airole Way, Los Angeles, California (the "Property").

WHEREAS, contemporaneous with this Agreement, the Lender is making a loan to the Borrower, for completion of construction of improvements on the Property, in the principal amount of Eighty-Two Million Five Hundred Thousand Dollars ($82,500,000.00), which loan shall be secured by, among other things, a first-priority deed of trust on the Property (the "Loan"); and

WHEREAS, Borrower's execution of this Agreement is a condition of Lender's agreement to make the Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties have agreed as follows:

1.    LENDER'S RIGHT OF PROFIT PARTICIPATION

If, at any time, during the term of the Loan or following repayment of the Loan, the Property is sold by the Borrower, or by any affiliate of the Borrower, for a purchase price in excess of $200,000,000, Lender shall be entitled to receive, from the sale proceeds, a Lender Profit Participation Payment in the amount of $3,500,000. Borrower's obligation to make the Lender Profit Participation Payment shall be evidenced by a Memorandum of Agreement, to be recorded in the Official Records of the County Recorder of Los Angeles County, California.

2.    GENERAL PROVISIONS

(a) This Agreement shall be governed by the laws of the State of California as they apply to contracts entered into and wholly to be performed in such state. This Agreement represents the entire agreement between the parties with respect to the profit participation by and between Lender and Borrower and may only be modified or amended in writing signed by both parties.

(b) Any notice, demand or request required or permitted to be given by either the Lender or the Borrower pursuant to the terms of this Agreement shall be in writing and shall be deemed given (i) when delivered personally, (ii) five days after it is deposited in the U.S. mail, certified with return receipt requested and with postage prepaid, or (iii) one day after deposit (prepaid) with a nationally recognized overnight courier, and addressed to the party being notified at his or her address specified on the applicable signature page hereto or such other address which the addressee may subsequently notify the other party in writing.

(c) Lender's failure to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions, nor prevent the Lender thereafter from enforcing each and every other provision of this Agreement. The rights granted to lender herein are cumulative and shall not constitute a waiver of Lender's right to assert all other legal remedies available to it under the circumstances.

(d) The parties acknowledge that money damages may not be an adequate remedy for violations of this Agreement and that the Lender may, in its sole discretion, apply to a court of competent jurisdiction for specific performance or injunctive or such other relief as such court may deem just and proper to enforce this Agreement or to prevent any violation hereof and, to the extent permitted by applicable law, Borrower waives any objection to the imposition of such relief in appropriate circumstances.

(e) This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(f) Borrower represents that it has duly authorized, executed and delivered this Agreement and that this Agreement is a valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

IN WITNESS WHEREOF, the Borrower has executed this Agreement as of the first date above written.

BORROWER:                                          LENDER:

CRESTLLOYD, LLC,                                   HANKEY CAPITAL, LLC,
a California limited liability company             a California limited liability company

By:_____                       By:_____
   Nile Niami, Manager                                W. Scott Dobbins, President

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attn.: Eugene M. Leydiker

Space Above for Recorder's Use

Loan No.

## MEMORANDUM OF AGREEMENT

In connection with a certain loan transaction between Hankey Capital, LLC, a California limited liability company (the "Lender") and Crestlloyd, LLC, a California limited liability company (the "Borrower"), the undersigned declare and acknowledge that the Borrower has executed a Profit Participation Agreement (the "Agreement"), dated of even date herewith, pertaining to the real property described in Exhibit A hereof. This instrument is a memorandum of the Agreement, and the same is incorporated herein by this reference with the same effect and as though set forth herein in its entirety.

LENDER:

HANKEY CAPITAL, LLC
a California limited liability company

By: _____
W. Scott Dobbins, President

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

1

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _OCTOBER 31 2018_ before me, _Nigel C. Gibbs_ a Notary Public, personally appeared _Nile Niami_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_____

On _November 1, 2018_ before me, _T Douglas_____ a Notary Public, personally appeared _W. Scott Dobbins_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE,
AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07' 'WEST 2.86 FEET FROM THE
MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE
CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT
CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET;
THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35'
48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A
RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE
BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET;
THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF
44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE
CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET
ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16"
EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE,
AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141
PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13°
13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID
EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13'
20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A
POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A
LENGTH OF 115.83 FEET.

APN: **4369-026-021**

Page 4 of 4

# EXHIBIT 4



This page is part of your document - DO NOT DISCARD



# 20181122917



**Pages:**
**0020**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/06/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 121.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 346.00 |



LEADSHEET



201811060250001

00015919183

009447827

**SEQ:**
**17**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E196156

T72



2

**RECORDING REQUESTED BY**

**AND WHEN RECORDED MAIL TO:**

HANKEY CAPITAL, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attention: Eugene Leydiker



11/06/2018

*20181122917*

## CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS
### [944 Airole Way]

This CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS (hereinafter the "Deed of Trust") made this 25th day of October, 2018, by CRESTLLOYD, LLC, a California limited liability company (hereinafter referred to as "Trustor"), whose address is c/o Skyline Development, 8981 W. Sunset Blvd., Suite 303, West Hollywood, California 90069 to CHICAGO TITLE COMPANY, hereinafter called "Trustee", for the benefit of HANKEY CAPITAL, LLC, a California limited liability company, hereinafter called "Beneficiary", whose address is 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010.

This Deed of Trust is given for purpose of securing the following:

(1)    Performance of all obligations of Trustor under any agreements of Trustor incorporated by reference or contained herein.

(2)    Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.

(3)    Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.

1

94109

17 E

(4)    Payment of all sums advanced or paid out by the Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

This Deed of Trust, and any other instruments given to evidence or further secure the payment and performance of any obligation secured hereby may hereinafter be referred to as the "Trust Documents".  The payment obligations of Trustor described in Paragraphs 2, 3, and 4 above are hereinafter referred to as the "Indebtedness".

Trustor, in consideration of the premises and the aforesaid Indebtedness, and in order to secure its obligations under the Note, according to their terms, has granted, bargained, sold, conveyed, confirmed, transferred and assigned and by these presents does grant, bargain, sell, convey, confirm, transfer and assign unto Trustee, his successors and assigns, with power of sale and right of entry and possession, Trustor's interest in and to that certain property described as follows:

(A)    The land described in Exhibit A attached hereto, made a part hereof.

(B)    All buildings and improvements now or hereafter located on said land.

(C)    All easements, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits of the aforesaid property and all the estate, title and interest, homestead or other claim or demand, as well in law as in equity, which Trustor now has or hereafter may acquire, of, in or to said property, or any part thereof, with the appurtenances thereto.

(D)    All of Trustor's right, title and interest in, to or under the property described in Exhibit B attached hereto, made a part hereof and comprising one page.

Trustor's interest in and to the land, buildings, improvements and the rights and property described in paragraphs (A) through (D) above are hereinafter referred to collectively as the "Property".

TO HAVE AND TO HOLD the same unto Trustee, Trustee's successors and assigns, Trustor hereby covenants and agrees as follows:

## ARTICLE I
## COVENANTS AND AGREEMENTS OF TRUSTOR

Trustor hereby covenants and agrees:

1.00    Payment of Indebtedness.  Trustor will pay the Indebtedness hereby secured promptly when and as said Indebtedness becomes due and payable.

1.01    Liens.  Trustor, absent the written consent of Beneficiary, will not suffer any lien to

2

4

be created hereafter upon the Property, or any part thereof, prior to the lien of this Deed of Trust, and will not do or suffer any act or omission whereby the value of the Property, or lien hereof or of any estate or title covered hereby, may be diminished or impaired in any way.

1.02    Maintenance, Repair and Alterations.    Trustor will keep any buildings and improvements constructed on the Property in good condition and repair, will not remove or demolish any buildings or improvements thereon, and commit or permit no waste thereon. Should said building or buildings, or any part thereof, require inspection, repair or protection other than that given it by Trustor, then, and in that event, Beneficiary may enter or cause entry to be made upon the Property and into said building or buildings for inspection, repair or protection thereof and such repair may be made by Beneficiary and be made or done in such manner as fully to protect the interest of Beneficiary in the opinion of Beneficiary, and any and all sums expended by Beneficiary in doing or causing to be done any of the things above authorized are secured by this Deed of Trust and shall be paid by Trustor on demand. Trustor shall comply with all laws, ordinances, governmental regulations, covenants, conditions and restrictions affecting the Property or requiring any alteration or improvement thereof, and permit no violation, as to the Property, of any such law, ordinance, governmental regulation, covenant, condition or restriction affecting the Property.

1.03    Title to Property.    Trustor covenants that Trustor is lawfully seized of each and every part and parcel of the Property as described in the granting clauses hereof and has good and indefeasible title to the same; that there are no liens or encumbrances on said property except for such liens and encumbrances that are approved by Beneficiary; and Trustor forever will warrant and defend the title in the same to the Trustee against the claims and demands of all persons. If during the existence of this Deed of Trust there be commenced or pending any suit or action affecting said property, or any part thereof, or the title thereto, or if any adverse claim for or against said property, or any part thereof, be made or asserted, Trustee or Beneficiary may appear in said suit or action and retain counsel therein and defend the same or otherwise take such action therein as Trustee or Beneficiary may deem advisable, and may settle or compromise the same or the said adverse claim, and in that behalf and for any of the said purposes, may pay and expend such sums of money as Trustee or Beneficiary may deem to be necessary.

