DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
JONATHAN D. GOTTLIEB (State Bar No. 339650)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dbg@lnbyg.com; tma@lnbyg.com; jdg@lnbyg.com

Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re                                    ) Case No. 2:21-bk-18205-DS
                                         )
CRESTLLOYD, LLC,                         ) Chapter 11
                                         )
                    Debtor.              )
                                         ) **RESPONSE TO OBJECTIONS TO**
                                         ) **DEBTOR'S MOTION FOR AUTHORITY**
                                         ) **TO DISBURSE FUNDS TO HANKEY**
                                         ) **CAPITAL, LLC, A SENIOR SECURED**
                                         ) **CREDITOR**
                                         )
                                         )
                                         ) Hearing:
                                         ) Date:   May 26, 2022
                                         ) Time:  11:30 a.m.
                                         ) Place: Courtroom 1639
                                         )             255 E. Temple Street
                                         )             Los Angeles, CA  90012
                                         )        **VIA ZOOMGOV ONLY**
                                         )
                                         ) Judge: Hon. Deborah J. Saltzman
                                         )
                                         )

1

Crestlloyd LLC, the debtor and debtor in possession in the above caption bankruptcy case (the "Debtor"), hereby files its Response to the Objections to the "*Motion For Authority to Disburse Funds To Hankey Capital, LLC, A Senior Secured Creditor*" (the "Motion") [Dkt. 325] filed by Yogi Securities Holdings, LLC ("Yogi") and Inferno Investment, Inc. ("Inferno").

**1. Yogi Limited Objection.**

Yogi asserts that it does not oppose the payment of $82.5 million to Hankey Capital, LLC ("Hankey"), whcih is the principal amount of the initial loan. Yogi disputes any addition payments based on its allegations and speculation as to the propriety of the loan and the loan proceeds. Yogi asserts that there is no basis provided in the Motion to pay principal and interest to Hankey. However, not a scintilla of evidence has been submitted by Yogi in support of its limited objection. However, the law and the evidence clearly supports the Motion and the request set forth therein.

Pursuant to 11 U.S.C. § 502(a), a filed proof of claim is deemed allowed unless a party in interest objects. Here, Hankey filed numerous proofs of claim, including Claim No. 20, which is the subject of the Motion. No objection has been asserted. Based on the foregoing, the claim is deemed allowed.

Importantly, if the claim would be subject to dispute, it is unlikely that both Yogi and Inferno would encourage payment of the $82.5 million, which is a rather large amount. In this case, both confirm that they support such payment.

Finally, the Motion contains a copy of the Hankey claim as well as the accounting in support of the claim. The Yogi limited objection does not dispute or question any specifica entry in the accounting records. Without any basis or support, the limited objection should be overruled.

**2. Inferno Objection.**

Inferno takes a different approach in its objection. With respect to priorities and Inferno's subordiation attached to the Motion, Mr. Remillard, principal of Inferno, argues that he did not sign the subordination [Exhibit 5 to Motion] and the notary stamp was frudulent since he was not in Los Angeles on October 30, 2018. Presumably, the purpose for such a statement is that Inferno's claim is senior to that of Hankey since it was recorded earlier in time. Such a position is false and disingenuous as discussed below.

First, the subordination agreement has been in existence for almost four (4) years, having been of record with the County Recorder's Office.  The subordination was part and parcel of the bid procedure motion and the sale motion.  At no time did Inferno (or anyone) argue that Hankey's debt is subordinated to that of Inferno.  The reason is that it was not.

Moreover, Inferno has admitted in Court pleadings that it is junior to Hankey by referring to itself as a "the holder of a deed of trust in second priority".  See Inferno's Opposition to Bid Procedures attached hereto as **Exhibit "A"** [Doc. No. 98]; see also Inferno's Opposition to Sale Motion attached hereto as **Exhibit "B"** [Doc. No. 198].

Separate and apart from the foregoing, and as discussed in detail in the sale motion, Inferno executed a general subordination in favor of all creditors of the estate including, wihtout limitation, loans of third parties.  See **Exhibit "C"** hereto.  The issue at this time is not whether Inferno subordinated to all creditors, but whether Hankey is senior to Inferno.  Based on the executed, notarized and recorded subordination, Hankey is senior to Inferno.  Based on Inferno's pleadings filed in this case, Hankey is senior to Inferno.  Finally, based on the general subordination agreement, Hankey is senior to Inferno.

Finally, Inferno argues that the Hankey indebtedness, in the principal amount of $106 million is in dispute.  The Debtor agrees witht the foregoing.  The principal amount of $106 million, consisting of an intial loan of $82.5 million and additional advances of $23.5 million, are in dispute.  However, the $82.5 million portion is not in dispute.  As discussed above, a proof of claim was filed for which no ojections are pending.  As a result, the claim is deemed allowed under Section 502(a).

**3.  Payment Without Prejudice.**

The objecting creditors seek a clarification that the proposed payment to Hankey is without prejudice to litigation or other proceedings whcih may result in disgorgement of payment.  The Debtor agrees with the foregoing and, as a result, the Motion did not seek any relief that would preclude such action.  The Motion is simply to pay an outstanding obligation to eliminate the accrual of interest, but it is without prejudice to any actions which may be appropriate in the future.

**WHEREFORE**, the Debtor respectivelye requests that the Court (1) overrule the objections; (2) grant the Motion; and (3) grant such further and additional relief as the Court deems just and proper.

Dated: May 26, 2022

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.

By:___/s/ David B. Golubchik_____
    DAVID B. GOLUBCHIK
    TODD M. ARNOLD
    JONATHAN D. GOTTLIEB
Attorneys for Debtor and Debtor in Possession

# EXHIBIT "A"

1  **SMILEY WANG-EKVALL, LLP**
   Kyra E. Andrassy, State Bar No. 207959
2  *kandrassy@swelawfirm.com*
   Sharon Oh-Kubisch, State Bar No. 197573
3  *sokubisch@swelawfirm.com*
   3200 Park Center Drive, Suite 250
4  Costa Mesa, California 92626
   Telephone:   714 445-1000
5  Facsimile:    714 445-1002

6  Attorneys for Inferno Investment, Inc.

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

11  In re                             Case No. 2:21-bk-18205-DS
                                      Chapter 11
12  CRESTLLOYD, LLC,

13          Debtor in Possession.     **OPPOSITION TO MOTION TO
                                      APPROVE AUCTION AND BID
14                                    PROCEDURES REGARDING THE SALE
                                      OF REAL PROPERTY**
15
                                      Date:      January 6, 2022
16                                    Time:      11:30 a.m.
                                      Crtrm.:    1639

17  **TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY**

18  **JUDGE, CRESTLLOYD, LLC, AND ALL OTHER PARTIES IN INTEREST:**

19          Inferno Investment, Inc. ("Inferno"), the holder of a deed of trust in second priority

20  against the real property located at 944 Airole Way, Los Angeles, CA 90077 (the

21  "Property"), objects to the bid procedures proposed by Crestlloyd, LLC (the "Debtor"), to

22  the extent that they propose an auction without a reserve and a buyer's premium that is

23  artificially high and which may chill bidding.

24          Inferno understands that auctions are often done without a reserve because it is

25  believed to increase interest in the property being sold and, therefore, to generate a

26  higher sale price.  The problem is that this is not a typical auction where the winner has

27  an absolute right to purchase the property at the conclusion of the auction.  Instead, the

28  Property is simultaneously being listed at $295 million and, after the auction and in order

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    to convey title to the Property free and clear of liens, the Debtor must return to the Court

2    for approval of the sale of the Property to the winning bidder.  In order to sell the Property

3    free and clear of liens, certain requirements must be met.  As relevant here, a property

4    can be sold free and clear of liens where the price at which the property is to be sold

5    exceeds the aggregate value of the liens against the Property, the lienholders consent, or

6    the lien is in bona fide dispute.  *See* 11 U.S.C. § 363(f).  Inferno is not aware of any basis

7    on which the Debtor could contest its lien, and it does not anticipate consenting to a sale

8    of the Property for an amount that is not enough to pay its lien in full.  Thus, the only way

9    for the Debtor to sell the Property free and clear of liens is if the sale price is sufficient to

10   pay all of the liens in full.  By the Debtor's estimates, this would require a reserve of

11   approximately $191.2 million.[1]  It would be a waste of everyone's time for the Debtor to

12   submit a winning bid to the Court that is in an amount that is not sufficient to do this.

13   Moreover, the Debtor states that it believes that the Property may be worth $325 million

14   and that its purpose in filing this case was to preserve the equity for the Debtor.  In this

15   context, it makes significantly more sense to set a reserve that is equal, at a minimum, to

16   the liens against the Property.

17       It also makes sense because the parties who will be bidding at the auction are

18   likely to be savvy buyers who will understand that the winning bid must still be submitted

19   to the Court and may not be approved if the purchase price is not high enough to pay off

20   the liens against the Property.  Thus, the psychological benefit of conducting an auction

21   with no reserve is not present here.

22       Inferno is also concerned about the amount of the buyer's premium.  Although the

23   bid procedures state that it is 12%, it is actually significantly less because Concierge

24   Auctions has agreed to "rebate" the majority of the premium to the Debtor's bankruptcy

25

26   _____

27   [1] The Debtor states in its bid procedures motion that the total secured claims as of the petition date were
     approximately $179.2 million, plus a $12 million postpetition DIP loan that is drawn down.  Inferno does not
     take a position on the validity, amount, or priority of the other liens against the Property in connection with

28   this Opposition and reserves all rights in that regard.

1    estate.  Depending on the sale price, the amount of this rebate ranges from 8.5% to 9.5%

2    of the buyer's premium.  It thus is not meant to compensate the auctioneer for its efforts

3    and Inferno is concerned that given the value of the Property, adding a 12% "buyer's

4    premium" to the winning bid may chill bidding and drive the price down, not up.

5       Last, given the interest of the lienholders in the success of the auction and to the

6    extent that the Court approves bid procedures, Inferno requests that the Debtor keep the

7    lienholders apprised of the number of bidders who register and provide proof of sufficient

8    funds and therefore qualify to submit bids on the property.

9       Accordingly, Inferno objects to the bid procedures as proposed and believes that it

10   would be appropriate to condition the approval of the bid procedures on the

11   establishment of a reserve in an amount sufficient to pay all of the liens in full and on a

12   reduction of the buyer's premium to the amount actually being paid to Concierge

13   Auctions.

14

15   DATED:  January 5, 2022          Respectfully submitted,

16                              SMILEY WANG-EKVALL, LLP

17

18

19                      By:        /s/ Kyra E. Andrassy
                             KYRA E. ANDRASSY

20                              Attorneys for Inferno Investment, Inc.

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA. 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Opposition to Motion to Approve Auction and Bid Procedures Regarding the Sale of Real Property** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **1/5/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/5/2022 | Lynnette Garrett | */s/ Lynnette Garrett* |
|----------|------------------|------------------------|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                           **F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Kyra E Andrassy    kandrassy@swelawfirm.com,
lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Jerrold L Bregman    jbregman@bg.law, ecf@bg.law
- Marguerite Lee DeVoll    mdevoll@watttieder.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Robert B Kaplan    rbk@jmbm.com
- Jane G Kearl    jkearl@watttieder.com
- Jennifer Larkin Kneeland    jkneeland@watttieder.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch    sokubisch@swelawfirm.com,
gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com
- Victor A Sahn    vsahn@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;
cblair@ecf.inforuptcy.com
- William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com
- David Seror    dseror@bg.law, ecf@bg.law
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**EXHIBIT "B"**

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  **SMILEY WANG-EKVALL, LLP**
   Kyra E. Andrassy, State Bar No. 207959
2  *kandrassy@swelawfirm.com*
   Sharon Oh-Kubisch, State Bar No. 197573
3  *sokubisch@swelawfirm.com*
   3200 Park Center Drive, Suite 250
4  Costa Mesa, California 92626
   Telephone:   714 445-1000
5  Facsimile:   714 445-1002

6  Attorneys for Inferno Investment, Inc.

7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

11  In re                                Case No. 2:21-bk-18205-DS
                                         Chapter 11
12  CRESTLLOYD, LLC,

13              Debtor in Possession.    **OPPOSITION OF SECURED CREDITOR
                                         INFERNO INVESTMENT, INC. TO
14                                       DEBTOR'S MOTION FOR AN ORDER:
                                         (1)  APPROVING THE SALE OF THE
15                                       DEBTOR'S REAL PROPERTY FREE
                                         AND CLEAR OF ALL LIENS, CLAIMS,
16                                       ENCUMBRANCES, AND INTERESTS,
                                         WITH THE EXCEPTION OF
17                                       ENUMERATED EXCLUSIONS;
                                         (2) FINDING THAT THE BUYER IS A
18                                       GOOD FAITH PURCHASER;
                                         (3) AUTHORIZING AND APPROVING
19                                       THE PAYMENT OF CERTAIN CLAIMS
                                         FROM SALE PROCEEDS;
20                                       (4) WAIVING THE FOURTEEN-DAY
                                         STAY PERIOD SET FORTH IN
21                                       BANKRUPTCY RULE 6004(h); AND
                                         (5) PROVIDING RELATED RELIEF;
22                                       DECLARATION OF ANTHONY AQUINO

23                                       Date:    March 18, 2022
                                         Time:    11:00 a.m.
24                                       Crtrm.:  1639

25  **TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY**

26  **JUDGE, CRESTLLOYD, LLC, AND ALL OTHER PARTIES IN INTEREST:**

27          Inferno Investment, Inc. ("Inferno"), the holder of a deed of trust in second priority

28  against the real property located at 944 Airole Way, Los Angeles, CA 90077 (the

2902286.3                            1                              OPPOSITION

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

"Property"), submits its opposition to the proposed sale of the Property to Richard

Saghian for $126,000,000 and requests that the sale be denied or, at a minimum, that the

hearing be continued for a couple of weeks to enable parties who have expressed an

interest in purchasing the Property for a higher price to have adequate time to submit

their bids.

I.    **INTRODUCTION**

The proposed sale to Mr. Saghian at $126,000,000, plus the buyer's premium, should not be approved because (1) as counsel for Crestlloyd, LLC (the "Debtor") has conceded, the sale price, even with the rebate from the buyer's premium, is not sufficient to pay secured creditors in full, (2) there is no benefit to unsecured creditors from the administration of the Property, (3) the sale price is not the highest and best offer that the Debtor has received, is significantly less than the appraised value, and was obtained through an auction conducted at an inopportune time and with some irregularities, and (4) the proposed buyer would be receiving a massive windfall at the expense of the Debtor and its creditors if the sale is approved.

Although in a different context there is a public policy that supports honoring the winning bid obtained in compliance with Court-approved bid procedures, this sale was structured in a manner so that it was always subject to Court review and approval under 11 U.S.C. § 363. With secured claims of somewhere between the scheduled amount of $176.6 million and the filed amount of $183.6 million, plus a secured debtor-in-possession loan of $12 million, the approval of the sale has never been a certainty. Moreover, the Court approved the procedures, including the absence of a reserve, in a different world climate. Between the time that the Court approved the bid procedures and the time Concierge Auctions conducted the auction, war broke out in Ukraine and massive sanctions were imposed on Russia and Russian oligarchs, which everyone concedes had a negative impact on the auction. Other potential buyers have expressed interest in acquiring the Property both before and after the auction at higher prices, and in

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    this context, public policy requires the Debtor to exercise its fiduciary duty to pursue

2    those offers and the Debtor should be given adequate time to do so.

3        Accordingly, Inferno urges denial of the proposed sale.

4

5    **II.**    **The Court Should Not Approve the Sale Because It Is Not in the Best**

6        **Interests of the Debtor's Bankruptcy Estate**

7        As set forth in the Motion, in order to approve the sale of property outside of the

8    ordinary course, the Debtor must submit evidence to enable the Court to find that the sale

9    is in the best interests of the estate and a proper exercise of the Debtor's business

10   judgment.  There is not adequate evidence to satisfy either requirement with the

11   proposed sale and the only reason that the Debtor has submitted the proposed sale to

12   the Court is because the bid procedures obligated it to do so.  Fortunately, the Court is

13   not required to approve it.

14       First, the proposed sale price is a lowball offer that would result in the buyer

15   receiving a windfall at the expense of the Debtor's bankruptcy estate.  This is, in fact, the

16   very reason that Inferno and others opposed the absence of a reserve—it was concerned

17   that the auction would not go as expected and that a lowball offer would be the high bid

18   and that everyone's time would be wasted by the Debtor's submission of it to the Court.

19   Although it is true that a property of this nature may only worth what someone is willing to

20   pay for it, there are multiple potential buyers circling with higher numbers, including one

21   from a member of Saudi royalty who was willing to pay $160 million for the Property on

22   an as-is basis.  Inferno is informed that no action was taken on that offer because the

23   realtors, auction house, and the Debtor all expected the auction to be far more successful

24   than it was.  One reason for the low winning bid was the absence of a reserve, which

25   encourages parties to bid as low as possible.  Another is that the timing of the auction

26   proved poor, coming days after unprecedented sanctions were imposed on Russia and

27   on certain Russian businessmen who were considered potential buyers for the Property.

28   Only five bidders registered to bid, and one of them is believed to have been Hankey

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Capital.  There also appear to have been technical issues with the auction as indicated in the Motion, which describes at least one potential bidder who had technical issues that prevented them from registering to bid.  There is also the curiosity that the winning bidder bid against himself and increased his offer from $120 million to $126 million with no competing bid in between.  Indeed, there were only seven bids made, hardly the robust auction that Concierge represented would occur.  As of the drafting of this opposition, Inferno is informed that there is at least one other party interested in acquiring the Property at a price substantially higher than Mr. Saghian's price.  More time is needed to allow these interests to play themselves out, and more time is warranted because the evidence before the Court is insufficient to enable the Court to find that the sale price is reasonable and represents fair value.

Second, there is no evidence that the sale is likely to benefit anyone other than Hankey.  The Motion proposes to pay (1) the allegedly undisputed portion of Hankey's lien (which is in the principal amount of $82.5 million) with interest and fees allowed under the terms of the loan agreements, (2) Hankey's DIP loan, (3) Hankey's loan evidenced by a receiver's certificate, (4) broker's commissions, and (5) costs of sale.  The balance of Hankey's lien, all of Inferno's lien, all of Yogi's lien, and all of the mechanic's liens are proposed to attach to the net proceeds of the sale.  But there is no mention in the motion of what these net proceeds are expected to be, although the Debtor's counsel has estimated on a phone call that the foregoing are estimated to total approximately $113 million.  It is also unclear if the Debtor's intention is that the rebated buyer's premium will be available to pay secured claims.  It should be, but whether it actually will be is not clear.  What is plain is that the remaining net proceeds are not expected to be substantial and certainly not enough to satisfy all liens, much less to generate a benefit for unsecured creditors.  The Debtor estimates in its Motion that the secured claims total at least $158 million assuming that it prevails on its objections,[1] and many of those

---

[1] *See* Page 23 of 170 of the Motion.

1  objections are manufactured or time-barred.[2]  In this context, the bird in the hand is not

2  worth two in the bush since no one other than Hankey, the brokers, and the auction

3  house receive any benefit.

