ZEV SHECHTMAN (State Bar No. 266280)
zs@DanningGill.com
DANIELLE R. GABAI (State Bar No. 339242)
DGabai@DanningGill.com
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Showroom Interiors, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:21-bk-18205-DS |
| CRESTLLOYD, LLC, | Chapter 11 |
| Debtor. | **REQUEST FOR PAYMENT OF CHAPTER 11 ADMINISTRATIVE EXPENSES OF SHOWROOM INTERIORS, LLC AND DECLARATION OF JULIAN BUCKNER IN SUPPORT THEREOF** |
| | [No Request for Hearing Pursuant to Court Order, doc. no. 288] |

Showroom Interiors, LLC dba Vesta ("Showroom" or "Vesta") hereby respectfully submits its request for payment of Chapter 11 administrative expenses. This request is supported by the below declaration of Julian Buckner, Vesta's CEO, and the attached exhibits.

1.      Vesta is an industry leader in luxury home staging and private design. Vesta provides furniture staging for some of the largest and most expensive luxury home sales in Los Angeles.

2.      On or about September 4, 2020, Vesta entered a Staging Services and Lease Agreement (the "Agreement") with Crestlloyd, LLC (the "Debtor"), by which the Debtor leased staging furniture from Vesta for the property located at 944 Airole Way, Los Angeles, CA 90077

1    (the "Property"). A true and correct copy of the Agreement is attached as Exhibit "A" to

2    Declaration of Julian Buckner.

3        3.    At installation in or around November 2020, Vesta employees took photos and

4    compiled an inventory list of all the furniture installed at the Property. Exhibit "B."

5        4.    After the October 26, 2021 petition date, Vesta continued to provide its furniture to

6    the Debtor as staging for the marketing and sale of the residence.  Vesta agreed to provide its

7    ongoing staging services and the use of its property only pursuant to the terms of its contract with

8    the Debtor, and requiring the Debtor to abide by its obligations to Vesta on a postpetition go-

9    forward basis.

10        5.    On or about December 6, 2021, Showroom Interiors, LLC filed a proof of claim in

11    the Debtor's bankruptcy for payment in the amount of $548,070.00 to cure the Debtor's default as

12    of the petition date.  On or about January 13, 2022, Showroom Interiors, LLC filed an amended

13    proof of claim for payment in the amount of $717,488.37 and an attachment reflecting certain

14    missing inventory and pricing used for the calculation of damages.  A true and correct copy of the

15    amended proof of claim is attached as Exhibit "C" hereto.

16        6.    On January 1, 2022, well after the petition date, the Property experienced a pool

17    leakage which caused damage to Vesta's staging furniture onsite at the time. The date of the pool

18    leakage and the resulting damage was confirmed by Miles Staglik of Sierra Constellation Partners,

19    LLC as reflected in Exhibit "D" attached hereto.

20        7.    Many of the furniture pieces were custom and damaged beyond repair, as reflected

21    in the pictures attached hereto as Exhibit "E".  Most of the damaged property was damaged by the

22    pool leak, although some of the damaged property was damaged because it was exposed to the

23    outdoor elements and not properly protected by the Debtor.

24        8.    On or about January 10, 2022, Mr. Buckner emailed Mr. Staglik a list of items with

25    visible water damage. In response, Mr. Staglik advised Mr. Buckner that he needed to "file an

26    insurance claim." See Exhibit "F."

27

28

9.    On or about February 17, 2022, Mr. Staglik asked Mr. Buckner to provide him with Vesta's damages including a list of items damages with photos and corresponding dollar amounts to file an insurance claim. See Exhibit "G."

10.    On or about March 10, 2022, Mr. Buckner inquired with Mr. Staglik regarding the status of the insurance claim and asked Mr. Staglik what to do with the segregated inventory.  Mr. Staglik advised Vesta to set the damaged inventory aside. See Exhibit "H."  In compliance with that instruction, Vesta has been storing the damaged inventory, taking up floor place at Vesta's warehouse.  This space costs Vesta $1.65 per square foot per month.  Vesta estimates about 6,000 square feet being used to store damaged inventory at a cost of $9,900 per month for about six months, resulting in an additional $59,400 in expense to Vesta.

11.    Only in or about May of 2022, about four months after the Debtor originally told Vesta that it was submitting the claim to insurance did the Debtor finally tell Vesta that the Debtor's deductible was $250,000 and, therefore, the Debtor was not going to be submitting the claim to insurance.  Vesta has submitted its claim to its insurance company and reserves the right to add its insurance company as an administrative claimant and/or assign this claim to the insurance company.

12.    Vesta incurred additional costs in having the furniture sampled and tested for mold by a company called Mold Technical Services, Inc. ("MTS"). MTS Technician Jasson Walke conducted a mold/moisture investigation on January 18, 2022, which revealed the presence of Aspergillus (fungi) and Penicillium (contaminant/ opportunistic pathogen) spores. That cost was $2,110.  The report concluded that the spores found are believed to have been caused by active water exposure. The full report is attached as Exhibit "I" hereto.

13.    The total cost in damage to the furniture is $258,773.04, as reflected in inventory list attached as Exhibit "J" hereto, which includes a list of the furniture damaged, cost of the furniture, and additional costs incurred in mold sampling.

14.    Administrative expenses include the "actual and necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1).  The main activity in this estate was selling the property.  The staging services were necessary for the successful sale of the property.  Damage to

1  property caused by an operating debtor constitutes an administrative expense.  *See*, *e.g.*, *In re*

2  *Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 475–78 (Bankr. D. Del. 2006) (administrative expense

3  awarded for improper care of leased equipment).

4         15.     The $258,773.04 cost of the furniture, plus the $59,400.00 in storage expense, plus

5  the $2,110.00 cost of the mold reports adds up to **$320,283.04**, which is the total request made by

6  Vesta.

7

8  DATED:  June 3, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

9

10

11                                        By:    */s/ Danielle R. Gabai*

12                                               DANIELLE R. GABAI
                                                 Attorneys for Showroom Interiors, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JULIAN BUCKNER

I, Julian Buckner, hereby declare as follows:

1.      I am over 18 years of age and have personal knowledge of the facts set forth below. If called to testify, I would and could competently testify thereto.

2.      I am the Founder and Chief Executive Officer of Showroom Interiors, LLC dba Vesta ("Showroom" or "Vesta").

3.      Vesta is an industry leader in luxury home staging and private design.  Vesta provides furniture staging for some of the largest and most expensive luxury home sales in Los Angeles.  Staging services are typical in sales of luxury homes.  Proper staging can make a significant difference in the ultimate purchase price.  Often buyers of the homes purchase some or all of the furniture and accessories which we provide.

4.      On or about September 4, 2020, Vesta entered a Staging Services and Lease Agreement (the "Agreement") with Crestlloyd, LLC (the "Debtor"), by which the Debtor leased staging furniture from Vesta for the property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property"). A true and correct copy of the Agreement is attached as Exhibit "A" hereto.

5.      At installation in or around November 2020, Vesta employees took photos and compiled an inventory list of all the furniture installed at the Property. Exhibit "B."

6.      After the October 26, 2021 petition date, Vesta continued to provide its furniture to the Debtor as staging for the marketing and sale of the residence.  Vesta agreed to provide its ongoing staging services and the use of its property only pursuant to the terms of its contract with the Debtor, and requiring the Debtor to abide by its obligations to Vesta on a postpetition go-forward basis.

7.      On or about December 6, 2021, Showroom Interiors, LLC filed a proof of claim in the Debtor's bankruptcy for payment in the amount of $548,070.00 to cure the Debtor's default as of the petition date. On or about January 13, 2022, Showroom Interiors, LLC filed an amended proof of claim for payment in the amount of $717,488.37 and an attachment reflecting certain missing inventory and pricing used for the calculation of damages.  A true and correct copy of the amended proof of claim is attached as Exhibit "C" hereto.

8.    On January 1, 2022, well after the petition date, the Property experienced a pool leakage which caused damage to Vesta's staging furniture onsite at the time. The date of the pool leakage and the resulting damage was confirmed by Miles Staglik of Sierra Constellation Partners, LLC as reflected in Exhibit "D" attached hereto.  Most of the damaged property was damaged by the pool leak, although some of the damaged property was damaged because it was exposed to the outdoor elements and not properly protected by the Debtor.

9.    Many of the furniture pieces were custom and damaged beyond repair, as reflected in the pictures attached hereto as Exhibit "E".

10.    On or about January 10, 2022, I sent emailed Miles a list of items with visible water damage. In response, Miles advised me that he needed to "file an insurance claim." See Exhibit "F."

11.    On or about February 17, 2022, Miles asked me to provide him with Vesta's damages including a list of items damages with photos and corresponding dollar amounts to file an insurance claim. See Exhibit "G."

12.    On or about March 10, 2022, I inquired with Miles regarding the status of the insurance claim and asked Miles what to do with the segregated inventory.  Miles advised me to set the damaged inventory aside. See Exhibit "H."  We have been storing the damaged inventory, taking up floor place at Vesta's warehouse.  This space costs us $1.65 per square foot per month.  I estimate about 6,000 square feet being used to store damaged inventory at a cost of $9,900 per month for about six months, resulting in an additional $59,400 in expense to Vesta.

13.    Only in or about May of 2022, about four months after the Debtor originally told Vesta that it was submitting the claim to insurance did the Debtor finally tell Vesta that the Debtor's deductible was $250,000 and, therefore, the Debtor was not going to be submitting the claim to insurance.  Vesta has submitted its claim to its insurance company and reserves the right to add its insurance company as an administrative claimant and/or assign this claim to the insurance company.

14.    Vesta incurred additional costs in having the furniture sampled and tested for mold by a company called Mold Technical Services, Inc. ("MTS"). MTS Technician Jasson Walke

1  conducted a mold/moisture investigation on January 18, 2022, which revealed the presence of

2  Aspergillus (fungi) and Penicillium (contaminant/ opportunistic pathogen) spores. That cost is

3  $2,110. The report concluded that the spores found are believed to have been caused by active

4  water exposure. The full report is attached as Exhibit "I" hereto.

5      15.      The total cost in damage to the furniture is $258,773.04, as reflected in inventory list

6  attached as Exhibit "J" hereto, which includes a list of the furniture damaged, cost of damage, and

7  additional costs incurred in mold sampling.

8

9      I declare under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.

11      Executed on this 3rd day of June, 2022, at _Los Angeles_, California.

13                                      JULIAN BUCKNER

# EXHIBIT A



VESTΛ

### STAGING SERVICES AND LEASE AGREEMENT

This Staging Services and Lease Agreement ("**Agreement**") provides for staging and decorating services, and the delivery, installation and rental of furniture and furnishings ("**Inventory**").

It is understood that 944 Airole Way, Los Angeles, CA 90077 ("**the Property**") is for sale and that collectively Yvonne Niami and Crestlloyd LLC ("**Homeowner**"), has entered into this Agreement with Showroom Interiors LLC ("**VESTA HOME**"), a Delaware Limited Liability Company, to stage the Property for the purpose of selling the Property. Homeowner represents and warrants that Homeowner is the legal owner of the property, and hereby personally guarantees the obligations under this Agreement. If the Homeowner is not a natural person (e.g., an LLC, LP, or Corporation), VESTA HOME requires that a natural person that is a significant owner and/or officer of the entity that is the Homeowner of the Property to personally guarantee the obligations under this Agreement.

1. **Initial Staging Fee:** In addition to the consideration already paid, Homeowner agrees to pay to VESTA HOME an additional non-refundable fee for its Staging Services in the sum of $950,000 ("**Initial Staging Fee**") for staging the Property. The Initial Staging Fee is due according to the following terms:

   - $317,000 due immediately upon execution of this contract ("**Tranche 1**")
   - $317,000 due immediately upon Vesta submitting bills of lading showing the furniture referenced in Addendum A ("Custom Furniture Schedule") has been shipped ("**Tranche 2**")
   - $316,000 due immediately upon Vesta completing installation of the furniture at Property ("**Tranche 3**")

   As part of the Initial Staging Fee, Vesta Home is custom manufacturing furniture specifically as requested by Homeowner in Addendum A ("Custom Furniture Schedule").

2. **Total Square Footage:** Homeowner attests the total square footage of the home is 110,000 SF ("**Total Square Footage Staged**"). If the entire Property is not staged, then Addendum B lists all areas of the Property that are included in this Agreement. In the event **Total Square Footage Staged** is misstated in this contract, Vesta Home reserves the right to increase the Initial Staging Fee and Rental Fee proportionally to the misstatement.

3. **Estimated Installation Dates:** VESTA HOME anticipates that it will resume installing the **Inventory** no later than 2 weeks from the date this contract is executed and the first payment of $317,000 is received ("**Estimated New Installation Date**"). VESTA HOME will not schedule the installation until this agreement is signed. The delivery and installation of the Inventory will not be confirmed until the Initial Staging Fee is fully paid. If the initial staging fee is not received ten (10) business days prior to the scheduled installation date, VESTA HOME has the right to postpone the installation to the first available delivery day after receipt of payment of the full installation fee. For the avoidance of doubt, the **Confirmed Installation Start Date** will be defined as the first day VESTA HOME employees began the installation of furniture and the Initial Staging Term will begin no later than 5 days after the first day VESTA HOME employees began the installation of furniture ("**Initial Staging Term Start Date**").

   Homeowner acknowledges that the furniture referenced in Addendum A ("Custom Furniture Schedule") will not arrive until an estimated four to six (4-6) weeks after this contract is executed and the first payment of $317,000 **(Tranche 1)** is received by Vesta Home. Additionally, Homeowner acknowledges that it must pay Vesta Home Tranche 2 as soon as Vesta provides bills of lading for the furniture, and that Vesta Home will not install any of the furniture in the Custom Furniture Schedule until Tranche 2 is paid.

4. **Change Requests:** Vesta Home will work closely with Yvonne Niami and Katherine Rotondi to select furntirue for the home. However, by entering into this Agreement, the Parties agree that VESTA HOME shall, in its sole and absolute discretion, determine the design for the staging of the Property and the selection and installation of the **Inventory**. If changes are requested and deemed required for any of the following reasons, a $2,500 fee per instance ("**Change Fee**") will apply:

-1-



EXHIBIT A

08

- Homeowner requests a change in the **Confirmed Installation Start Date** less than 48 hours of the **Confirmed Installation Start Date**
- VESTA HOME arrives at the Property for installation, and the Property is not ready for installation. A project's readiness for installation will be determined by VESTA HOME at its sole discretion and shall generally mean that the appropriate access is provided, there is no longer construction onsite, there is nothing impeding the installation of furniture, and professional cleaning has occurred.
- Any design changes requested after the second to last day of install.
- If Homeowner requires a move-out in less than the subsequently mentioned 10 day period

5. **Cancellation Prior to Install:** Significant work is performed by Vesta Home prior to the installation of the Inventory at the Property. Because of the size and highly specific nature of this project, if the Agreement is cancelled at any time there will be no refund, unless Vesta Home materially breaches the terms of this contract.

6. **Inventory Removal:** VESTA HOME shall have the right to remove the **Inventory** after any breach of the obligation to pay any amounts due under this Agreement. Additionally, in connection with the sale of the Property, the Homeowner shall as part of the purchase documents notify the buyer of the Property that the **Inventory** is subject to this Agreement and that VESTA HOME has the absolute right hereunder to remove the **Inventory** from the Property before or after the close of escrow. Homeowner shall provide VESTA HOME with written notice at least ten (10) calendar days prior to the anticipated move-out date. Prior to the removal of the **Inventory**, Homeowner shall tag any of Homeowner's property to ensure that VESTA HOME does not inadvertently remove Homeowner's personal property. VESTA HOME shall not be liable to Homeowner for any damages if VESTA HOME moves untagged property.

7. **Acknowledgement of Post-Installation Inventory Summary and Rental Start Date:** Homeowner is exclusively responsible for placing the Property on the market and expressly acknowledges and agrees that no action by VESTA HOME, such as a delayed **Estimated New Installation Date** shall inhibit their decision to list the property. Homeowner agrees to hold VESTA HOME harmless from any damages relating to a delayed listing, whether or not VESTA HOME is believed to have caused that delay .Once the installation is complete, Homeowner shall promptly inspect the installation to assure that VESTA HOME has complied with its obligations under this Agreement. Homeowner shall acknowledge receipt of inventory via the **Post-Installation Summary** which will be delivered to Homeowner via email upon the completion of the installation confirming that all of the Inventory has been delivered. All items listed on said **Post-Installation Summary** List is herein referred to as "**Inventory**". Unless an objection is raised in writing and sent to hello@vestahome.com within two (2) calendar days following the **Post-Installation Summary**, any objection to the installation shall be waived.

8. **Homeowner's Liability:** Except as provided below, Homeowner expressly acknowledges that Homeowner shall be liable for the safety and security of the **Inventory** that has been delivered by VESTA HOME and is located on the Property and has not been removed from the Property by VESTA HOME. As such, any damage to and/or loss, theft, or destruction of the **Inventory**, from any cause, including criminal conduct or acts of persons authorized to be on the Property shall be the sole responsibility of Homeowner. VESTA HOME strongly recommends that Homeowner maintain appropriate insurance to cover this risk.

9. **Indemnity of VESTA HOME:** Homeowner shall protect, indemnify and hold harmless VESTA HOME and VESTA HOME 's officers, directors, shareholders, participants, partners, members, managers, affiliates, employees, representatives, invitees, agents and contractors free and from and against any and all claims, damages, liens, stop notices, liabilities, losses, costs and expenses, including without limitation reasonable attorneys' fees, reasonable expert fees and court costs (collectively **"Claims"**), resulting from access to or inspection of the Property by any person either explicitly or implicitly allowed access to the Property by Homeowner except to the extent such Claims are caused solely by the willful misconduct or gross negligence of VESTA HOME. Homeowner's indemnification obligations set forth herein shall survive the termination of this Agreement and the Close of Escrow for the sale of the Property. In the event that VESTA HOME is required to retain counsel in connection with any Claims, Homeowner will reimburse Vesta Home for reasonable defense costs.

10. **Liability Insurance Requirement:** As a condition to the installation by VESTA HOME of any furniture, Homeowner shall have in place comprehensive liability insurance for personal injuries sustained on the Property in the amount of One Million Dollars

-2-



($3,000,000).  Prior to the installation of any furniture at the Property by VESTA HOME or VESTA HOME 's authorized agents, contractors or representatives Homeowner shall furnish VESTA HOME with certificates of insurance evidencing the requisite liability insurance referenced above, as well as an endorsement issued by the appropriate insurer (1) naming Showroom Interiors, LLC dba VESTA HOME as an additional insured as to the comprehensive liability coverage, and (2) indicating that Homeowner's insurance shall be primary coverage and VESTA HOME's insurance shall be excess and non-contributory with regard to claims in connection with VESTA HOME 's activities on the Property pursuant to this Agreement. Homeowner shall provide written notice to VESTA HOME at least thirty (30) days prior to any cancellation or reduction in coverage.

11. **Customer Protection Plan** VESTA HOME's **Inventory** at the Property must be protected. VESTAHOME offers a **Customer Protection Plan** for a monthly fee equal to Two Percent (2%) per month for each month that the furniture remains on the Property. The **Customer Protection Plan** covers accidental damage to the **Inventory**. Homeowner shall remain liable for any damage to, loss, and/or destruction of the **Inventory** as a result of any other cause, including without limitation, Homeowner's intentional acts, and/or Homeowner's negligence, and/or conscious disregard for the protection of the **Inventory**. Homeowner shall also remain liable if any piece of **Inventory** is lost, stolen or not returned to VESTA HOME for any reason. In the event of a failure to pay the **Customer Protection Plan** fee on or before the first day of each month during which the fee is due, the Customer Protection Plan will automatically terminate on the tenth (10th) day of that month without further notice or action by VESTA HOME.

If Homeowner wishes to opt out of the VESTA HOME's customer protection plan, and to assume all liability for the **Inventory**, the Homeowner must initial here _____.

12. **Irrevocable Escrow Instruction:** If the Property is the subject of an escrow pursuant to which it will be sold during any time period in which Homeowner is in default in payment of any amount due under this agreement, VESTA HOME may deliver a copy of this Agreement along with the most recent invoice delivered to Homeowner to the Escrow Holder. This provision shall constitute an irrevocable escrow instruction pursuant to which Homeowner authorizes and directs the Escrow Holder to remit payment, on behalf of the Homeowner from the sale of the Property, for the amounts submitted by VESTA HOME as herein set forth.

13. **Credit Card Authorization:** Prior to the delivery and installation of the **Inventory**, VESTA HOME shall require a completed Credit Card Authorization Form.  The credit card authorization shall not be a limit, express or implied, on Homeowner's liability under this Agreement. VESTA HOME is authorized to charge the credit card on file for any and all unpaid rent, insurance and/or additional fees described in this Agreement.

14. **Reasonable and Timely Access to Property:** VESTA HOME shall have access to the Property for the purposes of designing the staging, installation, inspection, and/or replacement of the **Inventory**, and for the removal of the **Inventory** at the end of the Staging Term.  VESTA HOME shall have the right to utilize any lock box placed on the Property to gain access and carry out its rights and obligations under this Agreement. Prior to the **Estimated New Installation Date** and move-out dates, Homeowner shall notify VESTA HOME in writing ten (10) calendar days prior to the move-in and move-out dates, of any physical or regulatory restrictions or special circumstances that may affect VESTA HOME's ability to move-in or move-out, such as truck access, truck size limitations, tree clearance, property management rules and regulations, and delivery time restrictions. Homeowner agrees to pay any extra moving costs associated with any restrictions or special circumstances which including but not limited to parking permits, parking tickets received due to parking inability, HOA/elevator fees, etc. For the avoidance of doubt, notwithstanding the above, immediately following the **Staging Term Expiration Date** VESTA HOME shall have the right to remove its **Inventory** immediately, and at any time during any subsequent rental period.

15. **Inventory Removal in the Event of Default:** If Homeowner and/or Responsible Party fails to perform any of its obligations under this Agreement, including, but not limited to the payment of the Initial Staging Fee and/or **Inventory** Rental Fee, Homeowner or Responsible Party shall automatically be deemed in default **("Default")**.  Upon **Default**, VESTA HOME shall have the right to immediately take possession of the **Inventory** and recover from Homeowner or Responsible Party any unpaid amounts due hereunder, including but not limited to the Initial Staging Fee, **Inventory** Rental Fees and any other amounts that may be due together with any additional costs incurred in connection with the removal of the **Inventory** prior to the expiration of this Agreement without further notice.  Homeowner irrevocably expressly authorizes VESTA HOME to have access to the Property to

-3-

effectuate the removal of the **Inventory**. In the event of Default, any fees or other amount that had previously been agreed to be paid through escrow will be immediately owed to VESTA HOME.

