1  ZEV SHECHTMAN (State Bar No. 266280)
   *zs@DanningGill.com*
2  DANIELLE R. GABAI (State Bar No. 339242)
   *DGabai@DanningGill.com*
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735

6  Attorneys for Showroom Interiors, LLC

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **LOS ANGELES DIVISION**

11  In re                          | Case No. 2:21-bk-18205

12  CRESTLLOYD, LLC,               | Chapter 11

13            Debtor.              | **REPLY MEMORANDUM OF POINTS
                                   | AND AUTHORITIES IN SUPPORT OF
14                                 | REQUEST FOR PAYMENT OF
                                   | CHAPTER 11 ADMINISTRATIVE
15                                 | EXPENSES OF SHOWROOM
                                   | INTERIORS, LLC;  AND DECLARATION
16                                 | OF JULIAN BUCKNER AND ZEV
                                   | SHECHTMAN IN SUPPORT THEREOF**
17
                                   | Date:     July 21, 2022
18                                 | Time:     11:30 a.m.
                                   | Crtrm.:   255 E. Temple Street
19                                 |           Los Angeles, CA 90012

20        Showroom Interiors, LLC dba Vesta ("Showroom" or "Vesta") hereby respectfully submits

21  its Reply Memorandum of Points and Authorities in support of its request for payment of Chapter

22  11 administrative expenses (doc. no. 357) (the "Request").  This Reply is supported by the below

23  declaration of Julian Buckner, Vesta's CEO, declaration of Zev Shechtman, and the attached

24  exhibits.

25  / / /

26  / / /

27  / / /

28  / / /

1688015.1  27045

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ......................................................................................................1

II.   FACTUAL BACKGROUND......................................................................................2

III.  DISCUSSION OF FACTS RESPONSIVE TO DEBTOR'S OBJECTION ............................3

IV.   LEGAL ARGUMENT................................................................................................5

      A.    Legal Standard ................................................................................................5

      B.    Vesta's Claim Arose From a Post-Petition Transaction Directly and
            Substantially Benefitting the Estate ..............................................................6

      C.    Vesta's Claim Arose as a Result of the Debtor's Negligence in Post-Petition
            Operation of the Estate's Business ................................................................7

      D.    The Debtor is Liable for the Damage to Vesta's Property Under California
            Civil Code § 1714(a) .....................................................................................8

      E.    Damages ..........................................................................................................9

      F.    The Preliminary Objection is Also the Final Objection ...............................10

V.    CONCLUSION........................................................................................................11

# TABLE OF AUTHORITIES

**Page**

## CASES

Butner v. United States, 99 S. Ct. 914, 918 (1979) .................................................................. 8

Gebert v. Yank, 172 Cal. App. 3d 544, 551, 218 Cal. Rptr. 585, 589 (Ct. App. 1985) ................... 9

Howe v. Seven Forty Two Co., 189 Cal. App. 4th 1155, 1162, 117 Cal. Rptr. 3d 126, 130
        (2010)................................................................................................................................ 9

In re Abercrombie, 139 F.3d 755, 757 (9th Cir. 1998)................................................................. 5

In re Abercrombie, 139 F.3d at 758 ............................................................................................ 7

In re Blanchard, 547 B.R. 347, 353 (Bankr. C.D. Cal. 2016)...................................................... 7

In re CWS Enterprises, Inc., No. BAP EC-14-1195, 2015 WL 3651541, at *5 (B.A.P. 9th
        Cir. June 12, 2015)............................................................................................................ 6

In re DAK Indus., 66 F.3d 1091, 1094 (9th Cir. 1995) ............................................................... 6

In re DAK Indus., 66 F.3d at 1094 ............................................................................................. 6

In re Downey Reg'l Med. Ctr.-Hosp., Inc., 441 B.R. 120, 129 (B.A.P. 9th Cir. 2010).................. 11

In re Kadjevich, 220 F.3d 1016, 1019 (9th Cir. 2000) ............................................................. 7, 9

In re Machevsky, 637 B.R. 510, 526, aff'd, 640 B.R. 210 (C.D. Cal. 2022)................................. 6

In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976)...................................................... 5

J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 806 (1979) .................................................................. 8

Matter of Invs. Dev. Co., 7 B.R. 772, 776 (Bankr. D.N.J. 1980) ................................................. 8

Reading Co. v. Brown, 391 U.S. 471, 88 S. Ct. 1759, 1766 (1968)....................................... 5, 7, 9

Roddiscraft, Inc. v. Skelton Logging Co., 212 Cal. App. 2d 784, 793, 28 Cal. Rptr. 277, 282
        (Ct. App. 1963) ................................................................................................................. 8

## STATUTES

11 U.S.C. § 503(b)(1)(A).......................................................................................................... 5

28 U.S.C. § 959(b) .................................................................................................................. 8

## RULES

California Civil Code § 1714(a) ................................................................................................ 8

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

**<u>Page</u>**

FRBP 9014..................................................................................................................... 11

LBR 9013-1(i) ............................................................................................................. 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Crestlloyd, LLC (the "Debtor") and Showroom Interiors, LLC ("Vesta" or "Showroom") entered into a prepetition staging agreement (the "Staging Agreement") by which Vesta agreed to provide staging furniture to the Debtor for purposes of selling the Debtor's property located at 944 Airole Way, Los Angeles, California 90077 (the "Property" or the "Airole Property").

After the Debtor filed for bankruptcy, Vesta and the Debtor communicated, through their respective counsel, on multiple occasions regarding whether the Debtor would pay for furniture rentals under the Staging Agreement with Vesta in order to stay in possession of the furniture rentals. For example, see the email from Vesta's counsel to Debtor's counsel dated December 1, 2021 stating what Debtor must pay. See Exhibit "K" to Declaration of Zev Shechtman. While Debtor did not assume the contracts, Vesta was willing to allow the Debtor to remain in possession of the staging furniture so long as Debtor was current post-petition.

While Vesta's furniture was on-site at the Property, Vesta was advised in or around January 2022, of a pool leakage at the Property which resulted in extensive water damage to a portion of Vesta's indoor furniture, primarily in and around the master bedroom at the Property. Exhibit "D" to the Request.

Vesta immediately took steps to isolate the damaged furniture from further water damage and contacted the Debtor to discuss filing an insurance claim. Vesta also conducted a mold report to determine the extent of the water damage to the furniture. At all times, Vesta provided an accounting of the inventory on-site, the damaged inventory, and the mold report results. See, e.g., Exhibit "G" to the Request.

