# 2:21-bk-18205-DS CRESTLLOYD, LLC

## CERTIFICATE OF SERVICE

I, the below-named deputy clerk of the United States Bankruptcy Court, certify that I placed a true and correct copy of the attached document in a sealed envelope for collection and mailing no later than the next business day that is not a court-observed holiday, in the United States mail, first class, postage prepaid, and addressed as follows:

Smith, Andre Mario
7938 Broadway No. 1263
Lemon Grove, CA 91946



FILED

SEP 2 7 2022

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

☐ Service information continued on attached page

Date:   9/27/2022          Deputy Clerk :   /s/ mb

1
2
3
4
5
6
7

```
                                        ┌─────────────────────────────┐
                                        │     FILED & ENTERED         │
                                        │                             │
                                        │      SEP 27 2022            │
                                        │                             │
                                        │  CLERK U.S. BANKRUPTCY COURT │
                                        │  Central District of California │
                                        │  BY bakchell  DEPUTY CLERK   │
                                        └─────────────────────────────┘
```

8          UNITED STATES BANKRUPTCY COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10             LOS ANGELES DIVISION

11   In re:                                  Case No. 2:21-bk-18205-DS

12                                           Chapter 11
     CRESTLLOYD, LLC,
13
                                             **ORDER DENYING JOINT MOTION (I) TO**
14                        Debtor.            **ENFORCE THE SALE ORDER, AND (II)**
                                             **FOR ISSUANCE OF AN ORDER TO**
15                                           **SHOW CAUSE WHY ANDRE MARIO**
                                             **SMITH SHOULD NOT BE HELD IN**
16                                           **CONTEMPT OF COURT**

17        On August 12, 2022, a "Joint Motion (i) to Enforce the Sale Order, and (ii) for

18   Issuance of an Order to Show Cause Why Andre Mario Smith Should not be Held in

19   Contempt of Court" (the "Motion for OSC," Docket No. 395) was filed by Richard Saghian

20   and debtor Crestlloyd, LLC (the "Debtor," and, together with Mr. Saghian, the "Movants").

21        On August 15, 2022, the court received a response to the Motion for OSC from

22   Andre Mario Smith (the "First Objection," not on the court's docket), along with a motion

23   seeking to file exhibits to that response under seal (the "Motion to Seal," Docket No. 402).

24   On August 26, 2022, the court entered an order (the "Motion to Seal Order," Docket No.

25   404) denying the Motion to Seal because, among other things, the Motion to Seal did not

26   comply with the court's requirements (identified in the Motion to Seal Order) and did not

27   establish that the exhibits, either partially or in their entirety, included confidential

28   information meeting the strict requirements for filing under seal.  Pursuant to the Motion to

-1-

1  Seal Order, the court gave Mr. Smith an extended deadline to respond to the Motion for

2  OSC pursuant to Local Bankruptcy Rule ("LBR") 9020-1.

3      On September 1, 2022, the court received another response by Mr. Smith to the

4  Motion for OSC, a document titled "Special Interested Party, Andre Mario Smith, by and

5  through its duly authorized representative Notice of Objection/Demurrer;

6  Objection/Demurrer to alleged Buyer and Debtor Without Possession Motion and Joint

7  Motion (I) To Enforce the Sale Order, and (II) For Issuance of an Order to Show Cause

8  Why Andre Mario Smith Should not be Held in Contempt of Court; Andre Mario Smith

9  Declaration and; Order" (the "Objection," not yet on the court's docket).  According to a

10  proof of service submitted with the Objection, the Objection was served on both Mr.

11  Saghian and the Debtor through their respective counsel.

12      On September 19, 2022, Mr. Saghian filed a supplement to the Motion for OSC

13  requesting that the court set a hearing on notice such that relief could be granted prior to

14  October 4, 2022 only as to a portion of the relief requested in the Motion for OSC (the

15  "Saghian Supplemental Filing," Docket No. 411).

