JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CRESTLLOYD, LLC, <br><br> Debtor. | Case No. 2:22-cv-02091-FLA <br><br> **ORDER DENYING APPEAL** |

## RULING

Before the court is Appellant Nile Niami's ("Appellant") appeal of the United States Bankruptcy Court for the Central District of California's (the "Bankruptcy Court") March 28, 2022 Order Granting Debtor's Motion (the "March 28, 2022 Order," Dkt. 1 at 5) in Bankruptcy Case No. 2:21-bk-18205-DS (the "Bankruptcy Action").[1] Appellees The Beverly Hills Estates, Inc. ("TBHE"), Rayni Williams, and Branden Williams (collectively, the "TBHE Appellees") filed a response on June 24, 2022. Dkt. 13. Appellees Pacific Union International (d/b/a Compass, "Compass") and Aaron Kirman ("Kirman") (collectively, the "Compass Appellees") filed a joinder and supplement to the TBHE Appellees' response on July 28, 2022. Dkt. 18.

///

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system rather than any page numbers listed natively.

    For the reasons stated below, the court DENIES the Appeal in its entirety and AFFIRMS the Bankruptcy Court's March 28, 2022 Order.

## **BACKGROUND**

    On October 26, 2021, Debtor Crestlloyd, LLC ("Crestlloyd" or the "Debtor") initiated the Bankruptcy Action by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 1101, et seq. Dkt. 10-1 at 2. The Debtor's primary asset was the residential real property located at 944 Airole Way, Los Angeles, CA 90077 (the "Property," "aka "The One"), which was under development and had not yet been completed. *Id.*

    On December 14, 2021, the Debtor filed an Application to: (1) employ TBHE and Compass (collectively, the "Brokers") as real estate brokers pursuant to 11 U.S.C. § 327(a) ("§ 327(a)"), with compensation to be determined by 11 U.S.C. § 328 ("§ 328"); (2) employ Concierge Auctions, LLC ("Concierge" or the "Auctioneer") as the auctioneer pursuant to § 327(a), with compensation to be determined by § 328; and (3) approve the payment of compensation to TBHE, Compass, and Concierge from escrow upon closing ("Motion to Employ Brokers and Auctioneer"). Dkt. 10-5. The Bankruptcy Court approved the Motion to Employ Brokers and Auctioneer on January 10, 2022. Dkt. 10-12.

    On December 29, 2021, the Debtor filed a motion requesting the court approve auction and bid procedures regarding the sale of the Property ("Motion to Approve Procedures"). Dkt. 10-9. The Motion to Approve Procedures came to hearing on January 6, 2022 (Dkt. 10-21), and the Bankruptcy Court granted the motion on January 10, 2022 (Dkt. 10-13). On January 14, 2022, the Bankruptcy Court issued an order modifying and amending the bid procedures and extending deadlines, with the auction to commence on February 28, 2022 and conclude on March 3, 2022, and the closing date for the sale set as March 21, 2022. Dkt. 10-14 at 3.

    On March 8, 2022, the Debtor filed a motion requesting the Bankruptcy Court, inter alia, approve the sale of the Property for a purchase price of $126 million and

2

find the buyer to be a good faith purchaser (the "Motion to Approve Sale"). Dkt. 10-18. Appellant filed an Objection to the Motion to Approve Sale on March 15, 2022. Dkt. 10-20. The Motion to Approve Sale came to hearing on March 18 and 21, 2022. Dkts. 10-26, 10-27.

On March 28, 2022, the Bankruptcy Court issued an Order granting the Motion to Approve Sale and overruling all objections and oppositions thereto (the "Sale Order"). Dkt. 10-25 at 3. In particular, the Bankruptcy Court found the buyer's offer of $126 million plus a $11.97 million rebate from the Auctioneer[2] (for a total of $137.97 million in consideration): (1) was fair and reasonable; (2) represented the optimal value for the Property under the circumstances; (3) was in the best interests of the Debtor, its bankruptcy estate, and the creditors thereof; and (4) constituted full and adequate consideration and reasonably equivalent value for the Property under all applicable laws of the United States and California. *Id.* at 3–4. The Bankruptcy Court further authorized the Debtor and escrow company to pay from the sale proceeds a commission equal to 2% of the purchase price to be split equally between the Debtor's Brokers (TBHE and Compass) and the buyer's brokers. *Id.* at 5.

On March 30, 2022, Appellant filed the subject appeal, requesting the court reverse the Sale Order to the extent the Bankruptcy Court approved payment of fees to TBHE, Compass, and Concierge (the "Fees"). Dkt. 9 at 5–6.