1.04    Taxes and Assessments.    Trustor shall pay, satisfy and discharge at maturity all taxes and assessments and all other charges and encumbrances which now are or hereafter shall be or appear to be a lien upon the Property, or any part thereof, or upon the debt secured hereby; and in default thereof, Beneficiary, without demand or notice, may pay, satisfy or discharge said taxes, assessments, charges or encumbrances, and pay and expend such sums of money as Beneficiary may deem to be necessary therefor, and shall be the sole judge of the legality or the validity of such taxes, assessments, charges or encumbrances, and the amount necessary to be paid in the satisfaction or discharge thereof.

1.05    Evidence of Payment of Taxes and Assessments.    Trustor further agrees to deposit with Beneficiary within thirty (30) days of Beneficiary's request, all receipts or other satisfactory evidence of the payment of taxes, assessments, charges, claims and liens of every nature (hereinafter collectively referred to as "taxes" or "tax") affecting or which may affect the Property or any part thereof.  Upon the request of Beneficiary, following Trustor's failure to

3

provide such evidence of payment, Trustor thereafter shall deposit with and pay to Beneficiary, on the first day of each calendar month, a sum equivalent to one-twelfth (1/12) of the estimated annual taxes assessed or levied against the Property and all annual premiums for insurance required by this Deed of Trust to be furnished by Trustor, and upon the date when any such tax or insurance premiums shall become due shall pay to Beneficiary an amount which, taken together with tax and insurance deposits theretofore made and not expended for taxes and insurance, shall be sufficient to pay and discharge such tax and insurance premiums. Beneficiary shall not be liable for interest on any such tax and insurance deposits and may mingle the same with its general funds, and such deposits shall create a debtor-creditor relationship and not that of a trust. Trustor shall procure and deliver to Beneficiary, in advance, statements for such charges. Payments from said account for such purposes may be made by Beneficiary at Beneficiary's discretion, even though subsequent owners of the property described herein may benefit thereby. In the event of any default under the terms of this Deed of Trust, any part or all of the balance of said account may be applied to any part of the indebtedness hereby secured, and, in refunding any part of said account, Beneficiary may deal with whomever is represented to be the owner of said property at that time. The enforceability of the covenants relating to taxes and insurance premiums provided for herein shall not be affected, except to the extent that said obligations have been actually met by compliance with this paragraph.

    1.06    <u>Insurance.</u>  Trustor at all times shall keep the buildings and improvements which are now or hereafter erected upon said property insured against loss or damage by vandalism, malicious mischief and fire with extended coverage (and by other hazards as reasonably may be required by Beneficiary) and shall procure and maintain in force such other insurance as may be required by Beneficiary, all in amounts approved by Beneficiary and by an insurance company or companies or governmental agency or instrumentality approved by Beneficiary, and the policies for such insurance shall be made payable, in case of loss, to Beneficiary pursuant to standard mortgagee's loss payable endorsement, and shall be delivered to and held by Beneficiary as further security for payment under the Note and other moneys herein mentioned, said policies shall provide for fifteen days' notice to Beneficiary prior to cancellation or nonrenewal for any reason, including nonpayment of premium; and in default thereof, Beneficiary may procure such insurance to be effected upon Beneficiary's interest as Beneficiary or upon the interest of Trustee or upon the interest of the owners of the Property and in their names; loss, if any, being made payable to Beneficiary, and Beneficiary may pay and expend for premiums for such insurance such moneys as Beneficiary may deem to be necessary. The form of said policies shall be approved by Beneficiary. If Trustor is a co-insurer under any policies of fire and extended coverage insurance, then Trustor covenants and agrees that, upon request of Beneficiary at any time, it will furnish the Beneficiary satisfactory evidence of insurable value of the improvements situated on said Property. In addition, Trustor shall procure and maintain liability insurance insuring Trustor and, if requested, Beneficiary against liability because of personal injury or property damage in amounts and by companies approved by Beneficiary.

    1.07    <u>Insurance and Condemnation Proceeds.</u>  Should a loss occur under any policy of insurance required by Paragraph 1.06 hereof, or should all or any portion of the Property be taken or damaged by reason of any public improvement or condemnation proceeding, Beneficiary shall be entitled to all insurance proceeds, compensation, awards, and other payments or relief therefor (all hereinafter referred to as "proceeds"), and, whether or not the

4

security for the Note secured by this Deed of Trust has been impaired, Beneficiary shall be entitled to apply the proceeds collected, after first deducting therefrom all its expenses, including attorneys' fees, in collecting said proceeds, to any and all indebtedness secured hereby and thereafter shall pay the balance remaining, if any, to Trustor. At its option, in its own name, Beneficiary shall be entitled to commence, appear in and prosecute any action or proceedings or to make any compromise or settlement, in connection with such loss, taking or damage. All such proceeds and rights of action hereby are assigned to Beneficiary. Notwithstanding the foregoing, absent an "Event of Default" as set for in Paragraph 4.00 below, in the event of such insurance loss or that only a portion of the Property is taken or damaged by reason of any public improvement or condemnation proceeding, and restoration is necessary, Beneficiary, after deducting from said proceeds received all its expenses, including attorneys' fees, may release to Trustor as restoration progresses, so much of said amount as equals the costs of restoration effected by Trustor, subject to reasonable conditions, including the right of Beneficiary to withhold up to ten percent (10%) of said amount until completion and the expiration of the period within which mechanics' or materialmen's liens may be filed and until receipt of satisfactory evidence that no liens exist. Any amount required to complete such restoration in excess of such proceeds shall be paid to Trustor before such proceeds are used. Trustor agrees to execute such further assignments of any such proceeds and rights of action as Beneficiary or Trustee may require.

1.08    Performance of Other Obligations.    Trustor promises and agrees to perform all of the obligations in and under the Note, and any other documents given now or hereafter as security for the Indebtedness secured by this Deed of Trust.

1.09    Restrictions on Transfer or Further Encumbrance.    Absent the prior written consent of Beneficiary, Trustor shall not (a) execute or deliver any pledge, security agreement, mortgage, deed of trust or other instrument of hypothecation, covering all or any portion of the Property or any interest therein; (b) sell, convey, alienate, transfer or otherwise dispose of all or any portion of the Property or any interest therein, whether voluntarily or involuntarily, by operation of law or otherwise; (c) in the event Trustor is a corporation or trust or similar entity, sell, convey, transfer or encumber, whether voluntarily, involuntarily or otherwise, more than ten percent (10%) of the issued and outstanding capital stock of Trustor or of the beneficial interest of such trust or similar entity; or (d) in the event Trustor is a limited or general partnership, or a joint venture, change any constituent general partner or any joint venturer whether voluntarily, involuntarily or otherwise, or sell, convey, transfer, change or encumber any such general partner or joint venturer interests.

1.10    Environmental Compliance.    Trustor shall keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of any federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions on, under or about the Property including, but not limited to, soil and ground water conditions. Trustor shall not use, generate, manufacture, store or dispose of on, under or about the Property or transport to or from the Property any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under any applicable federal or

5

state laws or regulations (collectively referred to hereinafter as "Hazardous Materials"), except only those materials and substances which are usually and customarily used in the operation of a residential construction project so long as the amount of such materials and substances which are used or stored upon the Property shall not exceed the amount reasonably required for the operation of such business in its normal and ordinary course.

Trustor shall immediately advise Beneficiary in writing of (i) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials affecting the Property ("Hazardous Materials Laws"); (ii) all claims made or threatened by any third party against Trustor or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (i) and (ii) above are hereinafter referred to as "Hazardous Materials Claims"); and (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

Beneficiary shall have the right to join and participate in, as a party, if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims and to have its reasonable attorneys' fees in connection therewith paid by Trustor. Trustor shall be solely responsible for, and shall indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any loss, damage, cost, expense or liability directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or presence of Hazardous Materials on, under or about the Property, including, without limitation: (a) all foreseeable consequential damages; (b) the costs of any required or necessary repair, cleanup or detoxification of the Property, and the preparation and implementation of any closure, remedial or other required plans; and (c) all reasonable costs and expenses incurred by Beneficiary in connection with clauses (a) and (b) including, but not limited to, reasonable attorneys' fees.

Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Materials on, under, or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any Hazardous Material Claims, which remedial action, settlement, consent or compromise might, in Beneficiary's reasonable judgment, impair the value of the Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Materials on, under, or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action, provided that in such event Trustor shall notify Beneficiary as soon as practicable of any action so taken. Beneficiary agrees not to withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the

6

reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

1.11    Indemnification.    Trustor hereby agrees to indemnify Beneficiary and hold Beneficiary harmless from and against any and all claims, losses, damages, liabilities, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including, but not limited to, reasonable attorneys' fees and expenses) arising directly or indirectly, in whole or in part, out of (i) the presence on or under the Property of any Hazardous Materials (as defined in Paragraph 1.10), or any releases or discharges of any Hazardous Materials on, under or from the Property, or (ii) any activity carried on or undertaken on or off the Property, whether prior to or during the period during which any indebtedness under the Note is outstanding and whether by Trustor or any predecessor in title or any employees, agents, contractors or subcontractors of Trustor or any predecessor in title, or any third persons at any time occupying or present on the Property, in connection with the handling, treatment, removal, storage, decontamination, clean-up, transport or disposal of any Hazardous Materials (as defined in Paragraph 1.10) at any time located or present on or under the Property. The foregoing indemnity shall further apply to any residual contamination on or under the Property, or affecting any natural resources, and to any contamination of any property or natural resources arising in connection with the generation, use, handling, storage, transport or disposal of any such Hazardous Materials, and irrespective of whether any of such activities were or will be undertaken in accordance with applicable laws, regulations, codes and ordinances.