4        Third, given the absence of any evidence of a benefit to unsecured creditors, the

5  sale should not be approved.  Sales of fully encumbered assets like the Property are

6  strongly disfavored in bankruptcy cases.  As set forth by the Ninth Circuit Bankruptcy

7  Appellate Panel in *In re KVN Corp., Inc.*, 514 B.R. 1, 5 (9th Cir. BAP 2014), such sales

8  are typically not approved:

> It is universally recognized, however, that the sale of a fully encumbered asset is generally prohibited.  *Carey v. Pauline (In re Pauline)*, 119 B.R. 727, 728 (B.A.P. 9th Cir. 1990); *In re Scimeca Found., Inc.*, 497 B.R. 753, 781 (Bankr. E.D. Pa. 2013) ("It is generally recognized that a chapter 7 trustee should not liquidate fully encumbered assets, for such action yields no benefit to unsecured creditors.") (citing *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach & Tool Co.)*, 816 F.2d 238, 245-56 (6th Cir. 1987)); *In re Covington*, 368 B.R. 38, 41 (Bankr. E.D. Cal. 2006) ("[W]hen an asset is fully encumbered by a lien, it is considered improper for a chapter 7 trustee to liquidate the asset."); *In re Feinstein Family P'Ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 200) ("Clearly, the Code never contemplated that a Chapter 7 trustee should act as a liquidating agent for secured creditors who should liquidate their own collateral."); *In re Preston Lumber Corp.*, 199 B.R. 415, 416 (Bankr. N.D. Cal. 1996) (actual conflict of interest arises when the trustee sees he can make more money for himself by liquidating collateral for a secured creditor than he can by asserting a claim against the secured creditor on behalf of the estate); *In re Tobin*, 202 B.R. 339, 340 (Bankr. D.R.I. 1996) ("The mission of the Chapter 7 trustee is also to enhance the debtor's estate for the benefit of unsecured creditors.")

---

[2] For instance, Inferno provided evidence to substantiate that nearly all of its proceeds went directly into the Property, although it was unable to provide evidence with respect to the initial $7 million loan because it was made by a different company and then assigned to Inferno.  However, there is no dispute that the Debtor signed the note and deed of trust in 2013, approximately nine years prior to the bankruptcy filing.  Even assuming that there was an argument that the Debtor did not benefit, this transaction occurred nine years ago, several years outside any fraudulent transfer reachback period, and is therefore not avoidable on that basis.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Although the proposed sale is in the context of a chapter 11 case, that does not

2  distinguish this line of cases given the present landscape, particularly when the sale is

3  being conducted outside of a chapter 11 plan and without the attendant protections of 11

4  U.S.C. § 1129.

5          Fourth, higher offers have been received and all of the parties are in agreement

6  that the Property is worth more than the winning bid.  The Debtor has repeatedly

7  represented that it believes that the Property has a fair market value of $325 million in its

8  present condition.[3]  Prior to the auction, a member of Saudi royalty submitted a bid to

9  acquire the Property for $160 million.  Although this potential buyer declined to

10  participate in the auction and has since decided not to extend the time period for the

11  Debtor to accept the offer because of privacy concerns, this is current evidence that the

12  Property is worth substantially more than the offer before the Court.  Inferno is informed

13  that there is also a Chinese buyer who has expressed serious interest in submitting an

14  offer but who requires a little more time to do so.

15

16  **III.**      **If the Sale Is Approved, the Court Should Not Find that the Buyer is a Good**

17          **Faith Purchaser Entitled to the Protections of 11 U.S.C. § 363(m)**

18          The Ninth Circuit has held that "[t]hough the Bankruptcy Code and Rules do not

19  provide a definition of good faith, courts generally have followed traditional equitable

20  principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for

21  value.' *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3rd

22  Cir.1986)."  *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). Here, the

23  only evidence to support a good faith finding is that the sale was the high bid obtained

24  through an auction of the Property.  However, the Debtor concedes that there were some

25

26  _____

[3] *See, e.g., Debtor's Notice of Motion and Motion to:  (1) Approve Auction and Bid
27  Procedures Regarding the Sale of Real Property and (2) Set Scheduling for a Motion to
Approve the Sale of Real Property* [Docket No. 88] at 14 of 131; Secured Proof of Claim
28  Nos. 17-20 filed by Hankey Capital.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   irregularities with that auction, including that a party interested in bidding had technical

2   difficulties that prevented it from registering.  The timing of the auction, which occurred

3   shortly after the start of the war in Ukraine and the freezing of assets as a sanction,

4   proved poor and limited the number of bidders who were expected to participate, and the

5   bad timing was amplified by the absence of a reserve that encouraged low offers.  The

6   robust auction turned out to be a bust, with only five bidders and seven bids, the last of

7   which was a gratuitous increase of $6 million by Mr. Saghian.  In this context, the mere

8   fact that Mr. Saghian had the high bid at the auction should not be sufficient to justify a

9   finding of good faith.  Moreover, he has declined to execute the addendum to the

10  agreement, instead attempting to substitute his own, which would provide additional

11  remedies for any failure to close that were not contemplated by the Debtor or approved

12  by the Court and which are not standard in bankruptcy sales.  Accordingly, to the extent

13  the Court approves the sale, it should do so without finding that the buyer is a good faith

14  purchaser entitled to the protections of 11 U.S.C. § 363(m).

15

16  **IV.**    **Inferno Objects to the Payment of Any Portion of Hankey's Lien from Escrow**

17          The Motion proposes to pay Hankey the principal amount of Hankey's lien, plus

18  interest and fees allowed under the loan documents, alleging that these sums are

19  undisputed although the declaration of Larry Perkins concedes that Hankey's lien is

20  disputed and that there are issues about the priority of certain mechanic's liens.  Just as

21  the Debtor has required Inferno and Yogi to provide evidence that their loans actually

22  funded and benefitted the Debtor, Hankey should similarly be required to provide this

23  documentation to verify that Hankey does not receive funds it is not legally entitled to.  If

24  Inferno had additional time, it would seek discovery on this issue prior to the hearing.

25  Although it informally requested this documentation from Hankey, all Hankey provided

26  was an Excel spreadsheet with a list of well over 600 individual transactions that

27  allegedly benefitted the Debtor with no back-up, and Inferno has been informed that

28  portions of Hankey's loan were not used by the Debtor but instead diverted to other

purposes.  Inferno is also informed that there is other collateral for this debt and is attempting to obtain additional information on this issue.  Until the Debtor and the other parties who will be impacted by the payment of the sale proceeds to Hankey verify the legitimacy of the $82.5 million lien and the calculation of interest and attorney's fees, Hankey should not be paid out of escrow on account of this lien.  If the sale is approved, Inferno suggests that the Court set a continued hearing on this issue.

## V.    CONCLUSION

The proposed sale at $126 million plus the buyer's premium is not in the best interests of anyone other than Hankey Capital and, although the Debtor was obligated by its bid procedures to seek approval of the bid, the Court is not required to approve it. Better offers are lurking and likely and if the sale is approved as proposed, the buyer will be receiving a windfall at the expense of creditors of this estate. Given world events that impacted the auction and its outcome, issues with the conduct of the auction, and the reality that there are buyers who remain interested at significantly higher numbers, Inferno urges the Court to deny the Motion.

DATED:  March 15, 2022                Respectfully submitted,

                                      SMILEY WANG-EKVALL, LLP


                                      By:  _____/s/ Kyra E. Andrassy_____
                                           KYRA E. ANDRASSY
                                           Attorneys for Inferno Investment, Inc.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**<u>DECLARATION OF ANTHONY AQUINO</u>**

I, ANTHONY AQUINO, declare as follows:

1.      I am the executive vice president of Inferno Investment, Inc.  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.

2.      In my capacity as Inferno's representative, I have had a number of conversations with various parties related to the real property located at 944 Airole Way, Los Angeles, CA (the "Property").  Among these exchanges was one with Sam Collins, a real estate agent who I am informed represents a member of Saudi royalty.  A true and correct copy of this email exchange on which I was copied is attached as Exhibit "A."  In it, he discusses the offer of $160 million.  Attached hereto as Exhibit "B" is a true and correct copy of an email that I received that attached the $160 million offer.  The buyer's name has been redacted for privacy reasons.  I am further informed that there is a potential Chinese buyer interested in acquiring the Property for more than the amount proposed to be paid by Richard Saghian, although I am also informed this buyer requires additional time to submit the offer and provide verification of their financial wherewithal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of March, 2022, in Montreal, Quebec, Canada.

_____
ANTHONY AQUINO

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# EXHIBIT "A"

**From:** Sam Collins <sam@thealtmanbrothers.com>
**Sent:** Friday, March 4, 2022 1:56:15 PM
**To:** Rayni Williams <rayni@thebeverlyhillsestates.com>
**Cc:** Lawrence Perkins <lperkins@scpllc.com>; Anthony Aquino <aaquino@allrem.com>; Josh Altman <josh@thealtmanbrothers.com>; Matthew Altman <matthew@thealtmanbrothers.com>; Branden Williams <brandenwilliams@me.com>; aaron@aaronkirman.com <aaron@aaronkirman.com>
**Subject:** Re: 944 Airole Way

Hi Rayni,

Thank you very much for your email. It was also good to speak with you this morning.

We have always been on the same page in terms of understanding what was required from us, and would love nothing more than to get this deal agreed. This has not only been a 9 month journey on this particular property, I have spent the best part of 2 years trying to do a deal on some of Nile Niami's former homes, and am determined to get this one over the line.

Having connected the two Trustees today, and seeing that they are now in communication, I very much hope they are able to secure the necessary information that will provide you, Larry, and the Court of Bankruptcy the comfort needed to validate the Buyer.

Having also informed the Trustees the other day that they would need to wire 3%, I reiterated Larrys email to both of us before, and the Trustees are aware of their responsibilities.

With regards to the auction, I did try and push the client to enter and bid, but it was the one thing his trustees did not want him to do. The Buyer wasn't averse to it, unfortunately his Trustees were.

Let's all hope that we receive the necessary correspondence from the Trustees today, and that we can get this deal moving forward and that we can all work in conjunction together to get this deal over the line.

Kind Regards,

Sam Collins

M: +(1) 424 777 5135
M: + (44) 7947257387

**SAM COLLINS**
DOUGLAS ELLIMAN REAL ESTATE
MOBILE: 424.777.5135
OFFICE: 310.819.3250
sam@TheAltmanBrothers.com
CalBRE# 02057606
103 S ROBERTSON BLVD
LOS ANGELES, CA 90048

 

  

On 4 Mar 2022, at 18:23, Rayni Williams <rayni@thebeverlyhillsestates.com> wrote:

Hi Sam,

Thank you so much for your communication last night and this morning and throughout this entire process. As you know, we have given multiple opportunities for a legible proof of funds and of course we are open and wanting to work with your buyer and all viable buyers.

The apprehension that we were told that existed was with one of the friends that accompanied your client to the showing as we reached out to them to try to additionally approve him, as well as asking you all if you knew for certain that your buyer is capable.

In moving forward,  in good faith, and assuming that your Buyer is wanting to purchase this property all we ask is for a banker that we can verify that the funds are there and in addition we would request that to perfectly package him up he places the 3% earnest money in the US into an escrow account to get the attention of the judge.

Lastly, please remember we said multiple times that the best way for your buyer to win this property would be to engage in the auction. It is our duty to make sure we flush out every buyer and that was the call to action of, the auction which was advertised for the last six weeks.

We look forward to working with you and hope that we will receive the necessary information to proceed with your client.


Best Regards,

Rayni

**RAYNI WILLIAMS**
*CEO | Co-Founder*



8878 W. Sunset Blvd. West Hollywood, CA 90069
Mobile: 310.925.9281 | Office: 310.626.4248
www.TheBeverlyHillsEstates.com
DRE# 01496786
@TheBeverlyHillsEstates



@WilliamsandWilliams



NOTICE: This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying or distribution of this message by an unintended recipient is prohibited and may be unlawful.

On Mar 4, 2022, at 3:59 AM, Sam Collins <sam@thealtmanbrothers.com> wrote:

 Hi Larry,

I hope all is well. I am writing to you from U.K, where I have been for the last few weeks. I return to Los Angeles on Monday.

As expected, I have been keeping a very close eye on events at 944 Airole Way, and the Auction, only to wake up this morning to see the highest bid didn't get anywhere near my clients latest offer of $160,000,000.

We are all delighted this is the case, and I have written to my Buyer's Trustees immediately to ask them to get the ball rolling on some further information we need to provide. Primarily, this will relate to the verification of funds, and this is understandable when taking into account the last P.O.F was provided, when we first attempted to purchase the house almost 9 months ago. I have therefore asked that the Trustees have a Senior Banking Official contact you to put the finances question to bed once and for all.

I know Anthony (cc'd) in this email has reminded you on numerous occasions, that Ted Lanes engaged in multiple offers and counters with my Buyer and I, and I would be beyond amazed if he had done this without verifying who the Buyer was in the first instance.  However, in order to satisfy you and the Bankruptcy Courts, I am going to arrange for further information to be provided now that we know we are the winning bid (outside the Auction). I hope to hear from them today, and will make a formal introduction to you in a separate email shortly.

It is also worth noting that I have **not expressed any concerns** about my Buyer to the Selling Brokers. I have zero idea where this statement would come from, nor why. If this

3

was the case, I would not have wasted 9 months of my time, nor submitted multiple
offers on behalf of the Buyer.


I am contactable whenever necessary, and will introduce you to my clients Trustee
momentarily.


Best,

Sam




**SAM COLLINS**
DOUGLAS ELLIMAN REAL ESTATE
MOBILE: 424.777.5135
OFFICE: 310.819.3250
sam@TheAltmanBrothers.com
CalBRE# 02057606
103 S ROBERTSON BLVD
LOS ANGELES, CA 90048


 

 

This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. If you are not the
intended recipient, you must not keep, use, disclose, copy or distribute this email without the author's prior permission. We have taken precautions to minimize the risk of
transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage
caused by software viruses. The information contained in this communication may be confidential and may be subject to the attorney-client privilege. If you are the intended
recipient and you do not wish to receive similar electronic messages from using the future then please respond to the sender to this effect. Please note that any views or
opinions presented in this e-mail are solely those of the author and do not necessarily represent those of the Company.

# EXHIBIT "B"

**From:** Sam Collins <sam@thealtmanbrothers.com>
**Sent:** Monday, February 14, 2022 7:32:43 AM
**To:** Rayni@thebeverlyhillsestates.com <Rayni@TheBeverlyHillsEstates.com>
**Cc:** Branden Williams <brandenwilliams@me.com>; Josh Altman <josh@thealtmanbrothers.com>; Matthew Altman <matthew@thealtmanbrothers.com>; aaron@aaronkirman.com <aaron@aaronkirman.com>; Anthony Aquino <aaquino@allrem.com>
**Subject:** Revised Offer - 944 Airole Way, Los Angeles, 90077

Hi Rayni,

Having spent the last week or so convincing the Buyer to submit a higher offer on The One, I am delighted to attach a new offer below.

In short, we have come up to $160,000,000. All other terms remain unchanged.

I am actually in London at the moment, so am 8 hours ahead of LA. I am still working though and contactable on my US cell if there is anything you wish to discuss.

Best,

Sam

**SAM COLLINS**
DOUGLAS ELLIMAN REAL ESTATE
MOBILE: 424.777.5135
OFFICE: 310.819.3250
sam@TheAltmanBrothers.com
CalBRE# 02057606
103 S ROBERTSON BLVD
LOS ANGELES, CA 90048






This email is for the use of the intended recipient(s) only. If you have received this email in error, please notify the sender immediately and then delete it. If you are not the intended recipient, you must not keep, use, disclose, copy or distribute this email without the author's prior permission. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. The information contained in this communication may be confidential and may be subject to the attorney-client privilege. If you are the intended recipient and you do not wish to receive similar electronic messages from using the future then please respond to the sender to this effect. Please note that any views or opinions presented in this e-mail are solely those of the author and do not necessarily represent those of the Company.

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83E0AD4990438

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

| | |
|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ _t and / or Assignee_ Date | 2/12/2022 |
| ☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ D024D98F59B0438... Date | |

Agent _____ _Douglas Elliman_ _____ DRE Lic. # 01947727
           Real Estate Broker (Firm)
By _Sam Collins / Josh Altman_ _____ _Sam Collins / Josh Altman_ DRE Lic. # 02057606 & 01764587 Date 2/13/2022
        56C7196D7A...Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83D3741ADC61

CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17 **(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

| | | |
|---|---|---|
| Seller's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number |
| Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent) | | |
| Seller's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number |
| Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent) | | |
| Buyer's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number |
| Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent) | | |
| Buyer's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number |
| Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent) | | |

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

2079.18 (Repealed pursuant to AB-1289)

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/21 (PAGE 2 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83B1…

CALIFORNIA
ASSOCIATION
OF REALTORS®

## FAIR HOUSING & DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, 10/20)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR §2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.
**FHDA 10/20 (PAGE 1 OF 2)**



**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83D0A05D69C1

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

    **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,

    **(ii)** Charging that person higher rent or increased security deposit, or

    **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://www.dfeh.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved in the rental;**

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and (ii) no discriminatory advertising is used, and (iii) the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC,* 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | |
|---|---|
| Buyer/Tenant _____ | Date 2/12/2022 |
| Buyer/Tenant _____ | Date _____ |
| Seller/Landlord _____ *Crestlloyd LLC* | Date _____ |
| Seller/Landlord _____ | Date _____ |

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

FHDA 10/20 (PAGE 2 OF 2)

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83FAA65DDB8F



CALIFORNIA
ASSOCIATION
OF REALTORS®

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers.  Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | | *Crestlloyd LLC* Date | |
| Seller | | Date | 2/12/2022 |
| Buyer | ┌─ DocuSigned by: | *1 / or Assignee* Date | |
| Buyer | │ | Date | |
| Buyer's Brokerage Firm *Douglas Elliman* | DRE Lic # **01947727** Date **02/06/2022** |
| By   *Sam Collins / Josh Altman.* | DRE Lic # **02057606 &** Date 2/13/2022 |
| *Sam Collins / Josh Altman* | |
| Seller's Brokerage Firm *Williams and Williams & Compass* | DRE Lic # **02126121/** Date |
| By | DRE Lic # **01774287/** Date |
| *Rayni Williams & Branden Williams / Aaron Kirman* | |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS REVISED 12/21 (PAGE 1 OF 1)**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-830BA935B94C

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## WIRE FRAUD AND ELECTRONIC FUNDS
## TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/21)

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602* _____ ("Property").

### WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant _____ *d / or Assignee* Date 2/12/2022
                        D024D98F59B0438...