16.**Stipulated Value of Loss of Inventory:** Homeowner and/or Responsible Party expressly acknowledges and agree that, by failing or refusing to return all or any part of the **Inventory** to VESTA HOME, or by refusing to allow VESTA HOME access to its **Inventory** in the event of Default or following the **Staging Term Expiration Date,** THAT BASED UPON THE CIRCUMSTANCES NOW EXISTING, KNOWN AND UNKNOWN, IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ESTABLISH VESTA HOME'S DAMAGES BY REASON OF HOMEOWNER'S FAILURE TO RETURN THE **INVENTORY** DELIVERED TO THE PROPERTY UNDER THIS AGREEMENT. ACCORDINGLY, BUYER AND SELLER AGREE THAT IN THE EVENT OF HOMEOWNER'S FAILURE TO RETURN THE **INVENTORY** DELIVERED TO THE PROPERTY UNDER THIS AGREEMENT, IT WOULD BE REASONABLE AT SUCH TIME TO AWARD SELLER IN AN AMOUNT EQUAL TO THREE (3) TIMES THE STATED RETAIL VALUE AS SET FORTH IN THE **POST-INSTALLATION INVENTORY SUMMARY** OF ANY ITEM OF **INVENTORY** NOT RETURNED. WITH RESPECT TO ANY DELAY IN RETURNING **INVENTORY,** THE STIPULATED RENTAL RATE FOR THE PERIOD OF DELAY IS THREE (3) TIMES THE RENTAL RATE IN EFFECT IMMEDIATELY PRIOR TO THE DATE ON WHICH THE **INVENTORY** WAS TO BE MADE AVAILABLE TO BE PICKED UP BY VESTA HOME.

17.**Advertisement:** VESTA HOME has the right to advertise that the Property was staged by VESTA HOME, and place signs and business cards at the Property indicating that the **Inventory** is for sale. Homeowner shall not remove, obscure or deface the signs or permit any other person to do so. Homeowner will inform broker that no photography or filming by anyone other than VESTA HOME is permitted, except for virtual tours and photography for real estate sales ads. VESTA HOME will have the right to film, photograph, and record furniture staged in the property for its own use. Client releases all rights to any film, photograph, or other content produced by VESTA HOME at the property. Any other photography or filming must be with VESTA HOME's prior express written permission which may be conditioned on VESTA HOME being credited in the on-screen credits with the following "Property Designed and Furnished by VESTA HOME" and receipt of a copy of the completed photography or filming. If any photography or filming for any purposes outside of selling the home (including but not limited to filming a movie, TV show, or photo shoot) is undertaken without VESTA HOME's written permission, this will constitute a Default and VESTA HOME will be entitled to compensation of two (2) times the original Staging Fee. Homeowner agrees to provide VESTA HOME with all photography and or filming shot in the home and expressly grants VESTA HOME permission to use these visual assets in its own advertising. Any violation of any part of this section will constitute a Default.

18.**Conversion to Inventory Lease:** The Initial Staging Fee includes **Inventory** rental for staging purposes only through December 31, 2020 (**"Initial Staging Term"**). The Staging Term Expiration Date will be defined as the final day of the Initial Staging Term. If this Agreement remains in effect for beyond the end of the Initial Staging Term, VESTA HOME, in its sole discretion, and on five (5) days written notice to Homeowner (**"Notice Period"**), with or without cause, may terminate this Agreement, and at the end of the Notice Period, remove the **Inventory**. If VESTA HOME does not exercise this option and Homeowner does not instruct VESTA HOME to remove the **Inventory** then the provisions of this **INVENTORY LEASE** portion shall apply to the amounts due and payments to be made by Homeowner to VESTA HOME.

19.**Inventory Rental Payments:** Following the expiration of the Initial Staging Term, Homeowner agrees to pay to VESTA HOME a non-refundable monthly fee for **Inventory** rental in the sum of fifty thousand dollars ($50,000) per month (plus applicable taxes) (**"Inventory Rental Fee(s)"**). **Inventory** rental will automatically begin on the first day following the expiration of the Initial Staging Term (**"Inventory Rental Start Date"**). Seventeen thousand five hundred ($17,500) dollars of the Inventory Rental Fee is due immediately upon the **Inventory Rental Start Date.** The first **Inventory Rental Fee** shall be pro-rated based upon the **Inventory** Rental Start Date such that all rent due for the balance of the month in which the **Inventory Rental Start Date** occurs plus the rent for the first calendar month thereafter is paid. All subsequent **Inventory** Rental Fees shall be invoiced for the full month and are due on the first of each month (**"Rent Due Date"**). The remaining balance of thirty-two thousand five hundred ($32,500) will accrue monthly and be due immediately to Vesta at the sooner of, Vesta removing its furniture from the Property or the Property being sold or delisted from the market for any reason. No refunds and/or prorations will be made on **Inventory** Rental Fee payments if the pick-up of the **Inventory** occurs other than on the last day of any calendar month.

Any **Inventory** Rental Fee not received by VESTA HOME within ten (10) calendar days of the Rent Due Date shall incur a late fee of 10% of the monthly **Inventory Rental Fee.** Any **Inventory Rental Fee** not received by VESTA HOME within thirty (30) calendar days of the **Rent Due Date** shall constitute Default under this Agreement.

-4-



11

Effective on the first day of the 13th month following the Staging Term Expiration Date, the **Inventory** Rental Fee shall increase by 15%, and thereafter, shall increase an additional 10% every six months ("**Inventory Rental Fee Increase**").

20. **Use of furniture for non-staging purposes:** This contract provides for the Homeowner's use of **Inventory** for staging purposes only. Any use of the **Inventory** for any purpose other than staging is strictly prohibited and will constitute a breach of contract and Default under the terms of this Agreement. For the avoidance of doubt, non-staging purposes include, without limitation any occupancy of the Property (i.e., including by Homeowner, guests or any other tenants using or living on the furniture), holding any party or other event, posting of the Property on any rental site (such as AirBnB, HomeAway, VRBO etc.), and/or any use of the Property as a set for film and/or television purposes).

Any use of the **Inventory** for other non-staging purposes, requires written permission from VESTA HOME and a fully executed Luxury Lease contract. Without written permission and a new Luxury Lease contract, any non-staging use of **Inventory** shall be considered a breach of this Agreement and will automatically be deemed a "Luxury Lease". In such event, Homeowner will be required to immediately pay a $10,000 security deposit, a $5,000 first use fee, and the **Inventory** Rental Fee will be increased retroactively to an amount equal to four (4) times, the **Inventory** Rental Fee, beginning on the **Confirmed Installation Start Date**. All accrued payments plus applicable taxes shall become due and payable immediately. Use of **Inventory** for any adult content is strictly prohibited, and, in addition to the above fees, Homeowner will be obligated to purchase all **Inventory** used for adult content purposes at the full retail value stated in the **Post-Installation Inventory Summary.**

### GENERAL PROVISIONS

21. **Assignment of Agreement:** This Agreement is not assignable without the express prior written consent of VESTA HOME.

22. **Counterpart Signatures, Facsimile Signatures, Electronic Signatures:** This Agreement may be executed in counterparts, by facsimile, and/or electronically. All counterpart, facsimile or electronic signatures shall have equal validity and enforceability as a fully-signed original Agreement.

23. **Entire Agreement; Written Modification Required:** This Agreement, which includes the Appendices hereto, is the only agreement between the Parties relating to the subject matter hereof and constitutes the entire agreement between the Parties and is the final expression of the Parties' understanding. No prior discussions or communications shall form any part of this Agreement, unless expressly noted herein. Any modification to this Agreement must be made on a formal Amendment which (i) specifically refers to the provision of this Agreement to be amended and (ii) is signed by all Parties and must be countersigned by a Vice President or higher of VESTA HOME. For the avoidance of doubt, no email, text message, verbal or other communication regarding a modification of this contract will be valid without the aforementioned executed Amendment.

24. **Severability.** This Agreement will be construed and enforced in accordance with the laws of the State of California. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

25. **Choice of Law and Venue.** This Agreement and the rights of the parties hereunder shall be determined, governed by and construed in accordance with the internal laws of the State of California without regard to conflicts of laws principles. Any dispute under this Agreement shall be resolved solely by a court having its situs within Los Angeles County, California, and the Parties consent and submit to the jurisdiction of any court located within such venue.

26. **WAIVER OF RIGHT TO JURY TRIAL.** GUARANTOR AND VESTA HOME EACH WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY OF ANY CONTRACT OR TORT CLAIM, COUNTERCLAIM, CROSS-COMPLAINT OR CAUSE OF ACTION IN ANY ACTION, PROCEEDING OR HEARING E3ROUGIIT BY EITHER GUARANTOR OR VESTA HOME AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN

-5-

12

ANY WAY CONNECTED TO THIS AGREEMENT, THE RELATIONSHIP OF GUARANTOR AND VESTA HOME OR HOMEOWNERS USE OR OCCUPANCY OF THE PROPERTY, INCLUDING ANY CLAIM OF INJURY OR DAMAGE OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY CURRENT OR FUTURE LAW, STATUTE, REGULATION, CODE OR ORDINANCE.

27. **Attorneys' Fees and Costs.** If any action of any kind is commenced to enforce or interpret, or in any way relates to this Agreement, the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and costs.

28. **Limits on VESTA HOME's Liability for Damage to Property.** Homeowner understands, acknowledges, and accepts that in the process of installing and moving in or moving out the **Inventory**, floors may be scuffed or scratched, walls may be marked or scratched, and the Property may suffer some incidental damage. Although VESTA HOME will in good faith attempt to minimize any such damage, Homeowner hereby waives any claim against VESTA HOME from any such incidental damage.

29. **Confidential Nature of Agreement.** Homeowner acknowledges and agrees that this Agreement and all of its terms shall be and remain confidential. Except when VESTA HOME provides its prior express written authorization, Homeowner shall not disclose this Agreement and/or its terms to anyone or any entity other than Homeowner's immediate family members, Homeowner's agent(s) and/or employees, if applicable, and/or Homeowner's tax, financial, and/or legal advisors.

30. **Notices.** Any written notice required to be given to VESTA HOME shall be emailed to VESTA HOME at hello@vestahome.com. Any written notice required to be given to Homeowner shall be emailed to Homeowner at the email address indicated in this Agreement. All parties are required to advise the other of any change in email addresses.

31. **Expenses.** If this contract is placed in the hands of an attorney for collection, Homeowner promises to pay the collection costs, including attorneys' fees, even though no legal proceeding is filed on this contract.

32. **Personal Property** In the event that VESTA HOME is requested or required to move Homeowner's personal property, Homeowner hereby acknowledges having been advised of the risk of harm for activities requested by or for Homeowner and agrees that VESTA HOME is not responsible for any damages to the customer's furniture or property which may occur during the moving process, and is released from all liability in this regard. Homeowner hereby releases VESTA HOME and all of its employees from liability associated with any of the activities described above. Homeowner assumes all liability for any above damages which may occur.

33. **No Warranties or Guarantees.** Homeowner understands that VESTA HOME does not and cannot guarantee success or any particular result in connection with the sale of the Property. VESTA HOME makes no warranty or guarantee expressed or implied as to the successful sale of the Property.

SIGNATURE PAGE

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the dates set forth below.

| | |
|---|---|
| Dated: 12/31/2020 | VESTA HOME<br>By: _Julian Buckner_<br>(sign)  Julian Buckner<br>Name: ___CEO___<br>Its Authorized Agent |
| Dated: 9/4/20 | HOMEOWNER:<br>By:<br>(sign)<br>Name: _Yvonne Niami_<br>Title _for Crestlloyd LLC_ |

-6-

Dated: _9/4/20_

RESPONSIBLE PERSON & GUARANTOR:

By: _____
(sign)
Name: _Yvonne Niami for_
_Creashoja LLC_

-7-

## Addendum B
### Areas to be Staged

**Dining room:** Add consoles and accessories along wall

**Cigar room:** Add table and accessories

**Family room:** Add accessories, consoles, tables behind each couch, console along wall with accessories

**Outdoor area off family room:** Staged with outdoor furniture per schedule provided by Vesta

**Pool deck:** outdoor furniture per schedule provided by Vesta

**Outdoor seating off dining room:** outdoor sofa, chairs and table

**Living room:** full staging with accessories, flower arrangement, and furniture per scheduled provided by Vesta

**Library:** replace desk, other existing furniture is acceptable

**Gallery 1+2:** Benches per schedule provided by Vesta

**Under stairs on East Side of house:** staged as sitting area

**Under stairs on main floor West Side of house:** art piece (not provided by Vesta) or flower arrangement on table

**Guest bedroom west side facing ocean:** full bedroom staging

**Master bed sitting:** add table and accessories

**Master bathrooms:** remove consoles, add standing mirror to HER bathroom

**His and Her closet:** accessorize, floral arrangement, purses (not provided by Vesta), etc.

**Master bedroom:** fully stage

**2nd master bedroom sitting area:** desk / seating per scheduled provided by Vesta

**Upstairs sitting east side of house:** sitting area per scheduled provided by Vesta

**Corner near upstairs sitting area East side:** art piece (not provided by Vesta) or floral arrangement

**Secondary bedrooms:** fully stage

**Downstairs sitting area:** stage as sitting area per scheduled provided by Vesta

**Entry to elevator:** add console with accessories

**Downstairs seating off wine room:** replace existing items, stage as fireplace seating

**Downstairs bar:** barstools

**Wine tasting room:** add table

**Gym:** add yoga mats (no equipment to be provided by Vesta)

**Spa rooms:** add 1 massage table per room

**Billiards area:** add barstools

NOTE: Vesta Home will not be responsible for staging guest house, nightclub, staff quarters or any other areas not included above.



-2-

15

**Addendum C**
**PERSONAL GUARANTY**
**OF**
**STAGING SERVICES AND STAGING SERVICES AND LEASE AGREEMENT**

THIS **PERSONAL GUARANTY OF STAGING SERVICES AND STAGING SERVICES AND LEASE AGREEMENT** (this "Guaranty") is made for valuable consideration by each of the persons whose signatures appear at the end of this document (each a "Guarantor"), in favor of SHOWROOM INTERIORS, LLC which does business as VESTA HOME ("VESTA HOME"), in connection with that certain STAGING SERVICES AND LEASE AGREEMENT dated JULY 10, 2020 the ".STAGING SERVICES AND LEASE AGREEMENT"), pursuant to which VESTA HOME has provided Inventory to Yvonne Niami. ("Homeowner"), at 944 Airole Way, Los Angeles, CA 90077 (" the " Property").

1.      Guarantor does hereby absolutely, unconditionally and irrevocably guarantee and promise to VESTA HOME the due, punctual and full performance by Homeowner of each and all of the agreements, covenants, obligations, liabilities and promises of Homeowner to be performed under the STAGING SERVICES AND LEASE AGREEMENT and the truth and accuracy of each and all of the representations and warranties of Homeowner contained in the STAGING SERVICES AND LEASE AGREEMENT, including without limitation, the payment of any and all other sums payable thereunder.

2.      Guarantor does hereby agree that, without the consent of or notice to Guarantor and without affecting any of the obligations of Guarantor hereunder: (a) any term, covenant or condition of the STAGING SERVICES AND LEASE AGREEMENT may be amended, compromised, or otherwise altered by VESTA HOME and Homeowner, and Guarantor does guarantee and promise to perform all the obligations of Homeowner under the STAGING SERVICES AND LEASE AGREEMENT as so amended, compromised, or altered; (b) any guarantor of or party to the STAGING SERVICES AND LEASE AGREEMENT, this Guaranty or released, substituted or adced; (e) any right or remedy under the STAGING SERVICES AND LEASE AGREEMENT, this Guaranty or any other instrument or agreement may be exercised, not exercised, impaired, modified, limited, destroyed, or suspended; (d) VESTA HOME or any other Person may deal in any manner with Homeowner, any guarantor, any party to the STAGING SERVICES AND LEASE AGREEMENT or any other Person.

3.      Guarantor hereby waives and agrees not to assert or take advantage of (a) any right to require VESTA HOME to proceed against Homeowner or any other Person or to pursue any other remedy before proceeding against Guarantor; (b) the defense of any statute of limitations in any action under or related to this Guaranty or the STAGING SERVICES AND LEASE AGREEMENT; (c) any right or defense that may arise by reason of the incapacity, lack of authority. death or disability of Homeowner or any other Person; (d) any right or defense arising by reason of the absence, impairment, modification, limitation, destruction or cessation (in bankruptcy, by an election or remedies, or otherwise) of the liability of Homeowner, of the subrogation rights of Guarantor or of the right of Guarantor to proceed against Homeowner for reimbursement; and (e) the benefits of any statutory provision or procedural rule limiting the liability of a surety.

4.      Guarantor hereby waives and agrees not to assert or take advantage of any right or defense based on the absence of any or all presentments, demands (including demands for performance), notices (including notices of adverse change in the financial status of Homeowner or other facts which increases the risk to Guarantor, notices of nonperformance and notices of acceptance of this Guaranty) and protests of each every kind.

5.      Guarantor does hereby agree that if claim is ever made upon VESTA HOME for repayment or recovery of any amount or amounts received by VESTA HOME in payment or on account of the amounts hereby guaranteed and VESTA HOME repays all or part or such amount by reason of (a) any judgment, decree or order or of any court or administrative body having jurisdiction or (b) any settlement or compromise of any such claim effected by VESTA HOME with any such claimant (including Homeowner or any other guarantor), then in such event Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon Guarantor. notwithstanding the expiration or termination of the STAGING SERVICES AND LEASE AGREEMENT or other instrument evidencing any of the amounts hereby guaranteed and Guarantor shall be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by VESTA HOME.

6.      Guarantor does hereby agree that for VESTA HOME's benefit and the benefit of Homeowner and to the fullest extent permitted by law, Guarantor irrevocably and unconditionally waives any and all rights of subrogation, reimbursement, indemnification, contribution, or similar rights against Homeowner or its assets (arising by contract or by law or otherwise) as a consequence of this Guaranty, including, without limitation, the payment or performance of any obligations hereby guaranteed, and further agrees that Guarantor will not assert any such right of subrogation, reimbursement, indemnification, contribution or similar right at any time in respect to the STAGING SERVICES AND LEASE AGREEMENT. It is agreed that VESTA HOME's rights under this Paragraph 6 are such that the remedy at law for breach thereof would be inadequate, and that VESTA HOME shall be entitled to specific performance and enforcement thereof, including, without limitation, the imposition of a restraining order or injunction. Nothing in this Paragraph 6 shall diminish or relieve any obligations

-1-

16

or liabilities of Homeowner to VESTA HOME. VESTA HOME and Homeowner and their respective successors and assigns are intended third party beneficiaries of the waivers and agreements made in this Paragraph 6 and VESTA HOME's rights under this Paragraph 6 shall survive the expiration or termination of the STAGING SERVICES AND LEASE AGREEMENT.

7.      The liability of Guarantor and all rights, powers and remedies of VESTA HOME hereunder and the liability and obligations of Homeowner and all rights, powers and remedies of VESTA HOME under the STAGING SERVICES AND LEASE AGREEMENT and under this Guaranty shall be in addition to all rights, powers and remedies given to VESTA HOME by law.

8.      This Guaranty applies to, inures to the benefit of and binds all parties hereto, their heirs, devisees, legatees, executors, administrators, representatives, successors and assigns (including any purchaser at judicial foreclosure or trustee's sale or a holder of a deed in lieu thereof). This Guaranty may be assigned by VESTA HOME voluntarily or by operation of law without reducing or modifying the liability of Guarantor hereunder.

9.      This Guaranty shall constitute the entire agreement between Guarantor and VESTA HOME with respect to the Guarantor's guaranty of performance of all of Homeowner's obligations under the STAGING SERVICES AND LEASE AGREEMENT. No provision of this Guaranty or right of VESTA HOME hereunder may be waived nor may any guarantor be released from any obligation hereunder except by a writing duly executed by an authorized officer, director, trustee or partner of VESTA HOME.

10.     If more than one Person signs this Guaranty, each such Person shall be deemed a Guarantor and the obligation of all such Guarantor shall be joint and several. When the context and construction so requires, all words used in the singular herein shall be deemed to have been used in the plural. The word "Person" as used herein shall include an individual, company, firm, association, partnership, corporation, trust or other legal entity of any kind whatsoever.

11.     Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall nevertheless be effective.

12.     The waiver or failure to enforce any provision of this Guaranty shall not operate as a waiver of any other breach of such provision or any other provisions hereof.

13.     If either VESTA HOME or Guarantor participates in an action against the other arising out of or in connection with this Guaranty, the one prevailing shall be entitled to have and recover from the other reasonable attorneys' fees, collection costs and other costs incurred in and in preparation for the actions.

14.     Guarantor agrees that all questions with respect to this Guaranty shall be governed by, and deciding in accordance with the laws of the State of California.

15.     If Guarantor executes this Guaranty as a partnership, each individual executing this Guaranty on behalf of the partnership represents and warrants that he or she is a general partner of the partnership and that this Guaranty is binding upon the partnership in accordance with its terms. If Guarantor executes this Guaranty as a corporation, each of the Persons executing this Guaranty on behalf of the corporation covenants and warrants that the corporation is a duly authorized and existing corporation, that the corporation has and is qualified to transact business in the State of California, that the corporation has full right, authority and power to enter into this Guaranty and to perform its obligations hereunder, that each Person signing this Guaranty on behalf of the corporation is authored so that this Guaranty is binding upon the corporation in accordance with its terms.

16.     In the event Homeowner shall become insolvent or shall be adjudicated a bankrupt, or shall file a petition for reorganization, arrangement or other relief under any present or future provisions of the United States Bankruptcy Code, or if such a petition be filed by creditors of Homeowner, or if Homeowner shall seek a judicial readjustment of the rights of its creditors under any present or future Federal or State law, or if a receiver of all or part of Homeowner's properly or assets is appointed by the State or Federal court, no such proceeding or action taken therein shall modify, diminish, or in any way affect the liability of Guarantor under this Guaranty, and the liability of Guarantor with respect to the STAGING SERVICES AND LEASE AGREEMENT shall be of the same scope as if Guarantor had itself executed the STAGING SERVICES AND LEASE AGREEMENT as the named Homeowner therein, and no "rejection" and/or "termination" of the STAGING SERVICES AND LEASE AGREEMENT in any of the proceedings referred to in this Paragraph 16 shall be effective to release and/or terminate the continuing liability of Guarantor to VESTA HOME under this Guaranty. If, in connection with any of the circumstances referred to in this Paragraph 16, VESTA HOME should request that Guarantor execute a new STAGING SERVICES AND LEASE AGREEMENT for the balance of the STAGING SERVICES AND LEASE AGREEMENT Term (unaffected by any such "rejection" and/or "termination" in any of such proceedings), but in all other respects identical with the STAGING SERVICES AND LEASE AGREEMENT, Guarantor shall do so as the named Homeowner under such new STAGING SERVICES AND LEASE AGREEMENT (irrespective of the fact that the STAGING SERVICES AND LEASE AGREEMENT may have been "rejected" or "terminated" in connection with any of the proceedings referred to in this Paragraph 16). Should Guarantor fail or re ruse to execute such a new STAGING SERVICES AND LEASE AGREEMENT,

-2-

17

without limiting any of the legal or equitable remedies available to VESTA HOME on account of such failure or refusal, Guarantor acknowledges and agrees that VESTA HOME may seek specific performance of the covenant of Guarantor contained in this Paragraph 16 to execute such a new STAGING SERVICES AND LEASE AGREEMENT.

17.    Any legal action or proceeding with respect to this Guaranty may be brought in the courts of the State of California for the County of Los Angeles or, if the requisites of jurisdiction are obtained, in District Court of the United States of America for the Central District of California and, by the execution and delivery of this Guaranty, Guarantor hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforementioned courts. Nothing herein sluff, however, affect the right of VESTA HOME to commence legal action or otherwise proceed against Guarantor in any other jurisdiction.