As early as January 10, 2022, the Debtor told Vesta that the Debtor would submit the claim to insurance. Only after many months of inquiries, and evasions from the Debtor, did Debtor's counsel finally admit that Debtor's insurance would not cover the damage because Debtor's deductible was $250,000. See Exhibit "L" to Declaration of Zev Shechtman.

## II.

### FACTUAL BACKGROUND

1. On or about September 4, 2020, Vesta entered a Staging Services and Lease Agreement (the "Staging Agreement") with Crestlloyd, LLC (the "Debtor"), by which the Debtor leased staging furniture from Vesta for the property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property"). A true and correct copy of the Agreement is attached as Exhibit "A" to the Request. The Agreement provides for monthly inventory rental payments to Vesta in the sum of $50,000, $17,500 of which is due monthly, and the remaining $32,500 accruing monthly and due upon the Property's sale or removal of inventory by Vesta.

2. At installation in or around November 2020, Vesta employees took photos and compiled an inventory list of all the furniture installed at the Property. See Exhibit "B" to the Request.

3. On October 26, 2022 (the "Petition Date"), the Debtor commenced this bankruptcy case by filing a Voluntary Petition for relief under chapter 11 of the Bankruptcy Code.

4. After the Petition Date, on or about December 1, 2021, Vesta contacted the Debtor, through their respective counsel, to discuss the terms by which Vesta would continue to provide its inventory to the Debtor. See Exhibit "K" to the Declaration of Zev Shechtman.

5. On December 31, 2021, well after the Petition Date, the Property experienced a pool leakage which caused damage to certain of Vesta's staging furniture onsite at the time. The date of the pool leakage and the resulting damage was confirmed by Miles Staglik of Sierra Constellation Partners, LLC as reflected in Exhibit "D" to the Request. See also Staglik Declaration, at ¶ 10.

6. Most of the damaged property was damaged by the pool leak, although some of the damaged property was damaged because it was exposed to the outdoor elements and not properly protected by the Debtor.

7. On or about January 10, 2022, Mr. Buckner emailed Mr. Staglik a list of items with visible water damage. In response, Mr. Staglik advised Mr. Buckner that he needed to "file an insurance claim." See Exhibit "F" to the Request.

8.      On or about June 3, 2022, Vesta filed its Request for Payment of Chapter 11 Administrative Expenses (the "Request," docket no. 357), requesting a total of $320,283.04.

9.      On or about June 23, 2022, the Debtor filed its Objection to Vesta's Request (the "Objection," docket no. 367).

### III.

### DISCUSSION OF FACTS RESPONSIVE TO DEBTOR'S OBJECTION

The Debtor's Objection to Vesta's Request (the "Objection," docket no. 367) is replete with red herrings that ignore the relevant issues in the Request: whether the Debtor is responsible for the damage caused to Vesta's furniture that occurred on the Property, and in what amount. The Debtor's attempts to smear Vesta are irrelevant to Vesta's Request.  They are merely attempts to distract from the actual issues.

The false accusations that Vesta lied to the Debtor about the monthly obligations under the Staging Agreement and filed a false police report, are irrelevant.  Such accusations are also evidence of a concerning pattern by Debtor to attempt to turn what may be at most a disagreement into something nefarious.  Vesta attempted to explain these issues to Debtor, including with contemporaneous evidence concerning the false allegations by the Debtor.  See Exhibit "M" to Shechtman Declaration.  But the response to Vesta has been doubling down on false and irrelevant accusations in the Objection.  The Declaration from Miles Staglik on these issues is primarily hearsay, improper opinions, or not based on personal knowledge.  In other words, the Debtor has made numerous unsupported allegations regarding irrelevant assertions in response to a Request supported by facts.

The Debtor's Objection asserts that Vesta's Request fails for the following reasons (each of which will be addressed below):

(a) the extent of the furnishings provided to the Debtor is disputed by the Debtor;
(b) there is no evidence that the Debtor did not adequately care for the furnishings; and
(c) there is no evidence that the damage to the furnishings occurred post-petition, as compared to pre-petition, during the fall/winter 2021 rainy season.

Furnishings Provided to the Debtor

It is undisputed that Vesta's furniture is and has been present at the Property. Of the furniture provided certain furnishings were damaged. Most importantly for purposes of Vesta's Request, Addendum B to the Staging Agreement lists the areas of the Property to be staged, and clearly states: "Master bedroom: fully stage;" and " Living Room: full staging with Accessories, flower arrangement, and furniture per scheduled provided by Vesta."  See Exhibit "A" to the Request.

The Debtor's Level of Care for Vesta's Inventory

The Debtor's level of care for Vesta's inventory while in the Debtor's possession is irrelevant, as the Debtor is liable for any damage to Vesta's property (Vesta routinely encourages its clients to obtain property insurance for this very reason). As discussed in more detail below, the Debtor is liable for damages to rented furniture on its property as a matter of law under the doctrine of *res ipsa loquiter*.

Evidence of Water Damage Prepetition vs. Post-Petition

Vesta concedes that there was likely rain at relevant times prior to the Petition Date and post-petition.  Even so, the following facts clearly demonstrate that the damage to Vesta's furniture occurred postpetition:

1.      It is an undisputed fact that a pool leakage occurred on December 31, 2021.  This fact is entirely omitted from the Objection, but can be found buried in the concurrently filed Declaration of Miles Staglik (the "Staglik Declaration," docket no. 368) at ¶ 10.

2.      The pool leakage originated from the master bedroom pool, resulting in water damage to furniture in and around the master bedroom and below into the living room. Text message communications between the Debtor and Vesta confirm the date and location of the pool leakage. See Exhibit "D" to the Request.

3.      $167,243.04 of Vesta's damaged inventory is for indoor furniture, specifically located in and around the master bedroom.  See Exhibit "J".

4.      Mold reports conducted as a result of the leakage confirm the extent of the damage claimed by Vesta. See Exhibit "I" to the Request.

5.      The Debtor also maintains the position that Vesta's claim arises from the post-petition default of a prepetition contract that does not arise to an administrative expense. The Debtor further asserts that the contract was not assumed and no post-petition transaction was made, thus rendering Vesta's claim a general unsecured claim. What the Debtor elides is the fact that Vesta continued to provide essential goods and services to the Debtor post-petition, services required and expressly requested, by the Debtor so that it could sell a unique luxury property. Vesta's post-petition relationship with the Debtor is evident from the thread of emails exchanged between the parties in which the Debtor makes various demands of Vesta regarding the staging of the Property.  See Exhibit "N," attached to the Declaration of Julian Buckner hereto.