16      Having reviewed the filings referenced above and the record in this case, the court

17  will resolve the pending matters without oral argument. Under LBR 9013-1(j), the court, in

18  its discretion, may dispense with oral argument.

19      <u>Mr. Smith's Request to File Exhibits Under Seal</u>

20      The Objection attaches and lists "papers/documents/exhibits" (the "Exhibits") which

21  Mr. Smith describes as "highly Private, highly Confidential Matters of Private Equity and-or

22  otherwise highly Classified," and as to which Mr. Smith states "[t]hese documents may be

23  SEALED."

24      As the court is mindful of the liberal construction and less stringent standards to be

25  applied to filings by a *pro se* party, the Motion to Seal Order directed Mr. Smith to the rules

26  and instructions for seeking an order authorizing filing under seal and offered Mr. Smith

27  another opportunity to file an opposition to the Motion for OSC either without purportedly

28  / / /

1   confidential information or with a properly made motion to seal such purportedly

2   confidential information.

3       Unfortunately, despite the court's clear instructions, Mr. Smith attached as the

4   Exhibits the same documents that were attached to the First Objection and were the

5   subject of the Motion to Seal, arguing that they are "highly Private, highly Confidential

6   Matters of private equity and-or otherwise highly Classified" and "may be SEALED," but he

7   makes no effort to comply with the requirements for seeking an order authorizing a filing

8   under seal.  As set forth in the Motion to Seal Order as well as in an order entered earlier

9   this year in connection with another motion to file under seal by Mr. Smith (Docket No.

10  135), court filings are public records pursuant to 11 U.S.C. § 107, and the case law

11  interpreting requests to seal court filings – much of which was cited by Mr. Smith in the

12  Motion to Seal – is clear that a court must not restrict public access to a filing without a

13  specific showing that specific information should be excluded from the public record.

14      Most, if not all, of the documents included in the Exhibits – including a UCC

15  financing statement, and forms and notices purportedly submitted to government agencies

16  – appear on their face to be of a non-confidential nature and/or not materials for which

17  there is a compelling need to disturb the strong presumption in favor of public access to

18  court records.  In fact, some of the documents among the Exhibits are already on the

19  court's docket.

20      Notwithstanding Mr. Smith's failure to comply with the Motion to Seal Order and

21  failure to show compelling reasons to restrict all contents of the Exhibits from the public

22  record, the court has noticed that some of the Exhibits include information that may be

23  subject to privacy protection pursuant to Rule 9037 of the Federal Rules of Bankruptcy

24  Procedure ("FRBP"), including what appears to be a social security number and a

25  complete birthdate.

26      Pursuant to FRBP 9037(g), if the identifying information in the Exhibits belongs to

27  Mr. Smith, he may have waived protection by filing it without redaction and not under seal

28  (pursuant to a motion as directed by the Motion to Seal Order).  However, again keeping in

1    mind the liberal construction and less stringent standards to be applied to filings by a *pro*

2    *se* party, the court will file the Objection without the Exhibits, and file the Exhibits under

3    seal pursuant to FRBP 9037(c).  Mr. Smith will be ordered to file redacted versions of the

4    Exhibits without personal identifying information listed in FRBP 9037(a).

5    <u>The Motion for OSC</u>

6        The Motion for OSC is based on the "Order Granting Debtor's Motion: (1) Approving

7    the Sale of the Property Free and Clear of All Liens, Claims, Encumbrances, and Interests

8    with the Exception of Enumerated Exclusions; (2) Finding That the Buyer Is a Good Faith

9    Purchaser; (3) Authorizing and Approving the Payment of Certain Claims from Sale

10   Proceeds; (4) Waiving the Fourteen-Day Stay Period Set Forth in Bankruptcy Rule

11   6004(h), and (5) Providing Related Relief" entered on March 28, 2022 (the "Sale Order,"