## DISCUSSION

**I.      Legal Standard**

Appeals from orders of bankruptcy courts are heard by a bankruptcy appellate panel, unless a party elects to have the appeal heard by the district court for the judicial district in which the bankruptcy judge is serving. 28 U.S.C. § 158(a), (c)(1).

---

[2] Pursuant to the auction agreement, the Auctioneer is entitled to a fee equal to 12% of the sale price to be paid separately from the sale price by the buyer, provided that the Auctioneer must rebate 9.5% of this fee to Debtor's estate and retain only 2.5% if the sale price is less than or equal to $225 million. Dkt. 10-18 at 25.

Such appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts…." *Id.* § 158(c)(2). When acting in this appellate capacity, the district court reviews the bankruptcy court's legal conclusions de novo and its factual conclusions for clear error. *In re Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004). De novo review requires the district court to "consider a matter anew, as if it has not been heard before, and as if no decision had been rendered previously." *In re Smith*, 435 B.R. 637, 643 (B.A.P. 9th Cir. 2010). In contrast, the clear error standard is "highly deferential" and requires the district court to affirm the bankruptcy court's ruling absent "a definite and firm conviction that a mistake has been committed[.]" *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015).

Mixed questions of law and fact are those which require the court to determine "whether the rule of law as applied to the established facts is or is not violated." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018). "[T]he standard of review for a mixed question all depends … on whether answering it entails primarily legal or factual work." *Id.* at 396. When the question requires the court "to expound on the law, particularly by amplifying or elaborating on a broad legal standard," the district court should typically review the lower court's decision de novo. *Id.* When the question immerses the court "in case-specific factual issues—compelling [the court] to marshal and weigh evidence, make credibility judgments, and otherwise address … 'multifarious, fleeting, special, narrow facts that utterly resist generalization,'" the district court should usually review the decision for clear error. *Id.*

## II. Analysis

### A. Appellant's Arguments Regarding 11 U.S.C. § 330 and Waiver

Appellant contends the Bankruptcy Court erred by not reviewing the fees for reasonableness under 11 U.S.C. § 330 ("§ 330"). Dkt. 9 at 22. The TBHE Appellees respond Appellant waived this argument because he never raised it or discussed § 330

in the Bankruptcy Action and argued instead that "any compensation for the Brokers and Auctioneer is expressly subject to section 328 of the Bankruptcy Code."  Dkt. 13 at 12 (citing Dkt. 10-20 at 9).

Courts in the Ninth Circuit apply a "general rule" against entertaining arguments on appeal that were not presented or developed before the lower court.  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *Duggan v. Hobbs*, 99 F.3d 307, 313 (9th Cir. 1996) ("Generally, we will not consider an issue raised for the first time on appeal.").  "Although no 'bright line rule' exists to determine whether a matter has been properly raised below, an issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the trial court to rule on it.'"  *In re Mercury*, 618 F.3d at 992 (quoting *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992)) (quotation marks omitted).  "This principle accords to the [lower] court the opportunity to reconsider its rulings and correct its errors."  *Id.*  "Such waiver is a discretionary, not jurisdictional, determination."  *Id.*  While the appellate court may consider issues not presented to the lower court, the appellate court is not required to do so.  *Id.*

Appellate courts in the Ninth Circuit exercise their discretion to reach waived issues only in three circumstances: (1) "in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process," (2) "when a new issue arises while appeal is pending because of a change in the law," and (3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed."  *Id.*[3]  None of these circumstances apply here.

---

[3] Appellant cites cases including *Allen v. Santa Clara County Correctional Peace Officers Association*, 38 F.4th 68, 71 (9th Cir. 2022), to argue "it is claims that are deemed waived or forfeited, not arguments."  Dkt. 19 at 16.  Appellant additionally cites *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992), to argue that "[o]nce a federal claim is properly presented, a party can make any argument in support of that

5

First, Appellant argues that "[a]llowing Fees to the Brokers and Auctioneer on terms (and for a sale process) that assumed the full payment of creditors would be a miscarriage of justice, and would only reward the Brokers and Auctioneer for their complicity and assistance in the misrepresentations of the value to the Bankruptcy Court to get the listing, the commission, and the glory of the press release for selling the largest home on the market." Dkt. 19 at 18. Appellant, however, does not cite any legal authority to demonstrate the facts here rise to the level of an "exceptional" case wherein review of Appellant's arguments regarding § 330 is necessary to prevent a miscarriage of justice. *See id.* at 17–18. Appellant's contention that a miscarriage of justice would occur absent appellate review, alone, is insufficient for Appellant to meet his burden—particularly given that Appellant argued explicitly in the Bankruptcy Action that "any compensation for the Brokers and Auctioneer is expressly subject to section 328 of the Bankruptcy Code." *See* Dkt. 10-20 at 9. As Appellant did not argue previously that the Fees were subject to § 330, and argued explicitly the reverse, the court finds a miscarriage of justice would not occur if this court were to deem these arguments waived.