1.12    Environmental Provisions.    Trustor hereby acknowledges and agrees that the provisions of Paragraphs 1.10 and 1.11 hereof are intended to be "environmental provisions" (as defined in Section 736 of the California Code of Civil Procedure), and that Beneficiary is intended to have all of the rights of a secured lender under Section 736 of the California Code of Civil Procedure in respect of such "environmental provisions." Trustor further acknowledges and agrees that the rights afforded to Beneficiary under Section 736 of the California Code of Civil Procedure are in addition to all rights, powers and remedies otherwise available to Beneficiary under any of the Trust Documents or at law or in equity.

1.13    Financial Statements.    Trustor shall deliver to Beneficiary a copy of Trustor's federal and state tax returns, prepared by a certified public accountant, concurrently with Trustor's filing of said returns.

1.14    Covenant to Assign Future Leases.    Until all of the Indebtedness secured by the Deed of Trust shall have been paid in full, Trustor covenants and agrees that it will immediately transfer and assign to Beneficiary any and all other and future leases on all or any portion of the Property.  Assignor further covenants and agrees to make, execute and deliver to Assignee on demand, and at any time or times, any and all written assignments and other instruments sufficient for this purpose or that Beneficiary may deem advisable for carrying out the true intent of this covenant.

## ARTICLE II
## ASSIGNMENT OF RENTS, ISSUES AND PROFITS

7

2.00   <u>Assignments of Rents.</u>  Trustor hereby assigns to Beneficiary the rents, issues, profits, royalties, and payment payable under any lease of the Property, or portion thereof including any oil, gas or mineral lease, or any installments of money payable pursuant to any agreement or any sale of said property or any part thereof, reserving unto Trustor the rights prior to default by Trustor in payment of the Indebtedness secured hereby or in the performance of any agreement hereunder, to collect and retain such rents, issues, profits, royalties, payments and installments of money as they may become due and payable. Upon any such default, Beneficiary, without regard to the adequacy of any security for the Indebtedness hereby secured, shall be entitled to (1) collect such rents, issues, profits, royalties, payments and installments of money and apply the same as more particularly set forth in this Paragraph, all without taking possession of the Property, or (2) enter and take possession of the Property or any part thereof, in person, by agent, or by a receiver to be appointed by the court and to sue for or otherwise collect such rents, issues, profits, royalties, payments and installments of money. Beneficiary may apply any such rents, issues, profits, royalties, payments and installments of money so collected, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, in such order as Beneficiary may determine, and, if such costs and expenses and attorneys' fees shall exceed the amount collected, the excess shall be immediately due and payable. The collection of such rents, issues, profits, royalties, payments and installments of money and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any  act done pursuant to such notice, except to the extent any such default fully is cured. Failure or discontinuance of Beneficiary at any time, or from time to time, to collect any such moneys shall not impair in any manner the subsequent enforcement by Beneficiary of the right, power and authority herein conferred on Beneficiary. Nothing contained herein, including the exercise of any right, power or authority herein granted to Beneficiary, shall be, or be construed to be, an affirmation by Beneficiary of any tenancy, lease or option, or an assumption of liability under, or the subordination of the lien or charge of this Deed of Trust to any such tenancy, lease or option. Trustor hereby agrees that, in the event Beneficiary exercises its rights as in this Paragraph provided, Trustor waives any right to compensation for the use of Trustor's furniture, furnishings or equipment in the Property for the period such assignment of rents or receivership is in effect, it being understood that the rents, issues, profits, royalties, payments and installments of money derived from the use of any such items shall be applied to Trustor's obligation hereunder as above provided. In the event that Trustor concurrently herewith or hereafter executes any separate assignment of rents or of leases to Beneficiary, then to the extent of any inconsistency between the provisions hereof and any such assignment, the provisions of such assignment shall control.

2.01   <u>Performance of Leases.</u>  Trustor promises and agrees to keep, perform and observe all of the lessor's covenants, agreements and obligations, under the terms of all leases now or hereafter executed relating to all or any portion of the Property, to require that lessees under said leases keep, perform, and observe all of the covenants, agreements and obligations thereunder on their part to be kept, performed and observed; not to alter, amend or modify such leases or any of them without the prior written consent of Beneficiary.

## ARTICLE III
## SECURITY AGREEMENT AND FIXTURE FILING

8

*10*

3.00    <u>Creation of Security Interest.</u> This Deed of Trust is deemed a Security Agreement as defined in the California Commercial Code, the Trustor being the Debtor and the Beneficiary being the Secured Party, and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be as prescribed (i) herein, or (ii) by general law, or (iii) as to such part of the security which is also reflected in the financing statement which will be filed to perfect the security interest created herein, by the specific statutory consequences now, or hereafter enacted and specified in the California Commercial Code, all at Beneficiary's sole election. Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and the hereby-stated intention of the parties hereto that everything used in connection with the operation or occupancy of the Property is and, at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property, irrespective of whether (1) any such item is physically attached to the buildings and improvements, (2) serial numbers are used for the better identification of certain equipment items capable of being filed by the Beneficiary, or (3) any such item is referred to or reflected in any such financing statement so filed at any time. Such mention in the financing statement is declared to be for the protection of the Beneficiary in the event any court or judge shall at any time hold that notice of Beneficiary's priority of interest must be filed in the California Commercial Code records to be effective against a particular class of persons, including, but not limited to, the federal government and any subdivision or entity of the federal government. Trustor covenants and agrees to reimburse Beneficiary for any costs incurred in filing such financing statement and any continuation statements.

3.01    <u>Fixture Filing.</u> Portions of the Property are goods which are or are to become fixtures relating to the land, buildings and improvements, and Trustor covenants and agrees that the recording of this Deed of Trust in the real estate records of the County where the land is located shall also operate from the time of recording as a Fixture Filing in accordance with Section 9313 of the California Uniform Commercial Code.

**ARTICLE IV**
**DEFAULTS AND REMEDIES**

4.00    <u>Events of Default.</u> Any of the following events shall be deemed an Event of Default hereunder, upon the expiration of any applicable grace period:

(a)    Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, whether at maturity or by acceleration or as part of any prepayment or otherwise; or

(b)    If the Trustor shall become insolvent or admit in writing its inability to pay its debts as they mature; or make any assignment for the benefit of creditors; or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business; or

(c)    If any order, judgment or decree shall be entered against Trustor decreeing its dissolution or diversion; or

9

(d)    If bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for relief under any bankruptcy law or any law for the relief of debtors shall be instituted against Trustor; or

(e)    A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein; or

(f)    There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in the Note or the Note, or any loan application or other agreement related thereto or any other now or hereafter existing agreement between Trustor or any affiliate of Trustor and Beneficiary.

4.01    Acceleration upon Default, Additional Remedies. In the event of any such Event of Default, Beneficiary may declare, by notice given to Trustor, all Indebtedness secured hereby to be due and payable without any further presentment, demand, protest or notice of any kind. Thereafter Beneficiary may:

(a)    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of any security for the Indebtedness and obligations hereby secured, enter upon and take possession of the Property hereby granted, or any part thereof, in its own name or in the name of the Trustee, and do any acts which it deems necessary or desirable to preserve the rentability or increase the income of such property or protect the security hereof and with or without taking possession of the Property sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the rents, issues and profits collected, less costs and expenses of operation and collection including reasonable attorneys' fees and accountants' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice; and notwithstanding Beneficiary's or Trustee's continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in this instrument or by law upon the occurrence of any default including the right to exercise the power of sale;

(b)    Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof;

(c)    Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

10

12

4.02    Foreclosure by Power of Sale. Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note, the Note and such receipts with evidence of expenditures made and secured hereby as Trustee may require. Trustee shall then have the following duties and powers:

(a)    Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Election to Sell as then required by law and by this Deed of Trust and after lapse of such time as may then be required by law and after recordation of such notice of default, Trustee, without demand on Trustor, shall, after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels or items and in such order as Trustee may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary, may purchase at such sale.

(b)    After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums due under the Note, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(c)    Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place first fixed for sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give new notice of sale.

4.03    Appointment of Receiver. If any Event of Default described in Paragraph 4.00 of this Deed of Trust shall have occurred and be continuing, Beneficiary, as a matter of right but with notice as provided herein to Trustor, but without notice to anyone claiming under Trustor and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property.   Any such receiver or receivers shall have all the usual powers and duties of Beneficiary in case of entry as provided in Paragraph 4.01(a) and shall continue as such and exercise such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

4.04    Remedies Not Exclusive. No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, in the Trust Documents, or by law provided or permitted, but each shall be distinct and cumulative and shall be in addition to every other remedy given hereunder, under the Trust Documents, or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this Deed of Trust or by the Trust Documents to Trustee or Beneficiary or to which either of them may be otherwise entitled,

11

may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

4.05    Partial or Late Payment.    The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums secured hereby or to declare a default as herein provided and in either event to assess a late charge or penalty. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon the condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this Deed of Trust or the other Trust Documents confirmed upon them or either of them upon the occurrence of a default.

4.06    Failure or Indulgence Not Waiver.    No failure or delay on the part of Beneficiary in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.

## ARTICLE V
## MISCELLANEOUS

5.00    Governing Law.    This Deed of Trust shall be governed by the laws of the State of California. In the event that any provision or clause of this Deed of Trust conflicts with applicable laws, such conflicts shall not affect other provisions of this Deed of Trust which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust are declared to be severable. This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.01    Statements by Trustor.    Trustor, upon fifteen (15) days' written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust and stating either that there are no known offsets or defenses existing against the debt, or if such known offsets or defenses are alleged to exist, the nature thereof.