Buyer/Tenant _____ Date _____

Seller/Landlord _____ *Crestlloyd LLC* Date _____

Seller/Landlord _____ Date _____

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/21 (PAGE 1 OF 1)**

EQUAL HOUSING
OPPORTUNITY

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

Douglas Elliman, 150 S. El Camino Drive Beverly Hills CA 90212         Phone: (310)595-3888      Fax:                    944 Airole Way
Sam Collins                 Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-830FAF9B5B7A

CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, 12/21)

Date Prepared: _February 6, 2022_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ ("Buyer").
   B. **THE PROPERTY** to be acquired is _____ **944 Airole Way** _____, situated in _**Los Angeles**_ (City), _**Los Angeles**_ (County), California, _**90077-2602**_ (Zip Code), Assessor's Parcel No(s). _**4369-026-021**_ ("Property").
      **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
      Seller's Brokerage Firm _**Williams and Williams & Compass**_ License Number 02126121/ 01915539
      Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
      Seller's Agent _**Rayni Williams & Branden Williams / Aaron Kirman**_ License Number 01774287/ 01496786
      Is (check one): [X] the Seller's Agent. (Salesperson or broker associate) [ ] both the Buyer's and Seller's Agent (Dual Agent).
      Buyer's Brokerage Firm _**Douglas Elliman**_ License Number _01947727_
      Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
      Buyer's Agent _**Sam Collins / Josh Altman**_ License Number 02057606 & 01764587
      Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate) [ ] both the Buyer's and Seller's Agent (Dual Agent).
   C. [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | Purchase Price | $ 160,000,000.00 | [X] All Cash |
| B | | Close of Escrow (COE) | [X] 30 Days after Acceptance OR on _____ (date) | |
| C | 32A | Expiration of Offer | 3 calendar days after all Buyer Signature(s) or *see Addendum No.1* _____ (date), at 5PM or _____ [ ] AM/ [ ] PM | |
| D(1) | 5A(1) | Initial Deposit Amount | $ 4,800,000.00 ( 3.0 % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR [ ] |
| D(2) | 5A(2) | [ ] Increased Deposit (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( _____% of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR [ ] _____ (date) OR [ ] |
| E(1) | 5C(1) | Loan Amount(s): First / Interest Rate / Points / If FHA or VA checked, Deliver list of lender required repairs | $ _____ ( _____% of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed ____% Buyer to pay zero points or up to _____% of the loan amount / 17 (or _____) Days after Acceptance | Conventional or, if checked, [ ] FHA [ ] VA (CAR Forms FVAC, HID attached) [ ] Seller Financing [ ] Other: |
| E(2) | 5C(2) | Additional Financed Amount / Interest Rate / Points | $ _____ ( _____% of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed ____% Buyer to pay zero points or up to _____% of the loan amount | Conventional or, if checked, [ ] Seller Financing [ ] Other: |
| E(3) | 7A | Occupancy Type | Primary, or if checked, [ ] Secondary [ ] Investment | |
| F | 5D | Balance of Down Payment | $ 155,200,000.00 | |
| | | **PURCHASE PRICE TOTAL** | $ 160,000,000.00 | |

© 2021, California Association of REALTORS®, Inc.

**RPA 12/21 (PAGE 1 OF 16)**    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83D1A986D179

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602*    Date: *February 6, 2022*

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | ☐ $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: |
| G(2) | | ADDITIONAL FINANCE TERMS: _____ | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | Intentionally Left Blank | | |
| J | 16 | Final Verification of Condition | 5 (or _____ ) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or _____ ) Days after Acceptance | |
| L | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or _____ ) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____ ) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or *21* ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property Buyer's right to access the Property for informational purposes is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | 17 (or *21* ) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR) and checking the applicable box therein.  Removal or Waiver at time of offer is against Agent advice. See paragraph 8H. |
| L(4) | 8D, 14A | Review of Seller Documents | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(5) | 8E, 13A | Preliminary ("Title") Report | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(6) | 8F, 11K | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | ☐ CR attached |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(8) | 8J | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ AM/☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | Seller Occupied or Vacant units | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | | Tenant Occupied units | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____ ) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____ ) Days after receipt | |
| N(3) | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or _____ ) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____ ) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | Intentionally Left Blank | | |

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    *944 Airole Way*

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-839149C9D0AD

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602*    Date: *February 6, 2022*

| P | Items Included and Excluded | |
|---|---|---|
| P(1) | 9 | **Items Included** - All items specified in Paragraph 9B are included and the following, if checked: |

Items Included:
- ☒ Stove(s), oven(s), stove/oven combo(s);
- ☒ Refrigerator(s);
- ☒ Wine Refrigerator(s);
- ☒ Washer(s);
- ☒ Dryer(s);
- ☒ Dishwasher(s);
- ☒ Microwave(s);

- ☒ Video doorbell(s);
- ☒ Security camera equipment;
- ☒ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
- ☒ Smart home control devices;
- ☒ Wall mounted brackets for video or audio equipment;

- ☒ Above-ground pool(s) / ☒ spa(s);
- ☐ Bathroom mirrors, unless excluded below;
- ☒ Electric car charging systems and stations;
- ☒ Potted trees/shrubs;

**Additional Items Included:**
☐ *See Addendum No.1* _____.

| P(2) | 9 | **Excluded Items:** |

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Paragraph #** | **Item Description** | **Who Pays (if Both is checked, cost to be split equally unless Otherwise Agreed)** | **Additional Terms** |
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____  ☐ Provided by: *MyNHD **Best Value*** | ☒ Environmental ☐ Other _____ |
| Q(2) | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(3) | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(5) | 10A 10B | Government Required Point of Sale **inspections, reports** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(6) | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(7) | 19B | Escrow Fees | ☐ Buyer ☐ Seller ☐ Both _____  ☒ Each to pay their own fees | Escrow Holder: *Seller's Choice* |
| Q(8) | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ | Title Company (if different from Escrow Holder): *Seller's Choice* |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(12) | 11K(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☒ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both  *if applicable* | |
| Q(16) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(18) | 10C | Home warranty plan: _____ | ☐ Buyer ☐ Seller ☐ Both _____  ☒ Buyer waives home warranty plan  Issued by: _____ | Cost not to exceed $ _____ |

| R | **OTHER TERMS:** *Not withstanding Paragraph 13 - TITLE AND VESTING. Buyer may assign this contract to any known entity.* |
|---|---|
| | _____ |
| | _____ |

**RPA 12/21 (PAGE 3 OF 16)**    Buyer's Initials _____ / _____    Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83D4A1E65D1A
Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*                    Date: *February 6, 2022*

**4. PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

   **A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Other _____

   **B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☒ Addendum # ____*1*____ (C.A.R. Form ADM)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)
- ☐ Other _____
- ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☐ Other _____

   **C. BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)
- ☒ Buyer's Inspection Advisory (C.A.R. Form BIA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)
- ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
(Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)
- ☐ Trust Advisory (C.A.R. Form TA)
- ☐ REO Advisory (C.A.R. Form REO)
- ☐ Other _____
- ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
- ☐ Probate Advisory (C.A.R. Form PA)
- ☒ Other *Market Conditions Advisory*

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

   **A. DEPOSIT:**

     (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

     (2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.

     (3) **RETENTION OF DEPOSIT:** Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

   **B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

   **C. LOAN(S):**

     (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1).**

     (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2).**

     (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

     (4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

   **D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

   **E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

   **A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B.**

   **B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval shall be based on the qualifying rate, not the initial loan rate.

**RPA 12/21 (PAGE 4 OF 16)**          Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83B4A885B195

Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*    Date: *February 6, 2022*

**C. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.

**B. CONDITION OF PROPERTY ON CLOSING:**

(1) Unless Otherwise Agreed: (i) the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

(2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**C. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed, (i) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; **(ii)** Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan; and (iii) consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.

**D. At Close Of Escrow:** (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale; and (ii) Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**E.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.

**D. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review of Seller's documents required in **paragraph 14A**.

RPA 12/21 (PAGE 5 OF 16)    Buyer's Initials [        ] _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83143365BE99

Property Address: 944 Airole Way, Los Angeles, CA 90077-2602                                Date: *February 6, 2022*

**E.  TITLE:**
    (1)  This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
    (2)  Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F.  CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11K** ("CI Disclosures").

**G.  BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H.  REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I.  REMOVAL OF CONTINGENCY OR CANCELLATION:**
    (1)  **For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
    (2)  For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L or 5 Days** after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
    (3)  If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J.  SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9.  ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A.  NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B.  ITEMS INCLUDED IN SALE:**
    (1)  All EXISTING fixtures and fittings that are attached to the Property;
    (2)  EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P**, if currently existing at the time of Acceptance. **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.
    (3)  Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
    (4)  Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
    (5)  Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.
    (6)  **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.
    (7)  Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

RPA 12/21 (PAGE 6 OF 16)    Buyer's Initials [    ]    Seller's Initials [    /    ]

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83A4036A4C9B

Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*    Date: *February 6, 2022*

**C.** **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; **(ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A.** **INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs 3Q(1), (2), (3), and (5) only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report.** Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).

**B.** **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

**(1)** **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

**(2)** **POINT OF SALE REQUIREMENTS:**

**(A)** Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

**(B)** Buyer shall be provided, within the time specified in **paragraph 3N(1),** unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**(3)** **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

**(4)** **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C.** **HOME WARRANTY:**

**(1)** Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

**(2)** **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A.** **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

**(1)** Seller shall, within the time specified in **paragraph 3N(1),** Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

**(2)** The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

**(3)** Seller shall, within the time specified in **paragraph 3N(1),** provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

**(4)** In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

RPA 12/21 (PAGE 7 OF 16)    Buyer's Initials _____ _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83D9E05D6982

Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*    Date: *February 6, 2022*

**B. LEAD DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
    (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs 11 A, B, C or D, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
    (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs 11A, B, C, or D, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
    (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
    (2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

RPA 12/21 (PAGE 8 OF 16)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83E4CAF65B2B

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602*                                    Date: *February 6, 2022*

**M.** **KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:

(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

(A) A general home inspection.

(B) An inspection for lead-based paint and other lead-based paint hazards.

(C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

(D) Any other specific inspections of the physical condition of the land and improvements.

(2) All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Inspection Advisory (C.A.R. Form BIA) for more.

(3) A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to **paragraphs 3, 10, 11, and 14A.**

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling though stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3) or 3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E.** **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction.  Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. **THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.**

RPA 12/21 (PAGE 9 OF 16)                    Buyer's Initials _____ _____            Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83E9366DCA5F
Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*                                        Date: *February 6, 2022*

G. Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 13A, and 13D.**

B. **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**
   (1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11.**
   (2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.
   (3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A** or **11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G.**
   (4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 14C(1).**

C. **SELLER RIGHT TO CANCEL:**
   (1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   (2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3); (iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A; (v)** Deliver a letter as required by **paragraph 6B; (vi)** In writing assume or accept leases or liens specified in **paragraph 8G; (vii)** Return Statutory and Other Disclosures as required by **paragraph 11F; (viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E; (ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2)** and **29; (x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28;** or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.
   (3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

D. **BUYER RIGHT TO CANCEL:**
   (1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.
   (2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.
   (3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

RPA 12/21 (PAGE 10 OF 16)          Buyer's Initials _____ _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-835DBAB5D83A

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602*    Date: *February 6, 2022*

E.   **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F.   **EFFECT OF REMOVAL OF CONTINGENCIES:**

(1)   **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

(2)   **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

G.   **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H.   **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15.  **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16.  **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B;** **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17.  **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18.  **BROKERS AND AGENTS:**

A.   **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

B.   **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

RPA 12/21 (PAGE 11 OF 16)    Buyer's Initials _____ _____    Seller's Initials _____ /_____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83914A8E5D92

Property Address: *944 Airole Way, Los Angeles, CA  90077-2602*                                                    Date: *February 6, 2022*

**19.  JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   **A.**  **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A or paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

   **B.**  Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

   **C.**  A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

   **D.**  Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

   **E.**  Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

   **F.**  Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

   **G.**  A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20.  SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21.  MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22.  ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23.  ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

**24.  EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25.  DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

   **A.**  **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

RPA 12/21 (PAGE 12 OF 16)                  Buyer's Initials _____ _____         Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83D446EBB95A

Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*                                    Date: *February 6, 2022*

B.  **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**

C.  **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

D.  **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

E.  **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

F.  **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

G.  **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

H.  **"Copy"** means copy by any means including photocopy, facsimile and electronic.

I.  **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

J.  **"Day" or "Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

K.  **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

L.  **"Electronic Copy"** or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M.  **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N.  **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

O.  **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

P.  **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

Q.  **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

27. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

28. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

Buyer's Initials ____/____          Seller's Initials ____/____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-839A4A356D09
Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*                                Date: *February 6, 2022*

**29. LIQUIDATED DAMAGES (By initialing in the space below, you are agreeing to Liquidated Damages):**
If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).

Buyer's Initials _____ / _____                       Seller's Initials _____ / _____

**30. MEDIATION:**
A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
B. **ADDITIONAL MEDIATION TERMS: (i)** Exclusions from this mediation agreement are specified in paragraph 31B; **(ii)** The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and **(iii)** Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

**31. ARBITRATION OF DISPUTES:**
A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR ☐ _____. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
B. **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
C. **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
D. **AGENTS:** Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
E. **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____                       Seller's Initials _____ / _____

RPA 12/21 (PAGE 14 OF 16)          Buyer's Initials _____ / _____   Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com          944 Airole Way



DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-830D1305D6EA
Property Address: *944 Airole Way, Los Angeles, CA 90077-2602*                                    Date: *February 6, 2022*

**32. BUYER'S OFFER**

**A.  EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B.  ☐ ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1)  One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

(3)  The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

(4)  If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.**  The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D.  BUYER SIGNATURE(S):**

(Signature) By, _____                        DocuSigned by:                                    _____ Date: 2/12/2022

Printed name of BUYER: _____

☐ Printed Name of Legally Authorized Signer: _____           Title, if applicable, _____

(Signature) By, _____          _____ Date: _____

Printed name of BUYER: _____

☐ Printed name of Legally Authorized Signer: _____           Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

**A.  ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

☐ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)

☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

**B.  ☐ Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1)  One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

(3)  The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

(4)  If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.**  The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D.  SELLER SIGNATURE(S):**

(Signature) By, _____          _____ Date: _____

Printed name of SELLER: *Crestlloyd LLC*

☐ Printed Name of Legally Authorized Signer: _____           Title, if applicable, _____

(Signature) By, _____          _____ Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____           Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

| OFFER NOT ACCEPTED: _____/_____  No Counter Offer is being made. This offer was not accepted by Seller _____ (date) |
| Seller's Initials |

---

**RPA 12/21 (PAGE 15 OF 16)**          Buyer's Initials [DS] _____          Seller's Initials _____/_____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83E96950D50E
Property Address: *944 Airole Way, Los Angeles, CA  90077-2602*                                    Date: *February 6, 2022*

---

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm *Douglas Elliman* _____ Lic. # *01947727* _____
      By _____ *Sam Collins / Josh Altman* Collins / Josh Altman Lic. # *02057606 & 01764587* Date *2/13/2022*
      By _____56C7198D7A924E9... _____ Lic. # _____ Date _____
      ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es):**
      Email _____ Text # _____
      Alternate: _____
      ☐ If checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address *150 S. El Camino Drive* _____ City *Beverly Hills* _____ State *CA* _____ Zip *90212*

   B. Seller's Brokerage Firm *Williams and Williams & Compass* _____ Lic. # *02126121/ 01915539* ____
      By _____ *Rayni Williams & Branden Williams* / Lic. # *01774287/ 01496786* Date _____
      By _____ *Aaron Kirman* Lic. # *01296524* Date _____
      ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent):**
      Email _____ Text # _____
      Alternate: _____
      ☐ If checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address _____ City _____ State _____ Zip _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder *Seller's Choice* _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
                                     Agent or Seller Initials

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RPA 12/21 (PAGE 16 OF 16)**    Buyer's Initials ____ ____    Seller's Initials ____ / ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83E2A435BAF8

CALIFORNIA
ASSOCIATION
OF REALTORS®

# BUYER'S INVESTIGATION ADVISORY
### (C.A.R. Form BIA, Revised 12/21)

**Property Address** *944 Airole Way, Los Angeles, CA  90077-2602*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.
   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.
   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.
   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.
   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).
   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.
   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.
   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.
   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.
   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**

### BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)

…

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83E5FB14E5D1

L. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____  / or Assignee Date 2/12/2022 _____

Buyer _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**BIA REVISED 12/21 (PAGE 2 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83D4185D0CD9



## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/21)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, "opt out" or stop the transfer of your PI to others, and the right to request that the business delete your PI entirely. You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Also, even businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

DocuSigned by:

Buyer/Seller/Landlord/Tenant _____ Date 2/12/2022 _____

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/21 (PAGE 1 OF 1)**

Douglas Elliman, 150 S. El Camino Drive Beverly Hills CA 90212                                Phone: (310)595-3888      Fax:                    944 Airole Way
Sam Collins                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-839FA385D0AD



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## ADDENDUM No. *1*

**(C.A.R. Form ADM, Revised 12/21)**

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____

dated *February 6, 2022* _____ on property known as _____ *944 Airole Way* ("Property/Premises"),

in which _____ is referred to as ("Buyer/Tenant")

and _____ *Crestlloyd LLC* _____ is referred to as ("Seller/Landlord").

Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

*1. The following items are included in the purchase of the property - All indoor/outdoor appliances, built-in or not (e.g. all refrigerators/wine refrigerators/all dishwashers/all washer/dryers); all flat screen TVs, audio/video equipment and components, all media room furniture, equipment and components, all telephone equipment and components, all security system equipment and components, all outdoor furniture, all outdoor heaters, all potted plants, all fountains, all bathroom mirrors, all fireplace screens (freestanding and otherwise), gas cocks and andirons.*

*2. Buyer is purchasing the property As-Is, Where-Is, and is fully aware and is of the understanding that the property does not yet have a Certificate of Occupancy, provided from the City of Los Angeles. Buyer also understands and acknowledges that it will be Buyers sole and full responsibility to obtain the Certificate of Occupancy from the City of Los Angeles, along with any associated documents / paperwork needed to reach the required outcome and at Buyers sole cost.*

*3. Buyer is aware that Sale is subject to Final Court Confirmation.*

*4. This expiration of this offer will be 7 (Seven) Days after the conclusion of Concierge Auctions proposed auction sale of the property (2/28/2022 - 3/5/2022)*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

┌─DocuSigned by:

Buyer/Tenant _____ Date 2/12/2022

Buyer/Tenant _____ Date _____

Seller/Landlord _____ Date _____

*Crestlloyd LLC*

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/21 (PAGE 1 OF 1)**



## ADDENDUM (ADM PAGE 1 OF 1)

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83FE4425B2A5



**CALIFORNIA ASSOCIATION OF REALTORS®**

## REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE
### (FOR BUYER REPRESENTATIVES)
#### (C.A.R. Form RCSD-B, Revised 12/21)

This form is not an assignment. It should not be used to add new parties after a contract has been formed. The purpose of this form is to identify who the principal is in the transaction and who has authority to sign documents on behalf of the principal.

☐ The disclosure in this form supersedes any Legally Authorized Signer representation or Representative Capacity Signature Disclosure made in the Agreement specified below or on separate form.
This is a disclosure to the Purchase Agreement, OR ☐ Buyer Representation Agreement, ☐ Assignment of Agreement Addendum, ☐ Other _____ ("Agreement"),
dated _02/06/2022_, for the property known as _____ ("Property"),
between _____ _Cres_ _____ ("Seller", ☐ Broker, ☐ Assignor/Buyer)
and _____ ("Buyer").
Buyer and Seller are referred to as the "Parties". If a trust, in the blank line above identify Buyer as the trustee(s) of the trust or by simplified trust name (e.g. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust 3.). Full name of trust should be identified in 1A below. If power of attorney, insert principal's name as Buyer.