18.    **WAIVER OF RIGHT TO JURY TRIAL.** GUARANTOR AND VESTA HOME EACH WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY OF ANY CONTRACT OR TORT CLAIM, COUNTERCLAIM, CROSS-COMPLAINT OR CAUSE OF ACTION IN ANY ACTION, PROCEEDING OR HEARING E3ROUGIIT BY EITHER GUARANTOR OR VESTA HOME AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS GUARANTY, THE RELATIONSHIP OF GUARANTOR AND VESTA HOME OR HOMEOWNERS USE OR OCCUPANCY OF THE PROPERTY, INCLUDING ANY CLAIM OF INJURY OR DAMAGE OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY CURRENT OR FUTURE LAW, STATUTE, REGULATION, CODE OR ORDINANCE.

**SIGNATURE PAGE**

| | |
|---|---|
| Dated: 9/4/20 | RESPONSIBLE PERSON & GUARANTOR:<br><br>By: _____<br>(sign)<br>Name: _Yvonne Niami for CrosHloyd LLC_ |
| Dated: _____ | RESPONSIBLE PERSON & GUARANTOR:<br><br>By: _____<br>(sign)<br>Name: _____ |
| Dated: _____ | RESPONSIBLE PERSON & GUARANTOR:<br><br>By: _____<br>(sign)<br>Name: _____ |

## PAYMENT SUMMARY

Homeowner agrees to pay the **Initial Staging Fee** upon execution of this Agreement and the **Inventory Rental Fee** in the manner selected below by initialing the option selected.

———————  If by check, pay to VESTA HOME: 4900 E 50th St, Vernon, CA 90058

———————  If credit card, please provide card information by filling out Addendum A below.

Any **Inventory Rental Fee** payment not received by VESTA HOME within ten (10) calendar days of the Rent Due Date shall constitute a Default under this Agreement and shall be subject to a late charge of ten percent (10%) of the overdue **Inventory Rental Fee** amount.  Homeowner shall have three (3) business days following written notice to Homeowner to cure the Default (**"Rent Cure Date"**).

**Incoming Wire and ACH Instructions:**
Bank Name: City National Bank
ABA/Routing Number: ███
Beneficiary Name: Showroom Interiors, LLC DBA- VESTA HOME
Beneficiary Account Number: ███
SWIFT Code (international): ███

**Special Instructions for Receiving Bank:**
Bank Address and Contact Info:
City National Bank
1315 Lincoln Boulevard, Suite 110
Santa Monica, CA 90401
310.264.2959
Nadine Wasada: Operations Manager, Technology and Venture Capital Banking

### CREDIT CARD AUTHORIZATION

Date: _____

Name on Credit Card: _____

Billing Address: _____

Phone: _____ Fax: _____

Email address: _____

Credit Card Type:

Credit Card #: _____

Expiration Date : _____

Security Code : _____ on reverse side of card.

Signature of Cardholder : _____

-4-

*I authorize* Showroom Interiors LLC ("VESTA HOME") *to charge my credit card for any amount due resulting from this staging/design agreement, including, but not limited to any outstanding balances on the staging contract or any damages done to the furniture. I agree by signing below to personally guarantee to VESTA HOME any obligations that may become due.*

*Upon acceptance of this application, the Homeowner agrees to the payment terms stated by the creditor, VESTA HOME. A 10% finance charge will apply on any open balances beyond terms. I understand that I am fully responsible for all balances on my account, and I am liable for additional charges that may be incurred by VESTA HOME as a result of collection and/or legal proceedings.*

**CREDIT CARD REQUIREMENT:** Vesta Home requires a credit card on file for each individual named on the contract regardless of preferred payment method. If payment is made by credit card for the Initial Staging Fee any of the charges incurred under this Agreement, the credit cardholder agrees to pay and authorizes VESTA HOME to charge a convenience fee equal to 2.95% of each credit card charge.

**PLEASE NOTE:** In the event of non-payment, the credit card on file will be charged for any outstanding balance.    By signing this Agreement, I hereby authorize the use of the above credit card for any overdue payment.

*I have read and understand the above conditions.*

Print Full Name : _Yvonne Niami for CrestWayd LLC._

Date : _9/4/20_

Signature of Cardholder : _____

# EXHIBIT B

| Room | Name | Quanity |
|------|------|---------|
| Bar/gameroom | Alexius Stool I | 2 |
| Bar/gameroom | Alexius Stool II | 2 |
| Bar/gameroom | Alexius Stool III | 2 |
| Bar/gameroom | Alexius Stool IV | 2 |
| Bar/gameroom | Candle \| Small | 1 |
| Bar/gameroom | CREED COFFEE TABLE | 2 |
| Bar/gameroom | Decorative Bowl \| Medium | 1 |
| Bar/gameroom | Glass Chessboard | 1 |
| Bar/gameroom | Hexagon Top Side Table | 2 |
| Bar/gameroom | Lexie Lounge Chair \| Velvet \| Bl | 2 |
| Bar/gameroom | Lorde 3 Seater Sofa \| Miles Sha | 2 |
| Bar/gameroom | Marble Stone \| Short Black | 1 |
| Bar/gameroom | Marble Stone \| Tall Black | 3 |
| Bar/gameroom | Mirror Tray \| Medium | 1 |
| Bar/gameroom | Severa Lounge Chair \| Black Ve | 8 |
| Bar/gameroom | Tall Flower Vase \| Black | 2 |
| Bedroom 1 | 2 Drawer Nightstand Large | 2 |
| Bedroom 1 | Bench \| Jenga Domino | 1 |
| Bedroom 1 | Blanket | 3 |
| Bedroom 1 | Candle \| Large | 1 |
| Bedroom 1 | Candle \| Small | 1 |
| Bedroom 1 | Coral Chair \| Black Coating | 4 |
| Bedroom 1 | Decorative Box \| Leather \| Sma | 2 |
| Bedroom 1 | Eastern King \| Wall Panel V Cha | 1 |
| Bedroom 1 | Eastern King Box | 2 |
| Bedroom 1 | Eastern King Mattress | 1 |
| Bedroom 1 | Floral \| Small | 1 |
| Bedroom 1 | Jane Lounge Chair \| Sienna Fa | 2 |
| Bedroom 1 | Jane Sofa | 1 |
| Bedroom 1 | Marble Object \| Medium | 2 |
| Bedroom 1 | Round Coffee Table \| White Ma | 1 |

| | | |
|---|---|---|
| Bedroom 1 | Rug 10x14 Silver | 1 |
| Bedroom 1 | Shell Table Lamp | 2 |
| Bedroom 2 (master) | 36" Round Ottoman | White | 1 |
| Bedroom 2 (master) | Alta Bench | Dresden Glacier | 1 |
| Bedroom 2 (master) | Amara Coffee Table | 1 |
| Bedroom 2 (master) | Arthur 3 Drawer Nightstand | 2 |
| Bedroom 2 (master) | Blankets | 2 |
| Bedroom 2 (master) | Cipres Left Arm 3 Seater | 1 |
| Bedroom 2 (master) | Cipres Right Arm 3 Seater | 1 |
| Bedroom 2 (master) | Coffee Table Books | 5 |
| Bedroom 2 (master) | Crystal Objects | Small | 7 |
| Bedroom 2 (master) | Eastern King | Chevron BED | C | 1 |
| Bedroom 2 (master) | Eastern King Box | 2 |
| Bedroom 2 (master) | Eastern King Mattress | 1 |
| Bedroom 2 (master) | Hovenia Hand Woven Rug | 12' | 2 |
| Bedroom 2 (master) | Modern Marble Floor Lamp | 2 |
| Bedroom 2 (master) | Petrified Wood Accessories | 14 |
| Bedroom 2 (master) | Piet Boon Sofa | White | 1 |
| Bedroom 2 (master) | Soma Square Lounge Chair | 2 |
| Bedroom 3 | 5.5' | XXX Console | Black | 1 |
| Bedroom 3 | ART | 37" x 55" | Dark Wood | 1 |
| Bedroom 3 | Blanket | 2 |
| Bedroom 3 | Coffee Table Books | 5 |
| Bedroom 3 | Crystal Accessory | 1 |
| Bedroom 3 | Eastern King Box | 2 |
| Bedroom 3 | Eastern King Mattress | 1 |
| Bedroom 3 | Eastern King Wall Panel BED | | 1 |
| Bedroom 3 | Floating Plank Mirror | Black | 1 |
| Bedroom 3 | Gamond Tufted Bench - Grey | 1 |
| Bedroom 3 | Hexagon Side Table | 1 |
| Bedroom 3 | Leather Shagreen Tray | LARG| | 1 |

| Bedroom 3 | Leather Shagreen Tray \| SMALL | 1 |
|-----------|-------------------------------|---|
| Bedroom 3 | Marble and Glass Demilune | 1 |
| Bedroom 3 | Petrified Object | 1 |
| Bedroom 3 | Sofa \| Dresden Glacier | 1 |
| Bedroom 3 | Winston Nightstand \| Charcoal | 2 |
| Bedroom 4 | 20" Dia \| Janise Matte Black Sid | 1 |
| Bedroom 4 | 5.5' \| Sybil Console \| Antique Br | 1 |
| Bedroom 4 | Abstract Ceramic Spiral Decor \| | 1 |
| Bedroom 4 | Abstract Ceramic Spiral Decor \| | 1 |
| Bedroom 4 | Ardent Lounge Chair \| Black | 1 |
| Bedroom 4 | Bench \| Sienna 900 \| Brushed S | 1 |
| Bedroom 4 | Box B Acrylyc Container | 1 |
| Bedroom 4 | BY1601-2 \| 37" x 55" \| Balck Fra | 1 |
| Bedroom 4 | Coffee Table Book | 2 |
| Bedroom 4 | Eastern King \| Wall Panel Tufte | 1 |
| Bedroom 4 | Eastern King Box | 2 |
| Bedroom 4 | Eastern King Mattress | 1 |
| Bedroom 4 | McCartney Nighstand in Black | 1 |
| Bedroom 4 | Modern Accent Table Lamp | 2 |
| Bedroom 4 | Smoked Glass Vase \| Medium | 1 |
| Bedroom 4 | Smoked Glass Vase \| Small | 1 |
| Bedroom 5 | Abstract Sculpture Table Lamp | 2 |
| Bedroom 5 | ART \| 37" x 55" \| Black Frame | 1 |
| Bedroom 5 | Brass Frame Nightstand | 2 |
| Bedroom 5 | Chain Decoration | 1 |
| Bedroom 5 | Decorative Small Boxes | 4 |
| Bedroom 5 | Decorative Vase \| Medium | 1 |
| Bedroom 5 | Eastern King \| Winged \| Velvet ( | 1 |
| Bedroom 5 | Eastern King Box | 2 |
| Bedroom 5 | Eastern King Mattress | 1 |
| Bedroom 5 | Hover Mirror | 1 |

| | | |
|---|---|---|
| Bedroom 5 | Keaton Armless Sofa | 1 |
| Bedroom 5 | Mini Sofa \| Pied De Poule/LP91 | 2 |
| Bedroom 5 | Smoked Vase \| Small | 3 |
| Bedroom 6 | 4" Decorative Bird | 1 |
| Bedroom 6 | 6' Elden Console | 1 |
| Bedroom 6 | 60" Round Mirror \| Matte Black | 1 |
| Bedroom 6 | 7011 Table Lamp | 2 |
| Bedroom 6 | ART \| 48" x 72" \| Dark Wood | 1 |
| Bedroom 6 | Bibiana Side Table \| Black | 2 |
| Bedroom 6 | Cal King \| Waterfall-Lexi \| Wilme | 1 |
| Bedroom 6 | Coffee Table Book | 4 |
| Bedroom 6 | Coral Chair \| Natte Nature \| Silv | 4 |
| Bedroom 6 | Danielle Left Arm Sofa | 1 |
| Bedroom 6 | Encore Silver Rug | 1 |
| Bedroom 6 | Floral Arrangement | 1 |
| Bedroom 6 | Grey Planter \| Medium | 4 |
| Bedroom 6 | Hexagon Side Table | 1 |
| Bedroom 6 | Lexie Bench \| Black | 1 |
| Bedroom 6 | Marble Object \| Small | 1 |
| Bedroom 6 | Minimal Wire Lounge Chair \| Gr | 1 |
| Bedroom 6 | Outdoor U Side Table \| Light Gr | 2 |
| Bedroom 6 | Regular Cal King Boxspring | 2 |
| Bedroom 6 | Regular Cal King Mattress | 1 |
| Bedroom 6 | Smoked Vase \| Small | 1 |
| Bedroom 7 | 60" Round Mirror \| Matte Black | 1 |
| Bedroom 7 | Absstract Art \| 40" x 60" | 1 |
| Bedroom 7 | Abstract Decorative Sculpture \| | 1 |
| Bedroom 7 | Abstract Decorative Sculpture \| | 1 |
| Bedroom 7 | Abstract Decorative Sculpture \| | 1 |
| Bedroom 7 | Amelia Tufted Tier Sofa \| Sapph | 1 |
| Bedroom 7 | ART \| 37" 55" \| Black Frame | 1 |

| | | |
|---|---|---|
| Bedroom 7 | Blanket | 1 |
| Bedroom 7 | Coffee Table \| Smoked Glass | 1 |
| Bedroom 7 | Coffee Table Book | 6 |
| Bedroom 7 | Coral Chair \| Natte Nature \| Silv | 2 |
| Bedroom 7 | Credenza \| Oak Veneer + Bronz | 1 |
| Bedroom 7 | Custom Cal King Bed \| Panama | 1 |
| Bedroom 7 | Ella Console Table | 1 |
| Bedroom 7 | Grey Planter \| Medium | 1 |
| Bedroom 7 | Kliff Faux Marble Side Table \| W | 1 |
| Bedroom 7 | Lazy Susan Swivel Chair \| Dior | 1 |
| Bedroom 7 | Lounge Chair \| Orange Leather | 1 |
| Bedroom 7 | Nightstand \| Walnut \| Brushed E | 2 |
| Bedroom 7 | Outdoor U Side Table \| Light Gr | 1 |
| Bedroom 7 | Regular Cal King Box Spring | 2 |
| Bedroom 7 | Regular Cal King Mattress | 1 |
| Bedroom 7 | Swanson Bench \| Black PU \| Br | 1 |
| Bedroom 7 | Tower Glass Table Lamp \| Silve | 2 |
| Bedroom 7 | Vase \| Medium | 2 |
| Bedroom 7 | White Bowl \| Medium | 1 |
| Bedroom 8 | Cal King \| Waterfall-Lexi \| Wilme | 1 |
| Bedroom 8 | Coffee Table Book | 9 |
| Bedroom 8 | Coral 3 Seater Sofa | 1 |
| Bedroom 8 | Coral Arm Chair \| Dark Grey Fra | 1 |
| Bedroom 8 | Curved Lounge Chair \| Iron Bas | 2 |
| Bedroom 8 | Decorative Vase \| Medium | 3 |
| Bedroom 8 | Floral Arrangement | 1 |
| Bedroom 8 | Grey Planter \| Medium | 1 |
| Bedroom 8 | Iron Montagu Bench \| Jenga | 1 |
| Bedroom 8 | James Outdoor Coffee Table \| D | 1 |
| Bedroom 8 | Rectangular Mirror \| Brushed \| 3 | 2 |
| Bedroom 8 | Regular Cal King Boxspring | 2 |

| | | |
|---|---|---|
| Bedroom 8 | Regular Cal King Mattress | 1 |
| Bedroom 8 | Table Lamp | 2 |
| Bedroom 8 | Zelline Credenza \| Oak Venner | 1 |
| Bedroom 8 | Zelline Nightstand \| Oak Veneer | 2 |
| Bowling alley | Decorative Pot \| White | 1 |
| Bowling alley | Eomer Hive Coffee Table \| Blac | 2 |
| Bowling alley | Glass Face Vase | 1 |
| Bowling alley | Small Floral Arrangement | 4 |
| Bowling alley | Square Tray | 1 |
| bridge | Ceramic Vase | 1 |
| bridge | Marble Abstract Bench | 2 |
| car viewing entry | 60" Round Glass | 1 |
| car viewing entry | Barrera Metal Console \| Matte E | 2 |
| car viewing entry | Basket | 1 |
| car viewing entry | Ceramic Gourd Jar | 1 |
| car viewing entry | Cipres Sectional Daybed | 4 |
| car viewing entry | Decorative Object \| Small | 2 |
| car viewing entry | Mini Sofa \| Pied De Poule/LP91 | 2 |
| car viewing entry | Olive Tree | 1 |
| car viewing entry | Paulownia Pot | 1 |
| car viewing entry | Trevor Iron Dining Table | 1 |
| car viewing entry | X Stool \| Black Pu | 2 |
| car viewing entry | XL Black Planter | 1 |
| cigar room | Black Marble Cone Floor Lamp | 1 |
| cigar room | Black Tray \| Small | 1 |
| cigar room | Blanket | 2 |
| cigar room | Brett Bar Cart \| Brushed Gold \| | 1 |
| cigar room | Chain Decoration \| Small | 2 |
| cigar room | Coffee Table Books | 56 |
| cigar room | Damian Side Table | 1 |
| cigar room | Decorative Urn | 1 |

26

| | | |
|---|---|---|
| cigar room | Decorative Vase \| Black \| Mediu | 2 |
| cigar room | Firenze Leather Lounge Chair \| | 2 |
| cigar room | Marble Object \| Small | 1 |
| cigar room | Marvin Marble Coffee Table \| Ba | 2 |
| cigar room | Miniature Planter | 8 |
| cigar room | Petrified Wood Objects | 4 |
| cigar room | Small Smoked Glass Decoratio | 1 |
| cigar room | Sofa \| LP9128-34 | 2 |
| cigar room | Sylvan Side Table \| Grey | 1 |
| covered bbq | 11" Pottery | 1 |
| covered bbq | 15' Aluminum Outdoor Bar Table | 1 |
| covered bbq | Aluminum Coffee Table \| Dark C | 2 |
| covered bbq | Cali Bar Chair | 12 |
| covered bbq | Fox Bar Chair | 6 |
| covered bbq | Large Glass Bowl | 1 |
| covered bbq | Paulownia Pot | 2 |
| covered bbq | Small Glass Bowl | 1 |
| covered bbq | Titus Outdoor \| Armless \| Light ( | 5 |
| covered bbq | Titus Outdoor \| Left End \| Light | 1 |
| covered bbq | Titus Outdoor \| Left End \| Light | 1 |
| covered bbq | Titus Outdoor \| Ottoman \| Light | 1 |
| covered bbq | Titus Outdoor \| Right End \| Ligh | 2 |
| covered bbq | White Planter \| Medium | 2 |
| dining off wine | Jonna Ceramic Table | 1 |
| dining off wine | Roswell Dining Armchair | 6 |
| dining off wine | Small Glass Planter | 3 |
| Downstairs lounge | Alix Shelf Arm Sectional \| Armle | 3 |
| Downstairs lounge | Alix Shelf Arm Sectional \| Left \| | 2 |
| Downstairs lounge | Alix Shelf Arm Sectional \| Right\| | 1 |
| Downstairs lounge | Black Medium Objects | 7 |
| Downstairs lounge | Blanket | 1 |

| | | |
|---|---|---|
| Downstairs lounge | Felix Lounge Chair \| Cuddle Fu | 1 |
| Downstairs lounge | Grey Planter \| Medium | 1 |
| Downstairs lounge | Marble Box \| Small | 2 |
| Downstairs lounge | Petrified Wood Object | 2 |
| Downstairs lounge | SIDE TABLE | 1 |
| Downstairs lounge | Yves Coffee Tabel \| Smoked Gl | 1 |
| Entry bedroom | 10' x 14' Platinum Silver Rug | 1 |
| Entry bedroom | 60" Round Mirror \| Matte Black | 1 |
| Entry bedroom | Abstract Art \| 40" x 60" | 1 |
| Entry bedroom | Alwin Metal Console \| Anti-Cop | 1 |
| Entry bedroom | ART \|  frame color 3 dark wood | 1 |
| Entry bedroom | ART \| 48" x 72" | 1 |
| Entry bedroom | Black and White Photography | 1 |
| Entry bedroom | Coffee Table Book | 6 |
| Entry bedroom | Dashian Lounge Chair \| Monum | 1 |
| Entry bedroom | Decorative Object \| Small | 1 |
| Entry bedroom | Decorative Vase \| Small | 3 |
| Entry bedroom | Eastern King Box | 2 |
| Entry bedroom | Eastern King Mattress | 1 |
| Entry bedroom | Eastern King Wall Panel Bed \| \ | 1 |
| Entry bedroom | Floral Arrangement | 1 |
| Entry bedroom | Glass Container \| Medium | 1 |
| Entry bedroom | Glass Vase \| Medium | 2 |
| Entry bedroom | Laslow Oak Veneer Bench \| Bla | 1 |
| Entry bedroom | Round Tea Coffee Table | 1 |
| Entry bedroom | Rounded Lounge Chair | 2 |
| Entry bedroom | Shagreen Desk \| Stainless Stee | 1 |
| Entry bedroom | Structured Gear Base Table Lar | 2 |
| Entry bedroom | Tristan Nightstand | 2 |
| family off kitchen | Cashmere Knitted Throw | 1 |
| family off kitchen | Ceramic Gourd Jar | 2 |

| | | |
|---|---|---|
| family off kitchen | Chain Decoration | 2 |
| family off kitchen | Coffee Table Book | 4 |
| family off kitchen | Corset Barstool \| Brushed Gold | 5 |
| family off kitchen | Frosted Orb Decoration | 1 |
| family off kitchen | Glass Object \| Small | 1 |
| family off kitchen | Gold Tray | 1 |
| family off kitchen | Live Edge Coffee Table | 1 |
| family off kitchen | Luxia Side Table \| Black | 1 |
| family off kitchen | Marble & Glass Demilune | 1 |
| family off kitchen | Modern Marble Floor Lamp | 1 |
| family off kitchen | Mortar \| White \| Large | 2 |
| family off kitchen | Mortar \| White \| Medium | 2 |
| family off kitchen | Mortar \| White \| Small | 2 |
| family off kitchen | Petrified | 2 |
| family off kitchen | Rea Bench \| Black Chrome | 1 |
| family off kitchen | Severa Lounge Chair \| Black Le | 2 |
| family off kitchen | Stone Decorative Bowl | 1 |
| family off kitchen | The Alix Sectional \| Armless | 4 |
| family off kitchen | The Alix Sectional \| Left Corner | 3 |
| family off kitchen | The Alix Sectional \| Right Corne | 3 |
| family off kitchen | Wooden Tray | 1 |
| Formal dining | 18' Dining Table Top | 1 |
| Formal dining | Alm Marble Side Table | 2 |
| Formal dining | Estelle Dining Chair | 20 |
| Formal dining | Hauser Table Base | 2 |
| front outdoor | Aluminum Coffee Table \| Dark ( | 2 |
| front outdoor | James Outdoor Armchair | 4 |
| front outdoor | James Outdoor Sofa | 2 |
| front outdoor | Square Planter \| Medium \| Blac | 2 |
| front outdoor | Square Planter \| Medium \| Whit | 2 |
| gallery spaces | Alfonse Small Side Table | 1 |