6.      Vesta's post-petition staging services (and months of direct communication with the Debtor) constitute a post-petition transaction with the Debtor necessary for the sale of the property, the primary activity in this estate. But the claim here is not about that—it is about the damage caused to Vesta's personal property that was being rented by the Debtor.

**IV.**

**LEGAL ARGUMENT**

**A.    Legal Standard**

The Bankruptcy Code defines administrative expenses and provides a nonexclusive list of allowable expenses including "actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. 11 U.S.C. § 503(b)(1)(A). The purpose of the administrative expense priority is to facilitate the operation of the debtor's business and encourage third parties to deal with the insolvent business by allowing these parties to be paid ahead of other creditors. In re Abercrombie, 139 F.3d 755, 757 (9th Cir. 1998); Reading Co. v. Brown, 391 U.S. 471, 88 S. Ct. 1759, 1766 (1968); In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976).

To obtain administrative expense priority, the Ninth Circuit standard requires "a claimant to show that the debt: (1) arose from a transaction with the debtor-in-possession as opposed to the

1    preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-

2    possession); and (2) directly and substantially benefited the estate."  In re DAK Indus., 66 F.3d

3    1091, 1094 (9th Cir. 1995).

4          In determining whether there was a transaction with a debtor-in-possession, the creditor

5    must prove there was some inducement by the debtor causing the creditor to incur the expense.  In

6    re Machevsky, 637 B.R. 510, 526, aff'd, 640 B.R. 210 (C.D. Cal. 2022) (finding no inducement

7    when creditor incurs expense to pursue its own interests).  In the alternative to proving a

8    transaction, a claimant may show that the claimant gave consideration to the debtor post-petition.

9    In re DAK Indus., 66 F.3d at 1094 (finding that there is no consideration where the claimant's

10   services were fully purchased prepetition); In re CWS Enterprises, Inc., No. BAP EC-14-1195,

11   2015 WL 3651541, at *5 (B.A.P. 9th Cir. June 12, 2015) ("It is the consensus of authority that

12   when third parties are induced to supply goods or services to a debtor in possession, their claims

13   should be accorded administrative expense status").

14   **B.    Vesta's Claim Arose From a Post-Petition Transaction Directly and Substantially**

15        **Benefitting the Estate**

16         Vesta's prepetition contract with the Debtor allowed Vesta to terminate the contract and

17   remove its property at any time. After the petition date, Vesta and the Debtor negotiated the terms

18   by which Vesta would continue to offer its services and allow the Debtor to use its staging furniture

19   for purposes selling the Airole Property. See Exhibit "K" to the Zev Shechtman Declaration. Such

20   negotiations with the Debtor after the petition date surely effected a post-petition transaction.

21         Further, the main activity in this estate was selling the Property.  The staging services were

22   necessary for the successful sale of the property.  Thus, the Debtor continued to use Vesta's

23   property, pursuant to post-petition negotiations, to effectuate a sale of the Airole Property, the

24   proceeds of which would directly benefit the estate and its creditors.

25

26

27

28

**C.**      **Vesta's Claim Arose as a Result of the Debtor's Negligence in Post-Petition Operation of the Estate's Business**

Case law also suggests that "actual and necessary costs" of the estate include costs ordinarily incident to the operation of a business. Reading, 88 S. Ct. at 1766.  In Reading, the Court determined that tort claimants injured by an unanticipated post-petition fire were allowed administrative expense priority for their injury caused by a receiver's negligent post-petition operation of the estate's business. Reading, 88 S.Ct. at 1763.  The so-called Reading exception operates to deter a trustee or debtor-in-possession from injuring third parties and violating the law. In re Abercrombie, 139 F.3d at 758.

As such, the Reading exception provides that post-petition conduct by the debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, therefore, entitled to administrative expense priority under § 503(b)(1)(A).  In re Blanchard, 547 B.R. 347, 353 (Bankr. C.D. Cal. 2016).

The Reading exception does not require wrongful intent, but may involve mere negligence. Reading, 88 S.Ct. at 1767 ("We hold that damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement."). The Ninth Circuit has expressly held as follows:

> In addition to those kinds of "standard" administrative expenses, **tort claims based on a trustee's post-petition negligence are granted administrative-expense priority**. See Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). Such claims are deemed "ordinarily incident to [the] operation of a business," id. at 483, 88 S.Ct. 1759, and are granted priority status so that the victims of a reorganizing business' torts will be compensated ahead of the creditors who sought reorganization.

In re Kadjevich, 220 F.3d 1016, 1019 (9th Cir. 2000) (emphasis added).

Here, the damage to Vesta's property occurred while the Debtor was using Vesta's furniture during the course of the Debtor's efforts to sell the Airole Property.  The Debtor was utilizing Vesta's property to benefit the estate and effectuate a sale when Vesta's furniture was damaged.

1    **D.      The Debtor is Liable for the Damage to Vesta's Property Under California Civil Code**

2            **§ 1714(a)**

3            The fact that a debtor must operate its business in conformity with state law is axiomatic.

4    28 U.S.C. § 959(b); <u>Matter of Invs. Dev. Co.</u>, 7 B.R. 772, 776 (Bankr. D.N.J. 1980) ("That a debtor

5    in possession must operate his business in accordance with state law is axiomatic"); <u>Butner v.</u>

6    <u>United States</u>, 99 S. Ct. 914, 918 (1979) (Bankruptcy does not grant debtors rights greater than

7    those they would receive outside bankruptcy).

8            Under California state law, all persons are legally responsible for injuries occasioned to

9    another by his or her lack of ordinary care or skill in the management of his or her property. Civ.

10   Code, § 1714(a); <u>see</u> <u>J'Aire Corp. v. Gregory</u>, 24 Cal. 3d 799, 806 (1979).  The Debtor is liable for

11   damages to rented furniture on its property as a matter of law under the doctrine of *res ipsa*

12   *loquiter*.  *Res ipsa loquiter*

13            is a rule of law which authorizes an inference of negligence in the absence of a
              showing to the contrary. [] Its effect, where applicable, is to declare that from the
14            happening of the accident in question an inference arises that the proximate cause of
              the occurrence was some negligent conduct on the part of the defendant.

15

16   <u>Roddiscraft, Inc. v. Skelton Logging Co.</u>, 212 Cal. App. 2d 784, 793, 28 Cal. Rptr. 277, 282 (Ct.