12   Docket No. 247).  The Sale Order approved a sale of real property previously owned by

13   the Debtor, located at 944 Airole Way, Los Angeles, California 90077 (the "Property") to

14   Mr. Saghian.  According to the Motion for OSC, following entry of the Sale Order, Mr.

15   Saghian recorded a grant deed from the Debtor to The One Bel Air LLC, an entity wholly

16   owned by Mr. Saghian, on March 30, 2022 (Declaration of Genevieve Weiner ("Weiner

17   Decl."), Docket No. 396, Exhibit A).  The Movants therefore assert that "Mr. Saghian, by

18   way of his ownership of The One Bel Air LLC, is now the owner of the Property."  (Motion

19   1:25-27).

20       The Movants assert that, on May 24, 2022 (after the Sale Order was entered), Mr.

21   Smith recorded a quitclaim deed signed on February 1, 2022[1] (before the Sale Order was

22   entered).  A copy of the recorded quitclaim deed is attached to a declaration filed in

23   support of the Motion for OSC (Weiner Decl., Exhibit B).  The Movants also direct the court

24   to an "unrecorded copy" of the "Fraudulent Deed" as attached to a document filed by Mr.

25   Smith on February 16, 2022 (Motion, 2:25-3:1, referring to Docket No. 128).[2]  Both

26   ─────────────
     [1] The court notes that the quitclaim deed states that it was "Executed as of the 1 day of February, 2022," but
27   attaches a notary public's "California All-Purpose Acknowledgement" dated February 14, 2022 and indicating
     that the Quitclaim Deed was dated February 14, 2022.
     [2] The Movants use the defined term "Fraudulent Deed" in apparent reference to both or either the version of
28   the quitclaim deed attached to Docket No. 128 and the version recorded on May 24, 2022 and filed in
     support of the Motion for OSC.  They are not identical, however.  The recorded quitclaim deed has a
     handwritten revision (evidently after execution and notarization) to paragraph 4(A) on page 4, changing a

1    versions of the quitclaim deed purport to transfer the Property from the Debtor to "andre-

2    mario:smith," and were executed purportedly on behalf of the Debtor by Mr. Smith as "Duly

3    Authorized Representative."  For purposes of this order, "Quitclaim Deed" refers to the

4    unrecorded version filed by Mr. Smith in Docket No. 128 or any version thereof purportedly

5    transferring an interest in the Property from the Debtor, through Mr. Smith as "Duly

6    Authorized Representative" to Mr. Smith as may have existed as of the date of the Sale

7    Order.

8          The Movants ask the court to issue an order to show cause and, eventually, to enter

9    an order: (1) holding Mr. Smith in contempt of court for violating the Sale Order and

10   ordering monetary damages; (2) authorizing the Los Angeles County Recorder's Office

11   (the "Recorder") to expunge the recorded quitclaim deed and to "cooperate with any other

12   actions that are necessary to give full force and effect to the Sale Order;" and (3)

13   authorizing Mr. Saghian to file a notice with the Recorder saying that the court's order

14   "extinguishes the effect of the Fraudulent Deed."  By the Saghian Supplemental Filing, Mr.

15   Saghian requests relief before October 4, 2022 as to all relief other than the contempt

16   finding and related damages.

17         The Movants argue that the Quitclaim Deed was extinguished pursuant to § 363(f)

18   because the Sale Order provided that the sale of the Property was free and clear of

19   interests, and that Mr. Smith violated the Sale Order's injunction against actions to recover

20   interests or enforce claims on account of liabilities of the Debtor.  While arguing that the

21   Quitclaim Deed was an interest extinguished by the Sale Order and its recording was a

22   "flagrant violation of the Sale Order," the Movants also argue that the Quitclaim Deed was

23   a sham, and that Mr. Smith did not have "any legitimate claim in the first place."  (Motion,

24   3:10-1).  The Movants further argue that the recording of the Quitclaim Deed is an

25   ///

26   _____

27   reference to a property on North Wilton Place to refer to the address of the Property.  The recorded version
     also has slightly different pagination, including having Exhibit A after the notary form, which also only in the
     recorded version includes a handwritten reference to an Exhibit B, and attaches that exhibit, a form titled
28   "Restrictive Covenant Modification," dated May 12, 2022.  Based on the handwritten alterations and the new,
     later-dated exhibit, it is evident that the recorded quitclaim deed is not the exact same document filed with
     the court prior to entry of the Sale Order.