///

---

claim" and is "not limited to the precise arguments … made below." *Id*. *Allen* is among the minority of decisions in which the Ninth Circuit has applied waiver standards unique to the United States Supreme Court, without "explain[ing] how and why they should be applied in Ninth Circuit appeals." Chris Goelz et al., Federal Ninth Circuit Civil Appellate Practice § 7:83.9 (The Rutter Group Apr. 2023). As the Rutter Guide explains, "Ninth Circuit opinions that rely on U.S. Supreme Court waiver decisions are perhaps best understood as isolated applications of the broad rule that appellate courts retain discretion (and do not lack jurisdiction) to disregard particular waivers in particular cases." *Id.* Petitioner does not cite any legal authority to establish that this court must consider arguments that were not raised in the Bankruptcy Action and acknowledges, instead, that this court's consideration of waived arguments is discretionary. *See* Dkt. 19 at 16–17. Accordingly, the court will evaluate Appellant's new arguments against the exceptions set forth in *In re Mercury*, 618 F.3d at 992, to determine if these arguments are subject to waiver.

6

Furthermore, while Appellant contends the Bankruptcy Action and sales process were predicated on repeated representations by the *Debtor* regarding the *Debtor's* estimate of the fair market value for the Property,[4] Appellant does not identify any specific statements by the Brokers or Auctioneer regarding their belief of a fair market value for the Property or other misrepresentations to the Bankruptcy Court.[5] *See* Dkt. 9 at 9–16.  The Debtor's stated belief that the fair market value of

---

[4] According to Appellant, "[t]he Debtor commenced the Bankruptcy Action … expressly for the purpose of preserving its significant equity value in The One in the face of various creditor lawsuits," and "[a]ll aspects of the Bankruptcy Case – including but not limited to the sale process and the retention of the real estate brokers and auctioneer – were predicated on repeated, explicit and specific representations by or on behalf of the Debtor that the fair market value of The One was $325 million and that all creditors in the Bankruptcy Case would be paid in full even if The One was sold at a price substantially below its fair value." Dkt. 9 at 4.  Appellant's argument was considered by the Bankruptcy Court and overruled.  Dkt. 10-20 at 9 (objecting to the Motion to Approve Sale on this basis); Dkt. 10-25 at 3 (overruling objections). Appellant fails to establish that the Bankruptcy Court's determination on this issue meets the high threshold for clear error.  *See In re Sussex*, 781 F.3d at 1071. Furthermore, the record does not support Appellant's contention that the Bankruptcy Court issued its rulings in reliance of Debtor's assertions that the Property would be sold for a price sufficient to ensure all creditors would be paid in full.  In Debtor's Motion to Approve Procedures, Crestlloyd stated: "The Debtor believes that the Property has a current fair market value of approximately $325 million in its 'as-is' nearly complete condition, but understands that the market will ultimately dictate the price." Dkt. 10-9 at 15 (underline added).  Appellant does not identify any explicit assurance or guarantee by the Debtor that all creditors would be paid in full by the sale of the Property.  The Debtor's qualified belief that all creditors would be so paid is insufficient to establish that such payment was a requirement for the sale to be completed or for payment of the Fees to the Brokers and Auctioneer.

[5] Appellant contends the Auctioneer made misrepresentations to the court during the hearing on the Motion to Approve Procedures by advocating there was no need for a minimum reserve bid, while issuing an e-mail to potential bidders once the auction began, publicizing an opening bid of $50 million that was set by the Auctioneer.  Dkt. 9 at 17 n. 53 (citing Dkt. 10-18 at 27), 19–20, 25.  Appellant does not identify any portion of the approved auction and bid procedures that prohibited the Auctioneer from setting or publicizing an opening bid amount or explain how the Auctioneer's

7

the Property was significantly higher than the ultimate sale price at auction is not inconsistent with its representations to the Bankruptcy Court. *See* Dkt. 10-9 at 15. Appellant, thus, fails to establish the miscarriage of justice exception applies here.