5.02    Repayment.    In the event that Trustor fully satisfies its obligations under the Note, in lawful money of the United States of America, and pays all moneys herein agreed to be paid by Trustor, and the interest thereon, and also the reasonable expenses of this trust, as herein specified, then Trustee at the request and expense of Trustor, shall reconvey to Trustor, Trustor's successors or assigns, all the estate in the Property granted to Trustee by this instrument.

5.03    Change in Taxation Method.    In the event of the passage after the date of this Deed of Trust of any law of the State of California, deducting from the value of land, for the purpose

12

14

of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust for state or local purposes or the manner of the collection of such taxes so as to cause the assessment of a tax on Beneficiary or a lien or charge on this Deed of Trust, the entire amount due under said Note, at the option of said Beneficiary, without demand or notice, forthwith shall become due and payable; provided, however, that such option shall be ineffective if Trustor is permitted by law to pay the whole of such tax, in addition to all other payments required hereunder and, if prior to such specified date, Trustor does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall constitute a modification of this Deed of Trust.

5.04    Substitution of Trustee.    Beneficiary, from time to time, may substitute another Trustee in place of the Trustee named herein, to execute the trusts hereby created; and upon such appointment, and without conveyance to the successor trustee, the successor trustee shall be vested with all the title, interest, powers, duties and trusts in the Property hereby vested in or conferred upon Trustee herein named. Each such appointment and substitution shall be made by written instrument executed by the Beneficiary containing reference to this Deed of Trust sufficient to identify it, which, when recorded in the office of the County Recorder of the county or counties in which the Property is situated, shall be conclusive proof of proper appointment of the successor trustee. The recital or statements in any instrument executed by Trustee, in pursuance of any of said trusts of the due authorization of any agent of the Trustee executing the same, shall for all purposes be conclusive proof of such authorization.

5.05    Legal Proceedings by Trustee.    Trustee at any time, at Trustee's option, may commence and maintain suit in any court of competent jurisdiction and obtain the aid and direction of said court in the execution by it of the trusts or any of them, herein expressed or contained, and, in such suit, may obtain the orders or decrees, interlocutory or final of said court directing the execution of said trusts, and confirming and approving Trustee's acts, or any of them, or any sales or conveyance made by Trustee, and adjudging the validity thereof, and directing that the purchasers of the Property sold and conveyed be let into immediate possession thereof, and providing for orders of court or other process requiring the Sheriffs of the counties in which the Property is situated to place and maintain said purchasers in quiet and peaceable possession of the Property so purchased by them, and the whole thereof.

5.06    Reconveyance by Trustee.    Trustee, at any time, upon request of Beneficiary, may reconvey to Trustor or Trustor's successors or assigns, any portion of the Property without affecting the personal liability of any person for the payment of any of the Indebtedness, or the lien of this Deed of Trust upon the remainder of the Property not reconveyed.

5.07    No Estoppel.    Any failure of Trustee or Beneficiary to exercise any right or option by this Deed of Trust given or preserved to Trustee or Beneficiary shall not stop Trustee or Beneficiary from exercising any such right or option upon any subsequent default of Trustor.

5.08    Further Assurances.    Trustor, forthwith upon request, at any and all times hereafter, at the expense of Trustor, will cause to be made, executed, acknowledged and delivered to Trustee, any and every deed or assurance in law which Trustee or counsel of Trustee shall advise

13

15

or require for the more sure, effectual and satisfactory granting and confirming of the Property unto Trustee.

5.9     Non-Liability of Trustee. Trustee shall not be liable or responsible with respect to its acts or omissions hereunder, except for Trustee's own gross negligence or willful default, or be liable or responsible for any acts or omissions of any agent, attorneys or employee by it employed hereunder, if selected with reasonable care.

5.10    Release and Exchange of Security. In the event that any change or changes occur in the title to all or any part of the Property, Beneficiary, from time to time, without notice to or consent of Trustor and without prejudice to any rights which Beneficiary may have against Trustor, may (a) take, exchange, or release any security for any of the obligations now or hereafter secured hereby; or (b) extend the time for payment of the said obligations.

5.11    Successors and Assigns.  This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their successors and assigns.

5.12    Construction. This Deed of Trust shall be construed so that, wherever applicable and with reference to any of the parties hereto, the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, the use of one gender shall include the neuter, masculine and feminine gender.

5.13    Notices. Trustor requests that a copy of any notice of default and of any notice of sale hereunder shall be mailed to Trustor at the address set forth above which is Trustor's address.

14

16

IN WITNESS WHEREOF, Trustor has executed this instrument the day and year first above written.

CRESTLLOYD, LLC
a California limited liability company

By:_____
     Nile Niami, Manager

15

17

> A notary public or other officer completing this certificate verifies only the identity of
> the individual who signed the document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _OCTOBER 30, 2018_ before me, _Nigel Gibbs_ a Notary Public,
personally appeared _Nile Niami_, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

16

18

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30
FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07' 'WEST
2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING
SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF
361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY
LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE
BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING
A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID
CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22"
WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY
AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET
ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH
11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE
EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE
NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF
STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

17



BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS
OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

Initials

18

## EXHIBIT B

(1)    All machinery, equipment, materials (including building materials), appliances, and fixtures now or hereafter installed or placed on or in said land or buildings and improvements for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration or for ventilating or air conditioning purposes or for sanitary or drainage purposes or for the exclusion of vermin or insects or the removal of dust, refuse or garbage, and all elevators, awnings, window shades, drapery rods and brackets, screens, floor coverings, incinerators, carpeting and all furniture, fixtures, and other property used in the operation or occupancy of said land or buildings and improvements, together with all additions to, substitutions for, changes in or replacements of the whole or any part of any or all of said articles of property, and together with all property of the same character that Trustor may hereafter acquire at any time until the termination of this Deed of Trust and all proceeds received upon the sale, exchange, collection or other disposition of the foregoing.

(2)    All intangible property and rights relating to that land or the operation thereof, or used in connection therewith, including but not limited to all governmental permits relating to construction on said land.

(3)    All reserves, deferred payments, deposits, refunds, cost savings and payments of any kind relating to the construction of any improvements on said land.

(4)    All water stock relating to said property.

(5)    All causes of action, claims, compensation and recoveries for any damage, condemnation or taking of said property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or injury to said property, or for any loss or diminution in value of said property.

(6)    All plans and specifications prepared for construction of buildings and improvements on said land and all studies, data and drawings related thereto; and also all contracts and agreements of the Trustor relating to the aforesaid plans and specifications or to the aforesaid studies, data and drawings or to the construction of buildings and improvements on said land.

(7)    All monies on deposit for the payment of real estate taxes or special assessments against said property or for the payment of premiums on policies of fire and other hazard insurance covering the property described herein or said land.

_____
Initials

# EXHIBIT 5



# Hankey Capital

*a California Finance Lender*
*Department of Business Oversight License No. 6038812*

### AMENDED AND RESTATED
### PROMISSORY NOTE
(VARIABLE RATE)

| BORROWER'S NAME | MATURITY DATE |
|---|---|
| CRESTLLOYD, LLC, a California limited liability company (the "Borrower") | October 31, 2020 |

$91,000,000.00                    Los Angeles, California          December 10, 2019

On or prior to October 31, 2020 (the "Maturity Date"), for value received, Borrower promises to pay to the order of HANKEY CAPITAL, LLC, a California limited liability company ("Lender"), at its office at 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010, or at such other place as the holder of this Note may from time to time designate in writing, the principal sum of Ninety-One Million and No/100 Dollars ($91,000,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding, at the rate of four and three-quarters percent (4.75%) per annum above the Prime Rate.

Prime Rate: The rate of interest published from time to time by *The Wall Street Journal* as the "prime rate." **In no event shall the interest rate hereunder be less than 11.0%.**

The interest rate on this Note is subject to change from time to time based on changes in the Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notice to Borrower. Lender will disclose to Borrower the current Index rate upon Borrower's request. Borrower acknowledges that Lender may make loans based on other rates as well. The Index currently is 4.75% per annum. Borrower hereby waives the right to receive notice of any future change(s) in the Index rate. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) Increase Borrower's payments to ensure that the Loan will pay off by its original final maturity date, (b) Increase Borrower's payments to cover accruing interest, (c) Increase the number of payments, and (d) continue the payments and increase Borrower's final payment.

Commencing on the first full calendar month following the date of the initial disbursement, and continuing on the first day of each subsequent calendar month until the Maturity Date,

1

Borrower shall make monthly payments of interest-only in arrears on the disbursed and unpaid principal balance of this Note. Interest payment shall be initially paid from a reserve account, maintained by the Lender, in the amount of $4,500,000.00 (the "Reserve"). Borrower shall make timely payments of interest upon depletion of the Reserve. Interest shall be computed daily based upon a three hundred sixty (360) day year for the actual number of days elapsed. Should interest not be paid when due, it shall become part of the principal and thereafter bear interest as herein provided.