1. **A.** ☒ **TRUST:** (1) Assets used to acquire/lease the Property are held in trust pursuant to a trust document titled (Name of trust: _____
_____
   (2) The person(s) signing below is/are Sole/Co/Successor Trustee(s) of the Trust.
   **B.** ☐ **ENTITY:** Buyer is a ☐ Corporation, ☐ Limited Liability Company, ☐ Partnership ☐ Other: _____
   which has authorized the officer(s), managing member(s), partner(s) or person(s) signing below to act on its behalf. An authorizing resolution of the applicable body of the entity described above ☐ is ☐ is not attached.
   **C.** ☐ **POWER OF ATTORNEY:** Buyer ("Principal") has authorized the person(s) signing below ("Attorney-In-Fact", "Power of Attorney" or "POA") to act on his/her behalf pursuant to a General Attorney (Specific Power of Attorney for the Property), dated _____ . This form is not a Power of Attorney. A Power of Attorney must have already been executed before this form is used.
   **D.** ☐ **ESTATE:** (1) Buyer is an ☐ conservatorship, or ☐ guardianship identified by Superior Court Case name as _____ , Case # _____
   (2) The person(s) signing below is/are court approved representatives (whether designated as Sole or Co-Executor, Administrator, Conservator, Guardian) of the estate, conservatorship or guardianship identified above.

2. Buyer's Representative represents that the trust, entity or power of attorney for which that Party is acting already exists.

**Buyer:**
By _____ ┌ DocuSigned by:│ _____ Date: _2/12/2022_
                            └ U024D88F59B043B...
(Sign Name of Trustee, Officer, Managing Member, Partner, or Attorney-in-Fact)
(Print Representative Name) _____ Title: _Beneficiary_

By _____ Date: _____
(Sign Name of Trustee, Officer, Managing Member, Partner, or Attorney-in-Fact)
(Print Representative Name) _____ Title: _____

**Acknowledgement of Receipt By Other Party:**

| AT TIME OF SALE |
|---|
| Buyer and _____ _Crestlloyd LLC,_ _____ ("Seller") are parties to a |
| Purchase Agreement dated _02/06/2022_ for property known as _____ . |
| Seller _____ Date _____ |
| Seller _____ Date _____ |

© 2021, California Association of REALTORS®, Inc.

**RCSD-B REVISED 12/21 (PAGE 1 OF 2)**

**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD-B PAGE 1 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83B4A035DB2B

**AT TIME OF BUYER REPRESENTATION AGREEMENT**

Buyer and _____ *Douglas Elliman* _____ ("Buyer's Broker") are
parties to a Buyer Representation Agreement dated _____ *02/06/2022* _____.

Real Estate Broker *Douglas Elliman* _____

By _____ Date 2/13/2022
*Sam Collins / Josh Altman*

---

**AT TIME OF ASSIGNMENT OF AGREEMENT**

Buyer and _____, the originally named buyer ("Assignor")
are parties to an Assignment of Agreement Addendum dated _____.
Assignor and _____ ("Seller") are parties to a Purchase Agreement or
☐ Other: _____, which is being assigned to Buyer.
Assignor _____
By _____ Date _____

Seller _____
By _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RCSD-B REVISED 12/21 (PAGE 2 OF 2)**



**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD-B PAGE 2 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83...



CALIFORNIA
ASSOCIATION
OF REALTORS®

## STATEWIDE BUYER AND SELLER ADVISORY
**(This Form Does Not Replace Local Condition Disclosures.**
**Additional Advisories or Disclosures May Be Attached)**
**(C.A.R. Form SBSA, Revised 6/21)**

### BUYER RIGHTS AND DUTIES:

- The physical condition of the land and improvements being purchased are not guaranteed by Seller or Brokers.
- You should conduct thorough investigations of the Property both personally and with appropriate professionals.
- If professionals recommend further inspections, you should contact qualified experts to conduct such inspections.
- You should retain your own professional even if Seller or Broker has provided you with existing reports.
- You should read all written reports given to you and discuss those reports with the persons who prepared them. It is possible that different reports provided to you contain conflicting information. If there are discrepancies between reports, disclosures or other information, you are responsible for contacting appropriate professionals to confirm the accuracy of correctness of the reports, disclosures or information.
- You have the right to request that the Seller make repairs or corrections or take other actions based on inspections or disclosures, but the Seller is not obligated to respond to you or make any such repairs, corrections or other requested actions.
- If the Seller is unwilling or unable to satisfy your requests, and you act within certain time periods, you may have the right to cancel the Agreement (the Purchase Agreement and any Counter Offer and Addenda together are the "Agreement"). If you cancel outside of these periods, you may be in breach of the Agreement and your deposit might be at risk.
- You are advised to seek legal, tax, and other assistance from appropriate professionals in order to fully understand the implications of any documents or actions during the transaction. If you are doing a 1031 exchange, you are advised to contact an exchange accommodator to discuss the proper method and timing of the exchange.
- The terms of the Agreement and any counter offers and addenda establish your rights and responsibilities.

**YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

### SELLER RIGHTS AND DUTIES:

- You have a duty to disclose material facts known to you that affect the value or desirability of the Property.
- You are obligated to make the Property available to the Buyer and have utilities on for inspections as allowed by the Agreement.
- This form is not a substitute for completing a Real Estate Transfer Disclosure Statement, if required, and any other property-specific questionnaires or disclosures.
- The terms of the Agreement establish your rights and responsibilities.
- You are advised to seek legal, tax, and other assistance from appropriate professionals in order to fully understand the implications of any documents or actions during the transaction. If you are doing a 1031 exchange, you are advised to contact an exchange accommodator to discuss the proper method and timing of the exchange.

### BROKER RIGHTS AND DUTIES:

- Brokers do not have expertise in all areas and matters affecting the Property or your evaluation of it.
- For most sales of residential properties with no more than four units, Brokers have a duty to make a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose to you material facts or defects that the inspection reveals.
- Many defects and conditions may not be discoverable by a Broker's visual inspection.
- If Brokers give a referral to another professional, Brokers do not guarantee that person's performance. You may select any professional of your own choosing.
- If a Broker gives you reports or other documents, unless otherwise specified, it is possible that different reports provided to you contain conflicting information. Broker has not and will not verify or otherwise investigate the information contained therein.
- Any written agreement between a Broker and either Buyer or Seller or both establishes the rights and responsibilities of those parties.

©2021, California Association of REALTORS®, Inc.



**SBSA REVISED 6/21 (PAGE 1 OF 14)**

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 1 OF 14)**

# TABLE OF CONTENTS

| SBSA CATEGORIES AND ALPHABETICAL INDEX | | | | | | |
|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G |
| Investigation of Physical Condition | Property Use and Ownership | Off-Site and Neighborhood Conditions | Legal Requirements (Federal, State and Local) | Contract Related Issues and Terms | Other Factors Affecting Property | Local Disclosures and Advisories |
| Pages 2-5 | Pages 5-8 | Pages 8-10 | Pages 10-11 | Pages 11-12 | Pages 12-14 | Page 14 |

Page

1. Accessory Dwelling Units .............................................. 5
2. Arbitration .................................................................. 11
3. Building Permits, Zoning and Code Compliance................. 5
4. Buyer Intended Future Use ............................................ 5
5. California Fair Plan ...................................................... 6
6. Community Enhancement and Private Transfer Fees ....... 12
7. Death on the Property ................................................ 10
8. Earthquake Fault Zones and Seismic Hazard Zones ...... 10
9. Easements, Access and Encroachments ......................... 2
10. Electronic Signatures ................................................. 11
11. Environmental Hazards ................................................ 2
12. EPA's Lead-Based Paint Renovation, Repair and
    Painting Rule ........................................................... 10
13. Escrow Funds ........................................................... 11
14. Fire Hardening, Defensible Space, and Wildfire Disasters ..5
15. Fire Hazards ............................................................. 10
16. FIRPTA/California Withholding ...................................... 10
17. Flood Hazards ........................................................... 10
18. Formaldehyde ............................................................. 3
19. Future Repairs, Replacements and Remodels .................. 6
20. General Recall/Defective Product/Class Action
    Information .............................................................. 12
21. Geologic Hazards ........................................................ 3
22. Golf Course Disclosures ............................................... 8
23. Heating Ventilating and Air Conditioning Systems ............ 6
24. Historical Designation, Coastal Commission,
    Architectural, Landscape, Agricultural or Open Space and
    other Restrictions on Buildings or Improvement .................. 6
25. Homeowner Associations and Covenants, Conditions
    and Restrictions ("CC&Rs"); Charging Stations;
    FHA/VA Approval ...................................................... 13
26. Home Warranty ......................................................... 11
27. Identification of Natural Persons Behind Shell
    Companies in All-Cash Transactions ............................ 12
28. Inspections ................................................................. 5
29. Insurance, Title Insurance and Title Insurance After
    Foreclosure ................................................................ 6
30. Land Lease ................................................................. 7
31. Legal Action .............................................................. 13
32. Liquidated Damages .................................................... 12

33. Marijuana and Methamphetamine Labs ............................... 7
34. Marketing; Internet Advertising; Internet Blogs; Social
    Media ...................................................................... 13
35. Mediation .................................................................. 12
36. Megan's Law Database Disclosure .................................. 10
37. Mold ......................................................................... 3
38. Neighborhood, Area, Personal Factors, Buyer Intended
    Use, High Speed Rails, and Smoking Restrictions .............. 9
39. Neighborhood Noise Sources ......................................... 9
40. 1915 Improvement Bond Mello-Roos Community District,
    and Other Assessment Districts .................................... 8
41. Non-Confidentiality of Offers ....................................... 12
42. Notice of Your Supplemental Property Tax Bill ................ 11
43. Online or Wire Funds Transfers .................................... 12
44. Owner's Title Insurance ................................................ 7
45. PACE Loans and Liens ................................................ 13
46. Pets and Animals ........................................................ 4
47. Property Tax Bill Supplemental Notice; Accurate Sales
    Price Reporting ......................................................... 10
48. Recording Devices ...................................................... 14
49. Re-Keying ................................................................. 14
50. Rent and Eviction Control Laws and Ordinances ............... 7
51. Retrofit, Building Requirements, and Point of Sale
    Requirements ............................................................. 7
52. Schools ..................................................................... 9
53. Sea Level Rise ............................................................ 9
54. Septic Systems ........................................................... 4
55. Short Term Rentals and Restrictions .............................. 8
56. Soil and Geologic Conditions ......................................... 4
57. Solar Panel Leases ..................................................... 14
58. Square Footage, Lot Size, Boundaries and Surveys ............ 4
59. Swimming Pool, Security and Safety .............................. 8
60. Underground Pipelines and Utilities ............................... 9
61. Views ........................................................................ 8
62. Water Intrusion ........................................................... 4
63. Water Shortages and Conservation ................................ 8
64. Well and Water System(s) ............................................. 4
65. Wildlife ..................................................................... 9
66. Wood Destroying Pests ................................................ 5
67. Zone Maps May Change ............................................... 11

# A. Investigation of Physical Conditions

1. **EASEMENTS, ACCESS AND ENCROACHMENTS:** Buyer and Seller are advised that confirming the exact location of easements, shared or private driveways or roadways, and encroachments on or to the Property may be possible only by conducting a survey. There may be unrecorded easements, access rights, encroachments and other agreements affecting the Property that may not be disclosed by a survey. Representations regarding these items that are made in a Multiple Listing Service or advertisements, or plotted by a title company are often approximations, or based upon inaccurate or incomplete records. Unless otherwise specified by Broker in writing, Brokers have not verified any such matters or any representations made by Seller(s) or others. If Buyer wants further information, Buyer is advised and Broker(s) recommend that Buyer hire a licensed surveyor during Buyer's inspection contingency period. Brokers do not have expertise in this area.

2. **ENVIRONMENTAL HAZARDS:** Buyer and Seller are advised that the presence of certain kinds of organisms, toxins and contaminants, including, but not limited to, mold (airborne, toxic or otherwise), fungi, mildew, lead-based paint and other lead contamination, asbestos, formaldehyde, radon, pcb's, methane, other gases, fuel oil or chemical storage

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 2 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    944 Airole Way



tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, urea formaldehyde, or other materials may adversely affect the Property and the health of individuals who live on or work at the property as well as pets. Some municipalities may impose additional requirements regarding underground storage tanks, which may be more common in certain areas and cities throughout the State, especially where there are larger, older homes built before 1935. It is possible that these tanks, either now or in the future, may require inspections or abatement. If Buyer wants further information, Buyer is advised, and Broker(s) recommends, that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Buyer is also advised to consult with appropriate experts regarding this topic during Buyer's inspection contingency period. Broker recommends that Buyer and Seller read the booklets titled, "Residential Environmental Hazards: A Guide for Homeowners, Homebuyers, Landlords and Tenants," and "Protect Your Family From Lead In Your Home." Brokers do not have expertise in this area.

3.  **FORMALDEHYDE:** Formaldehyde is a substance known to the State of California to cause cancer. Exposure to formaldehyde may be caused by materials used in the construction of homes. The United States Environmental Protection Agency, the California Air Resources Board, and other agencies have measured the presence of formaldehyde in the indoor air of select homes in California. Levels of formaldehyde that present a significant cancer risk have been measured in most homes that were tested. Formaldehyde is present in the air because it is emitted by a variety of building materials and home products used in construction. The materials include carpeting, pressed wood products, insulation, plastics, and glues. Most homes that have been tested elsewhere do contain formaldehyde, although the concentrations vary from home to home with no obvious explanation for the differences. One of the problems is that many suppliers of building materials and home products do not provide information on chemical ingredients to builders. Buyers may have further questions about these issues. Buyer is advised to consult with appropriate experts regarding this topic during Buyer's inspection contingency period. Broker(s) recommend that Buyer and Seller read the booklet titled "Residential Environmental Hazards: A Guide for Homeowners, Homebuyers, Landlords and Tenants." Brokers do not have expertise in this area.

4.  **GEOLOGIC HAZARDS:** Buyer and Seller are advised that California has experienced earthquakes in the past, and there is always a potential of future earthquakes. Damage caused by an earthquake may not be discoverable by a visual inspection of Buyer(s) or Broker(s). Inspection by a licensed, qualified professional is strongly recommended to determine the structural integrity and safety of all structures and improvements on the Property. If the Property is a condominium, or located in a planned unit development or in a common interest subdivision, Buyer is advised to contact the homeowners association about earthquake repairs and retrofit work and the possibility of an increased or special assessment to defray the costs of earthquake repairs or retrofit work. Buyer is encouraged to obtain and read the booklet entitled, "The Homeowner's Guide to Earthquake Safety." In most cases a questionnaire within the booklet must be completed by Seller and the entire booklet given to the Buyer if the Property was built prior to 1960. If the Property was built before 1975, and contains structures constructed of masonry or precast (tilt up) concrete walls, with wood frame floors or roof, or if the building has unreinforced masonry walls, then Seller must provide Buyer a pamphlet entitled "The Commercial Property Owner's Guide to Earthquake Safety." Many areas have a wide range of geologic problems and numerous studies have been made of these conditions. Some of this information is available for public review at city and county planning departments. Buyer is encouraged to review the public maps and reports and/or obtain a geologist's inspection report. Buyer may be able to obtain earthquake insurance to protect their interest in the Property. Sellers who agree to provide financing should also consider requiring Buyers to obtain such insurance naming Seller(s) as insured lien holder(s). Brokers do not have expertise in this area.

5.  **INSPECTIONS:** Buyer and Seller are advised that Buyer has the right to obtain various inspections of the Property under most residential purchase agreements. Buyer is advised to have the Property inspected by a professional property inspection service within Buyer's inspection contingency period. A licensed building contractor or other professional may perform these services. The inspector generally does not look behind walls or under carpets, or take equipment apart. Certain items on the Property, such as chimneys and spark arresters, plumbing, heating, air conditioning, electrical wiring, pool and spa, septic system, well, roof, foundation and structural items may need to be inspected by another professional, such as a chimney sweep, plumber, electrician, pool and spa service, septic or well company or roofer. A general physical inspection typically will not test for mold, wood destroying pests, lead-based paint, radon, asbestos and other environmental hazards, geologic conditions, age, remaining useful life or water-tightness of roof, cracks, leaks or operational problems associated with a pool or spa or connection of the Property to a sewer system. If Buyer wants further information on any aspect of the Property, Broker recommends that Buyer have a discussion with the professional property inspector and that Buyer hire an appropriate professional for the area of concern to Buyer. Brokers do not verify the results of any such inspection or guarantee the performance of any such inspector or service. Any election by Buyer to waive the right to a physical inspection of the Property or to rely on somebody other than an appropriate professional is against the advice of Brokers. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Brokers do not have expertise in these area.

6.  **MOLD:** Buyer and Seller are advised that the presence of certain kinds of mold, fungi, mildew and other organisms, sometimes referred to as "toxic mold" (collectively "Mold"), may adversely affect the Property and the health of individuals who live on or work at the Property as well as pets. Mold does not affect all people the same way, and may not affect some people at all. Mold may be caused by water leaks or other sources of moisture such as, but not limited to, flooding, and leaks in windows, pipes and roof. Seller is advised to disclose the existence of any such conditions of which he or she is aware. Buyer should carefully review all of Seller's disclosures for any indication that any of these conditions exist. It is, however, possible that Mold may be hidden and that Seller is completely unaware of its

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83945B6E88AE

existence. In addition, Mold is often undetectable from a visual inspection, a professional general property inspection and even a structural pest control inspection. Brokers do not have expertise in this area. If Buyer wants further information, Broker recommends that Buyer have the Property tested for Mold by an environmental hygienist or other appropriate professional during Buyer's inspection contingency period. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Brokers do not have expertise in this area.

7.  **PETS AND ANIMALS:** Buyer and Seller are advised that the current or previous owner(s) may have had domesticated or other pets and animals at the Property. Odors from animal urine or other contamination may be dormant for long periods of time and then become active because of heat, humidity or other factors and might not be eliminated by cleaning or replacing carpets or other cleaning methods. Pet urine and feces can also damage hardwood floors and other floor coverings. Additionally, an animal may have had fleas, ticks and other pests that remain on the Property after the animal has been removed. If Buyer wants further information, Broker(s) recommend that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

8.  **SEPTIC SYSTEMS:** Buyer and Seller are advised that a property may be served by one or more septic systems even though adjoining properties are connected to a sewer line. Buyer and Seller are also advised that some septic tanks and systems may have been abandoned or have leaked into ground water sources. Buyer is advised to contact the appropriate government agency to verify that the Property is connected to a sewer or served by a septic system. If the Property is served by a septic system, it may consist of a septic tank, cesspool, pits, leach lines or a combination of such mechanisms ("collectively, System"). No representation or warranty is made by Seller or Broker concerning the condition, operability, size, capacity or future expansion of a System, nor whether a System is adequate for use by the intended occupants of the Property. A change in the number of occupants or the quantity, composition or methods of depositing waste may affect the efficiency of the System. In addition, the amount of rainfall and ground water table may also affect the efficiency of the System. Many factors including, but not limited to, natural forces, age, deterioration of materials and the load imposed on a System can cause the System to fail at any time. Broker recommends that Buyer obtain an independent evaluation of any System by a qualified sanitation professional during Buyer's inspection contingency period. Buyer should consult with their sanitation professional to determine if their report includes the tank only, or other additional components of the System such as pits and leach fields. Not all inspectors are licensed and licenses are not available for all types of inspection activities. In some cases, Buyer's lender as well as local government agencies may require System inspection. System-related maintenance costs may include, but not be limited to, locating, pumping or providing outlets to ground level. Brokers are unable to advise Buyer or Seller regarding System-related issues or associated costs, which may be significant. If Buyer and Seller agree to obtain a System inspection, Buyer and Seller are cautioned that the inspection cost may include, but not be limited to, the costs of locating, pumping or providing outlets to ground level. Brokers do not have expertise in this area.