29

| | | |
|---|---|---|
| gallery spaces | Alte Curved Sofa \| Sapphire | 4 |
| gallery spaces | Aramac Viscose Rug \| 6' x 9' | 1 |
| gallery spaces | Black Tall Vase - Flower | 1 |
| gallery spaces | Blanket | 4 |
| gallery spaces | Chainmail Vase | 1 |
| gallery spaces | Coffee Table Book | 2 |
| gallery spaces | Coffee Table Book | 2 |
| gallery spaces | Damian Side Table | 1 |
| gallery spaces | Daphnes Chair | 2 |
| gallery spaces | Edge Coffee Table \| Matte Whit | 2 |
| gallery spaces | Fur Throw | 2 |
| gallery spaces | Glass Canister | 3 |
| gallery spaces | Marble Face \| Black | 1 |
| gallery spaces | Marianne Leather \| Satin Grey \| | 6 |
| gallery spaces | Olive Tree | 1 |
| gallery spaces | Plank Mirror \| Black | 1 |
| gallery spaces | Small Black Tray | 1 |
| gallery spaces | Sylvan Side Table \| Grey | 3 |
| gallery spaces | XLarge Candle | 1 |
| gallery spaces | XLarge Planter \| Black | 1 |
| Guest house | 5' \| Zora Console | 1 |
| Guest house | 60" Round Mirror \| Matte Black | 1 |
| Guest house | 7' Rectangle Glass Top | 1 |
| Guest house | Alpine Lounge Chair \| Sheep Sl | 2 |
| Guest house | Bench \| Dresden Glacier \| Brush | 1 |
| Guest house | Black Oak 3 Drawer Nightstand | 2 |
| Guest house | Black Plate Side Table | 1 |
| Guest house | Blanket | 1 |
| Guest house | Cal King \| 6" Vertical Channel M | 1 |
| Guest house | Coffee Table Book | 6 |
| Guest house | Coffee Table Book | 2 |

| Guest house | Credenza | Oak Veneer | 1 |
| Guest house | Custom Cal King Pillow Back B | 1 |
| Guest house | Dimitri Credenza | 1 |
| Guest house | Felix Lounge Chair | Cuddle Fu | 1 |
| Guest house | Glass Cube Table Lamp | 2 |
| Guest house | Grey Planter | Medium | 1 |
| Guest house | Hand Dining Table Base | Gold | 2 |
| Guest house | Herst Table Lamp | 2 |
| Guest house | Jacob Left Arm | 1 |
| Guest house | Jacob One Seater Armless | 1 |
| Guest house | Jacob Right Arm Chaise | 1 |
| Guest house | KIOSS Dining Chair | 8 |
| Guest house | Large Crystal Decoration | 1 |
| Guest house | Lenox Counter Stool | 3 |
| Guest house | Marisa Side Table | High Gloss | 1 |
| Guest house | Mozart Coffee Table | 1 |
| Guest house | Oak Veneer Nightstand | Black | 2 |
| Guest house | Petrified Wood Disk | 1 |
| Guest house | Petrified Wood Object | 1 |
| Guest house | Planter Floral Arrangement | Sn | 1 |
| Guest house | Queen | Vertical Channel | Com | 1 |
| Guest house | Rectangular Mirror | Brushed Bi | 1 |
| Guest house | Regular CAl King Box Spring | 2 |
| Guest house | Regular Cal King Boxspring | 2 |
| Guest house | Regular Cal King Mattress | 1 |
| Guest house | Regular Cal King Mattress | 1 |
| Guest house | Regular Queen Boxspring | 1 |
| Guest house | Regular Queen Mattress | 1 |
| Guest house | Resin Abstract Decoration | Dar | 1 |
| Guest house | Resin Decoration | White | HIGH | 1 |
| Guest house | Resin Desoration | White | LOW | 1 |

31

| Guest house | Round Glass Table Lamp | 2 |
|---|---|---|
| Guest house | RUG - Encore \| Ash \| 8x11 | 1 |
| Guest house | RUG - Gladstone Viscose Knot| | 1 |
| Guest house | Small Candle | 1 |
| Guest house | Swanson Bench \| Miles Cobble | 1 |
| Guest house | Tall Shade Table | 2 |
| Guest house | Tower Glass Table Lamp | 2 |
| Guest house | Walnut Nightstand \| Brushed Br | 2 |
| Guest house | White Marble End Table \| Brass | 1 |
| Guest house outdoor | Black Planter \| Black | 2 |
| Guest house outdoor | Double Aston Cord Daybed | 2 |
| Guest house outdoor | Grey Planter \| Medium | 2 |
| Guest house outdoor | Iron Coffee Table \| Black Frame | 1 |
| Guest house outdoor | Rope Arm Chair | 2 |
| Guest house outdoor | Rope Chaise Lounger | 8 |
| Guest house outdoor | Rope Woven Sofa | 3 |
| Guest house outdoor | Single Aston Cord Chaise | 1 |
| gym | Acrylic Tray \| Leather Handle | 1 |
| gym | Black Tray \| Small | 1 |
| gym | Clear Square Tray \| Small | 2 |
| gym | Corset Barstool \| White Leather | 8 |
| gym | Glass Canister \| Medium | 5 |
| gym | Grey Planter \| Medium | 1 |
| gym | Large Tray | 1 |
| gym | Smoked Glass Vase \| Medium | 2 |
| gym | White Bowl \| Medium | 1 |
| Her closet | 5' Acrylic Console | 1 |
| Her closet | Hanz Lounge Chair | 1 |
| Her closet | Luxury Bathroom Set \| Towels \| | 1 |
| Her closet | Medium Metal Crystal Box | 1 |
| Her closet | Plank Mirror in White | 1 |

| | | |
|---|---|---|
| Her closet | Square Stool \| Cuddle Fur Fabr | 2 |
| Her closet | X Bench \| Pink Velvet | 2 |
| His closet | Candle \| small | 2 |
| His closet | Cara Stool \| Blue | 2 |
| His closet | Cara Stool \| White | 1 |
| His closet | Cyrstal Object \| Medium | 3 |
| His closet | Decorative Vase \| Large | 1 |
| His closet | Floating Plank Mirror \| Black | 1 |
| His closet | Grey Planter \| Medium | 1 |
| His closet | Leather Box \| Small | 1 |
| His closet | Luxury Bathroom Set \| Towels \| | 1 |
| His closet | Shagreen Tray | 1 |
| indoor pool | Aluminum Coffee Table \| Dark ( | 4 |
| indoor pool | Liana Chaise \| White | 8 |
| indoor pool | Paulownia Pot | 4 |
| indoor pool | White Planter \| Medium | 5 |
| main living | 6' Calvin Seater Sofa \| LEFT | 4 |
| main living | 6' Calvin Seater Sofa \| RIGHT | 4 |
| main living | 9.8' Walnut Veneer Dining Table | 1 |
| main living | Alfonse Ceramic Side Table \| M | 1 |
| main living | Alta Bench \| Dresden Glacier | 1 |
| main living | Alta Sofa Chair | 2 |
| main living | Baby Grand Piano | 1 |
| main living | Blanket | 4 |
| main living | Calvin Marble Coffee Table \| La | 2 |
| main living | Calvin Marble Coffee Table \| Sn | 2 |
| main living | Candle | 1 |
| main living | Coffee Table Book | 25 |
| main living | Copper Plate Art \| Face | 1 |
| main living | Entry Table | 1 |
| main living | Erin Ottoman \| Yellow | 1 |

| | | |
|---|---|---|
| main living | Hexagon Side Table | 2 |
| main living | Large Clay Pottery | 1 |
| main living | Large Decorative Object | 1 |
| main living | Lorde Lounge Chair | 2 |
| main living | Marbella Coffee Table | 1 |
| main living | Medium Decorative Object | 1 |
| main living | Olive Tree | 1 |
| main living | Petrified Wood Bowl | 2 |
| main living | Piano Bench | 1 |
| main living | Severa Lounge Chair | Sapphire | 2 |
| main living | Small Decorative Object | 3 |
| main living | XLarge Black Planter | 1 |
| main office | Beverly 36" Round Table | Black | 1 |
| main office | Blanket | 1 |
| main office | Coffee Table Book | 226 |
| main office | Decorative Bowl | Small | 2 |
| main office | Dome Table Lamp | Brushed Br | 1 |
| main office | Elden DESK | Iron + Oak Venee | 1 |
| main office | Lounge Chair | Black PU | 2 |
| main office | Marble Objects | Medium | 29 |
| main office | Mclaren Wingback Chair | Black Le | 1 |
| main office | Minimal Wire Small Armchair | Blac | 2 |
| main office | Petrified Wood Object | 40 |
| main office | Statue Bust Decor | 12 |
| main office | Tic Tac Toe Ball | 1 |
| Master bed outdoor | Coral Chair | Natte Nature | Blac | 2 |
| Master bed outdoor | Grey Planter | Medium | 4 |
| Master bed outdoor | James Outdoor 2 Seater Sofa | 1 |
| Master bed outdoor | James Outdoor Arm Lounge | 2 |
| Master bed outdoor | James Outdoor Coffee Table | D | 1 |
| Master bed outdoor | Rope Chaise Lounger | 2 |

| | | |
|---|---|---|
| Master living | Branch Tray \| Bronze | 1 |
| Master living | Coffee Table Book | 4 |
| Master living | Corset Barstool \| White Leather | 4 |
| Master living | Glass Bowls \| Large | 15 |
| Master living | Pea Sofa \| Belvedere Marshma | 2 |
| Master living | Rabbit patchwork fur blanket | 1 |
| Master living | White/Gold Scallop Jar | 1 |
| outdoor living | Noma Hammered Tray \| XL | 1 |
| outdoor living | Rope Woven Aluminum Lounge | 2 |
| outdoor living | Titus Outdoor \| Armless \| Light ( | 5 |
| outdoor living | Titus Outdoor \| Left End \| Light | 2 |
| outdoor living | Titus Outdoor \| Ottoman \| Light | 4 |
| outdoor living | Titus Outdoor \| Right End \| Ligh | 2 |
| outdoor pool | Aelia Rope Woven Sofa | 2 |
| outdoor pool | Aluminum Coffee Table \| Dark ( | 2 |
| outdoor pool | Double Aston Cord Daybed \| Kh | 1 |
| outdoor pool | Eloise Aluminus Outdoor Table | 1 |
| outdoor pool | Grey Planter \| Medium | 6 |
| outdoor pool | Rope Chaise Lounger | 6 |
| outdoor pool | Single AstonCord Chaise \| Ligh | 7 |
| outdoor pool | Wen Dining Chair \| Charcoal | 8 |
| outdoor pool | White Planter \| Medium | 9 |
| roofdeck | 12'x7' Cabana | 4 |
| roofdeck | 84" Aluminum Sofa | 4 |
| roofdeck | Aluminum Coffee Table \| Dark ( | 1 |
| roofdeck | Bar Table Charcoal | 1 |
| roofdeck | Cali Bar Chair | 10 |
| roofdeck | GOLF ZONE | |
| roofdeck | Grey Planter \| Medium | 1 |
| roofdeck | Grey Planter \| Medium | 1 |
| roofdeck | Grey Planter \| Medium | 2 |

35

| | | |
|---|---|---|
| roofdeck | Grey Planter \| Medium | 5 |
| roofdeck | James Outdoor Coffee Table \| D | 2 |
| roofdeck | Outdoor Aluminum Mesh Chais | 10 |
| roofdeck | Outdoor U Side Table \| Black | 3 |
| roofdeck | Outdoor U Side Table \| Charcoa | 1 |
| roofdeck | Outdoor U Side Table \| Charcoa | 5 |
| roofdeck | Outdoor U Side Table \| Light Gr | 1 |
| roofdeck | Outdoor Yun Center \| Sunbrella | 5 |
| roofdeck | Outdoor Yun Corner \| Sunbrella | 8 |
| roofdeck | Outdoor Yun Ottoman \| Sunbrel | 2 |
| roofdeck | Rope Chaise Lounger \| Dark Gr | 6 |
| roofdeck | Yun Outdoor Sectional \| Armles | 2 |
| roofdeck | Yun Outdoor Sectional \| Armles | 1 |
| roofdeck | Yun Outdoor Sectional \| Armles | 5 |
| sitting off wine | Abstract Stone Loop Sculpture | 1 |
| sitting off wine | Acrylic Backgammon Table | 1 |
| sitting off wine | Blanket | 1 |
| sitting off wine | Channel Tufted Sectional \| Otto | 1 |
| sitting off wine | Coffee Table Book | 4 |
| sitting off wine | Decorative Objects \| Small | 2 |
| sitting off wine | Edge Coffee Table \| Black | 2 |
| sitting off wine | Grey Planter \| Medium | 1 |
| sitting off wine | Kennedy Modular Sofa Section: | 5 |
| sitting off wine | Kennedy Modular Sofa Section: | 1 |
| sitting off wine | Kennedy Modular Sofa Section: | 1 |
| sitting off wine | Marble Stone Bowl \| Tall | 1 |
| sitting off wine | Nero Magus Coffee Table \| Blac | 1 |
| sitting off wine | Sette Leather Barstool \| Cream | 5 |
| sitting off wine | Silver Horn Tray | 1 |
| sitting off wine | Stahl Dining Table | 1 |
| sitting off wine | Tic Tac Toe Ball | 1 |

| | | |
|---|---|---|
| sitting off wine | Zielle Dining Chair | 2 |
| spa/lounge | 7' Bernadette Sofa | 2 |
| spa/lounge | Beverly 36" Entry Table | 1 |
| spa/lounge | Blanket | 2 |
| spa/lounge | Brando Bench Silver | 1 |
| spa/lounge | Candle | Large | 2 |
| spa/lounge | Coffee Table Book | 2 |
| spa/lounge | Decorative Glass Perfume Bottl | 5 |
| spa/lounge | Decorative Marble Object | Sma | 2 |
| spa/lounge | Dimitri Round Marble Coffee Table | 1 |
| spa/lounge | Grant modular Armless | Zuma | 2 |
| spa/lounge | Grey Planter | Medium | 5 |
| spa/lounge | Iron Antique Rectangular Mirror | 2 |
| spa/lounge | Mongolian Fur Pouf | 2 |
| spa/lounge | Portable Message Table | Crear | 2 |
| spa/lounge | Rectangular Mirror | Brushed Bı | 1 |
| spa/lounge | Rope Woven Aluminum Lounge | 1 |
| spa/lounge | Side Table | Antique Bronze | 1 |
| spa/lounge | Wood Ball Stool | 1 |
| theater | H Cashmere Blanket | 10 |
| upstairs family | Coffee Table Book | 4 |
| upstairs family | Decorative Vases | Small | 2 |
| upstairs family | Elden Coffee Table | Black | 1 |
| upstairs family | Gamond Sectional | 3 Seater Aı | 1 |
| upstairs family | Gamond Sectional | 3 Seater Rı | 1 |
| upstairs family | Gamond Sectional | Modular Ta | 1 |
| upstairs family | Geometric Side Table | 1 |
| upstairs family | Greystone Plece | Dresden Gla | 2 |
| upstairs family | Greystone Plece | Dresden Gla | 2 |
| upstairs family | Lorein Lounge Chair | 2 |
| upstairs family | Lounge Chair | Corsica 800 | 2 |

| | | |
|---|---|---|
| upstairs family | Mongolian Fur Pouf \| Black | 2 |
| upstairs family | Silk Dark Grey Rug \| 9' x 12' | 1 |
| upstairs family | Tri-Leg Side Table \| Large | 1 |
| upstairs family | Tri-leg Side Table \| Small | 1 |
| upstairs family | Wooden Vase \| Small | 1 |
| Other | All outdoor plants | |
| | | |
| **TOAL** | | |
| | | |
| **Keep** | | |
| **Remove** | | |
| **Rent** | | |
| **TOTAL** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# EXHIBIT C

Fill in this information to identify the case:

Debtor 1     Crestlloyd, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Central District of California  ▼

Case number  2:21-bk-18205

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Showroom Interiors, LLC<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor  Vesta Home |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Showroom Interiors, LLC | |
| Name | Name |
| 8905 Rex Road | |
| Number      Street | Number      Street |
| Pico Rivera          CA          90660 | |
| City                 State       ZIP Code | City          State          ZIP Code |
| Contact phone 617-504-8088 | Contact phone |
| Contact email accountsreceivable@vestahome.com | Contact email |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 4-1          Filed on 12/06/2021<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? |

Official Form 410                        **Proof of Claim**           EXHIBIT C                    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $ _____717,488.37_ . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Goods and Services per contract and damages (see attached)

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☑ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____717,488.37

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. Check all that apply: | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/13/2022
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Danielle R. Gabai | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney for Showroom Interiors, LLC | | |
| Company | Danning, Gill, Israel & Krasnoff | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1901 Avenue of the Stars, Suite 450 | | |
| | Number   Street | | |
| | Los Angeles | CA | 90067 |
| | City | State | ZIP Code |
| Contact phone | 310-277-0077 | Email dgabai@danninggill.com | |

## Showroom Interiors, Inc.
## ATTACHMENT TO POC

Prepetition Contract Amount:      $432,949.35
Additional Damages:               $284,539.02 (lost/missing items detailed below)
**TOTAL CLAIM =**                 **$717,488.37**

A copy of the contract is attached hereto. Further, upon installation of furniture at 944 Airole in or around November 2020, photographs were taken and a list of all inventory provided was compiled by Showroom Interiors. Upon return and inspection in 2021, Showroom Interiors found a substantial amount of inventory missing. The inspection revealed the following items as missing:

| Item | Total |
|------|-------|
| Hermes Throws | $21,700 |
| Quilts, Pillows, Pajamas product | $7,350 |
| Petrified Wood Objects | $7,000 |
| Bath Products - Diffusers & Candles | $1,786.40 |
| Bath Products - Hand Soap & Lotion | $1,342.60 |
| Decanters, perfume bottles, candles | $1,279.60 |
| Coffee Table Books | $17,300.72 |
| Objects - Accessories | $8,757 |
| Cashmere throws | $9,314.20 |
| Indoor Pillows | $14,560 |
| Outdoor Pillows | $8,400 |
| Busts (decor) | $1,367.59 |
| Aston Chaise | $15,052.80 |
| Double Aston Cord Daybed | Khaki | $22,176 |
| **Sub Total** | **$137,386.91** |
| Interior Design Hours | $31,250.00 |
| Procurement/Freight/Storage | $41,216.07 |
| Unpaid Balance for Purchased Plants (Dead) | $50,000 |
| **Total** | **$259,852.99** |
| Sales Tax | $24,686.03 |
| **Grand Total** | **$284,539.02** |

1672759.1  27042

42



## STAGING SERVICES AND LEASE AGREEMENT

This Staging Services and Lease Agreement ("**Agreement**") provides for staging and decorating services, and the delivery, installation and rental of furniture and furnishings ("**Inventory**").

It is understood that 944 Airole Way, Los Angeles, CA 90077 ("**the Property**") is for sale and that collectively Yvonne Niami and Crestlloyd LLC ("**Homeowner**"), has entered into this Agreement with Showroom Interiors LLC ("**VESTA HOME**"), a Delaware Limited Liability Company, to stage the Property for the purpose of selling the Property. Homeowner represents and warrants that Homeowner is the legal owner of the property, and hereby personally guarantees the obligations under this Agreement. If the Homeowner is not a natural person (e.g., an LLC, LP, or Corporation), VESTA HOME requires that a natural person that is a significant owner and/or officer of the entity that is the Homeowner of the Property to personally guarantee the obligations under this Agreement.

1. **Initial Staging Fee:** In addition to the consideration already paid, Homeowner agrees to pay to VESTA HOME an additional non-refundable fee for its Staging Services in the sum of $950,000 ("**Initial Staging Fee**") for staging the Property. The Initial Staging Fee is due according to the following terms:
   - $317,000 due immediately upon execution of this contract ("**Tranche 1**")
   - $317,000 due immediately upon Vesta submitting bills of lading showing the furniture referenced in Addendum A ("Custom Furniture Schedule") has been shipped ("**Tranche 2**")
   - $316,000 due immediately upon Vesta completing installation of the furniture at Property ("**Tranche 3**")

As part of the Initial Staging Fee, Vesta Home is custom manufacturing furniture specifically as requested by Homeowner in Addendum A ("Custom Furniture Schedule").

2. **Total Square Footage:** Homeowner attests the total square footage of the home is 110,000 SF ("**Total Square Footage Staged**"). If the entire Property is not staged, then Addendum B lists all areas of the Property that are included in this Agreement. In the event **Total Square Footage Staged** is misstated in this contract, Vesta Home reserves the right to increase the Initial Staging Fee and Rental Fee proportionally to the misstatement.

3. **Estimated Installation Dates:** VESTA HOME anticipates that it will resume installing the **Inventory** no later than 2 weeks from the date this contract is executed and the first payment of $317,000 is received ("**Estimated New Installation Date**"). VESTA HOME will not schedule the installation until this agreement is signed. The delivery and installation of the Inventory will not be confirmed until the Initial Staging Fee is fully paid. If the initial staging fee is not received ten (10) business days prior to the scheduled installation date, VESTA HOME has the right to postpone the installation to the first available delivery day after receipt of payment of the full installation fee. For the avoidance of doubt, the **Confirmed Installation Start Date** will be defined as the first day VESTA HOME employees began the installation of furniture and the Initial Staging Term will begin no later than 5 days after the first day VESTA HOME employees began the installation of furniture ("**Initial Staging Term Start Date**").

Homeowner acknowledges that the furniture referenced in Addendum A ("Custom Furniture Schedule") will not arrive until an estimated four to six (4-6) weeks after this contract is executed and the first payment of $317,000 **(Tranche 1)** is received by Vesta Home. Additionally, Homeowner acknowledges that it must pay Vesta Home Tranche 2 as soon as Vesta provides bills of lading for the furniture, and that Vesta Home will not install any of the furniture in the Custom Furniture Schedule until Tranche 2 is paid.

4. **Change Requests:** Vesta Home will work closely with Yvonne Niami and Katherine Rotondi to select furnitrue for the home. However, by entering into this Agreement, the Parties agree that VESTA HOME shall, in its sole and absolute discretion, determine the design for the staging of the Property and the selection and installation of the **Inventory**. If changes are requested and deemed required for any of the following reasons, a $2,500 fee per instance ("**Change Fee**") will apply:

-1-

- Homeowner requests a change in the **Confirmed Installation Start Date** less than 48 hours of the **Confirmed Installation Start Date**
- VESTA HOME arrives at the Property for installation, and the Property is not ready for installation. A project's readiness for installation will be determined by VESTA HOME at its sole discretion and shall generally mean that the appropriate access is provided, there is no longer construction onsite, there is nothing impeding the installation of furniture, and professional cleaning has occurred.
- Any design changes requested after the second to last day of install.
- If Homeowner requires a move-out in less than the subsequently mentioned 10 day period

5. **Cancellation Prior to Install:** Significant work is performed by Vesta Home prior to the installation of the Inventory at the Property. Because of the size and highly specific nature of this project, if the Agreement is cancelled at any time there will be no refund, unless Vesta Home materially breaches the terms of this contract.