17   App. 1963) (internal citations omitted).  The doctrine is applicable where:

18            (a) the accident [is] of a kind which ordinarily does not occur in the absence
              of someone's negligence;
19
              (b) [the damage is] caused by an agency or instrumentality within the
20   exclusive control of the defendant; and

21            (c) it must not have been due to any voluntary action or contribution on the
              part of the plaintiff.
22

23   <u>Id.</u>

24            The doctrine of *res ipsa loquiter* is applicable here.  The Debtor has admitted that the pool

25   leak occurred on its Property.  The furniture was damaged by the pool leak.  The Debtor, and not

26   Vesta, is responsible for that occurrence.  The Debtor does not attempt to argue that it is not

27   responsible for the leak or that Vesta is responsible for the leak.

28

Further, the Debtor cannot argue that it should fall on Vesta to prove by a preponderance of the evidence that it was some specific act of negligence by the Debtor that caused the pool leak that caused the damage to the furniture. Pursuant to case law, once the "predicate facts are established to give rise to the presumption, the burden of producing evidence to rebut it shifts to the defendant to prove lack of negligence or lack of proximate cause that the injury claimed was the result of that negligence." Howe v. Seven Forty Two Co., 189 Cal. App. 4th 1155, 1162, 117 Cal. Rptr. 3d 126, 130 (2010),

Likewise, under California law, when property of a bailor is damaged when in the possession a bailee, it is the burden of the bailee to prove by a preponderance of the evidence that bailee's negligence did not cause the damage. Gebert v. Yank, 172 Cal. App. 3d 544, 551, 218 Cal. Rptr. 585, 589 (Ct. App. 1985) ("When a bailee who is under the duty of exercising ordinary care is unable to redeliver the subject of the bailment, it is not enough for him to show that the property was lost, stolen or destroyed, but that if he relies upon such fact to excuse his failure, he must go further and show that the loss occurred without negligence on his part.")

The Debtor cannot deny that the pool leaked and that the leak caused damage, although the Debtor attempts to bury its admission in Mr. Staglik's declaration and fails to even mention it in the Objection. The Debtor attempts to obfuscate by raising multiple irrelevant issues, but does nothing to address the cause of the damage or deny its liability for the damage. The Debtor must address why it should not be held liable for the damage caused to Vesta's property by the Debtor. It failed to do so in any meaningful way in the Objection.

Vesta's claim is a direct result of the Debtor's post-petition negligence and must be granted administrative expense priority pursuant to California law and the Reading exception. Reading, 88 S. Ct. 1759; In re Kadjevich, 220 F.3d 1016, 1019 (9th Cir. 2000) ("In addition to those kinds of 'standard' administrative expenses, tort claims based on a trustee's post-petition negligence are granted administrative-expense priority.").

**E.    Damages**

As reflected below, the total retail price of the damaged indoor and outdoor furniture provided to the Debtor is $257,043.04. $89,800.00 of Vesta's damaged inventory is for outdoor

1    furniture. The remaining $167,243.04 in damaged inventory is for indoor furniture. Vesta also

2    incurred $59,400.00 in storage expenses and $2,110.00 for mold reports as a result of the pool

3    leakage.

4         Vesta acknowledges that there was rain both prepetition and postpetition. $89,800.00 of

5    Vesta's damaged inventory is for outdoor furniture. If Vesta only sought to recover for the indoor

6    furniture damaged, its claim would still be a total of $228,753.04, consisting of the $167,243.04

7    cost of the furniture damaged only indoors, plus $59,400.00 in storage expense for the damaged

8    furniture, plus the $2,110.00 cost of the mold reports. See Exhibit "J."

9    | Damaged Indoor | $167,243.04 |

10   | Damaged Outdoor | $89,800.00 |

11   | Total Furniture Damage | $257,043.04 |

12   | Storage Expense | $59,400.00 |

13   | Mold Report | $2,110.00 |

14   | | 318,553.04 |

15   **F.    The Preliminary Objection is Also the Final Objection**

16        This Court set procedures for administrative expense requests in an order (doc. no. 288).

17   The procedures set by the Court are as follows:

18        (1) Parties must file administrative expense requests by June 6, 2022.

19        (2) Objections must be filed by June 23, 2022.

20        (3) Replies must be filed by July 14, 2022.

21        (4) A hearing on the requests will be held on July 21, 2022.

22        Vesta complied with the Court's order by filing the Request on June 6, 2022.  Debtor has

23   known about the damages for much longer, as early as March 6, 2022.

24        In its Objection filed on June 23, 2022, Debtor asserts that the Objection is "preliminary"

25   and that Debtor should be given time to conduct discovery at some later date.  That is not how

26   contested matters, especially those commenced by the Debtor under these circumstances, are

27   supposed to work.  The Debtor should have already assembled the evidence it needed when it filed

28   its Objection.  If it needed more time, the Debtor should have made a request.  Debtor is saying that

because its Objection is inadequate the Court should give the Debtor a second bite at the apple. Vesta complied with the order and provided ample evidence of its claim.  The Debtor should not be excused from its obligations.

Further, if the Debtor intended to conduct discovery during the contested matter, it should not be raising it as a litigation tactic in the Objection, in the absence of any attempts to actually conduct discovery.  The Debtor should already be conducting discovery.  It seems that the Debtor is intent on taking discovery at some future date after the July 21, 2022 hearing, since it has not proffered any discovery demands to date.  Waiting six weeks from the date that Vesta's Request was filed is not what Rule 9014, the local rules and custom and practice of this Court require.  *See* FRBP 9014 (incorporating some, but not all, discovery rules in contested matters); LBR 9013-1(i) (requiring evidence in support of motions and oppositions); <u>In re Downey Reg'l Med. Ctr.-Hosp., Inc.</u>, 441 B.R. 120, 129 (B.A.P. 9th Cir. 2010) (noting that discovery proceeds more quickly and can be initiated immediately upon commencement of a contested matter).

If the Debtor needs discovery to support its Objection, it is now too late, especially since the Debtor failed to meaningfully address the gravamen of the Request.  The Court should reject Debtor's attempt to substitute litigation tactics for substance, and should not permit Debtor's misdirection to hide its liability.

**V.**

**<u>CONCLUSION</u>**

Based on the reasons set forth above and on the bases set forth in its Request, Vesta respectfully requests that the Court grant Vesta's Request in its entirety.

DATED:  July  13, 2022                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                          By:   /s/ Zev Shechtman
                                                ZEV SHECHTMAN
                                                DANIELLE R. GABAI
                                                Attorneys for Showroom Interiors, LLC

## DECLARATION OF JULIAN BUCKNER

I, Julian Buckner, hereby declare as follows:

1.      I am over 18 years of age and have personal knowledge of the facts set forth below. If called to testify, I would and could competently testify thereto.

2.      I make this declaration in support of the Reply Memorandum of Points and Authorities in Support of Vesta's Request for Payment of Chapter 11 Administrative Expenses (the "Reply").