1  inconvenience to Mr. Saghian and "interference in Mr. Saghian's property rights." (Motion,

2  3:16-4:1).

3      The court finds that the Quitclaim Deed was not an interest in the Property as of

4  entry of the sale order.  To the extent the Quitclaim Deed attempted, as it appears to on its

5  face, to transfer an interest in the Property to Mr. Smith, it was void as a violation of the

6  automatic stay provisions of § 362, which stay acts including "any act to obtain possession

7  of property of the estate or of property from the estate or to exercise control over property

8  of the estate." 11 U.S.C. § 362(a)(3).  The Quitclaim Deed, on its face, represents an act

9  to obtain possession of or to exercise control over what was then property of the Debtor's

10  estate.  "[A]ctions taken in violation of the automatic stay are void" and of no effect. *Gruntz*

11  *v. Cnty. of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000); *Schwartz v.*

12  *United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992).[3]  Because Mr. Smith

13  held no interest in the Property based on the void Quitclaim Deed as of entry of the Sale

14  Order, there was no interest to be extinguished by the Sale Order pursuant to § 363(f),

15  even assuming that all interests, whether or not identified in the sale motion, were

16  extinguished.  The Sale Order did not address the void Quitclaim Deed either explicitly or,

17  as discussed above, implicitly in the relief granted under § 363(f), so the court cannot

18  conclude that the recording of the void Quitclaim Deed (or a revised version thereof) on

19  May 24, 2022 was a violation of the Sale Order.[4]

20  / / /

21

22

23  [3] Of course, even if it were not void as a violation of the automatic stay, there are multiple other reasons the
Quitclaim Deed may not have effected a transfer of the Property.  While the Quitclaim Deed states that Mr.

24  Smith signed for the Debtor as a "Duly Authorized Representative," Mr. Smith was not authorized by the
Debtor to transfer the Property to himself.  Mr. Smith was never identified as or recognized by the Debtor as

25  its representative in any capacity.  The Debtor referred to Mr. Smith as one of at least two "parties unrelated
to the Debtor's bankruptcy case ... attempting to stop the Court-ordered auction or, worse, transfer the

26  property out of the estate to a third party for no consideration and without a court order." (Docket No. 134,
2:4-8).  The Debtor also noted the existence of the Quitclaim Deed as an "action[] ... taken to transfer the

27  [P]roperty," and that such a transfer would be "void ab initio absent an order of the Court." (Docket No. 134,
2:14-21).  Moreover, a transfer by the Debtor of the Property by the Quitclaim Deed without a court order
after notice and a hearing would violate § 363(b).

28  [4] Other than as set forth herein, the court makes no findings or conclusions regarding whether the recording
of the Quitclaim Deed after the sale of the Property was in any way prohibited or actionable under applicable
law.

1    For these reasons,

2    IT IS HEREBY ORDERED that the court will file the Objection without the Exhibits

3  on the court's public docket.

4    IT IS FURTHER ORDERED that the court will file the Exhibits to the Objection

5  under seal until further court order.

6    IT IS FURTHER ORDERED that, within 14 days of entry of this order, Mr. Smith

7  must file redacted versions of the Exhibits not including any information protected under

8  FRBP 9037(a).

9    IT IS FURTHER ORDERED that the Motion for OSC is denied.

10                                    ###

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: September 27, 2022

Deborah J. Saltzman
25                                    United States Bankruptcy Judge

26

27

28