Second, Appellant contends the appropriate standard of review for the Fees is a legal question that can be decided upon contractual language and facts that have been developed in the Bankruptcy Action and are not subject to dispute. Dkt. 19 at 19. The court disagrees. Appellant appeals the Bankruptcy Court's approval of the Fees on the grounds that the Bankruptcy Court erred in approving the Fees without finding them to be unreasonable under § 330. *See* Dkt. 9 at 5. The reasonableness of the Fees does not present a pure issue of law that can be determined based on a fully-developed record. To the extent Appellant contends the Bankruptcy Court should have evaluated sua sponte the arguments he now brings under § 330, Appellant does not cite any legal authority to establish the Bankruptcy Court must conduct such an evaluation even if it is not argued or requested by the parties. *See* Dkts. 9, 19. The court, therefore, finds Appellant's arguments regarding § 330 do not fall within the pure issue of law

---

publicization of an opening bid rendered any specific statement by the Auctioneer a misrepresentation to the court. *See* Dkt. 9 at 17–18. While Appellant argues the opening bid selected was contrary to the Auctioneer's statement at the January 6, 2022 hearing "that requiring a minimum bid would chill bidding and impair the ability to achieve or surpass the listing price of $295 million," *id.* at 25, the Auctioneer never stated it expected the Property to sell for a specific figure, let alone $295 million. *See* Dkt. 10-21. To the contrary, Concierge stated expressly that the true value of the Property was unknown, and argued the existence of a minimum bid might discourage potential bidders from participating, due to uncertainty of whether the sale would be approved even if they won the auction, and lead to reduced competition and an inferior price. *Id.* at 39 ("[The Property] might bring 250 million dollars at the auction; it might bring 100 million dollars at the auction. We don't know because we're not the buyers. And I think that the purest way to maximize the value for this property is just make it clear that this property is selling, right."), 39–40 (stating that of the 8 transactions Concierge held with Kirman, the 2 with minimum bids did not sell while the 6 without minimum bids sold). Appellant, thus, fails to establish the Auctioneer made any misrepresentations to the Bankruptcy Court regarding the auction and bid procedures.

exception to waiver. *See In re Roberts*, 770 Fed. App'x 360, 361 (9th Cir. 2019) (affirming Bankruptcy Appeal Panel's refusal to consider arguments and defenses not raised before the Bankruptcy Court that involved questions of reasonableness).

Accordingly, the court DENIES the Appeal with respect to Appellant's arguments regarding § 330, as these arguments were not presented or developed in the Bankruptcy Action and, thus, were waived.

**B.   Section 328**

Pursuant to 11 U.S.C. § 328(a):

> The trustee … with the court's approval, may employ or authorize the employment of a professional person under section 327 … on any reasonable terms and conditions of employment, including … on a fixed or percentage fee basis…. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

"Section 328(a) … creates a 'high hurdle' for a movant seeking to revise the terms governing a professional's compensation *ex post facto*. … Such a movant must show not merely that a compensation adjustment is appropriate in light of subsequent developments that were previously unforeseen or unanticipated by the parties; instead, the movant is tasked with the weightier burden of proving that the subsequent developments were incapable of being anticipated at the time the engagement was approved." *In re Asarco, L.L.C.*, 702 F.3d 250, 258 (5th Cir. 2012).

Appellant contends the compensation terms under which the Fees were awarded have proven improvident in light of developments not capable of being anticipated when such terms were approved, including the Ukraine War, water damage to the Property, the lack of a certificate of occupancy, billing code issues, and opposition from the Bel Air Homeowners Association. Dkt. 9 at 22–27. According to Appellant, "[t]he Bankruptcy Court erred as a matter of law by not considering whether the

9

compensation terms for the Brokers and Auctioneer have proven improvident within the Section 328(a) standard." *Id.* at 22.

In objecting to the Debtor's Motion to Approve Sale, Appellant argued "[t]he retention of and compensation to the Brokers and Auctioneer was expressly predicated on the Debtor's representations of a massive equity cushion in the Property even if [it were] sold far below fair market value," and that "the proposed compensation, while in line with preexisting contract terms, is improvident in light of the shockingly terrible results of the sales process." Dkt. 10-20 at 9–10. Appellant further argued that declarations by TBHE and Concierge "show[ed] significant overlap of efforts between the Brokers and Auctioneer," and failed "to establish that the marketing efforts undertaken were in any way of value to the estate or otherwise sufficient for a property as unique as The One." *Id.* at 10. Appellant did not argue that the Fees were improvident in light of the additional factors he now raises, including the Ukraine War. *See id.* at 9–10. Appellant's briefs make clear that he was aware of these factors prior to the hearing on the Motion to Approve Sale. *See* Dkt. 9 at 19–27.