On or prior to the Maturity Date, should default be made in the payment of principal or interest when due or in the performance or observance when due of any term, covenant or condition of any deed of trust, security agreement or other agreement (including amendments and extensions thereof) securing or pertaining to this Note, then, at the option of the holder hereof and without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable and thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Should Borrower fail to pay all outstanding principal and accrued interest on or prior to the Maturity Date, then, without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Borrower acknowledges and agrees that during the time that any payment of principal, interest or other amounts due under this Note is delinquent, whether before or after the Maturity Date, the holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on the holder's ability to avail itself of other opportunities. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such costs and expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that interest at the increased rate of five percent (5%) per annum over and above the interest rate contracted for in this Note represents a reasonable sum considering all the circumstances existing on the date of this Note and represents a fair and reasonable estimate of such costs and expenses. No delay or omission on the part of the holder hereof in exercising any right hereunder, or under any deed of trust, security agreement or other agreement shall operate as a waiver of such right or of any other right under this Note or under any such deed of trust, security agreement or other agreement.

Except with respect to the final monthly payment hereunder and following the Maturity Date, if any payment of principal or interest under this Note shall not be made within five (5) calendar days of the date due, a late charge of five percent (5%) of the overdue amount may be charged by the holder for the purpose of defraying the expenses incident to handling such delinquent payments. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that such late charge represents a reasonable sum considering all of the circumstances existing on the date of this Note and represents a fair and reasonable estimate of the costs that will be sustained by the holder due to the failure of Borrower to make timely payments. Such late charge shall be paid without prejudice to the right of the holder to collect any other amounts provided to be paid or to declare a default under this Note or under the Deed of Trust referred to in this Note or from exercising any of the other rights and remedies of the holder, including, without limitation,

2

the right to declare the entire balance of the principal and accrued interest then remaining unpaid immediately due and payable.

In no event shall interest accrue or be payable hereon or under any such deed of trust, security agreement or other agreement in excess of the maximum amount of interest permitted on the date hereof by the laws of the State of California. If this Note is not paid when due, whether at its specified or accelerated maturity date, Borrower promises to pay all costs of collection and enforcement of this Note, including, but not limited to, reasonable attorneys' fees and costs, incurred by the holder hereof on account of such collection or enforcement, whether or not suit is filed hereon.

Principal and interest shall be payable in lawful money of the United States without setoff, demand or counterclaim. Borrower waives the defense of the statute of limitations in any action on this Note. Presentment, notice of dishonor, and protest are waived by all makers, sureties, guarantors and endorsers of this Note. Such parties expressly consent to any extension of the time of payment hereof or any installment hereof, to any renewal, and to the release of any or all of the security given for the payment of this Note or the release of any party liable for this obligation. This Note shall be governed and construed in accordance with the laws of the State of California.

Borrower may prepay this Note in whole or in part, at any time. In the event this Note is paid in its entirety on or prior to April 30, 2020, a prepayment penalty equal to one percent (1.0%) of the then-outstanding principal balance shall be payable hereunder. No partial prepayment shall affect the obligation of Borrower to pay the next subsequent regular installment payable hereunder until the entire balance of principal and interest shall have been paid in full. This Note replaces and supersedes, in its entirety, that certain Promissory Note, executed by Borrower in favor of Lender on October 25, 2018, in the principal amount of $82,500,000.00. A loan fee in the amount of Eighty-Five Thousand and No/100 Dollars ($85,000.00) shall be payable to Lender in connection with this Note.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

3

This loan is made pursuant to California Finance Lender's Law,
Division 9 (commencing with Section 22000) of the Financial Code.
For information contact the Department of Business Oversight, State of California.

# EXHIBIT 6

# FIRST MODIFICATION

## OF

## <u>CONSTRUCTION LOAN AGREEMENT</u>

This First Modification to Construction Loan Agreement (the "Modification") is entered into on this 10th day of December 2019 by and between Hankey Capital, LLC, a California limited liability company ("Lender"), on the one hand, and CRESTLLOYD, LLC, a California limited liability company (referred to herein as "Borrower"), on the other hand, for the purpose of setting forth the terms of the parties' agreement with respect to a certain secured Promissory Note (the "Original Note"), originally executed by Borrower, in favor of Lender, on or about October 25, 2018,  and that certain Construction Loan Agreement dated October 25, 2018 (the "Loan Agreement").

### RECITALS

WHEREAS, under the terms of the Original Note, the Loan Agreement and other related documents, Borrower borrowed from Lender the amount of $82,500,000.00; and

WHEREAS, Borrower has requested a $8,500,000.00 increase in the amount of the said loan;

WHEREAS, Lender has agreed to such increase subject to, *inter alia,* certain changes to the Loan Agreement, as set forth below.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties have agreed as follows:

Contemporaneous with the execution of this Modification, Borrower shall execute an Amended and Restated Promissory Note and other documents in Lender's sole discretion, of even date herewith, which Amended and Restated Promissory Note shall replace the Original Note.

Loan Agreement Section 1.1 – the definition of "Loan" shall be deleted in its entirety and replaced with the following:

> *"Loan" means the principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: NINETY-ONE MILLION AND NO/100THS DOLLARS ($91,000,000.00).*

1

Loan Agreement Section 1.1 – the definition of "Note" shall be deleted in its entirety and replaced with the following:

> *"Note" means that certain Amended and Restated Promissory Note, dated December 10, 2019, in the original principal amount of the Loan, executed by Borrower and payable to the order of Lender, as hereafter amended, supplemented, replaced or modified.*

The Loan Agreement shall be further modified with the addition of a new Section 2.8 as follows:

2.8. Lender Additional Profit Participation.  If, at any time, during the term of the Loan or following repayment of the Loan, the Property is sold for a purchase price in excess of $100,000,000, Lender shall be entitled to an Additional Lender Profit Participation Payment in the amount which shall be equal to the lesser of (a) five percent (5%) of the gross sales price for the Property in excess of $100,000,000, or (b) Five Million and No/100 Dollars ($5,000,000.00).  The Additional Lender Profit Participation Payment shall be collected at the close of the sale of the Property.  Contemporaneous with this Modification, Borrower and Lender shall enter into a Profit Participation Agreement memorializing the parties' agreement with respect to the Additional Lender Profit Participation Payment, and Lender shall record a Memorandum of Agreement in the Official Records of the County Recorder of Los Angeles County, California, evidencing the existence of the said Profit Participation Agreement.

The Loan Agreement shall be further modified with the addition of a new Section 2.9 as follows:

2.9  Funds Control.  Until such time as the Loan has been paid in full, Borrower shall allow Lender's funds control agent weekly access to the Property so as to facilitate the processing of Loan advances.

The Loan Agreement shall be further modified with the addition of a new Section 2.10 as follows:

2.10  Post-Construction Interest Accrual.  Notwithstanding anything to the contrary set forth in the Amended and Restated Promissory Note, executed by Borrower in favor of Lender as of the date hereof, upon the occurrence of each of the following, which shall be determined by Lender in its sole and absolute discretion, interest on the Amended and Restated Promissory Note shall no longer be payable monthly, but rather, shall accrue and become payable, together with all outstanding principal thereunder, upon the earlier of (a) the payoff of all indebtedness evidenced by the Amended and Restated Promissory Note, or (b) the Maturity Date set forth in the Amended and Restated Promissory Note, or (c) the accelerated Maturity Date, upon the occurrence of an Event of Default, as set forth in the Amended and Restated Promissory Note, the Deed of Trust securing said Amended Promissory Note, or any other documents evidencing the Loan:

2

      (i)     Any and all furniture, furnishings and other personal property necessary to market the Property for sale has been properly placed and installed at the Property;

      (ii)     Lender has filed a UCC Financing Statement on all such personal property, as additional security for the Loan;

      (iii)     All grading at the Property has been completed and approved by the City of Los Angeles;

      (iv)     Borrower has arranged for an appropriate global marketing effort to market the Property, which Lender has approved in its sole and absolute discretion;

      (v)     Any and all applicable permits, with the sole exception of permanent electrical power to be provided by the Los Angeles Department of Water and Power (LADWP), have been received in order for the Property to obtain a Certificate of Occupancy.

Each and every term of the Construction Loan Agreement, not otherwise amended by the instant Amendment, shall remain in full force and effect until the complete satisfaction of Borrower's obligations set forth in the Construction Loan Agreement and in all related loan documents.

[SIGNATURE PAGE TO FOLLOW]

3

IN WITNESS WHEREOF, the parties have executed this Modification as of the date first above written.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager


LENDER:

HANKEY CAPITAL, LLC.
a California limited liability company

By:_____
    W. Scott Dobbins, President

4

# EXHIBIT 7

Prepared by and upon recordation
please return to:

HANKEY CAPITAL, LLC
Attention: Eugene Leydiker
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

## MODIFICATION OF DEED OF TRUST

      THIS MODIFICATION OF DEED OF TRUST (this "**Modification**"), is made as of the 10th day of December, 2019 by CRESTLLOYD, LLC, a California limited liability company (the "**Trustor**") in favor of HANKEY CAPITAL, LLC, a California limited liability company ("**Lender**"), with reference to that certain Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents made as of October 25, 2018 by Trustor in favor of the Lender as Beneficiary securing Trustor's obligations as described therein, recorded November 6, 2018 in the Official Records of the County Recorder of Los Angeles County, California as Instrument Number 20181122917 (the "**Deed of Trust**"). Said Deed of Trust encumbers, among other things, all of those certain lots, pieces or parcels of land described in **Exhibit A** annexed hereto and made a part hereof, together with the buildings and improvements erected thereon.

      WHEREAS, by this Modification, Trustor and Lender are modifying the terms of the Deed of Trust. Capitalized terms used but not defined herein have the meanings given to them in the Deed of Trust.

      NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Trustor agree as follows:

1.     The Deed of Trust is granted by Trustor for the purpose of securing, in such order of priority as Beneficiary may elect, (1) payment of an indebtedness in the sum of Ninety-One Million and 00/100 Dollars ($91,000,000.00), evidenced by that certain Amended and Restated Promissory Note of even date herewith executed by Trustor to the order of Beneficiary and any and all modifications, extensions or renewals thereof (the "**Promissory Note**"), whether hereafter evidenced by said Promissory Note or otherwise; (2) payment of interest on said indebtedness according to the terms of said Promissory Note; (3) payment of all other sums, with interest as herein provided, becoming due or payable under the provisions hereof to Trustee or Beneficiary; (4) due, prompt and complete observance, performance and discharge of each and every condition, obligation, covenant and agreement contained herein, or in said note, or in any loan agreement relative to any indebtedness evidenced by said Promissory Note or in any document or instrument evidencing, securing or pertaining to the indebtedness evidenced by said Promissory Note, and all modifications, renewals or extensions of any of the foregoing; and (5)

payment of such additional sums with interest thereon as may be hereafter borrowed from Beneficiary, its successors or assigns by Trustor or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes or guaranty instrument(s), which are by the terms thereof secured by this Deed of Trust.

2.      The Deed of Trust is hereby further modified with the addition of a new paragraph 4.00(g) as follows:

> (g)      If, without Lender's prior written consent, which may be withheld by Lender in its sole and absolute discretion, (i) any lien is recorded in the County of Los Angeles, State of California, affecting the Property, or (ii) any existing lien affecting the Property is modified so as to evidence an increase in the Trustor's obligation to such lienholder.

3.      This Modification may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

4.      Except as expressly amended by this Modification, the terms and provisions of the Deed of Trust are unchanged and hereby ratified and affirmed.


        IN WITNESS WHEREOF, Trustor has caused this Modification to be duly executed as of the day and year above first written.

TRUSTOR:

CRESTLLOYD, LLC,
a California limited liability company


By: _____
      Nile Niami, Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of LOS ANCELES

On 12/23/2019 before me, Nigel Gibbs a Notary Public, personally appeared Nilo Nigami , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

IN WITNESS WHEREOF, Lender has caused this Modification to be duly executed as of the day and year above first written.

HANKEY CAPITAL, LLC,
a California limited liability company

By:_____
      W. Scott Dobbins, President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _December 27, 19_ before me, _T. Douglas_ _____ a Notary Public, personally appeared _W. Scott Dobbins_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)



T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

EXHIBIT A
Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30
FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST
2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING
SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF
361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY
LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE
BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING
A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID
CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22"
WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY
AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET
ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH
11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE
EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE
NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF
STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS

OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

# EXHIBIT 8

# Hankey Capital

*a California Finance Lender*
*Department of Business Oversight License No. 6038812*

## AMENDED AND RESTATED
## PROMISSORY NOTE
(VARIABLE RATE)

| BORROWER'S NAME | MATURITY DATE |
|---|---|
| CRESTLLOYD, LLC, a California limited liability company (the "Borrower") | October 31, 2020 |

$106,000,000.00          Los Angeles, California          August 20, 2020

On or prior to October 31, 2020 (the "Maturity Date"), for value received, Borrower promises to pay to the order of HANKEY CAPITAL, LLC, a California limited liability company ("Lender"), at its office at 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010, or at such other place as the holder of this Note may from time to time designate in writing, the principal sum of One Hundred Six Million and No/100 Dollars ($106,000,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding, at the rate of four and three-quarters percent (4.75%) per annum above the Prime Rate.

Prime Rate: The rate of interest published from time to time by *The Wall Street Journal* as the "prime rate." **In no event shall the interest rate hereunder be less than 11.0%.**

The interest rate on this Note is subject to change from time to time based on changes in the Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notice to Borrower. Lender will disclose to Borrower the current Index rate upon Borrower's request. Borrower acknowledges that Lender may make loans based on other rates as well. The Index currently is 3.25% per annum. Borrower hereby waives the right to receive notice of any future change(s) in the Index rate. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) Increase Borrower's payments to ensure that the Loan will pay off by its original final maturity date, (b) Increase Borrower's payments to cover accruing interest, (c) Increase the number of payments, and (d) continue the payments and increase Borrower's final payment.

Commencing on the first full calendar month following the date of the initial disbursement, and continuing on the first day of each subsequent calendar month until the Maturity Date, Borrower shall make monthly payments of interest-only in arrears on the disbursed and unpaid principal balance of this Note. Interest payment shall be initially paid from a reserve

1

account, maintained by the Lender, in the amount of $5,700,000.00 (the "Reserve"). Borrower shall make timely payments of interest upon depletion of the Reserve. Interest shall be computed daily based upon a three hundred sixty (360) day year for the actual number of days elapsed. Should interest not be paid when due, it shall become part of the principal and thereafter bear interest as herein provided.

On or prior to the Maturity Date, should default be made in the payment of principal or interest when due or in the performance or observance when due of any term, covenant or condition of any deed of trust, security agreement or other agreement (including amendments and extensions thereof) securing or pertaining to this Note, then, at the option of the holder hereof and without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable and thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Should Borrower fail to pay all outstanding principal and accrued interest on or prior to the Maturity Date, then, without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Borrower acknowledges and agrees that during the time that any payment of principal, interest or other amounts due under this Note is delinquent, whether before or after the Maturity Date, the holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on the holder's ability to avail itself of other opportunities. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such costs and expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that interest at the increased rate of five percent (5%) per annum over and above the interest rate contracted for in this Note represents a reasonable sum considering all the circumstances existing on the date of this Note and represents a fair and reasonable estimate of such costs and expenses. No delay or omission on the part of the holder hereof in exercising any right hereunder, or under any deed of trust, security agreement or other agreement shall operate as a waiver of such right or of any other right under this Note or under any such deed of trust, security agreement or other agreement.

Except with respect to the final monthly payment hereunder and following the Maturity Date, if any payment of principal or interest under this Note shall not be made within five (5) calendar days of the date due, a late charge of five percent (5%) of the overdue amount may be charged by the holder for the purpose of defraying the expenses incident to handling such delinquent payments. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that such late charge represents a reasonable sum considering all of the circumstances existing on the date of this Note and represents a fair and reasonable estimate of the costs that will be sustained by the holder due to the failure of Borrower to make timely payments. Such late charge shall be paid without prejudice to the right of the holder to collect any other amounts provided to be paid or to declare a default under this Note or under the Deed of Trust referred to in this Note or from exercising any of the other rights and remedies of the holder, including, without limitation, the right to declare the entire balance of the principal and accrued interest then remaining unpaid immediately due and payable.

2

In no event shall interest accrue or be payable hereon or under any such deed of trust, security agreement or other agreement in excess of the maximum amount of interest permitted on the date hereof by the laws of the State of California. If this Note is not paid when due, whether at its specified or accelerated maturity date, Borrower promises to pay all costs of collection and enforcement of this Note, including, but not limited to, reasonable attorneys' fees and costs, incurred by the holder hereof on account of such collection or enforcement, whether or not suit is filed hereon.

Principal and interest shall be payable in lawful money of the United States without setoff, demand or counterclaim. Borrower waives the defense of the statute of limitations in any action on this Note. Presentment, notice of dishonor, and protest are waived by all makers, sureties, guarantors and endorsers of this Note. Such parties expressly consent to any extension of the time of payment hereof or any installment hereof, to any renewal, and to the release of any or all of the security given for the payment of this Note or the release of any party liable for this obligation. This Note shall be governed and construed in accordance with the laws of the State of California.

Borrower may prepay this Note in whole or in part, at any time, without penalty. No partial prepayment shall affect the obligation of Borrower to pay the next subsequent regular installment payable hereunder until the entire balance of principal and interest shall have been paid in full. This Note replaces and supersedes, in its entirety, that certain Amended and Restated Promissory Note, executed by Borrower in favor of Lender on December 10, 2019, in the principal amount of $91,000,000.00.

A loan fee in the amount of One Million and No/100 Dollars ($1,000,000.00) shall be payable to Lender in connection with this Note. Said fee shall be paid from proceeds of the Loan upon execution hereof.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
        Nile Niami, Manager

3

This loan is made pursuant to California Finance Lender's Law,
Division 9 (commencing with Section 22000) of the Financial Code.
For information contact the Department of Business Oversight, State of California.

# EXHIBIT 9

# SECOND MODIFICATION

## OF

## CONSTRUCTION LOAN AGREEMENT

This Second Modification to Construction Loan Agreement (the "Modification") is entered into on this 20th day of August 2020 by and between Hankey Capital, LLC, a California limited liability company ("Lender"), on the one hand, and CRESTLLOYD, LLC, a California limited liability company (referred to herein as "Borrower"), on the other hand, for the purpose of setting forth the terms of the parties' agreement with respect to a certain secured Promissory Note (the "Original Note"), originally executed by Borrower, in favor of Lender, on or about October 25, 2018, as amended and restated by that certain Amended and Restated Promissory Note dated December 10, 2019, and that certain Construction Loan Agreement dated October 25, 2018, as modified by that certain First Modification of Construction Loan Agreement dated December 10, 2019 (the "Loan Agreement").