9.  **SOIL AND GEOLOGIC CONDITIONS:** Buyer and Seller are advised that real estate in California is subject to settling, slippage, contraction, expansion erosion, subsidence, earthquakes and other land movement. The Property may be constructed on fill or improperly compacted soil and may have inadequate drainage capability. Any of these matters can cause structural problems to improvements on the Property. Civil or geo-technical engineers are best suited to evaluate soil stability, grading, drainage and other soil conditions. Additionally, the Property may contain known or unknown mines, mills, caves or wells. If Buyer wants further information, Broker recommends that Buyer hire an appropriate professional. Not all inspectors are licensed and licenses are not available for all types of inspections. Brokers do not have expertise in this area.

10. **SQUARE FOOTAGE, LOT SIZE, BOUNDARIES AND SURVEYS:** Buyer and Seller are advised that only an appraiser or land surveyor, as applicable, can reliably confirm square footage, lot size, Property corners and exact boundaries of the Property. Representations regarding these items that are made in a Multiple Listing Service, advertisements, and from property tax assessor records are often approximations, or based upon inaccurate or incomplete records. Fences, hedges, walls or other barriers may not represent actual boundary lines. Unless otherwise specified by Broker in writing, Brokers have not verified any such boundary lines or any representations made by Seller or others concerning square footage, lot size, Property corners or exact boundaries. Standard title insurance does not insure the boundaries of the Property. If the exact square footage or lot size or location of Property corners or boundaries is an important consideration in Buyer's decision to purchase the Property and/or how much Buyer is willing to pay for the Property, then Buyer must independently conduct Buyer's own investigation through appropriate professionals, appraisers, or licensed surveyors and rely solely on their data, recognizing that all measurements may not be consistent and that different sources may have different size assessments. Brokers do not have expertise in this area.

11. **WATER INTRUSION:** Buyer and Seller are advised that many homes suffer from water intrusion or leakage. The causes of water intrusion are varied, and can include defective construction, faulty grading, deterioration of building materials and absence of waterproof barriers. Water intrusion can cause serious damage to the Property. This damage can consist of wood rot, mold, mildew and even damage to the structural integrity of the Property. The cost of repairing and remediating water intrusion damage and its causes can be very significant. The existence and cause of water intrusion is often difficult to detect. Because you, your Broker or a general home inspector cannot visually observe any effects of water intrusion, Buyer and Seller should not assume that such intrusion does not exist. Broker recommends that Buyer have the Property inspected for water intrusion by an appropriate professional. Brokers do not have expertise in this area.

12. **WELL AND WATER SYSTEM(S):** Buyer and Seller are advised that the Property may be served by one or more water wells, springs, or private community or public water systems. Any of these private or public water systems may contain

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 4 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way


EQUAL HOUSING
OPPORTUNITY

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83441E567AD6

bacteria, chemicals, minerals and metals, such as chromium. Well(s) may have been abandoned on the Property. Buyer is advised to have both the quality and the quantity of water evaluated, and to obtain an analysis of the quality of any domestic and agricultural water in use, or to be used at the Property, from whatever source. Water quality tests can include not only tests for bacteria, such as coliform, but also tests for organic and inorganic chemicals, metals, mineral content and gross alpha testing for radioactivity. Broker recommends that Buyer consult with a licensed, qualified well and pump company and local government agency to determine whether any well/spring or water system will adequately serve Buyer's intended use and that Buyer have a well consultant perform an extended well output test for this purpose. Water well or spring capacity, quantity output and quality may change at any time. There are no guarantees as to the future water quality, quantity or duration of any well or spring. If Buyer wants further information, Broker(s) recommend that Buyer obtain an inspection of the condition, age, adequacy and performance of all components of the well/spring and any water system during Buyer's inspection contingency period. Brokers do not have expertise in this area.

13. **WOOD DESTROYING PESTS:** Buyer and Seller are advised that the presence of, or conditions likely to lead to the presence of infestation or infection of wood destroying pests and organisms may adversely affect the Property. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. If Buyer wants further information, Buyer is advised and Broker recommends that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation, by a registered structural pest control company during Buyer's inspection contingency period. Brokers do not have expertise in this area.

14. **FIRE HARDENING, DEFENSIBLE SPACE, AND WILDFIRE DISASTERS:** California is subject to wildfires which have resulted in damage and destruction of many properties located in the state. Several recent state laws have mandated disclosures by sellers when selling properties in certain identified zones, such as "high" or "very high" fire severity zones. Additionally, state law mandates that sellers provide buyers with statements of compliance with local mandates if adopted by local agencies. The Property may be located in a high or very high fire severity zone. This may impact the availability of insurance and the ability to build or rebuild structures on the Property. Additionally, there may be requirements that certain fire prevention steps may be mandated. Information on fire hardening, including current building standards and information on minimum annual vegetation management standards to protect homes from wildfires, can be obtained on the internet website http://www.readyforwildfire.org.
Cal Fire has made available a "Fire Hazard Severity Zone Viewer" where you can input the Property address to determine which fire hazard zone, if any, that the Property is located in. The viewer is available at https://egis.fire.ca.gov/FHSZ/. Below is a partial list of potential resources provided as a starting point for Buyer/Lessee investigations and not as an endorsement or guarantee that any federal, state, county, city or other resource will provide complete advice.
   A. California Department of Insurance "Wildfire Resource" http://insurance.ca.gov/01-consumers/140-catastrophes/WildfireResources.cfm; 1-800-927-4357
   B. Governor's Office of Emergency Services "Cal OES" California Wildfires Statewide Recovery Resources http://wildfirerecovery.org/
   C. California Department of Forestry and Fire "Cal Fire" http://fire.ca.gov/ and https://www.readyforwildfire.org/
   D. California Department of Transportation https://calsta.ca.gov/
   E. California Attorney General https://oag.ca.gov/consumers/pricegougingduringdisasters#8C1

**Brokers do not have expertise in this area.**

# B. Property Use and Ownership

1. **ACCESSORY DWELLING UNITS:** Accessory Dwelling Units (ADUs) are known by many names: granny flats, in-law units, backyard cottages, secondary units and more. California has passed laws to promote the development of ADUs. Additional information about ADUs can be found at http://hcd.ca.gov/policy-research/AccessoryDwellingUnits.shtml. Buyer is advised to check with appropriate government agencies or third party professionals to verify permits and legal requirements and the effect of such requirements on current and future use and rentability of the Property, its development and size. Brokers do not have expertise in this area.

2. **BUILDING PERMITS, ZONING AND CODE COMPLIANCE:** Buyer and Seller are advised that any structure on the Property, including the original structure and any addition, modification, remodel or improvement may have been built without permits, not according to building codes, or in violation of zoning laws. Further, even if such structure was built according to the then-existing code or zoning requirement, it may not be in compliance with current building standards or local zoning. It is also possible that local law may not permit structures that now exist to be rebuilt in the event of damage or destruction. Certain governmental agencies may require periodic inspections to occur in the future. If Buyer wants further information, Broker(s) recommend that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

3. **BUYER INTENDED FUTURE USE OF, AND MODIFICATIONS TO, THE PROPERTY:** Buyer and Seller are advised that Seller's existing use of the property may not be consistent with Buyer's intended use or any future use that Buyer makes of the property, whether or not Buyer has any current plans to change the use. Buyer is advised to check with appropriate government agencies or third party professionals to verify what legal requirements are needed to accommodate any change in use. In addition, neither Seller nor Broker make any representations as to what modifications Buyer can make to the Property after close of escrow as well as any cost factors associated with any such modifications. Buyer is advised to check with his own licensed contractor and other such professionals as well as with the appropriate government agencies to determine what modifications Buyer will be allowed to make after close of escrow. Brokers do not have expertise in this area.

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 5 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83FB365DFC0A

4. **CALIFORNIA FAIR PLAN:** Buyer and Seller are advised that insurance for certain hillside, oceanfront and brush properties may be available only from the California Fair Plan. This may increase the cost of insurance for such properties and coverage may be limited. Broker(s) recommend that Buyer consult with Buyer's own insurance agent during Buyer's inspection contingency period regarding the availability of coverage under the California Fair Plan and the length of time it may take for processing of a California Fair Plan application. Brokers do not have expertise in this area.

5. **FUTURE REPAIRS, REPLACEMENTS AND REMODELS:** Buyer and Seller are advised that replacement or repairs of certain systems or rebuilding or remodeling of all or a portion of the Property may trigger requirements that homeowners comply with laws and regulations that either come into effect after Close of Escrow or are not required to be complied with until the replacement, repair, rebuild or remodel has occurred. Permit or code requirements or building standards may change after Close of Escrow, resulting in increasing costs to repair existing features. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

6. **HEATING VENTILATING AND AIR CONDITIONING SYSTEMS:** Changes to state and federal energy efficiency regulations impact the installation, replacement and some repairs of heating and air conditioning units (HVAC): **(i)** Federal regulations now require manufacturers of HVAC units to produce only units meeting a new higher Seasonal Energy Efficiency Rating (SEER). This will likely impact repairs and replacements of existing HVAC units. State regulations now require that when installing or replacing HVAC units, with some exceptions, duct work must be tested for leaks. Duct work leaking more than 15 percent must be repaired to reduce leaks. The average existing duct work typically leaks 30 percent. More information is available at the California Energy Commission's website http://www.energy.ca.gov/title24/changeout. Home warranty policies may not cover such inspections or repairs, **(ii)** the phase out of the use of HCFC-22 (R-22 Freon) will have an impact on repairs and replacement of existing air conditioning units and heat pumps. The production and import of HCFC-22 ended January 1, 2020. Existing systems may continue to be used and HCFC-22 recovered and reclaimed or that was produced prior to 2020 can help meet the needs of existing systems, however, costs may rise. More information is available from the Environmental Protection Agency at https://www.epa.gov/sites/production/files/2018-08/documents/residential_air_conditioning_and_the_phaseout_of_hcfc-22_what_you_need_to_know.pdf and http://www.epa.gov/ozone/title6/phaseout/22phaseout.html, and **(iii)** New efficiency standards are also in place for water heaters. As a consequence, replacement water heaters will generally be larger than existing units and may not fit in the existing space. Additional venting and other modifications may be required as well. More information is available from the U.S. Department of Energy at http://www.eere.energy.gov/buildings/appliance_standards/product.aspx/productid/27. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

7. **HISTORICAL DESIGNATION, COASTAL COMMISSION, ARCHITECTURAL, LANDSCAPE, AGRICULTURAL OR OPEN SPACE AND OTHER RESTRICTIONS ON BUILDINGS OR IMPROVEMENTS:** Buyer and Seller are advised that the Property may be: **(i)** designated as a historical landmark, **(ii)** protected by a historical conservancy, **(iii)** subject to an architectural or landscaping review process, **(iv)** within the jurisdiction of the California Coastal Commission or other government agency, or **(v)** subject to a contract preserving use of all or part of the Property for agriculture or open space. If the Property is so designated or within the jurisdiction of any such, or similar, government agency, then there may be restrictions or requirements regarding Buyer's ability to develop, remove or trim trees or other landscaping, remodel, make improvements to and build on or rebuild the Property. Broker(s) recommend that Buyer satisfy him/herself during Buyer's inspection contingency period if any of these issues are of concern to Buyer. Brokers do not have expertise in this area.

8. **INSURANCE, TITLE INSURANCE AND TITLE INSURANCE AFTER FORECLOSURE:** Buyer and Seller are advised that Buyer may have difficulty obtaining insurance regarding the Property if there has been a prior insurance claim affecting the Property or made by Buyer but unrelated to the Property. Seller is required by C.A.R. Form RPA to disclose known insurance claims made during the past five years (C.A.R. Form SPQ or ESD). Sellers may not be aware of claims prior to their ownership. If Buyer wants further information, Broker(s) recommend that, during Buyer's inspection contingency period, Buyer conduct his or her own investigation for past claims. Buyer may need to obtain Seller's consent in order to have access to certain investigation reports. If the Property is a condominium, or is located in a planned unit development or other common interest subdivision, Buyer and Seller are advised to determine if the individual unit is covered by the Homeowner's Association Insurance and the type of insurance coverage that Buyer may purchase. Broker(s) recommend that Buyer consult Buyer's insurance agents during Buyer's inspection contingency period to determine the need, availability and possibility of securing any and all forms of other insurance or coverage or any conditions imposed by insurer as a requirement of issuing insurance. If Buyer does any repairs to the property during the escrow period or Buyer takes possession prior to Close of Escrow or Seller remains in possession after Close of Escrow, whether for a limited or extended period of time, Broker(s) recommend that Buyer and Seller each consult with their own insurance agent regarding insurance or coverage that could protect them in the transaction (including but not limited to: personal property, flood, earthquake, umbrella and renter's). Buyer and Seller are advised that traditional title insurance generally protects Buyer's title acquired through the sale of the property. While all title insurance policies, as do all insurance policies, contain some exclusions, some title insurance policies contain exclusions for any liability arising from a previous foreclosure. This can occur when a short sale has occurred but the lender mistakenly has also proceeded with a foreclosure. Buyer is strongly advised to consult with a title insurer to satisfy themselves that the policy to be provided adequately protects their title to the property against other possible claimants. Brokers do not have expertise in this area.

9. **LAND LEASE:** Buyer and Seller are advised that certain developments are built on leased land. This means that: **(i)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83B6A8535AD0

Buyer does not own the land, **(ii)** the right to occupy the land will terminate at some point in time, **(iii)** the cost to lease the land may increase at some point in the future, and **(iv)** Buyer may not be able to obtain title insurance or may have to obtain a different type of title insurance. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an attorney or other appropriate professional. Brokers do not have expertise in this area.

10. **MARIJUANA, CANNABIS, AND METHAMPHETAMINE LABS:** Buyer and Seller are advised that California law permits individual patients to cultivate, possess and use marijuana for medical purposes. Furthermore, California law permits primary caregivers, lawfully organized cooperatives, and collectives to cultivate, distribute and possess marijuana for medicinal purposes. California law also allows recreational use of marijuana for adults, as well as limited rights for individuals to grow and cultivate marijuana, and rights of others, subject to a licensing process, to grow, cultivate and distribute marijuana for recreational use. California's medical and recreational marijuana laws are in direct conflict with federal law which recognizes no lawful use for marijuana and has no exemptions for medical use. Federal criminal penalties, some of which mandate prison time, remain in effect for the possession, cultivation and distribution of marijuana. Buyer and Seller are strongly advised to seek legal counsel as to the legal risks and issues surrounding owning or purchasing a property where medical or any other marijuana activity is taking place. Marijuana storage, cultivation and processing carry the risk of causing mold, fungus or moisture damage to a property, additionally, some properties where marijuana has been cultivated have had alterations to the structure or the electrical system which may not have been done to code or with permits and may affect the safety of the structure or the safe operation of the electrical system. Buyer is strongly advised to retain an environmental hygienist contractor and other appropriate professionals to inspect a property where medical or any other marijuana activity has taken place. Broker recommends that Buyer and Seller involved with a property where there is medical marijuana activity or where it may take place review the California Attorney General's Guidelines for the "Security and Non-Diversion of Marijuana Grown for Medical Use" https://oag.ca.gov/system/files/attachments/press-docs/MEDICINAL%20CANNABIS%20Guidelines.pdf and the U.S. Department of Justice memo regarding marijuana prosecutions at https://www.justice.gov/opa/press-release/file/1022196/download. Brokers do not have expertise in this area. While no state law permits the private production of methamphetamine, some properties have been the site of an illegal methamphetamine laboratory. State law imposes an obligation to notify occupants, a ban on occupying the property and clean up requirements when authorities identify a property as being contaminated by methamphetamine. Buyer is advised that a property where methamphetamine has been produced may pose a very serious health risk to occupants. Buyer is strongly advised to retain an environmental hygienist contractor or other appropriate professionals to inspect the property if methamphetamine production is suspected to have taken place. Brokers do not have expertise in this area.

11. **OWNER'S TITLE INSURANCE:** The Truth in Lending/RESPA integrated disclosure (TRID) established by the Consumer Financial Protection Bureau (CFPB) requires that lenders must tell borrowers that title insurance is "optional." While obtaining an owner's policy of title insurance may be "optional", it may be a contractual requirement as between Buyer and Seller. Furthermore, California Civil Code § 1057.6 requires that Buyers be provided with the following notice: "IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING."

Additionally, even the CFPB on its "ask CFPB" "What is owner's title insurance?" page advises "You may want to buy an owner's title insurance policy, which can help protect your financial interest in the home." Moreover, not obtaining an owner's policy may increase the cost of the lender's policy (required by most lenders), possibly require the separate purchase of a preliminary title report, and may have an impact on the sale of the Property in the future.

Buyers who decide to opt out of obtaining an owner's title insurance policy are acting against the advice of Brokers as well as the advice provided in the California Civil Code § 1057.6 and by the CFPB. Brokers do not have expertise in this area.

12. **RENT AND EVICTION CONTROL LAWS AND ORDINANCES:** Buyer and Seller are advised that California and some cities and counties impose or may impose restrictions that limit the rent that can be charged to a tenant, the maximum number of tenants who can occupy the property, the right of a landlord to terminate a tenancy and the costs to do so. If Buyer wants further information, Broker(s) recommend that Buyer investigate the issue with an appropriate government authority or HOA during Buyer's inspection contingency period. Brokers do not have expertise in this area.

13. **RETROFIT, BUILDING REQUIREMENTS, AND POINT OF SALE REQUIREMENTS:** Buyer and Seller are advised that state and local Law may require **(i)** the installation of operable smoke detectors, **(ii)** bracing or strapping of water heaters, and **(iii)** upon sale completion of a corresponding written statement of compliance that is delivered to Buyer. Although not a point of sale or retrofit obligation, state law may require the property to have operable carbon monoxide detection devices. Additionally, some city and county governments may impose additional retrofit standards at time of sale including, but not limited to, installing or retrofitting low-flow toilets and showerheads, gas shut-off valves, fireplaces, and tempered glass. Further, there may be potential health impacts from air pollution caused from burning wood. Exposure to particulate matter from the smoke may cause short-term and long-term health effects. Buyers should consult with licensed professional to inspect, properly maintain, and operate a wood burning stove or fireplace. Broker(s) recommend that Buyer and Seller consult with the appropriate government agencies, inspectors, and other professionals to determine the retrofit standards for the Property, the extent to which the Property complies with such standards, and the costs, if any, of compliance. Brokers do not have expertise in this area.