6. **Inventory Removal:** VESTA HOME shall have the right to remove the **Inventory** after any breach of the obligation to pay any amounts due under this Agreement. Additionally, in connection with the sale of the Property, the Homeowner shall as part of the purchase documents notify the buyer of the Property that the **Inventory** is subject to this Agreement and that VESTA HOME has the absolute right hereunder to remove the **Inventory** from the Property before or after the close of escrow. Homeowner shall provide VESTA HOME with written notice at least ten (10) calendar days prior to the anticipated move-out date. Prior to the removal of the **Inventory**, Homeowner shall tag any of Homeowner's property to ensure that VESTA HOME does not inadvertently remove Homeowner's personal property. VESTA HOME shall not be liable to Homeowner for any damages if VESTA HOME moves untagged property.

7. **Acknowledgement of Post-Installation Inventory Summary and Rental Start Date:** Homeowner is exclusively responsible for placing the Property on the market and expressly acknowledges and agrees that no action by VESTA HOME, such as a delayed **Estimated New Installation Date** shall inhibit their decision to list the property. Homeowner agrees to hold VESTA HOME harmless from any damages relating to a delayed listing, whether or not VESTA HOME is believed to have caused that delay .Once the installation is complete, Homeowner shall promptly inspect the installation to assure that VESTA HOME has complied with its obligations under this Agreement. Homeowner shall acknowledge receipt of inventory via the **Post-Installation Summary** which will be delivered to Homeowner via email upon the completion of the installation confirming that all of the Inventory has been delivered. All items listed on said **Post-Installation Summary** List is herein referred to as "**Inventory**". Unless an objection is raised in writing and sent to hello@vestahome.com within two (2) calendar days following the **Post-Installation Summary**, any objection to the installation shall be waived.

8. **Homeowner's Liability:** Except as provided below, Homeowner expressly acknowledges that Homeowner shall be liable for the safety and security of the **Inventory** that has been delivered by VESTA HOME and is located on the Property and has not been removed from the Property by VESTA HOME. As such, any damage to and/or loss, theft, or destruction of the **Inventory**, from any cause, including criminal conduct or acts of persons authorized to be on the Property shall be the sole responsibility of Homeowner. VESTA HOME strongly recommends that Homeowner maintain appropriate insurance to cover this risk.

9. **Indemnity of VESTA HOME:** Homeowner shall protect, indemnify and hold harmless VESTA HOME and VESTA HOME 's officers, directors, shareholders, participants, partners, members, managers, affiliates, employees, representatives, invitees, agents and contractors free and from and against any and all claims, damages, liens, stop notices, liabilities, losses, costs and expenses, including without limitation reasonable attorneys' fees, reasonable expert fees and court costs (collectively **"Claims"**), resulting from access to or inspection of the Property by any person either explicitly or implicitly allowed access to the Property by Homeowner except to the extent such Claims are caused solely by the willful misconduct or gross negligence of VESTA HOME. Homeowner's indemnification obligations set forth herein shall survive the termination of this Agreement and the Close of Escrow for the sale of the Property. In the event that VESTA HOME is required to retain counsel in connection with any Claims, Homeowner will reimburse Vesta Home for reasonable defense costs.

10. **Liability Insurance Requirement:** As a condition to the installation by VESTA HOME of any furniture, Homeowner shall have in place comprehensive liability insurance for personal injuries sustained on the Property in the amount of One Million Dollars

-2-



($3,000,000). Prior to the installation of any furniture at the Property by VESTA HOME or VESTA HOME 's authorized agents, contractors or representatives Homeowner shall furnish VESTA HOME with certificates of insurance evidencing the requisite liability insurance referenced above, as well as an endorsement issued by the appropriate insurer (1) naming Showroom Interiors, LLC dba VESTA HOME as an additional insured as to the comprehensive liability coverage, and (2) indicating that Homeowner's insurance shall be primary coverage and VESTA HOME's insurance shall be excess and non-contributory with regard to claims in connection with VESTA HOME 's activities on the Property pursuant to this Agreement. Homeowner shall provide written notice to VESTA HOME at least thirty (30) days prior to any cancellation or reduction in coverage.

11. **Customer Protection Plan** VESTA HOME's **Inventory** at the Property must be protected. VESTAHOME offers a **Customer Protection Plan** for a monthly fee equal to Two Percent (2%) per month for each month that the furniture remains on the Property. The **Customer Protection Plan** covers accidental damage to the **Inventory**. Homeowner shall remain liable for any damage to, loss, and/or destruction of the **Inventory** as a result of any other cause, including without limitation, Homeowner's intentional acts, and/or Homeowner's negligence, and/or conscious disregard for the protection of the **Inventory**. Homeowner shall also remain liable if any piece of **Inventory** is lost, stolen or not returned to VESTA HOME for any reason. In the event of a failure to pay the **Customer Protection Plan** fee on or before the first day of each month during which the fee is due, the Customer Protection Plan will automatically terminate on the tenth (10th) day of that month without further notice or action by VESTA HOME.

If Homeowner wishes to opt out of the VESTA HOME's customer protection plan, and to assume all liability for the **Inventory**, the Homeowner must initial here _____.

12. **Irrevocable Escrow Instruction:** If the Property is the subject of an escrow pursuant to which it will be sold during any time period in which Homeowner is in default in payment of any amount due under this agreement, VESTA HOME may deliver a copy of this Agreement along with the most recent invoice delivered to Homeowner to the Escrow Holder. This provision shall constitute an irrevocable escrow instruction pursuant to which Homeowner authorizes and directs the Escrow Holder to remit payment, on behalf of the Homeowner from the sale of the Property, for the amounts submitted by VESTA HOME as herein set forth.

13. **Credit Card Authorization:** Prior to the delivery and installation of the **Inventory**, VESTA HOME shall require a completed Credit Card Authorization Form. The credit card authorization shall not be a limit, express or implied, on Homeowner's liability under this Agreement. VESTA HOME is authorized to charge the credit card on file for any and all unpaid rent, insurance and/or additional fees described in this Agreement.

14. **Reasonable and Timely Access to Property:** VESTA HOME shall have access to the Property for the purposes of designing the staging, installation, inspection, and/or replacement of the **Inventory**, and for the removal of the **Inventory** at the end of the Staging Term. VESTA HOME shall have the right to utilize any lock box placed on the Property to gain access and carry out its rights and obligations under this Agreement. Prior to the **Estimated New Installation Date** and move-out dates, Homeowner shall notify VESTA HOME in writing ten (10) calendar days prior to the move-in and move-out dates, of any physical or regulatory restrictions or special circumstances that may affect VESTA HOME's ability to move-in or move-out, such as truck access, truck size limitations, tree clearance, property management rules and regulations, and delivery time restrictions. Homeowner agrees to pay any extra moving costs associated with any restrictions or special circumstances which including but not limited to parking permits, parking tickets received due to parking inability, HOA/elevator fees, etc. For the avoidance of doubt, notwithstanding the above, immediately following the **Staging Term Expiration Date** VESTA HOME shall have the right to remove its **Inventory** immediately, and at any time during any subsequent rental period.

15. **Inventory Removal in the Event of Default:** If Homeowner and/or Responsible Party fails to perform any of its obligations under this Agreement, including, but not limited to the payment of the Initial Staging Fee and/or **Inventory** Rental Fee, Homeowner or Responsible Party shall automatically be deemed in default **("Default")**. Upon **Default**, VESTA HOME shall have the right to immediately take possession of the **Inventory** and recover from Homeowner or Responsible Party any unpaid amounts due hereunder, including but not limited to the Initial Staging Fee, **Inventory** Rental Fees and any other amounts that may be due together with any additional costs incurred in connection with the removal of the **Inventory** prior to the expiration of this Agreement without further notice. Homeowner irrevocably expressly authorizes VESTA HOME to have access to the Property to

-3-

effectuate the removal of the **Inventory**. In the event of Default, any fees or other amount that had previously been agreed to be paid through escrow will be immediately owed to VESTA HOME.

16. **Stipulated Value of Loss of Inventory:** Homeowner and/or Responsible Party expressly acknowledges and agree that, by failing or refusing to return all or any part of the **Inventory** to VESTA HOME, or by refusing to allow VESTA HOME access to its **Inventory** in the event of Default or following the **Staging Term Expiration Date**, THAT BASED UPON THE CIRCUMSTANCES NOW EXISTING, KNOWN AND UNKNOWN, IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ESTABLISH VESTA HOME'S DAMAGES BY REASON OF HOMEOWNER'S FAILURE TO RETURN THE **INVENTORY** DELIVERED TO THE PROPERTY UNDER THIS AGREEMENT. ACCORDINGLY, BUYER AND SELLER AGREE THAT IN THE EVENT OF HOMEOWNER'S FAILURE TO RETURN THE **INVENTORY** DELIVERED TO THE PROPERTY UNDER THIS AGREEMENT, IT WOULD BE REASONABLE AT SUCH TIME TO AWARD SELLER IN AN AMOUNT EQUAL TO THREE (3) TIMES THE STATED RETAIL VALUE AS SET FORTH IN THE **POST-INSTALLATION INVENTORY SUMMARY** OF ANY ITEM OF **INVENTORY** NOT RETURNED. WITH RESPECT TO ANY DELAY IN RETURNING **INVENTORY**, THE STIPULATED RENTAL RATE FOR THE PERIOD OF DELAY IS THREE (3) TIMES THE RENTAL RATE IN EFFECT IMMEDIATELY PRIOR TO THE DATE ON WHICH THE **INVENTORY** WAS TO BE MADE AVAILABLE TO BE PICKED UP BY VESTA HOME.

17. **Advertisement:** VESTA HOME has the right to advertise that the Property was staged by VESTA HOME, and place signs and business cards at the Property indicating that the **Inventory** is for sale. Homeowner shall not remove, obscure or deface the signs or permit any other person to do so. Homeowner will inform broker that no photography or filming by anyone other than VESTA HOME is permitted, except for virtual tours and photography for real estate sales ads. VESTA HOME will have the right to film, photograph, and record furniture staged in the property for its own use. Client releases all rights to any film, photograph, or other content produced by VESTA HOME at the property. Any other photography or filming must be with VESTA HOME's prior express written permission which may be conditioned on VESTA HOME being credited in the on-screen credits with the following "Property Designed and Furnished by VESTA HOME" and receipt of a copy of the completed photography or filming. If any photography or filming for any purposes outside of selling the home (including but not limited to filming a movie, TV show, or photo shoot) is undertaken without VESTA HOME's written permission, this will constitute a Default and VESTA HOME will be entitled to compensation of two (2) times the original Staging Fee. Homeowner agrees to provide VESTA HOME with all photography and or filming shot in the home and expressly grants VESTA HOME permission to use these visual assets in its own advertising. Any violation of any part of this section will constitute a Default.

18. **Conversion to Inventory Lease:** The Initial Staging Fee includes **Inventory** rental for staging purposes only through December 31, 2020 (**"Initial Staging Term"**). The Staging Term Expiration Date will be defined as the final day of the Initial Staging Term. If this Agreement remains in effect for beyond the end of the Initial Staging Term, VESTA HOME, in its sole discretion, and on five (5) days written notice to Homeowner (**"Notice Period"**), with or without cause, may terminate this Agreement, and at the end of the Notice Period, remove the **Inventory**. If VESTA HOME does not exercise this option and Homeowner does not instruct VESTA HOME to remove the **Inventory** then the provisions of this **INVENTORY LEASE** portion shall apply to the amounts due and payments to be made by Homeowner to VESTA HOME.

19. **Inventory Rental Payments:** Following the expiration of the Initial Staging Term, Homeowner agrees to pay to VESTA HOME a non-refundable monthly fee for **Inventory** rental in the sum of fifty thousand dollars ($50,000) per month (plus applicable taxes) (**"Inventory Rental Fee(s)"**). **Inventory** rental will automatically begin on the first day following the expiration of the Initial Staging Term (**"Inventory Rental Start Date"**). Seventeen thousand five hundred ($17,500) dollars of the Inventory Rental Fee is due immediately upon the **Inventory Rental Start Date**. The first **Inventory Rental Fee** shall be pro-rated based upon the **Inventory** Rental Start Date such that all rent due for the balance of the month in which the **Inventory Rental Start Date** occurs plus the rent for the first calendar month thereafter is paid. All subsequent **Inventory** Rental Fees shall be invoiced for the full month and are due on the first of each month (**"Rent Due Date"**). The remaining balance of thirty-two thousand five hundred ($32,500) will accrue monthly and be due immediately to Vesta at the sooner of, Vesta removing its furniture from the Property or the Property being sold or delisted from the market for any reason. No refunds and/or prorations will be made on **Inventory** Rental Fee payments if the pick-up of the **Inventory** occurs other than on the last day of any calendar month.

Any **Inventory** Rental Fee not received by VESTA HOME within ten (10) calendar days of the Rent Due Date shall incur a late fee of 10% of the monthly **Inventory Rental Fee**. Any **Inventory Rental Fee** not received by VESTA HOME within thirty (30) calendar days of the **Rent Due Date** shall constitute Default under this Agreement.

-4-



46

e 2:21-bk-18205-BS · Doc 357 Filed 06/03/22 Entered 06/03/22 14:37:35 Desc Page
e 2:21-bk-18205-DS Claim 4-2 Filed 01/13/22 Desc Main Document Page
Main Document 17 Page 50 of 113

Effective on the first day of the 13th month following the Staging Term Expiration Date, the **Inventory** Rental Fee shall increase by **15%**, and thereafter, shall increase an additional **10%** every six months (**"Inventory Rental Fee Increase"**).

20. **Use of furniture for non-staging purposes:** This contract provides for the Homeowner's use of **Inventory** for staging purposes only. Any use of the **Inventory** for any purpose other than staging is strictly prohibited and will constitute a breach of contract and Default under the terms of this Agreement. For the avoidance of doubt, non-staging purposes include, without limitation any occupancy of the Property (i.e., including by Homeowner, guests or any other tenants using or living on the furniture), holding any party or other event, posting of the Property on any rental site (such as AirBnB, HomeAway, VRBO etc.), and/or any use of the Property as a set for film and/or television purposes).

Any use of the **Inventory** for other non-staging purposes, requires written permission from VESTA HOME and a fully executed Luxury Lease contract. Without written permission and a new Luxury Lease contract, any non-staging use of **Inventory** shall be considered a breach of this Agreement and will automatically be deemed a "Luxury Lease". In such event, Homeowner will be required to immediately pay a $10,000 security deposit, a $5,000 first use fee, and the **Inventory** Rental Fee will be increased retroactively to an amount equal to four (4) times, the **Inventory** Rental Fee, beginning on the **Confirmed Installation Start Date.** All accrued payments plus applicable taxes shall become due and payable immediately. Use of **Inventory** for any adult content is strictly prohibited, and, in addition to the above fees, Homeowner will be obligated to purchase all **Inventory** used for adult content purposes at the full retail value stated in the **Post-Installation Inventory Summary.**

## GENERAL PROVISIONS

21. **Assignment of Agreement:** This Agreement is not assignable without the express prior written consent of VESTA HOME.

22. **Counterpart Signatures, Facsimile Signatures, Electronic Signatures:** This Agreement may be executed in counterparts, by facsimile, and/or electronically. All counterpart, facsimile or electronic signatures shall have equal validity and enforceability as a fully-signed original Agreement.

23. **Entire Agreement; Written Modification Required:** This Agreement, which includes the Appendices hereto, is the only agreement between the Parties relating to the subject matter hereof and constitutes the entire agreement between the Parties and is the final expression of the Parties' understanding. No prior discussions or communications shall form any part of this Agreement, unless expressly noted herein. Any modification to this Agreement must be made on a formal Amendment which (i) specifically refers to the provision of this Agreement to be amended and (ii) is signed by all Parties and must be countersigned by a Vice President or higher of VESTA HOME. For the avoidance of doubt, no email, text message, verbal or other communication regarding a modification of this contract will be valid without the aforementioned executed Amendment.

24. **Severability.** This Agreement will be construed and enforced in accordance with the laws of the State of California. If any provision of this Agreement is held to be unenforceable by a court of competent jurisdiction for any reason whatsoever, (i) the validity, legality, and enforceability of the remaining provisions of this Agreement (including without limitation, all portions of any provisions containing any such unenforceable provision that are not themselves unenforceable) will not in any way be affected or impaired thereby, and (ii) to the fullest extent possible, the unenforceable provision will be deemed modified and replaced by a provision that approximates the intent and economic effect of the unenforceable provision and the Agreement will be deemed amended accordingly.

25. **Choice of Law and Venue.** This Agreement and the rights of the parties hereunder shall be determined, governed by and construed in accordance with the internal laws of the State of California without regard to conflicts of laws principles. Any dispute under this Agreement shall be resolved solely by a court having its situs within Los Angeles County, California, and the Parties consent and submit to the jurisdiction of any court located within such venue.

26. **WAIVER OF RIGHT TO JURY TRIAL.** GUARANTOR AND VESTA HOME EACH WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY OF ANY CONTRACT OR TORT CLAIM, COUNTERCLAIM, CROSS-COMPLAINT OR CAUSE OF ACTION IN ANY ACTION, PROCEEDING OR HEARING E3ROUGIIT BY EITHER GUARANTOR OR VESTA HOME AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN

ANY WAY CONNECTED TO THIS AGREEMENT, THE RELATIONSHIP OF GUARANTOR AND VESTA HOME OR HOMEOWNERS USE OR OCCUPANCY OF THE PROPERTY, INCLUDING ANY CLAIM OF INJURY OR DAMAGE OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY CURRENT OR FUTURE LAW, STATUTE, REGULATION, CODE OR ORDINANCE.

27. **Attorneys' Fees and Costs.** If any action of any kind is commenced to enforce or interpret, or in any way relates to this Agreement, the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and costs.

28. **Limits on VESTA HOME's Liability for Damage to Property.** Homeowner understands, acknowledges, and accepts that in the process of installing and moving in or moving out the Inventory, floors may be scuffed or scratched, walls may be marked or scratched, and the Property may suffer some incidental damage. Although VESTA HOME will in good faith attempt to minimize any such damage, Homeowner hereby waives any claim against VESTA HOME from any such incidental damage.

29. **Confidential Nature of Agreement.** Homeowner acknowledges and agrees that this Agreement and all of its terms shall be and remain confidential. Except when VESTA HOME provides its prior express written authorization, Homeowner shall not disclose this Agreement and/or its terms to anyone or any entity other than Homeowner's immediate family members, Homeowner's agent(s) and/or employees, if applicable, and/or Homeowner's tax, financial, and/or legal advisors.

30. **Notices.** Any written notice required to be given to VESTA HOME shall be emailed to VESTA HOME at hello@vestahome.com. Any written notice required to be given to Homeowner shall be emailed to Homeowner at the email address indicated in this Agreement. All parties are required to advise the other of any change in email addresses.

31. **Expenses.** If this contract is placed in the hands of an attorney for collection, Homeowner promises to pay the collection costs, including attorneys' fees, even though no legal proceeding is filed on this contract.

32. **Personal Property** In the event that VESTA HOME is requested or required to move Homeowner's personal property , Homeowner hereby acknowledges having been advised of the risk of harm for activities requested by or for Homeowner and agrees that VESTA HOME is not responsible for any damages to the customer's furniture or property which may occur during the moving process, and is released from all liability in this regard. Homeowner hereby releases VESTA HOME and all of its employees from liability associated with any of the activities described above. Homeowner assumes all liability for any above damages which may occur.

33. **No Warranties or Guarantees.** Homeowner understands that VESTA HOME does not and cannot guarantee success or any particular result in connection with the sale of the Property. VESTA HOME makes no warranty or guarantee expressed or implied as to the successful sale of the Property.

**SIGNATURE PAGE**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the dates set forth below.

| | |
|---|---|
| Dated: 12/31/2020 | VESTA HOME<br>By: _Julian Buckner_<br>(sign)  Julian Buckner<br>Name: __CEO__<br>Its Authorized Agent |
| Dated: 9/4/20 | HOMEOWNER:<br>By: _____<br>(sign)<br>Name: Yvonne Niami<br>Title  for Crestlloyd LLC |

-6-

| Dated: 9/4/20 | RESPONSIBLE PERSON & GUARANTOR:<br><br>By: _____<br>(sign)<br>Name: Yvonne Niami for<br>Creatttop LLC |
|---|---|

**Addendum B**
**Areas to be Staged**

**Dining room:** Add consoles and accessories along wall

**Cigar room:** Add table and accessories

**Family room:** Add accessories, consoles, tables behind each couch, console along wall with accessories

**Outdoor area off family room:** Staged with outdoor furniture per schedule provided by Vesta

**Pool deck:** outdoor furniture per schedule provided by Vesta

**Outdoor seating off dining room:** outdoor sofa, chairs and table

**Living room:** full staging with accessories, flower arrangement, and furniture per scheduled provided by Vesta

**Library:** replace desk, other existing furniture is acceptable

**Gallery 1+2:** Benches per schedule provided by Vesta

**Under stairs on East Side of house:** staged as sitting area

**Under stairs on main floor West Side of house:** art piece (not provided by Vesta) or flower arrangement on table

**Guest bedroom west side facing ocean:** full bedroom staging

**Master bed sitting:** add table and accessories

**Master bathrooms:** remove consoles, add standing mirror to HER bathroom

**His and Her closet:** accessorize, floral arrangement, purses (not provided by Vesta), etc.

**Master bedroom:** fully stage

**2nd master bedroom sitting area:** desk / seating per scheduled provided by Vesta

**Upstairs sitting east side of house:** sitting area per scheduled provided by Vesta

**Corner near upstairs sitting area East side:** art piece (not provided by Vesta) or floral arrangement

**Secondary bedrooms:** fully stage

**Downstairs sitting area:** stage as sitting area per scheduled provided by Vesta

**Entry to elevator:** add console with accessories

**Downstairs seating off wine room:** replace existing items, stage as fireplace seating

**Downstairs bar:** barstools

**Wine tasting room:** add table

**Gym:** add yoga mats (no equipment to be provided by Vesta)

**Spa rooms:** add 1 massage table per room

**Billiards area:** add barstools

NOTE: Vesta Home will not be responsible for staging guest house, nightclub, staff quarters or any other areas not included above.



Addendum C
PERSONAL GUARANTY
OF
STAGING SERVICES AND STAGING SERVICES AND LEASE AGREEMENT

THIS **PERSONAL GUARANTY OF STAGING SERVICES AND STAGING SERVICES AND LEASE AGREEMENT** (this <u>"Guaranty"</u>) is made for valuable consideration by each of the persons whose signatures appear at the end of this document (each a <u>"Guarantor"</u>), in favor of SHOWROOM INTERIORS, LLC which does business as VESTA HOME <u>("VESTA HOME"</u>), in connection with that certain STAGING SERVICES AND LEASE AGREEMENT dated JULY 10, 2020 the <u>".STAGING SERVICES AND LEASE AGREEMENT"</u>), pursuant to which VESTA HOME has provided Inventory to Yvonne Niami. <u>("Homeowner"</u>), at <u>944 Airole Way, Los Angeles, CA 90077</u> (" the " <u>Property</u>").