3.      I am the Founder and Chief Executive Officer of Showroom Interiors, LLC dba Vesta ("Showroom" or "Vesta"). I am the person primarily responsible for carrying out the day-to-day operations of Vesta and I was the primary person engaged in post-petition communications with Miles Staglik for SierraConstellation Partners, LLC, as the designated manager of Crestlloyd, LLC (the "Debtor").

4.      On or about September 4, 2020, Vesta entered a Staging Services and Lease Agreement (the "Staging Agreement") with the Debtor by which the Debtor leased staging furniture from Vesta for the property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property").  The Agreement provides for monthly inventory rental payments to Vesta in the sum of $50,000, $17,500 of which is due monthly, and the remaining $32,500 accruing monthly and due upon the Property's sale or removal of inventory by Vesta.  Addendum B to the Staging Agreement lists the areas of the Property to be staged, and clearly states: "Master bedroom: fully stage."  A true and correct copy of the Agreement and Addendum B are attached as Exhibit "A" to the Request.

5.      At installation in or around November 2020, Vesta employees took photos and compiled an inventory list of all the furniture installed at the Property. See Exhibit "B" to the Request.

6.      After the Petition Date, on or about December 1, 2021, and again on December 7, 2022, Vesta contacted the Debtor, through their respective counsel, to discuss the terms by which Vesta would continue to provide its inventory to the Debtor. See Exhibit "K" to the Zev Shechtman Declaration.

7.    While Vesta's furniture was on-site at the Property, I was advised in or around January 2022, of a pool leakage at the Property which resulted in extensive water damage to a portion of Vesta's indoor furniture, primarily in and around the master bedroom at the Property. In or around January 2022, I asked Miles Staglik of Sierra Constellation Partners, LLC for the exact date that all of the water damage occurred.  He advised me that it occurred on January 1, 2022 and confirmed that the master bedroom pool leaked into the master bedroom and below into the living room. See Exhibit "D" to the Request.

8.    Vesta immediately took steps to isolate the damaged furniture from further water damage and contacted the Debtor to discuss filing an insurance claim. Vesta also conducted a mold report to determine the extent of the water damage to the furniture.

9.    Upon inspection I determined that most of the damaged property was damaged by the pool leak, although some of the damaged property was damaged because it was exposed to the outdoor elements and not properly protected by the Debtor.

10.    Vesta provided an accounting of the inventory on-site, the damaged inventory, and the mold report results. See, e.g., Exhibit "G" to the Request.

11.    The total retail price of the damaged indoor and outdoor furniture provided to the Debtor is $257,043.04, $89,800.00 of which is for outdoor furniture. The remaining $167,243.04 in damaged inventory is for indoor furniture. Vesta also incurred $59,400.00 in storage expenses and $2,110.00 for mold reports as a result of the pool leakage.

12.    Mold reports conducted as a result of the leakage confirm the extent of the damage claimed by Vesta. See Exhibit "I" to the Request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13 day of July, 2022, at Los Angeles, California.

/ / /

/ / /

/ / /

/ / /

1

2

_JULIAN BUCKNER_

3     JULIAN BUCKNER

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DECLARATION OF ZEV SHECHTMAN**

I, Zev Shechtman, hereby declare as follows:

1.      I am an attorney who is licensed to practice law in California.

2.      I am the principal of a professional corporation which is a partner in Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), counsel for Showroom Interiors, LLC ("Showroom" or "Vesta").

3.      After the Debtor filed for bankruptcy, Vesta and the Debtor communicated, through their respective counsel, on multiple occasions regarding whether the Debtor would pay for furniture rentals under the Staging Agreement with Vesta in order to stay in possession of the furniture rentals.

4.      On or about December 1, 2021, and again on December 7, 2021, I emailed Debtor's counsel stating the terms by which Vesta would continue to provide its inventory to the Debtor. See Exhibit "K."

5.      As early as January 10, 2022, the Debtor told Vesta that the Debtor would submit the claim to insurance.  Only after many months of inquiries, and evasions from the Debtor, did Debtor's counsel finally admit that Debtor's insurance would not cover the damage because Debtor's deductible was $250,000. Exhibit "L" is an email from Debtor's counsel to me dated May 12, 2022 finally stating that the Debtor did not submit an insurance claim.

6.      On or about May 2, 2022, and again on May 10, 2022, I contacted counsel for the Debtor regarding the Debtor's false accusations regarding the monthly obligations under the Staging Agreement and the police report.  I attempted to explain these issues to Debtor, including with contemporaneous evidence concerning the false allegations by the Debtor.  See my emails to Debtor's counsel at Exhibit "M."  Despite these requests, the Debtor never provided evidence of a false police report, evidence of "another contract," or evidence of other false statements by Vesta.

/ / /

/ / /

/ / /

/ / /

1688015.1  27045                                    15

1    It appears that the Debtor has mischaracterized what would otherwise might be mere disagreements

2    regarding facts in a disingenuous effort to smear Vesta and avoid its own liability for negligence.

3         I declare under penalty of perjury under the laws of the United States of America that the

4    foregoing is true and correct.

5         Executed on this 13th day of July, 2022, at _Los Angeles_, California.

6

7                                          _____
                                           ZEV SHECHTMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "K"

000017

**Danielle R. Gabai**

| | |
|---|---|
| **From:** | Zev Shechtman |
| **Sent:** | Wednesday, December 1, 2021 1:35 PM |
| **To:** | David B. Golubchik |
| **Cc:** | Danielle R. Gabai |
| **Subject:** | RE: Crestlloyd / Vesta |
| **Attachments:** | Crestlloyd-Vesta Contract.pdf |

David,

Thank you very much for the time today.  Please see the attached contract.  We look forward to receiving your client's response.

Best,

Zev

**Zev Shechtman**
**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
(310) 903-6344 mobile| (310) 201-2443 direct
zs@DanningGill.com  | www.DanningGill.com



---

**From:** Zev Shechtman
**Sent:** Wednesday, December 1, 2021 12:44 PM
**To:** David B. Golubchik <DBG@lnbyg.com>
**Cc:** Danielle R. Gabai <DGabai@DanningGill.com>
**Subject:** RE: Crestlloyd / Vesta

To summarize our position:

  1. The Debtor is in possession of furniture leased from Vesta for the staging of the property, and is in default under the terms of the Staging Services and Lease Agreement (the "Agreement") dated September 4, 2020.