Having reviewed the record, the court finds the Bankruptcy Court did not commit clear error in determining the Fees were not improvident based on the arguments Appellant raised in his Objection to the Motion to Approve Sale, as the Bankruptcy Court could reasonably have determined the Brokers and Auctioneer's marketing efforts and the final sale price did not render the Fees improvident. *See* Dkt. 10-20 at 9–10; Dkt. 10-25. The court DECLINES to consider Appellant's newly raised additional arguments regarding circumstances that Appellant contends rendered the Fees improvident, as these grounds were not presented or developed in the Bankruptcy Action and none of the exceptions to waiver apply. *See In re Mercury*, 618 F.3d at 992.

/ / /

/ / /

/ / /

  **C. The Brokers and Auctioneer's Alleged Adverse Interests and the Brokers' Alleged Fee Sharing Agreement**

  Pursuant to § 328(c), "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 … if, at any time during such professional person's employment under section 327…, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."

  According to Appellant, the court should disallow the Fees because the Brokers and Auctioneer were not disinterested or held adverse interests to the Debtor. Dkt. 9 at 30–32. First, Appellant contends the Debtor disclosed for the first time in the Motion to Approve Sale that the TBHE Appellees also represented the buyer, Richard Saghian, as his real estate broker in his purchase of the Property. Dkt. 9 at 30–31. Second, Appellant argues the Motion to Approve Sale indicated there was an impermissible fee splitting arrangement between the Brokers (the TBHE and Compass Appellees) and the buyer's real estate brokers. *Id.* at 31. Third, Appellant contends the Auctioneer had interests adverse to the estate because: (1) the Auctioneer's opposition to a minimum bid at the January 6, 2022 hearing, after it told creditors it was not opposed to a minimum bid, and (2) "[t]he Auctioneer's pride in publicizing the abysmal auction result across social media," suggest "the Auctioneer was motivated by its handsome fee of more than $3 million (and valuable publicity) for what amounted to a two-month online marketing campaign, without regard for whether the sale was value maximizing for the Debtor and its creditors." *Id.* at 31–32.

  As with Appellant's arguments regarding § 330, Appellant did not present or develop these arguments in the Bankruptcy Action, and the factual record is completely undeveloped as a result. Accordingly, the court finds this argument was waived without applicable exception. *See In re Mercury*, 618 F.3d at 992; *In re Roberts*, 770 Fed. App'x at 361.

### D.  The Brokers' Alleged Fee Sharing Agreement

Finally, Appellant contends the Brokers' retention agreement contained an impermissible fee sharing provision in violation of § 327. Dkt. 9 at 32. According to Appellant, all professionals retained by a debtor with approval by a bankruptcy court "can be compensated only under § 330(a)," and may only be allowed and paid in priority to other claims under 11 U.S.C. § 503(b)(2) ("§ 503(b)(2)"). Dkt. 9 at 32–33. Appellant further argues that 11 U.S.C. § 504 ("§ 504") prohibits persons receiving compensation under § 503(b)(2) from sharing any such compensation with others, such that "the proposed fee sharing by the Brokers with the buyer's brokers violates Section 504." Dkt. 9 at 33.

Courts have recognized that "Sections 328 and 330 establish a two-tiered system for judicial review and approval of the terms of a professional's retention." *In re First Magnus Fin. Corp.*, Case No. AZ-08-1160-PaDMo, 2009 WL 7809001, at *8 (B.A.P. 9th Cir. Feb. 24, 2009) (citing *In re Smart World Techs., LLC*, 552 F.3d 228, 232 (2d Cir. 2009)). "[T]he inquiries required by these two provisions of the Code are mutually exclusive, as there is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court has already approved the professional's employment under § 328." *Id.* (quotation marks and brackets omitted); *see also In re Circle K. Corp.*, 279 F.3d 669, 671 (9th Cir. 2002) ("In the absence of preapproval under § 328, fees are reviewed at the conclusion of the bankruptcy proceeding under a reasonableness standard pursuant to 11 U.S.C. § 330(a)(1).").

Appellant's arguments regarding §§ 503(b)(2) and 504 are dependent on his contention that these fees are subject to review under § 330(a). *See* Dkt. 9 at 32–33. Having found Appellant waived his arguments regarding § 330 by failing to raise them in the Bankruptcy Action, the court likewise declines to consider Appellant's arguments regarding §§ 503(b)(2) and 504 as waived.

///

12

# CONCLUSION

For the aforementioned reasons, the court AFFIRMS the Bankruptcy Court's award of the Fees to TBHE, Compass, and Concierge pursuant to § 328(a). Appellant Nile Niami's appeal is DENIED in its entirety. Having denied the appeal for the reasons stated, the court need not consider the parties' remaining arguments.

IT IS SO ORDERED.

Dated: January 2, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

13