## RECITALS

WHEREAS, under the terms of the Original Note, the Loan Agreement and other related documents, Borrower borrowed from Lender the amount of $82,500,000.00; and

WHEREAS, under the terms of the Amended and Restated Promissory Note dated December 10, 2019, executed by Borrower in favor of Lender, and the First Modification of Construction Loan Agreement dated December 10, 2019, executed by Borrower and Lender, the Loan was increased to $91,000,000.00; and

WHEREAS, Borrower has requested another $15,000,000.00 increase in the amount of the Loan;

WHEREAS, Lender has agreed to such increase subject to, *inter alia,* certain changes to the Loan Agreement, as set forth below.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties have agreed as follows:

Contemporaneous with the execution of this Modification, Borrower shall execute an Amended and Restated Promissory Note and other documents in Lender's sole discretion, of even date herewith, which Amended and Restated Promissory Note shall replace the Amended and Restated Note executed by Borrower in favor of Lender on December 10, 2019.

1

Loan Agreement Section 1.1 – the definition of "Loan" shall be deleted in its entirety and replaced with the following:

> *"Loan" means the principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: ONE HUNDRED SIX MILLION AND NO/100THS DOLLARS ($106,000,000.00).*

Loan Agreement Section 1.1 – the definition of "Note" shall be deleted in its entirety and replaced with the following:

> *"Note" means that certain Amended and Restated Promissory Note, dated May 20, 2020, in the principal amount of the Loan, executed by Borrower and payable to the order of Lender, as hereafter amended, supplemented, replaced or modified.*

Loan Agreement Section 2.8 – the Loan Agreement shall provide for a new Section 2.8 as follows:

> *2.8  Satisfaction of Debt.  In addition to the Property, Borrower's obligations are separately secured by liens on (a) that certain parcel of real property located at 301 Copa de Oro Rd., Los Angeles, California 90077, and (b) that certain parcel of real property located at 9066 Saint Ives Dr., Los Angeles, California 90069 (collectively, the "Additional Properties") in favor of Lender. Lender shall not have the right to foreclose on either or both of the Additional Properties until such time as Lender has foreclosed upon the Property, the Property has been sold (whether at trustee's sale or by Lender thereafter), and the sale of the Property has resulted in a deficiency in the amount owed to Lender.  If no such deficiency results upon the sale of the Property, Lender shall, promptly, following the sale of the Property, reconvey its interest in the Additional Properties.*

Loan Agreement Section 4.9 is hereby deleted in its entirety and replaced with the following:

> *4.9. Liens and Stop Notices. If a claim of lien is recorded which affects the Property or Improvements or a bonded stop notice is served upon Lender, within thirty (30) calendar days after such recording or service or within thirty (30) calendar days after Lender's demand, whichever occurs first, Borrower, at Borrower's election, shall do one of the following: (a) pay and discharge the claim of lien or bonded stop notice; (b) effect the release thereof by recording or delivering to Lender a surety bond in sufficient form and amount; or (c) provide Lender with other assurances which Lender deems, in its sole discretion, to be satisfactory for the payment of such claim of lien or bonded stop notice and for*

*the full and continuous protection of Lender from the effect of such lien or bonded stop notice.*

Loan Agreement Section 11.1(d) is hereby deleted in its entirety and replaced with the following:

> *(d) Liens, Attachment; Condemnation. (i) The recording of any claim of lien against the Property or Improvements or the service on Lender of any bonded stop notice relating to the Loan and the continuance of such claim of lien or bonded stop notice for thirty (30) days without discharge, satisfaction or provision for payment being made by Borrower in a manner satisfactory to Lender, subject to the provisions of Section 4.9 hereof; or (ii) the condemnation, seizure or appropriation of, or occurrence of an uninsured casualty with respect to any material portion of the Property or Improvements that is not otherwise offset by Borrower's deposit of sufficient restoration funds (including any applicable deductible amount under any applicable policy of casualty insurance) into the Borrower's Funds Account within forty-five (45) days after the occurrence of such event; or (iii) the sequestration or attachment of, or any levy or execution upon any of the Property or Improvements, any other collateral provided by Borrower under any of the Loan Documents, any monies in the Account or in the Borrower's Funds Account, or any substantial portion of the other assets of Borrower, which sequestration, attachment, levy or execution is not released, expunged or dismissed prior to the earlier of forty-five (45) days or the sale of the assets affected thereby;*

Loan Agreement Section 11.9 – the Loan Agreement shall provide for a new Section 11.9 as follows:

> *11.9 Notice of Default. Notwithstanding any provision to the contrary set forth in the Loan Documents, Lender shall provide no less than ten (10) calendar days' prior notice, by electronic mail, of its intent to record a Notice of Default with the Office of the County Recorder of Los Angeles County, California, to the following notice recipients:*
>
> nile@skylinedevelopment.net
> yvonne@nphilanthropy.com
> doug@skylinedevelopment.net
> mrosenbaum@wrslawyers.com

Each and every term of the Construction Loan Agreement, not otherwise amended by the instant Amendment, shall remain in full force and effect until the complete satisfaction of Borrower's obligations set forth in the Construction Loan Agreement and in all related loan documents.

IN WITNESS WHEREOF, the parties have executed this Modification as of the date first above written.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
      Nile Niami, Manager


LENDER:

HANKEY CAPITAL, LLC.
a California limited liability company


By: _____
      W. Scott Dobbins, President

4

# EXHIBIT 10

 

**This page is part of your document - DO NOT DISCARD**

## 20201030024





**Pages:
0008**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/31/20 AT 02:49PM**

| | |
|---|---|
| FEES: | 38.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 113.00 |

 



**L E A D S H E E T**



202008311190076

00018779213



011100474

**SEQ:
01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

*E497026*

437_5474171_1__

Prepared by and upon recordation
please return to:

HANKEY CAPITAL, LLC
Attention: Eugene Leydiker
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST (this "**Modification**"), is made as of the 20th day of August, 2020 by CRESTLLOYD, LLC, a California limited liability company (the "**Trustor**") in favor of HANKEY CAPITAL, LLC, a California limited liability company ("**Lender**"), with reference to that certain Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents made as of October 25, 2018 by Trustor in favor of the Lender as Beneficiary securing Trustor's obligations as described therein, recorded November 6, 2018 in the Official Records of the County Recorder of Los Angeles County, California as Instrument Number 20181122917 (the "**Deed of Trust**"). Said Deed of Trust encumbers, among other things, all of those certain lots, pieces or parcels of land described in **Exhibit A** annexed hereto and made a part hereof, together with the buildings and improvements erected thereon.

WHEREAS, by this Modification, Trustor and Lender are modifying the terms of the Deed of Trust. Capitalized terms used but not defined herein have the meanings given to them in the Deed of Trust.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Trustor agree as follows:

1.      The Deed of Trust is granted by Trustor for the purpose of securing, in such order of priority as Beneficiary may elect, (1) payment of an indebtedness in the sum of One Hundred Six Million and 00/100 Dollars ($106,000,000.00), evidenced by that certain Amended and Restated Promissory Note of even date herewith executed by Trustor to the order of Beneficiary and any and all modifications, extensions or renewals thereof (the "**Promissory Note**"), whether hereafter evidenced by said Promissory Note or otherwise; (2) payment of interest on said indebtedness according to the terms of said Promissory Note; (3) payment of all other sums, with interest as herein provided, becoming due or payable under the provisions hereof to Trustee or Beneficiary; (4) due, prompt and complete observance, performance and discharge of each and every condition, obligation, covenant and agreement contained herein, or in said note, or in any loan agreement relative to any indebtedness evidenced by said Promissory Note or in any document or instrument evidencing, securing or pertaining to the indebtedness evidenced by said Promissory Note, and all modifications, renewals or extensions of any of the foregoing; and (5)

payment of such additional sums with interest thereon as may be hereafter borrowed from Beneficiary, its successors or assigns by Trustor or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes or guaranty instrument(s), which are by the terms thereof secured by this Deed of Trust.

2.       The Deed of Trust is hereby further modified with the addition of a new paragraph 4.00(g) as follows:

>        (g)       If, without Lender's prior written consent, which may be withheld by Lender in its sole and absolute discretion, (i) any lien is recorded in the County of Los Angeles, State of California, affecting the Property, or (ii) any existing lien affecting the Property is modified so as to evidence an increase in the Trustor's obligation to such lienholder.

3.       This Modification may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

4.       Except as expressly amended by this Modification, the terms and provisions of the Deed of Trust are unchanged and hereby ratified and affirmed.


        IN WITNESS WHEREOF, Trustor has caused this Modification to be duly executed as of the day and year above first written.

TRUSTOR:

CRESTLLOYD, LLC,
a California limited liability company


By: _____
        Nile Niami, Manager

> A notary public or other officer completing this certificate verifies only the identity of
> the individual who signed the document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _August 20, 2020_ before me, _Nigel Gibbs_ a Notary Public,
personally appeared _Nile Niami_, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

IN WITNESS WHEREOF, Lender has caused this Modification to be duly executed as of the day and year above first written.

HANKEY CAPITAL, LLC,
a California limited liability company


By: _____
    W. Scott Dobbins, President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_____

On _August 25, 2020_ before me, _T Douglas_____ a Notary Public, personally appeared _W. Scott Dobbins_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

T. DOUGLAS
Notary Public - California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

EXHIBIT A
Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30
FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST
2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING
SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF
361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY
LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE
BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING
A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID
CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22"
WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY
AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET
ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH
11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE
EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE
NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF
STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS

OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

# EXHIBIT 11



**This page is part of your document - DO NOT DISCARD**

# 20210367447




**Pages:
0005**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/05/21 AT 08:00AM**

| | |
|---|---:|
| FEES: | 36.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 111.00 |



**L E A D S H E E T**



202103050970049

**00020045631**



011912136

**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

*E497026*

332_6180094_



RECORDING REQUESTED BY:

CHICAGO TITLE COMPANY

AND WHEN RECORDED MAIL TO :

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA  92408

---

Trustee's Sale No.   4565-40      Title Order No.
APN: 4369-026-021

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

### 注：本文件包含一个信息摘要

### 참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

### TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

### LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

[PURSUANT TO CIVIL CODE SECTION 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR, IF APPLICABLE.]