14. **SHORT TERM RENTALS AND RESTRICTIONS:** Buyer and Seller are advised that some cities, counties and Homeowner Associations (HOAs) do impose or may impose restrictions that limit or prohibit the right of the owner or occupant to rent-

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 7 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   944 Airole Way



out the Property for short periods of time (usually 30 Days or less). In short term rentals, as well as all rentals, Buyer and Seller are advised to seek assistance to ensure compliance with all fair housing laws and regulations. If Buyer wants further information, Broker(s) recommend that Buyer investigate the issue with an appropriate government authority or HOA during Buyer's inspection contingency period. Brokers do not have expertise in this area.

15. **VIEWS:** Buyer and Seller are advised that present views from the Property may be affected by future development or growth of trees and vegetation on adjacent properties and any other property within the line of sight of the Property. Brokers make no representation regarding the preservation of existing views. If Buyer wants further information, Broker(s) recommend that Buyer review covenants, conditions and restrictions, if any, and contact neighboring property owners, government agencies and homeowner associations, if any, during Buyer's inspection contingency period. Brokers do not have expertise in this area.

16. **SWIMMING POOL, SECURITY AND SAFETY:** Buyer and Seller are advised that state and local Law may require the installation of barriers, anti-entrapment grates, access alarms, self-latching mechanisms, pool covers, exit alarms and/ or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. If Buyer wants further information, Broker(s) recommend that Buyer contact local government agencies about these restrictions and other requirements. State law requires that new pools and spas be equipped with at least two of seven specified drowning prevention safety features. Home inspectors have a statutory obligation to perform a non-invasive physical examination of the pool area to identify which safety features are present. Brokers do not have expertise in this area.

17. **WATER SHORTAGES AND CONSERVATION:** Buyer and Seller are advised that the Property may be located in an area that could experience water shortages. The policies of local water districts and the city or county in which the Property is located can result in the occurrence of any or all of the following: (i) limitations on the amount of water available to the Property, **(ii)** restrictions on the use of water, and **(iii)** an increasingly graduated cost per unit of water use, including, but not limited to, penalties for excess usage. For further information, Broker recommends that Buyer contact the supplier of water to the Property regarding the supplier's current or anticipated policies on water usage and to determine the extent to which those policies may affect Buyer's intended use of the Property. If the Property is serviced by a private well, Buyer is advised that drought conditions and/or a low water table may make it necessary to arrange, through a private supplier, for delivery of water to the Property. Buyers should contact water truck companies for the costs involved. Brokers do not have expertise in this area.

18. **1915 IMPROVEMENT BOND MELLO-ROOS COMMUNITY DISTRICT, AND OTHER ASSESSMENT DISTRICTS:** Buyer and Seller are advised that the Property may be subject to an improvement bond assessment under the Improvement Bond Act of 1915, a levy of a special tax pursuant to a Mello-Roos Community Facilities district, and/or a contractual assessment as provided in § 5898.24 of the Streets And Highways Code or other assessment districts. Seller is generally required to make a good faith effort to obtain a disclosure notice from any local agency collecting such taxes and deliver such notice to Buyers. If there is a question as to whether an existing bond or assessment will be prorated as of the close of escrow, or whether Seller will pay off the bond or assessment at close of escrow, Buyers are advised to discuss the matter with the appropriate entity and address the responsibility for payment in negotiations for the purchase agreement or amendment prior to removing contingencies. Some cities and other localities have begun, or have the intention to begin, the process of requiring the replacement of utility poles by requiring that utility lines be buried underground. These projects can result in special tax assessments and set-up costs that are imposed on individual property owners. Brokers do not have expertise in this area.

# C. Off-Site and Neighborhood Conditions

1. **GOLF COURSE DISCLOSURES:** Buyer and Seller are advised that if the Property is located adjacent to or near a golf course the following may apply: **(i)** Stray golf balls − Any residence near a golf course may be affected by errant golf balls, resulting in personal injury or destruction to property. Golfers may attempt to trespass on adjacent property to retrieve golf balls even though the project restrictions may expressly prohibit such retrieval. **(ii)** Noise and lighting − The noise of lawn mowers irrigation systems and utility vehicles may create disturbances to homeowners. Maintenance operations may occur in the early morning hours. Residents living near the clubhouse may be affected by extra lighting, noise, and traffic. **(iii)** Pesticides and fertilizer use − A golf course may be heavily fertilized, as well as subjected to other chemicals during certain periods of the year. **(iv)** Irrigation system − Golf course sprinkler systems may cause water overspray onto adjacent property and structures. Also the irrigation system of a golf course may use reclaimed and retreated wastewater. **(v)** Golf carts − Certain lots may be affected more than others by the use of golf carts. Lots adjacent to a tee or putting green may be subject to noise disturbances and loss of privacy. **(vi)** Access to golf course from residences − It is likely that most residences will not have direct access from their lots to the golf course. The project restrictions may disclaim any right of access or other easements from a resident's lot onto the golf course. **(vii)** View obstruction − Residents living near a golf course may have their views over the golf course impacted by maturing trees and landscaping or by changes to the course's configuration. **(viii)** Water restrictions − As some municipalities face water shortages, the continued availability of water to the golf course may be restricted or otherwise reduced by the local water agency. If Buyer wants further information, Broker(s) recommend that Buyer contact the local water agency regarding this matter. Brokers do not have expertise in this area.

2. **NEIGHBORHOOD, AREA, PERSONAL FACTORS, BUYER INTENDED USE, HIGH SPEED RAILS, AND SMOKING RESTRICTIONS:** Buyer and Seller are advised that the following may affect the Property or Buyer's intended use of it:

SBSA REVISED 6/21 (PAGE 8 OF 14)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 8 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   944 Airole Way



DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-8394A87A6FB7

neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to medical marijuana growing or distribution locations, cell phone towers, manufacturing, commercial, industrial, airport or agricultural activities or military ordnance locations, existing and proposed transportation, construction, and development, any other source that may affect noise, view, traffic, or odor, wild and domestic animals, susceptibility to tsunami and adequacy of tsunami warnings, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally-protected sites or improvements, cemeteries, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer and FAA requirements for recreational and non-recreational use of Unmanned Aircraft Systems (UAS) (drones) (see UAS frequently asked questions http://www.faa.gov/uas/faqs/). California is potentially moving toward high speed rail service between Northern and Southern California. This rail line could have an impact on the Property if it is located nearby. More information on the timing of the project and routes is available from the California High-Speed Rail Authority at www.cahighspeedrail.ca.gov/. The State of California has long-standing no smoking laws in place restricting smoking in most business and some public spaces. Local jurisdictions may enact laws that are more restrictive than state law. Many California cities have enacted restrictions on smoking in parks, public sidewalks, beaches and shopping areas. Some jurisdictions have restrictions entirely banning smoking inside privately owned apartments and condominiums as well as in the common areas of such structures, or limiting smoking to certain designated areas. If Buyer wants further information, Broker(s) recommend that Buyer contact local government agencies about these restrictions. Brokers do not have expertise in this area.

3. **NEIGHBORHOOD NOISE SOURCES:** Buyer and Seller are advised that even if the Property is not in an identified airport noise influence area, the Property may still be subject to noise and air disturbances resulting from airplanes and other aircraft, commercial or military or both, flying overhead. Other common sources of noise include nearby commercial districts, schools, traffic on streets, highways and freeways, trains and general neighborhood noise from people, dogs and other animals. Noise levels and types of noise that bother one person may be acceptable to others. Buyer is advised to satisfy him/herself with regard to any sources of and amounts of noise at different times of day and night. Brokers do not have expertise in this area.

4. **SCHOOLS:** Buyer and Seller are advised that children living in the Property may not, for numerous reasons, be permitted to attend the school nearest the Property. Various factors including, but not limited to, open enrollment policies, busing, overcrowding and class size reductions may affect which public school serves the Property. School district boundaries are subject to change. Buyer is advised to verify whether the Property is now, and at the Close of Escrow will be, in the school district Buyer understands it to be in and whether residing in the Property entitles a person to attend any specific school in which that Buyer is interested. Broker(s) recommend that Buyer contact the local school or school district for additional information during Buyer's inspection contingency period. Brokers do not have expertise in this area.

5. **UNDERGROUND PIPELINES AND UTILITIES:** Throughout California underground pipelines transport natural gas, liquid fuel and other potentially hazardous materials. These pipelines may or may not provide utility services to the Property. Information about the location of some of the pipelines may be available from a company that also provides disclosures of natural and other hazards or from other sources of public maps or records. Proximity to underground pipelines, in and of itself, does not affirmatively establish the risk or safety of the property. If Buyer wants further information about these underground pipelines and utilities, Buyer is advised to consult with appropriate experts during Buyer's inspection contingency period. Brokers do not have expertise in this area.

6. **WILDLIFE:** California is the home to many species of wildlife. The location of homes in California continues to expand into areas that are the natural habitat of wildlife and the Property may be in such an area. Wildlife may become a nuisance especially if the availability of their natural sources of food or water is limited. Buyer should investigate the need to implement mitigation measures at the Property including but not limited to the use of animal-resistant garbage containers, and other appropriate measures depending on the species and habitat involved. Brokers do not have expertise in this area.

7. **SEA LEVEL RISE/COASTAL PROPERTIES:** Sea level rise has the potential to affect coastal residents, recreation, and development. Coastal communities may or may not have addressed the potential impact. The following is a non-exclusive list of issues that may be impacted by sea level rise: **(i)** Shoreline, beach and bluff erosion; and sand replacement requirements; **(ii)** The effectiveness of seawalls and bulkheads, whether built with or without permits; **(iii)** Seaward construction, development or improvement to existing structures; **(iv)** The enactment of geological hazard abatement districts and assessments; and **(v)** The determination of the "mean high tide line" which is used to figure out the property's boundary. Buyer is advised to consult with appropriate professionals, including having a geological inspection, to identify the effect of the listed conditions, if any, on the property. Brokers do not have expertise in this area.

Below is a non-exhaustive list of potential resources provided as a starting point for Buyer investigations into sea level rise, and not as an endorsement or guarantee that any federal, state, county, city or other resource will provide complete advice.

A. California Coastal Commission contact information: https://www.coastal.ca.gov/contact/#/
B. State Lands Commission contact information: https://www.slc.ca.gov/contact-us/
C. National Oceanic and Atmospheric Administration (sea level rise page): https://search.usa.gov/search?affiliate= csc_search_all&query=sea=level=rise&submit=submit
D. California Coastal Commission (sea level rise page): https://www.coastal.ca.gov/climate/slr/
E. Coastal Adaptation Planning Guidance: Residential Development (draft); California Coastal Commission: https://www.coastal.ca.gov/climate/slr/vulnerability-adaptation/residential/

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 9 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

# D. Legal Requirements (Federal, State and Local)

1. **DEATH ON THE PROPERTY:** California Civil Code § 1710.2 protects a seller from: **(i)** failing to disclose a death on the property that occurred more than 3 years before a buyer has made an offer on a property; and **(ii)** failing to disclose if an occupant of a property was afflicted with HIV/AIDS, regardless of whether a death occurred or if so, when § 1710.2 does not protect a seller from making a misrepresentation in response to a direct inquiry. If the Buyer has any concerns about whether a death occurred on the Property or the manner, location, details or timing of a death, the buyer should direct any specific questions to the Seller in writing. Brokers do not have expertise in this area.

2. **EARTHQUAKE FAULT ZONES AND SEISMIC HAZARD ZONES:** Buyer and Seller are advised that California Public Resources Code §§ 2622 and 2696 require the delineation and mapping of "Earthquake Fault Zones" along known active faults and "Seismic Hazard Zones" in California. Affected cities and counties must regulate certain development projects within these zones. Construction or development on affected properties may be subject to the findings of a geological report prepared by a registered California geologist. Generally, Seller must disclose if the Property is in such a zone and can use a research company to aid in the process. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer make independent inquiries with such research companies or with appropriate government agencies concerning the use and improvement of the Property. Buyer is advised that there is a potential for earthquakes and seismic hazards even outside designated zones. Brokers do not have expertise in this area.

3. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at http://www.epa.gov/lead for more information. Buyer and Seller are advised to consult an appropriate professional. Brokers do not have expertise in this area.

4. **FIRE HAZARDS:** Buyer and Seller are advised that fires annually cause the destruction of thousands of homes. Due to varied climate and topography, certain areas have higher risks of fires than others. Certain types of materials used in home construction create a greater risk of fire than others. If the Property is located within a State Fire Responsibility Area or a Very High Fire Hazard Zone, generally Seller must disclose that fact to Buyer under California Public Resources Code § 4136 and California Government Code §§ 51178 and 51183.5, and may use a research company to aid in the process. Owners of property may be assessed a fire prevention fee on each structure on each parcel in such zones. The fee may be adjusted annually commencing July 1, 2013. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer contact the local fire department and Buyer's insurance agent regarding the risk of fire. Buyer is advised that there is a potential for fires even outside designated zones. Brokers do not have expertise in this area.

5. **FIRPTA/CALIFORNIA WITHHOLDING:** Buyer and Seller are advised that: **(i)** Internal Revenue Code § 1445, as of February 17, 2016, requires a Buyer to withhold and to remit to the Internal Revenue Service 15% of the purchase price of the property if the Seller is a non-resident alien, unless an express exemption applies. Only 10% needs to be withheld if the Buyer acquires the property as Buyer's residence and the price does not exceed $1,000,000. Seller may avoid withholding by providing Buyer a statement of non-foreign status. The statement must be signed by Seller under penalty of perjury and must include Seller's tax identification number. Buyer can also avoid having to withhold Federal taxes from Seller's Proceeds if the property price is $300,000 or less, and the Buyer signs an affidavit stating Buyer intends to occupy the property as a principal residence. **(ii)** California Revenue and Taxation Code § 18662 requires that a Buyer withhold and remit to the California Franchise Tax Board 3 1/3% of the purchase price of the property unless the Seller signs an affidavit that the property was the Seller's (or the decedent's, if a trust or probate sale) principal residence or that the sales price is $100,000 or less or another express exemption applies. Exemptions from withholding also apply to legal entities such as corporations, LLCs, and partnerships. Brokers cannot give tax or legal advice. Broker recommends that Buyer and Seller seek advice from a CPA, attorney or taxing authority. Brokers do not have expertise in this area.

6. **FLOOD HAZARDS:** Buyer and Seller are advised that if the Property is located within a Special Flood Hazard Area, as designated by the Federal Emergency Management Agency (FEMA), or an area of Potential Flooding pursuant to California Government Code § 8589.3, generally Seller must disclose this fact to Buyer and may use a research company to aid in the process. The National Flood Insurance Program was established to identify all flood plain areas and establish flood-risk zones within those areas. The program mandates flood insurance for properties within high-risk zones if loans are obtained from a federally-regulated financial institution or are insured by any agency of the United States Government. The extent of coverage and costs may vary. If Buyer wants further information, Broker(s) recommend that Buyer consult his or her lender and/or insurance agent during Buyer's inspection contingency period. Buyer is advised that there is a potential for flooding even outside designated zones. Brokers do not have expertise in this area.

7. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specific registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at http://www.meganslaw.ca.gov/. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers, in any, are required to check this website. If Buyer wants further information, Buyer should obtain information directly from this website.) Brokers do not have expertise in this area.

SBSA REVISED 6/21 (PAGE 10 OF 14)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 10 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com   944 Alrole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-8384B856D0C2

8. **NOTICE OF YOUR SUPPLEMENTAL PROPERTY TAX BILL; ACCURATE SALES PRICE REPORTING:** Buyer and Seller are advised that pursuant to Civil Code § 1102.6(c), Seller, or his or her agent, is required to provide the following notice to the Buyer:

"California property tax law requires the Assessor to revalue real property at the time the ownership of property changes. Because of this law, you may receive one or two supplemental tax bills, depending on when your loan closes.

The supplemental tax bills are not mailed to your lender. Even if you have arranged for your property tax payments to be paid through an impound account, the supplemental tax bills will not be paid by your lender. It is your responsibility to pay these supplemental tax bills directly to the Tax Collector. If you have any questions concerning this matter, please call your Tax Collector's Office."

Although the notice refers to loan closing as a trigger, it is actually the change of ownership which triggers this reassessment of property taxes. Therefore, the Property can be reassessed even if there is no loan involved in the purchase of the Property. The Purchase Agreement may allocate supplemental tax bills received after the Close of Escrow to the Buyer. A change (preliminary change) of ownership form is generally required to be filed by the Buyer with the local taxing agency. The form identifies the sales price of the Property. An assessor may value the Property at its fair market value regardless of the sales price declared by the Buyer. If Buyer wants further information concerning these matters, Broker(s) recommend that Buyer discuss the issue with the County Assessor or Tax Collector or their own tax or legal advisor. Brokers do not have expertise in this area.

9. **ZONE MAPS MAY CHANGE:** Maps that designate, among other things, Earthquake Fault Zones, Seismic Hazard Zones, State Fire Responsibility Areas, Very High Fire Hazard Zones, Special Flood Hazard Areas, and Potential Flooding Areas are occasionally redrawn by the applicable Government Agency. Properties that are currently designated in a specified zone or area could be removed and properties that are not now designated in a specified zone or area could be placed in one or more such zones or areas in the future. A property owner may dispute a FEMA flood hazard location by submitting an application to FEMA. Brokers do not have expertise in this area.

# E. Contract Related Issues and Terms

1. **ARBITRATION:** Buyer and Seller are advised that arbitration is a process by which the disputing parties hire a neutral person to render a binding decision. Generally, arbitration is faster and less expensive than resolving disputes by litigating in court. The rules are usually less formal than in court, and it is a private process not a matter of public record. By agreeing to arbitration, the parties give up the right to a jury trial and to appeal the arbitrator's decision. Arbitration decisions have been upheld even when arbitrators have made a mistake as to the law or the facts. If the parties agree to arbitration, then after first attempting to settle the dispute through mediation, any dispute arising out of their agreement (with a few limited exceptions) must be submitted to binding arbitration. Buyer and Seller must weigh the benefits of a potentially quicker and less expensive arbitration against giving up the right to a jury trial and the right to appeal. Brokers cannot give legal advice regarding these matters. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to arbitration. Brokers do not have expertise in this area.

2. **ELECTRONIC SIGNATURES:** The ability to use electronic signatures to sign legal documents is a great convenience, facilitating the ability to send and receive documents and reach agreement in a real estate transaction. However, Buyers and Sellers are cautioned to carefully read each provision. Arrows indicating "sign here" are merely there for the convenience of finding the next signature line. Only sign if you have taken the time necessary to read each document thoroughly, have full knowledge, and consent to the terms provided in the document. Brokers strongly advise Buyers and Sellers to read the entire document before signing even if they have reviewed an earlier draft. Do not just scroll through or skip to the next signature line. You are signing a legally binding agreement. Read it carefully. Ask your Broker, Agent or legal advisor if you have questions or do not understand a provision, and sign only if you agree to be bound by the terms. Brokers do not have expertise in this area.