1.        Guarantor does hereby absolutely, unconditionally and irrevocably guarantee and promise to VESTA HOME the due, punctual and full performance by Homeowner of each and all of the agreements, covenants, obligations, liabilities and promises of Homeowner to be performed under the STAGING SERVICES AND LEASE AGREEMENT and the truth and accuracy of each and all of the representations and warranties of Homeowner contained in the STAGING SERVICES AND LEASE AGREEMENT, including without limitation, the payment of any and all other sums payable thereunder.

2.        Guarantor does hereby agree that, without the consent of or notice to Guarantor and without affecting any of the obligations of Guarantor hereunder: (a) any term, covenant or condition of the STAGING SERVICES AND LEASE AGREEMENT may be amended, compromised, or otherwise altered by VESTA HOME and Homeowner, and Guarantor does guarantee and promise to perform all the obligations of Homeowner under the STAGING SERVICES AND LEASE AGREEMENT as so amended, compromised, or altered; (b) any guarantor of or party to the STAGING SERVICES AND LEASE AGREEMENT, this Guaranty or released, substituted or added; (e) any right or remedy under the STAGING SERVICES AND LEASE AGREEMENT, limited, destroyed, or suspended; (d) any other instrument or agreement may be exercised, not exercised, impaired, modified, limited, destroyed, or suspended; (d) VESTA HOME or any other Person may deal in any manner with Homeowner, any guarantor, any party to the STAGING SERVICES AND LEASE AGREEMENT or any other Person.

3.        Guarantor hereby waives and agrees not to assert or take advantage of (a) any right to require VESTA HOME to proceed against Homeowner or any other Person or to pursue any other remedy before proceeding against Guarantor; (b) the defense of any statute of limitations in any action under or related to this Guaranty or the STAGING SERVICES AND LEASE AGREEMENT; (c) any right or defense that may arise by reason of the incapacity, lack of authority. death or disability of Homeowner or any other Person; (d) any right or defense arising by reason of the absence, impairment, modification, limitation, destruction or cessation (in bankruptcy, by an election or remedies, or otherwise) of the liability of Homeowner, of the subrogation rights of Guarantor or of the right of Guarantor to proceed against Homeowner for reimbursement; and (e) the benefits of any statutory provision or procedural rule limiting the liability of a surety.

4.        Guarantor hereby waives and agrees not to assert or take advantage of any right or defense based on the absence of any or all presentments, demands (including demands for performance), notices (including notices of adverse change in the financial status of Homeowner or other facts which increases the risk to Guarantor, notices of nonperformance and notices of acceptance of this Guaranty) and protests of each every kind.

5.        Guarantor does hereby agree that if claim is ever made upon VESTA HOME for repayment or recovery of any amount or amounts received by VESTA HOME in payment or on account of the amounts hereby guaranteed and VESTA HOME repays all or part or such amount by reason of (a) any judgment, decree or order or of any court or administrative body having jurisdiction or (b) any settlement or compromise of any such claim effected by VESTA HOME with any such claimant (including Homeowner or any other guarantor), then in such event Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon Guarantor. notwithstanding the expiration or termination of the STAGING SERVICES AND LEASE AGREEMENT or other instrument evidencing any of the amounts hereby guaranteed and Guarantor shall be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by VESTA HOME.

6.        Guarantor does hereby agree that for VESTA HOME's benefit and the benefit of Homeowner and to the fullest extent permitted by law, Guarantor irrevocably and unconditionally waives any and all rights of subrogation, reimbursement, indemnification, contribution, or similar rights against Homeowner or its assets (arising by contract or by law or otherwise) as a consequence of this Guaranty, including, without limitation, the payment or performance of any obligations hereby guaranteed, and further agrees that Guarantor will not assert any such right of subrogation, reimbursement, indemnification, contribution or similar right at any time in respect to the STAGING SERVICES AND LEASE AGREEMENT. It is agreed that VESTA HOME's rights under this Paragraph 6 are such that the remedy at law for breach thereof would be inadequate, and that VESTA HOME shall be entitled to specific performance and enforcement thereof, including, without limitation, the imposition of a restraining order or injunction. Nothing in this Paragraph 6 shall diminish or relieve any obligations

-1-

or liabilities of Homeowner to VESTA HOME. VESTA HOME and Homeowner and their respective successors and assigns are intended third party beneficiaries of the waivers and agreements made in this Paragraph 6 and VESTA HOME's rights under this Paragraph 6 shall survive the expiration or termination of the STAGING SERVICES AND LEASE AGREEMENT.

7. The liability of Guarantor and all rights, powers and remedies of VESTA HOME hereunder and the liability and obligations of Homeowner and all rights, powers and remedies of VESTA HOME under the STAGING SERVICES AND LEASE AGREEMENT and under this Guaranty shall be in addition to all rights, powers and remedies given to VESTA HOME by law.

8. This Guaranty applies to, inures to the benefit of and binds all parties hereto, their heirs, devisees, legatees, executors, administrators, representatives, successors and assigns (including any purchaser at judicial foreclosure or trustee's sale or a holder of a deed in lieu thereof). This Guaranty may be assigned by VESTA HOME voluntarily or by operation of law without reducing or modifying the liability of Guarantor hereunder.

9. This Guaranty shall constitute the entire agreement between Guarantor and VESTA HOME with respect to the Guarantor's guaranty of performance of all of Homeowner's obligations under the STAGING SERVICES AND LEASE AGREEMENT. No provision of this Guaranty or right of VESTA HOME hereunder may be waived nor may any guarantor be released from any obligation hereunder except by a writing duly executed by an authorized officer, director, trustee or partner of VESTA HOME.

10. If more than one Person signs this Guaranty, each such Person shall be deemed a Guarantor and the obligation of all such Guarantor shall be joint and several. When the context and construction so requires, all words used in the singular herein shall be deemed to have been used in the plural. The word "Person" as used herein shall include an individual, company, firm, association, partnership, corporation, trust or other legal entity of any kind whatsoever.

11. Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall nevertheless be effective.

12. The waiver or failure to enforce any provision of this Guaranty shall not operate as a waiver of any other breach of such provision or any other provisions hereof.

13. If either VESTA HOME or Guarantor participates in an action against the other arising out of or in connection with this Guaranty, the one prevailing shall be entitled to have and recover from the other reasonable attorneys' fees, collection costs and other costs incurred in and in preparation for the actions.

14. Guarantor agrees that all questions with respect to this Guaranty shall be governed by, and deciding in accordance with the laws of the State of California.

15. If Guarantor executes this Guaranty as a partnership, each individual executing this Guaranty on behalf of the partnership represents and warrants that he or she is a general partner of the partnership and that this Guaranty is binding upon the partnership in accordance with its terms. If Guarantor executes this Guaranty as a corporation, each of the Persons executing this Guaranty on behalf of the corporation covenants and warrants that the corporation is a duly authorized and existing corporation, that the corporation has and is qualified to transact business in the State of California, that the corporation has full right, authority and power to enter into this Guaranty and to perform its obligations hereunder, that each Person signing this Guaranty on behalf of the corporation is authored so that this Guaranty is binding upon the corporation in accordance with its terms.

16. In the event Homeowner shall become insolvent or shall be adjudicated a bankrupt, or shall file a petition for reorganization, arrangement or other relief under any present or future provisions of the United States Bankruptcy Code, or if such a petition be filed by creditors of Homeowner, or if Homeowner shall seek a judicial readjustment of the rights of its creditors under any present or future Federal or State law, or if a receiver of all or part of Homeowner's properly or assets is appointed by the State or Federal court, no such proceeding or action taken therein shall modify, diminish, or in any way affect the liability of Guarantor under this Guaranty, and the liability of Guarantor with respect to the STAGING SERVICES AND LEASE AGREEMENT shall be of the same scope as if Guarantor had itself executed the STAGING SERVICES AND LEASE AGREEMENT as the named Homeowner therein, and no "rejection" and/or "termination" of the STAGING SERVICES AND LEASE AGREEMENT in any of the proceedings referred to in this Paragraph 16 shall be effective to release and/or terminate the continuing liability of Guarantor to VESTA HOME under this Guaranty. If, in connection with any of the circumstances referred to in this Paragraph 16, VESTA HOME should request that Guarantor execute a new STAGING SERVICES AND LEASE AGREEMENT for the balance of the STAGING SERVICES AND LEASE AGREEMENT Term (unaffected by any such "rejection" and/or "termination" in any of such proceedings), but in all other respects identical with the STAGING SERVICES AND LEASE AGREEMENT, Guarantor shall do so as the named Homeowner under such new STAGING SERVICES AND LEASE AGREEMENT (irrespective or the fact that the STAGING SERVICES AND LEASE AGREEMENT may have been "rejected" or "terminated" in connection with any of the proceedings referred to in this Paragraph 16). Should Guarantor fail or re ruse to execute such a new STAGING SERVICES AND LEASE AGREEMENT,

-2-



without limiting any of the legal or equitable remedies available to VESTA HOME on account of such failure or refusal, Guarantor acknowledges and agrees that VESTA HOME may seek specific performance of the covenant of Guarantor contained in this Paragraph 16 to execute such a new STAGING SERVICES AND LEASE AGREEMENT.

17.        Any legal action or proceeding with respect to this Guaranty may be brought in the courts of the State of California for the County of Los Angeles or, if the requisites of jurisdiction are obtained, in District Court of the United States of America for the Central District of California and, by the execution and delivery of this Guaranty, Guarantor hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforementioned courts. Nothing herein sluff, however, affect the right of VESTA HOME to commence legal action or otherwise proceed against Guarantor in any other jurisdiction.

18.        WAIVER OF RIGHT TO JURY TRIAL. GUARANTOR AND VESTA HOME EACH WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY OF ANY CONTRACT OR TORT CLAIM, COUNTERCLAIM, CROSS-COMPLAINT OR CAUSE OF ACTION IN ANY ACTION, PROCEEDING OR HEARING E3ROUGIIT BY EITHER GUARANTOR OR VESTA HOME AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS GUARANTY, THE RELATIONSHIP OF GUARANTOR AND VESTA HOME OR HOMEOWNERS USE OR OCCUPANCY OF THE PROPERTY, INCLUDING ANY CLAIM OF INJURY OR DAMAGE OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY CURRENT OR FUTURE LAW, STATUTE, REGULATION, CODE OR ORDINANCE.

SIGNATURE PAGE

| Dated: 9/4/20 | RESPONSIBLE PERSON & GUARANTOR:<br><br>By: _____<br>(sign)<br>Name: Kynne Niami for<br>CrosHloyd LLC |
|---|---|
| Dated: _____ | RESPONSIBLE PERSON & GUARANTOR:<br><br>By: _____<br>(sign)<br>Name: _____ |
| Dated: _____ | RESPONSIBLE PERSON & GUARANTOR:<br><br>By: _____<br>(sign)<br>Name: _____ |

-3-

## PAYMENT SUMMARY

Homeowner agrees to pay the **Initial Staging Fee** upon execution of this Agreement and the **Inventory Rental Fee** in the manner selected below by initialing the option selected.

_____ If by check, pay to VESTA HOME: 4900 E 50th St, Vernon, CA 90058

_____ If credit card, please provide card information by filling out Addendum A below.

Any **Inventory Rental Fee** payment not received by VESTA HOME within ten (10) calendar days of the Rent Due Date shall constitute a Default under this Agreement and shall be subject to a late charge of ten percent (10%) of the overdue **Inventory Rental Fee** amount. Homeowner shall have three (3) business days following written notice to Homeowner to cure the Default (**"Rent Cure Date"**).

**Incoming Wire and ACH Instructions:**
Bank Name: City National Bank
ABA/Routing Number: ▮▮▮▮
Beneficiary Name: Showroom Interiors, LLC DBA- VESTA HOME
Beneficiary Account Number: ▮▮▮▮
SWIFT Code (international): ▮▮▮▮

**Special Instructions for Receiving Bank:**
Bank Address and Contact Info:
City National Bank
1315 Lincoln Boulevard, Suite 110
Santa Monica, CA 90401
310.264.2959
Nadine Wasada: Operations Manager, Technology and Venture Capital Banking

### CREDIT CARD AUTHORIZATION

Date: _____

Name on Credit Card: _____

Billing Address: _____

Phone: _____ Fax: _____

Email address: _____

Credit Card Type:

Credit Card #: _____

Expiration Date : _____

Security Code : _____ on reverse side of card.

Signature of Cardholder : _____

-4-

*I authorize Showroom Interiors LLC ("VESTA HOME") to charge my credit card for any amount due resulting from this staging/design agreement, including, but not limited to any outstanding balances on the staging contract or any damages done to the furniture. I agree by signing below to personally guarantee to VESTA HOME any obligations that may become due.*

*Upon acceptance of this application, the Homeowner agrees to the payment terms stated by the creditor, VESTA HOME. A 10% finance charge will apply on any open balances beyond terms. I understand that I am fully responsible for all balances on my account, and I am liable for additional charges that may be incurred by VESTA HOME as a result of collection and/or legal proceedings.*

**CREDIT CARD REQUIREMENT:** Vesta Home requires a credit card on file for each individual named on the contract regardless of preferred payment method. If payment is made by credit card for the Initial Staging Fee any of the charges incurred under this Agreement, the credit cardholder agrees to pay and authorizes VESTA HOME to charge a convenience fee equal to 2.95% of each credit card charge.

**PLEASE NOTE:** In the event of non-payment, the credit card on file will be charged for any outstanding balance. By signing this Agreement, I hereby authorize the use of the above credit card for any overdue payment.

*I have read and understand the above conditions.*

Print Full Name : Yvonne Niami for Crestllayd LLC.

Date : 9/4/20

Signature of Cardholder :

-5-

# EXHIBIT D

< MS Miles > 📹

Miles ›

Today 4:42 PM

Hey Miles – do you know the exact date that all of the water damage occurred?

It was January 1, New Years

Thanks! And it was the master bedroom pool that leaked into the master bedroom and below into the living room off of the kitchen right?

Yes

Thanks

Delivered

iMessage

| Q | W | E | R | T | Y | U | I | O | P |

| A | S | D | F | G | H | J | K | L |

⬆ | Z | X | C | V | B | N | M | ⌫

123 | space | return

😀 | 🎤

EXHIBIT D

56

# EXHIBIT E

| Picture of Damage | Item Name | Quantity Damaged | Price 2 | Total Cost 2 | Notes |
|---|---|---|---|---|---|
| | Cloud 2.0 Corner \| Zuma White | 4 | $2,610 | $10,441 | |
| | Cloud 2.0 Armless \| Zuma White | 10 | $2,228 | $22,279 | |
| | Jane Lounge Chair \| Sienna Fabric | 2 | $3,184 | $6,368 | |
| | Jane Sofa | 1 | $6,950 | $6,950 | |
| | Bedroom 1 (Upstairs) Rug 10x14 | 1 | $4,250 | $4,250 | |

EXHIBIT E                    57

| Picture of Damage | Item Name | Quantity Damaged | Price 2 | Total Cost 2 | Notes |
|---|---|---|---|---|---|
|  | Tea room rug 12x 15 | 1 | $6,500 | $6,500 | |
|  | Master Rug 9.5 x 14 rug | 1 | $4,500 | $4,500 | |
|  | Second Master rug 12x15 | 1 | $6,250 | $6,250 | |
|  | X Bench | Pink Velvet | 1 | $1,150 | $1,150 | |
|  | Ardent Lounge Chair | Black Leather | | 2 | $2,100 | $4,200 | |

| Picture of Damage | Item Name | Quantity Damaged | Price 2 | Total Cost 2 | Notes |
|---|---|---|---|---|---|
|  | Spa Rug 10x14 | 1 | $4,650 | $4,650 | |
|  | Severa Lounge Chair \| Black Leather | 2 | $2,250 | $4,500 | |
|  | Eastern King \| Chevron BED \| Grey | 1 | $22,667 | $22,667 | Checked with the manufacturer and this dye lot is no longer available so we would need to re-upholster the entire thing |
|  | Family Room Rug 20x20 | 1 | $9,000 | $9,000 | |
|  | Cigar Room Rug 14x20 | 1 | $7,500 | $7,500 | |

| Picture of Damage | Item Name | Quantity Damaged | Price 2 | Total Cost 2 | Notes |
|---|---|---|---|---|---|
|  | Living Room Rug 50x20 | 1 | $21,250 | $21,250 | |
|  | Lower Level Family Room Rug 10x14 | 1 | $4,450 | $4,450 | |
|  | Alix Sofa | 1 | $9,685 | $9,685 | |
|  | Dining Room Rug 23x16 | 1 | $9,000 | $9,000 | x |
|  | Brando Bench Silver | 1 | $3,875 | $3,875 | |

60

| Picture of Damage | Item Name | Quantity Damaged | Price 2 | Total Cost 2 | Notes |
|---|---|---|---|---|---|
| | Severa Lounge Chair \| Black Velvet | 8 | $1,950 | $15,600 | Re-upholster |
| | CREED COFFEE TABLE | 2 | $2,550 | $5,100 | Re-finish |
| | Alexius Stool IV | 2 | $1,176 | $2,352 | Re-finish |
| | Alexius Stool I | 2 | $1,176 | $2,352 | Re-finish |
| | Alexius Stool II | 2 | $1,176 | $2,352 | Re-finish |
| | Alexius Stool III | 2 | $1,176 | $2,352 | Re-finish |
| | Lexie Lounge Chair \| Velvet \| Black | 2 | $1,888 | $3,776 | Re-upholster |
| | Hexagon Top SIde Table | 2 | $900 | $1,800 | Re-finish |
| | | | | | |
| | | | **TOTAL** | **$205,149** | |

# EXHIBIT F

initial email from Miles responding to our water damage claims

---------- Forwarded message ---------
From: **Miles Staglik** < mstaglik@scpllc.com>
Date: Mon, Jan 10, 2022 at 8:35 PM
Subject: RE: water damage
To: Julian Buckner < julian@vestahome.com>
Cc: Kiel Wuellner < kiel@vestahome.com>, Brett Baer < brett@vestahome.com>, Vesta Home
Accounts Receivable < accountsreceivable@vestahome.com>, Colin Moran <
Cmoran@scpllc.com>

Julian,

Lets talk tomorrow.  Some of these items seem crazy prices, even at retail.  Ive bought furniture
at Room and Board much nicer than most of this stuff for about 50-60% of the cost here and
thats at retail.  Mitchell Gold and Bob Williams has less expensive prices than this stuff and thats
again at retail or with their 25-35% club discount.

Also  the Severa Lounge Chairs 2qty at $2,250 each were not on site until the new staging
(unless I missed them and if so what room were they in?).

The Chevron Bed wall  I assumed Nile did this since it was falling down and I had to have
panels glued back (several times)  was this staging and glued to the wall?  If so, we do not want
to replace (leave as is as if not I have to refinish wall) and no way it is damaged to tune of
$22,667.

The last page of the PDF does not have any pictures.

I understand the rugs are large but also seem very overpriced.  Outside of the den off the kitchen
they were all low quality and Ive bought rugs like that off La Cienega in the 10 x 13 or 14 x 18
for $2-3k  no joke.

Lets discuss and figure this out as I want to get you guys paid but also have to file an insurance
claim on my end and justify costs to company.

Miles

**Miles Staglik**
Senior Director
SierraConstellation Partners LLC
M: 310-343-0361
O: 213-289-3655

LEGAL DISCLAIMER: This communication, including any attachments, is intended  solely for the individual or entity to which it is addressed and
may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of or taking action in reliance upon this
information by persons or entities other than the intended recipient is prohibited.  If you have received this message in error, please advise the sender

immediately by reply e-mail and delete this message and all copies from your system. Thank you for your cooperation.

**From:** Julian Buckner < julian@vestahome.com>
**Sent:** Monday, January 10, 2022 4:41 PM
**To:** Miles Staglik < mstaglik@scpllc.com>
**Cc:** Kiel Wuellner < kiel@vestahome.com>; Brett Baer < brett@vestahome.com>; Vesta Home
Accounts Receivable < accountsreceivable@vestahome.com>
**Subject:** water damage

Hi Miles - Sorry we weren't able to connect at the property today. I've attached the list of items
with visible water damage below. Please let me know if there is anything else you need from our
end.

Thanks,
Julian

 **Image removed by sender. 944Airole Water Damage.pdf**


--




**Julian M. Buckner**



Founder & CEO



617.504.8088

Calendar




Website




Image removed by sender.
Image removed by sender.
Image removed by sender.

Image removed by sender.

Image removed by sender.

--

Julian M. Buckner

Founder & CEO

617.504.8088

Calendar

Website

# EXHIBIT G

---------- Forwarded message ---------
From: **Julian Buckner** < julian@vestahome.com>
Date: Sun, Mar 6, 2022 at 6:14 PM
Subject: Re: 944 airole way
To: Miles Staglik < mstaglik@scpllc.com>
Cc:  brett@vestahome.com < brett@vestahome.com>


Hi Miles -  congrats again on the sale! Hope you have some well-deserved vacation plans.

Per your request I've attached below the following:
- •   * Mold inspector reports
- •   * Inventory list of damages
- •   *  Link to additional photos

Note: we don't have photos of some of the water damaged items because we segregated them
from the rest of the warehouse before photographing. Because of the toxic nature of the mold,
our adjustor suggested we plastic everything off. We are incurring additional cost storing, but he
suggested we wait for either you or the insurance company to tell us what to do with the items.


The total cost of just the furniture is $258,773.

Please let me know if there is anything else you need from us in order to submit to the insurance
company.

Thanks,
Julian


On Thu, Feb 17, 2022 at 12:06 PM Miles Staglik < mstaglik@scpllc.com> wrote:

   Got it and can you send me the request for damages  items damaged with photos and
   dollar amounts.  Ill reach out to the insurance broker and ask him to help with the claim.

   **Miles Staglik**
   Senior Director
   SierraConstellation Partners LLC
   M: 310-343-0361
   O: 213-289-3655

   LEGAL DISCLAIMER: This communication, including any attachments, is intended  solely for the individual or entity to which it is
   addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of or taking
   action in reliance upon this information by persons or entities other than the intended recipient is prohibited.  If you have received this
   message in error, please advise the sender immediately by reply e-mail and delete this message and all copies from your system. Thank you
   for your cooperation.

**From:** Julian Buckner < julian@vestahome.com>
**Sent:** Thursday, February 17, 2022 6:53 AM
**To:** Miles Staglik < mstaglik@scpllc.com>
**Cc:** brett@vestahome.com
**Subject:** Re: 944 airole way

Hi Miles - hope you are well. Pursuant to our previous conversation, I have attached the report from the inspector we had with evidence of the water damage caused to the furniture onsite. What are the next steps to get this submitted to the insurance company?

Thanks,
Julian

On Thu, Jan 13, 2022 at 6:37 PM Miles Staglik < mstaglik@scpllc.com> wrote:
    Got it, thank you.

    **Miles Staglik**
    Senior Director
    SierraConstellation Partners LLC
    M: 310-343-0361
    O: 213-289-3655

    LEGAL DISCLAIMER: This communication, including any attachments, is intended solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message and all copies from your system. Thank you for your cooperation.