  2. The Debtor currently owes a total balance of approximately $558,305.00 to Vesta under the Agreement, consisting of $443,305.00 owed prepetition, as indicated in the Debtor's Schedule G, and an additional approximate $115,000.00 due post-petition (inclusive of late fees and taxes). Going forward, the Debtor will continue to owe approximately $50,000/month (exclusive of late fees and taxes) under the Agreement. Agreement at section 19.

000018

3.      To stay in possession of the staging furniture in its possession and assist in a sale of the property, the Debtor should assume the Agreement as an executory contract under section 365 and cure all defaults by bringing the Agreement current.

We look forward to speaking with you shortly.

**Zev Shechtman**
**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
(310) 903-6344 mobile| (310) 201-2443 direct
zs@DanningGill.com  |  www.DanningGill.com



---

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** Wednesday, December 1, 2021 12:01 PM
**To:** Zev Shechtman <ZShechtman@DanningGill.com>
**Subject:** RE: Crestlloyd / Vesta

In zoom.  How about 1:30?

**[PLEASE NOTE OUR NEW FIRM NAME AND ADDRESS]**

**DAVID B. GOLUBCHIK,** Esq.
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave  |  Los Angeles, CA  90034
Phone  310 229 1234  |  Direct  310 229 3393  |  Mobile  310 490 0330
dbg@lnbyg.com  |  **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s
email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

 Please consider the environment before printing this email

---

**From:** Zev Shechtman <ZShechtman@DanningGill.com>
**Sent:** Wednesday, December 1, 2021 12:00 PM
**To:** David B. Golubchik <DBG@lnbyg.com>
**Subject:** RE: Crestlloyd / Vesta

Yes.  Today.  Now?

**Zev Shechtman**
**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450

000019

Los Angeles CA 90067-6006
(310) 903-6344 mobile | (310) 201-2443 direct
**zs@DanningGill.com** | **www.DanningGill.com**



---

**From:** David B. Golubchik <DBG@lnbyg.com>
**Sent:** Wednesday, December 1, 2021 11:57 AM
**To:** Zev Shechtman <ZShechtman@DanningGill.com>
**Subject:** RE: Crestlloyd / Vesta

Hey, was gone last week and slowly catching up.  You want to talk later today or tomorrow?

**[PLEASE NOTE OUR NEW FIRM NAME AND ADDRESS]**

**DAVID B. GOLUBCHIK,** Esq.

**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave  |  Los Angeles, CA  90034
Phone  310 229 1234  |  Direct  310 229 3393  |  Mobile  310 490 0330
dbg@lnbyg.com  |  **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s
email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

 Please consider the environment before printing this email

---

**From:** Zev Shechtman <ZShechtman@DanningGill.com>
**Sent:** Tuesday, November 23, 2021 9:38 AM
**To:** David B. Golubchik <DBG@lnbyg.com>
**Subject:** Crestlloyd / Vesta

Hi David,
I hope all is well with you.  Please let me know when would be a good time to discuss the personal property of the staging company, Vesta dba Showroom Interiors, and their claims.
Thanks,
Zev

**Zev Shechtman**
**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
(310) 903-6344 mobile | (310) 201-2443 direct
**zs@DanningGill.com** | **www.DanningGill.com**

000020



000021

**Danielle R. Gabai**

| | |
|---|---|
| **From:** | Zev Shechtman |
| **Sent:** | Tuesday, December 7, 2021 11:29 AM |
| **To:** | David B. Golubchik |
| **Cc:** | Danielle R. Gabai |
| **Subject:** | Showroom Interiors dba Vesta / Crestlloyd / Staging Furniture |
| **Attachments:** | 944 Airole INVENTORY LIST_10.12.21.xlsx |

Dear David,

Following up on our recent conversation, Showroom Interiors dba Vesta ("Vesta") has the following requests:

1. Please advise regarding when the postpetition payments of $50,000 will commence.
2. The debtor has stated that it does not intend to assume the Vesta contract for staging furniture.  While Vesta disagrees with this approach (for reasons discussed below), as an alternative, Vesta asks that the debtor do one of the following (for reasons also explained below):
   a. Reserve for payment in full on account of the prepetition liability of $443,305.00, meaning that the funds will be paid from DIP financing or sale regardless of the sale outcome; or
   b. Immediately reject the existing contract and commence payments of $100,000 per month.

While we understand that the legal position of the debtor is that the debtor need not assume the contract, the debtor is in possession of property of Vesta valued at approximately $2 million.  Attached is the inventory which has already been shared with the debtor/receiver. Vesta could remove the furniture and use it to stage other properties and make significantly more money from doing so.  It is not fair to Vesta to hold its property without compensation.  The expense of replacing Vesta's furniture would be high, and would cost the debtor much more than what Vesta is now asking, if replacement is even possible.  The use of Vesta's furniture is generating significant value to the debtor, which would be showing an (enormous) empty house absent Vesta's property.  We believe that grounds for assumption or, in the alternative, relief from stay exist under these circumstances, though **Vesta's strong preference is to work with the debtor on a consensual basis under one of the above outlined alternatives**.

Moreover, the furniture may be of interest to a buyer of the home, and we'd like to work with your brokers on pricing the furniture.

000022

Please let us know by the end of this week how the debtor would like to proceed, as between alternatives 2.a. and 2.b. above, and please advise when the $50,000 per month commencing as of the petition date will be paid.

Regards,

Zev


**Zev Shechtman**
**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
(310) 903-6344 mobile| (310) 201-2443 direct
zs@DanningGill.com  | www.DanningGill.com



000023

# EXHIBIT "L"

**Danielle R. Gabai**

| | |
|---|---|
| **From:** | David B. Golubchik <DBG@lnbyg.com> |
| **Sent:** | Thursday, May 12, 2022 11:17 AM |
| **To:** | Zev Shechtman |
| **Cc:** | Todd M. Arnold |
| **Subject:** | Crestlloyd/Vesta |

Zev,

The Debtor reached out to its insurance broker about the alleged water damage, which is disputed by the Debtor.  Insurance advised the Debtor that the deductible is $250k per occurrence.  Since Vesta is asserting at least 2 occurrences, that would be at least $500k deductible.  Since Vesta is asserting approx $250k in "damages", insurance will not be helpful.

The Debtor will be engaging a furnishings valuation firm to inspect the furniture and assess the alleged value of the damage.  As you may recall, it is the Debtor's position that the water damage, if any, was sustained during the pre-petition period.  If you have evidence to the contrary, please provide it to me.

Thank you

**DAVID B. GOLUBCHIK,** Esq.
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave  |  Los Angeles, CA  90034
Phone  310 229 1234  |  Direct  310 229 3393  |  Mobile  310 490 0330
dbg@lnbyg.com  |  **www.lnbyg.com**

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s email policies which can be found at http://www.lnbyg.com/disclaimers.htm.