1

**RECORDING REQUESTED BY**

**Chicago Title Company**

**AND WHEN RECORDED MAIL TO**

**CHICAGO TITLE COMPANY**
**FORECLOSURE DEPARTMENT**
**560 E. HOSPITALITY LANE**
**SAN BERNARDINO, CA  92408**

---

Space above this line for recorder's use only

**Trustee Sale No. 4565-40**                    **Title Order No.**
**APN:  4369-026-021**

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$110,247,987.99** as of **03/03/2021** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be

2

**Trustee Sale No. 4565-40**

earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: HANKEY CAPITAL, LLC, Attn: Eugene Leydiker, 4751 Wilshire Blvd., Suite 110, Los Angeles, CA 90010, Phone: (323) 692-4026
Chicago Title Company phone number: (909) 884-0448 / (800) 722-0824
If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: CHICAGO TITLE COMPANY, a California corporation is either the original trustee, or the duly appointed Trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 10/25/2018, executed by CRESTLLOYD, LLC, a California limited liability company, as Trustor, to secure obligations in favor of HANKEY CAPITAL, LLC, a California limited liability company, as Beneficiary recorded on 11/06/2018 as Document No. 20181122917 and that certain Modification of Deed of Trust dated 08/20/2020 and recorded on 08/31/2020 as Document No. 20201030024 of official records in the Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust, including the note(s) and any modifications/ amendments thereto for the modified sum of $106,000,000.00; that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE UNPAID PRINCIPAL BALANCE OF $104,529,453.82 DUE AND PAYABLE 10/31/2020 TOGETHER WITH INTEREST, DEFAULT RATE INTEREST AND COMPOUNDED INTEREST DUE THEREON AND FEES, COSTS AND EXPENSES INCURRED. TO CURE THE DEFAULT, YOU MUST PAY ALL SUMS DUE, INCLUDING THE PRINCIPAL BALANCE, INTEREST THEREON AND ANY ADDITIONAL UNPAID AMOUNTS THAT YOU ARE OBLIGATED TO PAY BY THE TERMS OF THE NOTE AND DEED OF TRUST, SUCH AS, BUT NOT LIMITED TO, ADVANCES, TAXES, HAZARD INSURANCE, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES, PLUS TRUSTEE'S AND/OR ATTORNEY'S FEES AND COSTS AND EXPENSES INCURRED IN ENFORCING THE OBLIGATION.

Trustee Sale No. 4565-40

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE:  March 4, 2021

Chicago Title Company, Trustee

By: *Teresa M. Drake*
Name:  Teresa M. Drake
Title:    Vice President

4

# EXHIBIT "B"

**Kyra Andrassy**

| | |
|---|---|
| **From:** | Kyra Andrassy |
| **Sent:** | Monday, April 11, 2022 6:28 PM |
| **To:** | Todd M. Arnold; David B. Golubchik; Geher, Tom; Shinderman, Mark |
| **Cc:** | Martin Singer |
| **Subject:** | RE: Crestlloyd |

Gentlemen:

Inferno has a few additional requests of Hankey:

(1) Any construction budget for Crestlloyd that was prepared, used or obtained by Hankey in connection with its approval and funding of the $82.5 million loan;

(2) Communications with anyone acting on behalf of Crestlloyd relating to the incremental increases in Hankey's loan; and

(3) Documents confirming that the loan proceeds were being used for Crestlloyd construction costs.

Thank you.

---

**From:** Kyra Andrassy
**Sent:** Friday, April 8, 2022 3:05 PM
**To:** Todd M. Arnold <TMA@lnbyg.com>; David B. Golubchik <DBG@lnbyg.com>; Geher, Tom <TMG@JMBM.com>; Shinderman, Mark <mshinderman@milbank.com>
**Cc:** Martin Singer <MDSinger@lavelysinger.com>
**Subject:** Crestlloyd

Counsel:

In furtherance of our meeting yesterday, Inferno is requesting the following documentation or information to help facilitate resolution of the disputes between the parties:

From Hankey Capital:

(1)    Calculation of the amount due on the $82.5 million loan, including interest, attorney's fees, and protective advances (with the protective advances to be itemized);

(2)    Copies of signed loan documents, including the (a) construction funding agreement, (b) the note, (c) the guarantees and any related security agreements and deeds of trust, and (d) all amendments or modifications to the foregoing;

(3)    Copies of the back-up documentation Hankey Capital received in relation to the payments it made for property taxes and insurance;

(4)    Any documents Hankey Capital has received and sent related to the escrow for Yvonne's Copa De Oro house. Including escrow instructions; and

(5)    Verification of (a) whether Hankey Capital calculated interest on the interest reserve under the $82.5 million loan; and (b) whether all of the interest payments obtained from the interest reserve are reflected on the Excel spreadsheet circulated during our call.

From Crestlloyd:

(1)    A copy of the insurance policy obtained postpetition and any related invoices;

(2)      The balance as of today that Crestlloyd is holding from the DIP loan proceeds (Our client's representative was informed that there was $2.5 million but we've also been told it may be $2 million);

(3)      An explanation of what due diligence, if any, was done with respect to the mechanic's liens proposed to be paid to ensure that the services and/or materials provided related to Crestlloyd and not one of Nile's other projects, and a list of the specific mechanic's liens proposed to be paid and their amounts;

(4)      A list of the categories of documents turned over by the Receiver; and

(5)      Any forensic accounting done so far, whether by Ted Lanes or Larry Perkins and his team, and any construction cost audit that has been prepared.  We understand that it may not be complete.

I also attach to this email the memorandum of agreement and the amendments that were made to it.

We look forward to receiving this information.



**SMILEY | WANG-EKVALL**

Insolvency.  Real Estate.  Business Litigation.

**Kyra E. Andrassy**
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California  92626

Main    714 445-1000
Direct   714 445-1017
Cell    714 981-7966
Email   kandrassy@swelawfirm.com





# EXHIBIT "C"

**De:** Doug Witkins <doug@skylinedevelopment.net>
**Date:** 31 octobre 2018 à 12:39:45 HAE
**À:** Linda Riberdy - II <lriberdy@investissementinferno.com>, Julien Rémillard - II
<jremillard@investissementinferno.com>
**Objet: Rép : 944 Airole Way -- Draft Loan Docs**

Attached please find updated version that includes

1. Inferno address
2. Proper name of Inferno on the signature sign (Inc. not LLC)
3. Julien's title.

**From:** Linda Riberdy - II <lriberdy@investissementinferno.com>
**Date:** Wednesday, October 31, 2018 at 4:12 AM
**To:** Doug Witkins <doug@skylinedevelopment.net>, Julien Rémillard - II
<jremillard@investissementinferno.com>
**Subject:** RE: 944 Airole Way -- Draft Loan Docs

Thank you


**LINDA RIBERDY** | DIRECTRICE GÉNÉRALE
C.P. 218, Succursale Place-d'Armes, Montréal, Québec H2Y 3G7
**T** 514.307.0821 / 222 | **C** 438.871.1340 | lriberdy@investissementinferno.com

**De :** Doug Witkins <doug@skylinedevelopment.net>
**Envoyé :** Tuesday, October 30, 2018 2:59 PM
**À :** Julien Rémillard - II <jremillard@investissementinferno.com>; Linda Riberdy - II
<lriberdy@investissementinferno.com>
**Objet :** FW: 944 Airole Way -- Draft Loan Docs

Julien,

Attached please find the subordination agreement the new lender needs signed by
Inferno.

Best
Doug

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA. 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Exhibits to Declarations in Support of Opposition of Secured Creditor Inferno Investment, Inc. to Motion for Authority to Disburse Funds to Hankey Capital, LLC, a Senior Secured Creditor** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **5/26/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **5/26/2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Via Overnight Mail:</u>
Honorable Deborah J. Saltzman
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1634 / Courtroom 1639
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 5/26/2022 | Lynnette Garrett | */s/ Lynnette Garrett* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:

- Kyra E Andrassy    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Jerrold L Bregman    jbregman@bg.law, ecf@bg.law
- Marguerite Lee DeVoll    mdevoll@watttieder.com, zabrams@watttieder.com
- Karol K Denniston    karol.denniston@squirepb.com,
  travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- Jonathan Gottlieb    jdg@lnbyg.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Robert B Kaplan    rbk@jmbm.com
- Jane G Kearl    jkearl@watttieder.com
- Jennifer Larkin Kneeland    jkneeland@watttieder.com, zabrams@watttieder.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- Samuel A Newman    sam.newman@sidley.com, samuel-newman-
  2492@ecf.pacerpro.com;laefilingnotice@sidley.com
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch    sokubisch@swelawfirm.com,
  gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Victor A Sahn    vsahn@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;
  cblair@ecf.inforuptcy.com
- William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com
- David Seror    dseror@bg.law, ecf@bg.law
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-
  0813@ecf.pacerpro.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          **F 9013-3.1.PROOF.SERVICE**