3. **ESCROW FUNDS:** Buyer and Seller are advised that California Insurance Code § 12413.1 provides that escrow companies cannot disburse funds unless there are sufficient "good funds" to cover the disbursement. "Good funds" are defined as cash, wire transfers and cashiers' or certified checks drawn on California depositories. Escrow companies vary in their own definitions of "good funds." Broker(s) recommend that Buyer and Seller ask the escrow company regarding its treatment of "good funds." All samples and out-of-state checks are subject to waiting periods and do not constitute "good funds" until the money is physically transferred to and received by the escrow holder. Brokers do not have expertise in this area.

4. **HOME WARRANTY:** Buyer and Seller are advised that Buyer and Seller can purchase home warranty plans covering certain standard systems of the Property both before and after Close of Escrow. Seller can obtain coverage for the Property during the listing period. For an additional premium, an upgraded policy providing additional coverage for air conditioning, pool and spa and other features can be purchased. Home warranties do not cover every aspect of the Property and may not cover inspections or upgrades for repairs required by state or federal laws or pre-existing conditions. Broker(s) recommend that Buyer review the policy for details. Brokers do not have expertise in this area.

5. **IDENTIFICATION OF NATURAL PERSONS BEHIND SHELL COMPANIES IN ALL-CASH TRANSACTIONS:** The U.S. Treasury Department's Financial Crimes Enforcement Network (FinCEN) has issued Geographic Targeting Orders (GTOs) targeting alleged money laundering risk in the real estate sector. The GTOs will temporarily require

SBSA REVISED 6/21 (PAGE 11 OF 14)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 11 OF 14)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83FDA3F55DD9

U.S. title insurance companies to identify the natural persons behind shell companies used to pay "all cash" for high- end residential real estate in certain major metropolitan areas. FinCEN explained that it remains concerned that all- cash purchases (i.e., those without bank financing) may be conducted by individuals attempting to hide their assets and identity by purchasing residential properties through limited liability companies or other similar structures. Since the original issuance, the GTOs have been renewed and may continue to be renewed. The GTOs cover the following areas in California: Los Angeles, San Francisco, San Mateo, Santa Clara and San Diego Counties. The monetary thresholds for each county is $300,000. GTOs have helped law enforcement identify possible illicit activity. FinCEN reported that a significant portion of covered transactions have dictated possible criminal activity associated with the individuals reported to be the beneficial owners behind shell company purchasers. Brokers do not have expertise in this area.

6. **LIQUIDATED DAMAGES:** Buyer and Seller are advised that a liquidated damages clause is a provision Buyer and Seller can use to agree in advance to the amount of damages that a seller will receive if a buyer breaches the Agreement. The clause usually provides that a seller will retain a buyer's initial deposit paid if a buyer breaches the agreement, and generally must be separately initialed by both parties and meet other statutory requirements to be enforceable. For any additional deposits to be covered by the liquidated damages clause, there generally must be another separately signed or initialed agreement (see C.A.R. Form RID). However, if the Property contains from 1 to 4 units, one of which a buyer intends to occupy, California Civil Code § 1675 limits the amount of the deposit subject to liquidated damages to 3% of the purchase price. Even though both parties have agreed to a liquidated damages clause, an escrow company will usually require either a judge's or arbitrator's decision or instructions signed by both parties in order to release a buyer's deposit to a seller. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to a liquidated damages clause. Brokers do not have expertise in this area.

7. **MEDIATION:** Buyer and Seller are advised that mediation is a process by which the parties hire a neutral person to facilitate discussion and negotiation between the parties with the goal of helping them reach a settlement of their dispute. The parties generally share in the cost of this confidential, non-binding negotiation. If no agreement is reached, either party can pursue further legal action. Under C.A.R. Form RPA-CA: **(i)** the parties must mediate any dispute arising out of their agreement (with a few limited exceptions, such as matters within the jurisdiction of a small claims court) before they resort to arbitration or court, and **(ii)** if a party proceeds to arbitration or court without having first attempted to mediate the dispute, that party risks losing the right to recover attorney fees and costs even if he or she prevails. Brokers do not have expertise in this area.

8. **NON CONFIDENTIALITY OF OFFERS:** Buyer is advised that Seller or Listing Agent may disclose the existence, terms, or conditions of Buyer's offer, unless all parties and their agent have signed a written confidentiality agreement (such as C.A.R. Form CND). Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the Listing Agent's marketing strategy and the instructions of the Seller. Brokers do not have expertise in this area.

9. **ONLINE OR WIRE FUNDS TRANSFERS:** Instructions for the online or wire transfer of escrow deposits have been known to be intercepted by hackers who alter them so that Buyer's funds are actually wired to accounts controlled by criminals rather than the escrow company. Buyers should exercise extreme caution in making electronic funds transfers, verifying that the organization they are transferring funds to is, in fact, the escrow company and that their own bank account information is not being exposed. See C.A.R. Form WFA for further information. Brokers do not have expertise in this area.

# F. Other Factors Affecting Property

1. **COMMUNITY ENHANCEMENT AND PRIVATE TRANSFER FEES:** Buyer and Seller are advised that some areas or communities may have enhancement fees or user-type fees, or private transfer taxes and fees, over and above any stated fees. The Federal Housing Finance Agency has issued a rule that prohibits Fannie Mae and Freddie Mac from purchasing loans made on properties with private transfer fees if those fees were established on or after February 8, 2011. See title 12 Code of Federal Regulations § 1228 for more information and exceptions. Private transfer fees: **(i)** may last for a fixed period of time or in perpetuity, **(ii)** are typically calculated as a percentage of the sales price, and **(iii)** may have private parties, charitable organizations or interest-based groups as their recipients who may use the funds for social issues unrelated to the property. Brokers do not have expertise in this area.

2. **GENERAL RECALL/DEFECTIVE PRODUCT/CLASS ACTION INFORMATION:** Buyer and Seller are advised that government entities and manufacturers may at any time issue recall notices and/or warnings about products that may be present in the Property, and that these notices or warnings can change. The following nonexclusive, non-exhaustive list contains examples of recalled/defective products/class action information: horizontal furnaces, Whirlpool Microwave Hood Combination; RE-ConBuilding products roof tiles; Central Sprinkler Company Fire Sprinklers; Robert Shaw Water Heater Gas Control Valves; Trex Decking; water heaters; aluminum wiring; galvanized, abs, polybutylene PEX, KITEC® and copper pipe; and dry wall manufactured in China. There is no single, all-inclusive source of information on product recalls, defective products or class actions; however, the U.S. Consumer Product Safety Commission (CPSC) maintains a website that contains useful information. If Buyer wants further information regarding the items listed above, Broker(s) recommend that Buyer review the CPSC website at http://www.cpsc.gov/ during Buyer's inspection contingency period. Another source affiliated with the CPSC is http://saferproducts.gov/ which allows a Buyer to search by product type or product name. Buyer may also search using the various search engines on the Internet for the specified product or products in question. Brokers recommend that Buyer satisfy themselves regarding recalled or defective products. Brokers will not determine if any aspect of the Property is subject to a recall or is affected by a class action lawsuit. Brokers do not have expertise in this area.



**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 12 OF 14)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83DA4A5 BE57

3.  **HOMEOWNER ASSOCIATIONS AND COVENANTS, CONDITIONS AND RESTRICTIONS ("CC&Rs"); CHARGING STATIONS; FHA/VA APPROVAL:** Buyer and Seller are advised that if the Property is a condominium, or located in a planned unit development, or in a common interest subdivision, there are typically restrictions on use of the Property and rules that must be followed. Restrictions and rules are commonly found in Declarations and other governing documents. Further there is likely to be a homeowner association (HOA) that has the authority to affect the Property and its use. Whether or not there is a HOA, the Property may still be subject to CC&Rs restricting use of the Property. The HOA typically has the authority to enforce the rules of the association, assess monetary payments (both regular monthly dues and special assessments) to provide for the upkeep and maintenance of the common areas, and enforce the rules and assessment obligations. If you fail to abide by the rules or pay monies owed to the HOA, the HOA may put a lien against your Property. Additionally, if an electric vehicle charging station is installed in a common area or an exclusive use common area, each Seller whose parking space is on or near that charging station must disclose its existence and that the Buyer will have the responsibilities set forth in California Civil Code § 4745. The law requires the Seller to provide the Buyer with the CC&Rs and other governing documents, as well as a copy of the HOA's current financial statement and operating budget, among other documents. Effective July 1, 2016, a Common Interest Development (CID) will be required to include in its annual budget report a separate statement describing the status of the CID as a Federal Housing Administration or Department of Veterans Affairs approved Development. While the purchase agreement and the law require that the annual budget be provided by Seller to Buyer, Brokers will not and cannot verify the accuracy of information provided by the CID. Buyer is advised to carefully review all HOA documents provided by Seller and the CC&Rs, if any, and satisfy him/herself regarding the use and restrictions of the Property, the amount of monthly dues and/or assessments, the adequacy of reserves, current and past insurance coverage and claims, and the possibility of any legal action that may be taken by or against the HOA. The HOA may not have insurance or may not cover personal property belonging to the owner of the unit in the condominium, common interest or planned unit development. For more information Buyer may request from Broker the C.A.R. Legal Q&A titled: "Homeowners' Associations: A Guide for REALTORS®". Brokers do not have expertise in this area.

4.  **LEGAL ACTION:** Buyer and Seller are advised that if Seller or a previous owner was involved in a legal action (litigation or arbitration) affecting the Property, Buyer should obtain and review public and other available records regarding the legal action to determine: (i) whether the legal action or any resolution of it affects Buyer and the Property, (ii) if any rights against any parties involved in the legal action survive the legal action or have been terminated or waived as a result of the legal action, whether or not involving the same issue as in the legal action, and (iii) if any recommendations or requirements resulting from the legal action have been fulfilled and, if so, that Buyer is satisfied with any such action. Buyer should seek legal advice regarding these matters. Brokers do not have expertise in this area.

5.  **MARKETING; INTERNET ADVERTISING; INTERNET BLOGS; SOCIAL MEDIA:** Buyer and Seller are advised that Broker may employ a "staging" company to assist in the presentation of the Property. The furnishings and decorations in the staging are generally not included in the sale unless specifically noted in the Agreement. Statements and inclusion in the MLS entry, flyers, and other marketing materials are NOT part of the Agreement. In addition, Broker may employ a service to provide a "virtual tour" or "virtual staging" or Internet marketing of the Property, permitting potential buyers to view the Property over the Internet. While they are supposed to be an accurate representation of the property, the photos may be enhanced and not fully representative of the actual condition of the property. Further, neither the service provider nor Broker have total control over who will obtain access to materials placed on the internet or what action such persons might take. Additionally, some Internet sites and other social media provide formats for comments or opinions of value of properties that are for sale. Information on the Property, or its owner, neighborhood, or any homeowner association having governance over the Property may be found on the internet on individual or commercial web sites, blogs, Facebook pages, or other social media. Any such information may be accurate, speculative, truthful or lies, and it may or may not reflect the opinions or representations by the Broker. Broker will not investigate any such sites, blogs, social media or other internet sites or the representations contained therein. Buyer is advised to make an independent search of electronic media and online sources prior to removing any investigation contingency. Buyer and Seller are advised that Broker has no control over how long the information or photos concerning the Property will be available on the Internet or through social media, and Broker will not be responsible for removing any such content from the internet or MLS. Brokers do not have expertise in this area.

6.  **PACE LOANS AND LIENS:** The acronym PACE stands for Property Assessed Clean Energy. PACE programs allow property owners to finance energy and water conservation improvements and pay for them through an assessment on the owner's property. PACE programs are available in most areas for both residential one to four unit properties and commercial properties. PACE programs may be referred to by different names such as HERO or SCEIP, among others. If a PACE project is approved, an assessment lien is placed on a property for the amount owed plus interest. A property owner repays the entity for the improvements as a special tax assessment on the property tax bill over a period of years. A PACE lien is similar to a property tax lien in that it has "super priority." Sellers are obligated to disclose, pursuant to the C.A.R. Residential Purchase Agreement (C.A.R. Form RPA), whether any improvement is subject to a lien such as a PACE lien. Properties that are subject to PACE liens made on or after July 6, 2010 may not be eligible for financing. For more information, Buyer may request from Broker the C.A.R. Legal Q&A titled: "PACE Programs and Solar Leases". Brokers do not have expertise in this area.

SBSA REVISED 6/21 (PAGE 13 OF 14)

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          944 Airole Way

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-8M1ae8in89DBo43m5ent

7. **RE-KEYING:** All locks should be re-keyed immediately upon close of escrow so as to ensure the Buyer's safety and security of their persons as well as their personal belongings. Alarms, if any, should be serviced by professionals and codes should be changed. Garage door openers and remotes should be re-coded. In the event of a lease back to Seller after the close of escrow, Seller is advised that the Buyer is entitled to the keys as the Owner of the Property even though the Seller stays in possession of the Property as provided in the RPA.

8. **SOLAR PANEL LEASES:** Solar panel or power systems may be owned or leased. Although leased systems are probably personal property, they are included in the sale by the C.A.R. purchase agreement which also obligates the Seller to make a disclosure to the Buyer and provide the Buyer with documentation concerning the lease and system. Leasing companies generally secure payments by filing a UCC-1 (a Uniform Commercial Code form giving notice of a creditor's security interest) against the property. Buyers are given a contingency right to investigate the solar related system and documentation and assume any lease. Assumption of the lease may require Buyer to provide financial information to the leasing company who may require a credit report be obtained on the Buyer. Should a solar panel or power system be on the Property, Buyers should determine if the system is leased or owned. Buyers willingness to assume any such lease is a contingency in favor of Seller. For more information, Buyer may request from Broker the C.A.R. Legal Q&A titled: "PACE Programs and Solar Leases". Brokers do not have expertise in this area.

9. **RECORDING DEVICES:** Audio or video recording devices or both may be present on the Property, whether or not notice of any such devices has been posted. Seller may or may not even be aware of the capability of such devices.

# G. Local Disclosures and Advisories

1. **LOCAL ADVISORIES OR DISCLOSURES (IF CHECKED):**
   The following disclosures or advisories are attached:

   A. ☐ _____

   B. ☐ _____

   C. ☐ _____

   D. ☐ _____

**Buyer and Seller are encouraged to read all 14 pages of this Advisory carefully. By signing below, Buyer and Seller acknowledge that each has read, understands and received a copy of all 14 pages of this Advisory.**

BUYER _____ / or Assignee Date 2/12/2022

BUYER _____ Date _____

SELLER _____ Crestlloyd LLC Date _____

SELLER _____ Date _____

Real Estate Broker (Selling Firm) _Williams and Williams & Compass_ _____ DRE Lic. # 02126121/

Address _____ City _____ State ____ Zip _____

By _____ Tel. _____ E-mail _____ DRE Lic.# 01774287/ Date _____
   _Rayni Williams & Branden_

By _____ Tel. _____ E-mail _____ DRE Lic.# 01296524 Date _____
   _Aaron Kirman_

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA)

Real Estate Broker (Buyer's Firm) _Douglas Elliman_ _____ DRE Lic. # 01947727

Address 150 S. El Camino Drive _____ City Beverly Hills _____ State CA Zip 90212

By Sam Collins / Josh Altman Tel. (310)595-3888 E-mail sam.collins@elliman.com DRE Lic.# 02057606 & Date 2/13/2022
   _Sam Collins / Josh Altman_

By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SBSA REVISED 6/21 (PAGE 14 OF 14)**

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 14 OF 14)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-8E4E4D6E5F6A

CALIFORNIA
ASSOCIATION
OF REALTORS®

**MARKET CONDITIONS ADVISORY**
(C.A.R. Form MCA, Revised 12/21)

1. **MARKET CONDITIONS:** Real estate markets are cyclical and can change over time. It is impossible to predict future market conditions with accuracy. In a competitive or "hot" real estate market, there are generally more Buyers than Sellers. This will often lead to multiple buyers competing for the same property. As a result, in order to make their offers more attractive, some Buyers may offer more than originally planned or eliminate certain contingencies in their offers. In a less competitive or "cool" market there are generally more Sellers than Buyers, often causing real estate prices to level off or drop, sometimes precipitously. The sales price of homes being sold as foreclosures and short sales is difficult to anticipate and can affect the value of other homes in the area. Brokers, appraisers, Sellers and Buyers take these "distressed" property sales and listings into consideration when valuing property. In light of the real estate market's cyclical nature it is important that Buyers understand the potential for little or no appreciation in value, or an actual loss in value, of the property they purchase. This Advisory discusses some of the potential risks inherent in changing market conditions.

2. **BUYER CONSIDERATIONS:**

   A. **OFFERING PRICE:** AS A BUYER, YOU ARE RESPONSIBLE FOR DETERMINING THE PRICE YOU WANT TO OFFER FOR A PROPERTY. Although Brokers may provide you with comparable sales data, generally from information published in the local multiple listing service, you should know that the reporting of this data is often delayed and prices may change, up or down, faster than reported sales indicate. All buyers should be sure they are comfortable with the price they are offering or the price they are accepting in a counter offer. You should be aware of and think about the following: **(i)** If your offer is accepted, the property's value may not increase and may even decrease. **(ii)** If your offer is accepted, you may have "Buyer's remorse" that you paid too much. **(iii)** If your offer is rejected there can be no guarantee that you will find a similar property at the same price. **(iv)** If your offer is rejected, you may not be satisfied that the amount you offered was right for you. Only you can determine that your offer was reasonable and prudent in light of the property and your circumstances.

   B. **NON-CONTINGENT OFFERS:** Most residential purchase agreements contain contingencies allowing a Buyer within a specified period of time to cancel a purchase if: **(i)** the Buyer cannot obtain a loan; **(ii)** is dissatisfied with the property's condition after an inspection; or **(iii)** if the property does not appraise at a certain value. To make their offers more attractive, Buyers will sometimes write offers with few or no contingencies or offer to remove contingencies within a short period of time. In a "hot" market, sellers will sometimes insist that Buyers write offers with no contingencies. Broker recommends that Buyers do not write non-contingent offers and if you do so, you are acting against Broker's advice. However, if you do write a non-contingent offer these are some of the contractual rights you may be giving up:

      **(1) LOAN CONTINGENCY:** If you give up your loan contingency, and you cannot obtain a loan, whether through your fault or the fault of your lender, and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller.

      **(2) APPRAISAL CONTINGENCY:** If your lender's (or your own) appraiser does not believe the property is worth what you have agreed to pay for it, your lender may not loan the full amount needed for the purchase or may not loan any amount at all because of a low appraisal. As a result, if you do not purchase the property, and you have removed your appraisal contingency, you may legally be in default under the contract and could be required to pay damages to, or forfeit your deposit to, the Seller. The Seller is not obligated to reduce the purchase price to match the appraised value.

      **(3) INVESTIGATION CONTINGENCY:** If you disapprove of the condition of the property and as a result, you do not purchase the property, you may legally be in default under the contract and required to pay damages to, or forfeit your deposit to, the Seller if you have removed your investigation contingency. This may also include the ability to insure the property, so you should investigate this early in the process. However, even if you make an offer without an investigation contingency or you remove that contingency, the Seller may still be obligated to disclose to you material facts about the property. In some cases, once you receive that information the law gives you an independent right to cancel for a limited period of time.