    **From:** Julian Buckner < julian@vestahome.com>
    **Sent:** Thursday, January 13, 2022 3:27 PM
    **To:** Miles Staglik < mstaglik@scpllc.com>
    **Cc:** brett@vestahome.com
    **Subject:** Re: 944 airole way

    Understood. I've attached the following:
        1. 1. Resending screenshot from Yvonne confirming the bed walls belong to us
        2. 2. A couple of emails I was involved in about the design and manufacturing of the bed walls (one from July 2020 showing the inspiration they came from and one from September 2020 about the actual production)
        3. 3. Pursuant to your previous email I have re-attached the two invoices just for the water damage
        4. 4.

    On Thu, Jan 13, 2022 at 12:57 PM Miles Staglik < mstaglik@scpllc.com> wrote:
        To be clear we will offer the headboards for sale with the home. If you can provide me with any paperwork about doing the headboards that could

help with me seeing if the attorneys are fine with me buying them from
you.

**Miles Staglik**
Senior Director
SierraConstellation Partners LLC
M: 310-343-0361
O: 213-289-3655

LEGAL DISCLAIMER: This communication, including any attachments, is intended solely for the individual or
entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission,
dissemination or other use of or taking action in reliance upon this information by persons or entities other than
the intended recipient is prohibited. If you have received this message in error, please advise the sender
immediately by reply e-mail and delete this message and all copies from your system. Thank you for your
cooperation.

**From:** Julian Buckner < julian@vestahome.com>
**Sent:** Thursday, January 13, 2022 10:08 AM
**To:** Miles Staglik < mstaglik@scpllc.com>
**Cc:** brett@vestahome.com
**Subject:** Re: 944 airole way

Hi Miles - I spoke to Kiel and Lisa. Kiel was already up at the house this
morning doing the final arrangements (excluding the areas where the floor
is being redone and we will need to return). According to him: There are
plants, towels and candles in every bathroom (someone had moved the
ones from the front bathroom into a drawer which he replaced). I have
attached the pictures he sent me. Were you expecting something different?
Happy to adjust accordingly.

According to Lisa, she went above and beyond what was initially spec'd
and re-did all of the downstairs secondary bedrooms, spa etc. so that it
would be cohesive with the work that was scoped out as we obviously
want this to be a showcase for us as well. If you feel differently, I would
like to get a walkthrough with you and Kiel scheduled ASAP.

We are charging for the rug because it is ruined beyond repair. However,
it's a custom piece and size and so far we have been quoted months to
replace it, so Kiel made the decision that it would be better to leave it in
place for now rather than have the room rugless. If you disagree we can
remove it immediately.

Regarding the bed walls, that is totally fine. We install similar bedwalls at
this price in the vast majority of the $30M+ houses we do. They are
immensely popular and almost always sell with the home. I have no doubt
you can find a vendor who can replicate these less expensively. A) it is
always cheaper to knock something off than it is to custom design it from
scratch. Nile, Yvonne and their designer spent dozens of hours with our
designer pouring over designs and meticulously selecting fabrics, fills and

panel shapes. Asking someone to replicate a design that is already done is not comparable. B) we do not advertise ourselves as the cheapest option. We are however the best and highest quality. Once the home sells, assuming the buyer does not wish to purchase them from us, we will remove them from the project and you can have your other vendor replace them.

Per our discussion yesterday I have attached 3 invoices:
1. 1. Water damage (excluding the 2 chairs)
2. 2. Water damage to master BR wall
3. 3. 4 other bed walls (obviously ignore this if you don't want to purchase)

If you are still unhappy with the accessorizing, let me know when we can schedule a walk of the property with Kiel so we can get it resolved ASAP.

Julian

On Thu, Jan 13, 2022 at 12:24 AM Miles Staglik < mstaglik@scpllc.com> wrote:
Towels, candles, plants, where is this stuff????

Guys-

We need this place to look nice and its lacking, I took a piss in the front bathroom and no hand towels, no paper towels, no candles, nothing. What did I contract you for $325k for and you also left a water damaged rug in the main living room (that youre billing be for)  we need a rest and I frustrated that Im asking for this.

This needs to be fixed immediately.  I dont care if Lisa is stressed or busy.   This is simple shit. Im frustrated that Im writing this email at midnight.

Also  no bullshit  Im not buying any bed walls from you  talk them down when Im done renting them from you.  I have a vendor lined

up to redo them for 1/6 the cost that youre asking. And itd be a
waste of time to buy them as any buyer is going to reconfigure this
house.

Miles

**Miles Staglik**
Senior Director
SierraConstellation Partners LLC
355 S. Grand Ave., Suite 1450
Los Angeles, CA 90071
M: 310-343-0361
O: 213-289-3655
E:  mstaglik@scpllc.com

LEGAL DISCLAIMER: This communication, including any attachments, is intended  solely for the
individual or entity to which it is addressed and may  contain confidential and/or privileged material.
Any review, retransmission, dissemination or other use of or taking action in reliance upon this
information by persons or entities other than the intended recipient is prohibited.  If you have received
this message in error, please advise the sender immediately by reply e-mail and delete this message and
all copies from your system. Thank you for your cooperation.

--

**Julian M. Buckner**

Founder & CEO

617.504.8088

Calendar

Website

Image removed by sender.
Image removed by sender.
Image removed by sender.

Image removed by sender.

Image removed by sender.

--

**Julian M. Buckner**

Founder & CEO

617.504.8088

Calendar

Website

Image removed by sender.
Image removed by sender.
Image removed by sender.

Image removed by sender.

Image removed by sender.

--

**Julian M. Buckner**

Founder & CEO

617.504.8088

Calendar

Website

Image removed by sender.
Image removed by sender.
Image removed by sender.

Image removed by sender.

Image removed by sender.

--

**Julian M. Buckner**

Founder & CEO

617.504.8088

Calendar

Website

Image removed by sender.
Image removed by sender.
Image removed by sender.

Image removed by sender.

Image removed by sender.

\-\-

Julian M. Buckner

Founder & CEO

617.504.8088

Calendar

Website

Case 2:21-bk-18205-DS    Doc 357    Filed 06/03/22    Entered 06/03/22 14:37:35    Desc
Main Document        Page 83 of 113

--

Julian M. Buckner

Founder & CEO

617.504.8088

Calendar

Website

# EXHIBIT H



# EXHIBIT I



Please Reply To:

**AmeriSci Bio-Chem**
13635 GENITO ROAD
MIDLOTHIAN, VIRGINIA 23112
TEL: (804) 763-1200 • FAX: (804) 763-1800

### *EMAIL TRANSMISSION*

|  |  |  |  |
|---|---|---|---|
| **To:** | Jasson Walke | **From:** | Jill G. Carrillo |
|  | Mold Technical Services | **Client Project:** | 8905 Rex Rd |

**AmeriSci Job #:**    322011082

**Subject:**    Microbiology 48 hour Results

**Date:**    Saturday, January 29, 2022
**Time:**    16:18:15

**Number of Pages:**    <u>     4     </u>
(including cover sheet)

### Email Message:

**To:**    jasson@moldtechnicalservices.com
**From:**    jgcarrillo@amerisci.com
**Subject:**    AmeriSci Results for 8905 Rex Rd (322011082)
**Message:**

Thank you!

CONFIDENTIALITY NOTICE:  Unless otherwise indicated, the information contained in this communication is confidential information intended for use of the individual named above.  If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited.  If you have received this communication in error, please immediately notify the sender by telephone and return the original message to the above address via the US Postal Service at our expense.  Preliminary data reported here will be verified before final report is issued.  Samples are disposed of in 60 days or unless otherwise instructed by the protocol or special instructions in writing.  Thank you.

*Certified Analysis    Service 24 Hours A Day • 7 Days A Week    Competitive Prices*
visit our web site - www.amerisci.com

**Boston • Los Angeles • New York • Richmond**

EXHIBIT I                79



**AmeriSci Bio-Chem**

13635 GENITO ROAD
MIDLOTHIAN, VA 23112
TEL: (804) 763-1200 • FAX: (804) 763-1800

January 29, 2022

Mold Technical Services
Attn: Jasson Walke
PO BOX 1321
Hermosa Beach, CA 90254

RE: Mold Technical Services
     Job Number 322011082
     P.O. # 8905 Rex Rd
     8905 Rex Rd

Dear Jasson Walke:

Enclosed are the microbiological analysis results for the following Mold Technical Services Microbiological samples received at AmeriSci in Good condition, on Friday, January 28, 2022, for a 48 hour turnaround:

1, 2, 3

The 3 sample(s) were sent to AmeriSci via Fed Ex 8164 4167 0634 B. These samples were prepared and analyzed as indicated on the attached analysis sheets.

This report relates ONLY to the sample analysis as reported on the analysis sheets. AmeriSci assumes no responsibility for data interpretation or customer supplied data such as "sample location" or "area sampled". Complete analytical documentation is archived and available upon written request. Results are never corrected against blanks.

AmeriSci appreciates this opportunity to serve your organization. Please contact us for any further assistance or questions.

Sincerely,

Jill G. Carrillo
Microbiology Analyst



**AmeriSci Bio-Chem**
13635 GENITO ROAD
MIDLOTHIAN, VIRGINIA 23112
TEL: (804) 763-1200 • FAX: (804) 763-1800

Analyzed By:
Jill G. Carrillo

Desc    AmeriSci Job #:
**322011082**
FINAL REPORT

**Client:** **Mold Technical Services**
**Address:** **PO BOX 1321**
**Hermosa Beach, CA 90254**

**Client Job#:**
**Client Job Name:** 8905 Rex Rd

**Date Received:** 01/28/22
**Date Reported:** 01/29/22

### Air Cassette Analytical Report (SOP# 3.24.01)

| AmeriSci Number | 322011082-01 | | | 322011082-02 | | | 322011082-03 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sample Number | 1 | | | 2 | | | 3 | | | | | |
| Sample Name | White Sectional | | | Furniture | | | Baseline | | | | | |
| Analysis Date | 1/29/2022 | | | 1/29/2022 | | | 1/29/2022 | | | | | |
| Volume (L) | 75 | | | 75 | | | 75 | | | | | |
| Limit of Detection (LOD) (Count/M$^3$) | 53 | | | 53 | | | 53 | | | | | |
| Background Density | 1 | | | 2 | | | 1 | | | | | |
| | | | | | | | | | | | | |
| **Other** | **Count/M$^3$** | **%** | **Raw Count** | **Count/M$^3$** | **%** | **Raw Count** | **Count/M$^3$** | **%** | **Raw Count** | **Count/M$^3$** | **%** | **Raw Count** |
| Pollen | ND | n/a | ND | 53 | n/a | 1 | 693 | n/a | 13 | | | |
| Fibers | 427 | n/a | 8 | 640 | n/a | 12 | 213 | n/a | 4 | | | |
| Mycelial Fragments | ND | n/a | ND | ND | n/a | ND | ND | n/a | ND | | | |
| | | | | | | | | | | | | |
| **Fungal Identification** | **Count/M$^3$** | **%** | **Raw Count** | **Count/M$^3$** | **%** | **Raw Count** | **Count/M$^3$** | **%** | **Raw Count** | **Count/M$^3$** | **%** | **Raw Count** |
| Ascospores | 53 | 5 | 1 | ND | | | ND | | | | | |
| Aspergillus/Penicillium | 160 | 14 | 3 | 160 | 33 | 3 | ND | | | | | |
| Basidiospores | 373 | 33 | 7 | 107 | 22 | 2 | 107 | 15 | 2 | | | |
| Cladosporium sp. | 533 | 48 | 10 | 213 | 44 | 4 | 533 | 77 | 10 | | | |
| Torula sp. | ND | | | ND | | | 53 | 8 | 1 | | | |
| **Total Fungal Spores** | **1119** | **100** | **21** | **480** | **100** | **9** | **693** | **100** | **13** | | | |

*ND = None Detected*
Results relate only to the items tested and are reported mathematically to significant figures.

Name/Title:  Jill G. Carrillo / Analyst

Signature:

Date:  01/29/22

Name/Title:  Jill G. Carrillo / Analyst

Reviewed By:

Date:  01/29/22

81

Page 1 of 1

**AMERISCI**

24416 South Main Street, Carson, CA 90745
(310) 834-4868 Phone / (310) 834-4772 Fax

**Requested Services (X Boxes)**

Non-Viable | Culturable

Spore Trap | Tape Bulk | Andersen, Swab, Bulk

322011082

**Contact Information**

Company: MB  $30300

PO#:

Address

Results To:    Fax Results? Y ☐    Fax#:

Phone:    Email? Y ☐    Email:

**Project Information**

8905 Rex Rd.

Project Name:

**Turnaround Time Codes**

**STD** – Standard: 2 Days (Non-viable)
**24** – 24: 24 Hours (Non-viable)
**R** – Rush: 6 hours (Non-viable)
**C** – Culture: 7-14 Days
**W** – Weekends: Scheduled by noon ET Friday Only
***Samples received after 5pm, on weekends or in drop-box, will be considered received the next business day.

Sampling Date(s):

| Sample ID | Description | Sample Type (Below) | TAT (Above) | Total Volume/Area (as applicable) | Notes: (Time, Temp, Etc.) | Fungal Spore Count and Genus ID, pollen, fiber & mycelial fragment count | Fungal Genus Identification – Qualitative | Environmental Fungal Genus ID & Enumeration | Environmental Bacterial Enumeration & Gram Stain ID | Fungal Speciation – Scheduled in Advance Only | Bacterial speciation – Scheduled in Advance Only |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | White Sectional | ST | STD | 75 | — | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 2 | Furniture | ST | STD | 75 | — | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 3 | Baseln | ST | STD | 75 | — | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Sample Type Codes**

**AP** – Andersen Plate
**SW** - Swab
**B** - Bulk
**T** - Tape
**ST** – Spore Trap: Zefon, Micro5, Cyclex-d, etc.

Relinquished By

Date & Time
1/18/22

Received By
**RECEIVED**

Date & Time

JAN 28 2022

By KHM

AmeriSci Bio-Chem



**2/3/22**

**Vesta/Showroom Interiors**
**8905 Rex Rd.**
**Pico Rivera, CA 90660**

Re: **Mold/Moisture Investigation at: 8905 Rex Rd.**
Inspection Date: **1/18/22**
Technician: **Jasson Walke**

We thank you for giving us the opportunity to perform services for you. This report
contains findings and if required, recommendations relevant to the microbial
investigation.

Sincerely,

*Jasson Walke*

**Mold Technical Services, Inc**
(310) 541-1534 - Office
jasson@moldtechnicalservices.com



**Introduction**
This report contains findings relevant to the microbial investigation conducted on the date above.

**Background**
MTS was called out to perform a microbial inspection and testing after staging furniture was isolated in the warehouse due to repeated water intrusion events occurred at the house it was staged in.

**Sampling Protocol**
Molds tested are compared to Mold Technical Services' testing protocol. Since no quantitative standards exist regarding acceptable spore concentration, analysis focuses on growth found in direct swab sampling OR comparing levels found in the air in the outside baseline sample with those found in the indoor area(s) tested. Certain molds, particularly *Chaetomium*, *Aspergillus* and *Ulocladium*, are important as warning markers. These molds can grow under the same conditions as *Stachybotrys*, and when they are detected in amplified quantities it might be a sign that conditions exist conducive to Stachybotrys growth. Mold Technical Services looks for these warning markers.

Large classes of molds that are reported such as *Ascospores* and *Myxomycete / Rust / Smut* are generally used to indicate common outdoor plant molds that are currently believed to have little effect on human health.  *Basidiospores* are similar, but they are more of a concern when observed at elevated levels indoors due to more frequent allergenic properties and as an indicator of water damaged wood and/or an overly humid environment.

***The protocol criteria is as follows***

Non-Viable Air Sampling: (Counts the total number of spores, does not determine species) using spore trap cassettes. Samples cannot be cultured or speciated, only genus can be identified.
Mold Technical Services is looking for groupings of warning marker molds as mentioned above.

Non-Viable bulk or direct sampling (swab, tape lift, bulk):
Looking for the presence of and groupings of warning marker molds, these can be speciated by culturing, but must be requested at the time of inspection.

Moisture detection: Moisture meters are used to detect the presence of excess moisture. Mold needs moisture and a food source to grow.

**Site Sample Findings**
-   The following tests were performed:
    o   Spore trap sampling using Allergenco-D cassettes
    o   Moisture detection



Analysis of the survey yields the following observations:

## General Observations

**1. Warehouse Dock Floor**

- Water staining/damage found on furniture and rugs.

- One air sample taken from large white sectional couch.

- One air sample taken from chairs, tables, sofas.

## Conclusions

The air samples taken show Aspergillus/Penicillium* spores that were not found in the outdoor baseline sample taken that day.  *(See Glossary Below)

The spores found are believed to have been caused by multiple water intrusion events as well as furniture being staged/stored in locations with active water damage/moisture in the surrounding ceiling, walls and flooring.

No accepted quantitative standards exist by which to assess the health risks related to mold exposure. Molds have been associated with a variety of health effects and sensitivity varies dramatically from person to person.  A doctor should be consulted with any questions regarding exposure to the types of mold found in the sample(s) taken.

## Recommendations

Due to the extent of water intrusion, staining and spores, remediation is recommended. A qualified remediation contractor should be consulted to discuss proper methods of cleaning of all furniture affected by water intrusion and fungal spores.  See abatement protocol below.



**Abatement recommendations:**

- Contain the area where abatement to be staged
- Use negative air and dehumidifiers within the staged area
- Remove fabric, foam or porous furniture material from furniture
- Thoroughly clean and sanitize hard furniture surfaces such as wood and metal
- Dry furniture thoroughly
- HEPA vacuum before moving furniture to a clean room
- *Test for clearance**

***It is highly recommended that this portion of the remediation process be performed
by a third party to avoid any conflict of interest.  Additional fees will be assessed for
clearance testing, so please keep this in mind when budgeting for remediation.
Contact MTS for pricing, scheduling and all details regarding this part of the process.***





*1* *Sectional Sofa*





*2 Sectional Sofa*





*3* *Sectional Sofa*









*4 Sectional Sofa*



**Limitations**

No accepted quantitative standards exist by which to assess the health risks related to mold exposure. Molds have been associated with a variety of health conditions; sensitivity varies dramatically from person to person. A doctor should be consulted with any questions regarding exposure to the types of mold found in the samples taken.

Mold is a naturally occurring microscopic organism.  It is possible to find mold growth and/or mold spores virtually everywhere on the planet.  An absolute absence of mold is rare even in a well-controlled environment.  The above findings and conclusions are indicative of conditions that existed at the time of the investigation. It should be noted that these conditions could change as a result of any number of factors including environmental parameters and activities in the area.  MTS cannot be held responsible for corrective action(s) taken to remediate the above mentioned locations and/or cause(s) of the issue(s) that brought about the need for remediation. MTS does not have the capacity to confirm that corrective action(s) have been taken to remedy the cause of fungal growth and/or damage.  Mold can and will grow in any location where conditions are conducive to fungal growth even if remediation had been performed there previously.

In this case, the limited number of samples allows for differences to be observed with a degree of significance. In addition, non-viable sampling cannot identify spores down to the species level and the viable analysis methodology is subject to the bias of the growth medium. Both of these factors may mask differences in the types of spores found indoors and outdoors. This report is not intended to guarantee that the subject site is or is not free from conditions that could pose a threat to human health or safety. The following excerpt from the American Conference of Governmental Industrial Hygienists (ACGIH) publication <u>Bioaerosols Assessment & Control</u> (1999, section 1425) describes the limitations inherent in microbial investigation.

"Failure to find a biological agent or related environmental conditions is not absolute assurance of their absence or of the absence of exposure and risk. However, such findings may make the absence more probable than presence and may be used to support the assumption that the environment presents conditions of acceptable risk. Investigators can never definitively conclude or prove that an environment is safe and presents no risk of exposure to biological agents. Data can be collected that documents the apparent absence of specific hazards (i.e. the relative safety of an environment), but the requirements for data quality to reach this conclusion are stringent."



## Glossary

**Acremonium -** *(ack-ruh-moan'-ee-um)* **(Cephalosporium sp.)** - Reported to be allergenic. Can produce a trichothecene toxin which is toxic if ingested.  It can produce mycetomas, infections of the nails, onychomycosis, corneal ulcers, eumycotic mycetoma, endophthalmitis, meningitis, and endocarditis.  Found in sewage, soil and vegetation.

**Alternaria -** *(all-tur-nair'-ee-uh)* - Ubiquitous. Outdoors it can be found in soil, seeds, and plants. It is often found in carpets, textiles, and on horizontal surfaces in building interiors, such as window frames. The species Alternaria alternata is capable of producing tenuazonic acid and other toxic metabolites which may be associated with disease in humans or animals. It has been associated with hypersensitivity pneumoniti, sinusitis, deratomycosis, onychomycosis, subcutaneous phaeohyphomycosis, and invasive infection. Common cause of extrinsic asthma (immediate-type hypersensitivity: type I). Acute symptoms include edema and bronchiospasms, chronic cases may develop pulmonary emphysema.

**Arthrinium -** *(are-thrin'-ee-uhm)* **phaeospermum**- Widespread saprophyte found on dead plant material, soil and particularly grasses. Considered an allergen. This fungus has also been documented in various subcutaneous infections.  A filamentous fungus that grows in similar conditions as Stachybotrys.

**Ascomycete -** *(as-co-my-seet)* - One of the major classes of fungal organisms. This class contains the "sac fungi" and yeasts. Many ascomycete spores are reported to be allergenic.

**Ascospores -** a spore produced in a sac-like structure

**Aspergillus -** *(as-per-jill-us)* - A genus of fungi containing approximately 150 recognized species. Members of this genus have been recovered from a variety of habitats, but are especially common as saprophytes on decaying vegetation, soils, stored food, feed products in tropical and subtropical regions. Some species are parasitic on insects, plants, animals, and humans. All of the species contained in this genus should be considered allergenic. Various Aspergillus species are a common cause of extrinsic asthma (immediate-type hypersensitivity: type I). Acute symptoms include edema and bronchiospasms. Chronic cases may develop pulmonary emphysema. Members of this genus are reported to cause a variety of opportunistic infections of the ears and eyes. Severe pulmonary infections may also occur. Many species produce mycotoxins which may be associated with disease in humans and other animals. Toxin production is dependent on the species or a strain within a species and on the food source for the fungus. Some of these toxins have been found to be carcinogenic in animal species. Several toxins are considered potential human carcinogens.  Identification to species is difficult, often paired with Penicillium due to similarities

**Aureobasidium -** (*are-ee-oh-buh-syd'-ee-um*) **pullulans** - A cosmopolitan fungus with the main habitat on the aerial parts of plants. This fungus should be considered allergenic. This species has been associated with deratitis, peritonitis, pulmonary infection. May be recovered as a contaminant from human cutaneous sites.



**Basidiomycetes** - One of the major classes of fungal organisms. This class contains the mushrooms, shelf fungi, puffballs, and a variety of other macrofungi. Many basidiomycete spores are reported to be allergenic.

**Basidiospores** - spore formed on a structure known as a basidium. Characteristic of the Basidiomycete class. Example: rusts, smuts and mushrooms.

**Bipolaris** - A widespread fungus that is most frequently associated with grasses, plant material, decaying food, and soil. It is common to both indoor and outdoor environments. Older obsolete names include Drechslera and Helminthosporium. Various species of this fungus can produce the mycotoxin sterigmatocystin, which has been shown to produce liver and kidney damage when ingested by laboratory animals.