🌍 Please consider the environment before printing this email

000025

# EXHIBIT "M"

**Danielle R. Gabai**

| | |
|---|---|
| **From:** | Zev Shechtman |
| **Sent:** | Tuesday, May 10, 2022 6:13 PM |
| **To:** | David B. Golubchik |
| **Cc:** | Danielle R. Gabai |
| **Subject:** | RE: Crestlloyd/Vesta - debtor's contentions re water damage issues |

Hi David,

It's been a few weeks now since I brought up the insurance issue to you and longer since the debtor and my client communicated directly about it.  Miles indicated when we spoke via Zoom that the debtor will not be making an insurance claim—despite Miles' prior instructions to Vesta to store and maintain the property separately pending insurance review by the debtor's insurer.  You didn't take the opportunity to change position via email over the last eight days since my last email to you.  The insurance review by debtor's insurer is obviously not happening.

At this point, I think it would only be fair for my client to be able operate under the assumption that the debtor is _not_ making an insurance claim and Vesta should dispose of the items.  I will advise Vesta accordingly.

As to the other allegations the debtor has made, I think it would be constructive if the debtor provided evidence as to each, including re:
1) The allegation of a false police report;
2) The allegation that there was prepetition water damage to property that was actually damaged by the post-petition pool leak;
3) The allegation regarding false statements involving the rug(s); and
4) The allegation of another operative contract.

As you know based on our conversations and the below email, Vesta firmly disputes each of these allegations and, to date, the debtor has not explained or provided evidence to back them up.

I have heard from Miles and you that the debtor simply wants to litigate surrounding these issues, but wouldn't the debtor prefer to resolve these issues without litigation?

**Zev Shechtman**
**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
(310) 903-6344 mobile| (310) 201-2443 direct

000027

zs@DanningGill.com | www.DanningGill.com



**From:** Zev Shechtman
**Sent:** Monday, May 2, 2022 8:34 PM
**To:** David B. Golubchik <DBG@lnbyg.com>
**Cc:** Danielle R. Gabai <DGabai@DanningGill.com>
**Subject:** FW: Crestlloyd/Vesta - debtor's contentions re water damage issues

David,

While there may be misunderstandings between our clients, I believe that the police report was based on Vesta's genuine belief that items were stolen or missing, and below is one example of evidence of that. It is a text message from December 10, 2021, from a designer who was at the property and reported to Vesta that some of Vesta's personal property was missing. The allegation of a false police report appears to be incorrect based on this information. Let me know if the debtor has information to the contrary.

As for the suggestion that Vesta's property was water damaged pre-bankruptcy, we ask that the debtor please provide the backup. We understand that the pool leaked post-petition, and are unaware of prepetition damage.

As for the rugs, I am informed that the debtor in possession inquired with Vesta regarding replacement of rugs that were not originally provided by Vesta. The debtor did not want to pay the price quoted by Vesta for the rugs. How does debtor's version of these facts differ? Can you clarify the debtor's allegations regarding the rugs?

As for the operative contract, the debtor now says that there is another operative contract. I have not seen it. Please send me a copy. As we discussed today, if what the debtor is really now saying is that the debtor in possession should have been paying $17,500 post-petition, not $50,000, under the same contract that's attached to Vesta's proof of claim, that's a contract interpretation issue, not proof that there is another operative contract. I sent you a copy of the contract when we informed the debtor of the administrative rent amount of $50,000, on 12/1/21. If there is still a disagreement about that term, at least we can agree that it doesn't revolve around any intentional misrepresentation by Vesta. Even if the debtor argues that the debtor was only supposed to pay $17,500 monthly and the balance upon closing (a position I don't agree with), how has the debtor been harmed?

As I reiterated during our call today, I do not believe that a debtor in possession, as a fiduciary, should decline to make an insurance claim without a sound basis for doing so. What I've heard

000028

is that the basis for not submitting the claim is that the debtor has some extraneous disputes with Vesta—disputes that appear to be based on misunderstandings.  However, the debtor in possession confirmed during our Zoom meeting that there was some water damage to Vesta's property, which is the only prerequisite to making the insurance claim.  The failure to submit the insurance claim may unduly prejudice both the estate and Vesta.  I do not believe that it is a reasonable exercise of business judgment under the circumstances.

Let's continue the dialogue and see if we can resolve any remaining disputes between our clients.  I'm concerned that the debtor's representatives' dislike for my client may be interfering with the debtor's business judgment, particularly as to insurance, but also as to other unfounded allegations.

My client is still storing property based on the debtor's request.  Please let me know by the end of this week if the debtor is making an insurance claim.

We look forward to your continued cooperation in attempting to resolve this matter without litigation.

**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
(310) 903-6344 mobile| (310) 201-2443 direct
zs@DanningGill.com | www.DanningGill.com



---

**From:** Julian Buckner <julian@vestahome.com>
**Sent:** Monday, May 2, 2022 2:46 PM
**To:** Zev Shechtman <ZShechtman@DanningGill.com>
**Subject:** Email from designer confirming she noticed 15% was stolen

000029

**2:40** ⏀

◀ **Search**

‹       **kfr_design**

 First time back in like 3

Not bad actually

They had guys cleaning

And I went to make sur

4

000030

# EXHIBIT "N"

000031

---------- Forwarded message ---------
From: **Miles Staglik** < mstaglik@scpllc.com>
Date: Thu, Jan 13, 2022 at 12:57 PM
Subject: RE: 944 airole way
To: Julian Buckner < julian@vestahome.com>
CC:  brett@vestahome.com < brett@vestahome.com>

To be clear we will offer the headboards for sale with the home.  If you can provide me with any
paperwork about doing the headboards that could help with me seeing if the attorneys are fine
with me buying them from you.

**Miles Staglik**
Senior Director
SierraConstellation Partners LLC
M: 310-343-0361
O: 213-289-3655

LEGAL DISCLAIMER: This communication, including any attachments, is intended  solely for the individual or entity to which it is addressed and
may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of or taking action in reliance upon this
information by persons or entities other than the intended recipient is prohibited.  If you have received this message in error, please advise the sender
immediately by reply e-mail and delete this message and all copies from your system. Thank you for your cooperation.

**From:** Julian Buckner < julian@vestahome.com>
**Sent:** Thursday, January 13, 2022 10:08 AM
**To:** Miles Staglik < mstaglik@scpllc.com>
**Cc:**  brett@vestahome.com
**Subject:** Re:  944 airole way

Hi Miles - I spoke to Kiel and Lisa. Kiel was already up at the house this morning doing the final
arrangements (excluding the areas where the floor is being redone and we will need to return).
According to him: There are plants, towels and candles in every bathroom (someone had moved
the ones from the front bathroom into a drawer which he replaced).  I have attached the pictures
he sent me. Were you expecting something different? Happy to adjust accordingly.