   There is inherent risk in writing a non-contingent offer. Only you, after careful consultation and deliberation with your attorney, accountant, or financial advisor can decide how much risk you are willing to take. IT IS YOUR DECISION ALONE AND CANNOT BE MADE BY YOUR BROKER OR REAL ESTATE AGENT.

Copyright © 2021, CALIFORNIA ASSOCIATION OF REALTORS®, Inc.

**MCA REVISED 12/21 (PAGE 1 OF 2)**        Buyer's Initials _____ / _____        Seller's Initials _____ / _____

EQUAL HOUSING
OPPORTUNITY

**MARKET CONDITIONS ADVISORY (MCA PAGE 1 OF 2)**

DocuSign Envelope ID: 0C24F93A-07EF-4F60-A684-83...

**C. BROKER RECOMMENDATIONS.** Broker recommends that you do not write a non-contingent offer, even if you are planning on paying all cash for the property. If you intend to write a non-contingent offer, Broker recommends that, prior to writing the offer, you: **(i)** review all available Seller reports, disclosures, information and documents; **(ii)** have an appropriate professional inspect the property (even if it is being sold "as is" in its present condition); and **(iii)** carefully assess your financial position and risk with your attorney, accountant or financial advisor.

**D. MULTIPLE OFFERS:** At times Buyers may write offers on more than one property even though the Buyer intends to purchase only one. This may occur in a short sale when the approval process can take a considerable amount of time, or it could also occur in a hot market when the Buyer is having difficulty getting an offer accepted. While it is not illegal to make offers on multiple properties with intent to purchase only one, the Buyer can be obligated to many Sellers if more than one accepts the Buyer's offers. Additionally, if any offer is accepted without contingencies, and the buyer does not perform, there can be a breach. If the Buyer has not disclosed that the Buyer is writing multiple offers with the intent to purchase only one and the Buyer subsequently cancels without using a contingency created for this purpose, the Seller may claim the Buyer is in breach of contract because the Buyer fraudulently induced the Seller to enter into a contract. This claim may even be possible when the Buyer has all the standard contingencies remaining in the contract, as the Seller could argue that a cancellation for this reason would not fall under the good faith exercise of any of the those contingencies.

**3. SELLER CONSIDERATIONS:**

As a Seller, you are responsible for determining the asking price for your property. Although Brokers may provide you with comparable sales data, generally from information published in the local multiple listing service, you should know that the reporting of this data is often delayed and prices may change, up or down, faster than reported sales indicate. All Sellers should be sure they are comfortable with the asking price they are setting and the price they are accepting. There is not, and cannot be, any guarantee that the price you decide to ask for your property, or the price at which not you agree to sell your property is the highest available price obtainable for the property. It is solely your decision as to how much to ask for your property and at which price to sell your property.

**Buyer/Seller acknowledges each has read, understands and has received a copy of this Market Conditions Advisory.**

| | | |
|---|---|---|
| Buyer | ┌─DocuSigned by:<br>*or Assignee* | Date 2/12/2022 |
| Buyer | _____ | Date _____ |
| Seller | _____ | Date _____ |
| Seller | *Crestlloyd LLC* | Date _____ |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**MCA 12/21 (PAGE 2 OF 2)**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA. 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Opposition of Secured Creditor Inferno Investment, Inc. to Debtor's Motion for an Order: (1) Approving the Sale of the Debtor's Real Property Free and Clear of all Liens, Claims, Encumbrances, and Interests, with the Exception of Enumerated Exclusions; (2) Finding That the Buyer is a Good Faith Purchaser; (3) Authorizing and Approving the Payment of Certain Claims from Sale Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (5) Providing Related Relief; Declaration of Anthony Aquino**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **3/15/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **3/15/2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Overnight Delivery:
Honorable Deborah J. Saltzman
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1634 / Courtroom 1639
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/15/2022 | Lynnette Garrett | /s/ Lynnette Garrett |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Jerrold L Bregman    jbregman@bg.law, ecf@bg.law
- Marguerite Lee DeVoll    mdevoll@watttieder.com, zabrams@watttieder.com
- Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Robert B Kaplan    rbk@jmbm.com
- Jane G Kearl    jkearl@watttieder.com
- Jennifer Larkin Kneeland    jkneeland@watttieder.com, zabrams@watttieder.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- Samuel A Newman    sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com;laefilingnotice@sidley.com
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Victor A Sahn    vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com
- William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com
- David Seror    dseror@bg.law, ecf@bg.law
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com
- Jessica Wellington    jwellington@bg.law, ecf@bg.law

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                 **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "C"





## This page is part of your document - DO NOT DISCARD



# 20181122920



**Pages:**
**0012**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/06/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 50.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 50.00 |



## L E A D S H E E T



201811060250001

00015919186



009447827

## SEQ:
## 20

### DAR - Title Company (Hard Copy)



## THIS FORM IS NOT TO BE DUPLICATED

**T72**

**2**

RECORDING REQUESTED BY
CHICAGO
**WHEN RECORDED, RETURN TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Ste 110
Los Angeles, CA 90010
Attn: Eugene M. Leydiker

APN No. 4369-026-021



11/06/2018

*20181122920*

---

## SUBORDINATION
## AGREEMENT

### (Deed of Trust to Deed of Trust)

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

THIS SUBORDINATION AGREEMENT ("Agreement") is entered into as of October 30, 2018, by and between CRESTLLOYD, LLC, a California limited liability company ("Owner"); and INFERNO INVESTMENT INC. ("Subordinate Lender"); and Hankey Capital, LLC ("Lender").

### RECITALS

**A.** Subject to the terms and provisions of that certain Deed of Trust With Assignment of Rents dated March 13, 2013, executed by Owner, as Trustor, in favor of INFERNO REALTY, L.P. and MAYBACH CORPORATION HOLDINGS, INC., Subordinate Lender's predecessors-in-interest, recorded on March 13, 2013, as Document Number 20130384037 in the official records of the County of Los Angeles, State of California ("Official Records") ("Subordinate Lender's Deed of Trust"), Owner granted to Subordinate Lender's predecessors-in-interest a security interest in and to the property described in Exhibit "A" attached hereto and incorporated herein located at 944 Airole Way, Los Angeles, California (which property, together with all improvements now or hereafter located on the property, is hereinafter collectively referred to as the "Property") to secure Owner's obligations to Subordinate Lender's predecessors-in-interest (the "Subordinated Debt").

**B.** MAYBACH CORPORATION HOLDINGS, INC. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to INFERNO REALTY, L.P. by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated June 2, 2014 and recorded on November 10, 2015 in the Official Records as Document Number 20151375606.

**C.** INFERNO REALTY, L.P. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to Subordinate Lender by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated October 21, 2015 and recorded on November 10, 2015 in the Official Records as Document Number 20151375607.

**D.** Owner has executed or will execute a Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents ("Lender's Deed of Trust") securing, among other things, Owner's obligations to Lender as set forth in that certain Promissory Note dated October 25, 2018, in favor of Lender, in the principal amount of Eighty Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00) (the "Note"). Lender's Deed of Trust is being recorded in the Official

1

94109

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225 reached

ZOE

Records concurrently herewith. The Note and the Lender's Deed of Trust are collectively referred to herein as the "Loan Agreement".

E.    As a condition to Lender making a Loan (the "Loan"), to be secured by, among other things, the Lender's Deed of Trust (the "Senior Debt"), Lender requires that Lender's Deed of Trust be unconditionally and at all times remain a lien or charge upon the Property, prior and superior to all the rights of Subordinate Lender under its deed of trust and that Subordinate Lender specifically and unconditionally subordinates its deed of trust to the lien or charge of Lender's Deed of Trust.

F.    Subordinate Lender and Owner agree to the subordination in favor of Lender.

**NOW THEREFORE,** for good and valuable consideration and the receipt and adequacy of which is hereby acknowledged, and to induce Lender to make the Loan, Owner and Subordinate Lender hereby agree for the benefit of Lender as follows:

**Section 1.    Subordination.** Lender's Deed of Trust securing the Note in favor of Lender, shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to Subordinate Lender's Deed of Trust.

**Section 2.    Entire Agreement.** This Agreement shall be the whole agreement with regard to the subordination of Subordinate Lender's Deed of Trust to the lien or charge of Lender's Deed of Trust, and shall supersede and cancel, but only insofar as would affect the priority of Lender's Deed of Trust, any prior agreements as to such subordination, including, without limitation, those provisions, if any, contained in Subordinate Lender's deed of trust which provide for the subordination of the deed of trust to a deed or deeds of trust or to a mortgage or mortgages.

**Section 3. Lien Subordination.** Subordinate Lender intentionally and unconditionally waives, relinquishes and subordinates all of Subordinate Lender's right, title and interest in and to the Property to the lien or charge of Lender's Deed of Trust, upon the Property and understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination, specific loans and advances are being and will be made by Lender and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination.

**Section 4. Rights Upon Insolvency.** In the event of (1) any insolvency, bankruptcy, receivership, liquidation, reorganization, arrangement, assignment for the benefit of creditors, or other similar proceeding relative to the Owner or its property (as defined in the Loan Agreement), or (2) any proceeding for the voluntary or involuntary liquidation, dissolution or other winding up of the Owner whether or not involving insolvency or bankruptcy proceedings, then and in any such event:

(a) the principal amount of, and all interest on, and all other amounts in respect of, the Senior Debt (including interest thereon accruing after the commencement of any such proceeding, whether or not such interest shall be allowed in such proceeding) shall be paid in full before any payment or distribution of any character, whether in cash, securities or other property, shall be made in respect of the Subordinated Debt; and

(b) any payment or distribution of any character, whether in cash, securities or other property, which would otherwise (but for the terms hereof) be payable or deliverable in respect of Subordinated Debt (including any payment or distribution in respect of the Subordinated Debt by reason of any other indebtedness of the Owner being subordinated to the Subordinated Debt), shall be paid or delivered directly to the Lender, or its representatives, until the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt shall have been paid in full and the Subordinate Lender or any other holder of the Subordinated Debt

2

irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, conservators and others having authority in the premises to effect all such payments and deliveries.

**Section 5. Owner Obligations.** Owner agrees that, in the event that any note or other obligation of the Owner not evidencing Senior Debt, or any portion thereof, shall become due and payable before its expressed maturity for any reason, Owner will give prompt notice, in writing, of such occurrence to the Lender.

**Section 6.    Rights of Lender.**

(a)    Subordinate Lender further declares, agrees and acknowledges for the benefit of the Lender, that Lender, in making disbursement pursuant to the Loan Agreement (whether obligatory or optional), is under no obligation or duty to, nor has Lender represented that it will, see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds, an any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part.

(b)    Except as otherwise provided herein, so long as any of the Senior Debt shall remain unpaid, Lender may at all times exercise any and all powers and rights which it now has or may hereafter acquire with respect to the Loan Agreement, any other security instrument, including, but not limited to deed of trust or mortgage, Collateral Security Agreement, or Membership Interest Pledge Agreement (collectively, "Security Document"), or any of the collateral subject to the Loan Agreement or any other Security Document without having to obtain any consent or approval of the Subordinate Lender and without any accountability to the Subordinate Lender, nor shall it have any liability to the Subordinate Lender for any action taken or failure to act with respect to this Agreement, the Loan Agreement, any other Security Document or the aforesaid collateral.

**Section 7. Constructive Trust.** If, notwithstanding the provisions of this Agreement, any payment or distribution of any character (whether in cash, securities or other property) shall be received by the Subordinate Lender in contravention of the terms of this Agreement, such payment or distribution shall not be commingled with any asset of the Subordinate Lender, but shall be held in trust for the benefit of, and shall be paid over or delivered and transferred to, the Lender, or its representatives or agents, for application to the payment of all Senior Debt remaining unpaid, until the principal amount of, and all interest and premium (including interest thereon accruing after the commencement of any proceedings described herein) on, and all other amounts in respect of, the Senior Debt shall have been paid in full.

**Section 8.    Successors and Assigns.** This Agreement, without further reference, shall pass to and may be relied on and enforced by any transferee or subsequent holder of the Senior Debt and the Subordinated Debt.

**Section 9. Modification.** The terms of this Agreement, the subordination effectuated hereby, and the rights of the Lender and the obligations of the Subordinate Lender arising hereunder, shall not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Loan Agreement, any other Security Document or any other instrument or document executed or delivered pursuant thereto.

**Section 10. Notices.** All notice, consents, approvals, requests, demands, instruments or other communications to be made, given or furnished pursuant to, under or by virtue of their Agreement (each, a "Notice") shall be in writing and shall be deemed given or furnished if addressed to the party intended to receive the same at the address or such party as set forth below (i) upon receipt when personally delivered at such address, or (ii) one (1) business day after the date of delivery of such notice to a nationwide, reputable commercial courier service:

3

| Lender: | HANKEY CAPITAL, LLC |
| | 4751 Wilshire Blvd., Suite 110 |
| | Los Angeles, CA 90010 |
| | Attention: Eugene M. Leydiker |
| | |
| Subordinate Lender: | INFERNO INVESTMENT INC. |
| | 95-4 Chemin de Kandahar |
| | Mont-Tremblant, Quebec J8E 1E2 |
| | |
| Owner: | CRESTLLOYD, LLC |
| | c/o Skyline Development |
| | 8981 W. Sunset Blvd., Suite 303 |
| | West Hollywood, CA 90069 |
| | Attn: Nile Niami |

Any party may change the address to which any notice is to be delivered to any other address within the United States of America by furnishing written notice of such change at least fifteen (15) days prior to the effective date of such change to the other parties in the manner set forth above, but no such notice of change shall be effective unless and until received by such other parties. Notices may be given on behalf of any party by its attorneys.

Section 11.    **Miscellaneous.** This Agreement may not be amended or modified orally but may be amended or modified only in writing, signed by all parties hereto. No waiver of any term or provision of this Agreement shall be effective unless it is in writing, making specific reference to this Agreement and signed by the party against whom such waiver is sought to be enforced. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. This Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

Section 12.    **Definitions.**    Terms used in this Agreement and not defined herein shall have the respective meanings ascribed to them in the Loan Agreement. The recitals hereto shall be a part of this Agreement.

Section 13.    **Termination.** This Agreement shall terminate upon the final and indefeasible payment in full of the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt.

Section 14.    **Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS AGREEMENT, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT HERETO.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof.

4

NOTE: THIS AGREEMENT MAY BE EXECUTED IN COUNTERPARTS.

[SIGNATURES COMMENCE ON THE FOLLOWING PAGE.]

5

**OWNER:**

CRESTLLOYD, LLC,
a California limited liability company

By: _____

Nile Niami, Manager

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                          )

County of LOS ANGELES )

On OCTOBER 30, 2018 before me, Nigel Gibbs, Notary Public
　　　Date　　　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

Personally Appeared _____ Nile Niami _____
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　Signature of Notary Public

> NIGEL GIBBS
> Notary Public - California
> Los Angeles County
> Commission # 2164239
> My Comm. Expires Oct 4, 2020

6

**SUBORDINATE LENDER:**

**INFERNO INVESTMENT INC.**

By: _____

Name: Julien Remillard

Title: Director

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                                    )

County of_____)

On_____before me, _____
　　　　　　*Date*　　　　　　　　　　　　　*Here Insert Name and Title of the Officer*
Personally Appeared _____
　　　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)  is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
　　　　　　　　　*Signature of Notary Public*

7

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_ }

On _October 30, 2018_ before me, _Nigel Gibbs, Notary Public_,
   Date                                     Here Insert Name and Title of the Officer

personally appeared _Julien LeMilland_
                              Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

```
NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020
```

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

*Place Notary Seal and/or Stamp Above*

---

**OPTIONAL**

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Subordination Agreement_

Document Date: _10/25/18_ _____ Number of Pages: _10_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____      Signer's Name: _____
□ Corporate Officer – Title(s): _____      □ Corporate Officer – Title(s): _____
□ Partner – □ Limited □ General                    □ Partner – □ Limited □ General
□ Individual          □ Attorney in Fact            □ Individual          □ Attorney in Fact
□ Trustee             □ Guardian or Conservator    □ Trustee             □ Guardian or Conservator
□ Other: _____                  □ Other: _____
Signer is Representing: _____          Signer is Representing: _____

---

©2018 National Notary Association

10

LENDER:

HANKEY CAPITAL, LLC

By: _____
W. Scott Dobbins, President

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California          )

County of Los Angeles        )

On November 1, 2018 before me, T. Douglas, notary public
　Date　　　　　　　　　　　　　 *Here Insert Name and Title of the Officer*
Personally Appeared　 W. Scott Dobbins
　　　　　　　　　　 *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.



T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
　　　　　　 *Signature of Notary Public*

8

## EXHIBIT "A"

## PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

9

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS
OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET
FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID
WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

10

1

# PROOF OF SERVICE OF DOCUMENT

2

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

3

4

A true and correct copy of the foregoing document entitled **RESPONSE TO OBJECTIONS TO DEBTOR'S MOTION FOR AUTHORITY TO DISBURSE FUNDS TO HANKEY CAPITAL, LLC, A SENIOR SECURED CREDITOR** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

5

6

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 26, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

7

8

9

- **Kyra E Andrassy     kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com**
- **Todd M Arnold     tma@lnbyg.com**

10

- **Jerrold L Bregman     jbregman@bg.law, ecf@bg.law**
- **Marguerite Lee DeVoll     mdevoll@watttieder.com, zabrams@watttieder.com**

11

- **Karol K Denniston     karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com**

12

- **Oscar Estrada     oestrada@ttc.lacounty.gov**

13

- **Danielle R Gabai     dgabai@danninggill.com, dgabai@ecf.courtdrive.com**
- **Thomas M Geher     tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com**

14

- **David B Golubchik     dbg@lnbyg.com, stephanie@lnbyb.com**

15

- **James Andrew Hinds     jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com**

16

- **Robert B Kaplan     rbk@jmbm.com**
- **Jane G Kearl     jkearl@watttieder.com**

17

- **Jennifer Larkin Kneeland     jkneeland@watttieder.com, zabrams@watttieder.com**
- **Michael S Kogan     mkogan@koganlawfirm.com**

18

- **Noreen A Madoyan     Noreen.Madoyan@usdoj.gov**
- **John A Moe     john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com**

19

20

- **Samuel A Newman     sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com;laefilingnotice@sidley.com**
- **Ryan D O'Dea     rodea@shulmanbastian.com, lgauthier@shulmanbastian.com**

21

- **Sharon Oh-Kubisch     sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com**

22

- **Hamid R Rafatjoo     hrafatjoo@raineslaw.com, bclark@raineslaw.com**
- **Ronald N Richards     ron@ronaldrichards.com, 7206828420@filings.docketbird.com**

23

- **Victor A Sahn     vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com**

24

- **William Schumacher     wschumac@milbank.com, autodocketecf@milbank.com**

25

- **David Seror     dseror@bg.law, ecf@bg.law**
- **Zev Shechtman     zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com**

26

- **Mark Shinderman     mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com**

27

- **Lindsey L Smith     lls@lnbyb.com, lls@ecf.inforuptcy.com**

28

- **United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com**
- **Jessica Wellington    jwellington@bg.law, ecf@bg.law**

**2. SERVED BY UNITED STATES MAIL**: On **May 26, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 26, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 26, 2022 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                         **F 9013-3.1.PROOF.SERVICE**