**Botrytis –** (*bow-try-tus*) – contaminant. A filamentous fungus isolated from decaying plants. It is more common in tropical and temperate areas.

**Chaetomium -** *(kay-toe-me-um)* - Large ascomycetous fungus producing perithecia. It is found on a variety of substrates containing cellulose including paper and plant compost. It can be readily found on wet or water damaged paper in sheet rock (drywall).  Contaminant, occasionally involved in systemic and cutaneous disease.

**Cladosporium –** *(clad-oh-spore-ee-um)* **(Hormodendrum sp.)** – Ubiquitous.  Most commonly identified outdoor fungus. It is a common allergen. It is found on dead plants, food, straw, soil, paint and textiles. It can cause mycosis. Common cause of extrinsic asthma (immediate-type hypersensitivity: type I). Acute symptoms include edema and bronchiospasms, chronic cases may develop pulmonary emphysema.

**Contaminant** - something that is present without injuring or benefiting the host; they do not cause infection.

**Curvularia –** (*curve-you-lair'-ee-uh*) - Contaminant/opportunistic pathogen, found in air, soil and textiles, causes infections in eyes and sinuses.  It may cause corneal infections, mycetoma and infections in immune compromised hosts.

**Drechslera –** *(dresh-lair'-uh)* - Found on grasses, grains and decaying food. It can occasionally cause a corneal infection of the eye.

**Epicoccum –** *(epp-ee-cock'-um)* - A common allergen. It is found in plants, soil, grains, textiles, and paper products.



**Fusarium -** *(few-sarh-ee-um)* - A common soil fungus. It is found on a wide range of plants. It is often found in humidifiers. Several species in this genus can produce potent trichothecene toxins. The trichothecene (scirpene) toxin targets the following systems: circulatory, alimentary, skin, and nervous. Produces vomitoxin on grains during unusually damp growing conditions. Symptoms may occur through ingestion of contaminated grains or possibly inhalation of spores. The genera can produce hemorrhagic syndrome in humans (alimentary toxic aleukia). This is characterized by nausea, vomiting, diarrhea, dermatitis, and extensive internal bleeding. Reported to be allergenic. Frequently involved in eye, skin and nail infections.

**Geotrichum -** *(gee-oh-trick-um)* - A common contaminant of grains, fruits, dairy products, paper, textiles, soil and water. The species Geotrichum candidum can cause a secondary infection (geotrichosis) in association with tuberculosis. This rare disease can cause lesions of the skin, bronchi, mouth, lung, and intestine.

**Hyphal fragments -** *(high-full)* - filamentous, branched structures with cell walls**.**

**Memnoniella –** (mem-non-yella) *Memnoniella echinata* is a widespread strongly cellulolytic fungus.  It has been isolated from cotton, canvas, hardboard and woolen fabrics. *Memnoniella echinata* is morphologically very similar to *Stachybotrys* but it produces spores in chains. Following molecular characterization of this species, it was renamed *Stachybotrys echinata*. This fungus is commonly found on very wet gypsum board. Little is known about the medical significance of *M. echinata*. However, it produces many of the toxins produced by *Stachybotrys chartarum*, suggesting that *M. echinata* should also be considered potentially dangerous in indoor air.

**Mucor -** *(mhew'core)* - Often found in soil, dead plant material, horse dung, fruits, and fruit juice. It is also found in leather, meat, dairy products, animal hair, and jute. A Zygomycetes fungus which may be allergenic (skin and bronchial tests). May cause mucorosis in immune compromised individuals. The sites of infection are the lung, nasal sinus, brain, eye, and skin.

**Myxomycete/Rust/Smut** – fungi associated with plants.

**Nigrospora** - *(nye-grow-spore-uh)* - *A* filamentous dematiaceous fungus widely distributed in soil, decaying plants, and seeds. Reported to be allergenic.

**Opportunistic Pathogen** - Causes infections only when the weak or injured condition of the person gives the agent opportunity to infect; rarely infect patients who are otherwise healthy.

**Paecilomyces -** *(pay-sill-oh-my-sees)* - contaminant/opportunistic pathogen, found worldwide in soil and decaying vegetation, associated with pulmonary and sinus infections in those who had organ transplants, as well as inflammation of the cornea.  P. variotii can cause paecilomycosis. They are reported to be allergenic. Some members of this genus are reported to cause pneumonia. It may produce arsine gas if growing on arsenic substrate. This can occur on wallpapers covered with paris green.



**Pathogen** - Disease causing.

**Penicillium -** *(pen-uh-sill'-ee-um)* - Contaminant/opportunistic pathogen, found in soil and decaying vegetation, usually is a secondary invader causing pulmonary and many other infections. Widespread. Commonly found indoors in house dust, carpet, wallpaper, and in interior fiberglass duct insulation. Grows in water-damaged buildings on wallpaper, wallpaper glue, decaying fabrics, moist chipboards, and behind paint. Also found in blue rot of apples, dried foodstuffs, cheeses, fresh herbs, spices, dry cereals, grains, nuts, onions, and oranges.  A wide number of organisms have been placed in this genus. Identification to species is difficult, often paired with Aspergillus due to similarities. Often found in aerosol samples. It may cause hypersensitivity pneumonitis and allergic alveolitis in susceptible individuals. It is reported to be allergenic (skin). Some species can produce mycotoxins. Common cause of extrinsic asthma (immediate-type hypersensitivity: type I). Acute symptoms include edema and bronchiospasms, chronic cases may develop pulmonary emphysema.

**Periconia sp** - This genus is a mold that lacks a known sexual state and thus belongs to the Fungi Imperfecti. It is generally classified as a dematiaceous (dark-walled) fungus.

**Phoma** - *(foam-uh)* - A common indoor air allergen. It is similar to the early stages of growth of Chaetomium sp. The species are isolated from soil and associated plants (particularly potatoes). Produces pink and purple spots on painted walls. It may have antigens which cross-react with those of Alternaria sp. It will grow on butter, paint, cement, and rubber. It may cause phaeohyphomycosis, a systematic or subcutaneous disease.

**Pithomyces** - *(pith-oh-my-sees)* - Grows on dead grass in pastures. Causes facial eczema in ruminants.

**Rhizopus -** *(rye-zo-puss)* - Contaminant/opportunistic pathogen, found in soil, decaying vegetation, and animal dung. The Zygomycetous fungus is reported to be allergenic. It may cause mucorosis in immune compromised individuals. It occupies a biological niche similar to Mucor sp. It is often linked to occupational allergy. The sites of infection are the lung, nasal sinus, brain, eye, and skin.

**Scopulariopsis -** *(scope-you-lair-ee-op'-siss)* - contaminant/opportunistic pathogen, found worldwide in soil and decaying vegetation, usually is only a contaminant but has been found in patients with onychomycosis, typically infects toenails.



**Stachybotrys -** *(stack-ee-bought-ris)* - Several strains of this fungus (S. atra, S. chartarum and S. alternans are synonymous) may produce a trichothecene mycotoxin- Satratoxin H - which is poisonous by inhalation. The toxins are present on the fungal spores. It does not compete well with other rapidly growing fungi. Grows on building material with high cellulose content and low nitrogen content. Areas with relative humidity above 55% and are subject to temperature fluctuations are ideal for toxin production. Individuals with chronic exposure to the toxin produced by this fungus reported cold and flu symptoms, sore throats, diarrhea, headaches, fatigue, dermatitis, intermittent local hair loss, and generalized malaise. The toxins produced by this fungus will suppress the immune system affecting the lymphoid tissue and the bone marrow. Animals injected with the toxin from this fungus exhibited the following symptoms: necrosis and hemorrhages within the brain, thymus, spleen, intestine, lung, heart, lymph node, liver, and kidney. The mycotoxin is also reported to be a liver and kidney carcinogen. Affects by absorption of the toxin in the human lung are known as pneumomycosis. This organism is rarely found in outdoor samples. It is usually difficult to find in indoor air samples unless it is physically disturbed. The spores are in a gelatinous mass. The spores will die readily after release; however, the dead spores are still allergenic and toxigenic. Percutaneous absorption has caused mild symptoms.

**Stemphylium -** *(stem-fill-ee-um)* - Reported to be allergenic. Isolated from dead plants and cellulose materials.

**Torula -** *(tore-you-law)* – Contaminant. Fungi associated with plants.

**Trichoderma -** *(trick-oh-derm-uh)* - Commonly found in soil, dead trees, pine needles, paper, and unglazed ceramics. It often will grow on other fungi. It produces antibiotics which are toxic to humans. It has been reported to be allergenic. It readily degrades cellulose.

**Ulocladium -** *(you-low-clay-dee-um)* - Contaminant. Widespread found on gypsum board, paper, paint, tapestries, jute, other straw materials, soil, dung, paint, grasses, fibers, wood, and decaying plant material. Ulocladium has a high water requirement.

**Verticillium -** *(ver-ti-sill-ee-um)* - Found in decaying vegetation, on straw, soil, and arthropods. A major plant pathogen and is also parasitic on other fungi and insects. A rare cause of corneal infections.

**Yeast** - Various yeasts are commonly identified on air samples. Some yeast are reported to be allergenic. They may cause problems if a person has had previous exposure and developed hypersensitivity. Yeasts may be allergenic to susceptible individuals when present in sufficient concentrations.

# EXHIBIT J

| PRODUCT NAME | ITEM ID | SKU | QTY | COST | TOTAL COST | PHOTOS | STATUS |
|---|---|---|---|---|---|---|---|
| **ROOFDECK DAMAGE/DIRTY INVENTORY** | | | | | | | |
| Bar Table Charcoal | https://crm.byshowro | HH-021668 | 1 | 766 | NA | | |
| Cali Bar Chair | https://crm.byshowro | HH-025222 | 12 | 696 | NA | | |
| 84" ALUMINUM FRAME SOFA \| Charcoal | https://crm.byshowro | HH-21972 | 2 | 3360 | 6720 | | |
| Iron Coffee Table \| Black Frame | https://crm.byshowro | HH-026038 | 1 | 428 | NA | | |
| Outdoor U Side Table \| Charcoal | https://crm.byshowro | HH-025221 | 6 | 272 | NA | | |
| Outdoor Yun Armless \| Sunbrella White | https://crm.byshowro | HH-016548 | 7 | 2008 | 14056 | | |
| Outdoor Yun Corner \| Sunbrella White | https://crm.byshowro | HH-016549 | 10 | 2304 | 23040 | | |
| 12'x 7' \| Cabana \| Natural | https://crm.byshowro | HH-021971 | 5 | 3920 | NA | | |
| Outdoor U Side Table \| White | https://crm.byshowro | HH-016489 | 5 | 450 | NA | | |
| Outdoor U Side Table \| Black | https://crm.byshowro | HH-008994 | 2 | 450 | NA | | |
| Rope Chaise Lounger | https://crm.byshowro | HH-021969 | 6 | 1640 | 9840 | | |
| Yun Center \| Black | https://crm.byshowro | HH-007666 | 10 | 2008 | 20080 | | |
| Yun Corner \| Black | https://crm.byshowro | HH-007667 | 8 | 2008 | 16064 | | |
| **OTHER WATER DAMAGE INVENTORY** | | | | | | | |
| Cloud 2.0 Corner \| Zuma White | https://crm.byshowro | HH-019982 | 4 | $1,037 | $4,147 | | SEPARATED - MOLD |
| Cloud 2.0 Armless \| Zuma White | https://crm.byshowro | HH-019981 | 10 | $792 | $7,920 | | SEPARATED - MOLD |
| Jane Lounge Chair \| Sienna Fabric | https://crm.byshowro | HH-025280 | 2 | $3,597 | $7,194 | | SEPARATED - MOLD |
| Jane Sofa \| Sienna Fabric | https://crm.byshowro | HH-025281 | 1 | $6,950 | $6,950 | | SEPARATED - MOLD |
| X Bench \| Pink Velvet | https://crm.byshowro | HH-031301 | 1 | $750 | $750 | | |
| Severa Lounge Chair \| Black Leather | https://crm.byshowro | HH-025282 | 2 | $1,184 | $2,368 | | |
| Eastern King \| Chevron BED \| Grey | https://crm.byshowro | HH-031294 | 1 | $22,667 | $22,667 | | On Property |
| The Alix Sofa Sectioal | https://crm.byshowro | HH-025255 | 1 | $9,685.00 | $9,685 | | |
| Brando Bench Silver | https://crm.byshowro | HH-007669 | 1 | $2,240 | $2,240 | | |
| Severa Lounge Chair \| Black Velvet | https://crm.byshowro | HH-025283 | 8 | $1,950 | $15,600 | | |
| CREED COFFEE TABLE | https://crm.byshowro | HH-025579 | 2 | $2,550 | $5,100 | | |
| Alexius Stool IV | https://crm.byshowro | HH-025290 | 2 | $1,176 | $2,352 | | |
| Alexius Stool I | https://crm.byshowro | HH-025291 | 2 | $1,176 | $2,352 | | |
| Alexius Stool II | https://crm.byshowro | HH-025292 | 2 | $1,176 | $2,352 | | |
| Alexius Stool III | https://crm.byshowro | HH-025293 | 2 | $1,176 | $2,352 | | |
| Lexie Lounge Chair \| Velvet \| Black | https://crm.byshowro | HH-015068 | 2 | $1,888 | $3,776 | | |
| Hexagon Top Side Table | https://crm.byshowro | HH-025583 | 2 | $900 | $1,800 | | |
| **DAMAGED INVENTORY SEPARATED - WAREHOUSE** | | | | | | | |
| DOUBLE ASTON CORD Daybed \| Light khaki | Item #154151 | HH-021974 | 1 | $5,280.00 | $5,280 | Ref Mold Report | SEPARATED - MOLD |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Item #153937 | HH-025218 | | | | |
| BITE Outdoor Lounger \| Natte Grey Chine \| Light Gra | | | 1 | $1,650.00 | $1,650 | SEPARATED - MOLD |
| | Item #70865 | HH-008449 | | | | |
| Helios Desk Chair \| Black Leather | | | 1 | $2,950.00 | $2,950 | SEPARATED - MOLD |
| Prague Coffee Table | Item #119716 | HH-019464 | 1 | $2,072.00 | $2,072 Ref Mold Report | SEPARATED - MOLD |
| Prague Coffee Table | Item #119721 | HH-019464 | 1 | $2,072.00 | $2,072 Ref Mold Report | SEPARATED - MOLD |
| Jordan Coffee Table \| Cerused White | Item #17228 | HH-001949 | 1 | $3,600.00 | $3,600 Ref Mold Report | SEPARATED - MOLD |
| Keaton Sectional \| Armless \| Halston Fog 9 | Item #154400 | HH-024579 | 1 | $992.00 | $992 Ref Mold Report | SEPARATED - MOLD |
| | Item #153936 | HH-025218 | | | | |
| BITE Outdoor Lounger \| Natte Grey Chine \| Light Gra | | | 1 | $1,650.00 | $1,650 | SEPARATED - MOLD |
| 6' Calvin Seater Sofa \| RIGHT \| Stainless Steel Bras | Item #147172 | HH-023994 | 1 | $4,632.00 | $4,632 Ref Mold Report | SEPARATED - MOLD |
| 2 Drawer Nightstand w/Legs \| Large \| GREY | Item #213402 | HH-032540 | 1 | $1,760.00 | $1,760 Ref Mold Report | SEPARATED - MOLD |
| Grey Foot Stool | Item #213499 | HH-032545 | 1 | $305.00 | $305 Ref Mold Report | SEPARATED - MOLD |
| Ardent Lounge Chair \| Black Cane \| Black Leather \| E | Item #154189 | HH-025195 | 1 | $2,100.00 | $2,100 | SEPARATED - MOLD |
| | Item #205267 | HH-000307 | | | | |
| Bella Coffee Table \| Polished Nickel | | | 1 | $4,840.00 | $4,840 | SEPARATED - MOLD |
| 2 Drawer Nightstand w/Legs \| Large \| GREY | Item #213403 | HH-032540 | 1 | $1,760.00 | $1,760 Ref Mold Report | SEPARATED - MOLD |
| | Item #196979 | HH-016680 | | | | |
| Adjustable Padded Piano Bench | | | 1 | $320.00 | $320 | SEPARATED - MOLD |
| | Item #156095 | HH-025493 | | | | |
| Dashian Lounge Chair \| Monument 902 \| Chalk | | | 1 | $950.00 | $950 | SEPARATED - MOLD |
| | Item #137105 | HH-021852 | | | | |
| SMALL Coffee Table \| Ceramic Top HT002 \| White | | | 1 | $431.52 | $432 | SEPARATED - MOLD |

| | Item #154064 | HH-025232 | | | | |
|---|---|---|---|---|---|---|
| BITE Outdoor 3 SEATER \| RIGHT END \| Lead Chine | | | 1 | $3,304.00 | $3,304 | SEPARATED - MOLD |
| | Item #137108 | HH-021852 | | | | |
| SMALL Coffee Table \| Ceramic Top HT002 \| White | | | 1 | $431.52 | $432 | SEPARATED - MOLD |
| | https://crm.byshowroom | HH-025654 | | | | |
| Florence Lounge Chair \| Brown Fabric \| Natural Cane \| Dar | | | 1 | $3,320.00 | $3,320 | |
| | https://crm.byshowroom | HH-031654 | | | | |
| Hanz Lounge Chair \| Diamond 902 Fabric \| Brushed Gold | | | 2 | $1,224.00 | $2,448 | |

| CUSTOM VESTA RUGS ADDED AFTER WATER DAMAGE | | | | | | |
|---|---|---|---|---|---|---|
| Bedroom 1 - 10 x 14 \| Platinum \| Silver | https://crm.byshowroom | HH-023543 | 1 | $6,512.00 | $6,512 | Currently in property |
| Entry - Viscose Handloom Rug \| Ivory Grey \| 5'9" x 9' | https://crm.byshowroom | HH-025544 | 1 | $5,432.00 | $5,432 | Currently in property |
| Guest House - Viscose Knotted Rug \| Beige \| 8'11" x | https://crm.byshowroom | HH-025541 | 1 | $3,393.60 | $3,394 | Currently in property |
| Guest House - 8 x 11 \| Encore \| Ash | https://crm.byshowroom | HH-005214 | 1 | $5,432.00 | $5,432 | Currently in property |

| MOLD SAMPLE TESTING | | | | |
|---|---|---|---|---|
| Mold Technical Services, INC. | | | | |
| Limited Survey/Consultation/944 Airole Way/3 samples | | 1/18/2022 | | $480 |
| Limited Survey/Consultation/944 Airole Way/4 samples | | 1/24/2022 | | $575 |
| Limited Survey/Consultation/944 Airole Way/3 samples | | 2/9/2022 | | $480 |
| Limited Survey/Consultation/8905 Rex Rd/4 Samples | | 1/8/2022 | | $575 |
| Discount | | | | ($380.00) |
| | | | TOTAL COST | $258,773.04 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  <u>REQUEST FOR PAYMENT OF CHAPTER 11 ADMINISTRATIVE EXPENSES OF SHOWROOM INTERIORS, LLC AND DECLARATION OF JULIAN BUCKNER IN SUPPORT THEREOF</u>  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  June 3, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2.  <u>SERVED BY UNITED STATES MAIL</u>**:  On  June 3, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Crestlloyd, LLC**
c/o SierraConstellation Partners
LLC
355 S. Grand Avenue Suite 1450
Los Angeles, CA 90071

☐ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 3, 2022 | Beverly Lew | */s/ Beverly Lew* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ADDITIONAL SERVICE INFORMATION (if needed):

## 1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Kyra E Andrassy on behalf of Creditor Interno Investment, Inc.
kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Kyra E Andrassy on behalf of Interested Party Inferno Investment, Inc.
kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

Todd M Arnold on behalf of Debtor Crestlloyd, LLC
tma@lnbyg.com

Jerrold L Bregman on behalf of Interested Party Hilldun Corporation
jbregman@bg.law, ecf@bg.law

Marguerite Lee DeVoll on behalf of Interested Party J&E Texture, Inc.
mdevoll@watttieder.com, zabrams@watttieder.com

Karol K Denniston on behalf of Interested Party Pacific Union International dba Compass
karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com

Oscar Estrada on behalf of Creditor LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR
oestrada@ttc.lacounty.gov

Danielle R Gabai on behalf of Interested Party Courtesy (NEF)
dgabai@danninggill.com, dgabai@ecf.courtdrive.com

Thomas M Geher on behalf of Interested Party Courtesy (NEF)
tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com

David B Golubchik on behalf of Debtor Crestlloyd, LLC
dbg@lnbyg.com, stephanie@lnbyb.com

Jonathan Gottlieb on behalf of Debtor Crestlloyd, LLC
jdg@lnbyg.com

James Andrew Hinds, Jr on behalf of Creditor Interno Investment, Inc.
jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com

Robert B Kaplan on behalf of Interested Party Courtesy (NEF)
rbk@jmbm.com

Jane G Kearl on behalf of Interested Party J&E Texture, Inc.
jkearl@watttieder.com

Jennifer Larkin Kneeland on behalf of Interested Party J&E Texture, Inc.
jkneeland@watttieder.com, zabrams@watttieder.com

Michael S Kogan on behalf of Interested Party Courtesy (NEF)
mkogan@koganlawfirm.com

Noreen A Madoyan on behalf of U.S. Trustee United States Trustee (LA)
Noreen.Madoyan@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          F 9013-3.1.PROOF.SERVICE

John A Moe, II on behalf of Creditor Yogi Securities Holdings, LLC
john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com

Samuel A Newman on behalf of Interested Party Richard Saghian
sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com;laefilingnotice@sidley.com

Ryan D O'Dea on behalf of Creditor American Truck and Tool Rental
rodea@shulmanbastian.com, lgauthier@shulmanbastian.com

Ryan D O'Dea on behalf of Interested Party Courtesy (NEF)
rodea@shulmanbastian.com, lgauthier@shulmanbastian.com

Sharon Oh-Kubisch on behalf of Interested Party Courtesy (NEF)
sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com

Hamid R Rafatjoo on behalf of Interested Party Nile Niami
hrafatjoo@raineslaw.com, bclark@raineslaw.com

Ronald N Richards on behalf of Interested Party Courtesy (NEF)
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Victor A Sahn on behalf of Interested Party Courtesy (NEF)
vsahn@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw
.com;cblair@ecf.inforuptcy.com

William Schumacher on behalf of Creditor Yogi Securities Holdings, LLC
wschumac@milbank.com, autodocketecf@milbank.com

David Seror on behalf of Interested Party Courtesy (NEF)
dseror@bg.law, ecf@bg.law

Zev Shechtman on behalf of Interested Party Courtesy (NEF)
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Mark Shinderman on behalf of Creditor Yogi Securities Holdings, LLC
mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com

Lindsey L Smith on behalf of Debtor Crestlloyd, LLC
lls@lnbyb.com, lls@ecf.inforuptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Genevieve G Weiner on behalf of Interested Party Richard Saghian
gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com

Jessica Wellington on behalf of Interested Party Courtesy (NEF)
jwellington@bg.law, ecf@bg.law

Jessica Wellington on behalf of Other Professional Theodore Lanes
jwellington@bg.law, ecf@bg.law

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                        F 9013-3.1.PROOF.SERVICE