According to Lisa, she went above and beyond what was initially spec'd and re-did all of the
downstairs secondary bedrooms, spa etc. so that it would be cohesive with the work that was
scoped out as we obviously want this to be a showcase for us as well. If you feel differently, I
would like to get a walkthrough with you and Kiel scheduled ASAP.

We are charging for the rug because it is ruined beyond repair. However, it's a custom piece and
size and so far we have been quoted months to replace it, so Kiel made the decision that it would
be better to leave it in place for now rather than have the room rugless. If you disagree we can
remove it immediately.

Regarding the bed walls, that is totally fine. We install similar bedwalls at this price in the vast majority of the $30M+ houses we do. They are immensely popular and almost always sell with the home. I have no doubt you can find a vendor who can replicate these  less expensively. A) it is always cheaper to knock something off than it is to custom design it from scratch. Nile, Yvonne and their designer spent dozens of hours with our designer pouring over designs and meticulously selecting fabrics, fills and panel shapes. Asking someone to replicate a design that is already done is not comparable. B) we do not advertise ourselves as the cheapest option. We are however the best and highest quality. Once the home sells, assuming the buyer does not wish to purchase them from us, we will remove them from the project and you can have your other vendor replace them.

Per our discussion yesterday I have attached 3 invoices:
1. 1. Water damage (excluding the 2 chairs)
2. 2. Water damage to master BR wall
3. 3. 4 other bed walls (obviously ignore this if you don't want to purchase)

If you are still unhappy with the accessorizing, let me know when we can schedule a walk of the property with Kiel so we can get it resolved ASAP.

Julian

On Thu, Jan 13, 2022 at 12:24 AM Miles Staglik < mstaglik@scpllc.com> wrote:
Towels, candles, plants, where is this stuff????

Guys-

We need this place to look nice and its lacking, I took a piss in the front bathroom and no hand towels, no paper towels, no candles, nothing. What did I contract you for $325k for and you also left a water damaged rug in the main living room (that youre billing be for) we need a rest and I frustrated that Im asking for this.

This needs to be fixed immediately.  I dont care if Lisa is stressed or busy.   This is simple shit. Im frustrated that Im writing this email at midnight.

Also  no bullshit  Im not buying any bed walls from you  talk them down when Im done

renting them from you.  I have a vendor lined up to redo them for 1/6 the cost that youre asking. And itd be a waste of time to buy them as any buyer is going to reconfigure this house.

Miles
"https://protect-us.mimecast.com/s/oudzCpYREJFzJKAuDb7J-?domain=google.com"

**Miles Staglik**
Senior Director
SierraConstellation Partners LLC
 355 S. Grand Ave., Suite 1450
 Los Angeles, CA 90071
M: 310-343-0361
O: 213-289-3655
E:  mstaglik@scpllc.com

LEGAL DISCLAIMER: This communication, including any attachments, is intended  solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of or taking action in reliance upon this information by persons or entities other than the intended recipient is prohibited.  If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message and all copies from your system. Thank you for your cooperation.

--

**Julian M. Buckner**

Founder & CEO

617.504.8088

Calendar

Website

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR PAYMENT OF CHAPTER 11 ADMINISTRATIVE EXPENSES OF SHOWROOM INTERIORS, LLC;  AND DECLARATION OF JULIAN BUCKNER AND ZEV SHECHTMAN IN SUPPORT THEREOF  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  July 13, 2022  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:  On  July 13, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Crestlloyd, LLC**
c/o SierraConstellation Partners LLC
355 S. Grand Avenue Suite 1450
Los Angeles, CA 90071

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 13, 2022 | Vivian Servin | */s/ Vivian Servin* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

ADDITIONAL SERVICE INFORMATION (if needed):

1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>

- **Kyra E Andrassy**    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

- **Todd M Arnold**    tma@lnbyg.com

- **Jerrold L Bregman**    jbregman@bg.law, ecf@bg.law

- **Marguerite Lee DeVoll**    mdevoll@watttieder.com, zabrams@watttieder.com

- **Karol K Denniston**    karol.denniston@squirepb.com,
  travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-
  9025@ecf.pacerpro.com

- **Oscar Estrada**    oestrada@ttc.lacounty.gov

- **Danielle R Gabai**    dgabai@danninggill.com, dgabai@ecf.courtdrive.com

- **Thomas M Geher**    tmg@jmbm.com,
  bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com

- **David B Golubchik**    dbg@lnbyg.com, stephanie@lnbyb.com

- **Andrew Goodman**    agoodman@andyglaw.com,
  Goodman.AndrewR102467@notify.bestcase.com

- **Jonathan Gottlieb**    jdg@lnbyg.com

- **James Andrew Hinds**    jhinds@hindslawgroup.com;mduran@hindslawgroup.com,
  mduran@hindslawgroup.com

- **Robert B Kaplan**    rbk@jmbm.com

- **Jane G Kearl**    jkearl@watttieder.com

- **Jennifer Larkin Kneeland**    jkneeland@watttieder.com, zabrams@watttieder.com

- **Michael S Kogan**    mkogan@koganlawfirm.com

- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov

- **John A Moe**    john.moe@dentons.com,
  glenda.spratt@dentons.com;derry.kalve@dentons.com

- **Samuel A Newman**    sam.newman@sidley.com, samuel-newman-
  2492@ecf.pacerpro.com;laefilingnotice@sidley.com

- **Ryan D O'Dea**    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

- **Sharon Oh-Kubisch**    sokubisch@swelawfirm.com,
  gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com

- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com

- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com

- **Victor A Sahn**    victor.sahn@gmlaw.com,
  vsahn@ecf.courtdrive.com;pdillamar@ecf.courtdrive.com

- **William Schumacher**    wschumac@milbank.com, autodocketecf@milbank.com

- **David Seror**    dseror@bg.law, ecf@bg.law

- **Zev Shechtman**    zshechtman@DanningGill.com,
  danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

- **Mark Shinderman**    mshinderman@milbank.com,
  dmuhrez@milbank.com;dlbatie@milbank.com

- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com

- **Howard Steinberg**    steinbergh@gtlaw.com,
  pearsallt@gtlaw.com;lalitdock@gtlaw.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

- **Genevieve G Weiner**    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com

- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                     **F 9013-3.1.PROOF.SERVICE**